

**From:** Brad Barber [mailto:bbarber@he-equipment.com]
**Sent:** Monday, February 04, 2013 6:00 PM
**To:** Ethics Hotline
**Cc:** Sanders, Debra
**Subject:** FW: Additional Parking cost

Please see below.

**From:** Brad Barber
**Sent:** Monday, February 04, 2013 5:48 PM
**To:** 'Sanders, Debra'; 'ethicshotline@urs.com'
**Cc:** Johnson, Neal; John Jones
**Subject:** RE: Additional Parking cost

Debra, your offer is far from acceptable. We continue to park next door, in the equipment yard area and on the curb due to the oversight of your firm. It was certainly our hope that a reasonable suggestion would be made to assist in the egregious error URS has made. It is clear that both you and Neal are unwilling to take responsibility for the lack of professional services you were paid to provide. To think that a firm such as URS could design a building and not provide the needed employee parking is mind boggling to me as well as every construction professional I have spoken to about this. I do not believe you have provided the services URS was hired to perform.

I hope someone within URS at an executive level may think using "standard procedures and guidelines for parking design" you reference below, that did not yield adequate parking is not a good position to take in such a situation. Your firm was responsible for designing the building and the parking. Your firm was responsible for the office layout. This layout included training rooms and workstations that allowed for 30%+ future growth. Your firm had the head count, and in fact supplied the head counts to us. Yet we move in and have inadequate parking day one. Everything I have stated in this paragraph is accurate and irrefutable. I am including your ethics hotline email address in hopes that a reasonable person will review and ask the question, " is the inaction of the Baton Rouge office unethical based on facts supplied"?

Our entire growth plan has been impacted due to the poor performance of your firm. Your offer is pitiful in light of to the lack of service your firm has provided. I would like to know who your direct supervisor is as well as their direct

1

EXHIBIT 1

supervisor. Please provide me these names and contact information as I do not plan on accepting your offer. I will also expect communication from your Ethics Hotline representative. I want to ensure this decision, or lack thereof is understood by your firm. I will pursuit this until I reach a reasonable person of authority within URS.

**From:** Sanders, Debra [mailto:debra.sanders@urs.com]
**Sent:** Monday, February 04, 2013 4:20 PM
**To:** John Jones
**Cc:** Brad Barber; Johnson, Neal
**Subject:** RE: Additional Parking cost

John and Brad,

Although we followed standard procedures and guidelines for parking design and fulfilled our part of the contract for your parking, I understand your situation and why you need additional parking. In the interesting of maintaining our good standing relationship, we are willing to cover the difference in cost for building the parking now as opposed to earlier with the rest of the parking.

We have evaluated the additional cost required to add the parking that you have approved and Milton J. Womack has bid, and the cost difference is $17,507. We can credit this amount to your outstanding invoices, if acceptable.

Debra Sanders
Vice President
Baton Rouge Office Manager
URS Corporation
7389 Florida Blvd., Ste. 300
Baton Rouge, LA 70808
Direct 225.922.5726
Cell 225.907.8532
Fax 225.922.5700

**From:** John Jones [mailto:jjones@he-equipment.com]
**Sent:** Monday, February 04, 2013 9:49 AM
**To:** Sanders, Debra
**Cc:** Brad Barber
**Subject:** RE: Additional Parking cost

Debra can you tell us if you have a proposal on this situation? It is now approaching a week since you originally thought you would have an answer.
We would appreciate an update if you can let us know. Thanks.

John Jones
**Vice President- Corporate Services**
7500 Pecue Lane
Baton Rouge, LA 70809
225-298-5223 Office
225-978-7660 Mobile
225-298-5376 Fax
jjones@he-equipment.com

NON-CERTIFIED COPY

 

**From:** Sanders, Debra [mailto:debra.sanders@urs.com]
**Sent:** Thursday, January 31, 2013 9:26 AM
**To:** John Jones
**Subject:** RE: Additional Parking cost

John,
We are still working on it an I am out of the office today. I hope to have an answer tomorrow. I'm sorry for the delay.

Debra Sanders
Vice President, Office Manager
URS Baton Rouge
225.922.5726. O
225.907.8532 M

---

**From:** John Jones
**Sent:** 1/31/13 08:48 AM
**To:** Sanders, Debra
**Subject:** RE: Additional Parking cost


Ms. Debra do you have an update for me on this.  Brad Barber has been asking me what is going on?

**John Jones**
**Vice President- Corporate Services**
7500 Pecue Lane
Baton Rouge, LA 70809
225-298-5223 Office
225-978-7660 Mobile
225-298-5376 Fax
jjones@he-equipment.com

☒

---

**From:** Sanders, Debra [mailto:debra.sanders@urs.com]
**Sent:** Tuesday, January 29, 2013 4:05 PM
**To:** John Jones
**Subject:** Additional Parking cost

3

NON-CERTIFIED COPY

Mr. Jones,

I have considered your situation and would like to make a reasonable offer to assist in this dilemma; however, I must first get it approved and do not have that yet.  I will be in touch soon.  I apologize for the delay.

Debra J. Sanders
Vice President, Office Manager
URS Corporation
Baton Rouge, Louisiana
Office: 225-922-5726
Cell: 225-907-8532
Fax:225-922-5701


This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and any attachments or copies.

4

NON-CERTIFIED COPY



JOHN ASHLEY MOORE
*Partner*

(225) 381-0218 TELEPHONE
(225) 346-8049 FACSIMILE
ashley.moore@taylorporter.com

February 12, 2013

VIA EMAIL

Ms. Debra Sanders
Vice President, Baton Rouge Office Manager
URS Corporation
URS Corporation Architecture PC
7389 Florida Blvd., Ste. 300
Baton Rouge, LA 70808

Re:    H&E Equipment Services, Inc. ("**H&E**"), and URS Corporation Architecture PC
("**URS**"), Agreement for Professional Services Dated August 28, 2006, for "H&E HQ
and BR Branch Project"; My General File No. 3270/22101

Dear Ms. Sanders:

I regularly represent H&E, URS's ("**URS**") client in connection with the referenced project, and
respectfully request notice to, and a copy of insurance policies from, your general
liability/professional liability insurers for the policy years 2006 through 2012 in connection with
URS's gross negligence in the design of parking areas and lay-out of H&E's headquarters and
branch buildings.

As you know, URS well knew the actual number of H&E employees who would actually occupy
initially the headquarters building **BEFORE** the general contract for construction of the building
was ever signed.  To have designed a parking area comprised of substantially fewer parking
spaces, without additional spaces available for reasonably anticipated increases in the number of
employees and visitors, is a clear breach of the applicable standard of design care.  Simply put,
URS has failed to perform in accordance with that degree of care and skill ordinarily exercised
by members of URS's profession practicing at the same time in the same location, which breach
of design standard and professional care has proximately caused H&E hundreds of thousands of
dollars in additional construction costs, repair and refurbishing costs, loss of alternative design
feasibility and general esthetics, and equipment servicing and rental inefficiencies in the future.

I await receipt of copies of the general liability/professional liability policies at your earliest
convenience.

Sincerely yours,

John Ashley Moore

TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P. | POST OFFICE BOX 2471 | 8TH FLOOR CHASE TOWER SOUTH | [225] 387-3221 TELEPHONE
www.taylorporter.com | BATON ROUGE, LOUISIANA 70821 | 451 FLORIDA STREET (70801) | [225] 346-8049 FACSIMILE

EXHIBIT
2

NON-CERTIFIED COPY

Ms. Debra Sanders
February 12, 2013
Page 2


JAM:dvm

cc via email:    Mr. Steve Brinigar
                 Senior Vice President, Group General Manager
                 URS Corporation
                 URS Corporation Architecture PC
                 7389 Florida Blvd., Ste. 300
                 Baton Rouge, LA  70808
                 Telephone:  (225) 922-5700
                 Email:  steve.brinigar@urs.com

                 Mr. Vincent Provenza
                 Senior Vice President, Regional Manager
                 URS Corporation
                 URS Corporation Architecture PC
                 7389 Florida Blvd., Ste. 300
                 Baton Rouge, LA  70808
                 Telephone:  (225) 922-5700
                 Email:  vincent.provenza@urs.com

                 Mr. Neal Johnson
                 Project Manager
                 URS Corporation
                 URS Corporation Architecture PC
                 7389 Florida Blvd., Ste. 300
                 Baton Rouge, LA  70808
                 Telephone:  (225) 922-5700
                 Email:  neal.johnson@urs.com

                 Mr. John M. Engquist
                 Chief Executive Officer
                 H&E Equipment Services, Inc.
                 7500 Pecue Lane
                 Baton Rouge, LA   70809
                 Telephone: (225) 298-5230
                 Facsimile: (225) 298-5382
                 Email: jengquist@he-equipment.com

                 Mr. Bradley W. Barber
                 President and Chief Operating Officer
                 H&E Equipment Services, Inc.
                 7500 Pecue Lane
                 Baton Rouge, LA   70809
                 Telephone: (225) 298-5200
                 Facsimile: (225) 298-5328
                 Email: bbarber@he-equipment.com

NON-CERTIFIED COPY

Ms. Debra Sanders
February 12, 2013
Page 3

Mr. John D. Jones
Vice President, Corporate Services
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809
Telephone: (225) 298-5223
Facsimile: (225) 298-5376
Email: jjones@he-equipment.com

Mr. Frankie W. Wynn
Director of Facilities, Risk and Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809
Telephone:  (225) 298-5229
Facsimile:  (225) 298-5376
Email:  fwynn@he-equipment.com

Ms. Kellene Cochran
Executive Assistant
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809
Telephone:  (225) 298-5228
Facsimile:  (225) 298-5382
Email:  kcochran@he-equipment.com

cc via U.S. mail:  URS Corporation and
URS Corporation Architecture, P.C.,
through their agent for
service of process:
CT Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, LA  70808

NON-CERTIFIED COPY



JOHN ASHLEY MOORE
*Partner*

(225) 381-0218 TELEPHONE
(225) 346-8049 FACSIMILE
ashley.moore@taylorporter.com

February 12, 2013

VIA EMAIL

Ms. Debra Sanders
Vice President, Baton Rouge Office Manager
URS Corporation
URS Corporation Architecture PC
7389 Florida Blvd., Ste. 300
Baton Rouge, LA 70808

Re:    H&E Equipment Services, Inc. ("**H&E**"), and URS Corporation Architecture PC
       ("**URS**"), Agreement for Professional Services Dated August 28, 2006, for "H&E HQ
       and BR Branch Project"; My General File No. 3270/22101

Subject:   Payment to Subcontractor, Becky Walker (TDS)

Dear Ms. Sanders:

Please be advised that Becky Walker (TDS), a subcontractor to URS under the "furniture, fixtures and equipment" part of the referenced project will be paid directly by H&E, that H&E will become subrogated pursuant to La. C.C. art. 1825, **et seq.**, to Becky Walker's rights against URS upon such payment, that H&E will set-off such subrogated payment against monies alleged to be owed by H&E to URS, that such payment procedure benefits URS, and that H&E reserves right to pay other such subcontractors under similar circumstances.

Should you have any questions, please let me know directly.

Sincerely yours,

John Ashley Moore

JAM:dvm

EXHIBIT
3

NON-CERTIFIED COPY

Ms. Debra Sanders
February 12, 2013
Page 2

cc via email:    Mr. Steve Brinigar
Senior Vice President, Group General Manager
URS Corporation
URS Corporation Architecture PC
7389 Florida Blvd., Ste. 300
Baton Rouge, LA 70808
Telephone: (225) 922-5700
Email: steve.brinigar@urs.com

Mr. Vincent Provenza
Senior Vice President, Regional Manager
URS Corporation
URS Corporation Architecture PC
7389 Florida Blvd., Ste. 300
Baton Rouge, LA 70808
Telephone: (225) 922-5700
Email: vincent.provenza@urs.com

Mr. Neal Johnson
Project Manager
URS Corporation
URS Corporation Architecture PC
7389 Florida Blvd., Ste. 300
Baton Rouge, LA 70808
Telephone: (225) 922-5700
Email: neal.johnson@urs.com

Mr. John M. Engquist
Chief Executive Officer
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809
Telephone: (225) 298-5230
Facsimile: (225) 298-5382
Email: jengquist@he-equipment.com

Mr. Bradley W. Barber
President and Chief Operating Officer
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809
Telephone: (225) 298-5200
Facsimile: (225) 298-5328
Email: bbarber@he-equipment.com

NON-CERTIFIED COPY

Ms. Debra Sanders
February 12, 2013
Page 3

Ms. Leslie S. Magee
Chief Financial Officer
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809
Telephone:  (225) 298-5261
Facsimile:  (225) 298-5382
Email:  lmagee@he-equipment.com

Mr. John D. Jones
Vice President, Corporate Services
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809
Telephone: (225) 298-5223
Facsimile: (225) 298-5376
Email: jjones@he-equipment.com

Ms. Celeste Roe
Corporate Controller
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA   70809
Telephone: (225) 298-5261
Facsimile: (225) 298-5308
Email: croe@he-equipment.com

Mr. Frankie W. Wynn
Director of Facilities, Risk and Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809
Telephone:  (225) 298-5229
Facsimile:  (225) 298-5376
Email:  fwynn@he-equipment.com

Ms. Kellene Cochran
Executive Assistant
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809
Telephone:  (225) 298-5228
Facsimile:  (225) 298-5382
Email:  kcochran@he-equipment.com

NON-CERTIFIED COPY

H&E EQUIPMENT SERVICES     *     SUIT NO. 626,308    DIV.: D

    *    19TH JUDICIAL DISTRICT COURT

VERSUS     *

    PARISH OF EAST BATON ROUGE

URS CORPORATION    POSTED

ARCHITECTURE, P.C., URS    STATE OF LOUISIANA

CORPORATION, L. O'NEAL    JUN 5 2015    COST OK $ ✓

JOHNSON AND THOMAS E. RYAN,    JUN - 5 2015

III

DEPUTY CLERK OF COURT

---

### MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

---

**MAY IT PLEASE THE COURT:**

Defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson and Thomas E. Ryan, III (collectively referenced herein as "Defendants") respond to and oppose the Motion to Compel filed by Plaintiff, H&E Equipment Services, Inc.'s ("Plaintiff"), as follows:

### I. INTRODUCTION

Plaintiff seeks production of materials with regard to which Defendants have made valid claims of the attorney-client and work-product privileges. Plaintiff erroneously contends that the documents that Defendants withheld on the basis of work-product privilege could not have been obtained or prepared in anticipation of litigation since they were obtained or prepared some months before Defendants circulated a litigation hold and before H&E filed suit. This narrow-sighted view of the work-product doctrine is misplaced because, as set forth below, Defendants reasonably anticipated litigation by Plaintiff and by URS months <u>before</u> the materials at issue were generated. Moreover, as set forth below, these documents were not created in the "normal course of the contractual relationship between the parties." As is set forth in Defendants' Motion for Summary Judgment and Memorandum in Support thereof, Defendants were not responsible for repairs or damages under the contract between the parties, and as such, any communications regarding repairs or damages would have


EBR2981399

REC'D C.P.

JUN 05 2015

NON-CERTIFIED COPY

been outside of the normal course and scope of the parties' contractual relationship.

Accordingly, as further set forth below, Plaintiff's Motion to Compel should be denied and Defendants should be awarded costs in connection with opposing this Motion including but not limited to reasonable attorney's fees.

## II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff, H&E Equipment Services, Inc. ("H&E") contracted with URS Corporation Architecture, P.C. and its affiliates or subsidiaries ("URS") to perform consulting and professional engineering services in connection with construction and renovation at H&E's Baton Rouge, Kenner and Belle Chase locations (collectively referenced herein as "the Projects"). In November, 2013, H&E filed the instant lawsuit asserting a breach of standards of care on the part of URS in connection with the Projects.

H&E in its Petition for Damages essentially asserts, *inter alia*, that:

- "URS has breached its agreement with H&E by… failing to design the Projects in accordance with appropriate industry standards and/or in accordance with the required standard of care ordinarily exercised by others in the same profession."[1]

- "URS … failed to exercise the ordinary skill, care and diligence in designing, and managing the construction of the Projects"."[2]

H&E has asserted claims relative to issues allegedly experienced with regard to "major portions of the <u>concrete parking aprons</u> and <u>staging areas for H&E's heavy equipment</u>" at its Baton Rouge and Kenner locations (emphasis added).[3]

By February 4, 2013, H&E had alleged that the design of the parking lot on the Baton Rouge facility did not provide for enough parking spaces. H&E accused URS of unethical behavior. **(See Exhibit 1.)** URS had provided a design of the parking lot that

---

[1] Pltff. Pet. at ¶16.
[2] Pltff. Pet. at ¶18.
[3] Pltff. Pet. at ¶13.

2

NON-CERTIFIED COPY

followed applicable zoning laws, standard procedures and guidelines.   URS' Vice President of the Baton Rouge office notified URS' in-house counsel, Alan Cohen, of the H&E claim on February 5, 2013.

H&E escalated the allegations through an attorney.  By email dated February 12, 2013, Mr. John Moore of the Taylor Porter law firm advised URS of its alleged "gross negligence in the design of parking space" and specifically requested  a copy of URS' general liability/professional liability insurance policies.  **(See Exhibit 2.)**  Said email alleged "breach" of the design standard and damages.  Furthermore, by separate email of the same date, February 12, 2013, Mr. Moore, attorney for H&E, advised URS that H&E would pay a subcontractor  to URS directly and that H&E would set-off such payment against monies allegedly owed by H&E to URS.  **(See Exhibit 3.)**  H&E did not pay the December, 2012, invoice from URS.  These emails from an attorney for H&E alleging gross negligence, breach, requesting liability insurance policies, withholding payments due under the contract, and paying subcontractors directly all indicated potential litigation not only by H&E, but also by URS to collect payments due.  H&E's actions in failing to pay and paying subcontractors directly were in breach of the contract, which indicated the need for future litigation to collect payment due.  H&E continued to withhold any payments to URS when the alleged design deficiency regarding the concrete staging areas for H&E's heavy equipment arose.  In fact, H&E has not made any payments due to URS since the December, 2012, invoice was sent. Alan Cohen, in-house counsel for URS, was involved in these disputes beginning in February of 2013.  To suggest that H&E's actions of making allegations of gross negligence and demanding liability insurance policies through an attorney while continuing its failure to pay and paying subcontractors directly in breach of the contract constitute the "regular course of business" is simply a mischaracterization.  As is set forth further below, based on H&E's own actions and omissions at the beginning of

3

NON-CERTIFIED COPY

2013, Defendants reasonably anticipated litigation with regard to the Projects before the documents at issue were generated.

## LAW AND ARGUMENT

### A. Defendants Have Properly Asserted the Work-Product Privilege and Plaintiff Is Not Entitled to Production of the Documents and Information at Issue.

La. Code civ. Proc. art. 1424, provides in pertinent part that:

> A. The court shall not order the production or inspection of any writing, or electronically stored information, obtained or **_prepared_** by the adverse party, his attorney, surety, indemnitor, or agent **_in anticipation of litigation_** or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice.
> *Emphasis added*

This provision restricts production of documents obtained or prepared in anticipation of litigation or readying for trial unless the party seeking production can show that failure to produce will result in unfair prejudice to him or cause him undue hardship or injustice.  Contrary to Plaintiff's assertion, it is well-settled that "it is not the date or time of the document which controls whether it was prepared in anticipation of litigation, but rather the content, nature, and purpose thereof."[4]

*Cacamo, supra.* presents an extreme example of the notion that the date or time of the document is not dispositive of whether it is obtained or prepared in anticipation of litigation.  In that case, which was decided in 2001, the Court found that legal opinions contained in an insurance company's documents **dating from the 1940s** suggested that the documents were prepared in anticipation of a trial or litigation, and, thus, the work-product privilege protected them, even though they were created over **_fifty years_** prior.[5]  Thus, H&E's point that the lawsuit was filed *"over eight months after"* the

---

[4] See, *e.g. Cacamo v. Liberty Mut. Fire Ins. Co.,* 1999-1421 (La. App. 4 Cir. 10/10/01), 798 So. 2d 1210, 1214; *Sonier v. Louisiana Power & Light Co.,* 272 So. 2d 32, 36 (La. App. 1 Cir. 1973); *Cargill, Inc. v. Cementation Co. of America, Inc.,* 377 So.2d 1334 (La.App. 1 Cir. 1979).
[5] *Id.* at 1214.

4

NON-CERTIFIED COPY

communications over which URS asserts privilege is of no moment where a court had no trouble determining that decades old documents were privileged.

The Court in *Cacamo* dismissed the party seeking production of the materials' argument that there was no way that the 50 plus year old materials could have been created for the lawsuits which did not arise until the late 1990s.[6] Specifically, the Court noted the absence of any jurisprudence to support the notion that the documents must have been prepared in anticipation of *this* litigation.[7] That Court noted that "Article 1424 requires that documents be prepared in anticipation of trial or litigation, but the article does not require that documents be prepared in anticipation of the litigation in which the documents are being requested."[8] Here, Plaintiff offers the proposition that the communications and documents at issue are not work-product since they were created prior to the imposition of a litigation hold notice. Notably, Plaintiff fails to cite any authority to support this position which is untenable when weighed in light of cases such as *Cacamo, supra.*

Here, H&E's actions and demands relative to the parking lot and staging area certainly created an anticipation of litigation to be brought by H&E on the part of Defendants; one which proved to be warranted insofar as these issues form parts of Plaintiff's claims. Additionally, H&E's failure to pay URS' invoices and paying subcontractors directly in breach of the contract gave rise to the anticipation of even more litigation by URS to collect payments due it, which again came to fruition when URS filed its Reconventional Demand seeking the amounts due and owing from H&E in connection with the Projects. The materials at issue represent internal communications and conferences with Defendants' hired sub consultant relative to items that ultimately became subject of this litigation at a time when Defendants

---

[6] *Id.*
[7] *Id. (Emphasis in original).*
[8] *Id.*

NON-CERTIFIED COPY

already anticipated litigation with H&E.    Accordingly, H&E is not entitled to production of the documents at issue.

H&E also makes the baseless and self-serving statement that the "majority of the documents and communications identified in URS' Privilege Log were generated in the normal course and scope of the contractual relationship between the parties..."[9]  The communications and documents at issue specifically dealt with a demand by H&E for repairs and damages to remedy conditions at H&E's jobsite that was beyond the scope of Defendants' responsibility under the 2009 Agreement.    Furthermore, as discussed above, by the time the URS documents and communications at issue were sent, H&E had already ceased paying amounts due to URS, paid subcontractors directly instead of URS, alleged URS was unethical, hired an attorney to allege URS was grossly negligent, and demanded liability insurance policies, all of which had necessitated the involvement of URS' in-house counsel.    Thus, these communications and documents were generated under anything but the normal course and scope of the contractual relationship between the parties and have been properly withheld under the work-product privilege.

### 2. *Defendants' Privilege Log*

La. Dist. Ct. R. 10.1 which provides that "before filing any motion to compel discovery, the moving party or attorney shall confer in person or by telephone with the opposing party or counsel for the purpose of amicably resolving the discovery dispute." Here, Plaintiff asserts, as secondary grounds for this Motion to Compel, that URS' Privilege Log is incomplete.    Notably, however, this issue was not addressed in the discovery conference that serves as a predicate for Plaintiff's motion nor was any subsequent discovery conference held for purposes of addressing this issue. Accordingly, this issue is not appropriately raised here, where the parties have yet to confer and attempt to resolve this issue.    Additionally, H&E's complaint that it has not

---

[9] Pltff. Mem in Supp. of Mot. to Compel, p.7.

6

NON-CERTIFIED COPY

been advised in the privilege log of Mr. Cohen's role is inaccurate. H&E is fully aware that Mr. Cohen attended a meeting with it in August of 2013 as in-house counsel for URS in an effort to resolve the disputes.

*3. Defendants Should be Awarded Attorney's Fees and Costs Incurred in Opposing This Motion to Compel*

Pursuant to La. Code Civ. Proc. art. 1469(4) If the motion is denied, the court *shall*, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust. Defendants have properly asserted the privileges that it has asserted in this matter and as such this Motion to Compel is improper. Additionally, with regard to the privilege log, Plaintiff has failed to comply with the prerequisites to even filing this Motion. For these reasons and upon denial of Plaintiff's Motion to Compel, Defendants should be awarded attorney's fees and costs associated with this Motion to Compel.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's Motion to Compel should be denied and Defendants should be awarded reasonable attorneys' fees and costs associated with the filing of this motion pursuant to La. Code Civ. Proc. art. 1469(4).

Respectfully submitted,

ADAMS AND REESE, LLP

Philip A. Franco    (Bar #5819), TA
Ronald J. Sholes    (Bar # 14436)
Kellen J. Mathews    (Bar #31860)
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Fax: (504) 566-0210

**ATTORNEYS FOR DEFENDANTS, URS CORPORATION ARCHITECTURE, P.C.; URS CORPORATION; L. O'NEAL RYAN AND THOMAS E. RYAN, III**

7

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record via United States mail, properly addressed, and first class postage prepaid and via email, this the ___5TH___ day of June, 2015.

_____
Kellen J. Mathews

NON-CERTIFIED COPY

8



201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:   504.566.5200
FAX:   504.636.4000

www.bakerdonelson.com

# FAX COVER SHEET

| FROM | Shelley Tannehill |
|---|---|
| EMAIL | stannehill@bakerdonelson.com |
| BILL CODE | |
| TO | |
| COMPANY | |
| FAX NUMBER | 12253893392 |
| DATE | 05/06/2015 19:10:21 CST |
| RE | H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al |

## COVER MESSAGE



**Shelley Tannehill**
**Legal Secretary to Danielle Trostorff, Shareholder,**
**Margaret Silverstein and Laura Carlisle**

**Baker, Donelson, Bearman,**
**Caldwell & Berkowitz, PC**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, Louisiana 70170**
**Telephone: 504.566.8658**
stannehill@bakerdonelson.com<mailto:stannehill@bakerdonelson.com>
www.bakerdonelson.com<http://www.bakerdonelson.com/>

**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. with offices in**
**Alabama, Florida, Georgia, Louisiana, Mississippi, Tennessee, Texas and Washington, D.C.**

[Description: Description: cid:747443820@21092011-2865]<http://www.bakerdonelson.com/>

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For(r)" for Six Years in**
**a Row!**
 P Please consider the environment before printing this e-mail.

**************************************************************

Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above.  If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited.  If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.

Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB    Document 4-1    07/16/18    Page 20 of 85

Under requirements imposed by the IRS, we inform you that,
if any advice concerning one or more U.S. federal tax issues is contained
in this communication (including in any attachments and, if this communication is by email,
then in any part of the same series of emails), such advice was not intended
or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used,
and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or
(2) promoting, marketing or recommending to another party any transaction or tax-related matter
addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law.
It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this
electronic mail transmission in error, please delete it from your system without copying it, and notify the
sender by reply e-mail, so that our address record can be corrected.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.

NON-CERTIFIED COPY

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

NON-CERTIFIED COPY

# BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:  504.566.5200
FAX:    504.636.4000

www.bakerdonelson.com

LAURA E. CARLISLE
Direct Dial: (504) 566-8643
Direct Fax: (504) 585-6943
E-Mail Address: lcarlisle@bakerdonelson.com

June 5, 2015

<u>**VIA FACSIMILE (225) 389-3392**</u>

Hon. J. Douglas Welborn
Clerk of Court, 19th JDC
Parish of East Baton Rouge
300 North Boulevard
P.O. Box 1991
Baton Rouge, Louisiana 70821

Re:    *H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al.*
       19th JDC No. 626308, Division "D", Section XXI

Dear Mr. Welborn:

Attached please find an Opposition to Defendants' Motion for Summary Judgment and Response to Statement of Undisputed Material Facts Submitted in Support of Defendants' Motion for Summary Judgment which we ask that you file with the Court on behalf of Plaintiff, H&E Equipment Services, Inc. Once we have received your fax confirmation, we will forward the originals to you along with our check for the filing and fax fees associated with this request.

Thank you for your assistance in this matter, and if you have any questions, please do not hesitate to contact us.

With kindest regards, I remain

Sincerely,

Laura E. Carlisle

LEC/sdt
Attachment
cc:    Philip A. Franco, Esq. w/encl. via facsimile  (504) 566-0210
       Kellen Matthews, Esq. w/encl. via facsimile (225) 336-5220

NO LEC 866426 v1
2919213-000024 06/05/2015

ALABAMA    FLORIDA    GEORGIA    LOUISIANA    MISSISSIPPI    TENNESSEE    TEXAS    WASHINGTON, D.C.

NON-CERTIFIED COPY

| H&E EQUIPMENT SERVICES, INC. | * | CASE NO. C626308, SECTION D |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON, AND THOMAS E. RYAN, III | * | PARISH OF EAST BATON ROUGE |
| | * | STATE OF LOUISIANA |
| FILED:_____ | | _____ |
| | | DEPUTY CLERK |

### OPPOSITION TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this memorandum in opposition to the Motion for Summary Judgment (the "Motion") filed by defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "Defendants"). H&E also submits herewith its Response to the Statement of Undisputed Material Facts Submitted in Support of Defendants' Motion for Summary Judgment.

### Introductory Statement

As the Court may know from the pending Motions to Compel already before it, this suit stems from damages suffered by H&E as a result of deficient designs and specifications prepared by Defendants for the construction and renovation of H&E facilities in Baton Rouge, Kenner, and Belle Chasse, Louisiana between 2006 and 2013. Among other things, H&E has alleged that Defendants breached their contractual and professional duties in their design for concrete pads constructed to Defendants' specifications at H&E's Baton Rouge and Kenner, Louisiana facilities, and further failed to address and remedy observed crumbling and spalling in the concrete that began in 2012 and/or early 2013 and continues to worsen to this day.

Plainly, if H&E proves at trial that Defendants breached their contractual and professional duties, then Defendants must be held liable for the damages caused by those breaches. Indeed, this is a case in which damages are the only meaningful remedy. Nevertheless, the defendants' Motion for Summary Judgment asks the Court to dispose of H&E's claims for damages and effectively dismiss this case based on language contained in one of the parties' master services agreements (but not the only master services agreement between them) that Defendants contend limits H&E to the remedy of re-performance of the defective design services within one year of substantial completion. Re-performance of the defective work

-1-

NON-CERTIFIED COPY

– that is, simply allowing Defendants to give H&E the concrete design that Defendants should have provided in the first place – would not cure the concrete problems that Defendants' defective specifications have caused. In short, Defendants are asking this Court to interpret one of the parties' agreements in a manner that would leave H&E with no meaningful remedy against them.

Additionally, while Defendants now insist that they are only obligated to re-perform their defective designs and specifications, they did not re-perform the work within the requisite one-year period – even though H&E timely notified Defendants of the observed problems in hopes that the parties might collectively find a resolution and remedy the issues.

Even more, the terms of the 2009 Short Form Master Agreement for Professional Services[1] (the "2009 Agreement") relied on so heavily by the defendants in their Motion simply do not have the effects Defendants propose, nor do they foreclose H&E's claims against Defendants for damages resulting from their defective work. Among other things, the 2009 Short Form Master Agreement for Professional Services is ***not*** the only agreement that governs the parties' relationship, it plainly has no application to the work that Defendants performed before 2009 (which is substantially all of the relevant work at the Baton Rouge facilities), and its express scope is limited to work performed exclusively for H&E's Kenner facility. Further, even for the work governed by the 2009 Agreement, there appear to be significant issues of material fact with respect to what the parties intended by virtue of the agreement.

In short, summary judgment is simply not appropriate, and H&E respectfully urges this Court to deny Defendants' Motion.

## I.    Defendants' Motion Provides an Incomplete History of the Contractual Relationship Between the Parties.

Defendants' Motion discusses only one of the agreements between the parties – in doing so, the Motion makes it seem as if the relationship between Defendants and H&E *began* with and is governed solely by the Short Form Master Agreement for Professional Services between the parties dated August 13, 2009 (the "2009 Agreement"). This is not correct.[2] Absent from Defendants' Motion is any mention of the other agreement at issue – the Agreement for Professional Services entered into and executed by the parties on or about August 28, 2006 (the

---

[1]    A copy of the Short Form Master Agreement for Professional Services, dated 8/13/2009, with its attachments, are attached *in globo* as Exhibit "2."

[2]    *See generally,* Affidavit of Frankie Wynn, ¶ 7, attached as Exhibit "1."

-2-

NON-CERTIFIED COPY

"2006 Agreement").[3]  Also absent is any mention of how the 2009 Agreement came about.  The mere existence of the 2006 Agreement and the history behind the 2009 Agreement are sufficient to raise critical fact issues and render summary judgment inappropriate.

      A.     *The Baton Rouge Facilities and the 2006 Agreement Between the Parties*

      The relationship between H&E and Defendants began with discussions regarding the design for and construction of H&E's new corporate headquarters and branch facility in Baton Rouge, Louisiana – the most significant part of the relationship.  On or about August 28, 2006, in anticipation of these Baton Rouge projects, Defendants presented H&E with an Agreement for Professional Services (referred to herein as the "2006 Agreement"), which expressly was to govern Defendants' performance of design services and specifications via a series of Work Orders that would set forth specific scopes of services, timelines for completion, and construction costs and compensation.[4]  The 2006 Agreement provided the contractual framework for the construction of H&E's corporate headquarters and Baton Rouge branch facility.[5]

      Defendants' professional duties and responsibilities are set forth in Article III of the 2006 Agreement, pursuant to which:

> [Defendants are] obligated to comply with applicable standards of professional care in the performance of the Services [set forth in individual Work Orders]. ...[6]

Unlike the 2009 Agreement upon which Defendants entirely base their Motion for Summary Judgment, the 2006 Agreement does *not* purport to waive recoverable damages for Defendants' breach of their professional responsibilities and/or duty of care with respect to their design and specifications for the H&E projects, except to limit Defendants' aggregate liability under the 2006 Agreement to $5,000,000.00 for claims arising from professional negligence and $2,000,000 for claims arising from negligence, breach of contract, or other causes of action.[7]  The 2006 Agreement also includes a waiver of consequential damages by both parties, including

---

[3]     *See* Agreement for Professional Services between H&E Equipment Services, Inc. and URS Corporation Architecture, NC, PC, dated 8/28/2006, attached as Exhibit "3."

[4]     *See* Ex. "3," 2006 Agreement.

[5]     *See generally*, Ex. "3," 2006 Agreement.

[6]     Ex. "3," 2006 Agreement, art. III.

[7]     Ex. "3," 2006 Agreement, art. V.

NON-CERTIFIED COPY

damages for loss of use and/or profits.[8]  As shown below, the damages H&E seeks to recover are not consequential damages.

> **B.   *H&E Proposes Renovations to its Kenner Facility,
> and Defendants Present it with the 2009 Agreement.***

The parties operated under the 2006 Agreement for a number of years, including throughout the relevant design phase of the Baton Rouge project.  After the substantial majority of the design work – including the defective concrete specifications now at issue – had been performed, H&E decided to put its corporate headquarters and Baton Rouge branch facility on hold.  In or around 2009, while work on H&E's Baton Rouge facilities was on hold, H&E discussed with Defendants renovations to its existing Kenner, Louisiana facility.  In the context of those discussions regarding the Kenner facility, Defendants presented H&E with a new agreement; and, on or about August 13, 2009, the parties entered into and executed the 2009 Agreement to govern Defendants' work in helping H&E to develop a budget for possible renovations at its Kenner facility.[9]

There was no question that the 2006 Agreement would continue to govern that portion of the work – including the concrete specifications – already performed and to be performed in the future on the corporate headquarters and Baton Rouge branch facility.  And, indeed, with respect to the construction documents prepared by Defendants for the corporate headquarters and Baton Rouge branch facility, Defendants continued to issue Invoices that specifically referenced and incorporated the 2006 Agreement.[10]  As presented to H&E, the 2009 Agreement applied only to the budgeting phase for the renovation of its Kenner facility.[11]  The 2009 Agreement's document identifier – "I:\Proposals\Facilities\H&E Equipment Services – Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc" – as well as the correspondence accompanying the 2009 Agreement as it was presented to H&E indicate that the 2009 Agreement was intended by Defendants to govern only work performed in helping H&E to

---

[8]      *See id.* at art. VII.

[9]      *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

[10]     *See, e.g.,* Invoice No. 4602441, dated 2/24/11, attached as Exhibit "4," and Invoice No. 4666033, dated 4/27/11, attached as Exhibit "5."

[11]     *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

-4-

NON-CERTIFIED COPY

develop a budget for the Kenner project.[12]

## II.   Defendants Cannot Carry their Burden on Summary Judgment.

Summary judgment should be granted *only* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966; *see also, e.g., Rager v. Bourgeois*, 2006-0322, p. 5 (La. App. 1st Cir. 2006), 961 So. 2d 330, 333; *Carter v. BRMAP*, 591 So. 2d 1184, 1187 (La. App. 1st Cir. 1991). The burden remains on the movant, and any reasonable doubt must be resolved against the moving party. *See, e.g., Rager*, 961 So. 2d at 333; *Carter*, 591 So. 2d at 1187. In the context of contractual disputes, summary judgment is appropriate only where the words of a contract are clear, *unambiguous*, and do not lead to absurd consequences; where a contract is ambiguous *and/or the intent of the parties becomes a question of fact*, summary judgment is not appropriate. *See, e.g., Carter*, 591 So. 2d at 1187. Summary judgment is further rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. *Id.*

Here, Defendants' Motion is necessarily dependent upon the resolution of the following questions:

1.   Whether the 2009 Agreement governs the parties' relationship with respect to *all three sites* – Baton Rouge, Kenner, and Belle Chasse;

2.   Whether the 2009 Agreement's "Warranty" provision limits H&E's available remedies for defective or non-conforming design services to "re-performance" of those services; and

3.   Whether the 2009 Agreement effectively waives H&E's right to recover consequential damages.

H&E submits that the answer to all three of these questions is "no" or, at the very least, each of these questions implicates issues of material fact. Accordingly, summary judgment is not appropriate.

> A.   *The 2009 Agreement Does Not Apply to All of the Work Performed by Defendants or Exclusively Govern the Relationship Between the Parties.*

Defendants' Motion fails to address the question of which projects are governed by the 2009 Agreement and, instead, presupposes that the entirety of the projects at issue are all subject to the 2009 Agreement. Indeed, Defendants do not even mention the 2006 Agreement – a

---

[12]   *See id.*

-5-

NON-CERTIFIED COPY

Received
05/06/2015 19:11:52 CST

Jun  5 2015  08:18pm    15045856904  From: Shelley Tannehill

somewhat disingenuous and misleading decision given that Defendants expressly continued to operate under the 2006 Agreement in connection with portions of the corporate headquarters and Baton Rouge branch facility even after the 2009 Agreement was signed.

When it was signed, both parties intended that the 2009 Agreement apply only to budgeting for H&E's Kenner facility renovations.[13] In this regard, they did not intend that it apply to those portions of the Baton Rouge project for which Defendants had already provided designs and specifications.[14] And, both parties operated with the understanding that the 2009 Agreement did not apply to the construction of the corporate headquarters and Baton Rouge branch facility, as underscored by the various Baton Rouge invoices Defendants submitted specifically referencing the 2006 Agreement even after 2009.[15] While Defendants make much of the 2009 Agreement's standard integration clause, pursuant to which "[t]his Agreement constitutes the final and complete repository of the agreements between [H&E] and [Defendants] relating to the Services and supersedes all prior or contemporaneous communications, representations, or agreements," that clause demonstrates only that the parties intended that the 2009 Agreement integrate and memorialize the parties' full agreement as to the subject matter before them at the time – Defendants' work in helping H&E to develop a budget for renovations to its Kenner facility.

Defendants apparently contend that the integration clause means that the 2006 Agreement has no effect.[16] This is wrong for two reasons. First, the Work Orders primarily at issue in this litigation in connection with the corporate headquarters and Baton Rouge branch facility – those pertaining to design development and the preparation of construction documents – explicitly reference the 2006 Agreement, as do final Invoices (2011) related to that work.[17] The parties plainly agreed, then, that the 2006 Agreement controls all rights and responsibilities for work performed in connection with design development and Defendants' preparation of construction documents for the Baton Rouge facilities. (Alternatively, at a minimum, the fact that the Work Orders at issue – and their related Invoices – refer to the 2006 Agreement raises a factual issue

---

[13]    *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

[14]    *See, e.g.,* Ex. "4," Invoice No. 4602441 and Ex. "5," Invoice No. 4666033.

[15]    *See supra* note 10.

[16]    *See* Ex. "2," 2009 Agreement, ¶ 18.1.

[17]    *See, e.g.,* Lump Sum Work Order No. 08-01, attached as Exhibit "6," and Ex. "4," Invoice No. 4602441 and Ex. "5," Invoice No. 4666033.

-6-

NON-CERTIFIED COPY

that cannot be disposed of on summary judgment.) Second, the 2009 Agreement is explicitly made "effective as of August 13, 2009,"[18] and it has no application to work performed by Defendants prior to that date. Nothing in the 2009 Agreement makes it apply retroactively, and certainly the "supersede" language does not change history and make it such that the 2006 Agreement never existed. (And again, the fact that there is an effective date in the 2009 Agreement does, at a minimum, raise a factual question about the application term of the 2009 Agreement that cannot be disposed of on summary judgment.)

The contractual history across the three H&E sites at issue is not as simple as Defendants make it seem in their Motion. All available evidence indicates that the parties did *not* intend to have the 2009 Agreement govern the relevant design phases for the corporate headquarters and Baton Rouge branch facility projects. As such, regardless of the effects of the 2009 Agreement, the 2009 Agreement is limited in its application. At a minimum, the evidence raises a question of fact as to which Agreement governs the relevant phases for the corporate headquarters and Baton Rouge branch facility and, therefore, summary judgment is inappropriate.

B.    *The 2009 Agreement's Purported Limitation of Warranty*
      *and Waiver of Recoverable Damages is Ineffective.*

Unlike the 2006 Agreement, the 2009 Agreement includes a "Warranty" provision, pursuant to which:

> [Defendants] sole liability to [H&E] for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by [H&E] to [Defendants]. Defendants' obligation for re-performance of non-conforming Services as set forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.[19]

Defendants contend that this provision waives H&E's right to recoverable damages and limits H&E's remedies to the one, exclusive remedy of re-performance of the defective design work within one year of substantial completion. But, as depicted by Defendants, the 2009 Agreement's "Warranty Provision" purports to limit Defendants' professional duty of care – a duty of care imposed by law, *see, e.g., Calandro Development, Inc. v. R.M. Butler Contractors, Inc.*, 249 So.2d 254, 265 (La. Ct. App. 1st 1971) – in such a draconian manner as to completely rob H&E of any effective remedy. Defendants' proffered interpretation of the provision is so harsh that it offends public policy and is, therefore, unenforceable in the manner Defendants

---

[18]    *See* Ex. "2," 2009 Agreement, p. 1.

[19]    Ex. "2," 2009 Agreement, ¶ 4.1.

NON-CERTIFIED COPY

describe. There are a number of reasons why this provision does not have the effects Defendants propose.

At the outset, Defendants did not attempt to re-perform or even assert their alleged right to re-perform the defective design services and specifications within one year of substantial completion, despite the fact that Defendants were on notice of the non-conforming Services.[20] In fact, H&E notified Defendatns of the breaking and spalling concrete pads at the Baton Rouge and Kenner sites when those problems surfaced, in hopes that the parties might work together to find a solution and remedy. Defendants simply refused to participate in ongoing discussions and efforts to fix the pads and, indeed, refused to share with H&E or the project contractors information regarding its own apparent efforts to troubleshoot the problem and what they and their engineering consultant concluded about the problem.[21] In other words, Defendants did not "re-perform the nonconforming or defective Services" within the year required by the provision on which Defendants rely. As such, Defendants waived whatever limitation of liability might exist in the "Warranty" provision.

More fundamentally, Defendants have not cited any case law or authority allowing a professional such as an architect or engineer to effectively eliminate liability for breaches of professional duties, as Defendants propose they have done here. What Defendants argue is that they may remedy their defective concrete specification –which has already been used to construct enormous concrete pads – simply by handing H&E a piece of paper containing the specification that Defendants should have employed in the first place. Plainly, this would do literally nothing to address the problems that Defendants and their specifications have caused; nor would it provide H&E with any kind of meaningful remedy, leaving H&E to pay for the costs of demolition and new construction. Such would be completely antithetical to the public policies behind the imposition of a professional duty of care in the first place.

In fact, taken to its logical conclusion, Defendants' interpretation of the "Warranty" provision would abrogate any rights or remedies that a party may have for design defects and provide no relief for a design professional's errors. Such a result is inimical to Louisiana's public policy and must be avoided. *Cf. generally, e.g., Lombardo v. Deshotel*, 94-1172, p. 6

---

[20]    See Ex. "1," Wynn Affidavit, ¶¶ 11-12; *see also generally, e.g.*, Request for Information No. 54, dated 1/15/13, attached as Exhibit "7"; *see also*, Emails between Frankie Wynn and Neal Johnson, dated 6/6/13-6/11/13, attached *in globo* as Exhibit "8."

[21]    Ex. "2," Wynn Affidavit, ¶¶ 11-12; *see also, generally*, H&E's Memorandum in Support of Motion to Compel.

-8-

NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

(La. 11/30/94), 647 So. 2d 1086 (stipulated damages provisions that are manifestly unreasonable may be set aside as against public policy); *Keiser v. Catholic Diocese of Shreveport, Inc.*, 880 So. 2d 230, 236 (La. App. 2 Cir. 2004) (stipulated damages provisions that do not approximate actual damages but are rather purely penal in nature violate public policy and are thus void and enforceable); *Am. Leasing Co. of Monroe v. Lannon E. Miller & Son, Gen. Contracting, Inc.*, 469 So. 2d 325, 328-29 (La. Ct. App. 2d 1985) (same).

In their Motion for Summary Judgment, Defendants rely heavily on case law regarding warranty provisions and waivers of liability in the context of contracts for the sale of goods for the proposition that contracts limiting liability generally are enforceable under Louisiana law. The analogy is inapplicable to this case – the client of an engineer or architect who has already completed construction according to faulty designs cannot be "made whole" by the design professional's simply re-doing those designs as a consumer can be made whole by a seller's re-provision of a product. But, in any event, the "Warranty" provision included in the 2009 Agreement does not satisfy the requirements for the effective waiver of liability or recoverable damages via warranty provisions even in the context of contracts of sale.

Louisiana law imposes strict requirements on purported waivers of recoverable damages in the context of warranty provisions. *See generally, e.g., Southwest Louisiana Hosp. Assoc. v. BASF Constr. Chemicals, LLC*, 947 F. Supp. 2d 661, 670-71 (W.D. La. 2013). If a party wishes to limit or waive an implied warranty and/or use a warranty provision to limit or waive their liability or recoverable damages, the waiver must be: (1) written in clear and unambiguous terms; (2) contained in the contract (of sale); and (3) brought to the attention of and explained to the party against whom it is to be enforced. *See id.*; *Prince v. Paretti Pontiac Co.*, 281 So. 2d 112, 117 (La. 1973); *see also, Harvey v. Mosaic Fertilizer*, LLC, No. 06-9510, 2009 WL 3112144, *5 (W.D. La. 9/25/09) (extending *Prince* test to warranty provisions that limit liability or recoverable damages); *Fontenot v. F. Hollier & Sons*, 478 So. 2d 1379, 1386 (La. Ct. App. 3d 1985) (same). The seller or party seeking to enforce the waiver or limitation – in this case, Defendants – has the burden of showing that all three requirements are satisfied. *See, e.g., Southwest Louisiana Hosp. Assoc.*, 947 F. Supp. 2d at 670. Further, even if these requirements are met, a waiver is still null if it purports to exclude or limit liability for damages caused by intentional or gross fault. *See* La. Civ. Code art. 2004; *see also, e.g., Conmaco/Rector L.P. v. L&A Contracting Co.*, No. 12-2337, 2013 WL5881576, *4 (E.D. La. 10/30/13).

-9-

NON-CERTIFIED COPY

Defendants' refusal to share information regarding their apparent efforts to troubleshoot the concrete problems in connection with the Kenner and Baton Rouge projects – which is now subject to one of the pending Motions to Compel – suggests at least a question of material fact as to whether Defendants' breach of their professional duty of care was intentional and/or amounts to gross negligence. This alone instructs that summary judgment is inappropriate.

Furthermore, Defendants fail to read the "Warranty" provision in light of the 2009 Agreement as a whole. Among other things, the 2009 Agreement also includes a "Limitation of Liability" provision that purports to limit Defendants' liability to H&E "resulting from, arising out of or in connection with the performance of nonperformance of any or all Services or other obligations under a Work Authorization [to] $250,000 or ten percent (10%) of the compensation paid [Defendants] pursuant to such Work Authorization, whichever is greater" – indicating that the parties contemplated the recovery of damages for Defendants' failure to perform design services in accordance with their professional duty of care. [22] Plainly, if the "Warranty" provision meant – as Defendants now contend – that Defendants would never have to pay anything to their customers, no matter what they did, then a limitation of the amount of money they might have to pay would be without effect. Similarly, the 2009 Agreement includes a Waiver of Consequential Damages[23] that also contemplates the recovery of damages, albeit not consequential ones. Again, that provision would be unnecessary and ineffective if the "Warranty" clause meant that Defendants would never have any liability for damages. As "[e]ach provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective," the presence of these conflicting limitations in the 2009 Agreement renders the waiver of recoverable damages in the "Warranty" provision at the very least ambiguous. *Lis v. Hamilton*, 652 So. 3d 1327, 1330 (La.1995) (citations omitted); *see also, Canmaco/Rector L.P.*, 2013 WL 5881576, at *2. Defendants cannot show that the waiver of recoverable damages included in the 2009 Agreement's "Warranty" provision satisfies this first requirement of an effective waiver of recoverable damages.

---

[22]    Ex. "2," 2009 Agreement, ¶ 9.1.

[23]    *Id*. at ¶ 8.1.

-10-

NON-CERTIFIED COPY

In sum, Defendants have failed to show that the purported waiver of recoverable damages included in the 2009 Agreement satisfies even the requirements of an effective waiver in the context of contracts of sale. They certainly have not shown – and cannot show – that there are no disputed issues of material fact with respect to whether the waiver satisfies those requirements or what the intent of the parties was with respect to the "Warranty" clause. As such, summary judgment is not appropriate, and H&E is entitled to have this Court deny Defendants' Motion. *See, e.g., Carter*, 591 So. 2d at 1187

> C.   *Summary Judgment as Proposed by Defendants Is Also Inappropriate as to the 2009 Agreement's Waiver of Consequential Damages.*

Lastly, Defendants' Motion seeks summary judgment as to the waiver of consequential damages pursuant to the 2009 Agreement, which they argue forecloses H&E's right to seek recovery for various kinds of damages such as loss of use and/or profit as well as increased or additional construction costs occasioned by Defendants' deficient designs. To make this claim, Defendants rely entirely on the 2009 Agreement. (The 2006 Agreement also includes a waiver of consequential damages but contains different language.) As discussed above, the 2009 Agreement does not even apply to the work at issue at H&E's corporate headquarters and Baton Rouge branch facility and, therefore, summary judgment is not appropriate.

More generally, however, Defendants' Motion should be denied because H&E is *not seeking* the kinds of damages supposedly prohibited by contractual waivers of consequential damages. H&E is seeking damages for the costs of repairs and/or additional completion costs directly resulting from Defendants' deficient designs and the damages associated with Defendants' having led H&E to believe that a particular project was appropriate and feasible, which are not consequential damages – they are the damages resulting directly from Defendants' defective design work. *See generally, e.g., D&O Contractors, Inc. v. Terrebonne Parish Sch. Bd.*, 545 So. 2d 588, (La. Ct. App. 1st 1989) (appropriate measure of damages against architect who breached standard of care in designing resurfacing project at school running tracks was the cost necessary to repair defects in tracks that resulted from his negligence); *see also, generally, e.g.*, La. Civ. Code art. 2769; *Melancon v. Tri-Dyne Tele-Pier, LLC*, 11-1055 (La. App. 5 Cir. 5/31/12), 95 So. 3d 576 (appropriate measure of direct damages for defects in construction is the costs of repairs or completion); *Primaux v. Gaspard*, 385 So. 2d 1250, 1253 (La. Ct. App. 3d 1980) (applying Article 2769 to suit against engineer for defective design of structure); *c.f.*

-11-

NO LEC 866432.v1
2919213-000024

NON-CERTIFIED COPY

*generally, e.g.,* La. Rev. Stat. § 9:2775 (defining consequential damages as "loss of revenue, production, profits, use, rental income, or cost of replacement facilities, equipment and/or product, as may be applicable"). Such direct damages include, by way of example only, the estimated costs of taking the steps necessary to fix the concrete that is now breaking and spalling at H&E's Baton Rouge and Kenner facilities; the increased costs associated with having to add parking spots at the Baton Rouge facility after construction and landscaping was largely complete because Defendants failed to include the required number of spots in their design; door, frame, and hardware revisions in connection with all of the projects due to defects in Defendants' drawings; and numerous other change orders during the course of the projects necessitated by deficiencies and mistakes in Defendants' designs and specifications. By contrast, consequential damages would include such items as loss of use or loss of profit that H&E suffered as a result of Defendants' deficient design work and problems resulting therefrom. *See generally, e.g.,* La. Rev. Stat. § 9:2775; *Burmaster v. Plaquemines Parish Gov't,* 2010-1543, p. 8 (La. App. 4 Cir. 3/30/11), 64 So. 3d 312, 319 (observing that consequential damages to insured include things like "stigma, inconvenience, loss of enjoyment, loss of business income, increased costs of insurance, and increased deductibles").

H&E is not seeking such consequential damages, making Defendants' Motion moot. To the extent Defendants argue that the 2009 Agreement's waiver of consequential damages includes repair and completion costs like those discussed above, such an interpretation is, once again, contrary to those provisions of the 2009 Agreement that contemplate the recovery of damages and would lead to the absurd consequence of leaving H&E unable to recover any damages whatsoever. It is further contrary to the basic meaning of direct damages in the construction context under Louisiana law. At the very least, the 2009 Agreement's reference to "increased costs of construction" in connection with the waiver of consequential damages is ambiguous and cannot be relied upon as dispositive of the parties' intent.

H&E does not contest that the 2009 Agreement waives consequential damages such as loss of use or loss of profit as to the Kenner and Belle Chasse projects but disputes that the waiver includes direct damages items like repair and completion costs directly occasioned by Defendants' deficient designs and specifications – which are the only damages that H&E is seeking. Accordingly, summary judgment in this regard is inappropriate.

-12-

NO LEC 866432 v1
29\19213-000024

NON-CERTIFIED COPY

III.    **Summary Judgment is Inappropriate Because This Case
        is in Its Infancy, and Insufficient Discovery Has Occurred.**

For all of the above reasons, summary judgment is simply inappropriate. In addition,
however, there has been insufficient discovery to warrant summary judgment at this stage of the
parties' dispute. *See* La. C.C.P. art. 966(C)(1) (establishing the timing of summary judgment as
"After adequate discovery or after a case has been set for trial."). Thus far, however, the parties
have only exchanged written discovery responses and objections. Though they are in the process
of exchanging hard copy documents and drawings, they have not begun the larger and more
important task of searching for and exchanging emails and other electronically stored
information, which will constitute the lion's share of documents in this case. No depositions
have been taken. Similarly, while H&E anticipates that both parties will retain experts and
exchange expert reports, they have not done so yet. Thus, the parties have not conducted
"adequate discovery." Indeed, there are two Motions to Compel currently pending before the
Court, one of which seeks to compel Defendants to produce, among other things, a third-party
evaluation and report regarding problems with the concrete at H&E's Baton Rouge and Kenner
facilities observed early on, long before litigation, and related correspondence and documents –
documents that arguably go to the question of what Defendants knew and intended with respect
to observed problems with and repairs to the concrete as well as their own obligations with
respect to those problems.

Defendants' assertions to the contrary notwithstanding, there are numerous disputed
issues of material fact in this case, including but not limited to the parties' intent as to the effects
of the "Warranty" provision and waiver of consequential damages included in the 2009
Agreement. Discovery regarding the parties' intent is therefore necessary.

While discovery need not be entirely completed before a Motion for Summary Judgment
is filed or heard, it must be sufficiently completed to leave no contested issues of material facts.
This case is not a case with uncontested issues of material fact.

IV.    **Conclusion**

Defendants' Motion is predicated on the incorrect notion that the 2009 Agreement
controls the entirety of this dispute. It does not. Plainly, the 2006 Agreement controls
Defendants' responsibilities at the Baton Rouge facilities, and questions remain regarding the
parties' intent with regard to the application of the 2009 Agreement to other issues.

-13-

NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

Notwithstanding Defendants' assertions to the contrary, this case involves significant questions of material fact, any one of which renders summary judgment inappropriate. For all of the reasons set forth above, H&E respectfully urges this Court to deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY: _Laura E. Carlisle_

ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR H&E EQUIPMENT
SERVICES, INC.**

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served on all known counsel of record who have appeared in this matter by facsimile and/or electronic mail and by placing same in the United States mail, in a properly addressed envelope, with first-class postage prepaid.

_Laura E. Carlisle_
LAURA E. CARLISLE

FILED

JUN 05 2015

DEPUTY CLERK OF COURT

-14-

NO LEC 866432 v1
291213-000024

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB   Document 4-1   07/16/18   Page 37 of 85

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES, INC. | * | CASE NO. C626308, SECTION D |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON, AND THOMAS E. RYAN, III | * | PARISH OF EAST BATON ROUGE |
| | * | STATE OF LOUISIANA |
| FILED: _____ | | |

_____
DEPUTY CLERK

## AFFIDAVIT OF FRANKIE WYNN

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

NOW COMES, Frankie Wynn, who under penalty of perjury and from his own personal knowledge, states:

1. I am over the 18 years of age and competent to give testimony in this matter. I have personal knowledge of all facts and circumstances in this Affidavit.

2. I submit this Affidavit in support of the Opposition to Defendants' Motion for Summary Judgment filed by H&E Equipment Services, Inc. ("H&E").

3. I am currently the Director of Facilities/Risk/Compliance Management for H&E and am based out of H&E's Corporate Headquarters located at 7500 Pecue Lane, Baton Rouge, Louisiana. I have held this position since May 2010, prior to which I served as H&E's Risk/Asset Manager.

4. As H&E's Director of Facilities, I was responsible for overseeing the construction phase of the Baton Rouge, Kenner, and Belle Chase, Louisiana projects at issue in this litigation.

5. I officially began overseeing the Baton Rouge, Kenner, and Belle Chase construction projects in 2010. In addition, I maintain H&E's files regarding the projects and have reviewed the documents relevant to this dispute.

6. During my involvement with the projects, I regularly communicated with L. O'Neal Johnson, Thomas E. Ryan, III, and other representatives and employees of URS Corporation Architecture, P.C. and URS Corporation (collectively, referred to as "URS"), as well as the various general contractors and subcontractors for the three projects.

7. I am aware of two master services agreements that pertain to the Baton Rouge, Kenner, and Belle Chase projects: the Agreement for Professional Services entered into and executed by the parties on or about August 28, 2006 (the "2006 Agreement"), and the Short

-1-

NO LEC 866095 v3
2919213-000024



EXHIBIT

"1"

NON-CERTIFIED COPY

Form Master Agreement for Professional Services between the parties dated August 13, 2009 (the "2009 Agreement").

8.    A true and correct copy of the 2006 Agreement is attached to H&E's Opposition to Motion for Summary Judgment as Exhibit "3."

9.    A true and correct copy of the 2009 Agreement is attached to H&E's Opposition to Motion for Summary Judgment as part of Exhibit "2."

10.    There have been multiple problems associated with the work performed by URS on all three projects at issue. Among other things, during and/or around the time of substantial completion of the Baton Rouge and Kenner projects, H&E and the project contractors began to observe crumbling and spalling in the concrete constructed to URS's specifications at the facilities.

11.    H&E notified URS of the observed problems with the concrete at the Baton Rouge and Kenner sites when those problems surfaced, in hopes – and with the expectation – that the parties would work together to find a solution and remedy. But, while URS initially appeared willing to troubleshoot the problems, they ultimately refused to participate in ongoing discussions and efforts to fix the concrete pads. URS also refused to share with H&E or the project contractors information regarding its own apparent efforts to troubleshoot the problem and what it and its engineering consultant concluded about the problem.

12.    URS did not attempt or offer to re-perform its design services or provide new specifications for the concrete pads at the Baton Rouge and Kenner facilities.

13.    The concrete problems at the Baton Rouge and Kenner facilities began in or around late 2012 and early 2013 – near the time of substantial completion – and continue to worsen to this day.

Dated:    June   **5**  , 2015

_____
FRANKIE WYNN

SWORN TO AND SUBSCRIBED
BEFORE ME ON THIS THE
5th DAY OF JUNE, 2015.

_____
NOTARY PUBLIC

James D. Seymour, Notary Public
LA Bar Roll No.: 29418
Commissioned for East Baton Rouge, Louisiana
Qualified to act Statewide
My Commission is for Life.

-2-

NO LBC 866695 v3
2919213-000024

NON-CERTIFIED COPY

To:  Page 21 of 50

Received
Case 3:18-cv-00690-BAJ-RLB    Document 4-1   Jun 07 2015 08:41pm   Page 39 of 85
05/06/2015 19:11:52 CST                                          15045856904  From: Shelley Tannehill



## URS

### SHORT FORM MASTER AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### H&E Equipment Services, Inc.
### AND
### URS Corporation Architecture PC

THIS AGREEMENT ("Agreement") for Professional Services, (together with the attachments hereto) dated and effective as of August 13, 2009 (the "Effective Date"), is hereby made and entered into by and between H&E Equipment Services, Inc., a Delaware corporation, (hereinafter "Client") having a place of business located at 11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816 and URS Corporation Architecture PC, a North Carolina corporation (hereinafter "Consultant") having a place of business located at 7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806. Consultant and Client are each individually referred to as a "Party" and collectively as the "Parties".

The Parties agree as follows:

### 1.    WORK AUTHORIZATIONS

1.1    Consultant agrees to undertake and perform certain consulting and professional engineering services ("Services") in accordance with the terms and conditions contained herein, as may be requested by Client from time to time. The Services to be performed, Consultant's compensation, and the schedule for performance for each task shall be described in one or more authorizations issued to Consultant by Client, the form of which is attached hereto as Attachment 1 ("Work Authorization"). A Work Authorization shall be valid and binding upon the Parties only if accepted in writing by Client and Consultant. Each duly executed Work Authorization shall be subject to the terms and conditions of this Agreement, except to the extent expressly modified by the Work Authorization.

1.2    It is the expressed intent of the parties that this Agreement shall be made available to subsidiaries and affiliated companies of Consultant. For the purposes of this Agreement, as it applies to each Work Authorization, the term "Consultant" shall mean either Consultant as defined above or the subsidiary or affiliate of Consultant identified in the Work Authorization. The applicable Work Authorization shall clearly identify the legal name of the entity accepting the Work Authorization.

### 2.    PAYMENTS FOR SERVICES

2.1    Unless otherwise stated in a Work Authorization, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not received within thirty (30) days from the due date of such payment, Consultant may suspend further performance under one or more Work Authorizations until payments are current. Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount. Client shall pay an additional charge of one percent (1%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount. In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

2.2    Client shall reimburse Consultant for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of Consultant's Services. For the purpose of this Article such taxes shall not include taxes imposed on Consultant's net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid Consultant under the applicable Work Authorization.

2.3    Where charges are "not to exceed" a specified sum, Consultant shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum. If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded. Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established, or other circumstances beyond URS control, shall be a basis for equitable adjustments in the budget and schedule.

### 3.    CONFIDENTIALITY

3.1    For a period commencing with the disclosure of any confidential information under this Agreement and/or a Work Authorization(s) and ending on the second anniversary such disclosure was first made, Consultant and Client each agree not to disclose to third parties, including also subcontractors and vendors (unless such subcontractors and vendors have a need to know and are bound to similar obligations of confidentiality), any information that is identified as confidential in writing on the materials made available to the other Party hereunder.

### 4.    WARRANTY

4.1    Consultant warrants that any consulting and professional engineering Services performed by it under a Work Authorization shall be performed in accordance with that degree of care and skill ordinarily exercised by members of Consultant's profession practicing at the same time in the same location. Consultant's sole liability to Client for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by Client to Consultant. Consultant's obligation for re-performance of non-conforming Services as set

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\URS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

URS-01726



NON-CERTIFIED COPY

# URS

forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.

4.2   THE WARRANTY SET FORTH IN THIS ARTICLE 4 IS EXCLUSIVE, AND IN LIEU OF ANY AND ALL OTHER WARRANTIES RELATING TO THE SERVICES, WHETHER STATUTORY, EXPRESS OR IMPLIED, AND CONSULTANT DISCLAIMS ANY SUCH OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE AND ANY AND ALL WARRANTIES ARISING FROM COURSE OF DEALING AND/OR USAGE OF TRADE. ANY OTHER STATEMENTS OF FACT OR DESCRIPTIONS EXPRESSED IN THE AGREEMENT OR ANY WORK AUTHORIZATION SHALL NOT BE DEEMED TO CONSTITUTE A WARRANTY OF THE SERVICES OR ANY PART THEREOF. CONSULTANT'S REPERFORMANCE OF DEFECTIVE OR NON-CONFORMING SERVICES THROUGH THE ONE YEAR PERIOD PROVIDED FOR IN THIS ARTICLE 4 SHALL CONSTITUTE COMPLETE FULFILLMENT OF, AND CLIENT'S EXCLUSIVE REMEDY FOR, ALL THE LIABILITIES OR RESPONSIBILITIES OF CONSULTANT TO CLIENT FOR NON-CONFORMING OR DEFECTIVE SERVICES, WHETHER THE CLAIMS OF CLIENT ARE BASED ON DELAY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, WARRANTY, INDEMNITY, ERROR AND OMISSION OR ANY OTHER CAUSE WHATSOEVER.

**5.   WORK BY OTHERS**

5.1   The performance by Consultant of Services under a Work Authorization shall not constitute an assumption by Consultant of the obligations of Client or its other contractors. Consultant shall not control or have charge of, and shall not be responsible for, construction means, methods, techniques, sequences, procedures of construction, health or safety programs, or precautions connected with the work of Client or its other contractors, and shall not manage, supervise, control or have charge of construction. Client shall require Consultant to be named as an additional insured along with Client on any liability insurance policies provided by Client's construction contractors. To the fullest extent permitted by law, Client shall defend Consultant against any claim, suit or proceeding asserted by one of its other contractors and indemnify, defend and save Consultant harmless from any and all actual or alleged claims and losses (including, without limitation, attorney's fees) sustained by such contractor in connection with the Services, regardless or whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

**6.   INSURANCE**

6.1   In the event Consultant performs Services under any Work Authorization in connection with a project for which Client or another party with which Client has contracted obtains all-risk or builder's risk property insurance, Client, as the case may be, shall name, or shall cause such other party to name, Consultant as an additional insured on such all risk or builder's risk property insurance. Client acknowledges that Consultant has an insurable interest in such all risk or builder's risk property insurance.

6.2   Consultant and Client each waive all rights of recovery and subrogation against each other with respect to a loss occurring to property of the other, to the extent that such waivers do not invalidate the property insurance of either.

**7.   INDEMNITY**

7.1   Each Party shall indemnify, defend and save the other Party, its officers, directors, employees and affiliates harmless from any loss, cost or expense claimed by third parties, excluding employees of either Party, for property damage and/or bodily injury, including death, to the proportionate extent such loss, cost or expense arises from the negligence or willful misconduct of the indemnifying Party, its employees or affiliates in connection with the Services.

7.2   Notwithstanding any other provision contained elsewhere in this Agreement to the contrary and to the fullest extent permitted by law, Client shall be liable for and indemnify, defend and save Consultant, its officers, directors, employees and affiliates harmless from and against any and all actual or alleged claims, damages (including incidental, consequential, indirect and special damages), losses, and expenses (including, without limitation, all penalties, attorney's fees, fines and administrative or civil sanctions) arising out of or related to such claims) (collectively "Losses") arising out of: (1) economic loss suffered by third parties; and/or (2) investment decisions of Client or third parties in reliance upon the results of the Services, regardless of whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

7.3   The indemnity and save harmless obligations of Consultant and Client under this Article 7 shall not apply with respect to any Hazardous Material, as Consultant's and Client's rights and obligations with respect thereto are set forth in Article 10.

**8.   WAIVER OF CONSEQUENTIAL DAMAGES**

8.1   Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, neither Client nor Consultant shall be liable, whether based on contract, tort, negligence, strict liability, warranty, indemnity, error and omission or any other cause whatsoever, for any consequential, special, incidental, indirect, punitive or exemplary damages, or damages arising from or in connection with loss of power, loss of use, loss of revenue or profit (actual or anticipated), loss by reason of shutdown or non-operation, increased cost of construction, cost of capital, cost of replacement power or customer claims, and Consultant hereby releases Client and Client hereby releases Consultant from any such liability.

**9.   LIMITATION OF LIABILITY**

9.1   Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, in no

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

2

URS-01727

NON-CERTIFIED COPY

# URS

event shall the total cumulative aggregate liability of Consultant, its subconsultants, and their respective partners, officers, directors, shareholders, employees, and agents (referred to collectively in this Article as "Consultant") to Client resulting from, arising out of or in connection with the performance or nonperformance of any or all Services or other obligations under a Work Authorization, exceed $250,000 or ten percent (10%) of the compensation paid Consultant pursuant to such Work Authorization, whichever is greater, or extend beyond the expiration of the warranty period under Article 4 for the Services performed under the Work Authorization, regardless of the legal theory under which such liability is imposed.  The remedies stated in the Agreement are Client's sole and exclusive remedies for any failure by Consultant to comply with obligations to Client, and Client hereby irrevocably waives any right to assert a claim against Consultant based on a legal theory that a remedy provided herein fails of its essential purpose.

## 10.    HAZARDOUS MATERIAL

10.1    Nothing in this Agreement shall be construed or interpreted as requiring Consultant to assume the status of, and Client acknowledges that Consultant does not act in the capacity nor assume the status of, Client or others as a "generator," "operator," "transporter," or "arranger" in the treatment, storage, disposal, or transportation of any hazardous substance or waste as those terms are understood within the meaning of the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or any other similar federal, state, or local law, regulation, or ordinance.  Client acknowledges further that Consultant has played no part in and assumes no responsibility for generation or creation of any hazardous waste, pollution condition, nuisance, or chemical or industrial disposal problem, if any, which may exist at any site that may be the subject matter of any Work Authorization.

10.2    It is acknowledged by both parties that the Services do not include services related to regulated substances, pollutants, or hazardous or toxic wastes ("Hazardous Material").  In the event Consultant or any other party encounters undisclosed Hazardous Materials, Consultant shall notify Client and, to the extent required by law or regulation, the appropriate governmental officials, and Consultant may, at its option and without liability for delay, consequential or any other damages to Client, suspend performance of Services on that portion of the project affected by Hazardous Material until Client: (i) retains appropriate specialist consultant(s) or contractor(s) to identify and, as appropriate, abate, remediate, or remove the Hazardous material; and (ii) warrants that the project site is in full compliance with all applicable laws and regulations.  Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, Client shall indemnify, defend and save Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers, directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such Losses.  Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses which arise out of the performance of the Services and relating to the regulation and/or protection of the environment, including, without limitation, Losses incurred in connection with characterization, handling, transportation, storage, removal, remediation, disturbance or disposal of Hazardous Material, whether above or below ground and not brought to a Client site or other proposed project site by Consultant in the performance of the Services without Client's approval.

## 11.    CHANGES

11.1    The Parties may from time to time by mutual agreement seek to modify, extend or enlarge the Services under a Work Authorization ("Modification").  In the event the Parties agree to a Modification to add additional Services, or to make other modifications to the Services, Consultant's compensation, the schedule and any other relevant terms and conditions of the applicable Work Authorization shall be equitably adjusted prior to performance of such Services.

## 12.    OWNERSHIP OF DOCUMENTS

12.1    Consultant grants to Client a transferable, irrevocable and perpetual royalty-free license to retain and use all work products delivered to Client for any purpose in connection with the project specified in each Work Authorization, upon full payment by Client for Consultant's Services.  Client also may use such work product for other purposes with Consultant's written consent.  Re-use of any such work product by Client on any extension of the project or on any other project without the written authorization of Consultant shall be at Client's sole risk and Client shall indemnify, defend and save Consultant and its affiliates, consultants, agents, subcontractors and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such re-use.  Consultant shall have the right to retain copies of all such work product.  Consultant retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

## 13.    TERMINATION/SUSPENSION

13.1    Client may terminate all or any portion of the Services under one or more Work Authorizations for convenience, at its option, by sending a written notice to Consultant.  Either party can terminate this Agreement or a Work Authorization for cause if the other commits a material, secured breach of this Agreement or becomes insolvent.  Termination for cause shall be effective twenty (20) days after receipt of a notice of termination, unless a later date is specified in the notice.  The notice of termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the notice.  Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination.  Client shall pay Consultant upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges.  Any suspension of Services by Client shall result in an equitable adjustment to Consultant's compensation, time for performance, or any of its other obligations under a Work Authorization.

## 14.    FORCE MAJEURE

14.1    Any delay or failure of Consultant in performing its required obligations hereunder shall be excused if and to the extent such delay or failure is caused by a Force Majeure Event.  A "Force Majeure Event" means an event due to any cause or causes beyond the reasonable control of Consultant and shall include, but not be limited to, acts of God, strike, labor dispute fire, storm, flood, windstorm, unusually severe weather, sabotage, embargo,

I:\Proposal\Facilities\H&E Equipment Services - Kenner\Proposal\P5-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

3

NON-CERTIFIED COPY

Received                    Case 3:18-cv-00690-BAJ-RLB    Document 4-1  Jun 05 2015/0847pm  Page 42 of 85

# URS

terrorism, energy shortage, accidents or delay in transportation, accidents in the handling and rigging of heavy equipment, explosion, riot, war, court injunction or order, delays by acts or orders of any governmental body or changes in laws or government regulations or the interpretations or application thereof or the acts or omissions of the Client or its other contractors, vendors or suppliers. In the event of a Force Majeure Event, Consultant shall receive an equitable adjustment extending Consultant's time for performance for such Services sufficient to overcome the effects of any delay, and an increase(s) to Consultant's compensation sufficient to account for any increased cost in performance or loss or damage suffered by Consultant.

**15.    RESPONSIBILITIES OF CLIENT**

15.1    Without limiting any express or implied obligations of Client under applicable law, Client shall: (1) provide Consultant, in writing, all information relating to Client's requirements for the project; (2) correctly identify to Consultant the location of subsurface structures, such as pipes, tanks, cables, and utilities; (3) notify Consultant of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give Consultant prompt written notice of any suspected deficiency in the Services; (5) with reasonable promptness, provide required approvals and decisions; and (6) furnish or cause to be furnished to Consultant full, unrestricted and legal access to, and use of, the site and all necessary rights of way and easements, in order to perform the Services. In the event Consultant is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and Consultant is not a party, Client shall pay Consultant for any time and expenses required in connection therewith, including reasonable attorney's fees.

15.2    Consultant may rely upon and use in the performance of any Services information supplied to it by Client without independent verification and Consultant shall not be responsible for defects in its Services attributable to its reliance upon or use of such information.

**17.    TERM**

17.1    Unless otherwise specified, the term of this Agreement shall run from the Effective Date until Consultant has completed the Services and received all payments due under the Agreement.

**18.    GENERAL**

18.1    Client and Consultant each represent and warrant that this Agreement has been duly authorized, executed and delivered and constitutes its binding agreement enforceable against it. This Agreement and any executed Work Authorization supersedes all prior written and/or oral contracts and agreements that may have been made or entered into between Client and Consultant regarding the subject matter hereof, including but not limited to any and all proposals, oral or written, and all communications between the Parties relating to this Agreement or any Work Authorization(s), and constitute the entire agreement between the Parties hereto with respect to the subject matter hereof.

18.2    This Agreement and Work Authorization(s) may not be assigned by Consultant or Client in any way, including by operation of law, unless otherwise mutually agreed to in writing, any such attempted non-authorized assignment shall be null and void and of no force or effect.

18.3    Any cost opinions or estimates provided by Consultant will be on a basis of experience and judgment, but since Consultant has no control over market conditions or bidding procedures, Consultant cannot and does not warrant that bids, ultimate construction cost, or project economies will not vary from such opinions or estimates. Neither this Agreement nor any of the Services provided hereunder shall constitute or provide for, and Consultant shall not be considered to have rendered, any legal or financial opinion(s) regarding the feasibility of the project or any other or regarding any other matter. Unless otherwise expressly included in a Work Authorization, Consultant shall under no circumstances provide as part of the Services a consent, opinion or similar document, or act as a qualified person or expert, in connection with any filing by Client with the United States Securities and Exchange Commission, or similar non-United States agency, authority or commission.

18.4    Notices shall be effective hereunder as follows only if in writing and addressed to the authorized representative designated in applicable Work Authorizations: (1) upon delivery, if delivered personally to the person; (2) upon transmission, if transmitted to the facsimile number of the person; and (3) upon posting, if by first class or overnight mail (postage prepaid).

18.5    All contract issues and matters of law will be adjudicated in accordance with the laws of the state where the project is located, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction; provided, however that if the project is located outside the United States, the laws of the State of California shall govern. Venue for any litigation shall be any state court or United States District Court having jurisdiction over the parties and subject matter.

18.6    The terms and conditions of this Agreement shall prevail, notwithstanding any variance with any purchase order or other written instrument submitted by Client whether formally rejected by Consultant or not. This Agreement may be modified only by amendments when signed by each Party. In the event that any one or more of the provisions of this Agreement shall be found to be illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and such term or provision shall be deemed stricken to the extent and in the jurisdictions necessary for compliance with applicable law.

18.7    Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Client or Consultant.

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposals\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

4

URS-01729

NON-CERTIFIED COPY

**URS**

18.8    The headings in this Agreement are for convenience only, and shall not affect the interpretation hereof. The terms "hereof", "herein," "hereto" and similar words refer to the entire Agreement and not to any particular Article, Section, Attachment, Exhibit or any other subdivision of this Agreement. References to "day" or "days" shall mean calendar days unless specified otherwise.

18.9    The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including, but not limited to, indemnities and any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

18.10    It is understood and agreed that any delay, waiver or omission by Consultant or Client to exercise any right or power arising from any breach or default by Client or Consultant in any of the terms, provisions or covenants of this Agreement or any Work Authorization shall not be construed to be a waiver by Consultant or Client of any subsequent breach or default of the same or other terms, provisions or covenants on the part of Consultant or Client.

19.    ATTACHMENTS AND EXHIBITS

The following attachments and exhibits, which are attached hereto, are part of this Agreement.

Attachment 1 – Work Authorization

Attachment 2 – Fee Proposal, Scope of Work, Schedule

Attachment 3 – URS 2009 Schedule of Fees and Charges

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, effective as of the day and year first above mentioned.

H&E Equipment Services, Inc.

By: _____
    (Signature)

Name: _____
    (Printed)

Title: _____

URS Corporation Architecture PC

By: _____
    (Signature)

Name: _____
    (Printed)

Title: _____

E:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposals\VPS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

5

URS-01730

NON-CERTIFIED COPY



## ATTACHMENT 1

### TIME AND MATERIALS WORK AUTHORIZATION 09-100

In accordance with the Agreement for Consulting and Professional Services between H&E Equipment Services, Inc. ("Client"), and URS Corporation Architecture PC ("Consultant"), a North Carolina corporation, dated 06.13.09, this Work Authorization describes the Services, Schedule, and Payment Conditions for Consultant's Services on the Project known as:

Renovations and Additions to Kenner, LA Branch
H&E Equipment Services, Inc.

Client Authorized
Representative:    Leonard St. Germain
Address:           11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816

Telephone No.:     225.298.5244

Consultant Authorized
Representative:    Chad Herndon
Address:           7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806
Telephone No.:     225.922.5244

**SERVICES.** The Services shall be described in Attachment 2 to this Work Order.

**SCHEDULE.** The Estimated Schedule shall be set forth in Attachment 2 to this Work Authorization. Because of the uncertainties inherent in the Services, Schedules are estimated and are subject to revision unless otherwise specifically described herein.

**PAYMENT.** Payment of $0.00 _ is due upon signature of this Work Authorization and will be applied against the final invoice for this Work Authorization. URS charges shall be on a "time and materials" basis and shall be in accordance with the Consultant's Schedule of Fees and Charges in effect at the time the Services are performed. Payment provisions and the Consultant's current Schedule of Fees and Charges are attached to this Work Authorization as Attachment 3.

**TERMS AND CONDITIONS.** The terms and conditions of the Agreement referenced above shall apply to this Work Authorization, except as expressly modified herein.

**ACCEPTANCE** of the terms of this Work Authorization is acknowledged by the following signatures of the Authorized Representatives.

CLIENT                                CONSULTANT

_____              _____
Signature                            Signature

Leonard St. Germain                  Craig W. Gardner / VP-A/E
Typed Name/Title                     Typed Name/Title

8/31/09                              9/08/09
Date of Signature                    Date of Signature

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\P3-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

URS-01426

NON-CERTIFIED COPY



**ATTACHMENT 2**

August 13, 2009

Leonard St. Germain
H&E Equipment Services
Baton Rouge, LA

Re:     Renovations and Additions to H&E Equipment – Kenner LA

Leonard:

URS is pleased to provide you with a proposal for professional services for assistance
with determining a legitimate budget for the renovations and additions to your H&E
Equipment facility located at 125 East Airline Drive in Kenner LA.  A list of work items
we discussed is attached (Attachment 2)

As we discussed the first order of business will be to determine the existing condition of
the buildings and develop drawings and sketches of the renovations. From these
documents, we can obtain accurate construction estimates for the work.  With this data a
realistic presentation can be offered for consideration by management.

We propose to provide you these services for a total fee not to exceed amount of
**$20,000.00** based on our "Standard Billing Rate Schedule" This schedule includes the
cost of all project personnel associated with the project, documentation and all
reimbursement costs incurred during the course of the performance of the outlined
scope of work.

Thank you for considering URS for this opportunity. If you have any questions or require
any additional information, please feel free to contact me at 225.231.8343 or cell
225.324.5848. Thank you for your consideration.


Sincerely,

URS Corporation



Neal Johnson                                              Mike Richardson
Principal Architect                                       Vice President




URS Corporation Architecture PC
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806                         URS-01427

NON-CERTIFIED COPY



**ATTACHMENT 2**

Re: Renovations and Additions to H&E Equipment – Kenner LA
2 | P a g e

## SCOPE OF WORK

Based on our recent site visit the focus of the project will include:

1. Developing drawings of the existing site and buildings.
2. Review of existing truck traffic circulation including company, employee and customer vehicle parking. Additional paving with drainage consideration will be included.
3. Evaluate the condition of all exterior roofs and walls of all buildings on the property.
4. Evaluate condition and operational status of the existing Office / Sales area with a focus on renovating the restrooms and upgrading the finishes in all other areas. Review of the HVAC and Electrical systems to be included.
5. Evaluate circulation and storage utilization of the Parts Area.
6. Evaluate covered area west of Parts Building (existing Equipment Wash Area)
7. Develop sketches and drawings for a:
   a. New entrance for Office / Sales building.
   b. New office / tool storage and break room area to the front (east) end of the Shop Building.
   c. Demolish existing office/tool storage and break room to be used as transition area.
   d. Add a new overhead door on south side of building in this immediate area.
   e. New enclosed service bay with overhead doors to the rear (west) end of the Shop Building.
   f. New open frame bay to the rear (west) end of the Shop Building.
   g. New 40' x 70' Equipment Wash Building to be located at the rear (west) end of the site.
8. Assist in obtaining realistic budget pricing from three (3) local qualified general contractors.

## SCHEDULE

We anticipate the effort will require 3 calendar weeks to complete.

URS-01428

NON-CERTIFIED COPY

# URS CORPORATION
## SCHEDULE OF FEES AND CHARGES
### Engineering/Environmental & Consulting Services

The following describes the basis for compensation for services performed during the fiscal year 2009. This Schedule of Fees and Charges will be adjusted annually on January 1 of each subsequent year to reflect merit and economic salary increases, and changes in the expected level and mode of operations for the new year. The new Schedule of Fees and Charges will apply to existing and new assignments.

## PERSONNEL CHARGES

The charge for all time required in the performance of the Scope of Services, including office, field and travel time, will be at the Unit Priced Hourly Rates set forth below for the labor classifications indicated.

| Labor Classification | Hourly Rate ($) |
| --- | --- |
| Clerk* | 48 |
| Technical Typist/Word Processor* | 55 |
| Editor/Drafter/Designer/Illustrator* | 75 |
| Lab/Field Supervisor* | 75 |
| Technician* | 63 |
| Senior Technician | 68 |
| Graduate Staff Professional | 70 |
| Staff Professional | 82 |
| Senior Staff Professional | 93 |
| Assistant Project Professional | 99 |
| Project Professional | 115 |
| Senior Project Professional | 130 |
| Consulting/Sr. Consulting Professional | 160 |
| Principal/Sr. Principal Professional | 180 |

Charges for contract personnel under URS supervision and using URS facilities will be made according to the hourly rate corresponding to their classification.

When staff are performing project fieldwork, a minimum daily charge of 4 hours will apply.

A maximum of eight (8) hours travel time per day will be charged for travel within the continental United States.

When URS staff appear as expert witnesses at court trials, arbitration hearings, mediation and depositions, their time will be charged at $250.00 per hour.

Overtime (hours worked in excess of eight (8) hours per day) by exempt personnel will be charged at the above straight time hourly rate. Overtime by non-exempt personnel (classifications identified with an asterisk "*") will be charged at 1.5 times the above hourly rate.

## OTHER PROJECT CHARGES

### Subcontracts and Equipment Rental
The cost of services subcontracted by URS to others and other costs incurred by URS will be charged at cost plus 10%.

### Communications
The cost of communications for office telephone, telex, facsimile, postage, and incidental copying costs will be charged at a flat rate of 3% of total gross labor charges.

### Vehicles and Mileage
Field vehicles (pick-ups, vans, trucks, etc.) used on project assignments will be charged at $65.00 per day. The mileage charge for personal autos will be the then current mileage rate established by the Internal Revenue Service.

### Specialized Equipment
The use of specialized URS equipment will be the fixed rental rates set forth in the Schedule of URS Specialized Equipment Charges.

*This fee schedule contains confidential business information and is not to be copied or distributed for any purpose other than the use intended in this contract or proposal.*

**URS**

URS-01769

NON-CERTIFIED COPY

ORIGINAL PSA

## AGREEMENT FOR PROFESSIONAL SERVICES
### ("Agreement")

This Agreement between <u>H&E Equipment Services, Inc. 11100 Mead Road, Suite 200, Baton Rouge, LA 70816 225 298-5244</u>, ("Client") and <u>URS Corporation Architecture, NC, PC</u>, ("URS"), a <u>North Carolina</u> corporation; <u>7389 Florida Blvd, Suite 300 Baton Rouge, LA 70806</u>("URS"), is effective as of <u>August 28, 2006</u>. The parties agree as follows:

It is the expressed intent of the parties that this Agreement shall be made available to the subsidiaries and affiliated companies of URS. For the purposes of this Agreement, as it applies to each Work Order, the term "URS" shall mean either, <u>URS Corporation Architecture, NC, PC</u>, or the affiliated company identified in the Work Order. The applicable Work Order shall clearly identify the legal name of the affiliate or subsidiary accepting the Work Order.

**ARTICLE I - Work Orders.** The Scope of Services ("Services"), the Time Schedule and the Charges are to be set forth in a written Work Order to this Agreement. The terms and conditions of this Agreement shall apply to each Work Order, except to the extent expressly modified by the Work Order. Where charges are "not to exceed" a specified sum, URS shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum. If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded. Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established or other circumstances beyond URS control shall be a basis for equitable adjustments in the budget and schedule.

**ARTICLE II - Payment.** Unless otherwise stated in an Work Order, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not maintained on a thirty (30) day current basis, URS may suspend further performance until payments are current. Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount. Client shall pay an additional charge of one and one-half percent (1½%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount. In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

**ARTICLE III - Professional Responsibility.** URS is obligated to comply with applicable standards of professional care in the performance of the Services. Client recognizes that opinions relating to environmental, geologic, and geotechnical conditions are based on limited data and that actual conditions may vary from those encountered at the times and locations where the data are obtained, despite the use of due professional care. URS is not responsible for designing or advising on or otherwise taking measures to prevent or mitigate the effect of any act of terrorism or any action that may be taken in controlling, preventing, suppressing or in any way relating to an act of terrorism.

**ARTICLE IV - Responsibility for Others.** URS shall be responsible to Client for URS Services and the services of URS subcontractors. URS shall not be responsible for the acts or omissions of other parties engaged by Client nor for their construction means, methods, techniques, sequences, or procedures, or their health and safety precautions and programs.

**ARTICLE V - Risk Allocation.** The liability of URS, its employees, agents and subcontractors (referred to collectively in this Article as "URS"), for Client's claims of loss, injury, death, damage, or expense, including, without limitation, Client's claims of contribution and indemnification, express or implied, with respect to third party claims relating to services rendered or obligations imposed under the Agreement, including all Work Orders, shall not exceed in the aggregate:

PSA-1.DOC (Rev. 1)   30-AUG-04      - 1 -      URS-01765

EXHIBIT "3"

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB     Document 4-1     07/18/18     Page 49 of 85

(1)    The total sum of $5,000,000 for claims arising out of professional negligence, including errors, omissions, or other professional acts, and including unintentional breach of contract; and any actual or potential environmental pollution or contamination, including, without limitation, any actual or threatened release of toxic, irritant, pollutant, or waste gases, liquids, or solid materials, or failure to detect or properly evaluate the presence of such substances, except to the extent such release, threatened release, or failure to detect or evaluate is caused by the willful misconduct of URS; or

(2)    The total sum of $2,000,000 for claims arising out of negligence, breach of contract, or other causes for which URS has any legal liability, other than as limited by (1) above.

**ARTICLE VI - Insurance.** URS agrees to maintain during the performance of the Services: (1) statutory Workers' Compensation coverage; (2) Employer's Liability; (3) General Liability; and (4) Automobile Liability insurance coverage each in the sum of $5,000,000.

**ARTICLE VII - Consequential Damages.** Neither Party shall be liable to the other for consequential damages, including, without limitation, loss of use or loss of profits, incurred by one another or their subsidiaries or successors, regardless of whether such damages are caused by breach of contract, willful misconduct, negligent act or omission, or other wrongful act of either of them.

**ARTICLE VIII - Client Responsibility.** Client shall: (1) provide URS, in writing, all information relating to Client's requirements for the project; (2) correctly identify to URS, the location of subsurface structures, such as pipes, tanks, cables and utilities; (3) notify URS of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give URS prompt written notice of any suspected deficiency in the Services; and, (5) with reasonable promptness, provide required approvals and decisions. In the event that URS is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and URS is not a party, Client shall pay URS for any time and expenses required in connection therewith, including reasonable attorney's fees.

Client shall reimburse URS for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of URS Services. For the purpose of this Article such taxes shall not include taxes imposed on URS net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid URS under the respective Work Order.

**ARTICLE IX - Force Majeure.** An event of "Force Majeure" occurs when an event beyond the control of the Party claiming Force Majeure prevents such Party from fulfilling its obligations. An event of Force Majeure includes, without limitation, acts of God (including floods, hurricanes and other adverse weather), war, riot, civil disorder, acts of terrorism, disease, epidemic, strikes and labor disputes, actions or inactions of government or other authorities, law enforcement actions, curfews, closure of transportation systems or other unusual travel difficulties, or inability to provide a safe working environment for employees.

In the event of Force Majeure, the obligations of URS to perform the Services shall be suspended for the duration of the event of Force Majeure. In such event, URS shall be equitably compensated for time expended and expenses incurred during the event of Force Majeure and the schedule shall be extended by a like number of days as the event of Force Majeure. If Services are suspended for thirty (30) days or more, URS may, in its sole discretion, upon 5 days prior written notice, terminate the Agreement or the affected Work Order, or both. In the case of such termination, in addition to the compensation and time extension set forth above, URS shall be compensated for all reasonable termination expenses.

**ARTICLE X - Right of Entry.** Client grants to URS, and, if the project site is not owned by Client, warrants that permission has been granted for, a right of entry from time to time by URS, its employees, agents and subcontractors, upon the project site for the purpose of providing the Services. Client recognizes that the use of investigative equipment and practices may unavoidably alter the existing site conditions and affect the environment in the area being studied, despite the use of reasonable care.

NON-CERTIFIED COPY

**ARTICLE XI - Documents.** Provided that URS has been paid for the Services, Client shall have the right to use the documents, maps, photographs, drawings and specifications resulting from URS efforts on the project. Reuse of any such materials by Client on any extension of this project or any other project without the written authorization of URS shall be at Client's sole risk. URS shall have the right to retain copies of all such materials. URS retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

**ARTICLE XII - Termination.** Client may terminate all or any portion of the Services for convenience, at its option, by sending a written Notice to URS. Either party can terminate this Agreement or a Work Order for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a Notice of Termination, unless a later date is specified in the Notice. The Notice of Termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the Notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay URS upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. In the event of termination for cause, the parties shall have their remedies at law as to any other rights and obligations between them, subject to the other terms and conditions of this Agreement.

**ARTICLE XIII - No Third Party Rights.** This Agreement shall not create any rights or benefits to parties other than Client and URS. No third party shall have the right to rely on URS opinions rendered in connection with the Services without the written consent of URS and the third party's agreement to be bound to the same conditions and limitations as Client.

**ARTICLE XIV - Assignments.** Neither party to this Agreement shall assign its duties and obligations hereunder without the prior written consent of the other party.

**ARTICLE XV - Hazardous Substances.** All non-hazardous samples and by-products from sampling processes in connection with the Services shall be disposed of by URS in accordance with applicable law, provided, however, that any and all such materials, including wastes, that cannot be introduced back into the environment under existing law without additional treatment, and all hazardous wastes, radioactive wastes, or hazardous substances ("Hazardous Substances") related to the Services, shall be packaged in accordance with the applicable law by URS and turned over to Client for appropriate disposal. URS shall not arrange or otherwise dispose of Hazardous Substances under this Agreement. URS, at Client's request, may assist Client in identifying appropriate alternatives for off-site treatment, storage or disposal of the Hazardous Substances, but URS shall not make any independent determination relating to the selection of a treatment, storage, or disposal facility nor subcontract such activities through transporters or others. Client shall sign all necessary manifests for the disposal of Hazardous Substances. If Client requires: (1) URS agents or employees to sign such manifests; or (2) URS to hire, for Client, the Hazardous Substances transportation, treatment, or disposal contractor, then for these two purposes, URS shall be considered to act as Client's agent so that URS will not be considered to be a generator, transporter, or disposer of such substances or considered to be the arranger for disposal of Hazardous Substances, and Client shall indemnify URS against any claim or loss resulting from such signing.

**ARTICLE XVI - Venue.** In the event of any dispute between the parties to this Agreement, the venue for the dispute resolution shall be any state or federal court in the United States having jurisdiction over the parties. The foregoing notwithstanding, if the project is located outside the United States, the laws of the State of California shall govern and in such event, any dispute under the Agreement not resolved amicably shall be resolved under the binding rules of the American Arbitration Association.

**ARTICLE XVII - Integrated Writing and Enforceability.** This Agreement constitutes the final and complete repository of the agreements between Client and URS relating to the Services and supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written. Modifications of this Agreement shall not be binding unless made in writing and signed by an Authorized Representative of each party. The provisions of this Agreement shall be enforced to the fullest extent permitted by law. If any provision of this Agreement is found to be invalid or unenforceable, the provision shall be construed and applied in a way that comes as close as possible to expressing the intention of the parties with regard to the provisions and that saves the validity and enforceability of the provision.

PSA-1.DOC (Rev. 1)   30-AUG-04                    - 3 -

URS-01767

NON-CERTIFIED COPY

**THE PARTIES ACKNOWLEDGE** that there has been an opportunity to negotiate the terms and conditions of this Agreement and agree to be bound accordingly.

| CLIENT | URS |
|---|---|
| _Signature_ | _Signature_ |
| Leonard St. Germain, V.P. Operations | Craig Gardner, Vice President, Office Manager |
| Typed Name/Title | Typed Name/Title |
| 8/30/06 | 8/29/06 |
| Date of Signature | Date of Signature |

PSA-1.DOC (Rev. 1)   30-AUG-04                    - 4 -

URS-01768

NON-CERTIFIED COPY

# URS

**Remittance Page**

| | |
|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 1 |

Reference: PSA-1 dated 08/28/06
For: H&E Corp. HQ - Construction

## Professional Services for Period Ending 02/11/11

H & E Equipment Services, Inc.
Attn: FRANKIE WYNN
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due: $24,500.00 USD
Terms: Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS): URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

Overnight Courier: URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA 30281
Attention: Atlanta Lockbox
(877) 786-3333

Electronic Funds Transfer:
Account: URS Corporation
Bank: Wells Fargo Bank
Account No.: 4520-066471
ABA Routing No.: 121-000-248
Swift Code: WFBIUS6S

VENDOR *1006495*
G/L *560010*
APPROVED
DATE *3/1/2011*
AMOUNT *$ 24,500.00*

*CAPITAL ORDER*
*46000340*

Remittance Information can be sent to:
Email: RemitTo@URSCorp.com
Fax: (512) 419-8937  Attn: Cash Applications

Please contact Carlene D Gibson at 512 419-8115 or via email at Carlene_Gibson@urscorp.com
If you have any questions regarding this invoice.

**EXHIBIT**
"4"

NON-CERTIFIED COPY

# URS

| | |
|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Leonard St. Germain
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: PSA-1 dated 08/28/06

For: H&E Corp. HQ - Construction

Professional Services for Period Ending 02/11/11

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19228820 H&E Corp. HQ-Construction Docs | 24,500.00 | 0.00 | 24,500.00 |
| Total this job | 24,500.00 | 0.00 | 24,500.00 |
| **TOTAL THIS INVOICE** | 24,500.00 | 0.00 | $24,500.00 USD |

Project Manager: Robert C. Herndon

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

NON-CERTIFIED COPY

To:   Page 36 of 50        Received        Jun 07 2015 09:11pm        Page 54 of 85
Case 3:18-cv-00690-BAJ-RLB    Document 4-1    07/13/18    Page 54 of 85
05/06/2015 19:11:52 CST        15045856904   From: Shelley Tannehill



| | |
|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Leonard St. Germain
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/08

For:   H&E Corp. HQ - Construction

**Professional Services for Period Ending 02/11/11**
*Job:  19228820  H&E Corp. HQ-Construction Docs*

**LUMP SUM**

| | |
|---|---|
| Lump Sum Billing | 24,500.00 |
| **Total Lump Sum** | **24,500.00** |
| *Total due this job* | *24,500.00* |
| **TOTAL THIS INVOICE** | **$24,500.00** USD |

Please contact Carlene D Gibson at 512.419.6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

F32719806

NON-CERTIFIED COPY



Neal Johnson, AIA
Principal Architect

March 1, 2011

Frankie Wynn
H & E Equipment Services Inc.
11100 Mead Road, Suite 200
Baton Rouge, Louisiana 70816

Re:    H&E Corp. HQ - Construction
       Baton Rouge, Louisiana

Mr. Wynn:

Enclosed please find invoice 4602441 for the above referenced project along with an
invoice worksheet for your reference. The invoiced amount of $24,500.00 represents
work completed through 95% of construction documents phase.

Should you have any questions, please don't hesitate to call me at (225) 231-6343.

Sincerely,
URS Corporation

Neal Johnson, AIA
Principal Architect

URS Corporation
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806
225.922.5700

NON-CERTIFIED COPY

URS Corporation Confidential                3/1/2011                         Page 1

# Invoice Worksheet                                              **URS**

Date

Project Name    **H&E Corp. HQ - Construction**
Project No.
URS Project #              **19228820**

Schedule of Values
Base Fee                                    $490,000.00
                                            $        -
                            TOTAL           $ 490,000.00

Total Fee                                   $  148,848.00

Fees through Construction Documents    100% @    95.00% Complete    $ 465,500.00

                                            Fee Earned to Date  $ 465,500.00

            Less Amount Previously Paid                         $ 465,500.00
                                    Reimburable Expense Due  $        -
            TOTAL DUE THIS PAYMENT                              $24,500.00

NON-CERTIFIED COPY



| | Remittance Page | Invoice Date | 04/27/11 |
|---|---|---|---|
| | | Invoice | 4666033 |
| | | Project | 19228620 |
| | | Page | 1 |

Reference:   PSA-1 dated 06/26/06

For:   H&E Corp. HQ - Construction

**Professional Services for Period Ending 04/15/11**

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:          $24,500.00  USD
Terms:              Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:        URS Corporation
Bank:           Wells Fargo Bank
Account No.:    4520-086471
ABA Routing No.: 121-000-248
Swift Code:     WFBIUS6S

VENDOR   1006495
G/L      560010
APPROVED  ____  6/2/2011
DATE
AMOUNT   $ 24,500.00

**Remittance Information can be sent to:**
Email:   RemitTo@URSCorp.com
Fax:     (512) 419-6937   Attn:  Cash Applications

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

EXHIBIT
"5"

NON-CERTIFIED COPY



| | Invoice Date | 04/27/11 |
|---|---|---|
| | Invoice | 4666033 |
| | Project | 19228820 |
| | Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

<u>Professional Services for Period Ending 04/15/11</u>

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19228820  H&E Corp. HQ-Construction Docs | 24,500.00 | 0.00 | 24,500.00 |
| Total this job | 24,500.00 | 0.00 | 24,500.00 |
| **TOTAL THIS INVOICE** | 24,500.00 | 0.00 | $24,500.00 USD |

Project Manager: Robert C. Herndon

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

NON-CERTIFIED COPY

# URS

|  |  |
|---|---|
| Invoice Date | 04/27/11 |
| Invoice | 4686033 |
| Project | 19228820 |
| Page | 3 |

H & E Equipment Services, inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

**Professional Services for Period Ending 04/15/11**
*Job: 19228820  H&E Corp. HQ-Construction Docs*

**LUMP SUM**

| | |
|---|---|
| Lump Sum Billing | 24,500.00 |
| **Total Lump Sum** | **24,500.00** |
| | |
| ***Total due this job*** | ***24,500.00*** |
| | |
| **TOTAL THIS INVOICE** | **$24,500.00 USD** |

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

F33575689

NON-CERTIFIED COPY

# URS

Neal Johnson, AIA
Principal Architect

April 26, 2011

Frankie Wynn
H & E Equipment Services Inc.
11100 Mead Road, Suite 200
Baton Rouge, Louisiana 70816

Re:     H&E Corp. HQ - Construction
        Baton Rouge, Louisiana

Mr. Wynn:

Enclosed please find invoice 4666033 for the above referenced project along with an
invoice worksheet for your reference. The invoiced amount of $24,500.00 represents
work completed through 100% of construction documents phase.

Should you have any questions, please don't hesitate to call me at (225) 231-6343.

Sincerely,
URS Corporation

Neal Johnson, AIA
Principal Architect

URS Corporation
7306 Florida Boulevard, Suite 300
Baton Rouge, LA 70806
225.922.5700

NON-CERTIFIED COPY

## LUMP SUM WORK ORDER NO.  08-01

In accordance with the Agreement for Professional Services between  H&E Equipment Services, Inc.
11100 Mead Road, Suite 200, Baton Rouge, LA 70816  ("Client"), and  URS Architecture PC  ("URS"),
a  North Carolina  corporation, dated  August 28, 2006 , this Work Order describes the Services,
Schedule, and Payment Conditions for URS Services on the Project known as:

Phase III Design Services for H&E Equipment Services Corporate Headquarters and Baton
Rouge Area Branch Facility
Baton Rouge, Louisiana

Client Authorized
Representative:     Leonard St.Germain
Address:            H&E Equipment Services, Inc. 11100 Mead Road, Suite 200
                    Baton Rouge, Louisiana
Telephone No.:      225.298.5244

URS Authorized
Representative:     Chad Herndon
Address:            Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806
Telephone No.:      225.922.5856

**SERVICES.** The Services included in this Work Order shall include: Design services for the preparation of
Construction Documents for the new Corporate Headquarters and Baton Rouge Area Branch Facility. See
**ATTACHMENT 1 SCOPE OF SERVICES** for a detailed listing of services.

**SCHEDULE.** The Estimated Schedule to complete preparation of the documents will be no more than 12 –
16 weeks from the notice to proceed. Because of the uncertainties inherent in the Services, Schedules are
estimated and are subject to revision unless otherwise specifically described herein.

**PAYMENT AND EQUITABLE ADJUSTMENTS.** This is a lump sum Work Order. Professional Services
fees will be billed monthly based on percent complete for a total sum of  $ 490,000.00 , URS shall give
Client prompt written notice of unanticipated conditions or conditions which are materially different from
those anticipated by URS at the time the lump sum compensation was agreed upon. If Client wishes URS
to proceed, URS lump sum compensation shall be subject to equitable adjustment for such conditions.

**TERMS AND CONDITIONS.** The terms and conditions of the Agreement referenced above shall apply to
this Work Order, except as expressly modified herein.

**ACCEPTANCE** of the terms of this Work Order is acknowledged by the following signatures of the
Authorized Representatives.

**CLIENT**                              **URS**

_____                 _____
Signature                               Signature
                                        William A. Stevenson, Senior Vice President
_____                 _____
Typed Name/Title                        Typed Name/Title

_____                 _____
Date of Signature                       Date of Signature

EXHIBIT
"6"

NON-CERTIFIED COPY

**ATTACHMENT 1 SCOPE OF SERVICES**

**SCOPE OF SERVICES**

**H&E EQUIPMENT SERVICES**

**HEADQUARTERS AND BATON ROUGE AREA BRANCH FACILITY**

**BATON ROUGE, LOUISIANA**

The scope of work is for URS to provide professional services during the Construction Documentation Phase which include:

**<u>Construction Documentation Phase</u>**

- Based on the approved Design Documents, URS will prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and will advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

- Landscape Design for compliance with regulatory agency requirements.

- URS will assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

- URS will, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction cost, shall assist the Owner in negotiating a contract with the General Contractor to construct the Project.

- Conduct Client / Team review meetings at 50% and 85% completion

- Assist the General Contractor in updating project construction budgets at the completion of DD and at the 50% & 80% completion reviews

NON-CERTIFIED COPY

**MAPP**
CONSTRUCTION

**CHANGE PROPOSAL REQUEST (CPR)**

Date: __June 21, 2013__
REVISED:

MAPP Construction, LLC
601 Poydras St., Suite 1715, New Orleans, LA 70130

To:  Thomas Ryan, Senior Architect
     URS
     7389 Florida Blvd, Suite 300
     Baton Rouge, LA 70806

Re: H&E Kenner Branch Renovations
MAPP Project No. 52079
CPR No.: 53.0   Parking Lot Expansion Joints -
                Mock-Up

MAPP Construction, LLC has compiled its cost estimate for the above referenced item - as described herein below.  We, therefore, request your immediate review and/or approval of this request in order to expedite the issuance of the Owner's written directive to proceed with changes in the Work in accordance with the applicable Articles of our Contract Agreement.

**Origination Date:** __January 15, 2013__

| | |
|---|---|
| Description of Changed Work | Provide Labor, Materials, Equipment, Management & Engineering for — **Parking Lot Expansion Joints - Mock-Up** The work shall be performed in accordance with direction from the Architect to furnish and install a mock-up for corrective action to the failing expansion joints in the concrete paving.  This work will be in a 15LF section of paving to be selected by the Architect and/or Owner.  This CPR includes mobilization, demo, Sika 321FS, clean-up and demobilization.  This work will take approximately 2-3 working days.  The area to receive the mock-up shall remain free from all traffic (i.e. vehicle, equipment, pedestrian, etc.).  Reference attached cost breakdown, subcontractor proposal and RFI #54. |

| Reason for Change | X | Owner Request/Progress Change | | Betterment | | Design Change |
|---|---|---|---|---|---|---|
| Status of Changed Work | X | On-Hold | | Completed | | Ongoing | | Pre-Construction |

The Lump Sum Amount of this Change:                                          $10,828

The Amount of Change in the Contract Time for Work associated with this Change - ONLY [1]              3

Date through which the Proposed Amount is Valid:                              July 5, 2013

| [2] Explanation | N/A |
|---|---|

SUBMITTED BY:  CONTRACTOR:  MAPP Construction, LLC
                                                                    Amount Agreed To
Brad Rossi, Sr. Project Manager            8/21/2013
                                            Date Submitted        Initials / Date Agreed To

AUTHORIZED BY:    URS

Thomas Ryan, Senior Architect              Date                   Amount Authorized

APPROVED BY:    H&E

Frankie Wynn, H&E Equipment Services       7/10/2013      $10,828
                                            Date           Amount Approved

Cc:  Project Team
     Other:

*Also need quote for mock up for metal plate.* FW

Page 1 of 1

EXHIBIT
"7"

NON-CERTIFIED COPY

**From:**    Frankie Wynn <fwynn@he-equipment.com>
**To:**    "Johnson, Neal" <neal.johnson@urs.com>
**CC:**    1.  "Dorsey, Stephan" <sdorsey@mjwomack.com>
         2.  "Ryan, Thomas E" <thomas.e.ryan@urs.com>
         3.  John Jones <jjones@he-equipment.com>
         4.  Murray L. McCullough (murray@benchmarkgroupllc.com)
**Subject:**    RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues
**Sent:**    6/11/2013 4:17:17 PM +00:00

Do you know when we will have an answer? We need to move forward on getting this issues addressed.

Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809  (New Address)
Office:  225-298-5229
Mobile:  225-603-4438
Fax:  225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com


-----Original Message-----
From: Johnson, Neal [mailto:neal.johnson@urs.com]
Sent: Thursday, June 06, 2013 10:21 AM
To: Frankie Wynn
Cc: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com); pbonner@mjwomack.com; Ryan, Thomas E; Sanders, Debra; John Jones; Murray L. McCullough (murray@benchmarkgroupllc.com); Hill, Terry
Subject: RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Frankie:
We will review the recommendation with Benchmark Group (our civil engineer of record) and request their opinion.
Regarding the request that URS participate in the cost of this work, this request will be forwarded to URS management for their directive.
Sincerely,
Neal Johnson


-----Original Message-----
From: Frankie Wynn [mailto:fwynn@he-equipment.com]
Sent: Thursday, June 06, 2013 7:58 AM
To: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com); pbonner@mjwomack.com; Ryan, Thomas E; Johnson, Neal; Sanders, Debra; John Jones
Subject: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Attached is the latest recommendation to remedy the Expansion/Construction Joint issues at the H&E Baton Rouge Branch.  This recommendation is unacceptable to H&E for several reasons, not the least of which is the cost.  As the cause of this problem cannot be agreed upon by Womack or URS, I would suggest that both parties agree to share the costs equally.  All parties knew well in advance of design and installation of the paved area, the intended use.  All parties were asked throughout the project for any and all suggestions in all areas of design and construction to voice any and all concerns and make recommendations.  I do not recall any alternatives to the design and installation that were not followed by H&E.

As this issue will not correct itself and by its very nature grows worse each day, time is of the essence.
Let me know your solution as soon as possible.

Thank you

Frankie Wynn
Director of Facilities/Risk/Compliance Management H&E Equipment Services, Inc.
7500 Pecue Lane



URS-00012

NON-CERTIFIED COPY

Baton Rouge, LA 70809 (New Address)
Office: 225-296-5229
Mobile: 225-603-4438
Fax: 225-296-5376
fwynn@he-equipment.com
www.HE-Equipment.com

This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and any attachments or copies.

URS-00013

NON-CERTIFIED COPY

Received
05/06/2015 19:11:52 CST

| | |
|---|---|
| **H&E EQUIPMENT SERVICES, INC.** | * **CASE NO. C626308, SECTION D** |
| **VERSUS** | * **19TH JUDICIAL DISTRICT COURT** |
| **URS CORPORATION ARCHITECTURE,** | * **PARISH OF EAST BATON ROUGE** |
| **P.C., URS CORPORATION, L. O'NEAL** | |
| **JOHNSON, AND THOMAS E. RYAN, III** | * **STATE OF LOUISIANA** |
| **FILED:** _____ | |

_____ **DEPUTY CLERK**

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this Response to the Statement of Undisputed Material Facts submitted in support of the Motion for Summary Judgment filed by defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS").

1.    H&E objects to Statement 1 on the grounds that the referenced Short Form Master Agreement for Professional Services (the "2009 Agreement") is the best evidence of its contents and its terms. Subject to that objection, Statement 1 is admitted as substantially correct.

2.    H&E objects to Statement 2 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 2 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

3.    H&E objects to Statement 3 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 3 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

4.    H&E objects to Statement 4 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 4 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

5.    H&E objects to Statement 5 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS

-1-

NON-CERTIFIED COPY

or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 5 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

6.      H&E objects to Statement 6 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 6 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

7.      H&E objects to Statement 7 on the grounds that it references a document that is the best evidence of its contents. Subject to that objection, Statement 7 is admitted as substantially correct.

8.      H&E otherwise denies that the 2009 Agreement is the only agreement between the parties. H&E denies that the 2009 Agreement governs the entirety of the work performed by URS, and further maintains that certain provisions of the 2009 Agreement are unenforceable.

Respectfully submitted,

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

BY: *Laura E. Carlisle*
ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**FILED**

JUN 0 5 2015

DEPUTY CLERK OF COURT

**ATTORNEYS FOR H&E EQUIPMENT SERVICES, INC.**

-2-

NO LEC 866352 v2
2919213-000024

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served on all known counsel of record who have appeared in this matter by facsimile and/or electronic mail and by placing same in the United States mail, in a properly addressed envelope, with first-class postage prepaid.

LAURA E. CARLISLE

FILED

IN 0 5 2015

DEPUTY CLERK OF COURT

-3-

NO LEC 866352 v2
2919213-000024

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB     Document 4-1     07/16/18     Page 69 of 85

# BAKER DONELSON
BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:   504.566.5200
FAX:   504.636.4000

www.bakerdonelson.com

## FAX COVER SHEET

| | |
|---|---|
| FROM | Shelley Tannehill |
| EMAIL | stannehill@bakerdonelson.com |
| BILL CODE | |
| TO | |
| COMPANY | |
| FAX NUMBER | 12253893392 |
| DATE | 05/06/2015 19:41:16 CST |
| RE | H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al |

## COVER MESSAGE

**Shelley Tannehill**
**Legal Secretary to Danielle Trostorff, Shareholder,**
**Margaret Silverstein and Laura Carlisle**

**Baker, Donelson, Bearman,**
 **Caldwell & Berkowitz, PC**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, Louisiana 70170**
**Telephone: 504.566.8658**
stannehill@bakerdonelson.com<mailto:stannehill@bakerdonelson.com>
**www.bakerdonelson.com<http://www.bakerdonelson.com/>**

**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. with offices in**
**Alabama, Florida, Georgia, Louisiana, Mississippi, Tennessee, Texas and Washington, D.C.**

**[Description: Description: cid:747443820@21092011-2865]<http://www.bakerdonelson.com/>**

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For(r)" for Six Years in**
**a Row!**
 **P Please consider the environment before printing this e-mail.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above.  If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited.  If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.

Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.

NON-CERTIFIED COPY

Under requirements imposed by the IRS, we inform you that,
if any advice concerning one or more U.S. federal tax issues is contained
in this communication (including in any attachments and, if this communication is by email,
then in any part of the same series of emails), such advice was not intended
or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used,
and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or
(2) promoting, marketing or recommending to another party any transaction or tax-related matter
addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at
law.
It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this
electronic mail transmission in error, please delete it from your system without copying it, and notify the
sender by reply e-mail, so that our address record can be corrected.
*********************************************************

Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named
above. If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this
facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person
named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to
avoid the imposition of federal tax penalties.

NON-CERTIFIED COPY

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB     Document 4-1     07/16/18     Page 72 of 85

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:    504.566.5200
FAX:       504.636.4000

www.bakerdonelson.com

LAURA E. CARLISLE
Direct Dial: (504) 566-8643
Direct Fax: (504) 585-6943
E-Mail Address: lcarlisle@bakerdonelson.com

June 5, 2015

**VIA FACSIMILE (225) 389-3392**

Hon. J. Douglas Welborn
Clerk of Court, 19th JDC
Parish of East Baton Rouge
300 North Boulevard
P.O. Box 1991
Baton Rouge, Louisiana 70821

Re:     *H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al.*
        19th JDC No. 626308, Division "D", Section XX1

Dear Mr. Welborn:

Attached please find an Opposition to Defendants' Motion for Summary Judgment and Response to Statement of Undisputed Material Facts Submitted in Support of Defendants' Motion for Summary Judgment which we ask that you file with the Court on behalf of Plaintiff, H&E Equipment Services, Inc. Once we have received your fax confirmation, we will forward the originals to you along with our check for the filing and fax fees associated with this request.

Thank you for your assistance in this matter, and if you have any questions, please do not hesitate to contact us.

With kindest regards, I remain

Sincerely,

*Laura E Carlisle*

Laura E. Carlisle

LEC/sdt
Attachment
cc:     Philip A. Franco, Esq. w/encl. via facsimile (504) 566-0210
        Kellen Matthews, Esq. w/encl. via facsimile (225) 336-5220

NO LEC 866426 v1
2919213-000024 06/05/2015

ALABAMA     FLORIDA     GEORGIA     LOUISIANA     MISSISSIPPI     TENNESSEE     TEXAS     WASHINGTON, D.C.

NON-CERTIFIED COPY

| | | |
|---|---|---|
| **H&E EQUIPMENT SERVICES, INC.** | * | **CASE NO. C626308, SECTION D** |
| **VERSUS** | * | **19TH JUDICIAL DISTRICT COURT** |
| **URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON, AND THOMAS E. RYAN, III** | * | **PARISH OF EAST BATON ROUGE** |
| | * | **STATE OF LOUISIANA** |

**FILED:**________________________ ________________________

**DEPUTY CLERK**

**OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this memorandum in opposition to the Motion for Summary Judgment (the "Motion") filed by defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "Defendants"). H&E also submits herewith its Response to the Statement of Undisputed Material Facts Submitted in Support of Defendants' Motion for Summary Judgment.

**Introductory Statement**

As the Court may know from the pending Motions to Compel already before it, this suit stems from damages suffered by H&E as a result of deficient designs and specifications prepared by Defendants for the construction and renovation of H&E facilities in Baton Rouge, Kenner, and Belle Chasse, Louisiana between 2006 and 2013. Among other things, H&E has alleged that Defendants breached their contractual and professional duties in their design for concrete pads constructed to Defendants' specifications at H&E's Baton Rouge and Kenner, Louisiana facilities, and further failed to address and remedy observed crumbling and spalling in the concrete that began in 2012 and/or early 2013 and continues to worsen to this day.

Plainly, if H&E proves at trial that Defendants breached their contractual and professional duties, then Defendants must be held liable for the damages caused by those breaches. Indeed, this is a case in which damages are the only meaningful remedy. Nevertheless, the defendants' Motion for Summary Judgment asks the Court to dispose of H&E's claims for damages and effectively dismiss this case based on language contained in one of the parties' master services agreements (but not the only master services agreement between them) that Defendants contend limits H&E to the remedy of re-performance of the defective design services within one year of substantial completion. Re-performance of the defective work

NON-CERTIFIED COPY

– that is, simply allowing Defendants to give H&E the concrete design that Defendants should have provided in the first place – would not cure the concrete problems that Defendants' defective specifications have caused. In short, Defendants are asking this Court to interpret one of the parties' agreements in a manner that would leave H&E with no meaningful remedy against them.

Additionally, while Defendants now insist that they are only obligated to re-perform their defective designs and specifications, they did not re-perform the work within the requisite one-year period – even though H&E timely notified Defendants of the observed problems in hopes that the parties might collectively find a resolution and remedy the issues.

Even more, the terms of the 2009 Short Form Master Agreement for Professional Services[1] (the "2009 Agreement") relied on so heavily by the defendants in their Motion simply do not have the effects Defendants propose, nor do they foreclose H&E's claims against Defendants for damages resulting from their defective work. Among other things, the 2009 Short Form Master Agreement for Professional Services is **_not_** the only agreement that governs the parties' relationship, it plainly has no application to the work that Defendants performed before 2009 (which is substantially all of the relevant work at the Baton Rouge facilities), and its express scope is limited to work performed exclusively for H&E's Kenner facility. Further, even for the work governed by the 2009 Agreement, there appear to be significant issues of material fact with respect to what the parties intended by virtue of the agreement.

In short, summary judgment is simply not appropriate, and H&E respectfully urges this Court to deny Defendants' Motion.

**I.      Defendants' Motion Provides an Incomplete History
of the Contractual Relationship Between the Parties.**

Defendants' Motion discusses only one of the agreements between the parties – in doing so, the Motion makes it seem as if the relationship between Defendants and H&E *began* with and is governed solely by the Short Form Master Agreement for Professional Services between the parties dated August 13, 2009 (the "2009 Agreement"). This is not correct.[2]   Absent from Defendants' Motion is any mention of the other agreement at issue – the Agreement for Professional Services entered into and executed by the parties on or about August 28, 2006 (the

---

[1]       A copy of the Short Form Master Agreement for Professional Services, dated 8/13/2009, with its attachments, are attached *in globo* as Exhibit "2."

[2]       *See generally*, Affidavit of Frankie Wynn, ¶ 7, attached as Exhibit "1."

-2-

NO LEC 866432.v1
2919213-000024

NON-CERTIFIED COPY

"2006 Agreement").[3] Also absent is any mention of how the 2009 Agreement came about. The mere existence of the 2006 Agreement and the history behind the 2009 Agreement are sufficient to raise critical fact issues and render summary judgment inappropriate.

A.   *The Baton Rouge Facilities and the 2006 Agreement Between the Parties*

The relationship between H&E and Defendants began with discussions regarding the design for and construction of H&E's new corporate headquarters and branch facility in Baton Rouge, Louisiana – the most significant part of the relationship. On or about August 28, 2006, in anticipation of these Baton Rouge projects, Defendants presented H&E with an Agreement for Professional Services (referred to herein as the "2006 Agreement"), which expressly was to govern Defendants' performance of design services and specifications via a series of Work Orders that would set forth specific scopes of services, timelines for completion, and construction costs and compensation.[4] The 2006 Agreement provided the contractual framework for the construction of H&E's corporate headquarters and Baton Rouge branch facility.[5]

Defendants' professional duties and responsibilities are set forth in Article III of the 2006 Agreement, pursuant to which:

> [Defendants are] obligated to comply with applicable standards of professional care in the performance of the Services [set forth in individual Work Orders]. …[6]

Unlike the 2009 Agreement upon which Defendants entirely base their Motion for Summary Judgment, the 2006 Agreement does *not* purport to waive recoverable damages for Defendants' breach of their professional responsibilities and/or duty of care with respect to their design and specifications for the H&E projects, except to limit Defendants' aggregate liability under the 2006 Agreement to $5,000,000.00 for claims arising from professional negligence and $2,000,000 for claims arising from negligence, breach of contract, or other causes of action.[7] The 2006 Agreement also includes a waiver of consequential damages by both parties, including

---

[3]   *See* Agreement for Professional Services between H&E Equipment Services, Inc. and URS Corporation Architecture, NC, PC, dated 8/28/2006, attached as Exhibit "3."

[4]   *See* Ex. "3," 2006 Agreement.

[5]   *See generally*, Ex. "3," 2006 Agreement.

[6]   Ex. "3," 2006 Agreement, art. III.

[7]   Ex. "3," 2006 Agreement, art. V.

-3-

NON-CERTIFIED COPY

damages for loss of use and/or profits.[8]  As shown below, the damages H&E seeks to recover are not consequential damages.

> **B.**  *H&E Proposes Renovations to its Kenner Facility,*
> *and Defendants Present it with the 2009 Agreement.*

The parties operated under the 2006 Agreement for a number of years, including throughout the relevant design phase of the Baton Rouge project.  After the substantial majority of the design work – including the defective concrete specifications now at issue – had been performed, H&E decided to put its corporate headquarters and Baton Rouge branch facility on hold.  In or around 2009, while work on H&E's Baton Rouge facilities was on hold, H&E discussed with Defendants renovations to its existing Kenner, Louisiana facility.  In the context of those discussions regarding the Kenner facility, Defendants presented H&E with a new agreement; and, on or about August 13, 2009, the parties entered into and executed the 2009 Agreement to govern Defendants' work in helping H&E to develop a budget for possible renovations at its Kenner facility.[9]

There was no question that the 2006 Agreement would continue to govern that portion of the work – including the concrete specifications – already performed and to be performed in the future on the corporate headquarters and Baton Rouge branch facility.  And, indeed, with respect to the construction documents prepared by Defendants for the corporate headquarters and Baton Rouge branch facility, Defendants continued to issue Invoices that specifically referenced and incorporated the 2006 Agreement.[10]  As presented to H&E, the 2009 Agreement applied only to the budgeting phase for the renovation of its Kenner facility.[11]  The 2009 Agreement's document identifier – "I:\Proposals\Facilities\H&E Equipment Services – Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc" – as well as the correspondence accompanying the 2009 Agreement as it was presented to H&E indicate that the 2009 Agreement was intended by Defendants to govern only work performed in helping H&E to

---

[8]  *See id.* at art. VII.

[9]  *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

[10]  *See, e.g.,* Invoice No. 4602441, dated 2/24/11, attached as Exhibit "4," and Invoice No. 4666033, dated 4/27/11, attached as Exhibit "5."

[11]  *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

-4-

NON-CERTIFIED COPY

develop a budget for the Kenner project.[12]

## II.   __Defendants Cannot Carry their Burden on Summary Judgment.__

Summary judgment should be granted *only* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966; *see also, e.g., Rager v. Bourgeois*, 2006-0322, p. 5 (La. App. 1st Cir. 2006), 961 So. 2d 330, 333; *Carter v. BRMAP*, 591 So. 2d 1184, 1187 (La. App. 1st Cir. 1991). The burden remains on the movant, and any reasonable doubt must be resolved against the moving party. *See, e.g., Rager*, 961 So. 2d at 333; *Carter*, 591 So. 2d at 1187.    In the context of contractual disputes, summary judgment is appropriate only where the words of a contract are clear, *unambiguous*, and do not lead to absurd consequences; where a contract is ambiguous *and/or the intent of the parties becomes a question of fact*, summary judgment is not appropriate. *See, e.g., Carter*, 591 So. 2d at 1187. Summary judgment is further rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. *Id.*

Here, Defendants' Motion is necessarily dependent upon the resolution of the following questions:

1.    Whether the 2009 Agreement governs the parties' relationship with respect to *all three sites* – Baton Rouge, Kenner, and Belle Chasse;

2.    Whether the 2009 Agreement's "Warranty" provision limits H&E's available remedies for defective or non-conforming design services to "re-performance" of those services; and

3.    Whether the 2009 Agreement effectively waives H&E's right to recover consequential damages.

H&E submits that the answer to all three of these questions is "no" or, at the very least, each of these questions implicates issues of material fact. Accordingly, summary judgment is not appropriate.

### A.    *The 2009 Agreement Does Not Apply to All of the Work Performed by Defendants or Exclusively* __Govern the Relationship Between the Parties.__

Defendants' Motion fails to address the question of which projects are governed by the 2009 Agreement and, instead, presupposes that the entirety of the projects at issue are all subject to the 2009 Agreement. Indeed, Defendants do not even mention the 2006 Agreement – a

---

[12]    *See id.*

-5-

NON-CERTIFIED COPY

somewhat disingenuous and misleading decision given that Defendants expressly continued to operate under the 2006 Agreement in connection with portions of the corporate headquarters and Baton Rouge branch facility even after the 2009 Agreement was signed.

When it was signed, both parties intended that the 2009 Agreement apply only to budgeting for H&E's Kenner facility renovations.[13] In this regard, they did not intend that it apply to those portions of the Baton Rouge project for which Defendants had already provided designs and specifications.[14] And, both parties operated with the understanding that the 2009 Agreement did not apply to the construction of the corporate headquarters and Baton Rouge branch facility, as underscored by the various Baton Rouge invoices Defendants submitted specifically referencing the 2006 Agreement even after 2009.[15] While Defendants make much of the 2009 Agreement's standard integration clause, pursuant to which "[t]his Agreement constitutes the final and complete repository of the agreements between [H&E] and [Defendants] relating to the Services and supersedes all prior or contemporaneous communications, representations, or agreements," that clause demonstrates only that the parties intended that the 2009 Agreement integrate and memorialize the parties' full agreement as to the subject matter before them at the time – Defendants' work in helping H&E to develop a budget for renovations to its Kenner facility.

Defendants apparently contend that the integration clause means that the 2006 Agreement has no effect.[16] This is wrong for two reasons. First, the Work Orders primarily at issue in this litigation in connection with the corporate headquarters and Baton Rouge branch facility – those pertaining to design development and the preparation of construction documents – explicitly reference the 2006 Agreement, as do final Invoices (2011) related to that work.[17] The parties plainly agreed, then, that the 2006 Agreement controls all rights and responsibilities for work performed in connection with design development and Defendants' preparation of construction documents for the Baton Rouge facilities. (Alternatively, at a minimum, the fact that the Work Orders at issue – and their related Invoices – refer to the 2006 Agreement raises a factual issue

---

[13] *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

[14] *See, e.g.,* Ex. "4," Invoice No. 4602441 and Ex. "5," Invoice No. 4666033.

[15] *See supra* note 10.

[16] *See* Ex. "2," 2009 Agreement, ¶ 18.1.

[17] *See, e.g.,* Lump Sum Work Order No. 08-01, attached as Exhibit "6," and Ex. "4," Invoice No. 4602441 and Ex. "5," Invoice No. 4666033.

-6-

NON-CERTIFIED COPY

that cannot be disposed of on summary judgment.)  Second, the 2009 Agreement is explicitly made "effective as of August 13, 2009,"[18] and it has no application to work performed by Defendants prior to that date.  Nothing in the 2009 Agreement makes it apply retroactively, and certainly the "supersede" language does not change history and make it such that the 2006 Agreement never existed.  (And again, the fact that there is an effective date in the 2009 Agreement does, at a minimum, raise a factual question about the application term of the 2009 Agreement that cannot be disposed of on summary judgment.)

The contractual history across the three H&E sites at issue is not as simple as Defendants make it seem in their Motion.  All available evidence indicates that the parties did *not* intend to have the 2009 Agreement govern the relevant design phases for the corporate headquarters and Baton Rouge branch facility projects.  As such, regardless of the effects of the 2009 Agreement, the 2009 Agreement is limited in its application.  At a minimum, the evidence raises a question of fact as to which Agreement governs the relevant phases for the corporate headquarters and Baton Rouge branch facility and, therefore, summary judgment is inappropriate.

      **B.**      *The 2009 Agreement's Purported Limitation of Warranty*
              *and Waiver of Recoverable Damages is Ineffective.*

Unlike the 2006 Agreement, the 2009 Agreement includes a "Warranty" provision, pursuant to which:

> [Defendants] sole liability to [H&E] for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by [H&E] to [Defendants].  Defendants' obligation for re-performance of non-conforming Services as set forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.[19]

Defendants contend that this provision waives H&E's right to recoverable damages and limits H&E's remedies to the one, exclusive remedy of re-performance of the defective design work within one year of substantial completion.  But, as depicted by Defendants, the 2009 Agreement's "Warranty Provision" purports to limit Defendants' professional duty of care – a duty of care imposed by law, *see, e.g., Calandro Development, Inc. v. R.M. Butler Contractors, Inc.*, 249 So.2d 254, 265 (La. Ct. App. 1st 1971) – in such a draconian manner as to completely rob H&E of any effective remedy.  Defendants' proffered interpretation of the provision is so harsh that it offends public policy and is, therefore, unenforceable in the manner Defendants

---

[18]    *See* Ex. "2," 2009 Agreement, p. 1.

[19]    Ex. "2," 2009 Agreement, ¶ 4.1.

NON-CERTIFIED COPY

describe. There are a number of reasons why this provision does not have the effects Defendants propose.

At the outset, Defendants did not attempt to re-perform or even assert their alleged right to re-perform the defective design services and specifications within one year of substantial completion, despite the fact that Defendants were on notice of the non-conforming Services.[20] In fact, H&E notified Defendatns of the breaking and spalling concrete pads at the Baton Rouge and Kenner sites when those problems surfaced, in hopes that the parties might work together to find a solution and remedy. Defendants simply refused to participate in ongoing discussions and efforts to fix the pads and, indeed, refused to share with H&E or the project contractors information regarding its own apparent efforts to troubleshoot the problem and what they and their engineering consultant concluded about the problem.[21] In other words, Defendants did not "re-perform the nonconforming or defective Services" within the year required by the provision on which Defendants rely. As such, Defendants waived whatever limitation of liability might exist in the "Warranty" provision.

More fundamentally, Defendants have not cited any case law or authority allowing a professional such as an architect or engineer to effectively eliminate liability for breaches of professional duties, as Defendants propose they have done here. What Defendants argue is that they may remedy their defective concrete specification –which has already been used to construct enormous concrete pads – simply by handing H&E a piece of paper containing the specification that Defendants should have employed in the first place. Plainly, this would do literally nothing to address the problems that Defendants and their specifications have caused; nor would it provide H&E with any kind of meaningful remedy, leaving H&E to pay for the costs of demolition and new construction. Such would be completely antithetical to the public policies behind the imposition of a professional duty of care in the first place.

In fact, taken to its logical conclusion, Defendants' interpretation of the "Warranty" provision would abrogate any rights or remedies that a party may have for design defects and provide no relief for a design professional's errors. Such a result is inimical to Louisiana's public policy and must be avoided. *C.f. generally, e.g., Lombardo v. Deshotel*, 94-1172, p. 6

---

[20]    See Ex. "1," Wynn Affidavit, ¶¶ 11-12; *see also generally, e.g.,* Request for Information No. 54, dated 1/15/13, attached as Exhibit "7"; *see also,* Emails between Frankie Wynn and Neal Johnson, dated 6/6/13-6/11/13, attached *in globo* as Exhibit "8."

[21]    Ex. "2," Wynn Affidavit, ¶¶ 11-12; *see also, generally,* H&E's Memorandum in Support of Motion to Compel.

-8-

NON-CERTIFIED COPY

(La. 11/30/94), 647 So. 2d 1086 (stipulated damages provisions that are manifestly unreasonable may be set aside as against public policy); *Keiser v. Catholic Diocese of Shreveport, Inc.*, 880 So. 2d 230, 236 (La. App. 2 Cir. 2004) (stipulated damages provisions that do not approximate actual damages but are rather purely penal in nature violate public policy and are thus void and enforceable); *Am. Leasing Co. of Monroe v. Lannon E. Miller & Son, Gen. Contracting, Inc.*, 469 So. 2d 325, 328-29 (La. Ct. App. 2d 1985) (same).

In their Motion for Summary Judgment, Defendants rely heavily on case law regarding warranty provisions and waivers of liability in the context of contracts for the sale of goods for the proposition that contracts limiting liability generally are enforceable under Louisiana law. The analogy is inapplicable to this case – the client of an engineer or architect who has already completed construction according to faulty designs cannot be "made whole" by the design professional's simply re-doing those designs as a consumer can be made whole by a seller's re-provision of a product. But, in any event, the "Warranty" provision included in the 2009 Agreement does not satisfy the requirements for the effective waiver of liability or recoverable damages via warranty provisions even in the context of contracts of sale.

Louisiana law imposes strict requirements on purported waivers of recoverable damages in the context of warranty provisions. *See generally, e.g., Southwest Louisiana Hosp. Assoc. v. BASF Constr. Chemicals, LLC*, 947 F. Supp. 2d 661, 670-71 (W.D. La. 2013). If a party wishes to limit or waive an implied warranty and/or use a warranty provision to limit or waive their liability or recoverable damages, the waiver must be: (1) written in clear and unambiguous terms; (2) contained in the contract (of sale); and (3) brought to the attention of and explained to the party against whom it is to be enforced. *See id.; Prince v. Paretti Pontiac Co.*, 281 So. 2d 112, 117 (La. 1973); *see also, Harvey v. Mosaic Fertilizer*, LLC, No. 06-9510, 2009 WL 3112144, *5 (W.D. La. 9/25/09) (extending *Prince* test to warranty provisions that limit liability or recoverable damages); *Fontenot v. F. Hollier & Sons*, 478 So. 2d 1379, 1386 (La. Ct. App. 3d 1985) (same). The seller or party seeking to enforce the waiver or limitation – in this case, Defendants – has the burden of showing that all three requirements are satisfied. *See, e.g., Southwest Louisiana Hosp. Assoc.*, 947 F. Supp. 2d at 670. Further, even if these requirements are met, a waiver is still null if it purports to exclude or limit liability for damages caused by intentional or gross fault. *See* La. Civ. Code art. 2004; *see also, e.g., Conmaco/Rector L.P. v. L&A Contracting Co.*, No. 12-2337, 2013 WL 5881576, *4 (E.D. La. 10/30/13).

-9-

NON-CERTIFIED COPY

Defendants' refusal to share information regarding their apparent efforts to troubleshoot the concrete problems in connection with the Kenner and Baton Rouge projects – which is now subject to one of the pending Motions to Compel – suggests at least a question of material fact as to whether Defendants' breach of their professional duty of care was intentional and/or amounts to gross negligence. This alone instructs that summary judgment is inappropriate.

Furthermore, Defendants fail to read the "Warranty" provision in light of the 2009 Agreement as a whole. Among other things, the 2009 Agreement also includes a "Limitation of Liability" provision that purports to limit Defendants' liability to H&E "resulting from, arising out of or in connection with the performance of nonperformance of any or all Services or other obligations under a Work Authorization [to] $250,000 or ten percent (10%) of the compensation paid [Defendants] pursuant to such Work Authorization, whichever is greater" – indicating that the parties contemplated the recovery of damages for Defendants' failure to perform design services in accordance with their professional duty of care. [22] Plainly, if the "Warranty" provision meant – as Defendants now contend – that Defendants would never have to pay anything to their customers, no matter what they did, then a limitation of the amount of money they might have to pay would be without effect. Similarly, the 2009 Agreement includes a Waiver of Consequential Damages[23] that also contemplates the recovery of damages, albeit not consequential ones. Again, that provision would be unnecessary and ineffective if the "Warranty" clause meant that Defendants would never have any liability for damages. As "[e]ach provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective," the presence of these conflicting limitations in the 2009 Agreement renders the waiver of recoverable damages in the "Warranty" provision at the very least ambiguous. *Lis v. Hamilton*, 652 So. 3d 1327, 1330 (La.1995) (citations omitted); *see also, Canmaco/Rector L.P.*, 2013 WL 5881576, at *2. Defendants cannot show that the waiver of recoverable damages included in the 2009 Agreement's "Warranty" provision satisfies this first requirement of an effective waiver of recoverable damages.

---

22 Ex. "2," 2009 Agreement, ¶ 9.1.

23 *Id.* at ¶ 8.1.



NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

In sum, Defendants have failed to show that the purported waiver of recoverable damages included in the 2009 Agreement satisfies even the requirements of an effective waiver in the context of contracts of sale. They certainly have not shown – and cannot show – that there are no disputed issues of material fact with respect to whether the waiver satisfies those requirements or what the intent of the parties was with respect to the "Warranty" clause. As such, summary judgment is not appropriate, and H&E is entitled to have this Court deny Defendants' Motion. *See, e.g., Carter,* 591 So. 2d at 1187

C.   *Summary Judgment as Proposed by Defendants Is Also Inappropriate as to the 2009 Agreement's Waiver of Consequential Damages.*

Lastly, Defendants' Motion seeks summary judgment as to the waiver of consequential damages pursuant to the 2009 Agreement, which they argue forecloses H&E's right to seek recovery for various kinds of damages such as loss of use and/or profit as well as increased or additional construction costs occasioned by Defendants' deficient designs. To make this claim, Defendants rely entirely on the 2009 Agreement. (The 2006 Agreement also includes a waiver of consequential damages but contains different language.) As discussed above, the 2009 Agreement does not even apply to the work at issue at H&E's corporate headquarters and Baton Rouge branch facility and, therefore, summary judgment is not appropriate.

More generally, however, Defendants' Motion should be denied because H&E is *not seeking* the kinds of damages supposedly prohibited by contractual waivers of consequential damages. H&E is seeking damages for the costs of repairs and/or additional completion costs directly resulting from Defendants' deficient designs and the damages associated with Defendants' having led H&E to believe that a particular project was appropriate and feasible, which are not consequential damages – they are the damages resulting directly from Defendants' defective design work. *See generally, e.g., D&O Contractors, Inc. v. Terrebonne Parish Sch. Bd.,* 545 So. 2d 588, (La. Ct. App. 1st 1989) (appropriate measure of damages against architect who breached standard of care in designing resurfacing project at school running tracks was the cost necessary to repair defects in tracks that resulted from his negligence); *see also, generally, e.g.,* La. Civ. Code art. 2769; *Melancon v. Tri-Dyne Tele-Pier, LLC,* 11-1055 (La. App. 5 Cir. 5/31/12), 95 So. 3d 576 (appropriate measure of direct damages for defects in construction is the costs of repairs or completion); *Primaux v. Gaspard,* 385 So. 2d 1250, 1253 (La. Ct. App. 3d 1980) (applying Article 2769 to suit against engineer for defective design of structure); *c.f.*

-11-

NON-CERTIFIED COPY

generally, e.g., La. Rev. Stat. § 9:2775 (defining consequential damages as "loss of revenue, production, profits, use, rental income, or cost of replacement facilities, equipment and/or product, as may be applicable"). Such direct damages include, by way of example only, the estimated costs of taking the steps necessary to fix the concrete that is now breaking and spalling at H&E's Baton Rouge and Kenner facilities; the increased costs associated with having to add parking spots at the Baton Rouge facility after construction and landscaping was largely complete because Defendants failed to include the required number of spots in their design; door, frame, and hardware revisions in connection with all of the projects due to defects in Defendants' drawings; and numerous other change orders during the course of the projects necessitated by deficiencies and mistakes in Defendants' designs and specifications. By contrast, consequential damages would include such items as loss of use or loss of profit that H&E suffered as a result of Defendants' deficient design work and problems resulting therefrom. *See generally, e.g.,* La. Rev. Stat. § 9:2775; *Burmaster v. Plaquemines Parish Gov't,* 2010-1543, p. 8 (La. App. 4 Cir. 3/30/11), 64 So. 3d 312, 319 (observing that consequential damages to insured include things like "stigma, inconvenience, loss of enjoyment, loss of business income, increased costs of insurance, and increased deductibles").

H&E is not seeking such consequential damages, making Defendants' Motion moot. To the extent Defendants argue that the 2009 Agreement's waiver of consequential damages includes repair and completion costs like those discussed above, such an interpretation is, once again, contrary to those provisions of the 2009 Agreement that contemplate the recovery of damages and would lead to the absurd consequence of leaving H&E unable to recover any damages whatsoever. It is further contrary to the basic meaning of direct damages in the construction context under Louisiana law. At the very least, the 2009 Agreement's reference to "increased costs of construction" in connection with the waiver of consequential damages is ambiguous and cannot be relied upon as dispositive of the parties' intent.

H&E does not contest that the 2009 Agreement waives consequential damages such as loss of use or loss of profit as to the Kenner and Belle Chasse projects but disputes that the waiver includes direct damages items like repair and completion costs directly occasioned by Defendants' deficient designs and specifications – which are the only damages that H&E is seeking. Accordingly, summary judgment in this regard is inappropriate.

-12-

NO LBC 866432.v1
2919213-000024

NON-CERTIFIED COPY

### III.    Summary Judgment is Inappropriate Because This Case is in Its Infancy, and Insufficient Discovery Has Occurred.

For all of the above reasons, summary judgment is simply inappropriate. In addition, however, there has been insufficient discovery to warrant summary judgment at this stage of the parties' dispute. *See* La. C.C.P. art. 966(C)(1) (establishing the timing of summary judgment as "After adequate discovery or after a case has been set for trial."). Thus far, however, the parties have only exchanged written discovery responses and objections. Though they are in the process of exchanging hard copy documents and drawings, they have not begun the larger and more important task of searching for and exchanging emails and other electronically stored information, which will constitute the lion's share of documents in this case. No depositions have been taken. Similarly, while H&E anticipates that both parties will retain experts and exchange expert reports, they have not done so yet. Thus, the parties have not conducted "adequate discovery." Indeed, there are two Motions to Compel currently pending before the Court, one of which seeks to compel Defendants to produce, among other things, a third-party evaluation and report regarding problems with the concrete at H&E's Baton Rouge and Kenner facilities observed early on, long before litigation, and related correspondence and documents – documents that arguably go to the question of what Defendants knew and intended with respect to observed problems with and repairs to the concrete as well as their own obligations with respect to those problems.

Defendants' assertions to the contrary notwithstanding, there are numerous disputed issues of material fact in this case, including but not limited to the parties' intent as to the effects of the "Warranty" provision and waiver of consequential damages included in the 2009 Agreement. Discovery regarding the parties' intent is therefore necessary.

While discovery need not be entirely completed before a Motion for Summary Judgment is filed or heard, it must be sufficiently completed to leave no contested issues of material facts. This case is not a case with uncontested issues of material fact.

### IV.    Conclusion

Defendants' Motion is predicated on the incorrect notion that the 2009 Agreement controls the entirety of this dispute. It does not. Plainly, the 2006 Agreement controls Defendants' responsibilities at the Baton Rouge facilities, and questions remain regarding the parties' intent with regard to the application of the 2009 Agreement to other issues.

-13-

NON-CERTIFIED COPY