Case 3:18-cv-00690-BAJ-RLB    Document 4-2    07/16/18    Page 1 of 156

Notwithstanding Defendants' assertions to the contrary, this case involves significant questions of material fact, any one of which renders summary judgment inappropriate. For all of the reasons set forth above, H&E respectfully urges this Court to deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**

BY: _Laura E. Carlisle_
ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR H&E EQUIPMENT**
**SERVICES, INC.**

FILED
JUN 0 5 2015
DEPUTY CLERK OF COURT

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served on all known counsel of record who have appeared in this matter by facsimile and/or electronic mail and by placing same in the United States mail, in a properly addressed envelope, with first-class postage prepaid.

_Laura E. Carlisle_
LAURA E. CARLISLE

-14-

NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

**H&E EQUIPMENT SERVICES, INC.**  \*   **CASE NO. C626308, SECTION D**

**VERSUS**  \*   **19TH JUDICIAL DISTRICT COURT**

**URS CORPORATION ARCHITECTURE,**  \*   **PARISH OF EAST BATON ROUGE**
**P.C., URS CORPORATION, L. O'NEAL**
**JOHNSON, AND THOMAS E. RYAN, III**  \*   **STATE OF LOUISIANA**

FILED: _____   _____
                                          **DEPUTY CLERK**

<u>**AFFIDAVIT OF FRANKIE WYNN**</u>

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

  NOW COMES, Frankie Wynn, who under penalty of perjury and from his own personal

knowledge, states:

  1.  I am over the 18 years of age and competent to give testimony in this matter.  I

have personal knowledge of all facts and circumstances in this Affidavit.

  2.  I submit this Affidavit in support of the Opposition to Defendants' Motion for

Summary Judgment filed by H&E Equipment Services, Inc. ("H&E").

  3.  I am currently the Director of Facilities/Risk/Compliance Management for H&E

and am based out of H&E's Corporate Headquarters located at 7500 Pecue Lane, Baton Rouge,

Louisiana.  I have held this position since May 2010, prior to which I served as H&E's

Risk/Asset Manager.

  4.  As H&E's Director of Facilities, I was responsible for overseeing the construction

phase of the Baton Rouge, Kenner, and Belle Chase, Louisiana projects at issue in this litigation.

  5.  I officially began overseeing the Baton Rouge, Kenner, and Belle Chase

construction projects in 2010.  In addition, I maintain H&E's files regarding the projects and

have reviewed the documents relevant to this dispute.

  6.  During my involvement with the projects, I regularly communicated with L.

O'Neal Johnson, Thomas E. Ryan, III, and other representatives and employees of URS

Corporation Architecture, P.C. and URS Corporation (collectively, referred to as "URS"), as

well as the various general contractors and subcontractors for the three projects.

  7.  I am aware of two master services agreements that pertain to the Baton Rouge,

Kenner, and Belle Chase projects: the Agreement for Professional Services entered into and

executed by the parties on or about August 28, 2006 (the "2006 Agreement"), and the Short

-1-

EXHIBIT
"1"

NON-CERTIFIED COPY

Form Master Agreement for Professional Services between the parties dated August 13, 2009 (the "2009 Agreement").

8.      A true and correct copy of the 2006 Agreement is attached to H&E's Opposition to Motion for Summary Judgment as Exhibit "3."

9.      A true and correct copy of the 2009 Agreement is attached to H&E's Opposition to Motion for Summary Judgment as part of Exhibit "2."

10.     There have been multiple problems associated with the work performed by URS on all three projects at issue. Among other things, during and/or around the time of substantial completion of the Baton Rouge and Kenner projects, H&E and the project contractors began to observe crumbling and spalling in the concrete constructed to URS's specifications at the facilities.

11.     H&E notified URS of the observed problems with the concrete at the Baton Rouge and Kenner sites when those problems surfaced, in hopes – and with the expectation – that the parties would work together to find a solution and remedy. But, while URS initially appeared willing to troubleshoot the problems, they ultimately refused to participate in ongoing discussions and efforts to fix the concrete pads. URS also refused to share with H&E or the project contractors information regarding its own apparent efforts to troubleshoot the problem and what it and its engineering consultant concluded about the problem.

12.     URS did not attempt or offer to re-perform its design services or provide new specifications for the concrete pads at the Baton Rouge and Kenner facilities.

13.     The concrete problems at the Baton Rouge and Kenner facilities began in or around late 2012 and early 2013 – near the time of substantial completion – and continue to worsen to this day.

Dated:      June ___5___, 2015

_FRANKIE WYNN_

SWORN TO AND SUBSCRIBED
BEFORE ME ON THIS THE
5 th DAY OF JUNE, 2015.

_____NOTARY PUBLIC_____

James D. Seymour, Notary Public
LA Bar Roll No.: 29418
Commissioned for East Baton Rouge, Louisiana
Qualified to act Statewide
My Commission is for Life.

-2-

NO LBC 866095 v3
2919213-000024

NON-CERTIFIED COPY

# URS

terrorism, energy shortage, accidents or delay in transportation, accidents in the handling and rigging of heavy equipment, explosion, riot, war, court injunction or order, delays by acts or orders of any governmental body or changes in laws or government regulations or the interpretations or application thereof or the acts or omissions of the Client or its other contractors, vendors or suppliers. In the event of a Force Majeure Event, Consultant shall receive an equitable adjustment extending Consultant's time for performance for such Services sufficient to overcome the effects of any delay, and an increase(s) to Consultant's compensation sufficient to account for any increased cost in performance or loss or damage suffered by Consultant.

**15. RESPONSIBILITIES OF CLIENT**

15.1   Without limiting any express or implied obligations of Client under applicable law, Client shall: (1) provide Consultant, in writing, all information relating to Client's requirements for the project; (2) correctly identify to Consultant the location of subsurface structures, such as pipes, tanks, cables, and utilities; (3) notify Consultant of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give Consultant prompt written notice of any suspected deficiency in the Services; (5) with reasonable promptness, provide required approvals and decisions; and (6) furnish or cause to be furnished to Consultant full, unrestricted and legal access to, and use of, the site and all necessary rights of way and easements, in order to perform the Services. In the event Consultant is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and Consultant is not a party, Client shall pay Consultant for any time and expenses required in connection therewith, including reasonable attorney's fees.

15.2   Consultant may rely upon and use in the performance of any Services information supplied to it by Client without independent verification and Consultant shall not be responsible for defects in its Services attributable to its reliance upon or use of such information.

**17. TERM**

17.1   Unless otherwise specified, the term of this Agreement shall run from the Effective Date until Consultant has completed the Services and received all payments due under the Agreement.

**18. GENERAL**

18.1   Client and Consultant each represent and warrant that this Agreement has been duly authorized, executed and delivered and constitutes its binding agreement enforceable against it. This Agreement and any executed Work Authorizations supersede all prior written and/or oral contracts and agreements that may have been made or entered into between Client and Consultant regarding the subject matter hereof, including but not limited to any and all proposals, oral or written, and all communications between the Parties relating to this Agreement or any Work Authorization(s), and constitute the entire agreement between the Parties hereto with respect to the subject matter hereof.

18.2   This Agreement and Work Authorization(s) may not be assigned by Consultant or Client in any way, including by operation of law, unless otherwise mutually agreed in writing, any such attempted non-authorized assignment shall be null and void and of no force or effect.

18.3   Any cost opinions or estimates provided by Consultant will be on a basis of experience and judgment, but since Consultant has no control over market conditions or bidding procedures, Consultant cannot and does not warrant that bids, ultimate construction cost, or project economies will not vary from such opinions or estimates. Neither this Agreement nor any of the Services provided hereunder shall constitute or provide for, and Consultant shall not be considered to have rendered, any legal or financial opinion(s) regarding the feasibility of this project or any other or regarding any other matter. Unless otherwise expressly included in a Work Authorization, Consultant shall under no circumstances provide as part of the Services a consent, opinion or similar document, or act as a qualified person or expert, in connection with any filing by Client with the United States Securities and Exchange Commission, or similar non-United States agency, authority or commission.

18.4   Notices shall be effective hereunder as follows only if in writing and addressed to the authorized representative designated in applicable Work Authorizations: (1) upon delivery, if delivered personally to the person; (2) upon transmission, if transmitted to the facsimile number of the person; and (3) upon posting, if by first class or overnight mail (postage prepaid).

18.5   All contract issues and matters of law will be adjudicated in accordance with the laws of the state where the project is located, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction; provided, however that if the project is located outside the United States, the laws of the State of California shall govern. Venue for any litigation shall be any state court or United States District Court having jurisdiction over the parties and subject matter.

18.6   The terms and conditions of this Agreement shall prevail, notwithstanding any variance with any purchase order or other written instrument submitted by Client whether formally rejected by Consultant or not. This Agreement may be modified only by amendment when signed by each Party. In the event that any one or more of the provisions of this Agreement shall be found to be illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and such term or provision shall be deemed stricken to the extent and in the jurisdictions necessary for compliance with applicable law.

18.7   Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Client or Consultant.

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

4

URS-01729

NON-CERTIFIED COPY

# URS

18.8   The headings in this Agreement are for convenience only, and shall not affect the interpretation hereof. The terms "hereof", "herein," "hereto" and similar words refer to the entire Agreement and not to any particular Article, Section, Attachment, Exhibit or any other subdivision of this Agreement. References to "day" or "days" shall mean calendar days unless specified otherwise.

18.9   The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including, but not limited to, indemnities and any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

18.10   It is understood and agreed that any delay, waiver or omission by Consultant or Client to exercise any right or power arising from any breach or default by Client or Consultant in any of the terms, provisions or covenants of this Agreement or any Work Authorization shall not be construed to be a waiver by Consultant or Client of any subsequent breach or default of the same or other terms, provisions or covenants on the part of Consultant or Client.

## 19.   ATTACHMENTS AND EXHIBITS

The following attachments and exhibits, which are attached hereto, are part of this Agreement.

Attachment 1 – Work Authorization

Attachment 2 – Fee Proposal, Scope of Work, Schedule

Attachment 3 – URS 2009 Schedule of Fees and Charges

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, effective as of the day and year first above mentioned.

**H&E Equipment Services, Inc.**

By: _____
(Signature)

Name: _Lemar l. Si Fiermold_
(Printed)

Title: _V.P. Operation_

**URS Corporation Architecture PC**

By: _Craig W. Gordon_
(Signature)

Name: _Craig W. Gordon_
(Printed)

Title: _VP / OM_

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100_Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

5

URS-01730

NON-CERTIFIED COPY

# URS

forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.

4.3 THE WARRANTY SET FORTH IN THIS ARTICLE 4 IS EXCLUSIVE, AND IN LIEU OF ANY AND ALL OTHER WARRANTIES RELATING TO THE SERVICES, WHETHER STATUTORY, EXPRESS OR IMPLIED, AND CONSULTANT DISCLAIMS ANY SUCH OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE AND ANY AND ALL WARRANTIES ARISING FROM COURSE OF DEALING AND/OR USAGE OF TRADE. ANY OTHER STATEMENTS OF FACT OR DESCRIPTIONS EXPRESSED IN THE AGREEMENT OR ANY WORK AUTHORIZATION SHALL NOT BE DEEMED TO CONSTITUTE A WARRANTY OF THE SERVICES OR ANY PART THEREOF. CONSULTANT'S REPERFORMANCE OF DEFECTIVE OR NON-CONFORMING SERVICES THROUGH THE ONE YEAR PERIOD PROVIDED FOR IN THIS ARTICLE 4 SHALL CONSTITUTE COMPLETE FULFILLMENT OF, AND CLIENT'S EXCLUSIVE REMEDY FOR, ALL THE LIABILITIES OR RESPONSIBILITIES OF CONSULTANT TO CLIENT FOR NON-CONFORMING OR DEFECTIVE SERVICES, WHETHER THE CLAIMS OF CLIENT ARE BASED ON DELAY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, WARRANTY, INDEMNITY, ERROR AND OMISSION OR ANY OTHER CAUSE WHATSOEVER.

5. WORK BY OTHERS

5.1 The performance by Consultant of Services under a Work Authorization shall not constitute an assumption by Consultant of the obligations of Client or its other contractors. Consultant shall not control or have charge of, and shall not be responsible for, construction means, methods, techniques, sequences, procedures of construction, health or safety programs, or precautions connected with the work of Client or its other contractors, and shall not manage, supervise, control or have charge of construction. Client shall require Consultant to be named as an additional insured along with Client on any liability insurance policies provided by Client's construction contractors. To the fullest extent permitted by law, Client shall defend Consultant against any claim, suit or proceeding asserted by one of its other contractors and indemnify, defend and save Consultant harmless from any and all actual or alleged claims and losses (including, without limitation, attorney's fees) sustained by such contractor in connection with the Services, regardless or whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

6. INSURANCE

6.1 In the event Consultant performs Services under any Work Authorization in connection with a project for which Client or another party with which Client has contracted obtains all-risk or builder's risk property insurance, Client, as the case may be, shall name, or shall cause such other party to name, Consultant as an additional insured on such all risk or builder's risk property insurance. Client acknowledges that Consultant has an insurable interest in such all risk or builder's risk property insurance.

6.2 Consultant and Client each waive all rights of recovery and subrogation against each other with respect to a loss occurring to property of the other, to the extent that such waivers do not invalidate the property insurance of either.

7. INDEMNITY

7.1 Each Party shall indemnify, defend and save the other Party, its officers, directors, employees and affiliates harmless from any loss, cost or expense claimed by third parties, including employees of either Party, for property damage and/or bodily injury, including death, to the proportionate extent such loss, cost or expense arises from the negligence or willful misconduct of the indemnifying Party, its employees or affiliates in connection with the Services.

7.2 Notwithstanding any other provision contained elsewhere in this Agreement to the contrary and to the fullest extent permitted by law, Client shall be liable for and indemnify, defend and save Consultant, its officers, directors, employees and affiliates harmless from and against any and all actual or alleged claims, damages (including incidental, consequential, indirect and special damages), losses, and expenses (including, without limitation, all possible, attorney's fees, fines and administrative or civil sanctions arising out of or related to such claim) (collectively "Losses") arising out of: (1) economic loss suffered by third parties; and/or (2) investment decisions of Client or third parties in reliance upon the results of the Services, regardless of whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

7.3 The indemnity and save harmless obligations of Consultant and Client under this Article 7 shall not apply with respect to any Hazardous Material, as Consultant's and Client's rights and obligations with respect thereto are set forth in Article 10.

8. WAIVER OF CONSEQUENTIAL DAMAGES

8.1 Notwithstanding any other provision in this Agreement to the contrary or a Work Authorization and to the fullest extent permitted by law, neither Client nor Consultant shall be liable, whether based on contract, tort, negligence, strict liability, warranty, indemnity, error and omission or any other cause whatsoever, for any consequential, special, incidental, indirect, punitive or exemplary damages, or damages arising from or in connection with loss of power, loss of use, loss of revenue or profit (actual or anticipated), loss by reason of shutdown or non-operation, increased cost of construction, cost of capital, cost of replacement power or customer claims, and Consultant hereby releases Client and Client hereby releases Consultant from any such liability.

9. LIMITATION OF LIABILITY

9.1 Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, in no

I:\Proposals\Facilities\H&E Equipment Services – Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

2

NON-CERTIFIED COPY

# URS

event shall the total cumulative aggregate liability of Consultant, its subconsultants, and their respective partners, officers, directors, shareholders, employees, and agents (referred to collectively in this Article as "Consultant") to Client resulting from, arising out of or in connection with the performance or nonperformance of any or all Services or other obligations under a Work Authorization, exceed $250,000 or ten percent (10%) of the compensation paid Consultant pursuant to such Work Authorization, whichever is greater, or extend beyond the expiration of the warranty period under Article 4 for the Services performed under the Work Authorization, regardless of the legal theory under which such liability is imposed. The remedies stated in the Agreement are Client's sole and exclusive remedies for any failure by Consultant to comply with obligations to Client, and Client hereby irrevocably waives any right to assert a claim against Consultant based on a legal theory that a remedy provided herein fails of its essential purpose.

### 10. HAZARDOUS MATERIAL

10.1     Nothing in this Agreement shall be construed or interpreted as requiring Consultant to assume the status of, and Client acknowledges that Consultant does not act in the capacity nor assume the status of, Client or others as a "generator," "operator," "transporter," or "arranger" in the treatment, storage, disposal, or transportation of any hazardous substance or waste as those terms are understood within the meaning of the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or any other similar federal, state, or local law, regulation, or ordinance. Client acknowledges further that Consultant has played no part in and assumes no responsibility for generation or creation of any hazardous waste, pollution condition, nuisance, or chemical or industrial disposal problem, if any, which may exist at any site that may be the subject matter of any Work Authorization.

10.2     It is acknowledged by both parties that the Services do not include services related to regulated substances, pollutants, or hazardous or toxic wastes ("Hazardous Material"). In the event Consultant or any other party encounters undisclosed Hazardous Materials, Consultant shall notify Client and, to the extent required by law or regulation, the appropriate governmental officials, and Consultant may, at its option and without liability for delay, consequential or any other damages to Client, suspend performance of Services on that portion of the project affected by Hazardous Material until Client: (i) retains appropriate specialist consultant(s) or contractor(s) to identify and, as appropriate, abate, remediate, or remove the Hazardous material; and (ii) warrants that the project site is in full compliance with all applicable laws and regulations. Notwithstanding any other provisions to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, Client shall indemnify, defend and save Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers, directors of any of the foregoing, if any, from and against any and all Losses which arise out of the performance of the Services and relating to the regulation and/or protection of the environment, including, without limitation, Losses incurred in connection with characterization, handling, transportation, storage, removal, remediation, disturbance or disposal of Hazardous Material, whether above or below ground and not brought to a Client site or other proposed project site by Consultant in the performance of the Services without Client's approval.

### 11. CHANGES

11.1     The Parties may from time to time by mutual agreement seek to modify, extend or enlarge the Services under a Work Authorization ("Modification"). In the event the Parties agree to a Modification to add additional Services, or to make other modifications to the Services, Consultant's compensation, the schedule and any other relevant terms and conditions of the applicable Work Authorization shall be equitably adjusted prior to performance of such Services.

### 12. OWNERSHIP OF DOCUMENTS

12.1     Consultant grants to Client a transferable, irrevocable and perpetual royalty-free license to retain and use all work products delivered to Client for any purpose in connection with the project specified in each Work Authorization, upon full payment by Client for Consultant's Services. Client also may use such work product for other purposes with Consultant's written consent. Re-use of any such work product by Client on any extension of the project or on any other project without the written authorization of Consultant shall be at Client's sole risk and Client shall indemnify, defend and save Consultant and its affiliates, consultants, agents, subcontractors and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such re-use. Consultant shall have the right to retain copies of all such work product. Consultant retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

### 13. TERMINATION/SUSPENSION

13.1     Client may terminate all or any portion of the Services under one or more Work Authorizations for convenience, at its option, by sending a written notice to Consultant. Either party can terminate this Agreement or a Work Authorization for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a notice of termination, unless a later date is specified in the notice. The notice of termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the cause for termination stated in the notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay Consultant upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. Any suspension of Services by Client shall result in an equitable adjustment to Consultant's compensation, time for performance, or any of its other obligations under a Work Authorization.

### 14. FORCE MAJEURE

14.1     Any delay or failure of Consultant in performing its required obligations hereunder shall be excused if and to the extent such delay or failure is caused by a Force Majeure Event. A "Force Majeure Event" means an event due to any cause or causes beyond the reasonable control of Consultant and shall include, but not be limited to, acts of God, strike, labor dispute fire, storm, flood, windstorm, unusually severe weather, sabotage, embargo,

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

3

URS-01728

NON-CERTIFIED COPY

# URS

## SHORT FORM MASTER AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### H&E Equipment Services, Inc.
### AND
### URS Corporation Architecture PC

THIS AGREEMENT ("Agreement") for Professional Services, (together with the attachments hereto) dated and effective as of August 13, 2009 (the "Effective Date"), is hereby made and entered into by and between H&E Equipment Services, Inc., a Delaware corporation, (hereinafter "Client") having a place of business located at 11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816 and URS Corporation Architecture PC, a North Carolina corporation (hereinafter "Consultant") having a place of business located at 7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806 Consultant and Client are each individually referred to as a "Party" and collectively as the "Parties".

The Parties agree as follows:

### 1.   WORK AUTHORIZATIONS

1.1   Consultant agrees to undertake and perform certain consulting and professional engineering services ("Services") in accordance with the terms and conditions contained herein, as may be requested by Client from time to time. The Services to be performed, Consultant's compensation, and the schedule for performance for each task shall be described in one or more authorizations issued to Consultant by Client, the form of which is attached hereto as Attachment 1 ("Work Authorization"). A Work Authorization shall be valid and binding upon the Parties only if accepted in writing by Client and Consultant. Each duly executed Work Authorization shall be subject to the terms and conditions of this Agreement, except to the extent expressly modified by the Work Authorization.

1.2   It is the expressed intent of the parties that this Agreement shall be made available to subsidiaries and affiliated companies of Consultant. For the purposes of this Agreement, as it applies to each Work Authorization, the term "Consultant" shall mean either Consultant as defined above or the subsidiary or affiliate of Consultant identified in the Work Authorization. The applicable Work Authorization shall clearly identify the legal name of the entity accepting the Work Authorization.

### 2.   PAYMENTS FOR SERVICES

2.1   Unless otherwise stated in a Work Authorization, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not received within thirty (30) days from the due date of such payment, Consultant may suspend further performance under one or more Work Authorizations until payments are current. Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount. Client shall pay an additional charge of one percent (1%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount. In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

2.2   Client shall reimburse Consultant for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of Consultant's Services. For the purpose of this Article such taxes shall not include taxes imposed on Consultant's net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid Consultant under the applicable Work Authorization.

2.3   Where charges are "not to exceed" a specified sum, Consultant shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum. If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded. Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established, or other circumstances beyond URS control, shall be a basis for equitable adjustments in the budget and schedule.

### 3.   CONFIDENTIALITY

3.1   For a period commencing with the disclosure of any confidential information under this Agreement and/or a Work Authorization(s) and ending on the second anniversary such disclosure was first made, Consultant and Client each agree not to disclose to third parties, including also subcontractors and vendors (unless such subcontractors and vendors have a need to know and are bound to similar obligations of confidentiality), any information that is identified as confidential in writing on the materials made available to the other Party hereunder

### 4.   WARRANTY

4.1   Consultant warrants that any consulting and professional engineering Services performed by it under a Work Authorization shall be performed in accordance with that degree of care and skill ordinarily exercised by members of Consultant's profession practicing at the same time in the same location. Consultant's sole liability to Client for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by Client to Consultant. Consultant's obligation for re-performance of non-conforming Services as set

I:\Proposals\Pas\Klien\H&E Equipment Services - Kenar\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

URS-01726      EXHIBIT      "2"

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB    Document 4-2    07/16/18    Page 9 of 156

# URS

## ATTACHMENT 1

## TIME AND MATERIALS WORK AUTHORIZATION 09-100

In accordance with the Agreement for Consulting and Professional Services between H&E Equipment Services, Inc. ("Client"), and URS Corporation Architecture PC ("Consultant"), a North Carolina corporation, dated 08.13.09, this Work Authorization describes the Services, Schedule, and Payment Conditions for Consultant's Services on the Project known as:

Renovations and Additions to Kenner, LA Branch
H&E Equipment Services, Inc.

Client Authorized
Representative: Leonard St. Germain
Address:          11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816

Telephone No.: 225.298.5244

Consultant Authorized
Representative: Chad Herndon
Address:          7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806
Telephone No.: 225.922.5244

**SERVICES.** The Services shall be described in Attachment 2 to this Work Order.

**SCHEDULE.** The Estimated Schedule shall be set forth in Attachment 2 to this Work Authorization. Because of the uncertainties inherent in the Services, Schedules are estimated and are subject to revision unless otherwise specifically described herein.

**PAYMENT.** Payment of $0.00 . is due upon signature of this Work Authorization and will be applied against the final invoice for this Work Authorization. URS charges shall be on a "time and materials" basis and shall be in accordance with the Consultant's Schedule of Fees and Charges in effect at the time the Services are performed. Payment provisions and the Consultant's current Schedule of Fees and Charges are attached to this Work Authorization as Attachment 3.

**TERMS AND CONDITIONS.** The terms and conditions of the Agreement referenced above shall apply to this Work Authorization, except as expressly modified herein.

**ACCEPTANCE** of the terms of this Work Authorization is acknowledged by the following signatures of the Authorized Representatives.

| CLIENT | CONSULTANT |
|---|---|
| Signature | Signature |
| Typed Name/Title | Craig W. Gardner / VP. Typed Name/Title |
| 8/31/0 9 Date of Signature | 9/03/00 Date of Signature |

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

URS-01426

NON-CERTIFIED COPY

05/06/2015 19:42:59 CST



**ATTACHMENT 2**

August 13, 2009

Leonard St. Germain
H&E Equipment Services
Baton Rouge, LA

Re:    Renovations and Additions to H&E Equipment – Kenner LA

Leonard:

URS is pleased to provide you with a proposal for professional services for assistance with determining a legitimate budget for the renovations and additions to your H&E Equipment facility located at **125 East Airline Drive in Kenner LA**. A list of work items we discussed is attached (**Attachment 2**)

As we discussed the first order of business will be to determine the existing condition of the buildings and develop drawings and sketches of the renovations. From these documents, we can obtain accurate construction estimates for the work. With this data a realistic presentation can be offered for consideration by management.

We propose to provide you these services for a total fee not to exceed amount of **$20,000.00** based on our "Standard Billing Rate Schedule" This schedule includes the cost of all project personnel associated with the project, documentation and all reimbursement costs incurred during the course of the performance of the outlined scope of work.

Thank you for considering **URS** for this opportunity. If you have any questions or require any additional information, please feel free to contact me at 225.231.8343 or cell 225.324.5848. Thank you for your consideration.

Sincerely,

URS Corporation

Neal Johnson
Principal Architect

Mike Richardson
Vice President

URS Corporation Architecture PC
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806

URS-01427

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB   Document 4-2   07/16/18   Page 11 of 156   From Shelley Tannehill

# URS

Re: Renovations and Additions to H&E Equipment – Kenner LA
2 | P a g e

## SCOPE OF WORK

Based on our recent site visit the focus of the project will include:

1. Developing drawings of the existing site and buildings.
2. Review of existing truck traffic circulation including company, employee and customer vehicle parking. Additional paving with drainage consideration will be included.
3. Evaluate the condition of all exterior roofs and walls of all buildings on the property.
4. Evaluate condition and operational status of the existing Office / Sales area with a focus on renovating the restrooms and upgrading the finishes in all other areas. Review of the HVAC and Electrical systems to be included.
5. Evaluate circulation and storage utilization of the Parts Area.
6. Evaluate covered area west of Parts Building (existing Equipment Wash Area)
7. Develop sketches and drawings for a:
   a. New entrance for Office / Sales building.
   b. New office / tool storage and break room area to the front (east) end of the Shop Building.
   c. Demolish existing office/tool storage and break room to be used as transition area.
   d. Add a new overhead door on south side of building in this immediate area.
   e. New enclosed service bay with overhead doors to the rear (west) end of the Shop Building.
   f. New open frame bay to the rear (west) end of the Shop Building.
   g. New 40' x 70' Equipment Wash Building to be located at the rear (west) end of the site.
8. Assist in obtaining realistic budget pricing from three (3) local qualified general contractors.

## SCHEDULE

We anticipate the effort will require 3 calendar weeks to complete.

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB Document 4-2 07/16/18 Page 12 of 156

# URS CORPORATION
## SCHEDULE OF FEES AND CHARGES
### Engineering/Environmental & Consulting Services

> The following describes the basis for compensation for services performed during the fiscal year 2009. This Schedule of Fees and Charges will be adjusted annually on January 1 of each subsequent year to reflect merit and economic salary increases, and changes in the expected level and mode of operations for the new year. The new Schedule of Fees and Charges will apply to existing and new assignments.

## PERSONNEL CHARGES

The charge for all time required in the performance of the Scope of Services, including office, field and travel time, will be at the Unit Priced Hourly Rates set forth below for the labor classifications indicated.

| Labor Classification | Hourly Rate ($) |
| --- | --- |
| Clerk* | 48 |
| Technical Typist/Word Processor* | 55 |
| Editor/Drafter/Designer/Illustrator* | 75 |
| Lab/Field Supervisor* | 75 |
| Technician* | 63 |
| Senior Technician | 68 |
| Graduate Staff Professional | 70 |
| Staff Professional | 82 |
| Senior Staff Professional | 93 |
| Assistant Project Professional | 99 |
| Project Professional | 115 |
| Senior Project Professional | 130 |
| Consulting/Sr. Consulting Professional | 160 |
| Principal/Sr. Principal Professional | 180 |

Charges for contract personnel under URS supervision and using URS facilities will be made according to the hourly rate corresponding to their classification.

When staff are performing project fieldwork, a minimum daily charge of 4 hours will apply.

A maximum of eight (8) hours travel time per day will be charged for travel within the continental United States.

When URS staff appear as expert witnesses at court trials, arbitration hearings, mediation and depositions, their time will be charged at $250.00 per hour.

Overtime (hours worked in excess of eight (8) hours per day) by exempt personnel will be charged at the above straight time hourly rate. Overtime by non-exempt personnel (classifications identified with an asterisk "*") will be charged at 1.5 times the above hourly rate.

## OTHER PROJECT CHARGES

### Subcontracts and Equipment Rental
The cost of services subcontracted by URS to others and other costs incurred by URS will be charged at cost plus 10%.

### Communications
The cost of communications for office telephone, telex, facsimile, postage, and incidental copying costs will be charged at a flat rate of 3% of total gross labor charges.

### Vehicles and Mileage
Field vehicles (pick-ups, vans, trucks, etc.) used on project assignments will be charged at $65.00 per day. The mileage charge for personal autos will be the then current mileage rate established by the Internal Revenue Service.

### Specialized Equipment
The use of specialized URS equipment will be the fixed rental rates set forth in the Schedule of URS Specialized Equipment Charges.

*This fee schedule contains confidential business information and is not to be copied or distributed for any purpose other than the use intended in this contract or proposal.*

**URS**

URS-01769

NON-CERTIFIED COPY

ORIGINAL PSA

# AGREEMENT FOR PROFESSIONAL SERVICES
## ("Agreement")

This Agreement between   H&E Equipment Services, Inc. 11100 Mead Road, Suite 200, Baton Rouge, LA 70816 225 298-5244   , ("Client") and   URS Corporation Architecture, NC, PC   ("URS"), a   North Carolina   corporation,   7389 Florida Blvd, Suite 300 Baton Rouge, LA 70806("URS"), is effective as of August 28, 2006   . The parties agree as follows:

It is the expressed intent of the parties that this Agreement shall be made available to the subsidiaries and affiliated companies of URS.  For the purposes of this Agreement, as it applies to each Work Order, the term "URS" shall mean either,   URS Corporation Architecture, NC, PC   , or the affiliated company identified in the Work Order.  The applicable Work Order shall clearly identify the legal name of the affiliate or subsidiary accepting the Work Order.

**ARTICLE I - Work Orders.**  The Scope of Service ("Services"), the Time Schedule and the Charges are to be set forth in a written Work Order to this Agreement.  The terms and conditions of this Agreement shall apply to each Work Order, except to the extent expressly modified by the Work Order.  Where charges are "not to exceed" a specified sum, URS shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum.  If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded.  Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established or other circumstances beyond URS control shall be a basis for equitable adjustments in the budget and schedule.

**ARTICLE II - Payment.**  Unless otherwise stated in an Work Order, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed.  Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice.  If payment is not maintained on a thirty (30) day current basis, URS may suspend further performance until payments are current.  Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount.  Client shall pay an additional charge of one and one-half percent (1½%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount.  In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

**ARTICLE III - Professional Responsibility.**  URS is obligated to comply with applicable standards of professional care in the performance of the Services.  Client recognizes that opinions relating to environmental, geologic, and geotechnical conditions are based on limited data and that actual conditions may vary from those encountered at the times and locations where the data are obtained, despite the use of due professional care.  URS is not responsible for designing or advising on or otherwise taking measures to prevent or mitigate the effect of any act of terrorism or any action that may be taken in controlling, preventing, suppressing or in any way relating to an act of terrorism.

**ARTICLE IV - Responsibility for Others.**  URS shall be responsible to Client for URS Services and the services of URS subcontractors.  URS shall not be responsible for the acts or omissions of other parties engaged by Client nor for their construction means, methods, techniques, sequences, or procedures, or their health and safety precautions and programs.

**ARTICLE V - Risk Allocation.**  The liability of URS, its employees, agents and subcontractors (referred to collectively in this Article as "URS"), for Client's claims of loss, injury, death, damage, or expense, including, without limitation, Client's claims of contribution and indemnification, express or implied, with respect to third party claims relating to services rendered or obligations imposed under this Agreement, including all Work Orders, shall not exceed in the aggregate:

PSA-1.DOC (Rev. 1)   30-AUG-04                              - 1 -

URS-01765

EXHIBIT
"3"

NON-CERTIFIED COPY

(1)    The total sum of $5,000,000 for claims arising out of professional negligence, including errors, omissions, or other professional acts, and including unintentional breach of contract; and any actual or potential environmental pollution or contamination, including, without limitation, any actual or threatened release of toxic, irritant, pollutant, or waste gases, liquids, or solid materials, or failure to detect or properly evaluate the presence of such substances, except to the extent such release, threatened release, or failure to detect or evaluate is caused by the willful misconduct of URS; or

(2)    The total sum of $2,000,000 for claims arising out of negligence, breach of contract, or other causes for which URS has any legal liability, other than as limited by (1) above.

**ARTICLE VI - Insurance.** URS agrees to maintain during the performance of the Services: (1) statutory Workers' Compensation coverage; (2) Employer's Liability; (3) General Liability; and (4) Automobile Liability insurance coverage each in the sum of $5,000,000.

**ARTICLE VII - Consequential Damages.** Neither Party shall be liable to the other for consequential damages, including, without limitation, loss of use or loss of profits, incurred by one another or their subsidiaries or successors, regardless of whether such damages are caused by breach of contract, willful misconduct, negligent act or omission, or other wrongful act of either of them.

**ARTICLE VIII - Client Responsibility.** Client shall: (1) provide URS, in writing, all information relating to Client's requirements for the project; (2) correctly identify to URS, the location of subsurface structures, such as pipes, tanks, cables and utilities; (3) notify URS of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give URS prompt written notice of any suspected deficiency in the Services; and (5) with reasonable promptness, provide required approvals and decisions. In the event that URS is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and URS is not a party, Client shall pay URS for any time and expenses required in connection therewith, including reasonable attorney's fees.

Client shall reimburse URS for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of URS Services. For the purpose of this Article such taxes shall not include taxes imposed on URS net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid URS under the respective Work Order.

**ARTICLE IX - Force Majeure.** An event of "Force Majeure" occurs when an event beyond the control of the Party claiming Force Majeure prevents such Party from fulfilling its obligations. An event of Force Majeure includes, without limitation, acts of God (including floods, hurricanes and other adverse weather), war, riot, civil disorder, acts of terrorism, disease, epidemic, strikes and labor disputes, actions or inactions of government or other authorities, law enforcement actions, curfews, closure of transportation systems or other unusual travel difficulties, or inability to provide a safe working environment for employees.

In the event of Force Majeure, the obligations of URS to perform the Services shall be suspended for the duration of the event of Force Majeure. In such event, URS shall be equitably compensated for time expended and expenses incurred during the event of Force Majeure and the schedule shall be extended by a like number of days as the event of Force Majeure. If Services are suspended for thirty (30) days or more, URS may, in its sole discretion, upon 5 days prior written notice, terminate this Agreement or the affected Work Order, or both. In the case of such termination, in addition to the compensation and time extension set forth above, URS shall be compensated for all reasonable termination expenses.

**ARTICLE X - Right of Entry.** Client grants to URS, and, if the project site is not owned by Client, warrants that permission has been granted for, a right of entry from time to time by URS, its employees, agents and subcontractors, upon the project site for the purpose of providing the Services. Client recognizes that the use of investigative equipment and practices may unavoidably alter the existing site conditions and affect the environment in the area being studied, despite the use of reasonable care.

PSA-1.DOC (Rev. 1)    30-AUG-04                                    - 2 -                                    URS-01766

NON-CERTIFIED COPY

**ARTICLE XI - Documents.** Provided that URS has been paid for the Services, Client shall have the right to use the documents, maps, photographs, drawings and specifications resulting from URS efforts on the project. Reuse of any such materials by Client on any extension of this project or any other project without the written authorization of URS shall be at Client's sole risk. URS shall have the right to retain copies of all such materials. URS retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

**ARTICLE XII - Termination.** Client may terminate all or any portion of the Services for convenience, at its option, by sending a written Notice to URS. Either party can terminate this Agreement or a Work Order for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a Notice of Termination, unless a later date is specified in the Notice. The Notice of Termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the Notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay URS upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. In the event of termination for cause, the parties shall have their remedies at law as to any other rights and obligations between them, subject to the other terms and conditions of this Agreement.

**ARTICLE XIII - No Third Party Rights.** This Agreement shall not create any rights or benefits to parties other than Client and URS. No third party shall have the right to rely on URS opinions rendered in connection with the Services without the written consent of URS and the third party's agreement to be bound to the same conditions and limitations as Client.

**ARTICLE XIV - Assignments.** Neither party to this Agreement shall assign its duties and obligations hereunder without the prior written consent of the other party.

**ARTICLE XV - Hazardous Substances.** All non-hazardous samples and by-products from sampling processes in connection with the Services shall be disposed of by URS in accordance with applicable law; provided, however, that any and all such materials, including wastes, that cannot be introduced back into the environment under existing law without additional treatment, and all hazardous wastes, radioactive wastes, or hazardous substances ("Hazardous Substances") related to the Services, shall be packaged in accordance with the applicable law by URS and turned over to Client for appropriate disposal. URS shall not arrange or otherwise dispose of Hazardous Substances under this Agreement. URS, at Client's request, may assist Client in identifying appropriate alternatives for off-site treatment, storage or disposal of the Hazardous Substances, but URS shall not make any independent determination relating to the selection of a treatment, storage, or disposal facility nor subcontract such activities through transporters or others. Client shall sign all necessary manifests for the disposal of Hazardous Substances. If Client requires: (1) URS agents or employees to sign manifests; or (2) URS to hire, for Client, the Hazardous Substances transportation, treatment, or disposal contractor, then for these two purposes, URS shall be considered to act as Client's agent so that URS will not be considered to be a generator, transporter, or disposer of such substances or considered to be the arranger for disposal of Hazardous Substances, and Client shall indemnify URS against any claim or loss resulting from such signing.

**ARTICLE XVI - Venue.** In the event of any dispute between the parties to this Agreement, the venue for the dispute resolution shall be any state or federal court in the United States having jurisdiction over the parties. The foregoing notwithstanding, if the project is located outside the United States, the laws of the State of California shall govern and in such event, any dispute under the Agreement not resolved amicably shall be resolved under the binding rules of the American Arbitration Association.

**ARTICLE XVII - Integrated Writing and Enforceability.** This Agreement constitutes the final and complete repository of the agreements between Client and URS relating to the Services and supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written. Modifications of this Agreement shall not be binding unless made in writing and signed by an Authorized Representative of each party. The provisions of this Agreement shall be enforced to the fullest extent permitted by law. If any provision of this Agreement is found to be invalid or unenforceable, the provision shall be construed and applied in a way that comes as close as possible to expressing the intention of the parties with regard to the provisions and that saves the validity and enforceability of the provision.

PSA-1.DOC (Rev. 1)   30-AUG-04                              - 3 -

URS-01767

NON-CERTIFIED COPY

THE PARTIES ACKNOWLEDGE that there has been an opportunity to negotiate the terms and conditions of this Agreement and agree to be bound accordingly.

CLIENT

_____
Signature

Leonard St. Germain V.P. Operations
Typed Name/Title

8/20/06
Date of Signature

URS

_____
Signature

Craig Gardner, Vice President, Office Manager
Typed Name/Title

8/29/06
Date of Signature

PSA-1.DOC (Rev. 1) 30-AUG-04

- 4 -

URS-01768

NON-CERTIFIED COPY

# URS

**Remittance Page**

| | | | |
|---|---|---|---|
| | Invoice Date | | 02/24/11 |
| | Invoice | | 4602441 |
| | Project | | 19228820 |
| | Page | | 1 |

Reference:  PSA-1 dated 08/28/06

For:  H&E Corp. HQ - Construction

**Professional Services for Period Ending 02/11/11**

H & E Equipment Services, Inc.
Attn:  FRANCESE WYNN
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**  $24,500.00  USD
**Terms:**  Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**  URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**  URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:  URS Corporation
Bank:  Wells Fargo Bank
Account No.:  4520-066471
ABA Routing No.:  121-000-248
Swift Code:  WFBIUS6S

VENDOR *1006495*
G/L *560010*
APPROVED *[signature]*
DATE *7/1/2011*
AMOUNT *$ 24,500.00*

*CAPITAL ORDER*
*4E000340*

**Remittance Information can be sent to:**
Email:  RemitTo@URSCorp.com
Fax:  (512) 419-6937    Attn:  Cash Applications

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

**EXHIBIT**

"4"

NON-CERTIFIED COPY

# URS

| | |
|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Leonard St. Germain
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 02/11/11

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19228820  H&E Corp. HQ-Construction Docs | 24,500.00 | 0.00 | 24,500.00 |
| Total this job | 24,500.00 | 0.00 | 24,500.00 |
| TOTAL THIS INVOICE | 24,500.00 | 0.00 | $24,500.00 USD |

Project Manager: Robert C. Herndon

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
If you have any questions regarding this invoice.

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Leonard St. Germain
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:   PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 02/11/11
Job:  19228820  H&E Corp. HQ-Construction Docs

**LUMP SUM**

| | |
|---|---|
| Lump Sum Billing | 24,500.00 |
| Total Lump Sum | 24,500.00 |
| *Total due this job* | *24,500.00* |
| **TOTAL THIS INVOICE** | **$24,500.00 USD** |

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
If you have any questions regarding this invoice.

F32719806

NON-CERTIFIED COPY



Neal Johnson, AIA
Principal Architect

March 1, 2011

Frankie Wynn
H & E Equipment Services Inc.
11100 Mead Road, Suite 200
Baton Rouge, Louisiana 70816

Re:   H&E Corp. HQ - Construction
      Baton Rouge, Louisiana

Mr. Wynn:

Enclosed please find invoice 4602441 for the above referenced project along with an invoice worksheet for your reference. The invoiced amount of $24,500.00 represents work completed through 95% of construction documents phase.

Should you have any questions, please don't hesitate to call me at (225) 231-6343.

Sincerely,
URS Corporation

Neal Johnson, AIA
Principal Architect

URS Corporation
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806
225.922.5700

NON-CERTIFIED COPY

# Invoice Worksheet

**URS**

Date

| Project Name | **H&E Corp. HQ - Construction** |
|---|---|
| Project No. | |
| URS Project # | **19228820** |

**Schedule of Values**

| Base Fee | | $490,000.00 |
|---|---|---|
| | | $ - |
| | TOTAL | $ 490,000.00 |

Total Fee                              $ 148,848.00

| Fees through Construction Documents | 100% @ | 95.00% Complete | $ 465,500.00 |
|---|---|---|---|

Fee Earned to Date  $ 465,500.00

| Less Amount Previously Paid | | $ 465,500.00 |
|---|---|---|
| | Reimbursable Expense Due | $ - |
| **TOTAL DUE THIS PAYMENT** | | $24,500.00 |

NON-CERTIFIED COPY

# URS

| | | | |
|---|---|---|---|
| **Remittance Page** | | Invoice Date | 04/27/11 |
| | | Invoice | 4666033 |
| | | Project | 19228820 |
| | | Page | 1 |

Reference:  PSA-1 dated 08/28/08

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 04/15/11

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

| | |
|---|---|
| **Total Due:** | $24,500.00   USD |
| Terms: | Net 30 |

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 766-3333

**Electronic Funds Transfer:**

| | |
|---|---|
| Account: | URS Corporation |
| Bank: | Wells Fargo Bank |
| Account No.: | 4520-086471 |
| ABA Routing No.: | 121-000-248 |
| Swift Code: | WFBIUS6S |

VENDOR  *1004495*
G/L  *540010*
APPROVED  *(signature)*  *6/3/2011*
DATE
AMOUNT  *$ 24,500.00*

Remittance information can be sent to:
Email:   RemitTo@URSCorp.com
Fax:   (512) 419-6937   Attn:  Cash Applications

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

**EXHIBIT**

"5"

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 04/27/11 |
| Invoice | 4686033 |
| Project | 19228820 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:   PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

<u>Professional Services for Period Ending 04/15/11</u>

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19228820  H&E Corp. HQ-Construction Docs | 24,500.00 | 0.00 | 24,500.00 |
| Total this job | 24,500.00 | 0.00 | 24,500.00 |
| **TOTAL THIS INVOICE** | 24,500.00 | 0.00 | $24,500.00 USD |

Project Manager: Robert C. Herndon

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
If you have any questions regarding this invoice.

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 04/27/11 |
| Invoice | 4666033 |
| Project | 19228820 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: PSA-1 dated 08/28/06

For: H&E Corp. HQ - Construction

Professional Services for Period Ending 04/15/11
**Job: 19228820 H&E Corp. HQ-Construction Docs**

**LUMP SUM**

| | | |
|---|---|---|
| Lump Sum Billing | | 24,500.00 |
| **Total Lump Sum** | | **24,500.00** |
| | *Total due this job* | **24,500.00** |
| | **TOTAL THIS INVOICE** | **$24,500.00** USD |

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

F33575589



Neal Johnson, AIA
Principal Architect

April 26, 2011

Frankie Wynn
H & E Equipment Services Inc.
11100 Mead Road, Suite 200
Baton Rouge, Louisiana 70816

Re:    H&E Corp. HQ - Construction
       Baton Rouge, Louisiana

Mr. Wynn:

Enclosed please find invoice 4666033 for the above referenced project along with an invoice worksheet for your reference. The invoiced amount of $24,500.00 represents work completed through 100% of construction documents phase.

Should you have any questions, please don't hesitate to call me at (225) 231-6343.

Sincerely,
URS Corporation

Neal Johnson, AIA
Principal Architect

URS Corporation
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806
225.922.5700

NON-CERTIFIED COPY

## LUMP SUM WORK ORDER NO. 08-01

In accordance with the Agreement for Professional Services between **H&E Equipment Services, Inc.**
**11100 Mead Road, Suite 200, Baton Rouge, LA 70816** ("Client"), and **URS Architecture PC** ("URS"),
a **North Carolina** corporation, dated **August 28, 2006**, this Work Order describes the Services,
Schedule, and Payment Conditions for URS Services on the Project known as:

> **Phase III Design Services for H&E Equipment Services Corporate Headquarters and Baton**
> **Rouge Area Branch Facility**
> **Baton Rouge, Louisiana**

Client Authorized
Representative:   **Leonard St.Germain**
Address:   **H&E Equipment Services, Inc. 11100 Mead Road, Suite 200**
   **Baton Rouge, Louisiana**
Telephone No.:   **225.298.5244**

URS Authorized
Representative:   **Chad Herndon**
Address:   **Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806**
Telephone No.:   **225.922.5856**

**SERVICES.** The Services included in this Work Order shall include: Design services for the preparation of
Construction Documents for the new Corporate Headquarters and Baton Rouge Area Branch Facility. See
**ATTACHMENT 1 SCOPE OF SERVICES** for a detailed listing of services.

**SCHEDULE.** The Estimated Schedule to complete preparation of the documents will be no more than 12 –
16 weeks from the notice to proceed. Because of the uncertainties inherent in the Services, Schedules are
estimated and are subject to revision unless otherwise specifically described herein.

**PAYMENT AND EQUITABLE ADJUSTMENTS.** This is a lump sum Work Order. Professional Services
fees will be billed monthly based on percent complete for a total sum of **$ 480,000.00**. URS shall give
Client prompt written notice of unanticipated conditions or conditions which are materially different from
those anticipated by URS at the time the lump sum compensation was agreed upon. If Client wishes URS
to proceed, URS lump sum compensation shall be subject to equitable adjustment for such conditions.

**TERMS AND CONDITIONS.** The terms and conditions of the Agreement referenced above shall apply to
this Work Order, except as expressly modified herein.

**ACCEPTANCE** of the terms of this Work Order is acknowledged by the following signatures of the
Authorized Representatives.

**CLIENT**                                      **URS**

_____          _____
Signature                                       Signature
                                                William A. Stevenson, Senior Vice President
_____          _____
Typed Name/Title                                Typed Name/Title

_____          _____
Date of Signature                               Date of Signature

EXHIBIT
"6"

NON-CERTIFIED COPY

## SCOPE OF SERVICES

## H&E EQUIPMENT SERVICES

## HEADQUARTERS AND BATON ROUGE AREA BRANCH FACILITY

## BATON ROUGE, LOUISIANA

The scope of work is for URS to provide professional services during the Construction Documentation Phase which include:

### Construction Documentation Phase

- Based on the approved Design Documents, URS will prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and will advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

- Landscape Design for compliance with regulatory agency requirements.

- URS will assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

- URS will, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction cost, shall assist the Owner in negotiating a contract with the General Contractor to construct the Project.

- Conduct Client / Team review meetings at 50% and 85% completion

- Assist the General Contractor in updating project construction budgets at the completion of DD and at the 50% & 80% completion reviews

NON-CERTIFIED COPY

# MAPP
CONSTRUCTION

## CHANGE PROPOSAL REQUEST (CPR)

Date:  June 21, 2013
REVISED:

MAPP Construction, LLC
601 Poydras St., Suite 1715, New Orleans, LA 70130

To:  Thomas Ryan, Senior Architect
URS
7389 Florida Blvd, Suite 300
Baton Rouge, LA 70806

Re: H&E Kenner Branch Renovations
MAPP Project No. 52079
CPR No.: 53.0   Parking Lot Expansion Joints -
Mock-Up

MAPP Construction, LLC has compiled its cost estimate for the above referenced item - as described herein below. We, therefore, request your immediate review and/or approval of this request in order to expedite the issuance of the Owner's written directive to proceed with changes in the Work in accordance with the applicable Articles of our Contract Agreement.

## Origination Date:    January 15, 2013

Provide Labor, Materials, Equipment, Management & Engineering for         Parking Lot Expansion Joints - Mock-Up

The work shall be performed in accordance with direction from the Architect to furnish and install a mock-up for corrective action to the failing expansion joints in the concrete paving. This work will be in a 15LF section of paving to be selected by the Architect and/or Owner. This CPR includes mobilization, demo, 5ka 321FS, clean-up and demobilization. This work will take approximately 2-3 working days. The area to receive the mock-up shall remain free from all traffic (i.e. vehicle, equipment, pedestrian, etc.). Reference attached cost breakdown, subcontractor proposal and RFI #54.

Reason for Change:  [X] Owner Request/Progress Change      [ ] Betterment      [ ] Design Change

Status of Changed Work:  [X] On-Hold      [ ] Completed      [ ] Ongoing      [ ] Pre-Construction

The Lump Sum Amount of this Change:                                          $10,828

The Amount of Change in the Contract Time for Work associated with this Change - ONLY [1]          3

Date through which the Proposed Amount is Valid:                           July 6, 2013

[1] Explanation    N/A

SUBMITTED BY:   CONTRACTOR:  MAPP Construction, LLC

_____                                    Amount Agreed To _____

Brad Rasel, Sr. Project Manager              8/21/2013          Initials / Date Agreed To _____
                                             Date Submitted

AUTHORIZED BY:   URS

_____
Thomas Ryan, Senior Architect                Date              Amount Authorized

APPROVED BY:    H&E

_____                      7/10/2013         $10,828
Frankie Wynn, H&E Equipment Services         Date              Amount Approved

Cc:  Project Team
     Other:                    Also need Quote For Mock up For
                               Metal Plate.  FW.

Page 1 of 1

EXHIBIT
"7"

URS-00014

| | |
|---|---|
| **From:** | Frankie Wynn <fwynn@he-equipment.com> |
| **To:** | "Johnson, Neal" <neal.johnson@urs.com> |
| **CC:** | 1. "Dorsey, Stephan" <sdorsey@mjwomack.com>
| | 2. "Ryan, Thomas E" <thomas.e.ryan@urs.com>
| | 3. John Jones <jjones@he-equipment.com>
| | 4. Murray L. McCullough (murray@benchmarkgroupllc.com) |
| **Subject:** | RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues |
| **Sent:** | 6/11/2013 4:17:17 PM +00:00 |

Do you know when we will have an answer? We need to move forward on getting this issues addressed.

Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809 (New Address)
Office: 225-298-5229
Mobile: 225-603-4438
Fax: 225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com

—Original Message—
From: Johnson, Neal [mailto:neal.johnson@urs.com]
Sent: Thursday, June 06, 2013 10:21 AM
To: Frankie Wynn
Cc: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com);
pbonner@mjwomack.com; Ryan, Thomas E; Sanders, Debra; John Jones; Murray L. McCullough (murray@benchmarkgroupllc.com);
Hill, Terry
Subject: RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Frankie:
We will review the recommendation with Benchmark Group (our civil engineer of record) and request their opinion.
Regarding the request that URS participate in the cost of this work, this request will be forwarded to URS management for their
directive.
Sincerely,
Neal Johnson

—Original Message—
From: Frankie Wynn [mailto:fwynn@he-equipment.com]
Sent: Thursday, June 06, 2013 7:56 AM
To: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com);
pbonner@mjwomack.com; Ryan, Thomas E; Johnson, Neal; Sanders, Debra; John Jones
Subject: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Attached is the latest recommendation to remedy the Expansion/Construction Joint issues at the H&E Baton Rouge Branch. This
recommendation is unacceptable to H&E for several reasons, not the least of which is the cost. As the cause of this problem cannot
be agreed upon by Womack or URS, I would suggest that both parties agree to share the costs equally. All parties knew well in
advance of design and installation of the paved area, the intended use. All parties were asked throughout the project for any and all
suggestions in all areas of design and construction to voice any and all concerns and make recommendations. I do not recall any
alternatives to the design and installation that were not followed by H&E.

As this issue will not correct itself and by its very nature grows worse each day, time is of the essence.
Let me know your solution as soon as possible.

Thank you

Frankie Wynn
Director of Facilities/Risk/Compliance Management H&E Equipment Services, Inc.
7500 Pecue Lane



EXHIBIT
"8"

URS-00012

NON-CERTIFIED COPY

Baton Rouge, LA  70809  (New Address)
Office:  225-298-5229
Mobile:  225-603-4438
Fax:  225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com

This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive
this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you
should destroy the e-mail and any attachments or copies.

URS-00013

NON-CERTIFIED COPY

| | |
|---|---|
| **H&E EQUIPMENT SERVICES, INC.** | **\* CASE NO. C626308, SECTION D** |
| **VERSUS** | **\* 19TH JUDICIAL DISTRICT COURT** |
| **URS CORPORATION ARCHITECTURE,** | **\* PARISH OF EAST BATON ROUGE** |
| **P.C., URS CORPORATION, L. O'NEAL** | |
| **JOHNSON, AND THOMAS E. RYAN, III** | **\* STATE OF LOUISIANA** |
| **FILED:_____** | |

**DEPUTY CLERK**

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this Response to the Statement of Undisputed Material Facts submitted in support of the Motion for Summary Judgment filed by defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS").

1.      H&E objects to Statement 1 on the grounds that the referenced Short Form Master Agreement for Professional Services (the "2009 Agreement") is the best evidence of its contents and its terms. Subject to that objection, Statement 1 is admitted as substantially correct.

2.      H&E objects to Statement 2 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 2 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

3.      H&E objects to Statement 3 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 3 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

4.      H&E objects to Statement 4 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 4 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

5.      H&E objects to Statement 5 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS

-1-

NON-CERTIFIED COPY

or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 5 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

6.    H&E objects to Statement 6 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 6 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

7.    H&E objects to Statement 7 on the grounds that it references a document that is the best evidence of its contents. Subject to that objection, Statement 7 is admitted as substantially correct.

8.    H&E otherwise denies that the 2009 Agreement is the only agreement between the parties. H&E denies that the 2009 Agreement governs the entirety of the work performed by URS, and further maintains that certain provisions of the 2009 Agreement are unenforceable.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY 

ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

FILED

IN 0 5 2015

DEPUTY CLERK OF COURT

**ATTORNEYS FOR H&E EQUIPMENT
SERVICES, INC.**

-2-

NO LEC 866352 v2
2919213-000024

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB     Document 4-2     07/16/18     Page 33 of 156

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served on all known counsel of record who have appeared in this matter by facsimile and/or electronic mail and by placing same in the United States mail, in a properly addressed envelope, with first-class postage prepaid.

LAURA E. CARLISLE

FILED

"IN 0 5 2015

DEPUTY CLERK OF COURT

-3-

NO LEC 866352 v2
2919213-000024

NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P.1                                              Jun  9 2015 08:38am
EBR CLERK OF COURT    Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 09:08:37am | 0'33" | 1 | O K | |

## ** Transmit Conf.Report **

P.1                                              Jun  8 2015 10:19am
EBR CLERK OF COURT    Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 08:10:19am | 0'00" | 0 | D.0.2 | |
| ↑ Line Busy | | Line is busy. | | | | |



### DOUG WELBORN
### CLERK OF COURT

PARISH OF EAST BATON ROUGE

Self Accounting Dept.
P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626306 Division D                          Date:   05-JUN-2015
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LAURA F. CARLISLE
      BAKER DONELSON BEARMAN
      201 ST CHARLES ST STE 3600
      NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Total Amount Due (includes all applicable fees below) $ 390.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. This fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)     A transmission fee of five dollars
13:841(A)(X)(a)  First page of each pleading, six dollars
13:841(A)(X)(b)  Each subsequent page, four dollars
13:841(A)(X)(c)  Paper exhibits, attachments, transcripts and depositions - per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

Deputy Clerk of Court for
Doug Welborn, Clerk of Court                      6340 - LTR / FAX RECT


NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P.1                                                    Jun  8 2015 10:19am
EBR CLERK OF COURT      Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 08:10:19am | 0'00" | 0 | D.0.2 | |
| ↑ Line Busy | | Line is busy. | | | | |



**DOUG WELBORN**
**CLERK OF COURT**

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

PARISH OF EAST BATON ROUGE

---

### FAX RECEIPT

NUMBER C626308  Division D                    Date:    05-JUN-2015

H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LAURA E CARLISLE
       BAKER DONELSON BEARMAN
       201 ST CHARLES ST STE 3600
       NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Total Amount Due (includes all applicable fees below) $ 300.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT**
**UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.**
**SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.**
**IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

---

## FAX RECEIPT

NUMBER C626308  Division D                     Date:    05-JUN-2015
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LAURA E CARLISLE
       BAKER DONELSON BEARMAN
       201 ST CHARLES ST STE 3600
       NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Total Amount Due (includes all applicable fees below) $ 300.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)     A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

ROY C. CHEATWOOD
Direct Dial: (504) 566-5266
Direct Fax: (504) 636-3966
rcheatwood@bakerdonelson.com

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:  504.566.5200
FAX:      504.636.4000

www.bakerdonelson.com

November 10, 2014

**CLERK OF COURT**
FILE COPY

CASE ID: _____
FILING DATE: _____
ATTORNEY: _____
NO. PAGES: _____

**VIA FACSIMILE AND U.S. MAIL**

Philip A. Franco
Kellen Matthews
Adams and Reese, LLP
4500 One Shell Square
New Orleans, Louisiana 70139

IN BOT/ATTACHMENT TO:
☐  MOTION/SUMMARY JUGMT
☐  PETITION
☐  MEMORANDUM
☐  OTHER_____

**DEPUTY CLERK**

Re:   *H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C., et al.*
      19th Judicial District Court, Case No. 626308, Division "D"

Dear Counselors:

As you may know, we have assumed representation of H&E Equipment Services, Inc. ("H&E") in connection with the captioned matter.  Please direct all future correspondence and filings to our attention.

I write in reference to the discovery responses received from your clients, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively, "Defendants"), on or about February 10, 2014.  Please allow this correspondence to highlight several areas of concern with respect to your clients' written answers and objections and related document productions.  Please note that I have not attempted to delineate every concern with respect to the defendants' responses, and you should not construe this letter as such.

In light of the discussion below, I hope that we can resolve any issues concerning the requested materials without the need for a Motion to Compel.  And, I would ask that you provide the requested information and documents **within 14 days, or by Monday, November 24, 2014.** Should you disagree and wish to maintain the objections asserted by your clients, please allow this correspondence to set a Rule 10.1 conference for the following **Monday, December 1, 2014, at 11:00 a.m.**  I will contact you at that time to discuss any outstanding issues.

At the outset, the defendants objected to a number of requests and refused to identify or produce a number of documents and communications based on the documents and communications having been prepared in anticipation of litigation and/or being protected by the

ALABAMA • FLORIDA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • TEXAS • WA...

EBR2979655

NON-CERTIFIED COPY

**EXHIBIT**
**1**

Philip A. Franco, Esq.
Kellen Matthews, Esq.
November 10, 2014
Page 2

attorney-client privilege and/or work product doctrine. H&E disagrees with the assertion of privilege with respect to most if not all of the items withheld, but, in any event, your clients did not provide a privilege log or meaningful description of the documents and information withheld as required by Louisiana Code of Civil Procedure article 1422. While the defendant's responses include vague references to "communications between various URS personnel and consultants"; "communications between various URS personnel, counsel and consultants"; and "communications between various URS personnel and counsel" as being withheld, these responses do not describe the nature of the documents and information withheld in such a way as to allow H&E to meaningfully evaluate the applicability of the privilege or protection asserted. Accordingly, I would ask that your clients supplement their responses to include a proper privilege log or description of each document or communication withheld, including without limitation, the names of the persons involved and/or party to the communication, the date of the communication or document, the basis for withholding the item, and a brief description of the item that does not reveal privileged information but nonetheless allows H&E to assess the applicability of the protection or privilege asserted.

More substantively, we disagree with the defendants' assertion that certain documents and communications are protected as materials prepared in anticipation of litigation and/or on the basis of the attorney-client privilege and/or work product doctrine. In this regard, I would bring your attention to Interrogatory Nos. 6, 9, 10, 12, 14, and 17 and Request for Production Nos. 5, 6, 7, 8, 9, 10, 11, 12, and 16.

Interrogatory No. 6 and Request for Production Nos. 5 and 6 requested information and documents pertaining to an email authored by Neal Johnson and dated March 18, 2013, which represented that the defendants had forwarded certain data regarding the pavement at H&E's Kenner project to URS' "civil engineering consultant" and were presumably awaiting a response. The defendants refused to identify or produce documents or communications related to this March 18, 2013 email as materials prepared or obtained in anticipation of litigation. We disagree. H&E did not file its Petition for Damages until November 20, 2013, *over eight months after* the date of the March 18, 2013 email. The email was authored during the course of the parties' ongoing contractual relationship and in the course of URS' performance of its duties with respect to the Kenner project; it was not prepared for the *purpose* of litigation or trial as required by Article 1422. *See generally, e.g., Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mutual Fire Ins. Company*, No. 07-1310, p. 8 (La. App. App. 4 Cir. 12/19/07), 974 So. 2d 72, 78. As such, I would ask that your clients review their responses and objections to these requests and identify and produce all documents evidencing or related to your "civil engineering consultant['s]" response, as contemplated by Mr. Johnson's March 18, 2013 email, and any communications with your "civil engineering consultant" regarding the referenced data.

We similarly disagree with the defendants' objections and refusal to produce documents in response to Interrogatory Nos. 9 and 10 and Request for Production Nos. 7, 8, and 9, all of which pertain to an email from Mr. Johnson to Frankie Wynn on June 6, 2013 stating that URS

NON-CERTIFIED COPY

Philip A. Franco, Esq.
Kellen Matthews, Esq.
November 10, 2014
Page 3

would be reviewing H&E's proposal regarding repair costs in connection with pavement issues at H&E's Baton Rouge project site with its civil engineer of record and soliciting an opinion from that engineer, as well as forwarding the proposal to URS management for review. While acknowledging that URS received an "opinion" from its engineer regarding the pavement problems at the Baton Rouge site, the defendants refused to produce that opinion and related documents on the grounds that such documents and communications were prepared in anticipation of litigation and/or are protected by the attorney-client privilege and/or work product doctrine. For the reasons set forth above, we disagree that an opinion prepared by URS' civil engineer of record over five months prior to H&E's initiation of suit was prepared in anticipation of litigation or for the purpose of litigation, or that communications or documents exchanged with the engineer are confidential, privileged communications. Indeed, per your clients' response to Interrogatory No. 11, an H&E representative was consulted in connection with the referenced opinion. In any event, please have your clients review their objections and responses to these requests and supplement their production accordingly with the "opinion" referenced in Mr. Johnson's June 6, 2013 email and all correspondence and documents exchanged between URS and its engineer of record, as well as all correspondence and documents exchanged with and among URS management as contemplated by the email. To the extent any communications are in fact subject to the attorney-client privilege and/or attorney work product doctrine, I would ask that you properly specify and describe such communications in the manner discussed above.

The defendants also objected to Interrogatory Nos. 12 and 14 and Request for Production Nos. 10, 11, and 12, all of which pertain to a URS management meeting regarding the H&E Baton Rouge project, as seeking information and documents protected by the attorney-client privilege. As noted above, please have your clients specify and properly describe all documents and communications withheld as privileged so that H&E can assess the applicability of the privilege to the requested documents and communications. To the extent any responsive communications referencing or related to the management meeting or any management meeting notes, management directives, or other related documents do not constitute confidential communications with counsel, I would ask that you produce such documents and information; and if no such non-privileged materials exist, please confirm. To the extent any communications and documents can be redacted without waiving the asserted privilege, I would also ask that your clients produce the redacted materials.

Finally, Interrogatory No. 17 and Request for Production No. 16 requested information and documents relating to a July 8, 2013 email from Mr. Johnson to Brad Reese of MAPP Construction, LLC stating that URS intended to ask H&E to accept certain problems with the pavement at the Kenner project site as "in place" and consider such problems a "maintenance issue." Among other things, your clients objected to Interrogatory No. 17 and Request for Production No. 16, both of which requested documents relating to the July 8, 2013 email, as seeking information not reasonably calculated to lead to the discovery of admissible evidence and/or that is privileged and protected from disclosure. We respectfully disagree.

NON-CERTIFIED COPY

Philip A. Franco, Esq.
Kellen Matthews, Esq.
November 10, 2014
Page 4

First, considering that URS' defense in this litigation is partly based on the notion that problems with the pavement at H&E's various project sites, including the Kenner site, are maintenance issues and not the result of deficiencies in the design and specifications for the projects, information and documents pertaining to URS' intention to request that H&E accept problems with the pavement as "in place" and consider the problems a maintenance issue are clearly relevant and reasonably calculated to lead to the discovery of admissible evidence in this matter. Second, as to the assertion of privilege, Mr. Johnson's July 8, 2013 email was sent to Brad Reese, a third party, and copied Frankie Wynn, an H&E employee. There is no indication that the email was part of or the result of confidential attorney-client communications. Furthermore, H&E's request for "all documents tending to indicate 'this is a maintenance issue given the conditions that have been observed' " is clearly a request for factual and/or documentary support for your clients' argument that problems with the pavement were a maintenance issue – in other words, the facts at issue and evidence tending to support, or refute, your client's defense. Such information is simply not privileged and is fully within the scope of permissible discovery. Accordingly, I would ask that your clients also review their responses and objections to these requests and amend and/or supplement their responses and production as appropriate. To the extent any communications or other materials do in fact constitute confidential attorney-client communications or attorney work product, please have your clients specify and properly describe the materials withheld.

Please reconsider your positions as noted above or give me a call to discuss at your earliest convenience. Otherwise, I will call you on November 24, 2014, at 11:00 a.m.

Finally, I enclose H&E Equipment Services' second sets of requests for production of documents and interrogatories. Please respond within the delays allowed by law.

With best regards, I remain

Sincerely,

Roy C. Cheatwood

Enclosures

cc:    M. David Kurtz (*via email*)
       Anne Derbes Wittmann (*via email*)
       Laura E. Carlisle (*via email*)

NON-CERTIFIED COPY

## Carlisle, Laura

| | |
|---|---|
| **From:** | Kurtz, Dave |
| **Sent:** | Tuesday, November 18, 2014 10:21 AM |
| **To:** | philip.franco@arlaw.com |
| **Cc:** | Cheatwood, Roy; Carlisle, Laura; Wittmann, Anne; kellen.mathews@arlaw.com |
| **Subject:** | H&E v URS - discovery issues |

Phil:

Thanks for taking the time to speak with me yesterday concerning our discovery issues. I am writing to confirm our path forward and would invite your comment if you feel I have omitted anything.

With regard to our second set of discovery, you indicated that URS has certain "project files" such as plans and specifications that you would like for us to review in hard copy and designate those that we wish to copy. That is agreeable to us. Please let us know when and where you will make those files available.

With regard to the ESI responsive to our second set, you proposed to provide us with a list of individuals who are potential custodians because they billed some time to H&E projects at issue. We will then tell you which of those people are the ones whose emails we would like you to search. We will also provide you with a list of search terms and a specific date range for you to use. You will then produce the documents found by this method as they are stored. Both sides' productions will be subject to a clawback agreement, which you and we will work out separately. This is agreeable to us, and we will anticipate using a similar protocol with regard to H&E's production, once you issue discovery to us.

Please note that yesterday, our conversation regarding ESI was confined largely to emails. We need to discuss how you might find other ESI, such as spreadsheets or drawings stored on network drives. I would guess that URS has a shared drive structure that stores project files in folders (or equivalent) that are associated with each of the projects, so finding the responsive non-email ESI may be easy. However the precise determination of how you will go about that is something that you will have to determine with URS and let us know the most efficient way to go about it. We await your advices in that regard.

With regard to the Rule 10.1 conference mentioned in Roy's correspondence of November 10, we agreed to disagree. I understand that URS is maintaining its work product objections notwithstanding the points made in Roy's letter. We discussed that you believed that all of the documents at issue had been generated after H&E indicated that it would be withholding payment from URS, and that you believed that withholding payment meant that the parties were anticipating litigation, regardless of when or whether a litigation hold was issued. We disagree with that assertion as a legal matter, but I did agree to alert you if we find information suggesting that your factual predicate is incorrect. Leaving that possibility aside, however, I believe that we find ourselves at an impasse on this particular point, and I consider that we have discharged our obligation to confer with you prior to filing a motion to compel. Should you feel that any further discussion of these issues might be fruitful, please do not hesitate to contact me.

I neglected to mention this, but it is imperative that we receive from you a specific listing of the documents that you are withholding on this basis. Please provide us with an appropriate privilege log within two weeks, or by December 2, 2014.

Thanks
Dave

**David Kurtz**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Ave., Suite 3600



**EXHIBIT**

**2**

NON-CERTIFIED COPY

New Orleans, LA  70170
Direct:  504.566.5259
Fax:  504.636.3959
E-mail:  dkurtz@bakerdonelson.com
www.bakerdonelson.com


Baker, Donelson, Bearman, Caldwell & Berkowitz PC represents clients across the U.S. and abroad
from offices in Alabama, Florida, Georgia, Louisiana, Mississippi, Tennessee, Texas and Washington, D.C.

Please consider the environment before printing this e-mail.

2

NON-CERTIFIED COPY

**Carlisle, Laura**

| | |
|---|---|
| **From:** | Kurtz, Dave |
| **Sent:** | Monday, December 01, 2014 4:44 PM |
| **To:** | Phil Franco |
| **Cc:** | Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura; Kellen Mathews |
| **Subject:** | RE: H&E Equipment v. URS Corporation, et al |

Sounds good to me.

---

**From:** Phil Franco [mailto:Phil.Franco@arlaw.com]
**Sent:** Monday, December 01, 2014 4:43 PM
**To:** Kurtz, Dave
**Cc:** Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura; Kellen Mathews
**Subject:** RE: H&E Equipment v. URS Corporation, et al

Sounds reasonable except for one change. Since our office is closed on December 24, I asked that you respond in writing by noon on December 23. We will do likewise on December 9. Let me know if this works.

Philip A. Franco
Adams and Reese LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Main  (504) 581-3234
Fax    (504) 566-0210
Direct (504) 585-0291
E-Fax (504) 553-9780
philip.franco@arlaw.com
www.adamsandreese.com

**From:** Kurtz, Dave [mailto:dkurtz@bakerdonelson.com]
**Sent:** Monday, December 01, 2014 3:56 PM
**To:** Phil Franco
**Cc:** Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura; Kellen Mathews
**Subject:** RE: H&E Equipment v. URS Corporation, et al

Phil, I could ask the same question of you, but how about you issue your written responses by December 10 (that's 30 days) and we will issue our written responses by Dec. 24 (also 30 days)?

With regard to the actual production of documents, to a large extent that depends on agreeing upon custodians and search terms.  I believe that the first step we discussed was for you to provide us with a list of potential custodians on your end.  Now that we have your discovery, we will do the same.  Additionally, we will take a stab at a common list of search terms that both sides can run.  We should have that to you within the week.

Dave

---

**From:** Phil Franco [mailto:Phil.Franco@arlaw.com]
**Sent:** Monday, December 01, 2014 2:25 PM
**To:** Kurtz, Dave
**Cc:** Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura; Kellen Mathews
**Subject:** RE: H&E Equipment v. URS Corporation, et al



EXHIBIT
3



NON-CERTIFIED COPY

Dave:

I am presuming that you have a lot less people involved and therefore a lot less inquiry and documents to produce than we do. Even so, if it takes until January to be able to produce documents, or a little longer if necessary, then I don't mind. However what I don't want to do is wait until January to get a bunch of objections that we have to argue about before the documents are produced. That being so, how long is it realistically going to take you to decide objections to the requests?

Philip A. Franco
Adams and Reese LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Main  (504) 581-3234
Fax    (504) 566-0210
Direct (504) 585-0291
E-Fax (504) 553-9780
philip.franco@arlaw.com
www.adamsandreese.com

**From:** Kurtz, Dave [mailto:dkurtz@bakerdonelson.com]
**Sent:** Monday, December 01, 2014 2:02 PM
**To:** Phil Franco
**Cc:** Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura; Kellen Mathews
**Subject:** RE: H&E Equipment v. URS Corporation, et al

Phil, our second set of discovery requests was served upon you 21 days ago.  Under your system below, your responses and objections are already late.  Let's work out a time frame that we both can live by.  I have no intention of trying to jam you, but I think it is only fair that we live by the same rules.

Also, just to be clear regarding our prior conversation, I did not have your requests at that time.  I do believe that we will agree to produce the project documents in response to many of your requests, but I would also anticipate some objections.  My guess, based on URS's responses to the first set of discovery, is that you will do the same.

Thanks
Dave

**From:** Phil Franco [mailto:Phil.Franco@arlaw.com]
**Sent:** Monday, December 01, 2014 1:43 PM
**To:** Kurtz, Dave
**Cc:** Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura; Kellen Mathews
**Subject:** RE: H&E Equipment v. URS Corporation, et al

Dave:

Other than privileged documents, we are producing the voluminous documents that you have requested. I understood from our conversations that you would essentially be doing the same. Consequently I don't have a problem with an additional 30 days for you to produce documents. However if you have any objections, then we would like those objections filed timely within the 15 days.

Philip A. Franco
Adams and Reese LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139

2

NON-CERTIFIED COPY

Main  (504) 581-3234
Fax    (504) 566-0210
Direct (504) 585-0291
E-Fax (504) 553-9780
philip.franco@arlaw.com
www.adamsandreese.com

**From:** Kurtz, Dave [mailto:dkurtz@bakerdonelson.com]
**Sent:** Monday, December 01, 2014 12:06 PM
**To:** Phil Franco; Kellen Mathews
**Cc:** Cheatwood, Roy; Wittmann, Anne; Carlisle, Laura
**Subject:** RE: H&E Equipment v. URS Corporation, et al

Phil and Kellen:

I am writing to request an additional 30 days in which to respond to the below. By my calculation this would make H&E's responses due on January 9, 2015.

Thanks
Dave

-----Original Message-----
From: Laurie Anders [mailto:Laurie.Anders@arlaw.com]
Sent: Monday, November 24, 2014 3:28 PM
To: Cheatwood, Roy; Kurtz, Dave; Wittmann, Anne; Carlisle, Laura
Cc: Phil Franco; Kellen Mathews
Subject: H&E Equipment v. URS Corporation, et al


Attached please find defendants' First Set of Request for Production of Documents to Plaintiff, H&E Equipment Services.

Laurie B. Anders
Paralegal
Adams and Reese LLP
450 Laurel Street, Suite 1900
Baton Rouge, LA 70801
Main: 225-336-5200
Fax: 225-336-5220
Direct: 225-378-3203
E-Fax: 225-336-5103
Email: laurie.anders@arlaw.com
Web site address: www.adamsandreese.com


-----Original Message-----
From: arcopier@arlaw.com [mailto:arcopier@arlaw.com]
Sent: Monday, November 24, 2014 3:17 PM
To: Kellen Mathews; Laurie Anders
Subject: Message from "RNP0026738C1D86"

This E-mail was sent from "RNP0026738C1D86" (MP C5503).

NON-CERTIFIED COPY

Scan Date: 11.24.2014 15:16:41 (-0600)
Queries to: arcopier@arlaw.com

_____

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

Baton Rouge | Birmingham | Columbia | Houston | Jackson | Jacksonville | Memphis | Mobile | Nashville | New Orleans | Sarasota | St. Petersburg  | Tallahassee | Tampa | Washington, D.C.

4

NON-CERTIFIED COPY

## Carlisle, Laura

| | |
|---|---|
| **From:** | Carlisle, Laura |
| **Sent:** | Tuesday, April 28, 2015 12:19 PM |
| **To:** | Phil Franco (Phil.Franco@arlaw.com); Kellen Mathews (Kellen.Mathews@arlaw.com) |
| **Cc:** | Kurtz, Dave; Wittmann, Anne; Cheatwood, Roy |
| **Subject:** | H&E Equipment Services, Inc. v. URS Corporation Architecture, PC et al. Case No. 626308 |
| **Attachments:** | NOLADOCS-#584894-v2-Proposed_ESI_Search_Terms_(USE_THIS_ONE).pdf |

Phil and Kellen,

Please see the attached proposed ESI search terms, which we propose as the parameters for the email searches in this case.  You'll see that we need you to identify the proper custodians for URS.  Please provide this information as well as your thoughts regarding the proposed terms by <u>next Friday, May 8, 2015</u>, as we would like to get the ball rolling on the searches and move forward with discovery.

As always, let us know if you have any questions or if you would like to discuss this matter further.

Thank you,

Laura


**Laura E. Carlisle**
Baker, Donelson, Bearman, Caldwell, & Berkowitz, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Office: 504.566.5200
Direct:  504.566.8643
Facsimile: 504.585.6943
E-mail:  lcarlisle@bakerdonelson.com
www.bakerdonelson.com

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For®" for Six Years in a Row!**



NON-CERTIFIED COPY

*H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C., et al.*
19th Judicial District Court, Case No. 626308, Division "D"

## PROPOSED EMAIL SEARCH PARAMETERS

| CUSTODIANS | |
| --- | --- |
| H&E CUSTODIANS (All domains used) | URS CUSTODIANS (All domains used) |
| 1. Frankie Wynn<br><br>2. Leonard St. Germain<br><br>3. John Jones | |

| COMMON SEARCH TERMS |
| --- |
| 1.      concrete and break* |
| 2.      concrete and spall* |
| 3.      concrete and spawl* (known misspelling) |
| 4.      concrete and Baton Rouge |
| 5.      concrete and BR |
| 6.      concrete and Kenner |
| 7.      concrete and Belle Chase |
| 8.      concrete and crack* |
| 9.      concrete and crumbl* |
| 10.    concrete and repair* |
| 11.    concrete and track* |

NON-CERTIFIED COPY

*H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C., et al.*
19th Judicial District Court, Case No. 626308, Division "D"

12.   slab and break*

13.   slab and spall*

14.   slab and spawl* (known misspelling)

15.   slab and Baton Rouge

16.   slab and BR

17.   slab and Kenner

18.   slab and Belle Chase

19.   slab and crack*

20.   slab and crumbl*

21.   slab and repair*

22.   slab and track*

23.   pavement and break*

24.   pavement and spall*

25.   pavement and spawl* (known misspelling)

26.   pavement and Baton Rouge

27.   pavement and BR

28.   pavement and Kenner

29.   pavement and Belle Chase

30.   pavement and crack*

31.   pavement and crumbl*

32.   pavement and repair*

33.   pavement and track*

34.   joint and break*

35.   joint and spall*

2

NON-CERTIFIED COPY

*H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C., et al.*
19th Judicial District Court, Case No. 626308, Division "D"

36.    joint and spawl*

37.    joint and crumbl*

38.    joint and crack*

39.    joint and repair*

40.    joint and track*

41.    deep and break*

42.    deep and spall*

43.    deep and spawl*

44.    deep and crumbl*

45.    deep and crack*

46.    deep and repair*

47.    depth and break*

48.    depth and spall*

49.    depth and spawl*

50.    depth and crumbl*

51.    depth and crack*

52.    depth and repair*

53.    "punch list" and Baton Rouge

54.    "punch list" and BR

55.    "punch list" and Kenner

56.    "punch list" and Belle Chase

3

NON-CERTIFIED COPY

*H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C., et al.*
19th Judicial District Court, Case No. 626308, Division "D"

| PARTY-SPECIFIC SEARCH TERMS | |
|---|---|
| **H&E ONLY** | **URS ONLY** |
| 1. URS | 1. H&E |
| 2. URSCorp | 2. he-equipment.com |
| 3. URSCorp.com | 3. equipment and Baton Rouge |
| | 4. equipment and BR |
| | 5. equipment and Kenner |
| | 6. equipment and Belle Chasse |
| | 7. equipment and branch* |
| | 8. equipment and load* |
| | 9. equipment and track* |

4

NON-CERTIFIED COPY

## Item 2.   Properties

As of February 20, 2015, we had a network of 70 full-service facilities, serving approximately 36,400 customers across 22 states in the West Coast, Intermountain, Southwest, Gulf Coast, Southeast and Mid-Atlantic regions of the United States. In our facilities, we rent, display and sell equipment, including tools and supplies, and provide maintenance and basic repair work. Of the 70 total facilities, we own 12 of our locations and lease 58 locations. Our leases typically provide for varying terms and renewal options. The following table provides data on our locations and the number of multiple branch locations in each city is indicated by parentheses:

| City/State | Leased/Owned | City/State | Leased/Owned |
|---|---|---|---|
| **Alabama (2)** | | **New Mexico (1)** | |
| Birmingham | Leased | Albuquerque | Leased |
| Huntsville | Leased | **Nevada (2)** | |
| **Arizona (2)** | | Las Vegas | Leased |
| Phoenix | Owned | Reno | Leased |
| Tucson | Owned | **North Carolina (5)** | |
| **Arkansas (2)** | | Arden | Leased |
| Little Rock | Owned | Charlotte(2) | Leased(2) |
| Springdale | Owned | Raleigh | Leased |
| **California (7)** | | Winston-Salem | Leased |
| Bakersfield | Leased | **Oklahoma (2)** | |
| Fontana | Leased | Oklahoma City | Leased |
| La Mirada | Leased | Tulsa | Leased |
| Sacramento | Leased | **South Carolina (2)** | |
| San Diego | Leased | Columbia | Leased |
| Santa Fe Springs | Owned | Greenville | Leased |
| Union City | Leased | **Tennessee (3)** | |
| **Colorado (2)** | | Chattanooga | Leased |
| Colorado Springs | Leased | Memphis | Leased |
| Denver | Owned | Nashville | Leased |
| **Florida (4)** | | **Texas (14)** | |
| Fort Myers | Leased | Austin | Leased |
| Orlando | Leased | Corpus Christi | Leased |
| Pompano Beach | Leased | Dallas(2) | Leased(1) Owned(1) |
| Tampa | Leased | Fort Worth | Leased |
| **Georgia (1)** | | Houston(2) | Leased(2) |
| Atlanta | Leased | Katy | Leased |
| **Idaho (2)** | | Lubbock | Leased |
| Boise | Leased | McAllen | Leased |
| Coeur d'Alene | Leased | Mesquite | Leased |
| **Louisiana (8)** | | Midland | Leased |
| Alexandria | Leased | Pasadena | Leased |
| Baton Rouge | Owned | San Antonio | Owned |
| Belle Chasse | Leased | **Utah (2)** | |
| Kenner | Owned | Salt Lake City | Leased |
| Lafayette | Leased | St. George | Leased |
| Lake Charles | Leased | **Virginia (4)** | |
| Shreveport(2) | Leased(2) | Ashland | Owned |
| **Maryland (1)** | | Chesapeake | Leased |
| Baltimore | Leased | Roanoke | Owned |
| **Mississippi (1)** | | Warrenton | Leased |
| Jackson | Leased | **Washington(1)** | |
| **Montana (2)** | | Seattle | Leased |
| Belgrade | Leased | | |
| Billings | Leased | | |



NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P.1                                                    Jun 8 2015 10:19am
EBR CLERK OF COURT    Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 08:10:19am | 0'00" | 0 | D.0.2 | |
| ↑ Line Busy | | Line is busy. | | | | |



### DOUG WELBORN
### CLERK OF COURT

Suit Accounting Dept.
P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-8782
Fax: (225) 389-3392
www.ebrclerkofcourt.org

PARISH OF EAST BATON ROUGE

---

**FAX RECEIPT**

NUMBER C626308 Division D                    Date:    05-JUN-2015
E&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LAURA E CARLISLE
       BAKER DONELSON BEARMAN
       201 ST CHARLES ST STE 3600
       NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION TO COMPEL

Total Amount Due (includes all applicable fees below) $ 162.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

IF MAILING ORIGINAL DOCUMENTS, PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5248 - LTR / FAX RECPT



NON-CERTIFIED COPY

## \*\* Transmit Conf.Report \*\*

P.1
EBR CLERK OF COURT     Fax 2253893392

Jun 9 2015 08:40am

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 09:08:40am | 0'33" | 1 | O K | |

## \*\* Transmit Conf.Report \*\*

P.1
EBR CLERK OF COURT    Fax 2253893392

Jun 8 2015 10:19am

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 08:10:19am | 0'00" | 0 | D.0.2 | |
| ↑ Line Busy | | | Line is busy. | | | |



**DOUG WELBORN**
**CLERK OF COURT**

PARISH OF EAST BATON ROUGE

See Accounting Dept.

P.O. Box 1991
Baton Rouge, La 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-8392
www.ebrclerkofcourt.org

FAX RECEIPT

NUMBER C626388 Division D                                    Date:    05-JUN-2015
B&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL.

To:     LAURA E CARLISLE
        BAKER DONELSON BEARMAN
        201 ST CHARLES ST STE 3600
        NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION TO COMPEL

Total Amount Due (includes all applicable fees below) $ 162.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forms pamphlet filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)     A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions - per page, two dollars
13:841(A)(2)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENTS, PLEASE ATTACH THIS RECEIPT TO THE DOCUMENTS TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

1340 - LTR / FAX RECPT

NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P.1
EBR CLERK OF COURT    Fax 2253893392                    Jun  8 2015 10:19am

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 08:10:19am | 0'00" | 0 | D.0.2 | |
| ↑ Line Busy | | Line is busy. | | | | |



**DOUG WELBORN**
CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626308  Division D                               Date:  05-JUN-2015
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LAURA E CARLISLE
       BAKER DONELSON BEARMAN
       201 ST CHARLES ST STE 3600
       NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION TO COMPEL

Total Amount Due (includes all applicable fees below) $ 162.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)        A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT**
**UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.**
**SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.**
**IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

PARISH OF EAST BATON ROUGE

www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D                                    Date:    05-JUN-2015
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LAURA E CARLISLE
       BAKER DONELSON BEARMAN
       201 ST CHARLES ST STE 3600
       NEW ORLEANS LA 70170

Item(s) Received: OPPOSITION TO MOTION TO COMPEL

Total Amount Due (includes all applicable fees below) $ 162.00

The Clerk of Court's office has received, by facsimile transmission dated 6-5-15, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



H&E EQUIPMENT SERVICES, INC.    *   CASE NO. C626308, SECTION D

VERSUS    *   19TH JUDICIAL DISTRICT COURT

URS CORPORATION ARCHITECTURE,    *   PARISH OF EAST BATON ROUGE
P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III    STATE OF LOUISIANA   COST OK Amt. *162.*

FILED:_____   DEPUTY CLERK    JUN 1 1 2015
                                                      BY _CH 20922_JP_
                                                         DY CLERK OF COURT

**OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL DISCOVERY RESPONSES**

MAY IT PLEASE THE COURT:

Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this
memorandum in opposition to the Motion to Compel Discovery Responses (the "Motion to
Compel" or "Motion") filed by defendants, URS Corporation Architecture, P.C., URS
Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS").
For the reasons set forth below, the defendants' Motion to Compel is without merit and should
be denied. H&E further seeks reasonable attorneys' fees and costs incurred in connection with
opposing the Motion.

**Introductory Statement**

As URS acknowledges, this case is about alleged deficient designs and specifications
prepared by URS for the construction and renovation of H&E facilities in Baton Rouge, Kenner,
and Belle Chasse, Louisiana between 2006 and 2013, and more particularly URS's alleged
breach of its contractual and professional duties with regard to its design for concrete pads
constructed to URS's specifications at H&E's Baton Rouge and Kenner, Louisiana facilities.
Notwithstanding this, URS insists that this Court should compel H&E to produce documents and
information that have nothing to do with whether URS breached its professional duties and the
applicable standard of care, including documents relating to alternative designs H&E allegedly
considered pre-construction; H&E's own internal, pre-construction budgeting; and designs used
at other H&E locations that are not at issue in this case. Such documents, if they even exist, are
simply irrelevant to the issues in this litigation. While the scope of discovery in Louisiana is
broad, it is not unlimited, and trial courts have broad discretion to refuse or limit discovery of
matters that are not relevant to the issues. *See, e.g., Maguire Plastic Surgery Ctr., LLC v.
Booker*, 47,929, 8-9 (La. App. 2 Cir. 5/22/13), 117 So.3d 239, 245.

REC'D O.R.

JUN 1 1 2015

-1-

EBR2979654

NO LEC 863515 v3
2919213-000024

FAX COPY FILED _6-5-15_
ORIGINAL FILED _6-11-15_

NON-CERTIFIED COPY

As discussed below, the issues raised and items sought in the defendants' Motion to Compel are either obviated by H&E's forthcoming production or are entirely irrelevant to the subject matter of the pending action – that is, whether URS breached its professional and/or contractual duties and the relevant standard of care in its design and specifications for H&E's facilities. Accordingly, the defendants' Motion to Compel should be denied in its entirety, and H&E should be awarded its reasonable fees and costs incurred in opposing the Motion.

I.     **URS's Motion to Compel Misconstrues the History of the Parties' Discussions Regarding the Production of Electronically Stored Information and Other Documents.**

At the outset, the defendants' Motion to Compel attempts to portray H&E as having been dilatory in helping to move discovery along in this case. This is simply not correct, and the defendants' Motion to Compel provides an incomplete and inaccurate description of the parties' discussions regarding the production of documents and the anticipated path for discovery. More importantly, URS's motion is premature because portions of it address electronically stored information that will be produced once the parties agree on search terms and custodians.

In November 2014, it was H&E – not URS – that re-initiated discovery in this matter by issuing a second set of discovery requests and notifying URS of numerous deficiencies in URS's responses to discovery that H&E had issued in February 2014.[1] (Some of the issues identified in that communication are the subject of H&E's own motion to compel, which is also before the Court.) In discussing the issues raised by H&E, URS proposed that it would circulate a list of appropriate URS custodians for the search of relevant electronically stored information, in response to which the parties anticipated that H&E would then circulate a set of proposed search terms.[2] URS never provided a list of proposed custodians as promised; and so, in order to move discovery forward, after some time H&E took it upon itself to provide a set of proposed search terms. In the meantime, URS propounded its own Requests for Production, and the parties agreed on a timeline for providing written responses and objections and further agreed that the same agreed-upon set of custodians and search terms would govern the searches and productions by all parties.[3]

On April 28, 2015, H&E forwarded to URS a set of proposed search terms and its own list of custodians and asked that URS respond with thoughts and comments and its proposed

---

[1]     Letter from Roy Cheatwood to Phil Franco, November 10, 2014, attached as Exhibit "1."

[2]     *See* Email from Dave Kurtz to Phil Franco, dated November 17, 2014, attached as Exhibit "2."

[3]     *See* Emails between Dave Kurtz and Phil Franco, dated December 1, 2014, attached as Exhibit "3."

-2-

NON-CERTIFIED COPY

custodians within ten days, or by May 8, 2015.[4]  To date, URS has not responded.  Because the parties have not reached agreement on search terms, no electronic information has been exchanged, although the parties have exchanged copies of relevant material that was stored in paper form.  That said, both parties do expect to produce significant amounts of electronically stored information.  H&E has circulated a proposed Joint Protective Order, which the parties are now revising.

## II.     URS' Motion to Compel Responses to Requests for Production Nos. 5, 6, 18, 20, and 36 Should Be Denied Because They Seek Documents Either Included in H&E's Anticipated Production or Beyond the Scope of Permissible Discovery.

Permissible discovery extends only to those matters that are not privileged and ***relevant*** to the subject matter in the pending action.  La. Code Civ. P. art. 1422; *see also, Maguire Plastic Surgery Ctr.*, 117 So.3d at 245.  The items sought in URS' Requests for Production 5, 6, 18, 20, and 36 are either already included in H&E's forthcoming production – to be made in accordance with the parties' agreed-upon timeline and search terms – or are entirely irrelevant to the subject matter in this case – that is, whether URS breached its professional duties and the applicable standard of care in connection with its designs and specifications for H&E's Baton Rouge, Kenner, and Belle Chasse, Louisiana facilities.  For the Court's ease of reference, these requests are addressed in the order in which they appear in URS's Motion to Compel.

### A.     *Requests for Production Nos. 5 and 36*

Requests for Production Nos. 5 and 36 seek documents and communications regarding alternative designs allegedly considered by H&E for the concrete surfaces at the facilities at issue, specifically the Baton Rouge and Kenner facilities.  URS's Motion with regard to these requests is premature and lacks merit because any such documents are being produced to URS, and other than those, there are no non-privileged documents responsive to these requests.

As H&E has conveyed to URS in the past, H&E is not aware of any communications regarding alternative designs for the paved surfaces prior to URS's designs for the facilities.  To the extent there were any communications regarding alternative designs, those communications would have been with URS – and any such communications that might exist will be encompassed by H&E's forthcoming production.[5]  H&E made and maintains the objection to

---

[4]     *See* Email from Laura Carlisle to Phil Franco and Kellen Matthews, dated April 28, 2015, attached as Exhibit "4."

[5]     *See* H&E's written response and objections to Request for Production No. 5, attached as Exhibit "C" to Defendants' Motion to Compel Discovery Responses.

-3-

URS's overbroad requests for all documents regarding any alternative design considered by H&E only for purposes of preserving its discussions with consulting experts in connection with this case. Any such documents would be identified on a privilege log if withheld from H&E's forthcoming production. The Motion to Compel is simply without merit as to these requests.

### B. *Request for Production No. 6*

The Motion to Compel H&E's production of documents regarding H&E's internal "budgeting" for the projects is also without merit. Again, URS's motion is premature because H&E agrees that communications about budgeting with URS or the project contractors is relevant to this dispute or at least discoverable, and documents regarding those discussions will be encompassed by H&E's forthcoming production. Documents relating to budgets that are purely internal to H&E, on the other hand, have no relevance to this case. For example, the mere fact that H&E thought that its contemplated renovations at its corporate headquarters and Baton Rouge branch facility might cost a particular amount has nothing to do with whether or not URS breached the standard of care.[6]

In short, there is simply no point in contention that would be proven or disproven by the amounts that H&E internally thought that it could spend on the projects. Thus, the requested information - other than that which H&E has agreed to produce - is irrelevant and not discoverable. URS's overbroad request here is nothing more than a fishing expedition that has no bearing on the relevant inquiry – that is, whether URS breached its contractual and professional duties by preparing faulty designs and specifications for the projects.

### C. *Requests for Production Nos. 18 and 20*

URS's Requests for Production Nos. 18 and 20 request documents regarding the standard of care applicable to URS's designs and specifications for the projects and establishing or illustrating negligent acts and/or omissions by URS, respectively. H&E objected to these requests as premature and/or as seeking privileged documents and information because proof of URS's breach of the standard of care is a topic that will be developed through discovery and through the use of expert witnesses. H&E's written responses and objections to URS's requests for production are entirely valid and appropriate. More, the standard of care applicable to URS's designs and specifications is a legal issue not appropriate for URS's Motion to Compel. *C.f.,*

---

[6]     Again, if an H&E budget was communicated to URS, that might be discoverable, but it is not the subject of the present motion, because documents reflecting such communications would be exchanged in H&E's (and URS's) forthcoming production of electronically stored information.

-4-

NON-CERTIFIED COPY

*e.g., Moak v. Illinois Cent. R. Co.*, 93-0783 (La. 1/14/94), 631 So. 2d 401, 406 (Basic objectives of Louisiana discovery process include affording parties fair opportunity to obtain *facts* pertinent to the litigation, discover the true *facts*, and compel disclosure of these *facts*.)

H&E will of course produce factual documents reflecting the results of URS's breaches, and H&E has further stated that it will produce its expert reports and supporting documentation in accordance with any scheduling orders issued by this Court. Notwithstanding, URS appears to take issue with H&E's responses and objections based on the argument that, prior to filing suit, H&E should have had in its possession documents stating precisely what the standard of care is, and/or that URS breached the standard of care. This misconstrues the relevant burdens of proof. In order to prove that URS breached the standard of care and/or violated its professional duties in this case, H&E is not required to have a document to that effect when it files suit. Rather, it is required to present evidence, traditionally through expert testimony, regarding the standard of care and how URS breached it – testimony that is adduced during the course of discovery and shared with the Court and other parties in accordance with a scheduling order. (Beyond that, H&E had physical evidence of URS's breach of the standard of care in the form of failing concrete surfaces.) H&E's written responses and objections to Request Nos. 18 and 20 properly contemplate that H&E will prove its case through discovery and expert testimony.

### III.    URS's Interrogatory Nos. 2 Through 5 Seek Information Entirely Irrelevant to this Litigation.

The interrogatories at issue in the defendants' Motion to Compel are similarly problematic and objectionable. Interrogatory Nos. 2 through 5 seek information related to the designs of other H&E facilities – totaling sixty-seven nationwide as of February 20, 2015[7]– and not at issue in this litigation. For example, URS's Interrogatory No. 2 reads, "Please identify any and all locations or sites that have been owned or leased by H&E, other than Baton Rouge or Kenner, with Paved Surfaces on which the types of equipment identified in Interrogatory No. 1 [tracked equipment] have been operated, loaded, unloaded, stored or parked, and for each such location please Identify the period of time H&E has owned or leased said location or site."[8] Thanks to subparts within Interrogatories, URS's Interrogatories 3 and 4 proceed to ask for

---

[7]      *See* Excerpt of Audited Financial Statement, attached as Exhibit "5."

[8]      This interrogatory has the potential to include every single site in the H&E family, since nearly all of them would have at least some concrete somewhere, and from time to time customers will bring tracked equipment (not necessarily owned or leased by H&E) to H&E for repair. In fact, H&E would have no way of knowing whether this would happen (much less whether it happened in the distant past). This interrogatory is dramatically overbroad.

-5-

NON-CERTIFIED COPY

sixteen different things about each site identified in response to Interrogatory No. 2, and Interrogatory No. 5 adds to this nine more questions about sites where tracked vehicles ever touched an "Unpaved Surface." In other words, if a single tracked bulldozer happened to be brought by a customer for repair at an H&E facility in Coeur d'Alene, Idaho on one occasion ten years ago, URS demands a litany of information about that facility. But, there is simply no chance that a tracked bulldozer happening to traverse a gravel surface in Coeur d'Alene, Idaho in 2005 would somehow make the maintenance program[9] at the H&E facility in the far outstretches of Idaho relevant to this case, which is principally about whether URS breached a standard of care in the design of a concrete surface in Baton Rouge and Kenner, Louisiana.

To be clear, what happens at other H&E facilities says nothing about the standard of care that governed URS's designs and specifications with respect to the three facilities that actually are at issue. In that regard, whether an architect or engineer designed another facility (which may be located in a different state and experience different usage and/or weather conditions) in a certain way – in conformity with or violation of that state's applicable standard of care – does not tend to prove or disprove whether URS breached the standard of care in Louisiana.

Interrogatory Nos. 2 through 5 are akin to H&E's requesting documents and information about every other design or specification for a paved or unpaved surface that URS has ever provided, to any client, in any location. H&E has not (yet) made that request, but such a request for information relating to URS's other projects would be far more relevant to the subject matter of this litigation than the requests regarding other H&E facilities made the subject of URS's instant Motion to Compel.[10] URS should not be permitted to turn the trial of this matter into a discussion of what happens at dozens of other facilities scattered across the country. Interrogatory Nos. 2 through 5 simply reach beyond the scope of relevant information and permissible discovery, and the Motion to Compel with respect to these discovery requests should be denied.

---

[9]       URS's interrogatory subpart 5(e) requests this information regarding the maintenance program.

[10]      *See generally, e.g., Fraiche v. Sonitrol of Baton Rouge*, No. 08-392, 2010 WL4809328, *2 (W.D. La. 11/19/14) (defendant's own representations were relevant to standard of care owed by the defendant and its alleged breach of that standard); *Poindexter v. U.S. Corps. of Engineers*, 568 F. Supp. 2d 729, 735 (W.D. La. 2008) (observing that the plaintiff's situation is irrelevant to what standard of care governs the defendant's conduct; defendant's duty was not defined by the plaintiff's actual knowledge but rather by the standard of care owed by the defendant to all potential plaintiffs).

NO LEC 863515 v3
2919213-000024

**IV.    H&E Should be Awarded Reasonable Costs and Fees
Incurred in Connection with Opposing the Defendants' Motion to Compel.**

Notably, Louisiana Code of Civil Procedure article 1469(4) provides for an award of reasonable costs, including attorney's fees, to *whichever party that prevails* in connection with a Motion to Compel, including the party opposing the motion should the motion be denied. As discussed above, H&E's responses and objections to the discovery requests placed at issue by URS's Motion to Compel are reasonable and valid, and H&E has made a concerted effort to work with URS regarding its requests and explain its objections. The defendants' Motion to Compel is entirely misplaced and unnecessary. Pursuant to Article 1469(4), H&E respectfully requests that the Court award it reasonable costs and fees associated with opposing the Motion.

**V.    Conclusion**

Though broad, the scope of permissible discovery is not unbounded. URS's Motion to Compel exceeds even the liberal principles of Louisiana's discovery rules and procedures. For the reasons set forth above, the items sought and concerns raised in the defendants' Motion to Compel are either encompassed within H&E's forthcoming production or simply outside the scope of permissible discovery, and the Motion to Compel should be denied in its entirety. URS further requests that the Court award it its reasonable costs and fees incurred in connection with opposing the Motion.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY: _____



ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR H&E EQUIPMENT
SERVICES, INC.**

NO LEC 863515 v3
2919213-000024

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served

on all known counsel of record who have appeared in this matter by facsimile and/or electronic

mail and by placing same in the United States mail, in a properly addressed envelope, with first-

class postage prepaid.

LAURA E. CARLISLE

-8-

NON-CERTIFIED COPY

NO LEC 863515 v3
2919213-000024

H&E EQUIPMENT SERVICES, INC.     \*   CASE NO. C626308, SECTION D

VERSUS     \*   19TH JUDICIAL DISTRICT COURT

URS CORPORATION ARCHITECTURE,     \*   PARISH OF EAST BATON ROUGE
P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III     \*   STATE OF LOUISIANA

FILED:_____     _____
                                        DEPUTY CLERK

## REPLY BRIEF IN SUPPORT
## OF MOTION TO COMPEL

MAY IT PLEASE THE COURT:

    Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this Reply Brief

in response to the Memorandum in Opposition to Motion to Compel ("Opposition") filed by

defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and

Thomas E. Ryan, III (collectively referred to as "Defendants"), and in further support of its

Motion to Compel.

### Introductory Statement

    Any party seeking to avoid discovery of documents on the ground that they were

prepared or obtained in anticipation of litigation or in preparation for trial bears the burden of

proving that the exception applies. *See, e.g., Ogea v. Jacobs*, 344 So. 2d 953, 955 (La. 1977).

Defendants have not met that burden.

    H&E's Motion to Compel seeks an Order compelling Defendants to produce specific

documents and communications related to Defendants' efforts to troubleshoot observed problems

with the concrete pads at H&E's Baton Rouge and Kenner, Louisiana branch facilities in or

around early 2013 and improperly withheld on the basis of the work-product doctrine and/or

attorney-client privilege,[1] the majority being withheld on the basis of the work-product doctrine.

In their Opposition, Defendants contend that these documents and communications must have

---

[1]    The overwhelming majority of the documents and communications at issue were withheld on the basis of
the work-product doctrine. As such, H&E has focused this Reply Brief on those items, though it continues to urge
its Motion to Compel as to all items withheld.

    More specifically, H&E's Motion to Compel also seeks an Order compelling Defendants to produce Item 5,
which Defendants withheld on the basis of the attorney-client privilege. In its Motion to Compel, H&E observed
that the Defendants' Privilege Log as initially produced did not fully identify all parties copied on the email
communication or otherwise provide enough details to allow H&E and the Court to meaningfully evaluate the
assertion of the privilege. Subsequent to H&E filing its Motion to Compel, Defendants supplemented their Privilege
Log to, among other things, identify persons copied on the communication at issue, including Murray McCullough,
a third party. H&E respectfully submits that Defendants still have not provided an adequate description of the email
communication withheld, and in any event, the inclusion of Mr. McCullough on the exchange operates to waive the
privilege. A copy of Defendants' Supplemental and Amended Privilege Log is attached as Exhibit "1." H&E
reserves the right to object to and challenge items added by Defendants and not at issue in H&E's instant Motion to
Compel.

EBR3044240

NON-CERTIFIED COPY

Case 3:13-cv-00690-BAJ-RLB    Document 44-2    07/16/18    Page 66 of 156

been prepared in anticipation of litigation because the parties were contemporaneously discussing and/or had previously discussed an unrelated problem at H&E's corporate headquarters, a project that Defendants were also working on at the time. Defendants further contend that the length of time between their troubleshooting efforts and their implementation of a litigation hold – eight months or more – is not dispositive of whether those prior efforts were made in anticipation of litigation or not. Defendants' contentions are meritless, and, in any event, do nothing to meet *their burden* of proving that the withheld materials were prepared in anticipation of litigation and were properly withheld.[2]

To the contrary, the documents and communications at issue were generated in the context of multi-party discussions regarding punch list items and efforts to address the concrete problems – during the normal course of the parties' contractual relationship and long before H&E found itself forced to file suit – and against the backdrop of *contemporaneous representations by Defendants* that they were making a concerted effort to troubleshoot the observed problems and find a resolution. H&E submits that the materials sought are well within the bounds of permissible discovery. At the very least, H&E would suffer significant prejudice if its Motion to Compel production of these documents and communications is not granted.

I.   **The Documents and Communications at Issue were Not Prepared in Anticipation of Litigation and are Discoverable.**

As noted previously, Defendants' Privilege Log identifies Items 1-4 and 6-11 as withheld on the basis of the work-product doctrine and/or as prepared in anticipation of litigation.[34] In general, these items relate to apparent contemporaneous efforts by Defendants to troubleshoot – among themselves and with a non-expert, non-attorney subcontractor – observed cracking, spalling, and breaking in the large concrete pads at H&E's Baton Rouge and Kenner branch

---

[2]   Though not fully articulated, Defendants also appear to argue in the Introduction to their Opposition that their troubleshooting efforts must have occurred in anticipation of litigation because, as set forth in their Motion for Summary Judgment, Defendants "were not responsible for repairs or damages under the contract between the parties." Opposition, p. 1. Aside from being entirely circular and self-serving, this argument is simply not correct. Even if Defendants did not have a contractual obligation to remedy the damages resulting from their deficient designs and specifications (and they did), that still does not mean that their troubleshooting efforts were done in anticipation of litigation. Those efforts could have been undertaken for any number of reasons not related to building a claim file. Moreover, as more fully set forth in H&E's Opposition to Defendants' Motion for Summary Judgment, Defendants plainly did have an obligation to remedy the damages caused by Defendants' defective designs and specifications.

[3]   *See supra* note 1.

NO LEC 867184 v2
2919213-000024

NON-CERTIFIED COPY

Received
11/06/2015 15:00:36 CST

facilities at or around the time of substantial completion of each project.[5] These items simply do not fall within the work-product doctrine.

> A.  *The Materials at Issue Were Generated During the*
> *Normal Course of the Parties' Contractual Relationship.*

The narrow exception to discovery afforded by Article 1424 does not extend to materials prepared by a non-lawyer in the regular course of business. *See Simmons v. Transit Mgmt. of Se. La., Inc.*, 2000-2530, p. 3 (La. App. 4 Cir. 2/7/01), 780 So. 2d 1074, 1077. Nor does it extend to materials that were not prepared *for the purpose of* litigation. *See, e.g., Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mut. Fire Ins. Co.*, 07-1310, p. 8 (La. App. 4 Cir. 12/19/07), 974 So. 2d 72, 78; *see also, Hoerner v. Anco Insulations, Inc.*, 98-1398, p. 8 (La. App. 4 Cir. 2/3/99), 729 So. 2d 640, 644 (treating physician's report regarding plaintiff's treatment as a result of injury, even if addressed to attorney, was not prepared in anticipation of litigation; report was not prepared for the purpose of litigation but rather for the benefit of plaintiff's health).

In their Opposition, Defendants argue that the materials at issue must have been prepared in anticipation of litigation because the parties were discussing and/or had previously discussed an unrelated problem at H&E's corporate headquarters, namely, Defendants' deficient design of the parking lot for the corporate headquarters and failure to provide an adequate number of parking spaces. There are a number of reasons why this argument lacks merit.

First, what communications the parties may have had regarding Defendants' defective design for the parking lot at H&E's corporate headquarters says nothing about whether Defendants could or should have reasonably anticipated litigation about the spalling and breaking concrete pads at the Baton Rouge and Kenner branch facilities – an entirely different problem at different facilities. Defendants' argument is akin to a contractor who claims that a document prepared in connection with one project is necessarily prepared in anticipation of litigation merely because the owner sued him in connection with another project.

Second, the context in which Defendants' apparent troubleshooting regarding the concrete problems occurred was that of normal-course discussions regarding punch list items and closing out the Baton Rouge and Kenner branch facility projects and representations *by Defendants* that they were evaluating the observed problems with the concrete in order to make a

---

[5]   Notably, the documents and communications at issue are not expert materials, and Defendants have not asserted any kind of expert-related privilege. They have asserted only that the materials were prepared in anticipation of litigation.

NON-CERTIFIED COPY

recommendation regarding possible solutions.[6]  As set forth previously, the Baton Rouge and

Kenner branch facilities reached substantial completion in late 2012 and early 2013, respectively.

In the context of reviewing and resolving punch list items – including, among other things,

apparent cracking, spalling, and other signs of deterioration in the newly constructed concrete

pads at the facilities – H&E and the project contractors contacted Defendants to discuss the

observed problems with the concrete and have Defendants recommend appropriate repairs.  By

email dated March 18, 2013, Mr. Johnson assured H&E facilities director Frankie Wynn that

Defendants were aware of the concrete problems at the Kenner site and that they were

troubleshooting the issues with their "engineering consultant" – a normal part of the construction

process.[7]  Defendants continued to troubleshoot the issues with the concrete through September

2013, during which time Defendants, H&E, and the project contractors remained in contact

regarding the concrete issues and appropriate remediation as the parties worked to resolve this

and other outstanding punch list items.[8]   But, Defendants never shared what they and the

engineering consultants concluded about the concrete problem, and the concrete pads were never

fixed.

      There is no indication that the parties' communications about the concrete problems at

the Baton Rouge and Kenner branch facilities at the time Defendants undertook their apparent

troubleshooting efforts were anything less than collaborative and non-litigious – made in the

context of joint efforts to find a solution.[9]  Moreover, under the auspices of such cooperative

troubleshooting, Defendants and their "sub consultant"[10] (a subcontractor paid, in fact, by H&E)

visited the facilities at issue, spoke with H&E personnel, and supposedly investigated the

observed problems.  At no point did Defendants and the "sub consultant" give any indication that

they were merely building a claim file, which is what they ask the Court to believe now.  Plainly,

that a party might be able to avail itself of such candid investigation of H&E's facilities under

---

[6]    *See, e.g.,* Emails between Brad Reese, Frankie Wynn, Neal Johnson, and Others, dated 1/15/13- 3/18/13, attached as Exhibit "2."

[7]    *See* Email from N. Johnson to F. Wynn and T. Ryan, dated 3/18/2013, attached as part of Exhibit "2."

[8]    *See, e.g.,* Emails between N. Johnson, F. Wynn, and Others, dated 6/6/13-6/11/13, attached as Exhibit "3;" Emails between N. Johnson, F. Wynn, B. Reese, and Others, dated 6/7/13-7/8/13, attached as Exhibit "4." Defendants' Privilege Log indicates that this process extended into September.

[9]    *See generally, supra* note 8.

[10]    *See* Defendants' Memorandum in Opposition to Motion to Compel, p. 5.

-4-

NON-CERTIFIED COPY

the auspices of collaborative troubleshooting to only later assert that its findings are excepted from discovery as prepared in anticipation of litigation seems inherently unfair and prejudicial.

Considering the limited scope of Article 1424, whatever reports Defendants or their "sub consultant" prepared were not prepared and whatever communications they may have had amongst themselves and/or with their "sub consultant" were not had *for the purpose of* litigation: they were prepared in the normal course of the construction process and with the stated purpose of finding a resolution and closing out the projects. Such communications and documents simply do not fall within the narrow scope of the work-product doctrine. *See generally, e.g.,* *Hoerner,* 729 So. 2d at 644 (treating physician's report regarding plaintiff's treatment as a result of injury, even if addressed to attorney, were not prepared in anticipation; report was not prepared for the purpose of litigation but rather for the benefit of plaintiff's health*); see also, e.g., Whitaker v. Peterbilt of Louisiana, LLC,* No. 2013-1774, 2014 WL 3843552, *5 (La. App. 4 Cir. 7/30/14) (investigative report taken by defendant's employee shortly after accident was not discoverable, even with respect to employee's impressions include in report; though investigative, the report was not prepared for the purpose of litigation).

  B. *Cacamo is Inapposite to This Dispute and Does*
    *Not Save the Defendants' Objections or Opposition.*

Defendants also contend that the length of time – approximately eight months or more – between their troubleshooting efforts and institution of a litigation hold is not dispositive of whether communications and documents related to their troubleshooting efforts are were prepared or not prepared in anticipation of litigation. In support of this argument, Defendants rely heavily on *Cacamo v. Liberty Mut. Fire Ins. Co.,* 1999-1421, (La. App. 4 Cir. 10/10/01, 798 So. 2d 1210, 1214, a case in which the court observed that even a document prepared decades ago might still be excepted from discovery in the context of unrelated litigation today. But, Defendants' reliance on the case is misplaced.

First, H&E has not argued that Defendants' much later litigation hold is dispositive of the documents and communications related to Defendants' troubleshooting efforts being prepared in the normal course of the parties' contractual relationship; nevertheless, the length of time separating those troubleshooting efforts and the ligation hold is *indicative* of the nature of those prior efforts. Of course, also indicative is the context in which Defendants undertook those troubleshooting efforts, as discussed above. *Cacamo* is entirely consistent on this point.

-5-

NON-CERTIFIED COPY

Second, while *Cacamo* stands for the proposition that time is not dispositive of whether a document or communication was prepared in anticipation of litigation or not, it does not contradict – and confirms— the larger, more fundamental point that what ultimately matters is whether the item was prepared *for the purpose of litigation*. If prepared with for the purpose of litigation, a document is arguably just as protected today as it was ten years ago. H&E has not suggested otherwise. Rather, the whole point of H&E's Motion to Compel is that the communications and documents at issue were not prepared for the purpose of litigation. *Cacamo* does not contradict or undermine H&E's Motion to Compel and does not bolster Defendants' Opposition.

## II.   H&E Will Suffer Unfair Prejudice if Its Motion to Compel is Not Granted.

Even where a court is satisfied that a document was prepared in anticipation of litigation, it may still order disclosure if the denial of production will cause unfair prejudice to the party seeking production in preparing his claim or defense or undue hardship or injustice. *See, e.g., Ogea*, 344 So. 2d at 958; *Whitaker*, 2014 WL 3843552, at *4. Relevant to a court's inquiry here is whether the party seeking production will face difficulty in obtaining substantially equivalent information from other sources if discovery is denied. *See, e.g., Ogea*, 344 So. 2d at 958.

H&E respectfully urges the Court to order the requested production even if it determines that the documents and communications were in fact prepared for the purpose of litigation because a denial of production will cause unfair prejudice in H&E's ability to develop its claims against Defendants. Among other things, the materials at issue contain information regarding the problems at issue as well as what Defendants believed their obligations were and what standard of care they determined they should have followed with respect to the concrete pads. This information is necessary to developing and proving H&E's claims, meaningfully deposing Defendants, and responding to various defenses made by Defendants; and H&E faces significant difficulty in reasonably or efficiently obtaining such information elsewhere.

For instance, Defendants' Motion for Summary Judgment contends that one of the agreements between the parties waives H&E's right to recoverable damages, a provision that would be unenforceable if URS was willful in its defective designs and/or failure to remedy the problems with the concrete. The documents and communications at issue go directly to these questions of Defendants' knowledge and intent.

-6-

NO LEC 867184 v2
2919213-000024

NON-CERTIFIED COPY

### III.    Conclusion

The exception to discovery afforded by Article 1424 should be extended only so far as necessary to serve the purposes underlying the exception, that is, to provide an attorney a "zone of privacy" within which he is free to evaluate and prepare his case without scrutiny by his adversary and/or to assist clients in obtaining complete legal advice. *Simmons*, 780 So. 2d at 1077-78; *see also, Hodges v. So. Farm Bureau Cas. Ins.* Co., 433 So.2d 125, 131–32 (La.1983). It is not intended to shield communications and documents prepared by a party in the normal course of business, simply because the party may not like the contents. That is precisely what Defendants are attempting to do here. For the reasons set forth above and previously, H&E respectfully requests that the Court grant its Motion to Compel and order the requested production. H&E further requests reasonable attorneys' fees and costs incurred in connection with its Motion to Compel.

Respectfully submitted,

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**

BY: _Laura E. Carlisle_

ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR H&E EQUIPMENT**
**SERVICES, INC.**



FILED
EAST BATON ROUGE PARISH, LA
2015 JUN 11 PM 4: 52
DEPUTY CLERK OF COURT

NO LEC 867184 v2
2919213-000024

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB    Document 4-2    07/16/18    Page 72 of 156

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 11th day of June, 2015, the foregoing was

served on all known counsel of record who have appeared in this matter by facsimile and/or

electronic mail and by placing same in the United States mail, in a properly addressed envelope,

with first-class postage prepaid.

/LAURA E. CARLISLE

FILED
EAST BATON ROUGE PARISH, LA
2015 JUN 11  PM 4:52
DEPUTY CLERK OF COURT

-8-

NO LEC 867184 v2
2919213-000024

NON-CERTIFIED COPY

| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308      DIV.: D |
|---|---|---|
| | * | 19TH JUDICIAL DISTRICT COURT |
| VERSUS | * | |
| | * | PARISH OF EAST BATON ROUGE |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON AND THOMAS E. RYAN, III | * | STATE OF LOUISIANA |

## SUPPLEMENTAL AND AMENDED
## PRIVILEGE LOG OF DEFENDANTS

| # | Date | Bates Number | Document | Privilege Asserted |
|---|---|---|---|---|
| 1 | 4/5/2013 | URS-1172-75 | E-mail from Tim Gaines to Thomas Ryan, cc to Neal Johnson, RE: H&E Kenner RFI #54 &55 (CJ, EJ Crack Repairs), includes string emails between MAPP and H&E | Work Product |
| 2 | 4/5/2013 | URS-1176-78 | String E-mails between Tim Gaines, Thomas Ryan and Neal Johnson, RE: Crack Repair H&E Kenner | Work Product |
| 3 | 4/5/2013 | URS-1179-82 | Duplicate of #1 above | Work Product |
| 4 | 6/6/2013 | URS-1183-84 | E-mail from Neal Johnson to Murray McCullough, Thomas Ryan, and Debra Sanders Re: H&E Equipment Services, Inc. Expansion/Contraction Joint Issues w/ emails from Frank Wynn and Womack | Work Product |
| 5 | 6/11/2013 | URS-1192-93 | E-mail from Neal Johnson to Alan Cohen, cc to Thomas Ryan, Murray McCullough, and Debra Sanders RE: H&E Branch pavement issues w/ attachments re punch lists | Attorney/Client |
| 6 | 6/21/2013 | URS-1235 | Drawing /Schematic by Murray McCullough | Work Product |
| 7 | 6/24/2013 | URS-1236-37 | E-mail from Neal Johnson to Thomas Ryan Re: forwarding message from Murray McCullough addressing paving joints w/attachments | Work Product |
| 8 | 6/24/2013 | URS-1240-41 | Duplicate of #7 above | Work Product |
| 9 | 7/18/2013 | URS-1244-52 | String E-mail from Neal Johnson to Tim Gaines and Thomas Ryan Re: URS' position on joints w/ attachments | Work Product |
| 10 | 7/18/2013 | URS-1256-57 | E-mail from Tim Gaines to Thomas Ryan Re: Kenner paving fix | Work Product |

1



NON-CERTIFIED COPY

| 11 | 9/23/2013 | URS-1258-59 | E-mails between Tim Gaines and Thomas Ryan Re: H&E Kenner | Work Product |
|----|-----------|-------------|------------------------------------------------------------|-------------|
| 12 | No Date | URS-1260-85 | Photos obtained in anticipation of litigation | Work Product |
| 13 | No Date | URS-1286-89 | Drawings obtained in anticipation of litigation by or on behalf of URS | Work Product |
| 14 | No Date | URS-1332-34 | Photos and descriptions obtained by or on behalf of URS in anticipation of litigation | Work Product |
| 15 | No Date | URS-1383-84 | Email from Neal Johnson to Alan Cohen, cc to Thomas Ryan, Murray McCullough, and Debra Sanders re H&E branch pavement issues | Attorney/Client Work Product |
| 16 | 6/21/2013 | URS-1385 | Email from Murray McCullough to Neal Johnson re H&E pavement | Work Product |
| 17 | 8/12/2013 | URS-1392-94 | Notes re H&E construction issues | Work Product |
| 18 | No Date | URS-1395-98 | Information obtained from DOTD | Work Product |
| 19 | No Date | URS-1408-22 | Notes and investigation materials for discussion with attorneys | Attorney/Client Work Product |
| 20 | 6/11/2013 | URS-1423 | Information to discuss with counsel | Work Product |
| 21 | No Date | URS-1437-1717 | Information gathered and assembled to discuss with counsel | Work Product |

NON-CERTIFIED COPY

To:   Page 15 of 29

Received
Case 3:18-cv-00690-BAJ-RLB    Document 4-2    Jun 11, 2015 04:04pm
11/06/2015 15:00:36 CST                                            Page 75 of 156
                                          15045856904  From: Shelley Tannehill

**From:**        Johnson, Neal <neal.johnson@urs.com>
**Sent:**        Monday, March 18, 2013 1:37 PM
**To:**          Frankie Wynn; Ryan, Thomas E
**Subject:**     RE: 52079 - H&E Kenner - RFI #54 & 55 (CJ, EJ Crack Repairs)
**Attachments:** image005.jpg; image006.jpg; image007.jpg; image008.jpg; image009.jpg

We have forwarded the data to our civil engineering consultant for this project. I am concerned that the list is presented as a CPR and not a repair to a construction defect.  A CPR is typically a cost proposal.
Neal

From: Frankie Wynn [fwynn@he-equipment.com]
Sent: Monday, March 18, 2013 1:09 PM
To: 'Brad Reese'; Johnson, Neal; Ryan, Thomas E
Cc: Patrick Solomon; Casey Ginder
Subject: RE: 52079 - H&E Kenner - RFI #54 & 55 (CJ, EJ Crack Repairs)

Since I am not familiar with any of these products or the process, I cannot give an opinion.

Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809  (New Address)
Office:  225-298-5229
Mobile:  225-603-4438
Fax:  225-298-5376
fwynn@he-equipment.com<mailto:fwynn@he-equipment.com>
www.HE-Equipment.com<http://www.he-equipment.com/>
[Description: HE Equipment Services-ETS with 50th anniversay logo for email_medium res]

From: Brad Reese [mailto:breese@mappconstruction.com]
Sent: Monday, March 18, 2013 11:29 AM
To: Frankie Wynn; 'Johnson, Neal'; Thomas Ryan (thomas.e.ryan@urs.com)
Cc: Patrick Solomon; Casey Ginder
Subject: RE: 52079 - H&E Kenner - RFI #54 & 55 (CJ, EJ Crack Repairs)

Frankie – we need to make sure that H&E and the Design Team agree with our recommendations....which are outlined in the email below.  There are different products to use at each instance (i.e. Control Joints, Cracking, Expansion Joints and Building Slab Transition).

Brad Reese, LEED AP BD+C :: Sr. Project Manager

[Description: Description: cid:3424084961_75301094]
[Description: Description: Description: facebook]<http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299> [Description: Description: Description: Twitter] <http://twitter.com/mappconstructn>
[Description: Description: Description: LinkedIn] <http://www.linkedin.com/company/118121>  M A P P C O N S T R U C
T I O N . C O M

1

EXHIBIT
2

NON-CERTIFIED COPY

NON-CERTIFIED COPY

From: Frankie Wynn [mailto:fwynn@he-equipment.com]<mailto:[mailto:fwynn@he-equipment.com]>
Sent: Monday, March 18, 2013 11:02 AM
To: Brad Reese; 'Johnson, Neal'; Thomas Ryan (thomas.e.ryan@urs.com<mailto:thomas.e.ryan@urs.com>)
Cc: Patrick Solomon; Casey Ginder
Subject: RE: 52079 - H&E Kenner - RFI #54 & 55 (CJ, EJ Crack Repairs)

I would not be comfortable approving your proposal.  You need to pick a solution that will solve the issues.

Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809  (New Address)
Office: 225-298-5229
Mobile: 225-603-4438
Fax: 225-298-5376
fwynn@he-equipment.com<mailto:fwynn@he-equipment.com>
www.HE-Equipment.com<http://www.he-equipment.com/>
[Description: HE Equipment Services-ETS with 50th anniversay logo for email_medium res]

From: Brad Reese [mailto:breese@mappconstruction.com]
Sent: Friday, March 15, 2013 8:51 AM
To: Frankie Wynn; 'Johnson, Neal'; Thomas Ryan (thomas.e.ryan@urs.com<mailto:thomas.e.ryan@urs.com>)
Cc: Patrick Solomon; Casey Ginder
Subject: 52079 - H&E Kenner - RFI #54 & 55 (CJ, EJ Crack Repairs)

FYI — our subcontractor proposes the following solution to the concrete areas in need of repair:

Control Joint Repairs in Paving

·    Remove existing elastomeric sealant

·    Clean joints

·    Apply Sikadur 51SL to fill joints

Crack Repairs in Paving

·    Rout cracks

·    Clean cracks

·    Apply Sikadur 55SLV to refusal

Building Slab Transition (New Warehouse Slab to Existing Warehouse Slab)

·    Chip areas to a depth of +/-2" in depth

·    Place Sikadur 321FS

2

NON-CERTIFIED COPY

Expansion Joints in Paving

·   Chip areas to a depth of +/-2" in depth

·   Place Sikadur 321FS

Attached is the product data for each.  Please review and advise if this solution is acceptable.  If so, we can perform a sample and determine which joints/cracks/etc. need the repair so that we can accurately create a formal CPR.

Feel free to contact me with any questions.

Thanks

Brad Reese, LEED AP BD+C :: Sr. Project Manager

[Description: Description: cid:3424084961_75301094]
[Description: Description: Description: facebook]<http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299>  [Description: Description: Description: Twitter] <http://twitter.com/mappconstructn>
[Description: Description: Description: LinkedIn] <http://www.linkedin.com/company/118121>  M A P P C O N S T R U C T I O N . C O M

From: Brad Reese
Sent: Monday, March 04, 2013 10:34 AM
To: Frankie Wynn (fwynn@he-equipment.com<mailto:fwynn@he-equipment.com>); Johnson, Neal
Cc: Patrick Solomon; Casey Ginder
Subject: FW: 52079 - H&E Kenner - RFI #54 & 55

Frankie/Neal – do you have time this week to review action items for the paving joint repairs.  I met with a sub that can perform the work, but would like to sit down with you to review their proposed solutions.  I am available any day this week except for today and Wednesday.  We can meet at the site or I can drive to Baton Rouge and meet at your office....whichever is more convenient.

Please let me know.

thanks

Brad Reese, LEED AP BD+C :: Sr. Project Manager

[Description: Description: cid:3424084961_75301094]
[Description: Description: Description: facebook]<http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299>  [Description: Description: Description: Twitter] <http://twitter.com/mappconstructn>
[Description: Description: Description: LinkedIn] <http://www.linkedin.com/company/118121>  M A P P C O N S T R U C T I O N . C O M

From: Brad Reese
Sent: Wednesday, January 23, 2013 1:03 PM
To: Johnson, Neal; Thomas Ryan (thomas.e.ryan@urs.com<mailto:thomas.e.ryan@urs.com>)
Cc: Patrick Solomon; Casey Ginder
Subject: FW: 52079 - H&E Kenner - RFI #54 & 55

NON-CERTIFIED COPY

Neal/Thomas – have you had a chance to review this? I would like to get this work completed quickly to finish up this project for H&E.

thanks

**Brad Reese, LEED AP BD+C :: Sr. Project Manager**

[Description: Description: cid:3424084961_75301094]
[Description: Description: Description: facebook]<http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299> [Description: Description: Description: Twitter] <http://twitter.com/mappconstructn> [Description: Description: Description: LinkedIn] <http://www.linkedin.com/company/118121> M A P P C O N S T R U C T I O N . C O M

**From:** Brad Reese
**Sent:** Tuesday, January 15, 2013 12:32 PM
**To:** Johnson, Neal; Thomas Ryan (thomas.e.ryan@urs.com<mailto:thomas.e.ryan@urs.com>)
**Cc:** Patrick Solomon; Casey Ginder
**Subject:** 52079 - H&E Kenner - RFI #54 & 55

Neal/Thomas – please see the attached RFI's. We spoke to the concrete sub and they would feel more comfortable having something from the Architect of Record on how to make these repairs. Is this something you can handle? If you have a product/procedure in mind, we don't mind meeting with a rep or different sub to make sure the application will work as intended.

Let me know your thoughts.

thanks

Brad Reese, LEED AP BD+C :: Sr. Project Manager

504 234 9200 W I R E L E S S

[Description: Description: Description: cid:3424084961_75301094]
..........................................................................................
601 POYDRAS ST., STE. 1715 :: NEW ORLEANS
P 504 833 6277 ::  F 504 833 6074

[Description: Description: Description: Description: facebook]<http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299> [Description: Description: Description: Description: Twitter] <http://twitter.com/mappconstructn> [Description: Description: Description: Description: LinkedIn] <http://www.linkedin.com/company/118121> M A P P C O N S T R U C T I O N . C O M

This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and any attachments or copies.

4

NON-CERTIFIED COPY

From:          Frankie Wynn <fwynn@he-equipment.com>
To:            "Johnson, Neal" <neal.johnson@urs.com>
CC:            1. Dorsey, Stephan <sdorsey@mjwomack.com>
               2. "Ryan, Thomas E" <thomas.ryan@urs.com>
               3. John Jones <jjones@he-equipment.com>
               4. Murray L. McCullough (murray@benchmarkgroupllc.com)
Subject:       RE: H&E Equipment Services, Inc. / Expansion/Construction Joint
Issues
Sent:          6/11/2013 4:17:17 PM +00:00

Do you know when we will have an answer? We need to move forward on getting this issues addressed.

Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809 (New Address)
Office: 225-298-5229
Mobile: 225-603-4438
Fax: 225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com


-----Original Message-----
From: Johnson, Neal [mailto:neal.johnson@urs.com]
Sent: Thursday, June 06, 2013 10:21 AM
To: Frankie Wynn
Cc: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com);
pbonner@mjwomack.com; Ryan, Thomas E; Sanders, Debra; John Jones; Murray L. McCullough (murray@benchmarkgroupllc.com);
Hill, Terry
Subject RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Frankie:
We will review the recommendation with Benchmark Group (our civil engineer of record) and request their opinion.
Regarding the request that URS participate in the cost of this work, this request will be forwarded to URS management for their
directive.
Sincerely,
Neal Johnson


-----Original Message-----
From: Frankie Wynn [mailto:fwynn@he-equipment.com]
Sent: Thursday, June 06, 2013 7:56 AM
To: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com);
pbonner@mjwomack.com; Ryan, Thomas E; Johnson, Neal; Sanders, Debra; John Jones
Subject: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Attached is the latest recommendation to remedy the Expansion/Construction Joint issues at the H&E Baton Rouge Branch. This
recommendation is unacceptable to H&E for several reasons, not the least of which is the cost. As the cause of this problem cannot
be agreed upon by Womack or URS, I would suggest that both parties agree to share the costs equally. All parties knew well in
advance of design and installation of the paved area, the intended use. All parties were asked throughout the project for any and all
suggestions in all areas of design and construction to voice any and all concerns and make recommendations. I do not recall any
alternatives to the design and installation that were not followed by H&E.

As this issue will not correct itself and by its very nature grows worse each day, time is of the essence.
Let me know your solution as soon as possible.

Thank you

Frankie Wynn
Director of Facilities/Risk/Compliance Management H&E Equipment Services, Inc.
7500 Pecue Lane



EXHIBIT
3

URS-00012

NON-CERTIFIED COPY

Baton Rouge, LA 70809  (New Address)
Office: 225-298-5229
Mobile: 225-603-4436
Fax: 225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com

This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and any attachments or copies.

URS-00013

NON-CERTIFIED COPY

| From: | Brad Reese <breese@mappconstruction.com> |
|---|---|
| Sent: | Monday, July 08, 2013 9:24 PM |
| To: | Frankie Wynn; 'Johnson, Neal' |
| Cc: | Ryan, Thomas E; Vern Anderson; Crystal Faulkner; John Jones |
| Subject: | RE: Detail of Work Completed - Kenner |
| Attachments: | 52079 - Mtg Follow Up & Revised CPRs (50, 54, 57); Pay app work sheet.pdf; H&E Kenner CO 5 - Final.pdf; H&E Kenner CO 05 - attachment 1.pdf |

Neal – thanks for the info.  However, CO #5 was revised based on the  meeting at H&E's office on 5-22-13 (see attached email for reference).

Please let me know what we can do to collect the outstanding payments so that we can pay our subs and vendors.

Thanks

BRR


**Brad Reese, LEED AP BD+C** :: Sr. Project Manager

# MAPP CONSTRUCTION

MAPPCONSTRUCTION.COM


**From:** Frankie Wynn [mailto:fwynn@he-equipment.com]
**Sent:** Monday, July 08, 2013 1:15 PM
**To:** 'Johnson, Neal'; Brad Reese
**Cc:** Ryan, Thomas E; Vern Anderson; Crystal Faulkner; John Jones
**Subject:** RE: Detail of Work Completed - Kenner

The $15,000 punch list is based on the line item for pavement joints.  We will ask H&E for their directive to accept the work as in place and consider this a maintenance issue given the conditions that have been observed.

I do not agree that this is a maintenance issue.  I have not seen anything to substantiate that this is not a design issue.  On March 18, 2013, I was told by URS  "We have forwarded the data to our civil engineering consultant for this project."  I do not recall seeing a written report after that.


Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809  (New Address)
Office:  225-298-5229
Mobile:  225-603-4438

1



NON-CERTIFIED COPY

Received
Case 3:18-cv-00690-BAJ-RLB    Document 4-2    Jun 01/2015 04:00pm    Page 83 of 156
11/06/2015 15:00:36 CST        15045856904  From: Shelley Tannehill

Fax: 225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com

---

**From:** Johnson, Neal [mailto:neal.johnson@urs.com]
**Sent:** Monday, July 08, 2013 11:39 AM
**To:** Brad Reese
**Cc:** Ryan, Thomas E; Vern Anderson; Crystal Faulkner; Frankie Wynn
**Subject:** RE: Detail of Work Completed - Kenner
**Importance:** High

Our pay application worksheet through #15 is attached. Our records show that we have certified a total amount of $3,743,235.61 of a current contract amount of $3,835,645.00 leaving the current balance of $92,409.39 which is based on $77,409.39 retainage and $15,000 punch list value.  Given you have obtained a clear lien certificate you can invoice for the balance on the retainage. The $15,000 punch list is based on the line item for pavement joints. We will ask H&E for their directive to accept the work as in place and consider this a maintenance issue given the conditions that have been observed.

Regarding Change Order 005, we show an amount that H&E has agreed to be $34,499.00 (copy enclosed).  This was sent to you in early May of this year for signature.
Call me after you have a chance to review this information. We all wish to bring this project to closure.
Neal



**Neal Johnson, AIA**
Program Manager - Facilities
Mountain South Central Group

7389 Florida Boulevard,
Suite 300
Baton Rouge, LA 70806
Office 225.922.5700
Direct 225.231.6343
Cell  225.324.5648
Neal.johnson@urs.com

---

**From:** Brad Reese [mailto:breese@mappconstruction.com]
**Sent:** Monday, July 08, 2013 8:20 AM
**To:** 'Frankie Wynn'; Johnson, Neal
**Cc:** Ryan, Thomas E; Vern Anderson; Crystal Faulkner
**Subject:** RE: Detail of Work Completed - Kenner
**Importance:** High

Neal – can you confirm that you have processed all other pay apps?  My breakdown below shows what is outstanding.  We need to get these items resolved today.

- $ 80,000.00    Pay App #13
- $ 92,409.39    Balance of Retainage
- $ 46,052.00    Change Order #5 (MAPP has not received a copy of this CO)
- $218,461.39    Total Owed to MAPP, Material Suppliers and Subcontractors

2

NON-CERTIFIED COPY

Thanks

BRR


**Brad Reese, LEED AP BD+C :: Sr. Project Manager**

**MAPP**CONSTRUCTION

MAPPCONSTRUCTION.COM

---

**From:** Frankie Wynn [mailto:fwynn@he-equipment.com]
**Sent:** Wednesday, July 03, 2013 9:34 AM
**To:** Brad Reese; 'Johnson, Neal'
**Cc:** Ryan, Thomas E; Vern Anderson; Crystal Faulkner
**Subject:** RE: Detail of Work Completed - Kenner

My numbers are attached


Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809  (New Address)
Office: 225-298-5229
Mobile: 225-603-4438
Fax: 225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com

 

---

**From:** Brad Reese [mailto:breese@mappconstruction.com]
**Sent:** Wednesday, July 03, 2013 8:34 AM
**To:** 'Johnson, Neal'; Frankie Wynn
**Cc:** Ryan, Thomas E; Vern Anderson; Crystal Faulkner
**Subject:** RE: Detail of Work Completed - Kenner

Neal/Frankie - has this been resolved?  I looked through our records and show that we were short paid $80,000 on pay app #13.  Currently, MAPP is owed the following:

* $ 80,000.00    Pay App #13
* $ 92,409.39    Balance of Retainage
* $ 46,052.00    Change Order #5 (MAPP has not received a copy of this CO)
* $218,461.39    Total Owed to MAPP, Material Suppliers and Subcontractors

3

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB    Document 4-2  Jun 01/2015 04:09pm  Page 85 of 156

On April 2, 2013, we submitted photos indicating the punch list items were previously addressed/completed.

On June 28, 2013, we submitted a copy of the clear lien certificate.

We are unaware of any issues relating to construction that could be holding up the $218,461.39.  Please let us know what can be done to put closure to this project.

thanks

BRR


Brad Reese, LEED AP BD+C :: Sr. Project Manager


M A P P C O N S T R U C T I O N . C O M


-----Original Message-----
From: Johnson, Neal [mailto:neal.johnson@urs.com]
Sent: Monday, July 01, 2013 8:09 PM
To: Brad Reese; 'Frankie Wynn'
Cc: Ryan, Thomas E; Vern Anderson; Crystal Faulkner
Subject: RE: Detail of Work Completed - Kenner

Thomas - get with me on the outstanding punch list Thanks Neal




-----Original Message-----
From: Brad Reese [mailto:breese@mappconstruction.com]
Sent: Friday, June 28, 2013 2:24 PM
To: 'Frankie Wynn'; Johnson, Neal
Cc: Ryan, Thomas E; Vern Anderson; Crystal Faulkner
Subject: RE: Detail of Work Completed - Kenner

Sounds good.  We will send someone over on Monday (mid-morning) to pick it up.

Neal/Thomas - we previously submitted a letter and photos addressing the punch list items as complete.  Please let me know if you need us to resend.

Thanks

BRR


Brad Reese, LEED AP BD+C :: Sr. Project Manager


M A P P C O N S T R U C T I O N . C O M


4

NON-CERTIFIED COPY

—–Original Message—–
From: Frankie Wynn [mailto:fwynn@he-equipment.com]
Sent: Friday, June 28, 2013 2:22 PM
To: Johnson, Neal
Cc: Brad Reese; Ryan, Thomas E; Vern Anderson; Crystal Faulkner
Subject: Re: Detail of Work Completed - Kenner

I have a $100,000.00 check that can be picked up Monday when I get back on the office.

Sent from my iPhone

On Jun 28, 2013, at 2:18 PM, "Johnson, Neal" <neal.johnson@urs.com<mailto:neal.johnson@urs.com>> wrote:

This certificate appears to be in compliance for release of the contract balance less the value of any outstanding
deficiencies to the completion of the contract (punch list items).
I assume the pay request will need to be modified in order to process this payment.

Thomas - please review all of this and get with me next Tuesday (I am out on Monday).
Thanks
Neal

<image006.jpg>

From: Brad Reese [mailto:breese@mappconstruction.com]
Sent: Friday, June 28, 2013 2:10 PM
To: Johnson, Neal; 'Frankie Wynn'
Cc: 'Brandon McWilliams'; Ryan, Thomas E; Vern Anderson; Crystal Faulkner
Subject: RE: Detail of Work Completed - Kenner

Neal/Frankie - please see the attached document to this email which is the Clear Lien Certificate for the project. This
supersedes the previous lien waiver that we submitted for partial retainage. Please advise when the check (for full
retainage) is ready for pick up.

Also - we are still waiting to receive Change Order #5, as well as approval of CPR #053.

Thanks

BRR


Brad Reese, LEED AP BD+C :: Sr. Project Manager

<image009.jpg>
<image010.jpg><https://urldefense.proofpoint.com/v1/url?u=http://www.facebook.com/pages/MAPP-Construction-
LLC/129547004299&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qgaYl6mw82BGcUnipk6wHOY3PDYe8yQB
8bgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzJFkcrZi%2BbK3r0gRuw%3D%0A&s=6c80d95365975510cb6c167
15398f937ed8ec93be49209ee7aac2fe8d0745ad7> <image011.jpg><https://urldefense.proofpoint.com/v1/url?u=http:/
/twitter.com/mappconstructn&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qgaYl6mw82BGcUnipk6wHOY3
PDYe8yQB8bgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzJFkcrZi%2BbK3r0gRuw%3D%0A&s=ef650785899f4ffe
7f9fa644f3feea4866f6b58453f5435b48b037c14141c970> <image012.jpg><https://urldefense.proofpoint.com/v1/url?u
=http://www.linkedin.com/company/118121&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qgaYl6mw82BG

NON-CERTIFIED COPY

cUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzlFkcrZj%2BbK3r0gRuw%3D%0A&s=b
4f22d0a9acace6719c000497c0a4645b82f504a9f126017f1c23b958fa13cc2> M A P P C O N S T R U C T I O N . C O M

From: Brad Reese
Sent: Monday, June 17, 2013 10:06 AM
To: Johnson, Neal; 'Frankie Wynn'
Cc: Brandon McWilliams; Ryan, Thomas E; Vern Anderson
Subject: RE: Detail of Work Completed - Kenner

Attached is a copy of the lien waiver.  Frankie - please advise as to what time we can come by and pick up the check.

Thanks

BRR

Brad Reese, LEED AP BD+C :: Sr. Project Manager

<image009.jpg>
<image010.jpg> <https://urldefense.proofpoint.com/v1/url?u=http://www.facebook.com/pages/MAPP-Construction-
LLC/129547004299&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYl6mw82BGcUnipk6wHOY3PDYe8yQB
Bbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzlFkcrZj%2BbK3r0gRuw%3D%0A&s=6c80d95365975510cb6c167
15398f937ed8gc93be49209ee7aac2fe8d0745ad7> <image011.jpg> <https://urldefense.proofpoint.com/v1/url?u=http:/
/twitter.com/mappconstructn&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYl6mw82BGcUnipk6wHOY3
PDYe8yQBBbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzlFkcrZj%2BbK3r0gRuw%3D%0A&s=ef650785899f4ffe
7f9fa644f3feea4866f6b58453f5435b48b037c14141c970> <image012.jpg> <https://urldefense.proofpoint.com/v1/url?u
=http://www.linkedin.com/company/118121&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYl6mw828G
cUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzlFkcrZj%2BbK3r0gRuw%3D%0A&s=b
4f22d0a9acace6719c000497c0a4645b82f504a9f126017f1c23b958fa13cc2> M A P P C O N S T R U C T I O N . C O M

From: Vern Anderson
Sent: Wednesday, June 12, 2013 2:22 PM
To: Johnson, Neal
Cc: Brandon McWilliams; Brad Reese; 'Frankie Wynn'; Ryan, Thomas E
Subject: RE: Detail of Work Completed - Kenner

NJ,
Confirmed.  We will have the lien document sent over in a few

Vern Anderson :: Project Executive

<image013.jpg>
M A P P C O N S T R U C T I O N . C O M

225 408 7722 D I R E C T
225 522 0009 W I R E L E S S

From: Johnson, Neal [mailto:neal.johnson@urs.com]
Sent: Wednesday, June 12, 2013 2:20 PM

NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB    Document 4-2    Received    Page 88 of 156
11/06/2015 15:00:36 CST    15045856904  From: Shelley Tannehill

To: Brad Reese; 'Frankie Wynn'; Ryan, Thomas E
Cc: Brandon McWilliams; Vern Anderson
Subject: RE: Detail of Work Completed - Kenner

The lien release was only to process payment for partial release of retainage prior to having a clear lien certificate.
Please call me if you have any questions Neal <image006.jpg>

From: Brad Reese [mailto:breese@mappconstruction.com]
Sent: Wednesday, June 12, 2013 11:21 AM
To: 'Frankie Wynn'; Ryan, Thomas E; Johnson, Neal
Cc: Brandon McWilliams; Vern Anderson
Subject: RE: Detail of Work Completed - Kenner

Neal indicated that the lien release document was to allow H&E to release funding, not execute a change order.

Change order #5 should not require a lien release.

PS - The lien release is forthcoming.

Thanks

BRR


Brad Reese, LEED AP BD+C :: Sr. Project Manager

<image009.jpg>
<image010.jpg><https://urldefense.proofpoint.com/v1/url?u=http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYI6mw82BGcUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzIFkcrZi%2BbK3r0gRuw%3D%0A&s=6c80d95365975510cb6c16715398f937ed8ec93be49209eg7aac2fe8d0745ad7> <image011.jpg><https://urldefense.proofpoint.com/v1/url?u=http://twitter.com/mappconstructn&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYI6mw82BGcUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzIFkcrZi%2BbK3r0gRuw%3D%0A&s=ef650785899f4ffe7f9fa644f3feea4866f6b58453f5435b48b037c14141c970> <image012.jpg><https://urldefense.proofpoint.com/v1/url?u=http://www.linkedin.com/company/118121&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYI6mw82BGcUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=Dc%2BxWf3SwfmmvsCp2O8jkYAbhzIFkcrZi%2BbK3r0gRuw%3D%0A&s=b4f22d0a9acace6719c000497c0a4645b82f504a9f126017f1c23b958fa13cc2> M A P P C O N S T R U C T I O N . C O M


From: Frankie Wynn [mailto:fwynn@he-equipment.com]
Sent: Wednesday, June 12, 2013 11:14 AM
To: Brad Reese; Ryan, Thomas E; Johnson, Neal (neal.johnson@urs.com<mailto:neal.johnson@urs.com>)
Cc: Brandon McWilliams; Vern Anderson
Subject: RE: Detail of Work Completed - Kenner

We need the lien release document.

Frankie Wynn
Director of Facilities/Risk/Compliance Management H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809 (New Address)
Office: 225-298-5229

NON-CERTIFIED COPY

Mobile: 225-603-4438
Fax: 225-298-5376
fwynn@he-equipment.com<mailto:fwynn@he-equipment.com>
www.HE-Equipment.com<http://www.he-equipment.com/>
<image014.jpg>

From: Brad Reese [mailto:breese@mappconstruction.com]
Sent: Tuesday, June 11, 2013 5:28 PM
To: Frankie Wynn; Dorsey, Stephan; Ryan, Thomas E
Cc: Brandon McWilliams
Subject: RE: Detail of Work Completed -

Frankie - we need change order #5 so that we can complete our billing.

Please advise when we will receive this.

thanks

Brad Reese, LEED AP BD+C :: Sr. Project Manager

<image009.jpg>
<image010.jpg><https://urldefense.proofpoint.com/v1/url?u=http://www.facebook.com/pages/MAPP-Construction-LLC/129547004299&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYl6mw82BGcUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=JeDPrZHwkAzLu7msFUicZkGD%2F48POKMbY1iawsuaf4w%3D%0A&s=c957df1a49422385974b67e23b605ac7544c43495bc5cb198a0ed77cd87c21fb>  <image011.jpg><https://urldefense.proofpoint.com/v1/url?u=http://twitter.com/mappconstructn&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYl6mw82BGcUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=JeDPrZHwkAzLu7msFUicZkGD%2F48POKMbY1iawsuaf4w%3D%0A&s=c8d2914e462c8d12408eca9002589677cf5510e9cb590260d98e9acbc74dfabf>  <image012.jpg><https://urldefense.proofpoint.com/v1/url?u=http://www.linkedin.com/company/118121&k=3u%2Bv4if5sXM88k6CMzVeWQ%3D%3D%0A&r=oJFk2qqaYl6mw82BGcUnipk6wHOY3PDYe8yQBBbgblo%3D%0A&m=JeDPrZHwkAzLu7msFUicZkGD%2F48POKMbY1iawsuaf4w%3D%0A&s=d7e315a5dc38bffe4199fd0ad5ca939a4ffdfa99510d1e9613b8ca59bc2163be>  M A P P C O N S T R U C T I O N . C O M

From: Frankie Wynn [mailto:fwynn@he-equipment.com]<mailto:[mailto:fwynn@he-equipment.com]>
Sent: Tuesday, June 11, 2013 3:42 PM
To: Dorsey, Stephan; Brad Reese; Ryan, Thomas E
Cc: Brandon McWilliams
Subject: FW: Detail of Work Completed -
Importance: High

Have I received all billings through 5/31?

Frankie Wynn
Director of Facilities/Risk/Compliance Management H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA 70809 (New Address)
Office: 225-298-5229
Mobile: 225-603-4438
Fax: 225-298-5376
fwynn@he-equipment.com<mailto:fwynn@he-equipment.com>
www.HE-Equipment.com<http://www.he-equipment.com/>

8

NON-CERTIFIED COPY

&lt;image014.jpg&gt;

From: Brandon McWilliams
Sent: Friday, June 07, 2013 1:06 PM
To: Frankie Wynn
Cc: Toni R. Ruemker
Subject: RE: Detail of Work Completed - URS Pay App 20
Importance: High

Good afternoon Frankie - can you please provide an updated amount for anticipated costs through May 31st for Corporate and Kenner when they're available?

Thanks,

Brandon McWilliams
Senior Accountant - Corporate
7500 Pecue Lane
Baton Rouge, LA  70809
Direct:  225.298.5249
Fax:  225.298.5329
Email:  bmcwilliams@he-equipment.com<mailto:bmcwilliams@he-equipment.com>
Website:  http://www.he-equipment.com<http://www.he-equipment.com/>
&lt;image015.jpg&gt;


This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and any attachments or copies.

NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P.1                                                                   Jun 11 2015 05:10pm
EBR CLERK OF COURT     Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915046364000 | Normal | 11:05:09pm | 0'36" | 1 | O K | |



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626308  Division D                     Date:    11-JUN-2015
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LAURA E CARLISLE
      BAKER DONELSON BEARMAN
      201 ST CHARLES ST STE 3600
      NEW ORLEANS LA 70170

Item(s) Received: REPLY BRIEF

Total Amount Due (includes all applicable fees below) $ 170.00

The Clerk of Court's office has received, by facsimile transmission dated 6-11-15, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT**
**UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.**
**SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.**
**IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

S249 - LTR/ FAX RECT


NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D                          Date:    11-JUN-2015
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

**To:    LAURA E CARLISLE**
**BAKER DONELSON BEARMAN**
**201 ST CHARLES ST STE 3600**
**NEW ORLEANS LA 70170**

Item(s) Received: **REPLY BRIEF**

Total Amount Due (includes all applicable fees below) $ **170.00**

The Clerk of Court's office has received, by facsimile transmission dated **6-11-15**, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT





# BAKER DONELSON
BEARMAN, CALDWELL
& BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:   504.566.5200
FAX:   504.636.4000

www.bakerdonelson.com

# FAX COVER SHEET

| FROM | Shelley Tannehill |
|------|-------------------|
| EMAIL | stannehill@bakerdonelson.com |
| BILL CODE | |
| TO | |
| COMPANY | |
| FAX NUMBER | 12253893392 |
| DATE | 11/06/2015 14:59:45 CST |
| RE | H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al |

## COVER MESSAGE

**Shelley Tannehill**
**Legal Secretary to Danielle Trostorff, Shareholder,**
**Margaret Silverstein and Laura Carlisle**

**Baker, Donelson, Bearman,**
  **Caldwell & Berkowitz, PC**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, Louisiana 70170**
**Telephone: 504.566.8658**
**stannehill@bakerdonelson.com<mailto:stannehill@bakerdonelson.com>**
**www.bakerdonelson.com<http://www.bakerdonelson.com/>**

**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. with offices in Alabama, Florida, Georgia, Louisiana, Mississippi, Tennessee, Texas and Washington, D.C.**

**[Description: Description: cid:747443820@21092011-2865]<http://www.bakerdonelson.com/>**

**Baker Donelson - One of FORTUNE Magazine's "100 Best Companies to Work For(r)" for Six Years in a Row!**
 **P Please consider the environment before printing this e-mail.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

*Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above   If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited.  If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.*

*Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.*

NON-CERTIFIED COPY

Under requirements imposed by the IRS, we inform you that,
if any advice concerning one or more U.S. federal tax issues is contained
in this communication (including in any attachments and, if this communication is by email,
then in any part of the same series of emails), such advice was not intended
or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used,
and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or
(2) promoting, marketing or recommending to another party any transaction or tax-related matter
addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at
law.
It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this
electronic mail transmission in error, please delete it from your system without copying it, and notify the
sender by reply e-mail, so that our address record can be corrected.
************************************************************

Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named
above.  If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this
facsimile or the information contained in it is strictly prohibited.  If you have received this facsimile in error, please immediately notify the person
named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.

Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to
avoid the imposition of federal tax penalties.

NON-CERTIFIED COPY

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

NON-CERTIFIED COPY

# BAKER DONELSON
BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:   504.566.5200
FAX:       504.636.4000

www.bakerdonelson.com

LAURA E. CARLISLE
Direct Dial: (504) 566-8643
Direct Fax: (504) 585-6943
E-Mail Address: lcarlisle@bakerdonelson.com

June 11, 2015

**VIA FACSIMILE (225) 389-3392**

Hon. J. Douglas Welborn
Clerk of Court, 19th JDC
Parish of East Baton Rouge
300 North Boulevard
P.O. Box 1991
Baton Rouge, Louisiana 70821

Re:   *H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al.*
      *19th JDC No. 626308, Division "D", Section XX1*

Dear Mr. Welborn:

Attached please find a Reply Brief in Support of Motion to Compel which we ask that you file with the Court on behalf of Plaintiff, H&E Equipment Services, Inc.  Once we have received your fax confirmation, we will forward the original to you along with our check for the filing and fax fees associated with this request.

Thank you for your assistance in this matter, and if you have any questions, please do not hesitate to contact us.

With kindest regards, I remain

Sincerely,

Laura E. Carlisle

LEC/sdt
Attachment
cc:   Philip A. Franco, Esq. w/encl. via facsimile  (504) 566-0210
      Kellen Matthews, Esq. w/encl. via facsimile (225) 336-5220

NO LEC 867712 v1
2919213-000024

ALABAMA     FLORIDA     GEORGIA     LOUISIANA     MISSISSIPPI     TENNESSEE     TEXAS     WASHINGTON, D.C.

NON-CERTIFIED COPY

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:    504.566.5200
FAX:        504.636.4000

www.bakerdonelson.com

LAURA E. CARLISLE
Direct Dial: (504) 566-8643
Direct Fax: (504) 585-6943
E-Mail Address: lcarlisle@bakerdonelson.com

June 9, 2015



Hon. J. Douglas Welborn
Clerk of Court, 19th JDC
Parish of East Baton Rouge
300 North Boulevard
P.O. Box 1991
Baton Rouge, Louisiana 70821

Re:    *H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al.*
       19th JDC No. 626308, Division "D", Section XX1

Dear Mr. Welborn:

Please find enclosed an original and two copies of the Opposition to Defendants' Motion to Compel Discovery Responses, which was fax-filed on June 5, 2015. Please file the original into the record and return a conformed copy to me in the self-addressed, postage paid envelope provided. I also enclose our firm's check in the amount of $162.00 to cover the cost associated with this filing.

With kindest regards, I remain

Sincerely,

/s/ Laura E. Carlisle

Laura E. Carlisle

LEC/sdt
Encl.
cc:    Philip A. Franco, Esq. w/encl.
       Kellen Matthews, Esq. w/encl.

REC'D C.P.

JUN 11 2015

NO LEC 866987 v1
2919213-000024

ALABAMA    FLORIDA    GEORGIA    LOUISIANA    MISSISSIPPI    TENNESSEE    TEXAS    WASHINGTON, D.C.

NON-CERTIFIED COPY

**H&E EQUIPMENT SERVICES**    *    **SUIT NO. 626,308**    **DIV.: D**

**VERSUS**    *

   *    **19TH JUDICIAL DISTRICT COURT**

**URS CORPORATION**    **PARISH OF EAST BATON ROUGE**
**ARCHITECTURE, P.C., URS**    *
**CORPORATION, L. O'NEAL**    *    **STATE OF LOUISIANA**
**JOHNSON AND THOMAS E. RYAN,**
**III**

POSTED JUN 11 2015

COST OK's
JUN 11 2015
DEPUTY CLERK OF COURT

---

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, URS Corporation Architecture, P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "Defendants") respectfully submit this reply memorandum in support of the Defendants' Motion for Summary Judgment.

### ARGUMENT

In essence, H&E's arguments are directly contrary to the clear terms of the contract signed by these sophisticated parties in a commercial transaction and amount to nothing more than an illegal attempt by H&E to ignore the clear provisions of the 2009 agreement.  Importantly, H&E's arguments are directly contrary to applicable Louisiana law and do not prohibit the grant of Summary Judgment in this matter as prayed for.

H&E's statements in its opposition that the 2009 agreement "is not the only agreement", that there is "no question the 2006 agreement would continue to govern", that "nothing in the 2009 agreement makes it apply retroactively" and that the 2009 agreement "has no application to work performed prior to that date" all directly contradict the clear language in the 2009 agreement  to the contrary. Paragraph 18 of the 2009 agreement clearly states that it is the "entire agreement" between the parties and supersedes "all prior written … contracts … including any Work Authorizations".


EBR2979691

NON-CERTIFIED COPY

Aside from the direct contradiction, if H&E's argument that the 2009 agreement was only to apply to the future was correct, then paragraph 18 of the 2009 contract, which specified that it was the entire agreement and superseded all prior agreements, would not have been part of the 2009 contract signed by the parties. "Signatures to obligations are not mere ornaments." *Tweedel v. Branseaux*, 433 So.2d 133, 137 (La. 1983). "A person who signs a written contract is presumed to know its contents." *Griffin v. Lago Espanol, L.L.C.*, 808 So.2d 833 at 840 (La. App. 1st Cir. 2002).

Our Louisiana Supreme Court has made it clear that: "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself." *Clovelly Oil Co., LLC v. Midstates Petroleum Co.*, 112 So.3d 187 (La. 2013). Moreover, a contract provision must be interpreted with a meaning that renders the provision effective, and not one that renders it ineffective. *Id.* Contract provisions must be interpreted "so as to avoid neutralizing or ignoring any of them or treating them as surplusage." *Id.* at 195.

It is therefore contrary to Louisiana law to ignore paragraph 18 of the 2009 contract. H&E takes the same misguided position of ignoring the clear provisions of the 2009 agreement by arguing that the exclusion of consequential damages does not include the increased costs of construction, when paragraph 8 of the contract specifically states to the contrary that damages which are excluded include "increased cost of construction". For H&E to succeed in its opposition, this Honorable Court would have to read out or ignore the specific provisions of the 2009 contract which, quite frankly, H&E avoids explaining. Conspicuously absent from Plaintiff's Opposition is any statement from the person who signed the 2009 contract on behalf of H&E suggesting that the 2009 agreement did not supersede all prior contracts and work authorizations as it clearly states.

2

NON-CERTIFIED COPY

Plaintiff admits that summary judgment is appropriate when the words of a contract are clear.  In fact, H&E acknowledges in its response to the Statement of Undisputed Material Facts that the 2009 Agreement is the "best evidence of its contents and its terms."  The parties could have agreed in the contract that the 2009 contract would apply only to future work, but they did not.  To the contrary, they agreed in the 2009 contract that it "supersedes" all "prior" contracts and work orders.  Prior means prior and not future.  Louisiana law does not authorize perversion of language or the creation of ambiguity where none exists, and does not authorize courts to make a new contract when the words of the contract are clear.[1]   *Kennedy v. Sanco Louisiana, Inc.*, 573 So.2d 505 (La. App. 4th Cir. 1990, writ denied, 578 So.2d 138 (La. 1991).  "The fact that one party can, in hindsight, create a dispute about the meaning of the words does not render the provision ambiguous.  The Court must give effect to the ordinary meaning of the words and may not create an ambiguity where none exists.  *Rutgers v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992)  Interpretation of the words of the contract are for the court as a matter of law. Importantly, H&E also ignores that, at a minimum, the limitations in the 2009 Agreement at issue, even under its own argument that it applies to future jobs, would apply to the Kenner and Belle Chasse jobs at issue in this suit, and is appropriate for Summary Judgment.

The case law cited by Plaintiff in its Opposition is not applicable to prohibit Summary Judgment.  To the contrary, Louisiana case law clearly supports the grant of Summary judgment in this matter.  In *Datamatic Inc. v. International Business Machines Corporation*, 795 F.2d 458 (5th Cir. 1986), Judge Alvin Rubin, in construing Louisiana

---

[1] H&E improperly attempts to submit parol evidence of URS correspondence and URS invoices outside of the 2009 Agreement to try to contradict the clear terms of the 2009 Agreement.  Defendants object to such evidence as improper parol evidence to contradict the clear terms of the 2009 Agreement, as well as another attempt to ignore paragraph 18.1 of the 2009 Agreement in which the parties agreed the 2009 Agreement was the "entire agreement between the Parties."  See *Gaubert v. Toyota Motor Sales U.S.A., Inc.*, 770 So.2d 879 (La. App. 1st Cir. 2000) (when a contract can be construed from the four corners, the question of contractual interpretation is answered as a matter of law and, thus, summary judgment is appropriate).  Moreover, for the Court's benefit, the 2011 invoices offered by H&E were generated from a separate accounting office and merely incorporated information that had been input into the accounting system at the time that project was initially set up in the accounting system prior to the 2009 Agreement.  That information was not updated in the accounting system at the time the invoice in 2011 was generated.

NON-CERTIFIED COPY

law, upheld an exclusion of warranty and consequential damages noting that the contract at issue was between commercially sophisticated parties who are "held to a higher standard than an unknowledgeable consumer." *Id.* at 464.  On behalf of the Fifth Circuit, Judge Rubin also noted that in such cases, Louisiana courts are more willing to find that "the buyer's signature is evidence that its terms and conditions were brought to his attention." *Id.* at 464, citing *Louisiana National Leasing Corporation v. ADF Serv. Inc.,* 377 So.2d 92 (La. 1979); *Anderson v. Bohn Ford Inc.,* 291 So.2d 786 (La. App. 1973), writ denied, 294 So.2d 829 (La. 1974). Finally, Judge Rubin, on behalf of the Fifth Circuit, held that:

> In *California Union Insurance Co. v. Bechtel Corp.*, a Louisiana court upheld a warranty limitation provision included in a contract for the sale of an electric transformer between Bechtel and Westinghouse corporations…. The court stated:
>
>> The contract under consideration was a commercial undertaking between two highly sophisticated parties. While courts are reluctant to enforce warranty limitations on consumers they recognize that parties such as Bechtel ... and Westinghouse are free to bargain as they see fit and are bound by their contracts.

*Id.* at 465.

In *Louisiana National Leasing, supra,* the Louisiana Supreme Court held that persons engaged in business must be presumed to be aware of the contents of the agreement which they signed.  Moreover, the Louisiana Supreme Court found that the phrase in block letters on the face of the lease combined with the signatures of the representatives "is sufficient evidence to find the waiver was brought to the [party's] attention" and, therefore, there was no substance to the party's contention the waiver was ineffective." *Id.* at 96.

In *Anderson v. Bohn Ford, supra*, the court, in enforcing a waiver of warranty, held that the rights of a dealer and the manufacturer "are fixed by the contractual agreement between them." *Id.* at 790. The court went on to find that:

4

NON-CERTIFIED COPY

> The fact that the dealer signed the document and acknowledged by his signature that he accepts the conditions contained in the agreement are sufficient to meet the test the waiver was brought to the dealer's attention. To conclude otherwise would destroy the stability of contracts.

*Id.* at 791.

In *Capital City Leasing Corporation v. Hill*, 394 So.2d 1284 (La. App. 1st Cir. 1981), the First Circuit followed *Louisiana National leasing Corporation, supra*, in upholding the waiver of warranty between parties in a business transaction that was printed on the back page of the contract.

In *FMC Corp. v. Continental Grain Co.*, 355 So.2d 953 (La. App. 5th Cir. 1977), the court, noting the distinction in rules applying to waiver of warranties between consumer and dealer and as between dealer and manufacturer, held that:

> [T]he liability of FMC is controlled by the contractual limitation... relieving any liability for any other expense, loss or damage, either direct or consequential....

*Id.* at 959.

The cases cited by H&E in its Opposition are not applicable and are clearly distinguishable in view of the above referenced Louisiana law. *Prince v. Paretti Pontiac Co.*, 281 So.2d 112 (La. 1973) and *Fontenot v. F. Hollier & Sons*, 478 So.2d 1379 (La. App. 3rd Cir. 1985) were both cases involving waivers by consumers and not sophisticated parties in a business transaction. In *Harvey v. Mosaic Fertilizer, LLC*, 2009 Westlaw 311-2144 (W.D. La. 2009), there was no signed contract between the parties, unlike the matter currently before this Honorable Court. Additionally, there are no facts properly submitted by H&E in opposition to Defendants' well-supported Motion for Summary Judgment by H&E of any intentional or gross fault which would prohibit the exclusion or limitation of liability.

The cases cited by H&E involving stipulated damages are not waiver cases. The waiver cases cited by Defendants allow sophisticated parties to waive or limit liability. There is no stipulation of an amount of damages in the 2009 agreement at issue. Only a

5

NON-CERTIFIED COPY

limitation of liability and a limitation of the amount of damages are set forth in the applicable provisions of the 2009 agreement. Finally, the case of *Calandro Development Inc. v. R. M. Butler Contractors, Inc.*, 249 So.2d 254 (La. App. 1971) does not address waiver or limitation by contract between sophisticated parties.

Finally, H&E's argument that suggests that the $250,000 limitation clause is somehow in conflict with the waiver/limitation clause is likewise misplaced. To the contrary, the $250,000 or 10% of the compensation paid is a limitation which applies to the cost of any redesign or re-performance by URS that would be necessary for any deficient or defective performance of services. It is the "total cumulative aggregate liability" of URS. Moreover, that same clause, paragraph 9.1 of the 2009 agreement, is consistent and reiterates that: "The remedies stated in the Agreement are [H&E's] sole and exclusive remedies for any failure by [URS] to comply with obligations to [H&E], and [H&E] hereby irrevocably waives any right to assert a claim against [URS] based on a legal theory that a remedy provided herein fails of its essential purpose."

Plaintiff's statement in its Opposition that it gave notice of the problems with the concrete without a response from URS is somewhat misleading. First of all, Defendants never considered the design work defective in order to trigger any redesign by URS. Moreover, Plaintiff did not request a redesign, but demanded that URS repair any problem, which was beyond the responsibility of Defendants pursuant to the 2009 contract.

<u>CONCLUSION</u>

Summary Judgment is clearly warranted enforcing the 2009 contract between these sophisticated public companies. This is not a contract with a consumer. Clearly applicable Louisiana law enforces the exclusions/limitations which were clearly set forth in bold in the contract signed by representatives of the parties. Plaintiff is not allowed to ignore or write out the clear provisions which provide that the 2009 agreement is the entire agreement between the parties and supersedes all prior

6

NON-CERTIFIED COPY

contracts and work authorizations.  Failure to enforce the 2009 contract as written would destroy the stability of contracts under Louisiana law.

<div align="right">

Respectfully submitted,

ADAMS AND REESE, LLP

By:_____
Philip A. Franco (Bar #5819), TA
Ronald J. Sholes (Bar # 14436)
Kellen J. Mathews (Bar #31860)
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:   (504) 581-3234
Fax:           (504) 566-0210
*Attorneys for Defendants, URS*
*Corporation Architecture, P.C.;*
*URS Corporation; L. O'Neal*
*Johnson and Thomas E. Ryan, III*

</div>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading was served upon all counsel of record via e-mail and/or United States Mail, postage prepaid and properly addressed, this ____11th____ day of June, 2015.

_____
Kellen J. Mathews



NON-CERTIFIED COPY

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES, INC. | * | CASE NO. C626308, SECTION D |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON, AND THOMAS E. RYAN, III | * | PARISH OF EAST BATON ROUGE |
| | * | STATE OF LOUISIANA |

FILED:_____        _____

                                             **DEPUTY CLERK**

<u>**AFFIDAVIT OF FRANKIE WYNN**</u>

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

NOW COMES, Frankie Wynn, who under penalty of perjury and from his own personal knowledge, states:

1.    I am over the 18 years of age and competent to give testimony in this matter. I have personal knowledge of all facts and circumstances in this Affidavit.

2.    I submit this Affidavit in support of the Opposition to Defendants' Motion for Summary Judgment filed by H&E Equipment Services, Inc. ("H&E").

3.    I am currently the Director of Facilities/Risk/Compliance Management for H&E and am based out of H&E's Corporate Headquarters located at 7500 Pecue Lane, Baton Rouge, Louisiana. I have held this position since May 2010, prior to which I served as H&E's Risk/Asset Manager.

4.    As H&E's Director of Facilities, I was responsible for overseeing the construction phase of the Baton Rouge, Kenner, and Belle Chase, Louisiana projects at issue in this litigation.

5.    I officially began overseeing the Baton Rouge, Kenner, and Belle Chase construction projects in 2010. In addition, I maintain H&E's files regarding the projects and have reviewed the documents relevant to this dispute.

6.    During my involvement with the projects, I regularly communicated with L. O'Neal Johnson, Thomas E. Ryan, III, and other representatives and employees of URS Corporation Architecture, P.C. and URS Corporation (collectively, referred to as "URS"), as well as the various general contractors and subcontractors for the three projects.

7.    I am aware of two master services agreements that pertain to the Baton Rouge, Kenner, and Belle Chasse projects: the Agreement for Professional Services entered into and executed by the parties on or about August 28, 2006 (the "2006 Agreement"), and the Short



-1-

NON-CERTIFIED COPY

NO LEC 866095 v3
2919213-000024



**EXHIBIT**

"1"

Form Master Agreement for Professional Services between the parties dated August 13, 2009 (the "2009 Agreement").

8.   A true and correct copy of the 2006 Agreement is attached to H&E's Opposition to Motion for Summary Judgment as Exhibit "3."

9.   A true and correct copy of the 2009 Agreement is attached to H&E's Opposition to Motion for Summary Judgment as part of Exhibit "2."

10.   There have been multiple problems associated with the work performed by URS on all three projects at issue.  Among other things, during and/or around the time of substantial completion of the Baton Rouge and Kenner projects, H&E and the project contractors began to observe crumbling and spalling in the concrete constructed to URS's specifications at the facilities.

11.   H&E notified URS of the observed problems with the concrete at the Baton Rouge and Kenner sites when those problems surfaced, in hopes – and with the expectation – that the parties would work together to find a solution and remedy.  But, while URS initially appeared willing to troubleshoot the problems, they ultimately refused to participate in ongoing discussions and efforts to fix the concrete pads.  URS also refused to share with H&E or the project contractors information regarding its own apparent efforts to troubleshoot the problem and what it and its engineering consultant concluded about the problem.

12.   URS did not attempt or offer to re-perform its design services or provide new specifications for the concrete pads at the Baton Rouge and Kenner facilities.

13.   The concrete problems at the Baton Rouge and Kenner facilities began in or around late 2012 and early 2013 – near the time of substantial completion – and continue to worsen to this day.

Dated:       June  5  , 2015

_____
FRANKIE WYNN

SWORN TO AND SUBSCRIBED
BEFORE ME ON THIS THE
5 th DAY OF JUNE, 2015.

_____
NOTARY PUBLIC

James D. Seymour, Notary Public
LA Bar Roll No.: 29418
Commissioned for East Baton Rouge, Louisiana
Qualified to act Statewide
My Commission is for Life.

-2-

NO LEC 866095 v3
2919213-000024

NON-CERTIFIED COPY

**URS**

## SHORT FORM MASTER AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### H&E Equipment Services, Inc.
### AND
### URS Corporation Architecture PC

**THIS AGREEMENT** ("Agreement") for Professional Services, (together with the attachments hereto) dated and effective as of August 13, 2009 (the "Effective Date"), is hereby made and entered into by and between H&E Equipment Services, Inc., a Delaware corporation, (hereinafter "Client") having a place of business located at 11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816 and URS Corporation Architecture PC, a North Carolina corporation (hereinafter "Consultant") having a place of business located at 7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806 Consultant and Client are each individually referred to as a "Party" and collectively as the "Parties".

The Parties agree as follows:

1. **WORK AUTHORIZATIONS**

1.1    Consultant agrees to undertake and perform certain consulting and professional engineering services ("Services") in accordance with the terms and conditions contained herein, as may be requested by Client from time to time. The Services to be performed, Consultant's compensation, and the schedule for performance for each task shall be described in one or more authorizations issued to Consultant by Client, the form of which is attached hereto as Attachment 1 ("Work Authorization"). A Work Authorization shall be valid and binding upon the Parties only if accepted in writing by Client and Consultant. Each duly executed Work Authorization shall be subject to the terms and conditions of this Agreement, except to the extent expressly modified by the Work Authorization.

1.2    It is the expressed intent of the parties that this Agreement shall be made available to subsidiaries and affiliated companies of Consultant. For the purposes of this Agreement, as it applies to each Work Authorization, the term "Consultant" shall mean either Consultant as defined above or the subsidiary or affiliate of Consultant identified in the Work Authorization. The applicable Work Authorization shall clearly identify the legal name of the entity accepting the Work Authorization.

2. **PAYMENTS FOR SERVICES**

2.1    Unless otherwise stated in a Work Authorization, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not received within thirty (30) days from the due date of such payment, Consultant may suspend further performance under one or more Work Authorizations until payments are current. Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount. Client shall pay an additional charge of one percent (1%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount. In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

2.2    Client shall reimburse Consultant for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of Consultant's Services. For the purpose of this Article such taxes shall not include taxes imposed on Consultant's net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid Consultant under the applicable Work Authorization.

2.3    Where charges are "not to exceed" a specified sum, Consultant shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum. If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded. Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established, or other circumstances beyond URS control, shall be a basis for equitable adjustments in the budget and schedule.

3. **CONFIDENTIALITY**

3.1    For a period commencing with the disclosure of any confidential information under this Agreement and/or a Work Authorization(s) and ending on the second anniversary such disclosure was first made, Consultant and Client each agree not to disclose to third parties, including also subcontractors and vendors (unless such subcontractors and vendors have a need to know and are bound to similar obligations of confidentiality), any information that is identified as confidential in writing on the materials made available to the other Party hereunder

4. **WARRANTY**

4.1    Consultant warrants that any consulting and professional engineering Services performed by it under a Work Authorization shall be performed in accordance with that degree of care and skill ordinarily exercised by members of Consultant's profession practicing at the same time in the same location. Consultant's sole liability to Client for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by Client to Consultant. Consultant's obligation for re-performance of non-conforming Services as set

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

URS-01726

**EXHIBIT**

"2"

NON-CERTIFIED COPY

# URS

forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.

4.2    THE WARRANTY SET FORTH IN THIS ARTICLE 4 IS EXCLUSIVE, AND IN LIEU OF ANY AND ALL OTHER WARRANTIES RELATING TO THE SERVICES, WHETHER STATUTORY, EXPRESS OR IMPLIED, AND CONSULTANT DISCLAIMS ANY SUCH OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE AND ANY AND ALL WARRANTIES ARISING FROM COURSE OF DEALING AND/OR USAGE OF TRADE. ANY OTHER STATEMENTS OF FACT OR DESCRIPTIONS EXPRESSED IN THE AGREEMENT OR ANY WORK AUTHORIZATION SHALL NOT BE DEEMED TO CONSTITUTE A WARRANTY OF THE SERVICES OR ANY PART THEREOF. CONSULTANT'S REPERFORMANCE OF DEFECTIVE OR NON-CONFORMING SERVICES THROUGH THE ONE YEAR PERIOD PROVIDED FOR IN THIS ARTICLE 4 SHALL CONSTITUTE COMPLETE FULFILLMENT OF, AND CLIENT'S EXCLUSIVE REMEDY FOR, ALL THE LIABILITIES OR RESPONSIBILITIES OF CONSULTANT TO CLIENT FOR NON-CONFORMING OR DEFECTIVE SERVICES, WHETHER THE CLAIMS OF CLIENT ARE BASED ON DELAY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, WARRANTY, INDEMNITY, ERROR AND OMISSION OR ANY OTHER CAUSE WHATSOEVER.

5.    WORK BY OTHERS

5.1    The performance by Consultant of Services under a Work Authorization shall not constitute an assumption by Consultant of the obligations of Client or its other contractors. Consultant shall not control or have charge of, and shall not be responsible for, construction means, methods, techniques, sequences, procedures of construction, health or safety programs, or precautions connected with the work of Client or its other contractors, and shall not manage, supervise, control or have charge of construction. Client shall require Consultant to be named as an additional insured along with Client on any liability insurance policies provided by Client's construction contractors. To the fullest extent permitted by law, Client shall defend Consultant against any claim, suit or proceeding asserted by one of its other contractors and indemnify, defend and save Consultant harmless from any and all actual or alleged claims and losses (including, without limitation, attorney's fees) sustained by such contractor in connection with the Services, regardless or whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

6.    INSURANCE

6.1    In the event Consultant performs Services under any Work Authorization in connection with a project for which Client or another party with which Client has contracted obtains all-risk or builder's risk property insurance, Client, as the case may be, shall name, or shall cause such other party to name, Consultant as an additional insured on such all risk or builder's risk property insurance. Client acknowledges that Consultant has an insurable interest in such all risk or builder's risk property insurance.

6.2    Consultant and Client each waive all rights of recovery and subrogation against each other with respect to a loss occurring to property of the other, to the extent that such waivers do not invalidate the property insurance of either.

7.    INDEMNITY

7.1    Each Party shall indemnify, defend and save the other Party, its officers, directors, employees and affiliates harmless from any loss, cost or expense claimed by third parties, excluding employees of either Party, for property damage and/or bodily injury, including death, to the proportionate extent such loss, cost or expense arises from the negligence or willful misconduct of the indemnifying Party, its employees or affiliates in connection with the Services.

7.2    Notwithstanding any other provision contained elsewhere in this Agreement to the contrary and to the fullest extent permitted by law, Client shall be liable for and indemnify, defend and save Consultant, its officers, directors, employees and affiliates harmless from and against any and all actual or alleged claims, damages (including incidental, consequential, indirect and special damages), losses, and expenses (including, without limitation, all penalties, attorney's fees, fines and administrative or civil sanctions arising out of or related to such claim) (collectively "Losses") arising out of: (1) economic loss suffered by third parties; and/or (2) investment decisions of Client or third parties in reliance upon the results of the Services, regardless of whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

7.3    The indemnity and save harmless obligations of Consultant and Client under this Article 7 shall not apply with respect to any Hazardous Material, as Consultant's and Client's rights and obligations with respect thereto are set forth in Article 10.

8.    WAIVER OF CONSEQUENTIAL DAMAGES

8.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, neither Client nor Consultant shall be liable, whether based on contract, tort, negligence, strict liability, warranty, indemnity, error and omission or any other cause whatsoever, for any consequential, special, incidental, indirect, punitive or exemplary damages, or damages arising from or in connection with loss of power, loss of use, loss of revenue or profit (actual or anticipated), loss by reason of shutdown or non-operation, increased cost of construction, cost of capital, cost of replacement power or customer claims, and Consultant hereby releases Client and Client hereby releases Consultant from any such liability.

9.    LIMITATION OF LIABILITY

9.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, in no

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

2

URS-01727

NON-CERTIFIED COPY

# URS

event shall the total cumulative aggregate liability of Consultant, its subconsultants, and their respective partners, officers, directors, shareholders, employees, and agents (referred to collectively in this Article as "Consultant") to Client resulting from, arising out of or in connection with the performance or nonperformance of any or all Services or other obligations under a Work Authorization, exceed $250,000 or ten percent (10%) of the compensation paid Consultant pursuant to such Work Authorization, whichever is greater, or extend beyond the expiration of the warranty period under Article 4 for the Services performed under the Work Authorization, regardless of the legal theory under which such liability is imposed. The remedies stated in the Agreement are Client's sole and exclusive remedies for any failure by Consultant to comply with obligations to Client, and Client hereby irrevocably waives any right to assert a claim against Consultant based on a legal theory that a remedy provided herein fails of its essential purpose.

10.   **HAZARDOUS MATERIAL**

10.1    Nothing in this Agreement shall be construed or interpreted as requiring Consultant to assume the status of, and Client acknowledges that Consultant does not act in the capacity nor assume the status of, Client or others as a "generator," "operator," "transporter," or "arranger" in the treatment, storage, disposal, or transportation of any hazardous substance or waste as those terms are understood within the meaning of the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or any other similar federal, state, or local law, regulation, or ordinance. Client acknowledges further that Consultant has played no part in and assumes no responsibility for generation or creation of any hazardous waste, pollution condition, nuisance, or chemical or industrial disposal problem, if any, which may exist at any site that may be the subject matter of any Work Authorization.

10.2    It is acknowledged by both parties that the Services do not include services related to regulated substances, pollutants, or hazardous or toxic wastes ("Hazardous Material"). In the event Consultant or any other party encounters undisclosed Hazardous Materials, Consultant shall notify Client and, to the extent required by law or regulation, the appropriate governmental officials, and Consultant may, at its option and without liability for delay, consequential or any other damages to Client, suspend performance of Services on that portion of the project affected by Hazardous Material until Client: (i) retains appropriate specialist consultant(s) or contractor(s) to identify and, as appropriate, abate, remediate, or remove the Hazardous material; and (ii) warrants that the project site is in full compliance with all applicable laws and regulations. Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, Client shall indemnify, defend and save Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers, directors of any of the foregoing, if any, from and against any and all Losses which arise out of the performance of the Services and relating to the regulation and/or protection of the environment, including, without limitation, Losses incurred in connection with characterization, handling, transportation, storage, removal, remediation, disturbance or disposal of Hazardous Material, whether above or below ground and not brought to a Client site or other proposed project site by Consultant in the performance of the Services without Client's approval.

11.   **CHANGES**

11.1     The Parties may from time to time by mutual agreement seek to modify, extend or enlarge the Services under a Work Authorization ("Modification"). In the event the Parties agree to a Modification to add additional Services, or to make other modifications to the Services, Consultant's compensation, the schedule and any other relevant terms and conditions of the applicable Work Authorization shall be equitably adjusted prior to performance of such Services.

12.   **OWNERSHIP OF DOCUMENTS**

12.1    Consultant grants to Client a transferable, irrevocable and perpetual royalty-free license to retain and use all work products delivered to Client for any purpose in connection with the project specified in each Work Authorization, upon full payment by Client for Consultant's Services. Client also may use such work product for other purposes with Consultant's written consent. Re-use of any such work product by Client on any extension of the project or on any other project without the written authorization of Consultant shall be at Client's sole risk and Client shall indemnify, defend and save Consultant and its affiliates, consultants, agents, subcontractors and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such re-use. Consultant shall have the right to retain copies of all such work product. Consultant retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

13.   **TERMINATION/SUSPENSION**

13.1    Client may terminate all or any portion of the Services under one or more Work Authorizations for convenience, at its option, by sending a written notice to Consultant. Either party can terminate this Agreement or a Work Authorization for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a notice of termination, unless a later date is specified in the notice. The notice of termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay Consultant upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. Any suspension of Services by Client shall result in an equitable adjustment to Consultant's compensation, time for performance, or any of its other obligations under a Work Authorization.

14.   **FORCE MAJEURE**

14.1    Any delay or failure of Consultant in performing its required obligations hereunder shall be excused if and to the extent such delay or failure is caused by a Force Majeure Event. A "Force Majeure Event" means an event due to any cause or causes beyond the reasonable control of Consultant and shall include, but not be limited to, acts of God, strike, labor dispute fire, storm, flood, windstorm, unusually severe weather, sabotage, embargo,

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

3

URS-01728

NON-CERTIFIED COPY

# URS

terrorism, energy shortage, accidents or delay in transportation, accidents in the handling and rigging of heavy equipment, explosion, riot, war, court injunction or order, delays by acts or orders of any governmental body or changes in laws or government regulations or the interpretations or application thereof or the acts or omissions of the Client or its other contractors, vendors or suppliers. In the event of a Force Majeure Event, Consultant shall receive an equitable adjustment extending Consultant's time for performance for such Services sufficient to overcome the effects of any delay, and an increase(s) to Consultant's compensation sufficient to account for any increased cost in performance or loss or damage suffered by Consultant.

**15.     RESPONSIBILITIES OF CLIENT**

15.1     Without limiting any express or implied obligations of Client under applicable law, Client shall: (1) provide Consultant, in writing, all information relating to Client's requirements for the project; (2) correctly identify to Consultant the location of subsurface structures, such as pipes, tanks, cables, and utilities; (3) notify Consultant of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give Consultant prompt written notice of any suspected deficiency in the Services; (5) with reasonable promptness, provide required approvals and decisions; and (6) furnish or cause to be furnished to Consultant full, unrestricted and legal access to, and use of, the site and all necessary rights of way and easements, in order to perform the Services.  In the event Consultant is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and Consultant is not a party, Client shall pay Consultant for any time and expenses required in connection therewith, including reasonable attorney's fees.

15.2     Consultant may rely upon and use in the performance of any Services Information supplied to it by Client without independent verification and Consultant shall not be responsible for defects in its Services attributable to its reliance upon or use of such information.

**17.     TERM**

17.1     Unless otherwise specified, the term of this Agreement shall run from the Effective Date until Consultant has completed the Services and received all payments due under the Agreement.

**18.     GENERAL**

18.1     Client and Consultant each represent and warrant that this Agreement has been duly authorized, executed and delivered and constitutes its binding agreement enforceable against it.  This Agreement and any executed Work Authorizations supersede all prior written and/or oral contracts and agreements that may have been made or entered into between Client and Consultant regarding the subject matter hereof, including but not limited to any and all proposals, oral or written, and all communications between the Parties relating to this Agreement or any Work Authorization(s), and constitute the entire agreement between the Parties hereto with respect to the subject matter hereof.

18.2     This Agreement and Work Authorization(s) may not be assigned by Consultant or Client in any way, including by operation of law, unless otherwise mutually agreed to in writing, any such attempted non-authorized assignment shall be null and void and of no force or effect.

18.3     Any cost opinions or estimates provided by Consultant will be on a basis of experience and judgment, but since Consultant has no control over market conditions or bidding procedures, Consultant cannot and does not warrant that bids, ultimate construction cost, or project economics will not vary from such opinions or estimates.  Neither this Agreement nor any of the Services provided hereunder shall constitute or provide for, and Consultant shall not be considered to have rendered, any legal or financial opinion(s) regarding the feasibility of this project or any other or regarding any other matter.  Unless otherwise expressly included in a Work Authorization, Consultant shall under no circumstances provide as part of the Services a consent, opinion or similar document, or act as a qualified person or expert, in connection with any filing by Client with the United States Securities and Exchange Commission, or similar non-United States agency, authority or commission.

18.4     Notices shall be effective hereunder as follows only if in writing and addressed to the authorized representative designated in applicable Work Authorizations: (1) upon delivery, if delivered personally to the person; (2) upon transmission, if transmitted to the facsimile number of the person; and (3) upon posting, if by first class or overnight mail (postage prepaid).

18.5     All contract issues and matters of law will be adjudicated in accordance with the laws of the state where the project is located, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction; provided, however that if the project is located outside the United States, the laws of the State of California shall govern.  Venue for any litigation shall be any state court or United States District Court having jurisdiction over the parties and subject matter.

18.6     The terms and conditions of this Agreement shall prevail, notwithstanding any variance with any purchase order or other written instrument submitted by Client whether formally rejected by Consultant or not.  This Agreement may be modified only by amendment when signed by each Party.  In the event that any one or more of the provisions of this Agreement shall be found to be illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and such term or provision shall be deemed stricken to the extent and in the jurisdictions necessary for compliance with applicable law.

18.7     Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Client or Consultant.

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

4

URS-01729

NON-CERTIFIED COPY

# URS

18.8    The headings in this Agreement are for convenience only, and shall not affect the interpretation hereof. The terms "hereof", "herein," "hereto" and similar words refer to the entire Agreement and not to any particular Article, Section, Attachment, Exhibit or any other subdivision of this Agreement. References to "day" or "days" shall mean calendar days unless specified otherwise.

18.9    The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including, but not limited to, indemnities and any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

18.10    It is understood and agreed that any delay, waiver or omission by Consultant or Client to exercise any right or power arising from any breach or default by Client or Consultant in any of the terms, provisions or covenants of this Agreement or any Work Authorization shall not be construed to be a waiver by Consultant or Client of any subsequent breach or default of the same or other terms, provisions or covenants on the part of Consultant or Client.

19.    **ATTACHMENTS AND EXHIBITS**

The following attachments and exhibits, which are attached hereto, are part of this Agreement.

Attachment 1 – Work Authorization

Attachment 2 – Fee Proposal, Scope of Work, Schedule

Attachment 3 – URS 2009 Schedule of Fees and Charges

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, effective as of the day and year first above mentioned.

**H&E Equipment Services, Inc.**

By:    _____
        (Signature)

Name:    _Leonard St. Germald_
        (Printed)

Title:    _V.P. operations_

**URS Corporation Architecture PC**

By:    _Craig W. Gordon_
        (Signature)

Name:    _Craig W. Gordon_
        (Printed)

Title:    _VP/OM_

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

URS-01730

NON-CERTIFIED COPY



## ATTACHMENT 1

### TIME AND MATERIALS WORK AUTHORIZATION 09-100

In accordance with the Agreement for Consulting and Professional Services between **H&E Equipment Services, Inc.** ("Client"), and **URS Corporation Architecture PC ("Consultant"). a North Carolina corporation, dated 08.13.09,** this Work Authorization describes the Services, Schedule, and Payment Conditions for Consultant's Services on the Project known as:

> **Renovations and Additions to Kenner, LA Branch**
> **H&E Equipment Services, Inc.**

> **Client Authorized**
> **Representative:** Leonard St. Germain
> **Address:**        11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816

> **Telephone No.:** 225.298.5244

> **Consultant Authorized**
> **Representative:** Chad Herndon
> **Address:**        7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806
> **Telephone No.:** 225.922.5244

**SERVICES.** The Services shall be described in Attachment 2 to this Work Order.

**SCHEDULE.** The Estimated Schedule shall be set forth in Attachment 2 to this Work Authorization. Because of the uncertainties inherent in the Services, Schedules are estimated and are subject to revision unless otherwise specifically described herein.

**PAYMENT.** Payment of **$0.00** is due upon signature of this Work Authorization and will be applied against the final invoice for this Work Authorization. URS charges shall be on a "time and materials" basis and shall be in accordance with the Consultant's Schedule of Fees and Charges in effect at the time the Services are performed. Payment provisions and the Consultant's current Schedule of Fees and Charges are attached to this Work Authorization as Attachment 3.

**TERMS AND CONDITIONS.** The terms and conditions of the Agreement referenced above shall apply to this Work Authorization, except as expressly modified herein.

**ACCEPTANCE** of the terms of this Work Authorization is acknowledged by the following signatures of the Authorized Representatives.

| **CLIENT** | **CONSULTANT** |
|---|---|
| Signature | Signature |
| Leonard St. Germain | Craig W. Gardner / VP-OM |
| Typed Name/Title | Typed Name/Title |
| 8/31/09 | 9/05/09 |
| Date of Signature | Date of Signature |

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

URS-01426

NON-CERTIFIED COPY



**ATTACHMENT 2**

August 13, 2009

Leonard St. Germain
H&E Equipment Services
Baton Rouge, LA

Re:    Renovations and Additions to H&E Equipment – Kenner LA

Leonard:

**URS** is pleased to provide you with a proposal for professional services for assistance with determining a legitimate budget for the renovations and additions to your H&E Equipment facility located at **125 East Airline Drive** in **Kenner LA**.  A list of work items we discussed is attached **(Attachment 2)**

As we discussed the first order of business will be to determine the existing condition of the buildings and develop drawings and sketches of the renovations. From these documents, we can obtain accurate construction estimates for the work.  With this data a realistic presentation can be offered for consideration by management.

We propose to provide you these services for a total fee not to exceed amount of **$20,000.00** based on our "Standard Billing Rate Schedule" This schedule includes the cost of all project personnel associated with the project, documentation and all reimbursement costs incurred during the course of the performance of the outlined scope of work.

Thank you for considering **URS** for this opportunity. If you have any questions or require any additional information, please feel free to contact me at 225.231.6343 or cell 225.324.5848. Thank you for your consideration.

Sincerely,

URS Corporation

Neal Johnson
Principal Architect

Mike Richardson
Vice President

URS Corporation Architecture PC
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806

URS-01427

NON-CERTIFIED COPY

# URS

**ATTACHMENT 2**

Re: Renovations and Additions to H&E Equipment – Kenner LA
**2** | P a g e

## SCOPE OF WORK

Based on our recent site visit the focus of the project will include:

1. Developing drawings of the existing site and buildings.
2. Review of existing truck traffic circulation including company, employee and customer vehicle parking.  Additional paving with drainage consideration will be included.
3. Evaluate the condition of all exterior roofs and walls of all buildings on the property.
4. Evaluate condition and operational status of the existing Office / Sales area with a focus on renovating the restrooms and upgrading the finishes in all other areas.  Review of the HVAC and Electrical systems to be included.
5. Evaluate circulation and storage utilization of the Parts Area.
6. Evaluate covered area west of Parts Building (existing Equipment Wash Area)
7. Develop sketches and drawings for a:
    a. New entrance for Office / Sales building.
    b. New office / tool storage and break room area to the front (east) end of the Shop Building.
    c. Demolish existing office/tool storage and break room to be used as transition area.
    d. Add a new overhead door on south side of building in this immediate area.
    e. New enclosed service bay with overhead doors to the rear (west) end of the Shop Building.
    f. New open frame bay to the rear (west) end of the Shop Building.
    g. New 40' x 70' Equipment Wash Building to be located at the rear (west) end of the site.
8. Assist in obtaining realistic budget pricing from three (3) local qualified general contractors.

## SCHEDULE

We anticipate the effort will require 3 calendar weeks to complete.

URS-01428

NON-CERTIFIED COPY

# URS CORPORATION
## SCHEDULE OF FEES AND CHARGES
### Engineering/Environmental & Consulting Services

The following describes the basis for compensation for services performed during the fiscal year 2009. This Schedule of Fees and Charges will be adjusted annually on January 1 of each subsequent year to reflect merit and economic salary increases, and changes in the expected level and mode of operations for the new year. The new Schedule of Fees and Charges will apply to existing and new assignments.

## PERSONNEL CHARGES

The charge for all time required in the performance of the Scope of Services, including office, field and travel time, will be at the Unit Priced Hourly Rates set forth below for the labor classifications indicated.

| Labor Classification | Hourly Rate ($) |
|---|---|
| Clerk* | 48 |
| Technical Typist/Word Processor* | 55 |
| Editor/Drafter/Designer/Illustrator* | 75 |
| Lab/Field Supervisor* | 75 |
| Technician* | 63 |
| Senior Technician | 68 |
| Graduate Staff Professional | 70 |
| Staff Professional | 82 |
| Senior Staff Professional | 93 |
| Assistant Project Professional | 99 |
| Project Professional | 115 |
| Senior Project Professional | 130 |
| Consulting/Sr. Consulting Professional | 160 |
| Principal/Sr. Principal Professional | 180 |

Charges for contract personnel under URS supervision and using URS facilities will be made according to the hourly rate corresponding to their classification.

When staff are performing project fieldwork, a minimum daily charge of 4 hours will apply.

A maximum of eight (8) hours travel time per day will be charged for travel within the continental United States.

When URS staff appear as expert witnesses at court trials, arbitration hearings, mediation and depositions, their time will be charged at $250.00 per hour.

Overtime (hours worked in excess of eight (8) hours per day) by exempt personnel will be charged at the above straight time hourly rate. Overtime by non-exempt personnel (classifications identified with an asterisk "*") will be charged at 1.5 times the above hourly rate.

## OTHER PROJECT CHARGES

### Subcontracts and Equipment Rental
The cost of services subcontracted by URS to others and other costs incurred by URS will be charged at cost plus 10%.

### Communications
The cost of communications for office telephone, telex, facsimile, postage, and incidental copying costs will be charged at a flat rate of 3% of total gross labor charges.

### Vehicles and Mileage
Field vehicles (pick-ups, vans, trucks, etc.) used on project assignments will be charged at $65.00 per day. The mileage charge for personal autos will be the then current mileage rate established by the Internal Revenue Service.

### Specialized Equipment
The use of specialized URS equipment will be the fixed rental rates set forth in the Schedule of URS Specialized Equipment Charges.

*This fee schedule contains confidential business information and is not to be copied or distributed for any purpose other than the use intended in this contract or proposal.*

**URS**

URS-01769

I:\ADMIN\PROJECT ADMINISTRATION\URS RATE TABLE & W-9\09 FEE SCHEDULE.DOC

NON-CERTIFIED COPY

ORIGINAL PSA

# AGREEMENT FOR PROFESSIONAL SERVICES
## ("Agreement")

This Agreement between  **H&E Equipment Services, Inc. 11100 Mead Road, Suite 200, Baton Rouge, LA 70816 225 298-5244** , ("Client") and  **URS Corporation Architecture, NC, PC**  ("URS"), a  **North Carolina**  corporation;  **7389 Florida Blvd, Suite 300 Baton Rouge, LA 70806**("URS"), is effective as of **August 28, 2006** . The parties agree as follows:

It is the expressed intent of the parties that this Agreement shall be made available to the subsidiaries and affiliated companies of URS.  For the purposes of this Agreement, as it applies to each Work Order, the term "URS" shall mean either,  **URS Corporation Architecture, NC, PC** , or the affiliated company identified in the Work Order.  The applicable Work Order shall clearly identify the legal name of the affiliate or subsidiary accepting the Work Order.

**ARTICLE I - Work Orders.**  The Scope of Services ("Services"), the Time Schedule and the Charges are to be set forth in a written Work Order to this Agreement.  The terms and conditions of this Agreement shall apply to each Work Order, except to the extent expressly modified by the Work Order.  Where charges are "not to exceed" a specified sum, URS shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum.  If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded.  Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established or other circumstances beyond URS control shall be a basis for equitable adjustments in the budget and schedule.

**ARTICLE II - Payment.**  Unless otherwise stated in an Work Order, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not maintained on a thirty (30) day current basis, URS may suspend further performance until payments are current.  Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount. Client shall pay an additional charge of one and one-half percent (1½%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount.  In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

**ARTICLE III - Professional Responsibility.**  URS is obligated to comply with applicable standards of professional care in the performance of the Services.  Client recognizes that opinions relating to environmental, geologic, and geotechnical conditions are based on limited data and that actual conditions may vary from those encountered at the times and locations where the data are obtained, despite the use of due professional care.  URS is not responsible for designing or advising on or otherwise taking measures to prevent or mitigate the effect of any act of terrorism or any action that may be taken in controlling, preventing, suppressing or in any way relating to an act of terrorism.

**ARTICLE IV - Responsibility for Others.**  URS shall be responsible to Client for URS Services and the services of URS subcontractors.  URS shall not be responsible for the acts or omissions of other parties engaged by Client nor for their construction means, methods, techniques, sequences, or procedures, or their health and safety precautions and programs.

**ARTICLE V - Risk Allocation.**  The liability of URS, its employees, agents and subcontractors (referred to collectively in this Article as "URS"), for Client's claims of loss, injury, death, damage, or expense, including, without limitation, Client's claims of contribution and indemnification, express or implied, with respect to third party claims relating to services rendered or obligations imposed under this Agreement, including all Work Orders, shall not exceed in the aggregate:

URS-01765

EXHIBIT "3"

NON-CERTIFIED COPY

(1)      The total sum of $5,000,000 for claims arising out of professional negligence, including errors, omissions, or other professional acts, and including unintentional breach of contract; and any actual or potential environmental pollution or contamination, including, without limitation, any actual or threatened release of toxic, irritant, pollutant, or waste gases, liquids, or solid materials, or failure to detect or properly evaluate the presence of such substances, except to the extent such release, threatened release, or failure to detect or evaluate is caused by the willful misconduct of URS; or

(2)      The total sum of $2,000,000 for claims arising out of negligence, breach of contract, or other causes for which URS has any legal liability, other than as limited by (1) above.

**ARTICLE VI - Insurance.**  URS agrees to maintain during the performance of the Services: (1) statutory Workers' Compensation coverage; (2) Employer's Liability; (3) General Liability; and (4) Automobile Liability insurance coverage each in the sum of $5,000,000.

**ARTICLE VII - Consequential Damages.**  Neither Party shall be liable to the other for consequential damages, including, without limitation, loss of use or loss of profits, incurred by one another or their subsidiaries or successors, regardless of whether such damages are caused by breach of contract, willful misconduct, negligent act or omission, or other wrongful act of either of them.

**ARTICLE VIII - Client Responsibility.**  Client shall: (1) provide URS, in writing, all information relating to Client's requirements for the project; (2) correctly identify to URS, the location of subsurface structures, such as pipes, tanks, cables and utilities; (3) notify URS of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give URS prompt written notice of any suspected deficiency in the Services; and (5) with reasonable promptness, provide required approvals and decisions. In the event that URS is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and URS is not a party, Client shall pay URS for any time and expenses required in connection therewith, including reasonable attorney's fees.

Client shall reimburse URS for all taxes, duties and levies such as Sales, Use, Value Added Taxes; Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of URS Services. For the purpose of this Article such taxes shall not include taxes imposed on URS net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid URS under the respective Work Order.

**ARTICLE IX - Force Majeure.**  An event of "Force Majeure" occurs when an event beyond the control of the Party claiming Force Majeure prevents such Party from fulfilling its obligations. An event of Force Majeure includes, without limitation, acts of God (including floods, hurricanes and other adverse weather), war, riot, civil disorder, acts of terrorism, disease, epidemic, strikes and labor disputes, actions or inactions of government or other authorities, law enforcement actions, curfews, closure of transportation systems or other unusual travel difficulties, or inability to provide a safe working environment for employees.

In the event of Force Majeure, the obligations of URS to perform the Services shall be suspended for the duration of the event of Force Majeure. In such event, URS shall be equitably compensated for time expended and expenses incurred during the event of Force Majeure and the schedule shall be extended by a like number of days as the event of Force Majeure. If Services are suspended for thirty (30) days or more, URS may, in its sole discretion, upon 5 days prior written notice, terminate this Agreement or the affected Work Order, or both. In the case of such termination, in addition to the compensation and time extension set forth above, URS shall be compensated for all reasonable termination expenses.

**ARTICLE X - Right of Entry.**  Client grants to URS, and, if the project site is not owned by Client, warrants that permission has been granted for, a right of entry from time to time by URS, its employees, agents and subcontractors, upon the project site for the purpose of providing the Services. Client recognizes that the use of investigative equipment and practices may unavoidably alter the existing site conditions and affect the environment in the area being studied, despite the use of reasonable care.

URS-01766

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 1 |

Reference:  PSA-1 dated 08/28/06

For:  H&E Corp. HQ - Construction

**Professional Services for Period Ending 02/11/11**

H & E Equipment Services. Inc.
Attn:  FRANKIE WYNN
11100 Mead Road, Suite 200
Baton Rouge LA 70816

| | |
|---|---|
| Total Due: | $24,500.00  USD |
| Terms: | Net 30 |

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**

| | |
|---|---|
| Account: | URS Corporation |
| Bank: | Wells Fargo Bank |
| Account No.: | 4520-086471 |
| ABA Routing No.: | 121-000-248 |
| Swift Code: | WFBIUS6S |

VENDOR  *1006495*
G/L  *560010*
APPROVED  *3/4/2011*
DATE
AMOUNT  *$ 24,500.00*

*CAPITAL ORDER*
*46000340*

Remittance Information can be sent to:

| | |
|---|---|
| Email: | RemitTo@URSCorp.com |
| Fax: | (512) 419-6937   Attn:  Cash Applications |

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

EXHIBIT
"4"

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | 02/24/11 |
| Invoice | 4602441 |
| Project | 19228820 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Leonard St. Germain
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 02/11/11

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job:  19228820  H&E Corp. HQ-Construction Docs | 24,500.00 | 0.00 | 24,500.00 |
| Total this job | 24,500.00 | 0.00 | 24,500.00 |
| TOTAL THIS INVOICE | 24,500.00 | 0.00 | $24,500.00 USD |

Project Manager: Robert C. Herndon

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | | 02/24/11 |
| Invoice | | 4602441 |
| Project | | 19228820 |
| Page | | 3 |

H & E Equipment Services, Inc.
Attn: Leonard St. Germain
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 02/11/11
**Job: 19228820  H&E Corp. HQ-Construction Docs**

**LUMP SUM**

| | |
|---|---|
| Lump Sum Billing | 24,500.00 |
| **Total Lump Sum** | **24,500.00** |
| | |
| *Total due this job* | **24,500.00** |
| | |
| **TOTAL THIS INVOICE** | **$24,500.00** USD |

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

F32719806

NON-CERTIFIED COPY



**Neal Johnson, AIA**
Principal Architect

March 1, 2011

Frankie Wynn
H & E Equipment Services Inc.
11100 Mead Road, Suite 200
Baton Rouge, Louisiana 70816

Re:    H&E Corp. HQ - Construction
       Baton Rouge, Louisiana

Mr. Wynn:

Enclosed please find invoice 4602441 for the above referenced project along with an invoice worksheet for your reference.  The invoiced amount of $24,500.00 represents work completed through 95% of construction documents phase.

Should you have any questions, please don't hesitate to call me at (225) 231-6343.

Sincerely,
**URS Corporation**

Neal Johnson, AIA
Principal Architect

**URS Corporation**
**7389 Florida Boulevard, Suite 300**
**Baton Rouge, LA 70806**
**225.922.5700**

NON-CERTIFIED COPY

URS Corporation Confidential                3/1/2011                                    Page 1

# Invoice Worksheet

**URS**

Date

Project Name      **H&E Corp. HQ - Construction**
Project No.
URS Project #            **19228820**


Schedule of Values
Base Fee                                              $490,000.00
                                                      $          -
                                     TOTAL        $  490,000.00


Total Fee                                        $  148,848.00


Fees through Construction Documents    100% @    95.00% Complete    $ 465,500.00

                                                 Fee Earned to Date  $ 465,500.00

                        Less Amount Previously Paid                  $ 465,500.00
                                             Reimburable Expense Due  $          -
                        TOTAL DUE THIS PAYMENT                        $24,500.00

NON-CERTIFIED COPY

# URS

**Remittance Page**

| | |
|---|---|
| Invoice Date | 04/27/11 |
| Invoice | 4666033 |
| Project | 19228820 |
| Page | 1 |

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 04/15/11

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**        **$24,500.00**  USD
Terms:                Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS):    URS Corporation
                        P.O. Box 116183
                        Atlanta GA 30368-6183
                        US

Overnight Courier:      URS Corporation
                        Lock Box No. 116183
                        100 South Crest Drive
                        Stockbridge, GA  30281
                        Attention:  Atlanta Lockbox
                        (877) 786-3333

Electronic Funds Transfer:
    Account:        URS Corporation
    Bank:           Wells Fargo Bank
    Account No.:    4520-086471
    ABA Routing No.: 121-000-248
    Swift Code:     WFBIUS6S

VENDOR *1006495*
G/L *56.0010*
APPROVED *TJ. 5/3/2011*
DATE
AMOUNT *$ 24,500.00*

Remittance Information can be sent to:
    Email:      RemitTo@URSCorp.com
    Fax:        (512) 419-6937    Attn:  Cash Applications

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

EXHIBIT
"5"

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | | 04/27/11 |
| Invoice | | 4666033 |
| Project | | 19228820 |
| Page | | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:  H&E Corp. HQ - Construction

Professional Services for Period Ending 04/15/11

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19228820  H&E Corp. HQ-Construction Docs | 24,500.00 | 0.00 | 24,500.00 |
| Total this job | 24,500.00 | 0.00 | 24,500.00 |
| TOTAL THIS INVOICE | 24,500.00 | 0.00 | $24,500.00 USD |

Project Manager: Robert C. Herndon

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

NON-CERTIFIED COPY

**ARTICLE XI - Documents.** Provided that URS has been paid for the Services, Client shall have the right to use the documents, maps, photographs, drawings and specifications resulting from URS efforts on the project. Reuse of any such materials by Client on any extension of this project or any other project without the written authorization of URS shall be at Client's sole risk. URS shall have the right to retain copies of all such materials. URS retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

**ARTICLE XII - Termination.** Client may terminate all or any portion of the Services for convenience, at its option, by sending a written Notice to URS. Either party can terminate this Agreement or a Work Order for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a Notice of Termination, unless a later date is specified in the Notice. The Notice of Termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the Notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay URS upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. In the event of termination for cause, the parties shall have their remedies at law as to any other rights and obligations between them, subject to the other terms and conditions of this Agreement.

**ARTICLE XIII - No Third Party Rights.** This Agreement shall not create any rights or benefits to parties other than Client and URS. No third party shall have the right to rely on URS opinions rendered in connection with the Services without the written consent of URS and the third party's agreement to be bound to the same conditions and limitations as Client.

**ARTICLE XIV - Assignments.** Neither party to this Agreement shall assign its duties and obligations hereunder without the prior written consent of the other party.

**ARTICLE XV - Hazardous Substances.** All non-hazardous samples and by-products from sampling processes in connection with the Services shall be disposed of by URS in accordance with applicable law; provided, however, that any and all such materials, including wastes, that cannot be introduced back into the environment under existing law without additional treatment, and all hazardous wastes, radioactive wastes, or hazardous substances ("Hazardous Substances") related to the Services, shall be packaged in accordance with the applicable law by URS and turned over to Client for appropriate disposal. URS shall not arrange or otherwise dispose of Hazardous Substances under this Agreement. URS, at Client's request, may assist Client in identifying appropriate alternatives for off-site treatment, storage or disposal of the Hazardous Substances, but URS shall not make any independent determination relating to the selection of a treatment, storage, or disposal facility nor subcontract such activities through transporters or others. Client shall sign all necessary manifests for the disposal of Hazardous Substances. If Client requires: (1) URS agents or employees to sign such manifests; or (2) URS to hire, for Client, the Hazardous Substances transportation, treatment, or disposal contractor, then for these two purposes, URS shall be considered to act as Client's agent so that URS will not be considered to be a generator, transporter, or disposer of such substances or considered to be the arranger for disposal of Hazardous Substances, and Client shall indemnify URS against any claim or loss resulting from such signing.

**ARTICLE XVI - Venue.** In the event of any dispute between the parties to this Agreement, the venue for the dispute resolution shall be any state or federal court in the United States having jurisdiction over the parties. The foregoing notwithstanding, if the project is located outside the United States, the laws of the State of California shall govern and in such event, any dispute under the Agreement not resolved amicably shall be resolved under the binding rules of the American Arbitration Association.

**ARTICLE XVII - Integrated Writing and Enforceability.** This Agreement constitutes the final and complete repository of the agreements between Client and URS relating to the Services and supersedes all prior or contemporaneous communications, representations, or agreements, whether oral or written. Modifications of this Agreement shall not be binding unless made in writing and signed by an Authorized Representative of each party. The provisions of this Agreement shall be enforced to the fullest extent permitted by law. If any provision of this Agreement is found to be invalid or unenforceable, the provision shall be construed and applied in a way that comes as close as possible to expressing the intention of the parties with regard to the provisions and that saves the validity and enforceability of the provision.

URS-01767

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 04/27/11 |
| Invoice | 4666033 |
| Project | 19228820 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PSA-1 dated 08/28/06

For:   H&E Corp. HQ - Construction

Professional Services for Period Ending 04/15/11
*Job:  19228820  H&E Corp. HQ-Construction Docs*

**LUMP SUM**

| | |
|---|---:|
| Lump Sum Billing | 24,500.00 |
| **Total Lump Sum** | **24,500.00** |
| | |
| *Total due this job* | *24,500.00* |
| | |
| **TOTAL THIS INVOICE** | **$24,500.00** USD |

Please contact Carlene D Gibson at 512 419-6115 or via email at Carlene_Gibson@urscorp.com
if you have any questions regarding this invoice.

F33575589

NON-CERTIFIED COPY



**Neal Johnson, AIA**
Principal Architect

April 26, 2011

Frankie Wynn
H & E Equipment Services Inc.
11100 Mead Road, Suite 200
Baton Rouge, Louisiana 70816

Re:    H&E Corp. HQ - Construction
       Baton Rouge, Louisiana

Mr. Wynn:

Enclosed please find invoice 4666033 for the above referenced project along with an invoice worksheet for your reference. The invoiced amount of $24,500.00 represents work completed through 100% of construction documents phase.

Should you have any questions, please don't hesitate to call me at (225) 231-6343.

Sincerely,
URS Corporation

Neal Johnson, AIA
Principal Architect

URS Corporation
7389 Florida Boulevard, Suite 300
Baton Rouge, LA 70806
225.922.5700

NON-CERTIFIED COPY

**LUMP SUM WORK ORDER NO.** _08-01_

In accordance with the Agreement for Professional Services between __H&E Equipment Services, Inc.__ __11100 Mead Road, Sutie 200, Baton Rouge, LA 70816__ ("Client"), and __URS Architecture PC__ ("URS"). a __North Carolina__ corporation, dated __August 28, 2006__ , this Work Order describes the Services, Schedule, and Payment Conditions for URS Services on the Project known as:

> Phase III Design Services for H&E Equipment Services Corporate Headquarters and Baton Rouge Area Branch Facility
> Baton Rouge, Louisiana

**Client Authorized**
**Representative:**   __Leonard St.Germain__
**Address:**   __H&E Equipment Services, Inc. 11100 Mead Road, Sutie 200__
__Baton Rouge, Louisiana__
**Telephone No.:**   __225.298.5244__

**URS Authorized**
**Representative:**   __Chad Herndon__
**Address:**   __Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806__
**Telephone No.:**   __225.922.5856__

**SERVICES.** The Services included in this Work Order shall include: Design services for the preparation of Construction Documents for the new Corporate Headquarters and Baton Rouge Area Branch Facility. See **ATTACHMENT 1 SCOPE OF SERVICES** for a detailed listing of services.

**SCHEDULE.** The Estimated Schedule to complete preparation of the documents will be no more than 12 – 16 weeks from the notice to proceed. Because of the uncertainties inherent in the Services, Schedules are estimated and are subject to revision unless otherwise specifically described herein.

**PAYMENT AND EQUITABLE ADJUSTMENTS.** This is a lump sum Work Order. Professional Services fees will be billed monthly based on percent complete for a total sum of __$ 490,000.00__ . URS shall give Client prompt written notice of unanticipated conditions or conditions which are materially different from those anticipated by URS at the time the lump sum compensation was agreed upon. If Client wishes URS to proceed, URS lump sum compensation shall be subject to equitable adjustment for such conditions.

**TERMS AND CONDITIONS.** The terms and conditions of the Agreement referenced above shall apply to this Work Order, except as expressly modified herein.

**ACCEPTANCE** of the terms of this Work Order is acknowledged by the following signatures of the Authorized Representatives.

**CLIENT**                                    **URS**

_____            _____
Signature                                     Signature
                                              William A. Stevenson, Senior Vice President
_____            _____
Typed Name/Title                              Typed Name/Title

_____            _____
Date of Signature                             Date of Signature



**EXHIBIT**

"6"

NON-CERTIFIED COPY

ATTACHMENT 1 SCOPE OF SERVICES

**SCOPE OF SERVICES**

**H&E EQUIPMENT SERVICES**

**HEADQUARTERS AND BATON ROUGE AREA BRANCH FACILITY**

**BATON ROUGE, LOUISIANA**

The scope of work is for URS to provide professional services during the Construction Documentation Phase which include:

**Construction Documentation Phase**

- Based on the approved Design Documents, URS will prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project and will advise the Owner of any adjustments to previous preliminary estimates of Construction Cost.

- Landscape Design for compliance with regulatory agency requirements.

- URS will assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

- URS will, following the Owner's approval of the Construction Documents and of the latest preliminary estimate of Construction cost, shall assist the Owner in negotiating a contract with the General Contractor to construct the Project.

- Conduct Client / Team review meetings at 50% and 85% completion

- Assist the General Contractor in updating project construction budgets at the completion of DD and at the 50% & 80% completion reviews

NON-CERTIFIED COPY

# MAPP
CONSTRUCTION

## CHANGE PROPOSAL REQUEST (CPR)

MAPP Construction, LLC
601 Poydras St., Suite 1715, New Orleans, LA 70130

Date: __June 21, 2013__
REVISED:

To: Thomas Ryan, Senior Architect
**URS**
7389 Florida Blvd, Suite 300
Baton Rouge, LA 70806

Re: H&E Kenner Branch Renovations
MAPP Project No. 52079
CPR No.: 53.0  Parking Lot Expansion Joints -
Mock-Up

MAPP Construction, LLC has compiled its cost estimate for the above referenced item - as described herein below. We, therefore, request your immediate review and/or approval of this request in order to expedite the issuance of the Owner's written directive to proceed with changes in the Work in accordance with the applicable Articles of our Contract Agreement.

## Origination Date:            __January 15, 2013__

| Description of Changed Work: | Provide Labor, Materials, Equipment, Management & Engineering for            **Parking Lot Expansion Joints - Mock-Up** |
|---|---|
| | The work shall be performed in accordance with direction from the Architect to furnish and install a mock-up for corrective action to the failing expansion joints in the concrete paving.  This work will be in a 15LF section of paving to be selected by the Architect and/or Owner.  This CPR includes mobilization, demo, Sika 321FS, clean-up and demobilization.  This work will take approximately 2-3 working days.  The area to receive the mock-up shall remain free from all traffic (i.e. vehicle, equipment, pedestrian, etc.).  Reference attached cost breakdown, subcontractor proposal and RFI #54. |

Reason for Change:    [X] **Owner Request/Program Change**    [ ] **Unforeseen**    [ ] **Design Change**

Status of Changed Work:    [X] **On-Hold**    [ ] **Completed**    [ ] **Ongoing**    [ ] **Pre-Construction**

The Lump Sum Amount of this Change:                                **$10,828**

The Amount of Change in the Contract Time for Work associated with this Change - ONLY [1]            3

Date through which the Proposed Amount is Valid:                        **July 6, 2013**

| [1] Explanation | N/A |
|---|---|

SUBMITTED BY:    CONTRACTOR:  MAPP Construction, LLC

_____        6/21/2013            Amount Agreed To
Brad Reese, Sr. Project Manager        Date Submitted            Initials / Date Agreed To

AUTHORIZED BY:    URS

_____        _____            _____
Thomas Ryan, Senior Architect        Date                Amount Authorized

APPROVED BY:    H&E

_____        7/10/2013        $10,828
Frankie Wynn, H&E Equipment Services        Date            Amount Approved

Cc:    Project Team
    Other:

*Also Need Quote For Mock Up For Metal Plate.* FW.

Page 1 of 1

EXHIBIT

"7"

URS-00014

NON-CERTIFIED COPY

| From: | Frankie Wynn <fwynn@he-equipment.com> |
|---|---|
| To: | "Johnson, Neal" <neal.johnson@urs.com> |
| CC: | 1. "Dorsey, Stephan" <sdorsey@mjwomack.com> |
| | 2. "Ryan, Thomas E" <thomas.e.ryan@urs.com> |
| | 3. John Jones <jjones@he-equipment.com> |
| | 4. Murray L. McCullough (murray@benchmarkgroupllc.com) |
| Subject: | RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues |
| Sent: | 6/11/2013 4:17:17 PM +00:00 |

Do you know when we will have an answer? We need to move forward on getting this issues addressed.

Frankie Wynn
Director of Facilities/Risk/Compliance Management
H&E Equipment Services, Inc.
7500 Pecue Lane
Baton Rouge, LA  70809  (New Address)
Office:  225-298-5229
Mobile:  225-603-4438
Fax:  225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com


-----Original Message-----
From: Johnson, Neal [mailto:neal.johnson@urs.com]
Sent: Thursday, June 06, 2013 10:21 AM
To: Frankie Wynn
Cc: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com);
pbonner@mjwomack.com; Ryan, Thomas E; Sanders, Debra; John Jones; Murray L. McCullough (murray@benchmarkgroupllc.com);
Hill, Terry
Subject: RE: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Frankie:
We will review the recommendation with Benchmark Group (our civil engineer of record) and request their opinion.
Regarding the request that URS participate in the cost of this work, this request will be forwarded to URS management for their
directive.
Sincerely,
Neal Johnson


-----Original Message-----
From: Frankie Wynn [mailto:fwynn@he-equipment.com]
Sent: Thursday, June 06, 2013 7:56 AM
To: Dorsey, Stephan; Phillips, Dale (dphillips@mjwomack.com); Gauthier, Greg (ggauthier@mjwomack.com);
pbonner@mjwomack.com; Ryan, Thomas E; Johnson, Neal; Sanders, Debra; John Jones
Subject: H&E Equipment Services, Inc. / Expansion/Construction Joint Issues

Attached is the latest recommendation to remedy the Expansion/Construction Joint issues at the H&E Baton Rouge Branch.  This
recommendation is unacceptable to H&E for several reasons, not the least of which is the cost.  As the cause of this problem cannot
be agreed upon by Womack or URS, I would suggest that both parties agree to share the costs equally.  All parties knew well in
advance of design and installation of the paved area, the intended use.  All parties were asked throughout the project for any and all
suggestions in all areas of design and construction to voice any and all concerns and make recommendations.  I do not recall any
alternatives to the design and installation that were not followed by H&E.

As this issue will not correct itself and by its very nature grows worse each day, time is of the essence.
Let me know your solution as soon as possible.


Thank you

Frankie Wynn
Director of Facilities/Risk/Compliance Management H&E Equipment Services, Inc.
7500 Pecue Lane



EXHIBIT

"8"

URS-00012

NON-CERTIFIED COPY

Baton Rouge, LA  70809  (New Address)
Office:  225-298-5229
Mobile:  225-603-4438
Fax:  225-298-5376
fwynn@he-equipment.com
www.HE-Equipment.com

This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and any attachments or copies.

NON-CERTIFIED COPY

H&E EQUIPMENT SERVICES, INC. \* CASE NO. C626308, SECTION D

VERSUS \* 19TH JUDICIAL DISTRICT COURT

URS CORPORATION ARCHITECTURE, \* PARISH OF EAST BATON ROUGE
P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III \* STATE OF LOUISIANA

FILED:_____

      COST OK $ 300.00
      CLK #20423
      DEPUTY CLERK JUN 12 2015

      DEPUTY CLERK OF COURT

## OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

  Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this memorandum in opposition to the Motion for Summary Judgment (the "Motion") filed by defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "Defendants"). H&E also submits herewith its Response to the Statement of Undisputed Material Facts Submitted in Support of Defendants' Motion for Summary Judgment.

### Introductory Statement

  As the Court may know from the pending Motions to Compel already before it, this suit stems from damages suffered by H&E as a result of deficient designs and specifications prepared by Defendants for the construction and renovation of H&E facilities in Baton Rouge, Kenner, and Belle Chasse, Louisiana between 2006 and 2013. Among other things, H&E has alleged that Defendants breached their contractual and professional duties in their design for concrete pads constructed to Defendants' specifications at H&E's Baton Rouge and Kenner, Louisiana facilities, and further failed to address and remedy observed crumbling and spalling in the concrete that began in 2012 and/or early 2013 and continues to worsen to this day.

  Plainly, if H&E proves at trial that Defendants breached their contractual and professional duties, then Defendants must be held liable for the damages caused by those breaches. Indeed, this is a case in which damages are the only meaningful remedy. Nevertheless, the defendants' Motion for Summary Judgment asks the Court to dispose of H&E's claims for damages and effectively dismiss this case based on language contained in one of the parties' master services agreements (but not the only master services agreement between them) that Defendants contend limits H&E to the remedy of re-performance of the defective design services within one year of substantial completion. Re-performance of the defective work

EBR297746

NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

REC'D R.R.

JUN 15 2015 FAX COPY FILED 6-15-15
    ORIGINAL FILED 6-12-15

– that is, simply allowing Defendants to give H&E the concrete design that Defendants should have provided in the first place – would not cure the concrete problems that Defendants' defective specifications have caused. In short, Defendants are asking this Court to interpret one of the parties' agreements in a manner that would leave H&E with no meaningful remedy against them.

Additionally, while Defendants now insist that they are only obligated to re-perform their defective designs and specifications, they did not re-perform the work within the requisite one-year period – even though H&E timely notified Defendants of the observed problems in hopes that the parties might collectively find a resolution and remedy the issues.

Even more, the terms of the 2009 Short Form Master Agreement for Professional Services[1] (the "2009 Agreement") relied on so heavily by the defendants in their Motion simply do not have the effects Defendants propose, nor do they foreclose H&E's claims against Defendants for damages resulting from their defective work. Among other things, the 2009 Short Form Master Agreement for Professional Services is _**not**_ the only agreement that governs the parties' relationship, it plainly has no application to the work that Defendants performed before 2009 (which is substantially all of the relevant work at the Baton Rouge facilities), and its express scope is limited to work performed exclusively for H&E's Kenner facility. Further, even for the work governed by the 2009 Agreement, there appear to be significant issues of material fact with respect to what the parties intended by virtue of the agreement.

In short, summary judgment is simply not appropriate, and H&E respectfully urges this Court to deny Defendants' Motion.

## I.      Defendants' Motion Provides an Incomplete History of the Contractual Relationship Between the Parties.

Defendants' Motion discusses only one of the agreements between the parties – in doing so, the Motion makes it seem as if the relationship between Defendants and H&E _began_ with and is governed solely by the Short Form Master Agreement for Professional Services between the parties dated August 13, 2009 (the "2009 Agreement"). This is not correct.[2] Absent from Defendants' Motion is any mention of the other agreement at issue – the Agreement for Professional Services entered into and executed by the parties on or about August 28, 2006 (the

---

[1]      A copy of the Short Form Master Agreement for Professional Services, dated 8/13/2009, with its attachments, are attached _in globo_ as Exhibit "2."

[2]      _See generally_, Affidavit of Frankie Wynn, ¶ 7, attached as Exhibit "1."

-2-

NON-CERTIFIED COPY

"2006 Agreement").[3] Also absent is any mention of how the 2009 Agreement came about. The mere existence of the 2006 Agreement and the history behind the 2009 Agreement are sufficient to raise critical fact issues and render summary judgment inappropriate.

A.    _The Baton Rouge Facilities and the 2006 Agreement Between the Parties_

The relationship between H&E and Defendants began with discussions regarding the design for and construction of H&E's new corporate headquarters and branch facility in Baton Rouge, Louisiana – the most significant part of the relationship. On or about August 28, 2006, in anticipation of these Baton Rouge projects, Defendants presented H&E with an Agreement for Professional Services (referred to herein as the "2006 Agreement"), which expressly was to govern Defendants' performance of design services and specifications via a series of Work Orders that would set forth specific scopes of services, timelines for completion, and construction costs and compensation.[4] The 2006 Agreement provided the contractual framework for the construction of H&E's corporate headquarters and Baton Rouge branch facility.[5]

Defendants' professional duties and responsibilities are set forth in Article III of the 2006 Agreement, pursuant to which:

> [Defendants are] obligated to comply with applicable standards of professional
> care in the performance of the Services [set forth in individual Work Orders]. ...[6]

Unlike the 2009 Agreement upon which Defendants entirely base their Motion for Summary Judgment, the 2006 Agreement does **_not_** purport to waive recoverable damages for Defendants' breach of their professional responsibilities and/or duty of care with respect to their design and specifications for the H&E projects, except to limit Defendants' aggregate liability under the 2006 Agreement to $5,000,000.00 for claims arising from professional negligence and $2,000,000 for claims arising from negligence, breach of contract, or other causes of action.[7] The 2006 Agreement also includes a waiver of consequential damages by both parties, including

---

[3]    _See_ Agreement for Professional Services between H&E Equipment Services, Inc. and URS Corporation Architecture, NC, PC, dated 8/28/2006, attached as Exhibit "3."

[4]    _See_ Ex. "3," 2006 Agreement.

[5]    _See generally_, Ex. "3," 2006 Agreement.

[6]    Ex. "3," 2006 Agreement, art. III.

[7]    Ex. "3," 2006 Agreement, art. V.

-3-

NON-CERTIFIED COPY

damages for loss of use and/or profits.[8]  As shown below, the damages H&E seeks to recover are not consequential damages.

> **B.    H&E Proposes Renovations to its Kenner Facility,**
> **_and Defendants Present it with the 2009 Agreement._**

The parties operated under the 2006 Agreement for a number of years, including throughout the relevant design phase of the Baton Rouge project.  After the substantial majority of the design work – including the defective concrete specifications now at issue – had been performed, H&E decided to put its corporate headquarters and Baton Rouge branch facility on hold.  In or around 2009, while work on H&E's Baton Rouge facilities was on hold, H&E discussed with Defendants renovations to its existing Kenner, Louisiana facility.  In the context of those discussions regarding the Kenner facility, Defendants presented H&E with a new agreement; and, on or about August 13, 2009, the parties entered into and executed the 2009 Agreement to govern Defendants' work in helping H&E to develop a budget for possible renovations at its Kenner facility.[9]

There was no question that the 2006 Agreement would continue to govern that portion of the work – including the concrete specifications – already performed and to be performed in the future on the corporate headquarters and Baton Rouge branch facility.  And, indeed, with respect to the construction documents prepared by Defendants for the corporate headquarters and Baton Rouge branch facility, Defendants continued to issue Invoices that specifically referenced and incorporated the 2006 Agreement.[10]  As presented to H&E, the 2009 Agreement applied only to the budgeting phase for the renovation of its Kenner facility.[11]  The 2009 Agreement's document identifier – "I:\Proposals\Facilities\H&E Equipment Services – Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc" – as well as the correspondence accompanying the 2009 Agreement as it was presented to H&E indicate that the 2009 Agreement was intended by Defendants to govern only work performed in helping H&E to

---

[8]    _See id._ at art. VII.

[9]    _See_ Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

[10]    _See, e.g.,_ Invoice No. 4602441, dated 2/24/11, attached as Exhibit "4," and Invoice No. 4666033, dated 4/27/11, attached as Exhibit "5."

[11]    _See_ Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

-4-

NON-CERTIFIED COPY

develop a budget for the Kenner project.[12]

## II.     <u>Defendants Cannot Carry their Burden on Summary Judgment.</u>

Summary judgment should be granted *only* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966; *see also, e.g., Rager v. Bourgeois*, 2006-0322, p. 5 (La. App. 1st Cir. 2006), 961 So. 2d 330, 333; *Carter v. BRMAP*, 591 So. 2d 1184, 1187 (La. App. 1st Cir. 1991). The burden remains on the movant, and any reasonable doubt must be resolved against the moving party. *See, e.g., Rager*, 961 So. 2d at 333; *Carter*, 591 So. 2d at 1187.     In the context of contractual disputes, summary judgment is appropriate only where the words of a contract are clear, *unambiguous*, and do not lead to absurd consequences; where a contract is ambiguous *and/or the intent of the parties becomes a question of fact*, summary judgment is not appropriate. *See, e.g., Carter*, 591 So. 2d at 1187. Summary judgment is further rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. *Id.*

Here, Defendants' Motion is necessarily dependent upon the resolution of the following questions:

1.     Whether the 2009 Agreement governs the parties' relationship with respect to *all three sites* – Baton Rouge, Kenner, and Belle Chasse;

2.     Whether the 2009 Agreement's "Warranty" provision limits H&E's available remedies for defective or non-conforming design services to "re-performance" of those services; and

3.     Whether the 2009 Agreement effectively waives H&E's right to recover consequential damages.

H&E submits that the answer to all three of these questions is "no" or, at the very least, each of these questions implicates issues of material fact. Accordingly, summary judgment is not appropriate.

> A.     *The 2009 Agreement Does Not Apply to All of the Work Performed by Defendants or Exclusively <u>Govern the Relationship Between the Parties.</u>*

Defendants' Motion fails to address the question of which projects are governed by the 2009 Agreement and, instead, presupposes that the entirety of the projects at issue are all subject to the 2009 Agreement. Indeed, Defendants do not even mention the 2006 Agreement – a

---

[12]     *See id.*

-5-

NON-CERTIFIED COPY

somewhat disingenuous and misleading decision given that Defendants expressly continued to operate under the 2006 Agreement in connection with portions of the corporate headquarters and Baton Rouge branch facility even after the 2009 Agreement was signed.

When it was signed, both parties intended that the 2009 Agreement apply only to budgeting for H&E's Kenner facility renovations.[13]  In this regard, they did not intend that it apply to those portions of the Baton Rouge project for which Defendants had already provided designs and specifications.[14]  And, both parties operated with the understanding that the 2009 Agreement did not apply to the construction of the corporate headquarters and Baton Rouge branch facility, as underscored by the various Baton Rouge invoices Defendants submitted specifically referencing the 2006 Agreement even after 2009.[15]  While Defendants make much of the 2009 Agreement's standard integration clause, pursuant to which "[t]his Agreement constitutes the final and complete repository of the agreements between [H&E] and [Defendants] relating to the Services and supersedes all prior or contemporaneous communications, representations, or agreements," that clause demonstrates only that the parties intended that the 2009 Agreement integrate and memorialize the parties' full agreement as to the subject matter before them at the time – Defendants' work in helping H&E to develop a budget for renovations to its Kenner facility.

Defendants apparently contend that the integration clause means that the 2006 Agreement has no effect.[16]  This is wrong for two reasons.  First, the Work Orders primarily at issue in this litigation in connection with the corporate headquarters and Baton Rouge branch facility – those pertaining to design development and the preparation of construction documents – explicitly reference the 2006 Agreement, as do final Invoices (2011) related to that work.[17]  The parties plainly agreed, then, that the 2006 Agreement controls all rights and responsibilities for work performed in connection with design development and Defendants' preparation of construction documents for the Baton Rouge facilities.  (Alternatively, at a minimum, the fact that the Work Orders at issue – and their related Invoices – refer to the 2006 Agreement raises a factual issue

---

[13]    *See* Ex. "2," 2009 Agreement and Attachment 2, Correspondence from Neal Johnson to Leonard St. Germain, dated 8/13/09.

[14]    *See, e.g.,* Ex. "4," Invoice No. 4602441 and Ex. "5," Invoice No. 4666033.

[15]    *See supra* note 10.

[16]    *See* Ex. "2," 2009 Agreement, ¶ 18.1.

[17]    *See, e.g.,* Lump Sum Work Order No. 08-01, attached as Exhibit "6," and Ex. "4," Invoice No. 4602441 and Ex. "5," Invoice No. 4666033.

-6-

NON-CERTIFIED COPY

that cannot be disposed of on summary judgment.)  Second, the 2009 Agreement is explicitly made "effective as of August 13, 2009,"[18] and it has no application to work performed by Defendants prior to that date.  Nothing in the 2009 Agreement makes it apply retroactively, and certainly the "supersede" language does not change history and make it such that the 2006 Agreement never existed.  (And again, the fact that there is an effective date in the 2009 Agreement does, at a minimum, raise a factual question about the application term of the 2009 Agreement that cannot be disposed of on summary judgment.)

The contractual history across the three H&E sites at issue is not as simple as Defendants make it seem in their Motion.  All available evidence indicates that the parties did *not* intend to have the 2009 Agreement govern the relevant design phases for the corporate headquarters and Baton Rouge branch facility projects.  As such, regardless of the effects of the 2009 Agreement, the 2009 Agreement is limited in its application.  At a minimum, the evidence raises a question of fact as to which Agreement governs the relevant phases for the corporate headquarters and Baton Rouge branch facility and, therefore, summary judgment is inappropriate.

B.    *The 2009 Agreement's Purported Limitation of Warranty and Waiver of Recoverable Damages is Ineffective.*

Unlike the 2006 Agreement, the 2009 Agreement includes a "Warranty" provision, pursuant to which:

> [Defendants] sole liability to [H&E] for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by [H&E] to [Defendants].  Defendants' obligation for re-performance of non-conforming Services as set forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.[19]

Defendants contend that this provision waives H&E's right to recoverable damages and limits H&E's remedies to the one, exclusive remedy of re-performance of the defective design work within one year of substantial completion.  But, as depicted by Defendants, the 2009 Agreement's "Warranty Provision" purports to limit Defendants' professional duty of care – a duty of care imposed by law, *see, e.g., Calandro Development, Inc. v. R.M. Butler Contractors, Inc.*, 249 So.2d 254, 265 (La. Ct. App. 1st 1971) – in such a draconian manner as to completely rob H&E of any effective remedy.  Defendants' proffered interpretation of the provision is so harsh that it offends public policy and is, therefore, unenforceable in the manner Defendants

---

[18]    *See* Ex. "2," 2009 Agreement, p. 1.

[19]    Ex. "2," 2009 Agreement, ¶ 4.1.

-7-

NON-CERTIFIED COPY

describe. There are a number of reasons why this provision does not have the effects Defendants propose.

At the outset, Defendants did not attempt to re-perform or even assert their alleged right to re-perform the defective design services and specifications within one year of substantial completion, despite the fact that Defendants were on notice of the non-conforming Services.[20] In fact, H&E notified Defendatns of the breaking and spalling concrete pads at the Baton Rouge and Kenner sites when those problems surfaced, in hopes that the parties might work together to find a solution and remedy. Defendants simply refused to participate in ongoing discussions and efforts to fix the pads and, indeed, refused to share with H&E or the project contractors information regarding its own apparent efforts to troubleshoot the problem and what they and their engineering consultant concluded about the problem.[21] In other words, Defendants did not "re-perform the nonconforming or defective Services" within the year required by the provision on which Defendants rely. As such, Defendants waived whatever limitation of liability might exist in the "Warranty" provision.

More fundamentally, Defendants have not cited any case law or authority allowing a professional such as an architect or engineer to effectively eliminate liability for breaches of professional duties, as Defendants propose they have done here. What Defendants argue is that they may remedy their defective concrete specification –which has already been used to construct enormous concrete pads – simply by handing H&E a piece of paper containing the specification that Defendants should have employed in the first place. Plainly, this would do literally nothing to address the problems that Defendants and their specifications have caused; nor would it provide H&E with any kind of meaningful remedy, leaving H&E to pay for the costs of demolition and new construction. Such would be completely antithetical to the public policies behind the imposition of a professional duty of care in the first place.

In fact, taken to its logical conclusion, Defendants' interpretation of the "Warranty" provision would abrogate any rights or remedies that a party may have for design defects and provide no relief for a design professional's errors. Such a result is inimical to Louisiana's public policy and must be avoided. *C.f. generally, e.g., Lombardo v. Deshotel*, 94-1172, p. 6

---

[20]    See Ex. "1," Wynn Affidavit, ¶¶ 11-12; *see also generally, e.g.,* Request for Information No. 54, dated 1/15/13, attached as Exhibit "7"; *see also*, Emails between Frankie Wynn and Neal Johnson, dated 6/6/13-6/11/13, attached *in globo* as Exhibit "8."

[21]    Ex. "2," Wynn Affidavit, ¶¶ 11-12; *see also, generally*, H&E's Memorandum in Support of Motion to Compel.

-8-

NON-CERTIFIED COPY

(La. 11/30/94), 647 So. 2d 1086 (stipulated damages provisions that are manifestly unreasonable may be set aside as against public policy); *Keiser v. Catholic Diocese of Shreveport, Inc.*, 880 So. 2d 230, 236 (La. App. 2 Cir. 2004) (stipulated damages provisions that do not approximate actual damages but are rather purely penal in nature violate public policy and are thus void and enforceable); *Am. Leasing Co. of Monroe v. Lannon E. Miller & Son, Gen. Contracting, Inc.*, 469 So. 2d 325, 328-29 (La. Ct. App. 2d 1985) (same).

In their Motion for Summary Judgment, Defendants rely heavily on case law regarding warranty provisions and waivers of liability in the context of contracts for the sale of goods for the proposition that contracts limiting liability generally are enforceable under Louisiana law. The analogy is inapplicable to this case – the client of an engineer or architect who has already completed construction according to faulty designs cannot be "made whole" by the design professional's simply re-doing those designs as a consumer can be made whole by a seller's re-provision of a product. But, in any event, the "Warranty" provision included in the 2009 Agreement does not satisfy the requirements for the effective waiver of liability or recoverable damages via warranty provisions even in the context of contracts of sale.

Louisiana law imposes strict requirements on purported waivers of recoverable damages in the context of warranty provisions. *See generally, e.g., Southwest Louisiana Hosp. Assoc. v. BASF Constr. Chemicals, LLC*, 947 F. Supp. 2d 661, 670-71 (W.D. La. 2013). If a party wishes to limit or waive an implied warranty and/or use a warranty provision to limit or waive their liability or recoverable damages, the waiver must be: (1) written in clear and unambiguous terms; (2) contained in the contract (of sale); and (3) brought to the attention of and explained to the party against whom it is to be enforced. *See id.*; *Prince v. Paretti Pontiac Co.*, 281 So. 2d 112, 117 (La. 1973); *see also, Harvey v. Mosaic Fertilizer*, LLC, No. 06-9510, 2009 WL 3112144, *5 (W.D. La. 9/25/09) (extending *Prince* test to warranty provisions that limit liability or recoverable damages); *Fontenot v. F. Hollier & Sons*, 478 So. 2d 1379, 1386 (La. Ct. App. 3d 1985) (same). The seller or party seeking to enforce the waiver or limitation – in this case, Defendants – has the burden of showing that all three requirements are satisfied. *See, e.g., Southwest Louisiana Hosp. Assoc.*, 947 F. Supp. 2d at 670. Further, even if these requirements are met, a waiver is still null if it purports to exclude or limit liability for damages caused by intentional or gross fault. *See* La. Civ. Code art. 2004; *see also, e.g., Conmaco/Rector L.P. v. L&A Contracting Co.*, No. 12-2337, 2013 WL5881576, *4 (E.D. La. 10/30/13).

-9-

NON-CERTIFIED COPY

Defendants' refusal to share information regarding their apparent efforts to troubleshoot the concrete problems in connection with the Kenner and Baton Rouge projects – which is now subject to one of the pending Motions to Compel – suggests at least a question of material fact as to whether Defendants' breach of their professional duty of care was intentional and/or amounts to gross negligence. This alone instructs that summary judgment is inappropriate.

Furthermore, Defendants fail to read the "Warranty" provision in light of the 2009 Agreement as a whole. Among other things, the 2009 Agreement also includes a "Limitation of Liability" provision that purports to limit Defendants' liability to H&E "resulting from, arising out of or in connection with the performance of nonperformance of any or all Services or other obligations under a Work Authorization [to] $250,000 or ten percent (10%) of the compensation paid [Defendants] pursuant to such Work Authorization, whichever is greater" – indicating that the parties contemplated the recovery of damages for Defendants' failure to perform design services in accordance with their professional duty of care. [22] Plainly, if the "Warranty" provision meant – as Defendants now contend – that Defendants would never have to pay anything to their customers, no matter what they did, then a limitation of the amount of money they might have to pay would be without effect. Similarly, the 2009 Agreement includes a Waiver of Consequential Damages[23] that also contemplates the recovery of damages, albeit not consequential ones. Again, that provision would be unnecessary and ineffective if the "Warranty" clause meant that Defendants would never have any liability for damages. As "[e]ach provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective," the presence of these conflicting limitations in the 2009 Agreement renders the waiver of recoverable damages in the "Warranty" provision at the very least ambiguous. *Lis v. Hamilton*, 652 So. 3d 1327, 1330 (La.1995) (citations omitted); *see also, Canmaco/Rector L.P.*, 2013 WL 5881576, at *2. Defendants cannot show that the waiver of recoverable damages included in the 2009 Agreement's "Warranty" provision satisfies this first requirement of an effective waiver of recoverable damages.

---

[22]    Ex. "2," 2009 Agreement, ¶ 9.1.

[23]    *Id.* at ¶ 8.1.

NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

In sum, Defendants have failed to show that the purported waiver of recoverable damages included in the 2009 Agreement satisfies even the requirements of an effective waiver in the context of contracts of sale. They certainly have not shown – and cannot show – that there are no disputed issues of material fact with respect to whether the waiver satisfies those requirements or what the intent of the parties was with respect to the "Warranty" clause. As such, summary judgment is not appropriate, and H&E is entitled to have this Court deny Defendants' Motion. *See, e.g., Carter*, 591 So. 2d at 1187

> ### C.    Summary Judgment as Proposed by Defendants Is Also Inappropriate as to the 2009 Agreement's Waiver of Consequential Damages.

Lastly, Defendants' Motion seeks summary judgment as to the waiver of consequential damages pursuant to the 2009 Agreement, which they argue forecloses H&E's right to seek recovery for various kinds of damages such as loss of use and/or profit as well as increased or additional construction costs occasioned by Defendants' deficient designs. To make this claim, Defendants rely entirely on the 2009 Agreement. (The 2006 Agreement also includes a waiver of consequential damages but contains different language.) As discussed above, the 2009 Agreement does not even apply to the work at issue at H&E's corporate headquarters and Baton Rouge branch facility and, therefore, summary judgment is not appropriate.

More generally, however, Defendants' Motion should be denied because H&E is *not seeking* the kinds of damages supposedly prohibited by contractual waivers of consequential damages. H&E is seeking damages for the costs of repairs and/or additional completion costs directly resulting from Defendants' deficient designs and the damages associated with Defendants' having led H&E to believe that a particular project was appropriate and feasible, which are not consequential damages – they are the damages resulting directly from Defendants' defective design work. *See generally, e.g., D&O Contractors, Inc. v. Terrebonne Parish Sch. Bd.*, 545 So. 2d 588, (La. Ct. App. 1st 1989) (appropriate measure of damages against architect who breached standard of care in designing resurfacing project at school running tracks was the cost necessary to repair defects in tracks that resulted from his negligence); *see also, generally, e.g.,* La. Civ. Code art. 2769; *Melancon v. Tri-Dyne Tele-Pier, LLC,* 11-1055 (La. App. 5 Cir. 5/31/12), 95 So. 3d 576 (appropriate measure of direct damages for defects in construction is the costs of repairs or completion); *Primaux v. Gaspard*, 385 So. 2d 1250, 1253 (La. Ct. App. 3d 1980) (applying Article 2769 to suit against engineer for defective design of structure); *c.f.*

NON-CERTIFIED COPY

*generally, e.g.*, La Rev. Stat. § 9:2775 (defining consequential damages as "loss of revenue, production, profits, use, rental income, or cost of replacement facilities, equipment and/or product, as may be applicable"). Such direct damages include, by way of example only, the estimated costs of taking the steps necessary to fix the concrete that is now breaking and spalling at H&E's Baton Rouge and Kenner facilities; the increased costs associated with having to add parking spots at the Baton Rouge facility after construction and landscaping was largely complete because Defendants failed to include the required number of spots in their design; door, frame, and hardware revisions in connection with all of the projects due to defects in Defendants' drawings; and numerous other change orders during the course of the projects necessitated by deficiencies and mistakes in Defendants' designs and specifications. By contrast, consequential damages would include such items as loss of use or loss of profit that H&E suffered as a result of Defendants' deficient design work and problems resulting therefrom. *See generally, e.g.*, La Rev. Stat. § 9:2775; *Burmaster v. Plaquemines Parish Gov't*, 2010-1543, p. 8 (La. App. 4 Cir. 3/30/11), 64 So. 3d 312, 319 (observing that consequential damages to insured include things like "stigma, inconvenience, loss of enjoyment, loss of business income, increased costs of insurance, and increased deductibles").

H&E is not seeking such consequential damages, making Defendants' Motion moot. To the extent Defendants argue that the 2009 Agreement's waiver of consequential damages includes repair and completion costs like those discussed above, such an interpretation is, once again, contrary to those provisions of the 2009 Agreement that contemplate the recovery of damages and would lead to the absurd consequence of leaving H&E unable to recover any damages whatsoever. It is further contrary to the basic meaning of direct damages in the construction context under Louisiana law. At the very least, the 2009 Agreement's reference to "increased costs of construction" in connection with the waiver of consequential damages is ambiguous and cannot be relied upon as dispositive of the parties' intent.

H&E does not contest that the 2009 Agreement waives consequential damages such as loss of use or loss of profit as to the Kenner and Belle Chasse projects but disputes that the waiver includes direct damages items like repair and completion costs directly occasioned by Defendants' deficient designs and specifications – which are the only damages that H&E is seeking. Accordingly, summary judgment in this regard is inappropriate.

-12-

NON-CERTIFIED COPY

### III.    Summary Judgment is Inappropriate Because This Case is in Its Infancy, and Insufficient Discovery Has Occurred.

For all of the above reasons, summary judgment is simply inappropriate. In addition, however, there has been insufficient discovery to warrant summary judgment at this stage of the parties' dispute. *See* La. C.C.P. art. 966(C)(1) (establishing the timing of summary judgment as "After adequate discovery or after a case has been set for trial."). Thus far, however, the parties have only exchanged written discovery responses and objections. Though they are in the process of exchanging hard copy documents and drawings, they have not begun the larger and more important task of searching for and exchanging emails and other electronically stored information, which will constitute the lion's share of documents in this case. No depositions have been taken. Similarly, while H&E anticipates that both parties will retain experts and exchange expert reports, they have not done so yet. Thus, the parties have not conducted "adequate discovery." Indeed, there are two Motions to Compel currently pending before the Court, one of which seeks to compel Defendants to produce, among other things, a third-party evaluation and report regarding problems with the concrete at H&E's Baton Rouge and Kenner facilities observed early on, long before litigation, and related correspondence and documents – documents that arguably go to the question of what Defendants knew and intended with respect to observed problems with and repairs to the concrete as well as their own obligations with respect to those problems.

Defendants' assertions to the contrary notwithstanding, there are numerous disputed issues of material fact in this case, including but not limited to the parties' intent as to the effects of the "Warranty" provision and waiver of consequential damages included in the 2009 Agreement. Discovery regarding the parties' intent is therefore necessary.

While discovery need not be entirely completed before a Motion for Summary Judgment is filed or heard, it must be sufficiently completed to leave no contested issues of material facts. This case is not a case with uncontested issues of material fact.

### IV.    Conclusion

Defendants' Motion is predicated on the incorrect notion that the 2009 Agreement controls the entirety of this dispute. It does not. Plainly, the 2006 Agreement controls Defendants' responsibilities at the Baton Rouge facilities, and questions remain regarding the parties' intent with regard to the application of the 2009 Agreement to other issues.

-13-

NON-CERTIFIED COPY

Notwithstanding Defendants' assertions to the contrary, this case involves significant questions of material fact, any one of which renders summary judgment inappropriate. For all of the reasons set forth above, H&E respectfully urges this Court to deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY: _Laura E. Carlisle_
ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR H&E EQUIPMENT
SERVICES, INC.**

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served on all known counsel of record who have appeared in this matter by facsimile and/or electronic mail and by placing same in the United States mail, in a properly addressed envelope, with first-class postage prepaid.

_Laura E. Carlisle_
LAURA E. CARLISLE



FILED
EAST BATON ROUGE PARISH, LA
2015 JUN 12 AM 11: 00
DEPUTY CLERK OF COURT

-14-

NO LEC 866432 v1
2919213-000024

NON-CERTIFIED COPY

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES, INC. | * | CASE NO. C626308, SECTION D |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON, AND THOMAS E. RYAN, III | * | PARISH OF EAST BATON ROUGE |
| | * | STATE OF LOUISIANA |
| FILED:_____ | | _____ |
| | | DEPUTY CLERK |

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, H&E Equipment Services, Inc. ("H&E"), respectfully submits this Response to the Statement of Undisputed Material Facts submitted in support of the Motion for Summary Judgment filed by defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS").

1.    H&E objects to Statement 1 on the grounds that the referenced Short Form Master Agreement for Professional Services (the "2009 Agreement") is the best evidence of its contents and its terms.  Subject to that objection, Statement 1 is admitted as substantially correct.

2.    H&E objects to Statement 2 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms.  Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement.  Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 2 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

3.    H&E objects to Statement 3 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms.  Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement.  Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 3 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

4.    H&E objects to Statement 4 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms.  Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement.  Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 4 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

5.    H&E objects to Statement 5 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms.  Further, it is for the Court, not URS

NO LEC 866352 v2
2919213-000024

EBR2979750

NON-CERTIFIED COPY

or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 5 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

6.    H&E objects to Statement 6 on the grounds that the 2009 Agreement is a document that is the best evidence of its contents and terms. Further, it is for the Court, not URS or its counsel, to interpret the 2009 Agreement. Subject to this objection, to the extent a response from H&E is required, H&E responds that Statement 6 is not a fact but rather a conclusion of law regarding the terms of the 2009 Agreement and is, therefore, denied.

7.    H&E objects to Statement 7 on the grounds that it references a document that is the best evidence of its contents. Subject to that objection, Statement 7 is admitted as substantially correct.

8.    H&E otherwise denies that the 2009 Agreement is the only agreement between the parties. H&E denies that the 2009 Agreement governs the entirety of the work performed by URS, and further maintains that certain provisions of the 2009 Agreement are unenforceable.

Respectfully submitted,

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

BY _____
ROY C. CHEATWOOD (4010)
ANNE DERBES WITTMANN (20584)
M. DAVID KURTZ (23821)
LAURA E. CARLISLE (33760)
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

ATTORNEYS FOR H&E EQUIPMENT
SERVICES, INC.



FILED
EAST BATCH ROUGE PARISH, L
2015 JUN 12 AM 11: 05
DEPUTY CLERK OF COURT

-2-

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of June, 2015, the foregoing was served on all known counsel of record who have appeared in this matter by facsimile and/or electronic mail and by placing same in the United States mail, in a properly addressed envelope, with first-class postage prepaid.

LAURA E. CARLISLE



NO LEC 866352 v2
2919213-000024

NON-CERTIFIED COPY

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170

PHONE:   504.566.5200
FAX:       504.636.4000

www.bakerdonelson.com

**LAURA E. CARLISLE**
Direct Dial: (504) 566-8643
Direct Fax: (504) 585-6943
E-Mail Address: lcarlisle@bakerdonelson.com

June 9, 2015

POSTED
JUN 15 2015

Hon. J. Douglas Welborn
Clerk of Court, 19th JDC
Parish of East Baton Rouge
300 North Boulevard
P.O. Box 1991
Baton Rouge, Louisiana 70821

Re:   *H&E Equipment Services, Inc. vs. URS Corporation Architecture, PC., et al.*
      *19*th *JDC No. 626308, Division "D", Section XX1*

Dear Mr. Welborn:

Please find enclosed originals and two copies of the Opposition to Defendants' Motion for Summary Judgment and Response to Statement of Undisputed Material Facts Submitted in Support of Defendants' Motion for Summary Judgment, which were fax-filed on June 5, 2015. Please file the originals into the record and return conformed copies to me in the self-addressed, postage paid envelope provided. I also enclose our firm's check in the amount of $300.00 to cover the cost associated with these filings.

With kindest regards, I remain

Sincerely,

/s/ Laura E. Carlisle

Laura E. Carlisle

LEC/sdt
Encl.
cc:   Philip A. Franco, Esq. w/encl.
      Kellen Matthews, Esq. w/encl.

REC'D C.P.
JUN 15 2015

EBR297947

NO LEC 866978 v1
2919213-000024

ALABAMA    FLORIDA    GEORGIA    LOUISIANA    MISSISSIPPI    TENNESSEE    TEXAS    WASHINGTON, D.C.

NON-CERTIFIED COPY

Clavier v. Our Lady of the Lake Hosp. Inc., 112 So.3d 881 (2012)

2012-0560 (La.App. 1 Cir. 12/28/12)

112 So.3d 881
Court of Appeal of Louisiana,
First Circuit.

Faron CLAVIER and Annette Clavier

v.

OUR LADY OF THE LAKE HOSPITAL, INC., Dr. Richard Byrd,

Pathology Group of Louisiana, APMC and Dr. Stephen Mason.

No. 2012 CA 0560.   |   Dec. 28, 2012.

**Synopsis**
**Background:** Patient's parents brought action against doctor, physicians' group, and hospital alleging tort claim of spoliation of evidence as to the cause of patient's death the day after surgery while he was on a patient controlled analgesia pump. The Nineteenth Judicial District Court, Parish of East Baton Rouge, No. 603,531, Sec. 27, Todd Hernandez, J., dismissed. Parents appealed.

**Holdings:** The Court of Appeal, Kuhn, J., held that:

[1] defendants had no duty to conduct toxicology screen or collect other evidence;

[2] parents failed to allege intentional action on part of defendants;

[3] parents' requested amendment of petition could not remove grounds for defendants' objection;

[4] parents' claim of spoliation accrued at time of doctor's deposition; and

[5] discovery rule did not apply to delay the accrual of cause of action.

Affirmed.

West Headnotes (19)

[1]   **Pleading**
      No cause of action
      The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts of the pleading.

      1 Cases that cite this headnote

[2]   **Pleading**
      No cause of action
      **Pleading**

CLERK OF COURT
FILE COPY
CASE ID:
FILING DATE
ATTORNEY
NO. PAGES

EXHIBIT ATTACHMENT TO:
☐   MOTION SUMMARY JGMT
☐   PETITION
☐   MEMORANDUM
☐   OTHER_____

DEPUTY CLERK

**ATTACHMENT 1**



NON-CERTIFIED COPY

EBR2980063

Clavier v. Our Lady of the Lake Hosp. Inc., 112 So.3d 881 (2012)

2012-0560 (La.App. 1 Cir. 12/28/12)

Facts

When a defendant raises the peremptory exception of no cause of action, a court must review the petition and accept all well pleaded facts as true, and the only issue is whether, on the face of the petition, plaintiffs are legally entitled to the relief sought.

1 Cases that cite this headnote

[3]   **Torts** 💬
Spoliation, Destruction, or Loss of Evidence

The theory of "spoliation" of evidence refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use.

5 Cases that cite this headnote

[4]   **Torts** 💬
Spoliation, Destruction, or Loss of Evidence

**Torts** 💬
Negligence

A plaintiff asserting a tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence; allegations of negligent conduct are insufficient.

2 Cases that cite this headnote

[5]   **Torts** 💬
Spoliation, Destruction, or Loss of Evidence

The obligation or duty to preserve evidence, the failure of which may give rise to a tort claim for spoliation of evidence, arises from the foreseeability of the need for the evidence in the future.

2 Cases that cite this headnote

[6]   **Torts** 💬
Pleading

The failure to identify evidence that was intentionally destroyed to deprive opposing parties of its use where the defendant had a duty to collect such evidence is detrimental to a plaintiff's tort claim of spoliation of evidence.

5 Cases that cite this headnote

[7]   **Torts** 💬
Particular cases

Hospital, physicians' group, and doctors had no duty to conduct a toxicology screen as part of a restricted medical autopsy of patient following his post-surgical death or to require that patient controlled analgesia pump not be disconnected so that its recorded data could be made part of the hospital's record, and thus patient's surviving parents could not make an independent tort claim of intentional spoliation of evidence, where no litigation was pending or imminent at time of the defendants' alleged actions or omissions.

Cases that cite this headnote

ATTACHMENT 1

NON-CERTIFIED COPY

Clavier v. Our Lady of the Lake Hosp. Inc., 112 So.3d 881 (2012)

2012-0560 (La.App. 1 Cir. 12/28/12)

[8]    **Torts** ⟲

Particular cases

Parents of deceased surgical patient failed to allege that any actions on part of hospital, physicians' group, and doctors in not gathering evidence about patient's death were for the purpose of depriving parents of the use of that information for litigation, as required to state claim for the tort of intentional spoliation of evidence about the death, the cause of which was classified as "unknown" on death certificate but could have been from certain cardiac events or an adverse reaction to narcotics from his patient controlled analgesia pump.

Cases that cite this headnote

[9]    **Pleading** ⟲

Determination and operation and effect thereof

Plaintiffs' requested amendment of petition alleging tort claim of spoliation of evidence concerning cause of surgical patient's death could not remove grounds for the peremptory exception of no cause of action, and thus plaintiffs could not amend petition to state a cause of action for spoliation; defendants had no duty to collect data to support plaintiffs' theory of cause of death, and there was no pending or imminent litigation at the time of defendants' alleged actions or omissions.

Cases that cite this headnote

[10]    **Limitation of Actions** ⟲

Burden of proof in general

While the party pleading prescription ordinarily bears the burden of proving the right to bring the claim has prescribed, when the face of the petition reveals that the plaintiff's right has prescribed, the burden shifts to the plaintiff to demonstrate prescription was interrupted or suspended.

Cases that cite this headnote

[11]    **Appeal and Error** ⟲

Proceedings preliminary to trial

If evidence is introduced at the hearing on the peremptory exception of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review.

Cases that cite this headnote

[12]    **Appeal and Error** ⟲

Reasonably supported findings

If the findings of a trial court at the trial of a peremptory exception of prescription are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

Cases that cite this headnote

[13]    **Limitation of Actions** ⟲

Nature of harm or damage, in general

**ATTACHMENT 1**

NON-CERTIFIED COPY

Clavier v. Our Lady of the Lake Hosp. Inc., 112 So.3d 881 (2012)

2012-0560 (La.App. 1 Cir. 12/28/12)

Tort claim of spoliation of evidence of surgical patient's death accrued, and prescription commenced to run, on date that surgeon gave deposition testimony concerning post-surgical care and post-death information gathering; at time of surgeon's deposition, plaintiffs had actual knowledge that hospital employees had unplugged patient controlled analgesia pump, resulting in loss of recorded data, and that a restricted medical autopsy without toxicology screens had been performed on patient. LSA–C.C. arts. 3467, 3492; LSA–R.S. 9:5628.

Cases that cite this headnote

[14]     **Limitation of Actions**
Nature of harm or damage, in general

Discovery rule did not apply to delay the accrual of cause of action for tort of spoliation of evidence of surgical patient's death beyond the date that surgeon gave deposition on the matter, to a later date that a medical review panel rendered an unfavorable ruling on plaintiffs' allegations of medical malpractice; on date of surgeon's deposition, plaintiffs had actual knowledge that hospital employees had unplugged patient controlled analgesia pump, resulting in loss of recorded data, and that a restricted medical autopsy without toxicology screens had been performed on patient. LSA–R.S. 9:5628; LSA–C.C. arts. 3467, 3492.

Cases that cite this headnote

[15]     **Limitation of Actions**
Causes of action in general

The doctrine of contra non valentem only applies in exceptional circumstances.

Cases that cite this headnote

[16]     **Limitation of Actions**
Want of diligence by one entitled to sue

Under the discovery rule, a plaintiff is deemed to know what he can by reasonable diligence learn.

Cases that cite this headnote

[17]     **Limitation of Actions**
In general; what constitutes discovery

Under the discovery rule, prescription begins to run when the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant.

Cases that cite this headnote

[18]     **Limitation of Actions**
Knowledge as to extent of harm or damage

Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm that delays commencement of prescription under the discovery rule.

Cases that cite this headnote

[19]     **Limitation of Actions**
Knowledge as to extent of harm or damage

ATTACHMENT 1

NON-CERTIFIED COPY

Clavier v. Our Lady of the Lake Hosp. Inc., 112 So.3d 881 (2012)
2012-0560 (La.App. 1 Cir. 12/28/12)

Prescription runs from the date on which a plaintiff first suffers actual and appreciable damage even though he may thereafter come to a more precise realization of the damages he has already incurred or incurs further damage as a result of the completed tortious act.

Cases that cite this headnote

**Attorneys and Law Firms**

*883  Benjamin P. Mouton, Eric E. Helm, Baton Rouge, LA, for Plaintiffs–Appellants Faron Clavier and Annette Clavier.

Vance A. Gibbs, Randal R. Cangelosi, Baton Rouge, LA, for Defendant–Appellee Pathology Group of Louisiana, APMC.

Douglas K. Williams, Jordan L. Faircloth, Baton Rouge, LA, for Defendant–Appellee Our Lady of the Lake Hospital, Inc.

*884  Janie Languirand Coles, Baton Rouge, LA, for Defendant–Appellee Richard Byrd, M.D.

Before KUHN, PETTIGREW, and McDONALD, JJ.

**Opinion**

KUHN, J.

**2  Plaintiffs-appellants, Faron and Annette Clavier, individually and as the surviving parents of their deceased son, Casey Clavier, appeal the trial court's judgment sustaining peremptory exceptions raising the objection of prescription and dismissing their claims against defendants-appellees, Dr. Richard Byrd, Our Lady of the Lake Hospital, Inc. (OLOL), and Pathology Group of Louisiana, APMC (PGL). Because we hold that plaintiffs' petition fails to state a cause of action and, alternatively, that the matter is prescribed, we affirm the dismissal.

<div align="center">

**FACTUAL AND PROCEDURAL BACKGROUND**

</div>

On October 22, 2009, Casey underwent a surgical procedure, performed by Dr. Byrd at OLOL, to address complications from Crohn's colitis. [1] After the operation, Casey was placed in a recovery unit and then later moved to a regular room. On October 23, 2009, at approximately 2 a.m., Casey died in his room at OLOL. Dr. Byrd advised the Claviers of several possible causes of death. These included that Casey had: bled to death in his pelvis (which was the site where the operation had been performed); an adverse reaction to prescribed narcotics; a cardiac infarction or other cardiac event; or a pulmonary embolus. Because there was no obvious cause of death, Dr. Byrd requested that the Claviers allow an autopsy to be performed on Casey, and they consented.

Dr. Stephen Mason of PGL undertook a restricted, medical autopsy of Casey's abdomen, pelvis, and chest, which was performed at OLOL. Although the results of the autopsy ruled out several suspected causes of Casey's death, certain plausible cardiac events or an adverse reaction to narcotics were potential causes **3 that could not be eliminated. Dr. Byrd classified Casey's death as "unknown" on the death certificate.

On July 18, 2011, the Claviers filed this lawsuit, alleging that a medical review panel had reviewed Casey's medical care and unanimously concluded the evidence did not support the conclusion that OLOL employees or Dr. Byrd failed to meet the applicable standards of care. Urging that the medical review panel's conclusion was based on a lack of evidence to support their claim that over sedation/respiratory distress/respiratory failure, attributable to breaches in the standards of care that OLOL and Dr. Byrd owed to Casey, was the cause of his death, the Claviers claimed entitlement to damages for spoliation of evidence as a result of the actions and omissions of Dr. Byrd, OLOL, and PGL, naming each as a defendant in this litigation.

<div align="center">

**ATTACHMENT 1**

</div>

NON-CERTIFIED COPY

Clavier v. Our Lady of the Lake Hosp. Inc., 112 So.3d 881 (2012)

2012-0560 (La.App. 1 Cir. 12/28/12)

Dr. Byrd, OLOL, and PGL each filed a peremptory exception objecting to the timeliness of the Claviers' claims for damages for spoliation. Collectively the defendants maintained that even if it were assumed that the Claviers had a viable cause of action for spoliation, their lawsuit was nevertheless untimely. After a hearing, the trial court agreed with the defendants, sustained the exceptions of prescription, and dismissed the Claviers' petition. This appeal followed.

## NO CAUSE OF ACTION

[1]  [2]  Initially we point out that this court may notice the peremptory exception **\*885** raising the objection of no cause of action on its own motion. *See* La. C.C.P. art. 927 B; *Capital City Towing & Recovery, Inc. v. City of Baton Rouge*, 97–0098 (La.App. 1st Cir.2/20/98), 709 So.2d 248, 251. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether **\*\*4** the law affords a remedy on the facts of the pleading. A court must review the petition and accept all well pleaded facts as true, and the only issue is whether, on the face of the petition, plaintiffs are legally entitled to the relief sought. *Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary and Secondary Educ.*, 2011–2067 (La.App. 1st Cir.6/22/12), 97 So.3d 440, 444.

The plaintiffs, who are the parents of Casey, have filed this lawsuit separately from the medical malpractice lawsuit they have asserted against defendants Dr. Byrd and OLOL, which has yet to be tried. [2]  They have also included PGL, individually and as employer of Dr. Mason, in this spoliation lawsuit. [3]

In this petition, the Claviers assert that the action of OLOL employees of unplugging a PCA pump (prescribed by Dr. Byrd to administer Casey's narcotic intake), which resulted in the erasure of recorded data that would have shown the amounts of narcotic drugs that Casey had received subsequent to surgery, constituted intentional spoliation of the evidence by the hospital. [4]  Additionally, the Claviers contend the performance of an autopsy without toxicology screens constituted intentional spoliation of evidence by: Dr. Byrd, who did not expressly request toxicology screens; OLOL for reporting the death to East Baton Rouge Parish rather than Acadia Parish, the latter of which, it is alleged, would have required toxicology screens as part of an autopsy; PGL for the actions of Dr. Mason in failing to include toxicology screens in conducting the autopsy and to advise Dr. **\*\*5** Byrd of such; and by PGL individually for failing to include toxicology screens where an adverse reaction to prescribed narcotics was a possible cause of death.

[3]  [4]  [5]  [6]  The theory of "spoliation" of evidence refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. A plaintiff asserting a claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient. *Barthel v. State, Dep't of Transp. and Dev.*, 2004–1619 (La.App. 1st Cir.6/10/05), 917 So.2d 15, 20. Historically, when a litigant fails to produce evidence within his reach, the courts have applied a presumption that the evidence would have been detrimental to his case. *See Randolph v. General Motors Corp.*, 93–1983 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, *writ denied*, 95–0194 (La.3/17/95), 651 So.2d 276. The obligation or duty to preserve evidence arises from the foreseeability of the need for the evidence in the future. *Dennis v. Wiley*, 2009–0236 (La.App. 1st Cir.9/11/09), 22 So.3d 189, 195, *writ denied*, 2009–2222 (La.12/18/09), 23 So.3d 949. The failure to identify evidence that was intentionally destroyed to deprive its use where the defendant had a duty to collect such evidence is **\*886** detrimental to plaintiff's claim for spoliation. *See Jackson v. Home Depot, Inc.*, 2004–1653 (La.App. 1st Cir.6/10/05), 906 So.2d 721, 728.

Initially, we note the Claviers have not alleged that at the time of the acts and alleged omissions of the defendants, litigation was pending or imminent. And the Claviers have not produced anything to support the conclusion that Casey's death was caused by an adverse reaction or overdose of prescribed medication rather than as a result of a cardiac event, both of which were causes of death that were not **\*\*6** eliminated by the autopsy that was performed. Thus, the Claviers have not shown the existence of any evidence that was actually destroyed by the defendants.

## ATTACHMENT 1

NON-CERTIFIED COPY