

NON-CERTIFIED COPY

EXHIBIT

E

BAILEY

EXHIBIT NO. 24

K. DONNELLY



NON-CERTIFIED COPY

BAILEY

EXHIBIT NO. 32

K. DONNELLY

**E*x*ponent***

*Failure Analysis Associates*

Exponent
475 14th Street, Suite 400
Oakland, CA 94612

telephone 510-268-5000
facsimile 510-268-6099
www.exponent.com

August 26, 2016

Loretta G. Mince, Esq.
Fishman Haygood, L.L.P.
201 St. Charles Avenue
46th Floor
New Orleans, Louisiana 70170

Subject:   H&E Equipment Facilities
           Exponent Project No. 1306663.001

Dear Ms. Mince:

I reviewed the Change Order (CO) documents related to the construction of the H&E Equipment facilities at Baton Rouge, Kenner, and Belle Chasse.   Based on the CO documents produced by URS, and my education, training, and 28 years of experience in the construction industry, the added project costs could have been mitigated.  Using the Cost of Change v. Time model, the cost of work added to the scope by change order can be estimated  to be 1.5 to 2 times greater than the cost otherwise would have been had the scope of work been included in the contract documents prior to bidding the project.

If you have any questions or require additional information, please do not hesitate to contact me at 510-268-5083.

Sincerely,

Matt Vail, P.E.
Senior Manager
Construction Consulting Practice
Exponent, Inc.



James R. (Bob) Bailey, Ph.D., P.E.
Senior Managing Engineer
Exponent, Inc.

*BAILEY*
EXHIBIT NO. 8
K. DONNELLY

1306663.001 - 6901

EXHIBIT
F

E*x*

NON-CERTIFIED COPY

**EXHIBIT A**
## DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA DUCES TECUM

### DEFINITIONS

1.     Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes but is not limited to documents that evidence such communication(s).

2.     Document. The term "document" is defined to include any writings, letters, emails, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any form or medium.

3.     Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4.     Relating or referring. The terms "relating" or "referring" mean relating to, referring to, describing, evidencing, or constituting.

5.     All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6.     And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.     H&E. The term "H&E" means H&E Equipment Services, Inc., and its employees, principals, representatives, and agents.

8.     H&E Projects. The term "H&E Projects" means the construction work, including, but not limited to, the laying of concrete, relating to H&E facilities located in Baton Rouge, LA, Kenner, LA, and Belle Chase, LA.



1075230v.1

NON-CERTIFIED COPY

## DOCUMENTS

1.    Any and all documents reflecting any communications by or between any persons that relate or refer to the H&E Projects.

2.    Any and all documents that relate or refer to the H&E Projects, including but not limited to project files, reports, memoranda, lab analysis, testing results, specs, drawings, plans, work orders, change orders, and/or requests for information.

NON-CERTIFIED COPY

**EXHIBIT A**

**DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA DUCES TECUM**

**DEFINITIONS**

1.      Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes but is not limited to documents that evidence such communication(s).

2.      Document. The term "document" is defined to include any writings, letters, emails, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any form or medium.

3.      Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4.      Relating or referring. The terms "relating" or "referring" mean relating to, referring to, describing, evidencing, or constituting.

5.      All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6.      And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.      H&E. The term "H&E" means H&E Equipment Services, Inc., and its employees, principals, representatives, and agents.

8.      H&E Projects. The term "H&E Projects" means the construction work, including, but not limited to, the laying of concrete, relating to H&E facilities located in Baton Rouge, LA, Kenner, LA, and Belle Chase, LA.



1075230v.1

NON-CERTIFIED COPY

**DOCUMENTS**

1.    Any and all documents reflecting any communications by or between any persons that relate or refer to the H&E Projects.

2.    Any and all documents that relate or refer to the H&E Projects, including but not limited to project files, reports, memoranda, lab analysis, testing results, specs, drawings, plans, work orders, change orders, and/or requests for information.

NON-CERTIFIED COPY

# FishmanHaygood

Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
fishmanhaygood.com

REBECCA SHA
(504) 556-5530
RSHA@FISHMANHAYGOOD.COM

July 15, 2016

File No. 3107-04

*Via Federal Express*



POSTED

JUL 19 2016

Clerk of Court
19th JDC, Parish of East Baton Rouge
300 North Boulevard
Baton Rouge, Louisiana  70802

Re:    *H&E Equipment Services, Inc. v URS Corporation Architecture, P.C., et al*
       Docket No. 626308, Sec. "D"

Dear Ms. Welborn:

On behalf of Plaintiff, H&E Equipment Services, Inc., please issue the appropriate subpoena duces tecum for the following to appear on August 12, 2016 at 10:00 a.m. at Fishman Haygood, LLP, 201 St. Charles Avenue, 46th Floor, New Orleans, Louisiana 70170.

1   Terracon Consultants, Inc.
    Custodian of Records         *1265987*
    2822 O'Neal Lane, Building B
    Baton Rouge, LA  70816

2   Benchmark Group, LLC
    Custodian of Records         *1266003*
    11328 Pennywood Ave.
    Baton Rouge, LA  70809

3   Coastal Concrete Products, LLC   *1266008*
    Custodian of Records
    15160 Intracoastal Drive
    New Orleans, LA  70129

I have enclosed our check for $393 to cover the cost for filing and service fees for the attached documents.  Please return a stamped copy for our file in the enclosed stamped envelope.



1075411v.1

NON-CERTIFIED COPY

July 14, 2016
Page 2

FishmanHaygood

Your courtesy in this matter is appreciated.

Respectfully,

Rebecca Sha

RS/dob
Enclosures

1075411v.1

NON-CERTIFIED COPY

ORIGIN ID:NEWA      (504) 586-5252
REBECCA SHA
FISHMAN HAYGOOD, L.L.P.
201 SAINT CHARLES AVE
STE 4600
NEW ORLEANS, LA 70170
UNITED STATES US

SHIP DATE: 15JUL16
ACTWGT: 0.50 LB
CAD: 5347965/INET3730

BILL SENDER

TO  **CLERK OF COURT**
    **19TH JDC, EAST BATON ROUGE**
    **300 NORTH BOULEVARD**

    **BATON ROUGE LA 70802**
(504) 586-5252          REF: 3107-4
INV:
PO                                    DEPT:




FedEx
Express

**MON - 18 JUL 10:30A**
**PRIORITY OVERNIGHT**

TRK#  **7767 6237 3222**
0201

**42 OPLA**          **70802**
LA-US  **MSY**



NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                          DEPUTY CLERK

### NOTICE OF RECORDS DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the Louisiana Code of Civil Procedure, Plaintiff H&E Equipment Services, Inc. has caused to issue a subpoena duces tecum to Coastal Concrete Products, L.L.C. The subpoena duces tecum requests Coastal deliver documents in the attached Exhibit A to the offices of Fishman Haygood L.L.P., 201 St. Charles Avenue, 46th Floor, New Orleans, Louisiana 70170, on August 12, 2016 at 10:00 a.m. If the documents are received by undersigned counsel on or prior to the appointed time, a personal appearance is unnecessary. You are hereby noticed to appear and take part in the examination as you see fit and proper.



1075306v.1

NON-CERTIFIED COPY

Respectfully submitted,

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar. No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

# CERTIFICATE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 15th day of July, 2016.

Rebecca Sha

1075306v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                   SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                           DEPUTY CLERK

### NOTICE OF RECORDS DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the Louisiana Code of Civil Procedure,
Plaintiff H&E Equipment Services, Inc. has caused to issue a subpoena duces tecum to Terracon
Consultants, Inc. The subpoena duces tecum requests Terracon deliver documents in the
attached Exhibit A to the offices of Fishman Haygood L.L.P., 201 St. Charles Avenue, 46th
Floor, New Orleans, Louisiana 70170, on August 12, 2016 at 10:00 a.m. If the documents are
received by undersigned counsel on or prior to the appointed time, a personal appearance is
unnecessary. You are hereby noticed to appear and take part in the examination as you see fit
and proper.

EBR3756849

1075230v.1

NON-CERTIFIED COPY

Respectfully submitted,

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar. No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

## CERTIFICATE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 15th day of July, 2016.

Rebecca Sha



NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                   SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                                        DEPUTY CLERK

## NOTICE OF RECORDS DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the Louisiana Code of Civil Procedure,

Plaintiff H&E Equipment Services, Inc. has caused to issue a subpoena duces tecum to

Benchmark Group, L.L.C. The subpoena duces tecum requests Benchmark deliver documents in

the attached Exhibit A to the offices of Fishman Haygood L.L.P., 201 St. Charles Avenue, 46th

Floor, New Orleans, Louisiana 70170, on August 12, 2016 at 10:00 a.m. If the documents are

received by undersigned counsel on or prior to the appointed time, a personal appearance is

unnecessary. You are hereby noticed to appear and take part in the examination as you see fit

and proper.



1075304v.1

NON-CERTIFIED COPY

Respectfully submitted,

_____

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar. No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile:  (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing document has been served upon

all counsel of record by facsimile, email and/or by placing same in the United States mail,

postage prepaid and properly addressed, this 15th day of July, 2016.

_____

Rebecca Sha



NON-CERTIFIED COPY

## FISHMAN HAYGOOD, L.L.P.

201 ST. CHARLES AVENUE
46TH FLOOR
NEW ORLEANS, LA 70170
PHONE: (504) 586-5252
FAX: (504) 586-5250

# FAX

**TO:**   Clerk, 19th JDC          **FAX NUMBER:** 225-389-3392
Parish of East Baton Rouge

**FROM:** Lori Mince          **DIRECT DIAL NO:** 504-586-5273

**DATE:** July 20, 2016          **FILE NO. 1217-52**

We are sending 3 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

Re:    *H&E Equipment Services, Inc. v URS Corporation Architecture, P.C, et al*
19th JDC, Doc. No. 626-308, Sec. "D", Parish of East Baton Rouge

Dear Clerk:

Attached please find a Motion to Enroll Additional Counsel of Record.  Please file into the record and confirm *via* facsimile the cost for **fax and filing fees** for the attached document. As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

Thanking you in advance for your assistance.

Respectfully,

Carla Cooper Mayer
Legal Assistant to Lori Mince
Fishman Haygood



EBR3703975

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____      _____
                                    DEPUTY CLERK

## MOTION TO ENROLL ADDITIONAL COUNSEL OF RECORD

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff H&E Equipment

Services, Inc. who moves to enroll Rebecca Sha, Bar No. 35317 of the law firm Fishman

Haygood, L.L.P., as counsel of record for Plaintiff.



Respectfully submitted,

_____
Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Shaw, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Motion to Enroll Additional

Counsel of Record has been served upon all counsel of record by facsimile, email and/or by

placing same in the United States mail, postage prepaid and properly addressed, this 19th day of

July, 2016.

_____
Loretta G. Mince

1076264v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____       _____
                                                   DEPUTY CLERK

## ORDER

**CONSIDERING** the foregoing Motion to Enroll Additional Counsel;

**IT IS ORDERED**, that Rebecca Sha, Bar No. 35317of Fishman Haygood, L.L.P. and

hereby is enrolled as counsel of record for Plaintiff H&E Equipment Services, Inc. in the above-

captioned matter.

Baton Rouge, Louisiana, this _____ day of _____, 2016.

_____
J U D G E



1076264v.1

NON-CERTIFIED COPY

```
** Transmit Conf.Report **

P.1
EBR CLERK OF COURT    Fax 2253893392              Jul 20 2016 02:49pm
```

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 20:02:49pm | 0'33" | 1 | * O K | |



# DOUG WELBORN
## CLERK OF COURT

### PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3962
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

Date:    20-JUL-2016

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: MOTION TO ENROLL

Total Amount Due (includes all applicable fees below) $ 67.00

The Clerk of Court's office has received, by facsimile transmission dated 7/20/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)         A transmission fee of five dollars
13:841(A)(2)(a)      First page of each pleading, six dollars
13:841(A)(2)(b)      Each subsequent page, four dollars
13:841(A)(2)(c)      Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)      Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Antoinequia Butler*
Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

---

## FAX RECEIPT

NUMBER C626308  Division D
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

Date:    20-JUL-2016

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: MOTION TO ENROLL

Total Amount Due (includes all applicable fees below) $ 67.00

The Clerk of Court's office has received, by facsimile transmission dated 7/20/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_Antonequia Butler_
_____
_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

3107-04

NUMBER C626308  Division D

Date:    20-JUL-2016

H&E EQUIPMENT SERVICES INC

VS

URS CORPORATION ARCHITECTURE PC ET AL

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: MOTION TO ENROLL

Total Amount Due (includes all applicable fees below) $ 67.00

The Clerk of Court's office has received, by facsimile transmission dated 7/20/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

## NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
## UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

## SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
## SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

## IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
## IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_Antorequa Butler_

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



REC'D C.P.

JUL 2 7 2016

NON-CERTIFIED COPY

6806-16-001409

# SUBPOENA DUCES TECUM
## and SUBPOENA for DEPOSITION

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

vs.

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**NUMBER   C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**



TO:   **SANTEC CONSULTING SERVICES, INC.
THROUGH ITS REGISTERED AGENT
CORPORATION SERVICE COMPANY
501 LOUISIANA AVENUE
BATON ROUGE, LA 70802**

You are hereby commanded to appear at the office of:

**ADAMS AND REESE, LLP
450 LAUREL STREET, SUITE 1900
BATON ROUGE, LA 70801**

at **3:00 PM** on **AUGUST 10, 2016** and have your oral testimony taken in the above entitled and numbered cause, in accordance with Act No. 15 of 1960.  And you are commanded to produce at the above time and place the following:

### **SEE ATTACHED NOTICE OF RECORDS DEPOSITION
FOR DOCUMENTS TO BE PRODUCED**
***SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354***

This SUBPOENA was requested by Attorney **KELLEN J. MATHEWS** and was issued by the Clerk of Court on **15-JUL-2016**.

*Whitney LeBoeuf*
_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

---

### SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:** After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:     $_____
MILEAGE      $_____
TOTAL:       $_____

Deputy Sheriff

**FILED**
JUL 19 2016

DEPUTY CLERK OF COURT

SUBPOENA DUCES TECUM and SUBPOENA for DEPOSITION – 6806

EBR3499667

EBR3767882

NON-CERTIFIED COPY

# DOUG WELBORN, CLERK OF COURT
## 19th Judicial District Court
## Parish of East Baton Rouge
### 300 North Boulevard
### Baton Rouge, LA 70801
### Phone  (225)389-3960

NO.   C626308 Division D                    21-JUL-2016


TO:   ORLEANS PARISH SHERIFFS OFFICE
      CIVIL DEPARTMENT
      421 LOYOLA AVE
      NEW ORLEANS, LA 70112


Please find attached SUBPOENA DUCES TECUM  to be served in your parish for the above numbered suit.

Kindly make your return(s) on the duplicate(s) enclosed, and

> X       note the enclosed check for payment of service;
> ف       send us your bill for service;
> ف       note that this is a pauper suit and no funds are available; or
> ف       note that this is a government suit and no funds are necessary.

                                    Thank You,

                                    Deputy Clerk of Court for
                                    **Doug Welborn, Clerk of Court**

Requesting Attorney:  REBECCA SHA

_____

REPLY:                          DATE:_____

_____

_____

_____

_____

_____

                        By:_____

                        Deputy Sheriff, Parish of  _____


**Letter to Out Of Parish Sheriff - 5213**


EBR3260621

NON-CERTIFIED COPY

6803-16-001944

# SUBPOENA DUCES TECUM

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

NUMBER  C626308 Division D

19th JUDICIAL DISTRICT COURT

**vs.**

PARISH OF EAST BATON ROUGE

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

STATE OF LOUISIANA

TO:   **BENCHMARK GROUP, LLC
CUSTODIAN OF RECORDS
11328 PENNYWOOD AVE.
BATON ROUGE, LA.  70809**

You have been ordered by the Court to produce in the office of:

**FISHMAN HAYGOOD LLP
201 ST CHARLES AVE. 46TH FLOOR
NEW ORLEANS, LA.  70170**

at **10:00 AM** on **AUGUST 12,2016** the following:

SEE ATTACHED NOTICE OF RECORDS DEPOSITION WITH EXHIBIT
***SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354***

If this case is continued, you must bring those items back with you.  If you do not come and do not bring these items, you will be violating the law and may be subject to penalties.

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **21-JUL-2016.**

Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

---

**SERVICE INFORMATION:**

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:**  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:      $_____
MILEAGE      $_____          _____
TOTAL:         $_____                    Deputy Sheriff

SUBPOENA DUCES TECUM (Office) – 6803


EBR3776742

NON-CERTIFIED COPY

6703-16-000738

# SUBPOENA DUCES TECUM

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

**vs.**

**URS CORPORATION ARCHITECTURE PC ET AL**
(Defendant)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**TO:    COASTAL CONCRETE PRODUCTS, LLC**
**CUSTODIAN OF RECORDS**
**15160 INTRACOASTAL DRIVE**
**NEW ORLEANS, LA.  70129**

You have been ordered by the Court to produce in the office of:

**FISHMAN HAYGOOD LLP**
**201 ST CHARLES AVE. 46TH FLOOR**
**NEW ORLEANS, LA.  70170**

at **10:00 AM** on **AUGUST 12,2016** the following:

SEE ATTACHED NOTICE OF RECORDS DEPOSITION WITH EXHIBIT
***SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354***

If this case is continued, you must bring those items back with you.  If you do not come and do not bring these items, you will be violating the law and may be subject to penalties.

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **21-JUL-2016**.

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

---

**SERVICE INFORMATION:**

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____ , served on the above named party as follows:

**PERSONAL SERVICE:**  On the party herein named at _____ .

**DOMICILIARY SERVICE:**  On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____ .

**DUE AND DILIGENT:**  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:**  Parish of _____, this _____ day of _____, 20_____ .

SERVICE:      $_____
MILEAGE      $_____                 _____
TOTAL:        $_____                      Deputy Sheriff

SUBPOENA DUCES TECUM (Office) (OOP) – 6703



EBR3776747

NON-CERTIFIED COPY

6803-16-001943

# SUBPOENA DUCES TECUM

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

vs.

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

TO:    **TERRACON CONSULTANTS, INC.
CUSTODIAN OF RECORDS
2822 O'NEAL LANE, BUILDING B
BATON ROUGE, LA.  70816**

You have been ordered by the Court to produce in the office of:

**FISHMAN HAYGOOD LLP
201 ST CHARLES AVE. 46TH FLOOR
NEW ORLEANS, LA.  70170**

at **10:00 AM** on **AUGUST 12,2016** the following:

SEE ATTACHED NOTICE OF RECORDS DEPOSITION WITH EXHIBIT
**\*\*\*SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354\*\*\***

If this case is continued, you must bring those items back with you.  If you do not come and do not bring these items, you will be violating the law and may be subject to penalties.

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **21-JUL-2016**.

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

---

**SERVICE INFORMATION:**
Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served
on the above named party as follows:
**PERSONAL SERVICE:**  On the party herein named at _____.

**DOMICILIARY SERVICE:**  On the within named _____, by leaving the same at his domicile
in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at
_____.

**DUE AND DILIGENT:**  After diligent search and inquiry, was unable to find the within named _____ or
his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:    $_____
MILEAGE    $_____          _____
TOTAL:       $_____                          Deputy Sheriff

SUBPOENA DUCES TECUM (Office) – 6803



EBR3776738

NON-CERTIFIED COPY

6805-16-000339

# CIVIL SUBPOENA
# FOR DEPOSITION

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

**NUMBER**   C626308 Division D

**19th JUDICIAL DISTRICT COURT**

vs.

**PARISH OF EAST BATON ROUGE**

**URS CORPORATION ARCHITECTURE PC ET AL**
(Defendant)

**STATE OF LOUISIANA**

TO:   MAPP CONSTRUCTION, LLC
THROUGH ITS REGISTERED AGENT
MICHAEL POLITO OR J. GRIFFITH MCKOWEN
344 THIRD STREET
BATON ROUGE, LA 70801

Tendering a copy of this document to

*Tappy*

JUL 20 2016

You must answer questions on this case. You must go to the office of:

**ADAMS AND REESE, LLP**
**450 LAUREL STREET, SUITE 1900**
**BATON ROUGE, LA 70801**

*Dy. S. Derosin*
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

at **9:00 AM** on **AUGUST 11, 2016**.  You must come because **KELLEN J MATHEWS** has requested that you answer questions, and the Court has ordered your appearance.

IF YOU DO NOT APPEAR, you will be violating the Law and may be subject to penalties. THIS IS YOUR ONLY NOTICE.

Ordered by the Court, on **15-JUL-2016**.

*whitney LeBoeuf*
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

---

**SERVICE INFORMATION:**

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:** After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:     $_____
MILEAGE      $_____
TOTAL:        $_____

_____
Deputy Sheriff

**CIVIL SUBPOENA FOR DEPOSITION – 6805**

FILED
JUL 2 9 2016
DEPUTY CLERK OF COURT

EBR3499577

EBR3767884

NON-CERTIFIED COPY

POSTED

JUL 27 2016

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                           SECTION: "D"

H&E EQUIPMENT SERVICES, INC                   COST OK $ 67.00

VERSUS                                        JUL 27 2016
                                              DEPUTY CLERK OF COURT
URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                              DEPUTY CLERK

**MOTION TO ENROLL ADDITIONAL COUNSEL OF RECORD**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff H&E Equipment

Services, Inc. who moves to enroll Rebecca Sha, Bar No. 35317 of the law firm Fishman

Haygood, L.L.P., as counsel of record for Plaintiff.

Respectfully submitted,

_____
Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Shaw, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile:  (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

**C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Motion to Enroll Additional

Counsel of Record has been served upon all counsel of record by facsimile, email and/or by

placing same in the United States mail, postage prepaid and properly addressed, this 29th day of

July, 2016.

_____
Loretta G. Mince

1076264v.1

FAX COPY FILED 7.20.16
OR.  FILED 7.22.16

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                                DEPUTY CLERK

### ORDER

**CONSIDERING** the foregoing Motion to Enroll Additional Counsel;

**IT IS ORDERED**, that Rebecca Sha, Bar No. 35317of Fishman Haygood, L.L.P. and hereby is enrolled as counsel of record for Plaintiff H&E Equipment Services, Inc. in the above-captioned matter.

Baton Rouge, Louisiana, this 28 day of July, 2016.

JUDGE



FILED
EAST BATON ROUGE PARISH, LA
2016 JUL 22  PH 1:06
DEPUTY CLERK OF COURT

1076264v.1

NON-CERTIFIED COPY

6803-16-001944

# SUBPOENA DUCES TECUM

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

vs.

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

TO:    BENCHMARK GROUP, LLC
         CUSTODIAN OF RECORDS
         11328 PENNYWOOD AVE.
         BATON ROUGE, LA.  70809

You have been ordered by the Court to produce in the office of:

FISHMAN HAYGOOD LLP
201 ST CHARLES AVE. 46TH FLOOR
NEW ORLEANS, LA.  70170

at **10:00 AM** on **AUGUST 12,2016** the following:

SEE ATTACHED NOTICE OF RECORDS DEPOSITION WITH EXHIBIT
***SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354***

If this case is continued, you must bring those items back with you.  If you do not come and do not bring these items, you will be violating the law and may be subject to penalties.

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **21-JUL-2016.**

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

SERVICE INFORMATION:

Received on the 26 day of July, 2016 and on the 27 day of July, 2016, served on the above named party as follows:
PERSONAL SERVICE: On the party herein named at 11328 Pennywood Ave, thru Sec, Halee @ 10:10 AM

DOMICILIARY SERVICE: On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

DUE AND DILIGENT:  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of East Baton Rouge, this 27 day of July, 20 16.

SERVICE:    $_____
MILEAGE    $_____
TOTAL:       $_____

_____ Deputy Sheriff

SUBPOENA DUCES TECUM (Office) – 6803

FILED
JUL 27 2016
DEPUTY CLERK OF COURT

EBR3499627

EBR3776742

NON-CERTIFIED COPY

6803-16-001943

# SUBPOENA DUCES TECUM

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

vs.

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**TO:    TERRACON CONSULTANTS, INC.
        CUSTODIAN OF RECORDS
        2822 O'NEAL LANE, BUILDING B
        BATON ROUGE, LA.  70816**

You have been ordered by the Court to produce in the office of:

**FISHMAN HAYGOOD LLP
201 ST CHARLES AVE. 46TH FLOOR
NEW ORLEANS, LA.  70170**

at **10:00 AM** on **AUGUST 12,2016** the following:

SEE ATTACHED NOTICE OF RECORDS DEPOSITION WITH EXHIBIT
***SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354***

If this case is continued, you must bring those items back with you.  If you do not come and do not bring these items, you will be violating the law and may be subject to penalties.

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **21-JUL-2016**.

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

**SERVICE INFORMATION:**

Received on the _26_ day of _July_, 20 _16_ and on the _26_ day of _July_, 20 _16_, served on the above named party as follows:
**PERSONAL SERVICE:** On the party herein named at _Terracon Consultants Inc_
_to Receptionist Tina Lewis_
**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:**  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _26_ day of _July_, 20 _16_.

SERVICE:    $_____
MILEAGE:    $_____
TOTAL:      $_____

_Thomas Wahl_
Deputy Sheriff

SUBPOENA DUCES TECUM (Office) – 6803

FILED
JUL 21 2016
DEPUTY CLERK OF COURT

EBR3499624

EBR3776738

NON-CERTIFIED COPY

# FISHMAN HAYGOOD, L.L.P.

201 ST. CHARLES AVENUE
46TH FLOOR
NEW ORLEANS, LA 70170
PHONE: (504) 586-5252
FAX: (504) 586-5250

# FAX

**TO:** Clerk, 19th JDC
Parish of East Baton Rouge

**FAX NUMBER:** 225-389-3392

**FROM:** Lori Mince

**DIRECT DIAL NO:** 504-586-5273

**DATE:** July 27, 2016

**FILE NO. 3107-04**

We are sending 9 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

**Re:** *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

Attached please find **four (4) Notices of Deposition** to be filed into the record on behalf of H&E Equipment Services, Inc. Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document. As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

Thanking you in advance for your assistance.

Respectfully,

Carla Cooper Mayer
Legal Assistant to Lori Mince
Fishman Haygood



EBR3752657

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                              DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    URS Corporation Architecture, P.C.,
       URS Corporation, L. O'Neal Johnson
       and Thomas E. Ryan, III
       Through their attorney of record
       Mr. Philip A. Franco
       Adams & Reese, LLP
       4500 One Shell Square
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, August 16, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

                 **Bruce Lelong**       **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                                    Respectfully submitted,

**FILED**

JUL 27 2016

DEPUTY CLERK OF COURT

                        Brent B. Barriere, La. Bar No. 2818
                        Loretta G. Mince, La. Bar No. 25796
                        Alysson L. Mills, La. Bar No. 32904
                        Rebecca Sha, La. Bar No. 35317
                        FISHMAN HAYGOOD L.L.P.
                        201 St. Charles Avenue, 46th Floor
                        New Orleans, Louisiana 70170-4600
                        Telephone: (504) 586-5252
                        Facsimile: (504) 586-5250
                        *Attorneys for H&E Equipment Services, Inc.*

1098490v.1

NON-CERTIFIED COPY

**C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been

served upon all counsel of record by facsimile, email and/or by placing same in the United States

mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince

**FILED**

JUL 27 2016

DEPUTY CLERK OF COURT

1098490v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                              DEPUTY CLERK

**NOTICE OF DEPOSITIONS**

To:   URS Corporation Architecture, P.C.,
      URS Corporation, L. O'Neal Johnson
      and Thomas E. Ryan, III
      Through their attorney of record
      Mr. Philip A. Franco
      Adams & Reese, LLP
      4500 One Shell Square
      New Orleans, La. 70139

      **PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the depositions of the following persons at the designated time on

**Thursday, August 4, 2016,** at the offices of Fishman Haygood, 100 North Street, Suite 800,

Baton Rouge, La. 70802, before a certified court reporter, by stenographic means, and for all

purposes allowed under the Louisiana Code of Civil Procedure:

              Neil Johnson        10:00 a.m.
              Debra Sanders        3:00 p.m.

      You are invited to attend and participate as you deem fit and proper.

                                  Respectfully submitted,

                                  Brent B. Barriere, La. Bar No. 2818
                                  Loretta G. Mince, La. Bar No. 25796
                                  Alysson L. Mills, La. Bar No. 32904
                                  Rebecca Sha, La. Bar No. 35317
                                  FISHMAN HAYGOOD L.L.P.
                                  201 St. Charles Avenue, 46th Floor
                                  New Orleans, Louisiana 70170-4600
                                  Telephone: (504) 586-5252
                                  Facsimile: (504) 586-5250
                                  *Attorneys for H&E Equipment Services, Inc.*

**FILED**

JUL 27 2016

DEPUTY CLERK OF COURT

1098491v.1

NON-CERTIFIED COPY

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Depositions has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince

**FILED**

JUL 2 7 2016

DEPUTY CLERK OF COURT

1098491v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____      _____
                                          DEPUTY CLERK

## NOTICE OF DEPOSITION

To:   URS Corporation Architecture, P.C.,
      URS Corporation, L. O'Neal Johnson
      and Thomas E. Ryan, III
      Through his attorney of record
      Mr. Philip A. Franco
      Adams & Reese, LLP
      4500 One Shell Square
      New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, August 2, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure.

         **Thomas Ryan**      **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                              Respectfully submitted,

**FILED**
JUL 27 2016
DEPUTY CLERK OF COURT

                              _____
                              Brent B. Barriere, La. Bar No. 2818
                              Loretta G. Mince, La. Bar No. 25796
                              Alysson L. Mills, La. Bar No. 32904
                              Rebecca Sha, La. Bar No. 35317
                              FISHMAN HAYGOOD L.L.P.
                              201 St. Charles Avenue, 46th Floor
                              New Orleans, Louisiana 70170-4600
                              Telephone:  (504) 586-5252
                              Facsimile:  (504) 586-5250
                              *Attorneys for H&E Equipment Services, Inc.*

1098489v 1

NON-CERTIFIED COPY

**C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been

served upon all counsel of record by facsimile, email and/or by placing same in the United States

mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince

**FILED**

JUL 27 2016

DEPUTY CLERK OF COURT

1098489v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                                    DEPUTY CLERK

## NOTICE OF DEPOSITIONS

To:    URS Corporation Architecture, P.C.,
       URS Corporation, L. O'Neal Johnson
       and Thomas E. Ryan, III
       Through their attorney of record
       Mr. Philip A. Franco
       Adams & Reese, LLP
       4500 One Shell Square
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the depositions of the following persons at the designated time on

**Monday, August 1, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

|                  |            |
|------------------|------------|
| Chad Herndon     | 9:30 a.m.  |
| Tim Gaines       | 1:30 p.m.  |

You are invited to attend and participate as you deem fit and proper.

                                        Respectfully submitted,

                                        _____
                                        Brent B. Barriere, La. Bar No. 2818
                                        Loretta G. Mince, La. Bar No. 25796
                                        Alysson L. Mills, La. Bar No. 32904
                                        Rebecca Sha, La. Bar No. 35317
                                        FISHMAN HAYGOOD L.L.P.
                                        201 St. Charles Avenue, 46th Floor
                                        New Orleans, Louisiana 70170-4600
                                        Telephone: (504) 586-5252
                                        Facsimile: (504) 586-5250
                                        *Attorneys for H&E Equipment Services, Inc.*

**FILED**

JUL 27 2016

DEPUTY CLERK OF COURT

1098484v.1

NON-CERTIFIED COPY

Received   Jul 27 2016 05:53pm

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Depositions has been

served upon all counsel of record by facsimile, email and/or by placing same in the United States

mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____

Loretta G. Mince

FILED

DEPUTY CLERK OF COURT

1098484v.1

NON-CERTIFIED COPY

# FISHMAN HAYGOOD, L.L.P.

201 St. Charles Avenue
46th Floor
New Orleans, LA 70170
Phone: (504) 586-5252
Fax: (504) 586-5250

# FAX

**TO:**   Clerk, 19th JDC
Parish of East Baton Rouge

**FAX NUMBER:** 225-389-3392

**FROM:**  Lori Mince

**DIRECT DIAL NO:** 504-586-5273

**DATE:**  July 27, 2016

**FILE NO.** 3107-04

We are sending 9 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

Re:   *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

Attached please find **four (4) Notices of Deposition** to be filed into the record on behalf of H&E Equipment Services, Inc.  Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document.  As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

Thanking you in advance for your assistance.

Respectfully,

Carla Cooper Mayer
Legal Assistant to Lori Mince
Fishman Haygood



859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                        SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____     _____
                                              DEPUTY CLERK

**NOTICE OF DEPOSITION**

To:  URS Corporation Architecture, P.C.,
     URS Corporation, L. O'Neal Johnson
     and Thomas E. Ryan, III
     Through their attorney of record
     Mr. Philip A. Franco
     Adams & Reese, LLP
     4500 One Shell Square
     New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, August 16, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

**Bruce Lelong        10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

Respectfully submitted,

_____

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

FILED
JUL 27 2016
DEPUTY CLERK OF COURT

1098490v.1

NON-CERTIFIED COPY

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

Loretta G. Mince

FILED

JUL 27 2016

DEPUTY CLERK OF COURT

1098490v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                     SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                          DEPUTY CLERK

## NOTICE OF DEPOSITIONS

To:   URS Corporation Architecture, P.C.,
      URS Corporation, L. O'Neal Johnson
      and Thomas E. Ryan, III
      Through their attorney of record
      Mr. Philip A. Franco
      Adams & Reese, LLP
      4500 One Shell Square
      New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the depositions of the following persons at the designated time on

**Thursday, August 4, 2016,** at the offices of Fishman Haygood, 100 North Street, Suite 800,

Baton Rouge, La. 70802, before a certified court reporter, by stenographic means, and for all

purposes allowed under the Louisiana Code of Civil Procedure:

        **Neil Johnson**        **10:00 a.m.**
        **Debra Sanders**       **3:00 p.m.**

You are invited to attend and participate as you deem fit and proper.

                              Respectfully submitted,

FILED                         Brent B. Barriere, La. Bar No. 2818
                              Loretta G. Mince, La. Bar No. 25796
JUL 27 2016                   Alysson L. Mills, La. Bar No. 32904
                              Rebecca Sha, La. Bar No. 35317
DEPUTY CLERK OF COURT         FISHMAN HAYGOOD L.L.P.
                              201 St. Charles Avenue, 46th Floor
                              New Orleans, Louisiana 70170-4600
                              Telephone: (504) 586-5252
                              Facsimile: (504) 586-5250
                              *Attorneys for H&E Equipment Services, Inc.*

1098491v.1

NON-CERTIFIED COPY

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Depositions has been

served upon all counsel of record by facsimile, email and/or by placing same in the United States

mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____

Loretta G. Mince

FILED

JUL 27 2016

DEPUTY CLERK OF COURT

1098491v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                                  DEPUTY CLERK

## NOTICE OF DEPOSITION

To:     URS Corporation Architecture, P.C.,
        URS Corporation, L. O'Neal Johnson
        and Thomas E. Ryan, III
        Through his attorney of record
        Mr. Philip A. Franco
        Adams & Reese, LLP
        4500 One Shell Square
        New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, August 2, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

                    **Thomas Ryan          10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                                        Respectfully submitted,

                                        _____
                                        Brent B. Barriere, La. Bar No. 2818
                                        Loretta G. Mince, La. Bar No. 25796
                                        Alysson L. Mills, La. Bar No. 32904
                                        Rebecca Sha, La. Bar No. 35317
                                        FISHMAN HAYGOOD L.L.P.
                                        201 St. Charles Avenue, 46th Floor
                                        New Orleans, Louisiana 70170-4600
                                        Telephone: (504) 586-5252
                                        Facsimile:  (504) 586-5250
                                        *Attorneys for H&E Equipment Services, Inc.*

FILED
JUL 27 2016
DEPUTY CLERK OF COURT

1098489v.1

NON-CERTIFIED COPY

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince

**FILED**

JUL 2 7 2016

DEPUTY CLERK OF COURT

1098489v.1

NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D
**H&E EQUIPMENT SERVICES INC**
VS
**URS CORPORATION ARCHITECTURE PC ET AL**

Date:    27-JUL-2016

To:    **LORETTA G MINCE**
**CORRERO FISHMAN HAYGOOD ET AL**
**201 ST CHARLES AVE 46TH FL**
**NEW ORLEANS LA 70170-4600**

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ <u>**136.00**</u>

The Clerk of Court's office has received, by facsimile transmission dated <u>7/27/16</u>, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

<u>**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT**</u>
<u>**UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**</u>

<u>**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.**</u>
<u>**SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**</u>

<u>**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.**</u>
<u>**IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**</u>

*Antonequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



**⁕⁕ T r a n s m i t  C o n f . R e p o r t ⁕⁕**

P. 1                                                    Jul 28 2016 10:02am
EBR CLERK OF COURT     Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 28:10:02am | 0'29" | 1 | # O K | |



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626308  Division D                         Date:   27-JUL-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LORETTA G MINCE
      CORRERO FISHMAN HAYGOOD ET AL
      201 ST CHARLES AVE 46TH FL
      NEW ORLEANS LA 70170-4600

Item(s) Received:  NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 136.00

The Clerk of Court's office has received, by facsimile transmission dated 7/27/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)        A transmission fee of five dollars
13:841(A)(2)(a)     First page of each pleading, six dollars
13:841(A)(2)(b)     Each subsequent page, four dollars
13:841(A)(2)(c)     Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)     Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING. SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED. IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

*Antoinequa Butler*
_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY

## EXHIBIT A
## DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA DUCES TECUM

### DEFINITIONS

1.      Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes but is not limited to documents that evidence such communication(s).

2.      Document. The term "document" is defined to include any writings, letters, emails, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any form or medium.

3.      Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4.      Relating or referring. The terms "relating" or "referring" mean relating to, referring to, describing, evidencing, or constituting.

5.      All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6.      And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.      H&E. The term "H&E" means H&E Equipment Services, Inc., and its employees, principals, representatives, and agents.

8.      H&E Projects. The term "H&E Projects" means the construction work, including, but not limited to, the laying of concrete, relating to H&E facilities located in Baton Rouge, LA, Kenner, LA, and Belle Chase, LA.



1098598v.1

NON-CERTIFIED COPY

## DOCUMENTS

1.     Any and all documents reflecting any communications by or between any persons that relate or refer to the H&E Projects.

2.     Any and all documents that relate or refer to the H&E Projects, including but not limited to project files, reports, memoranda, lab analysis, testing results, specs, drawings, plans, work orders, change orders, and/or requests for information.

1098598v.1

NON-CERTIFIED COPY

**FishmanHaygood**

Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
fishmanhaygood.com

REBECCA SHA
(504) 556-5530
RSHA@FISHMANHAYGOOD.COM

July 28, 2016

File No. 3107-04

**POSTED**

_Via_ **Federal Express**

JUL 29 2016

Clerk of Court
19th JDC, Parish of East Baton Rouge
300 North Boulevard
Baton Rouge, Louisiana  70802

Re:    _H&E Equipment Services, Inc. v URS Corporation Architecture, P.C., et al_
       Docket No. 626308, Sec. "D"

Dear Ms. Welborn:

On behalf of Plaintiff, H&E Equipment Services, Inc., please issue the appropriate subpoena duces tecum for the following to appear on August 26, 2016 at 10:00 a.m. at Fishman Haygood, LLP, 201 St. Charles Avenue, 46th Floor, New Orleans, Louisiana 70170.

Coast Concrete Services, Inc.
Custodian of Records
29072 Krentel Road
Lacombe, LA

I have enclosed our check for $149 to cover the cost for filing and service fees for the attached documents.  Please return a stamped copy for our file in the enclosed stamped envelope.

Your courtesy in this matter is appreciated.

Respectfully,

Rebecca Sha

RS/dob
Enclosures
cc:    Philip A. Franco (w/encs.) (via email)

REC'D C.P

1098691v.1

AUG - 1 2016

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                     SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____

                                          DEPUTY CLERK

COST OK $ 149 00

## NOTICE OF RECORDS DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the Louisiana Code of Civil Procedure,

Plaintiff H&E Equipment Services, Inc. has caused to issue a subpoena duces tecum to Coast

Concrete Services, Inc.  The subpoena duces tecum requests Coast Concrete deliver documents

in the attached Exhibit A to the offices of Fishman Haygood L.L.P., 201 St. Charles Avenue, 46th

Floor, New Orleans, Louisiana 70170, on August 26, 2016 at 10:00 a.m.  If the documents are

received by undersigned counsel on or prior to the appointed time, a personal appearance is

unnecessary.  You are hereby noticed to appear and take part in the examination as you see fit

and proper.



EBR3748717

AUG − 1 2016

1098598v.1

NON-CERTIFIED COPY

Respectfully submitted,

_____

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar. No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing document has been served upon

all counsel of record by facsimile, email and/or by placing same in the United States mail,

postage prepaid and properly addressed, this 28th day of July, 2016.

_____

Rebecca Sha



NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____            _____
                                                              DEPUTY CLERK

## NOTICE OF DEPOSITIONS

To:    URS Corporation Architecture, P.C.,
        URS Corporation, L. O'Neal Johnson
        and Thomas E. Ryan, III
        Through their attorney of record
        Mr. Philip A. Franco
        Adams & Reese, LLP
        4500 One Shell Square
        New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the depositions of the following persons at the designated time on

**Monday, August 1, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

| Chad Herndon | 9:30 a.m. |
| Tim Gaines | 1:30 p.m. |

You are invited to attend and participate as you deem fit and proper.

Respectfully submitted,

_____
Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1098484v.1

NON-CERTIFIED COPY

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Depositions has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____

Loretta G. Mince



1098484v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                                  DEPUTY CLERK

## NOTICE OF DEPOSITIONS

To:    URS Corporation Architecture, P.C.,
       URS Corporation, L. O'Neal Johnson
       and Thomas E. Ryan, III
       Through their attorney of record
       Mr. Philip A. Franco
       Adams & Reese, LLP
       4500 One Shell Square
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the depositions of the following persons at the designated time on

**Thursday, August 4, 2016,** at the offices of Fishman Haygood, 100 North Street, Suite 800,

Baton Rouge, La. 70802, before a certified court reporter, by stenographic means, and for all

purposes allowed under the Louisiana Code of Civil Procedure:

|  |  |
|---|---|
| **Neil Johnson** | **10:00 a.m.** |
| **Debra Sanders** | **3:00 p.m.** |

You are invited to attend and participate as you deem fit and proper.

Respectfully submitted,

_____
Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1098491v.1





NON-CERTIFIED COPY

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Depositions has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince



1098491v.1

NON-CERTIFIED COPY

POSTED

AUG - 1 2016

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                            DEPUTY CLERK

### NOTICE OF DEPOSITION

To:    URS Corporation Architecture, P.C.,
       URS Corporation, L. O'Neal Johnson
       and Thomas E. Ryan, III
       Through their attorney of record
       Mr. Philip A. Franco
       Adams & Reese, LLP
       4500 One Shell Square
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, August 16, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

                    **Bruce Lelong**        **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                                Respectfully submitted,


                                _____
                                Brent B. Barriere, La. Bar No. 2818
                                Loretta G. Mince, La. Bar No. 25796
                                Alysson L. Mills, La. Bar No. 32904
                                Rebecca Sha, La. Bar No. 35317
                                FISHMAN HAYGOOD L.L.P.
                                201 St. Charles Avenue, 46th Floor
                                New Orleans, Louisiana 70170-4600
                                Telephone: (504) 586-5252
                                Facsimile: (504) 586-5250
                                *Attorneys for H&E Equipment Services, Inc.*

1098490v.1

FAX COPY FILED 7.27.16

NON-CERTIFIED COPY

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince



1098490v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____            _____
                                                         DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    URS Corporation Architecture, P.C.,
       URS Corporation, L. O'Neal Johnson
       and Thomas E. Ryan, III
       Through his attorney of record
       Mr. Philip A. Franco
       Adams & Reese, LLP
       4500 One Shell Square
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, August 2, 2016,** at the offices of Fishman Haygood, 201 St. Charles Avenue, 46th

Floor, New Orleans, La. 70170, before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

**Thomas Ryan**          **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

Respectfully submitted,

_____
Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1098489v.1



NON-CERTIFIED COPY

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27th day of July, 2016.

_____
Loretta G. Mince



1098489v.1

NON-CERTIFIED COPY

# DOUG WELBORN, CLERK OF COURT
## 19th Judicial District Court
## Parish of East Baton Rouge
## 300 North Boulevard
## Baton Rouge, LA 70801
## Phone  (225)389-3960

NO.   C626308 Division D                    02-AUG-2016

TO:    ST TAMMANY PARISH SHERIFFS OFFICE
       PO BOX 1120
       COVINGTON, LA 70434

Please find attached SUBPOENA DUCES TECUM & DEPOSITION SUBPOENA  to be served in your parish for the above numbered suit.

Kindly make your return(s) on the duplicate(s) enclosed, and

ڤ       note the enclosed check for payment of service;

X       send us your bill for service;

ڤ       note that this is a pauper suit and no funds are available; or

ڤ       note that this is a government suit and no funds are necessary.

Thank You,

Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

Requesting Attorney:  REBECCA SHA

REPLY:                          DATE:_____

_____

_____

_____

_____

_____

By:_____

Deputy Sheriff, Parish of _____

**Letter to Out Of Parish Sheriff - 5213**



EBR3660591

NON-CERTIFIED COPY

6706-16-000518

# SUBPOENA DUCES TECUM
# and SUBPOENA for DEPOSITION

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

vs.

**URS CORPORATION ARCHITECTURE PC ET AL**
(Defendant)

**NUMBER C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**TO:**   **COAST CONCRETE SERVICES, INC.**
**CUSTODIAN OF RECORDS**
**29072 KRENTEL ROAD**
**LACOMBE, LA.**

You are hereby commanded to appear at the office of:

**FISHMAN HAYGOOD, LLP**
**201 ST. CHARLES AVE. 46TH FLOOR**
**NEW ORLEANS, LA.   70170**

at **10:00 AM** on **AUGUST 26, 2016** and have your oral testimony taken in the above entitled and numbered cause, in accordance with Act No. 15 of 1960.  And you are commanded to produce at the above time and place the following:

**\*\*SEE ATTACHED NOTICE OF DEPOSITION FOR DOCUMENTS TO BE PRODUCED\*\***
**\*\*\*SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354\*\*\***

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **02-AUG-2016**.

*Deputy Clerk of Court for*
**Doug Welborn/Clerk of Court**

---

### SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:**   After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of _____, this _____ day of _____, 20_____.

| | | |
|---|---|---|
| SERVICE: | $_____ | _____ |
| MILEAGE | $_____ | Deputy Sheriff |
| TOTAL: | $_____ | |

**SUBPOENA DUCES TECUM and SUBPOENA for DEPOSITION – OOP - 6706**


EBR3778591

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308

SECTION: "D"

H&E EQUIPMENT SERVICES, INC

COST OK $ _21_

VERSUS

AUG 2 2 2016

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL CH 7||70 /19
JOHNSON, AND THOMAS E. RYAN, III

DEPUTY CLERK OF COURT

FILED: _____

_____
DEPUTY CLERK

### JUDGMENT

This matter came on for hearing July 25, 2016 on Plaintiff H&E Equipment Services,

Inc.'s Motion for Leave of Court to Supplement Expert Disclosures, before the Honorable Janice

G. Clark:

PRESENT:   Loretta G. Mince, for Plaintiff H&E Equipment Services, Inc.; and

Ronald J. Sholes and Kellen J. Mathews, for Defendants URS Corporation
Architecture, P.C., URS Corporation, L. O'Neal Johnson, and Thomas E.
Ryan, III.

Considering the motion and memoranda submitted by the parties, the argument, and the

representations of counsel at the hearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion is

GRANTED and Plaintiff may supplement its Expert Disclosures to include Wallace C. Drennan.

Baton Rouge, Louisiana, this _25_ day of August, 2016.

_____
JUDGE JANICE G. CLARK

### RULE 9.5 CERTIFICATE

On August 17, 2016, undersigned counsel circulated *via* email this form of judgment to

opposing counsel. By return email dated August 17, 2016, counsel for the defendants advised

that he has no objection to the form of the judgment.

_____
LORETTA G. MINCE

I hereby certify that on this day a notice of the
above judgement was mailed by me, with sufficient
postage affixed, to Mathews, Mince
Done and signed on, 8-29-16

_____
Deputy Clerk of Court

1113906v.1

EAST BATON ROUGE PARISH LA
FILED
2016 AUG 22 PM 3: 04
DEPUTY CLERK OF COURT

EBR3764194

NON-CERTIFIED COPY

6703-16-000738

# SUBPOENA DUCES TECUM

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

vs.

**PARISH OF EAST BATON ROUGE**

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**STATE OF LOUISIANA**

TO:    COASTAL CONCRETE PRODUCTS, LLC
      CUSTODIAN OF RECORDS
      15160 INTRACOASTAL DRIVE
      NEW ORLEANS, LA.  70129

You have been ordered by the Court to produce in the office of:

      **FISHMAN HAYGOOD LLP**
      **201 ST CHARLES AVE. 46TH FLOOR**
      **NEW ORLEANS, LA.  70170**

at **10:00 AM** on **AUGUST 12,2016** the following:

      SEE ATTACHED NOTICE OF RECORDS DEPOSITION WITH EXHIBIT
      ***SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354***

    If this case is continued, you must bring those items back with you.  If you do not come and do not bring these items, you will be violating the law and may be subject to penalties.

    This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on 21-JUL-2016.



_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

---

**SERVICE INFORMATION:**
Received on the 26 day of July, 20 16 and on the 26 day of July, 20 16, served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at 15160 Intracoastal Dr.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____

**DUE AND DILIGENT:** After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of _____, this _____ day of _____, 20____.

SERVICE:    $_____
MILEAGE    $_____
TOTAL:    $_____

          Deputy Sheriff

**SUBPOENA DUCES TECUM (Office) (OOP) – 6703**

NON-CERTIFIED COPY

EBR3503547

EBR3776747

7-26-16
2:14 PM

PERS

Wayne Fillingame

NON-CERTIFIED COPY

6706-16-000518

# RETURN



## SUBPOENA DUCES TECUM
## and SUBPOENA for DEPOSITION

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

vs.

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**NUMBER C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

TO:    COAST CONCRETE SERVICES, INC.
       CUSTODIAN OF RECORDS
       29072 KRENTEL ROAD
       LACOMBE, LA.

You are hereby commanded to appear at the office of:

**FISHMAN HAYGOOD, LLP
201 ST. CHARLES AVE. 46TH FLOOR
NEW ORLEANS, LA.  70170**

at **10:00 AM** on **AUGUST 26, 2016** and have your oral testimony taken in the above entitled and numbered cause, in accordance with Act No. 15 of 1960.  And you are commanded to produce at the above time and place the following:

**\*\*SEE ATTACHED NOTICE OF DEPOSITION FOR DOCUMENTS TO BE PRODUCED\*\***
**\*\*\*SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354\*\*\***

This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on 02-AUG-2016.



*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

---

### SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:**  On the party herein named at _____.

(17)626308 - 1.00 -- DSUB/SDT
Served PERS on
COAST CONCRETE SERVICES INC at
29072 Krentel RD, LACOMBE
Service Date & Time: 8/10/2016  2:43:00PM
THROUGH MANAGER, JANET ROBERTSON

2714 - WILLIAMS, MICHAEL, St. Tammany Parish

_____, by leaving the same at his domicile :on of suitable age and discretion residing in the said domicile at

:nable to find the within named _____ or

:is _____ day of _____, 20__.

RANDY SMITH
SHERIFF

_____
Deputy Sheriff

RECEIVED
STPSO · CIVIL
2016 AUG -5  A 11: 2b

**SUBPOENA DUCES TECUM and SUBPOENA for DEPOSITION – OOP - 6706**

EBR377161

EBR3778591

NON-CERTIFIED COPY



**Randy Smith**
**Sheriff St. Tammany PARISH**

EAST BATON ROUGE CLERK OF COURT
P O BOX 1991

BATON ROUGE, LA  70821

**DISTRICT COURT**

FOR THE PARISH OF ST. TAMMANY

8/16/2016

---

Case: (17)  626308          H&E EQUIPMENT SERVICES INC vs URS CORPORATION ARCHITECHTURE PC ET AL

| Nbr | Date | Service Type | Charges |
|-----|------|--------------|---------|
| 1 | 08/08/2016 | Deposition Subpoena and Subpoena Duces | $20.00 |

COAST CONCRETE SERVICES INC; 29072 Krentel RD; LACOMBE, LA 70445

**Date of Disposition:** 08/10/2016 **Disposition Type:** PERS THROUGH MANAGER, JANET ROBERTSON

DSUB/SDT
| 1 | 08/11/2016 | Mileage Charge | $12.75 |

**Date of Disposition:**  **Disposition Type:**

|  | Case Total: | $32.75 |
|--|-------------|--------|

---

|  | **Total:** | **$32.75** |
|--|------------|-----------|

Please make check payable to:
Randy Smith, Sheriff
701 N. Columbia St.
Covington, LA 70433

TO BE RETURNED WITH PAYMENT

NON-CERTIFIED COPY

## FISHMAN HAYGOOD, L.L.P.

201 ST. CHARLES AVENUE
46TH FLOOR
NEW ORLEANS, LA 70170
PHONE: (504) 586-5252
FAX: (504) 586-5250

# FAX

**TO:**    Clerk, 19th JDC        **FAX NUMBER:** 225-389-3392
         Parish of East Baton Rouge

**FROM:** Jae Donnelly        **DIRECT DIAL NO:** 504-586-5266

**DATE:** August 11, 2016        **FILE NO. 2918-14**

We are sending 6 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

      Re:    *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
           19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

     Attached please two (2) Notices of Deposition on behalf of Plaintiff H & E Equipment Services, Inc. Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document. As required, the original documents will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

     Thanking you in advance for your assistance.

                 Respectfully,

                 *Carla Cooper Mayer*
                 Carla Cooper Mayer
                 Legal Assistant to Lori Mince
                 Fishman Haygood

EBR3744955

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                                        DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    Tom Vrenick
       Terracon Consultants, Inc.
       18001 W. 106th Street, Suite 300
       Olathe, KS 66061

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, September 20, 2016**, at the offices of Fishman Haygood, LLP, 201 St. Charles Ave.

Suite 4600, New Orleans, LA 70170, before a certified court reporter, by stenographic means,

and for all purposes allowed under the Louisiana Code of Civil Procedure:

            **Tom Vrenick**          **1:00 p.m.**

You are invited to attend and participate as you deem fit and proper.

                                    Respectfully submitted,

**FILED**

SEP 1 3 2016

DEPUTY CLERK OF COURT

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1112186v.1

NON-CERTIFIED COPY

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 13th day of September, 2016.

_____
Loretta G. Mince

**FILED**

SEP 1 3 2016

DEPUTY CLERK OF COURT

1112186v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                      DEPUTY CLERK

**NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE
PURSUANT TO LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 1442**

To:    Terracon Consultants, Inc.
       18001 W. 106th Street, Suite 300
       Olathe, KS 66061

**PLEASE TAKE NOTICE** that undersigned counsel for Plaintiff, H&E Equipment

Services, Inc., ("H&E's") through undersigned counsel and pursuant to Article 1442 of the

Louisiana Code of Civil Procedure, will take the deposition upon oral examination of a

representative of Terracon Consultants, Inc.. ("Terracon"), before a Notary Public or other

qualified officer, on Tuesday, September 20, 2016 at 1:00 p.m., and from day to day thereafter as

necessary until completion at the office of Fishman Haygood, LLP, 201 St. Charles Ave. Suite

4600, New Orleans, LA 70170.

Pursuant to Article 1442 of the Louisiana Code of Civil Procedure, Terracon shall

designate one or more representatives to testify on its behalf with respect to the topics identified

in Exhibit A hereto.  Defendant is invited to attend and participate as entitled and required under

the law.

**FILED**

SEP 13 2016

DEPUTY CLERK OF COURT

Respectfully submitted,

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1112110v.1

NON-CERTIFIED COPY

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Deposition of Corporate Representative has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 13th day of September, 2016.

_____
Loretta G. Mince

**FILED**

SEP 1 3 2016

DEPUTY CLERK OF COURT

1112110v.1

NON-CERTIFIED COPY

## EXHIBIT A

### ARTICLE 1442 TOPICS

1. The contract, performance, and participation of Terracon, Inc. relating to the construction

   work, including but not limited to, the laying of concrete at H&E Equipment Services,

   Inc.'s facilities in Baton Rouge, LA and Kenner, LA., including all testing performed by

   Terracon, Inc.

1112110v.1

NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER      308  Division D                          Date:   13-SEP-2016
H&E EQUI      ENT SERVICES INC
VS
URS COR      ATION ARCHITECTURE PC ET AL

To:    LO      TA G MINCE
       CO      ERO FISHMAN HAYGOOD ET AL
       201     CHARLES AVE 46TH FL
       NE      ORLEANS LA 70170-4600

Item(s) Rec      NOTICE OF DEPOSITION

Total Amou      (includes all applicable fees below) $ 84.00

The Clerk o      rt's office has received, by facsimile transmission dated 9/13/16, documents in the above referenced case.  In
accordance      R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the
original sig      cument, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings
and filing b      /political subdivisions.

Applicable      re established in accordance with law as follows:
13:850(B)(      A transmission fee of five dollars
13:841(A)      First page of each pleading, six dollars
13:841(A)      Each subsequent page, four dollars
13:841(A)      Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)      Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

IF      ING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILI      ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_____
Deputy C      of Court for
Doug We      n, Clerk of Court

5249 – LTR / FAX RECT



NON-CERTIFIED COPY

```
** Transmit Conf.Report **
```

P.1                                            Sep 14 2016 10:59am
EBR CLERK OF COURT      Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 14:10:59am | 0'34" | 1 | * O K | |



## DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

---

### FAX RECEIPT

NUMBER C626308  Division D                    Date:   13-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 84.00

The Clerk of Court's office has received, by facsimile transmission dated 9/13/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Antorequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

---

## FAX RECEIPT

NUMBER C626308  Division D
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

Date:   13-SEP-2016

To:   LORETTA G MINCE
      CORRERO FISHMAN HAYGOOD ET AL
      201 ST CHARLES AVE 46TH FL
      NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 84.00

The Clerk of Court's office has received, by facsimile transmission dated 9/13/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Antonequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                           SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                             DEPUTY CLERK

**NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE**
**PURSUANT TO LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 1442**

To:    Terracon Consultants, Inc.
       18001 W. 106th Street, Suite 300
       Olathe, KS 66061

**PLEASE TAKE NOTICE** that undersigned counsel for Plaintiff, H&E Equipment

Services, Inc., ("H&E's") through undersigned counsel and pursuant to Article 1442 of the

Louisiana Code of Civil Procedure, will take the deposition upon oral examination of a

representative of Terracon Consultants, Inc.. ("Terracon"), before a Notary Public or other

qualified officer, on Tuesday, September 20, 2016 at 1:00 p.m., and from day to day thereafter as

necessary until completion at the office of Fishman Haygood, LLP, 201 St. Charles Ave. Suite

4600, New Orleans, LA 70170.

Pursuant to Article 1442 of the Louisiana Code of Civil Procedure, Terracon shall

designate one or more representatives to testify on its behalf with respect to the topics identified

in Exhibit A hereto. Defendant is invited to attend and participate as entitled and required under

the law.



Respectfully submitted,



Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1112110v.1



NON-CERTIFIED COPY

# C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Deposition of Corporate Representative has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 13th day of September, 2016.

_____

Loretta G. Mince



1112110v.1

NON-CERTIFIED COPY

## EXHIBIT A

### ARTICLE 1442 TOPICS

1.  The contract, performance, and participation of Terracon, Inc. relating to the construction work, including but not limited to, the laying of concrete at H&E Equipment Services, Inc.'s facilities in Baton Rouge, LA and Kenner, LA., including all testing performed by Terracon, Inc.



1112110v.1

NON-CERTIFIED COPY

**POSTED**

SEP 20 2016

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

COST OK $

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

DEPUTY CLERK OF COURT

FILED: _____          _____
                                                    DEPUTY CLERK

## NOTICE OF DEPOSITION

To:   Tom Vrenick
      Terracon Consultants, Inc.
      18001 W. 106th Street, Suite 300
      Olathe, KS 66061

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, September 20, 2016,** at the offices of Fishman Haygood, LLP, 201 St. Charles Ave.

Suite 4600, New Orleans, LA 70170, before a certified court reporter, by stenographic means,

and for all purposes allowed under the Louisiana Code of Civil Procedure:

                **Tom Vrenick**          **1:00 p.m.**

You are invited to attend and participate as you deem fit and proper.

                          Respectfully submitted,


                          _____
                          Brent B. Barriere, La. Bar No. 2818
                          Loretta G. Mince, La. Bar No. 25796
                          Alysson L. Mills, La. Bar No. 32904
                          Rebecca Sha, La. Bar No. 35317
                          FISHMAN HAYGOOD L.L.P.
                          201 St. Charles Avenue, 46th Floor
                          New Orleans, Louisiana 70170-4600
                          Telephone: (504) 586-5252
                          Facsimile: (504) 586-5250
                          *Attorneys for H&E Equipment Services, Inc.*

1112186v.1

NON-CERTIFIED COPY

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 13th day of September, 2016.

_____

Loretta G. Mince



1112186v.1

NON-CERTIFIED COPY

## FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue
46th Floor
New Orleans, LA 70170
Phone: (504) 586-5252
Fax: (504) 586-5250

# FAX

**TO:**   Clerk, 19th JDC               **FAX NUMBER:** 225-389-3392
Parish of East Baton Rouge

**FROM:** Lori Mince                   **DIRECT DIAL NO:** 504-586-5266

**DATE:** September 23, 2016           **FILE NO.** 3107-04

We are sending 9 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

   Re:   *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
         19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

   Attached please find a Notice of Deposition on behalf of Plaintiff H & E Equipment Services, Inc. Please confirm *via* facsimile the cost for **fax and filing** fees for the attached document. As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

   Thanking you in advance for your assistance.

                              Respectfully,

                              *Carla Cooper Mayer*
                              Carla Cooper Mayer
                              Legal Assistant to Lori Mince
                              Fishman Haygood

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                     SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                                    DEPUTY CLERK

### NOTICE OF DEPOSITION

To:    Gary Anderton
       Through his attorney of record:
       Phil Franco
       201 Poydras Street, Suite 4500
       New Orleans, La. 70139

       **PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, September 27, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite

4500, New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

                    **Gary Anderton**              **10:00 a.m.**

       You are invited to attend and participate as you deem fit and proper.

                                        Respectfully submitted,

**FILED**

SEP 2 3 2016

DEPUTY CLERK OF COURT

                                        _____
                                        Brent B. Barriere, La. Bar No. 2818
                                        Loretta G. Mince, La. Bar No. 25796
                                        Alysson L. Mills, La. Bar No. 32904
                                        Rebecca Sha, La. Bar No. 35317
                                        FISHMAN HAYGOOD L.L.P.
                                        201 St. Charles Avenue, 46th Floor
                                        New Orleans, Louisiana 70170-4600
                                        Telephone: (504) 586-5252
                                        Facsimile:  (504) 586-5250
                                        *Attorneys for H&E Equipment Services, Inc.*

1126746v.1

NON-CERTIFIED COPY

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Deposition has been

served upon all counsel of record by facsimile, email and/or by placing same in the United States

mail, postage prepaid and properly addressed, this 23rd day of September, 2016.

_____
Loretta G. Mince

**FILED**

SEP 2 3 2016

DEPUTY CLERK OF COURT

1126746v.1

NON-CERTIFIED COPY

## FISHMAN HAYGOOD, L.L.P.

201 St. Charles Avenue
46th Floor
New Orleans, LA 70170
Phone: (504) 586-5252
Fax: (504) 586-5250

# Fax

**TO:**   Clerk, 19th JDC                 **FAX NUMBER:** 225-389-3392
          Parish of East Baton Rouge

**FROM:** Lori Mince                      **DIRECT DIAL NO:** 504-586-5266

**DATE:** September 23, 2016             **FILE NO. 3107-04**

We are sending 9 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

———————————————————————————————————————

Re:   *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
      19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

        Attached please find a Notice of Deposition on behalf of Plaintiff H & E Equipment Services, Inc.  Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document.  As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

        Thanking you in advance for your assistance.

                                        Respectfully,

                                        *Carla Cooper Mayer*
                                        Carla Cooper Mayer
                                        Legal Assistant to Lori Mince
                                        Fishman Haygood

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                         DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    Gary Anderton
       Through his attorney of record:
       Phil Franco
       201 Poydras Street, Suite 4500
       New Orleans, La. 70139

       **PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, September 27, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite

4500, New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

                    **Gary Anderton**          **10:00 a.m.**

       You are invited to attend and participate as you deem fit and proper.

                              Respectfully submitted,

                              _____
                              Brent B. Barriere, La. Bar No. 2818
                              Loretta G. Mince, La. Bar No. 25796
                              Alysson L. Mills, La. Bar No. 32904
                              Rebecca Sha, La. Bar No. 35317
                              FISHMAN HAYGOOD L.L.P.
                              201 St. Charles Avenue, 46th Floor
                              New Orleans, Louisiana 70170-4600
                              Telephone: (504) 586-5252
                              Facsimile:  (504) 586-5250
                              *Attorneys for H&E Equipment Services, Inc.*

1126746v.1

NON-CERTIFIED COPY

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 23rd day of September, 2016.

_____
Loretta G. Mince

1126746v.1

NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D                        Date:    23-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/23/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions ~ per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

_Antonequia Butler_
Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY

```
                ** Transmit Conf.Report **

P.1                                          Sep 26 2016 11:47am
EBR CLERK OF COURT    Fax 2253893392
```

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 26:11:47am | 0'34" | 1 | *O K | |



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626308  Division D                    Date:   23-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LORETTA G MINCE
      CORRERO FISHMAN HAYGOOD ET AL
      201 ST CHARLES AVE 46TH FL
      NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/23/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)         A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING. SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED. IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

*Antonequa Butler*
Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

S249 – LTR / FAX RECT



NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

---

### FAX RECEIPT

NUMBER C626308  Division D                                    Date:    23-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

**To:**    LORETTA G MINCE
            CORRERO FISHMAN HAYGOOD ET AL
            201 ST CHARLES AVE 46TH FL
            NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ <u>50.00</u>

The Clerk of Court's office has received, by facsimile transmission dated <u>9/23/16</u>, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)        A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

<u>**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**</u>

<u>**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**</u>

<u>**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.**</u>
<u>**IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**</u>

*Antonequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



## FISHMAN HAYGOOD, L.L.P.
201 ST. CHARLES AVENUE
46TH FLOOR
NEW ORLEANS, LA 70170
PHONE: (504) 586-5252
FAX: (504) 586-5250

# FAX

**TO:** Clerk, 19th JDC       **FAX NUMBER:** 225-389-3392
Parish of East Baton Rouge

**FROM:** Lori Mince       **DIRECT DIAL NO:** 504-586-5266

**DATE:** September 23, 2016       **FILE NO.** 3107-04

We are sending 9 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

Re: *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

Attached please find a Notice of Deposition on behalf of Plaintiff H & E Equipment Services, Inc. Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document. As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

Thanking you in advance for your assistance.

Respectfully,

Carla Cooper Mayer
Legal Assistant to Lori Mince
Fishman Haygood

EBR3789365

859269v. 1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                          DEPUTY CLERK

**NOTICE OF DEPOSITION**

To:   Thomas Ryan
      Through his attorney of record:
      Phil Franco
      201 Poydras Street, Suite 4500
      New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Monday, September 26, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite

4500, New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

**Thomas Ryan          10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

Respectfully submitted,

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1126746v.1

NON-CERTIFIED COPY

# C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 23ʳᵈ day of September, 2016.

Loretta G. Mince

1126746v.1

NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D                                    Date:    23-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL


To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/23/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING. SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED. IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.


*Antonequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY

```
      ** Transmit Conf.Report **

P.1                                    Sep 23 2016 04:59pm
EBR CLERK OF COURT    Fax 2253893392
```

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 23:04:58pm | 0'34" | 1 | *O K | |



## DOUG WELBORN
### CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626306  Division D                    Date:    23-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/23/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

_Antonequia Butler_
_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY

```
** Transmit Conf.Report **

P.1                                              Sep 23 2016 03:53pm
EBR CLERK OF COURT    Fax 2253893392
```

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045885250 | Normal | 23:03:52pm | 0'00" | 0 | D.0.7 | |
| ↑ No response. | | Check condition of remote fax. | | | | |



**DOUG WELBORN**

CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

---

## FAX RECEIPT

NUMBER C626308  Division D                          Date:   23-SEP-2016

H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/23/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Antonequia Butler*

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

**NUMBER C626308  Division D**                                    **Date:    23-SEP-2016**
 **H&E EQUIPMENT SERVICES INC**
 **VS**
 **URS CORPORATION ARCHITECTURE PC ET AL**

**To:    LORETTA G MINCE**
       **CORRERO FISHMAN HAYGOOD ET AL**
       **201 ST CHARLES AVE 46TH FL**
       **NEW ORLEANS LA 70170-4600**

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) **$ 50.00**

The Clerk of Court's office has received, by facsimile transmission dated **9/23/16**, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)        A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

*Antonequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

                                5249 – LTR / FAX RECT



NON-CERTIFIED COPY

Case 3:18-cv-00690-BAJ-RLB    Document 4-6    07/16/18    Page 101 of 472

# FISHMAN HAYGOOD, L.L.P.

201 ST. CHARLES AVENUE
46TH FLOOR
NEW ORLEANS, LA 70170
PHONE: (504) 586-5252
FAX: (504) 586-5250

# FAX

**TO:**   Clerk, 19ᵗʰ JDC                    **FAX NUMBER:** 225-389-3392
         Parish of East Baton Rouge

**FROM:** Lori Mince                        **DIRECT DIAL NO:** 504-586-5266

**DATE:** September 27, 2016                **FILE NO.** 3107-04

We are sending 3 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

Re:    *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
       19ᵗʰ JDC, Docket No. 626308, Sec "D"

Dear Clerk:

     Attached please find a Notice of Deposition on behalf of Plaintiff H & E Equipment Services, Inc. Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document. As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

     Thanking you in advance for your assistance.

                                        Respectfully,

                                        Carla Cooper Mayer
                                        Carla Cooper Mayer
                                        Legal Assistant to Lori Mince
                                        Fishman Haygood



EBR3789695

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                           SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                                DEPUTY CLERK

## NOTICE OF DEPOSITION

To:  Chuck Laroché
     Mike Stein
     Through his attorney of record:
     Phil Franco
     201 Poydras Street, Suite 4500
     New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Thursday, September 29, 2016**, at the offices of Adams & Reese, 701 Poydras Street, Suite

4500, New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

        Chuck Laroché              10:00 a.m.

        Mike Stein                 1:30 p.m.

You are invited to attend and participate as you deem fit and proper.

                              Respectfully submitted,

                              _____
                              Brent B. Barriere, La. Bar No. 2818
                              Loretta G. Mince, La. Bar No. 25796
                              Alysson L. Mills, La. Bar No. 32904
                              Rebecca Sha, La. Bar No. 35317
                              FISHMAN HAYGOOD L.L.P.
                              201 St. Charles Avenue, 46th Floor
                              New Orleans, Louisiana 70170-4600
                              Telephone: (504) 586-5252
                              Facsimile:  (504) 586-5250
                              *Attorneys for H&E Equipment Services, Inc.*

1126746v.1

NON-CERTIFIED COPY

# CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27rd day of September, 2016.

_____
Loretta G. Mince



1126746v.1

NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

---

## FAX RECEIPT

NUMBER C626308  Division D                    Date:    27-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LORETTA G MINCE
      CORRERO FISHMAN HAYGOOD ET AL
      201 ST CHARLES AVE 46TH FL
      NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/27/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

_Antonequia Butler_
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

S249 – LTR / FAX RECT



NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P. 1                                                      Sep 27 2016 12:20pm
EBR CLERK OF COURT      Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 27:12:20pm | 0'34" | 1 | * O K | |



## DOUG WELBORN
## CLERK OF COURT

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

PARISH OF EAST BATON ROUGE

### FAX RECEIPT

NUMBER C626308  Division D                    Date:    27-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:   LORETTA G MINCE
      CORRERO FISHMAN HAYGOOD ET AL
      201 ST CHARLES AVE 46TH FL
      NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/27/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)     A transmission fee of five dollars
13:841(A)(2)(a)  First page of each pleading, six dollars
13:841(A)(2)(b)  Each subsequent page, four dollars
13:841(A)(2)(c)  Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)  Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Antonequa Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D                              Date:    27-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) **$ 50.00**

The Clerk of Court's office has received, by facsimile transmission dated **9/27/16**, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

*Antonequia Butler*

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT


NON-CERTIFIED COPY

## FISHMAN HAYGOOD, L.L.P.

201 St. Charles Avenue
46th Floor
New Orleans, LA 70170
Phone: (504) 586-5252
Fax: (504) 586-5250

# Fax

**TO:**   Clerk, 19th JDC              **FAX NUMBER:** 225-389-3392
         Parish of East Baton Rouge

**FROM:** Lori Mince                 **DIRECT DIAL NO:** 504-586-5266

**DATE:** September 28, 2016         **FILE NO. 3107-04**

We are sending 3 pages (including this page)

If there are any problems, please contact Carla at 586-5246.

**Re:**   *H&E Equipment Services, Inc. v URS Corporation Architecture, O.C., et al*
         19th JDC, Docket No. 626308, Sec "D"

Dear Clerk:

   Attached please find a Notice of Deposition on behalf of Plaintiff H & E Equipment Services, Inc.  Please confirm *via* facsimile the cost for **fax and filing fees** for the attached document.  As required, the original document will be forwarded for filing within seven (7) days along with a check to cover the fees for filing by fax.

   Thanking you in advance for your assistance.

                                        Respectfully,

                                        Carla Cooper Mayer
                                        Carla Cooper Mayer
                                        Legal Assistant to Lori Mince
                                        Fishman Haygood

EBR3789634

859269v.1

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____

_____
DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    Wayne Sledge
       Through his attorney of record:
       Phil Franco
       201 Poydras Street, Suite 4500
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Friday, September 30, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite 4500,

New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for all

purposes allowed under the Louisiana Code of Civil Procedure:

       **Wayne Sledge**          **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

Respectfully submitted,

_____
Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile:  (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

NON-CERTIFIED COPY

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 28th day of September, 2016.

Loretta G. Mince



NON-CERTIFIED COPY

EBR CLERK OF COURT    Fax 2253893392          Sep 28 2016 01:23pm P001/001



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

---

## FAX RECEIPT

NUMBER C626308  Division D                           Date:   28-SEP-2016

H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL


To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION


Total Amount Due (includes all applicable fees below) $ 50.00


The Clerk of Court's office has received, by facsimile transmission dated 9/28/16, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.


Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
### UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
### SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
### IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.


_Antorequia Butler_
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY

## ** Transmit Conf.Report **

P.1                                                    Sep 28 2016 01:23pm
EBR CLERK OF COURT      Fax 2253893392

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 915045865250 | Normal | 28:01:22pm | 0'38" | 1 | # O K | |



# DOUG WELBORN
## CLERK OF COURT

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

PARISH OF EAST BATON ROUGE                    www.ebrclerkofcourt.org

### FAX RECEIPT

NUMBER C626308 Division D                    Date:   28-SEP-2016
H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

To:    LORETTA G MINCE
       CORRERO FISHMAN HAYGOOD ET AL
       201 ST CHARLES AVE 46TH FL
       NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) $ 50.00

The Clerk of Court's office has received, by facsimile transmission dated 9/28/16, documents in the above referenced case. In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee. The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)       A transmission fee of five dollars
13:841(A)(2)(a)    First page of each pleading, six dollars
13:841(A)(2)(b)    Each subsequent page, four dollars
13:841(A)(2)(c)    Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)    Issuing document without notice of service, fifteen dollars (Receipt generation fee)

### NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.

### SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.

### IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.

*Antonequa Butler*
Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



NON-CERTIFIED COPY



# DOUG WELBORN
## CLERK OF COURT

PARISH OF EAST BATON ROUGE

Suit Accounting Dept.

P.O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

NUMBER C626308  Division D                                      Date:    28-SEP-2016

H&E EQUIPMENT SERVICES INC
VS
URS CORPORATION ARCHITECTURE PC ET AL

**To:**    LORETTA G MINCE
          CORRERO FISHMAN HAYGOOD ET AL
          201 ST CHARLES AVE 46TH FL
          NEW ORLEANS LA 70170-4600

Item(s) Received: NOTICE OF DEPOSITION

Total Amount Due (includes all applicable fees below) **$ 50.00**

The Clerk of Court's office has received, by facsimile transmission dated **9/28/16**, documents in the above referenced case.  In accordance with R.S. 13:850 (B), within seven days, exclusive of holidays, the party filing the document shall forward to the clerk the original signed document, applicable fees and a transmission fee.  The fax transmission fee is also required of forma pauperis filings and filing by state/political subdivisions.

Applicable fees are established in accordance with law as follows:
13:850(B)(3)      A transmission fee of five dollars
13:841(A)(2)(a)   First page of each pleading, six dollars
13:841(A)(2)(b)   Each subsequent page, four dollars
13:841(A)(2)(c)   Paper exhibits, attachments, transcripts and depositions – per page, two dollars
13:841(A)(4)(b)   Issuing document without notice of service, fifteen dollars (Receipt generation fee)

**NO FURTHER ACTION WILL BE TAKEN REGARDING THIS DOCUMENT
UNTIL ALL FEES ARE RECEIVED IN THIS OFFICE.**

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX FILING.
SERVICE WILL BE ISSUED AS A RESULT OF THE FILING OF THE ORIGINAL DOCUMENTS.**

**IF MAILING ORIGINAL DOCUMENT(S), PLEASE ATTACH THIS RECEIPT TO THE DOCUMENT(S) TO BE FILED.
IF FILING THE ORIGINAL DOCUMENTS IN PERSON, PLEASE NOTIFY THE FILING CLERK OF THE PREVIOUS FAX FILING.**

*Antonequia Butler*
_____
*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

5249 – LTR / FAX RECT



**POSTED**

SEP 2 8 2016

MC

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                              DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    Chuck Laroché
       Mike Stein
       Through his attorney of record:
       Phil Franco
       201 Poydras Street, Suite 4500
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Thursday, September 29, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite

4500, New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

|  |  |
|---|---|
| **Chuck Laroché** | **10:00 a.m.** |
| **Mike Stein** | **1:30 p.m.** |

You are invited to attend and participate as you deem fit and proper.



Respectfully submitted,

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile:  (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

1126746v.1



FAX COPY FILED  9-21-16
OR___ FILED  9-20-16

NON-CERTIFIED COPY

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 27rd day of September, 2016.

_____
Loretta G. Mince



1126746v.1

NON-CERTIFIED COPY

POSTED

SEP 28 2016

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                                 DEPUTY CLERK

## NOTICE OF DEPOSITION

To:   Thomas Ryan
      Through his attorney of record:
      Phil Franco
      201 Poydras Street, Suite 4500
      New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Monday, September 26, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite

4500, New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for

all purposes allowed under the Louisiana Code of Civil Procedure:

**Thomas Ryan**          **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                                   Respectfully submitted,

                                   _____
                                   Brent B. Barriere, La. Bar No. 2818
                                   Loretta G. Mince, La. Bar No. 25796
                                   Alysson L. Mills, La. Bar No. 32904
                                   Rebecca Sha, La. Bar No. 35317
                                   FISHMAN HAYGOOD L.L.P.
                                   201 St. Charles Avenue, 46th Floor
                                   New Orleans, Louisiana 70170-4600
                                   Telephone: (504) 586-5252
                                   Facsimile:  (504) 586-5250
                                   *Attorneys for H&E Equipment Services, Inc.*

EBR3806152

1126746v.1

FAX COPY FILED 9-23-16
OR        9-290-16

NON-CERTIFIED COPY

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 23rd day of September, 2016.

_____
Loretta G. Mince



1126746v.1

NON-CERTIFIED COPY

**POSTED**

OCT - 3 2016

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                    SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                        DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    Wayne Sledge
       Through his attorney of record:
       Phil Franco
       201 Poydras Street, Suite 4500
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Friday, September 30, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite 4500,

New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for all

purposes allowed under the Louisiana Code of Civil Procedure:

                    **Wayne Sledge**                    **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                                   Respectfully submitted,

                                   _____
                                   Brent B. Barriere, La. Bar No. 2818
                                   Loretta G. Mince, La. Bar No. 25796
                                   Alysson L. Mills, La. Bar No. 32904
                                   Rebecca Sha, La. Bar No. 35317
                                   FISHMAN HAYGOOD L.L.P.
                                   201 St. Charles Avenue, 46th Floor
                                   New Orleans, Louisiana 70170-4600
                                   Telephone: (504) 586-5252
                                   Facsimile:  (504) 586-5250
                                   *Attorneys for H&E Equipment Services, Inc.*



NON-CERTIFIED COPY

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 28th day of September, 2016.

_____
Loretta G. Mince



NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                        DEPUTY CLERK

## NOTICE OF DEPOSITION

To:    Murray McCullough
       Through his attorney of record:
       Phil Franco
       201 Poydras Street, Suite 4500
       New Orleans, La. 70139

**PLEASE TAKE NOTICE** that Plaintiff, H&E Equipment Services, Inc., through

undersigned counsel will take the deposition of the following person at the designated time on

**Tuesday, October 4, 2016,** at the offices of Adams & Reese, 701 Poydras Street, Suite 4500,

New Orleans, La. 70139 before a certified court reporter, by stenographic means, and for all

purposes allowed under the Louisiana Code of Civil Procedure:

**Murry McCullough**            **10:00 a.m.**

You are invited to attend and participate as you deem fit and proper.

                              Respectfully submitted,

                              _____
                              Brent B. Barriere, La. Bar No. 2818
                              Loretta G. Mince, La. Bar No. 25796
                              Alysson L. Mills, La. Bar No. 32904
                              Rebecca Sha, La. Bar No. 35317
                              FISHMAN HAYGOOD L.L.P.
                              201 St. Charles Avenue, 46th Floor
                              New Orleans, Louisiana 70170-4600
                              Telephone: (504) 586-5252
                              Facsimile:  (504) 586-5250
                              *Attorneys for H&E Equipment Services, Inc.*

1129974v.1

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Deposition has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 3rd day of October, 2016.

_____
Loretta G. Mince



FILED
EAST BATON ROUGE PARISH, LA
2016 OCT -5 AM II: 14
DEPUTY CLERK OF COURT

1129974v.1

NON-CERTIFIED COPY

# FishmanHaygood

Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
fishmanhaygood.com

LORETTA G. MINCE
PARTNER
(504) 586-5273
LMINCE@FISHMANHAYGOOD.COM

October 6, 2016

File No. 3107-04

*Via* **Federal Express**

Clerk of Court
**Attention: Antonequia Butler**
19th JDC, Parish of East Baton Rouge
300 North Boulevard
Baton Rouge, Louisiana 70802

RECEIVED

OCT 07 2016

DEPUTY CLERK OF COURT

Re:    *H&E Equipment Services, Inc. v URS Corporation Architecture, P.C., et al*
Docket No. 626308, Sec. "D"

Dear Ms. Butler:

Per our conversation of today, Check No. 71229 was inadvertently mailed to your office with no signature. Enclosed please find a replacement check in the amount of $50.00 to cover the filing fee of the Notice of Deposition filed on October 3, 2016 regarding the above referenced matter. Please put the unsigned check in the self-addressed stamped envelope and return to our office.

Thanking you for your courtesy in this matter.

Respectfully,

Carla Cooper Mayer

Carla Cooper Mayer
Legal Assistant to Lori G. Mince.

/ccm
Enclosures



NON-CERTIFIED COPY

# FishmanHaygood

Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
fishmanhaygood.com

REBECCA SHA
(504) 556-5530
RSHA@FISHMANHAYGOOD.COM

October 21, 2016

File No. 3107-04

**POSTED**



OCT 2 1 2016

_Via **Federal Express**_

Clerk of Court
19th JDC, Parish of East Baton Rouge
300 North Boulevard
Baton Rouge, Louisiana 70802

Re:    *H&E Equipment Services, Inc. v URS Corporation Architecture, P.C., et al*
       Docket No. 626308, Sec. "D"

Dear Ms. Welborn:

On behalf of Plaintiff, H&E Equipment Services, Inc., please issue the appropriate subpoena duces tecum for the following to appear on November 3, 2016 at 10:00 a.m. at Fishman Haygood, LLP, 201 St. Charles Avenue, 46th Floor, New Orleans, Louisiana 70170.

Franklin Fabricating Services, Inc.
Through its registered agent, Curtis E. Franklin        *1293035*
440 Sandy Springs Lane
Jackson, LA 70748

I have enclosed our check for $137 to cover the cost for filing and service fees for the attached documents. Please return a stamped copy for our file in the enclosed stamped envelope.

Your courtesy in this matter is appreciated.

Respectfully,

Rebecca Sha

RS/dob
Enclosures
cc:    Philip A. Franco, Kellen Matthews, Theresa Dries Wilson (w/encs.) (via email)
       Lori G. Mince, Brent B. Barriere, Alysson L. Mills (via email)

EBR3910249

1135529v.1

REC'D C.P.
OCT 2 6 2016

REC'D C.P.
OCT 2 4 2016

NON-CERTIFIED COPY



ORIGIN ID:NEWA    (504) 586-5252
REBECCA SHA
FISHMAN HAYGOOD, L.L.P.
201 SAINT CHARLES AVE
STE 4600
NEW ORLEANS, LA 70170
UNITED STATES US

SHIP DATE: 20OCT16
ACTWGT: 0.50 LB
CAD: 5347965/INET3790

BILL SENDER

TO
19TH JDC, EAST BATON ROUGE
300 NORTH BOULEVARD

BATON ROUGE LA 70802
(504) 556-5307
INV                    REF: 3107-4
PO
                              DEPT

FedEx.
Express

E

FRI - 21 OCT 3:00P
STANDARD OVERNIGHT

TRK#
0201    7775 2125 9271

42 OPLA                70802
            LA-US   MSY

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                            SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____          _____
                                                  DEPUTY CLERK

COST OK $ 137.00

**NOTICE OF RECORDS DEPOSITION**

**PLEASE TAKE NOTICE** that pursuant to the Louisiana Code of Civil Procedure,

Plaintiff H&E Equipment Services, Inc. has caused to issue a subpoena duces tecum to:

    Franklin Fabricating Services, Inc.
    Through its registered agent, Curtis E. Franklin
    440 Sandy Springs Lane
    Jackson, LA 70748

The subpoena duces tecum requests Franklin Fabricating deliver documents in the

attached Exhibit A to the offices of Fishman Haygood L.L.P., 201 St. Charles Avenue, 46th

Floor, New Orleans, Louisiana 70170, on November 3, 2016 at 10:00 a.m.  If the documents are

received by undersigned counsel on or prior to the appointed time, a personal appearance is

unnecessary.  You are hereby noticed to appear and take part in the examination as you see fit

and proper.

REC'D C.P.

OCT 2 6 2016

NON-CERTIFIED COPY

1135530v.1

Respectfully submitted,

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar. No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 20th day of October, 2016.

Rebecca Sha

FILED
EAST BATON ROUGE PARISH, LA
2016 OCT 21  PM 12: 06
DEPUTY CLERK OF COURT

1135530v.1

NON-CERTIFIED COPY

## EXHIBIT A
### DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA DUCES TECUM

### DEFINITIONS

1.      Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes but is not limited to documents that evidence such communication(s).

2.      Document. The term "document" is defined to include any writings, letters, emails, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any form or medium.

3.      Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4.      Relating or referring. The terms "relating" or "referring" mean relating to, referring to, describing, evidencing, or constituting.

5.      All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6.      And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.      H&E. The term "H&E" means H&E Equipment Services, Inc., and its employees, principals, representatives, and agents.

8.      H&E Projects. The term "H&E Baton Rouge Project" means the construction work, including, but not limited to, the laying of concrete, relating to H&E facilities located in Baton Rouge, LA.



1135530v.1

NON-CERTIFIED COPY

## DOCUMENTS

1.      Any and all documents reflecting any communications by or between any persons that relate or refer to the H&E Baton Rouge Project.

2.      Any and all documents that relate or refer to the H&E Baton Rouge Project, including but not limited to project files, reports, memoranda, invoices, specs, drawings, and plans.

NON-CERTIFIED COPY

# DOUG WELBORN, CLERK OF COURT
## 19th Judicial District Court
## Parish of East Baton Rouge
### 300 North Boulevard
### Baton Rouge, LA 70801
### Phone  (225)389-3960

NO.   C626308 Division D                    26-OCT-2016


TO:   **EAST FELICIANA PARISH SHERIFFS OFFICE**
      **PO BOX 207**
      **CLINTON, LA 70722**


Please find attached SUBPOENA DUCES TECUM AND SUBPOENA FOR DEPOSITION  to be served in your parish for the above numbered suit.

Kindly make your return(s) on the duplicate(s) enclosed, and

ڤ   note the enclosed check for payment of service;

X   send us your bill for service;

ڤ   note that this is a pauper suit and no funds are available; or

ڤ   note that this is a government suit and no funds are necessary.


                                    Thank You,

                                    _Deputy Clerk of Court for_
                                    **Doug Welborn, Clerk of Court**

Requesting Attorney:  **REBECCA SHA**

_____

**REPLY:**                    **DATE:**_____

_____

_____

_____

_____

_____

                    By:_____

                    Deputy Sheriff, Parish of _____


**Letter to Out Of Parish Sheriff - 5213**



EBR3837801

NON-CERTIFIED COPY

6706-16-000688

# SUBPOENA DUCES TECUM
# and SUBPOENA for DEPOSITION

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)


vs.


**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**NUMBER C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**


TO:   **FRANKLIN FABRICATING SERVICES, INC.
      THROUGH CURTIS E. FRANKLIN
      440 SANDY SPRINGS LANE
      JACKSON, LA. 70748**

You are hereby commanded to appear at the office of:

   **FISHMAN HAYGOOD LLP
   201 ST. CHARLES AVE. 46TH FLOOR
   NEW ORLEANS, LA.   70170**

at **10:00 AM** on **NOVEMBER 3, 2016** and have your oral testimony taken in the above entitled and numbered cause, in accordance with Act No. 15 of 1960.  And you are commanded to produce at the above time and place the following:

**\*\*SEE ATTACHED NOTICE OF DEPOSITION FOR DOCUMENTS TO BE PRODUCED\*\***
**\*\*\*SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354\*\*\***

   This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **26-OCT-2016**.

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

---

### SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:**  On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:**  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of _____, this _____ day of _____, 20____.

SERVICE:   $_____
MILEAGE   $_____        _____
TOTAL:     $_____              Deputy Sheriff

**SUBPOENA DUCES TECUM and SUBPOENA for DEPOSITION – OOP - 6706**



EBR3927404

NON-CERTIFIED COPY

Page 1

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

**CLERK OF COURT**
FILE COPY
CASE ID:_____
FILING DATE:_____
ATTORNEY:___ [ ] ___
NO. PAGES:___ [ ] ___

EXHIBIT ATTACHMENT TO:
☐   ACTION SUMMARY JUDGMENT
☐   PETITION
☐   MEMORANDUM
☐   OTHER_____

**DEPUTY CLERK OF COURT**

```
*   *   *   *   *   *   *   *
                            *
H&E EQUIPMENT SERVICES      *
                            *  NUMBER 626,308
VERSUS                      *
                            *  DIVISION "D"
URS CORPORATION             *
ARCHITECTURE, P.C., URS     *
CORPORATION, L O'NEAL       *
JOHNSON AND THOMAS E.       *
RYAN, III                   *
                            *
*   *   *   *   *   *   *   *
```

Deposition of JAMES R. BAILEY,

Ph.D., P.E., taken on Thursday, September 22,

2016, commencing at 9:43 a.m., in the offices of

Fishman Haygood, LLP, Attorneys at Law, 201 St.

Charles Avenue, 46th Floor, New Orleans,

Louisiana, 70170.





EXHIBIT
A

NON-CERTIFIED COPY

Page 8

1                    S T I P U L A T I O N

2

3          It is stipulated and agreed by and between

4    counsel that the deposition of JAMES R. BAILEY,

5    Ph.D., P.E., is hereby being taken under the

6    Louisiana Code of Civil Procedure in accordance

7    with the Code.

8          The formalities of sealing and

9    certification are hereby waived.  The witness

10   will reserve the right to read and sign the

11   deposition.  The party responsible for service

12   of the discovery material shall retain the

13   original.

14         All objections, save those as to the form

15   of the questions, are hereby reserved until such

16   time as this deposition, or any part thereof,

17   may be used or sought to be used in evidence,

18   and are to be made in accordance with the Code

19   of Civil Procedure.

20                    *   *   *   *   *

21         KAY E. DONNELLY, Certified Court Reporter,

22   in and for the State of Louisiana, officiated in

23   administering the oath to the witness.

24

25

NON-CERTIFIED COPY

Page 9

1       JAMES R. BAILEY, Ph.D., P.E., Senior

2   Managing Engineer, Exponent, Inc., 10850

3   Richmond Avenue, Suite 175, Houston, Texas,

4   77042, after having been first duly sworn,

5   testified on his oath as follows:

6   EXAMINATION BY MR. FRANCO:

7       Q.  Good morning, sir.

8       A.  Good morning.

9       Q.  We met yesterday, correct?

10      A.  Correct.

11      Q.  In fact you sat in for the entire

12  deposition of Mr. Drennan yesterday; is that

13  correct?

14      A.  Yes.

15      Q.  Dr. Bailey, you were available for

16  deposition yesterday?

17      A.  I could have been.

18      Q.  Did you ever instruct your lawyers that

19  you were not available for deposition yesterday?

20      A.  I don't recall that I did.

21      Q.  Okay.  Were you aware that I requested

22  to have your deposition first before Mr.

23  Drennan's?

24      A.  No.

25      Q.  So you weren't aware that I was told

NON-CERTIFIED COPY

Page 68

1      A.  Sure.

2      Q.  To look at what you're looking at.

3      A.  (Reviewing document.)  As indicated in

4  my report in Figure 5, it's Detail 1 on the

5  drawing C501.

6      Q.  Okay.  That is a drawing of the

7  eight-inch and the six-inch pavement, correct?

8      A.  Detail 2 is of the six-inch pavement.

9      Q.  Okay.  And where is the drawings for the

10  actual joints, sir?

11      A.  That is shown, as I indicated in my

12  report.  I believe it is Detail 4 on that Sheet

13  5, C501.

14      Q.  Okay.  Does the detail of the typical

15  transverse construction joint No. 4, does that

16  show any rebars through the joints, sir?

17      A.  No.

18      Q.  And you didn't do any coring to find out

19  whether there was any rebar through any of the

20  contraction joints at either site, did you?

21      A.  I considered it and offered it as a

22  possibility, an option as part of my work, but

23  was instructed, at this time, not to do that.

24      Q.  You thought it was prudent to do that,

25  didn't you?

NON-CERTIFIED COPY

Page 69

1      A.  It can help verify and clarify, yes.

2      Q.  The coring would also tell you the

3  thickness of concrete that was laid actually,

4  wouldn't it?

5      A.  Yes.

6      Q.  Did you offer that, as well?

7      A.  Yes.

8      Q.  And, yet, that was rejected at this

9  time?

10      A.  At this time, yes.

11      Q.  Who rejected that?

12      A.  Ms. Mince.

13      Q.  Okay.  Now, you also referred to, in

14  that same paragraph, Doctor, you say, "Repairs,

15  including replacement of the existing pavements,

16  will be necessary to allow the extensive use of

17  heavy equipment over these paved areas..."

18          Is it your opinion that all the existing

19  pavements need to be replaced?

20      A.  In my opinion, it proves that improper

21  sizing and placement of steel reinforcement and

22  pouring a slab in terms of its thickness is

23  insufficient.  It might well warrant complete

24  replacement for heavy equipment in use, what

25  areas are designated for use by heavy equipment.

NON-CERTIFIED COPY

Page 1

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

```
*   *   *   *   *   *   *   *   *
                                *
H&E EQUIPMENT SERVICES          *
                                * NUMBER 626,308
VERSUS                          *
                                * DIVISION "D"
URS CORPORATION                 *
ARCHITECTURE, P.C., URS         *
CORPORATION, L O'NEAL           *
JOHNSON AND THOMAS E.           *
RYAN, III                       *
                                *
*   *   *   *   *   *   *   *   *
```

Deposition of WALLACE C. DRENNAN

III, taken on Wednesday, September 21, 2016,

commencing at 9:44 a.m., in the offices of

Fishman Haygood, LLP, Attorneys at Law, 201 St.

Charles Avenue, 46th Floor, New Orleans,

Louisiana, 70170.

EXHIBIT

B

NON-CERTIFIED COPY

1    APPEARANCES:

2

       Representing the Plaintiff:
3
          FISHMAN HAYGOOD, LLP
4         Attorneys at Law
          201 St. Charles Avenue, Suite 4600
5         New Orleans, Louisiana   70170

6         BY:  LORETTA G. MINCE, ESQ.

7

8

9      Representing the Defendant:

10        ADAMS AND REESE, LLP
          Attorneys at Law
11        4500 One Shell Square
          New Orleans, Louisiana   70139
12
          BY:  PHILIP A. FRANCO, ESQ.
13

14     ALSO PRESENT:
          James R. Bailey, Ph.D., P.E.
15        Exponent, Inc.

16

       Reported by:
17             KAY E. DONNELLY
               Certified Court Reporter
18             State of Louisiana

19

20

21

22

23

24

25

NON-CERTIFIED COPY

Page 6

1                    S T I P U L A T I O N

2

3          It is stipulated and agreed by and between

4    counsel that the deposition of WALLACE C.

5    DRENNAN III is hereby being taken under the

6    Louisiana Code of Civil Procedure in accordance

7    with the Code.

8          The formalities of sealing and

9    certification are hereby waived.  The witness

10   will reserve the right to read and sign the

11   deposition.  The party responsible for service

12   of the discovery material shall retain the

13   original.

14         All objections, save those as to the form

15   of the questions, are hereby reserved until such

16   time as this deposition, or any part thereof,

17   may be used or sought to be used in evidence,

18   and are to be made in accordance with the Code

19   of Civil Procedure.

20                   *   *   *   *   *

21         KAY E. DONNELLY, Certified Court Reporter,

22   in and for the State of Louisiana, officiated in

23   administering the oath to the witness.

24

25

NON-CERTIFIED COPY

1       WALLACE C. DRENNAN, Wallace C. Drennan,

2   Inc., P.O. Box 15438, New Orleans, Louisiana,

3   70175, after having been first duly sworn,

4   testified on his oath as follows:

5   EXAMINATION BY MR. FRANCO:

6       Q.  Good morning, Mr. Drennan.  My name is

7   Phil Franco, and I represent URS and the other

8   defendants in this case.

9           Have you ever been deposed before, sir?

10      A.  Yes.

11      Q.  About how many times have you been

12  deposed?

13      A.  More than ten.

14      Q.  Okay.  So you understand the process?

15      A.  Yes.

16      Q.  If you don't understand a word that I'm

17  using or my question, would you please let me

18  know, and I will try to rephrase that for you so

19  that you can understand it.

20      A.  Yes.

21      Q.  Otherwise, I will assume that you

22  understand my question.

23          Would you state your full name and

24  address for the Record, please?

25      A.  Wallace C. Drennan III, 2225 Chestnut

NON-CERTIFIED COPY

Page 76

1    weakest area to crack, and usually that means

2    that it's looking for an area that's -- it's

3    less material than it has to pull apart.

4         In case of these corners, if you have

5    four panels meeting each other, and you have

6    rebar 24 inches on center, it's possible there's

7    actually no rebar in that -- in the area inside

8    the corner crack because of the spacing, and

9    that becomes one of the weakest areas of the

10   slab, and corners are already weak.  And this

11   just exacerbates the problem to create that

12   corner crack.

13        Q.  Did you investigate whether the

14   contractor actually installed the pavement at

15   the correct thickness?

16        A.  I did not see any core information.

17        Q.  So the answer is "no"?

18        A.  The answer is "no."  I have no core

19   information, no.

20        Q.  Did you investigate, especially in

21   connection with any random cracking across the

22   panels, did you investigate any other cause for

23   that other than design?

24        MS. MINCE:

25            Object to form.

NON-CERTIFIED COPY

19TH JUDICIAL DISTRICT COURTPARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DOCKET NO.: 626,308                                          SECTION: "D"

H&E EQUIPMENT SERVICES, INC

VERSUS

URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL
JOHNSON, AND THOMAS E. RYAN, III

FILED: _____        _____
                                           DEPUTY CLERK

## **NOTICE OF RECORDS DEPOSITION**

**PLEASE TAKE NOTICE** that pursuant to the Louisiana Code of Civil Procedure,

Plaintiff H&E Equipment Services, Inc. has caused to issue a subpoena duces tecum to:

    Franklin Fabricating Services, Inc.
    Through its registered agent, Curtis E. Franklin
    440 Sandy Springs Lane
    Jackson, LA 70748

The subpoena duces tecum requests Franklin Fabricating deliver documents in the

attached Exhibit A to the offices of Fishman Haygood L.L.P., 201 St. Charles Avenue, 46th

Floor, New Orleans, Louisiana 70170, on November 3, 2016 at 10:00 a.m.  If the documents are

received by undersigned counsel on or prior to the appointed time, a personal appearance is

unnecessary.  You are hereby noticed to appear and take part in the examination as you see fit

and proper.

1135530v.1



EXHIBIT
C

NON-CERTIFIED COPY

Respectfully submitted,

_____

Brent B. Barriere, La. Bar No. 2818
Loretta G. Mince, La. Bar No. 25796
Alysson L. Mills, La. Bar No. 32904
Rebecca Sha, La. Bar. No. 35317
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for H&E Equipment Services, Inc.*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by facsimile, email and/or by placing same in the United States mail, postage prepaid and properly addressed, this 20th day of October, 2016.

_____
Rebecca Sha

1135530v.1

NON-CERTIFIED COPY

## EXHIBIT A
## DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA DUCES TECUM

### DEFINITIONS

1.    Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and includes but is not limited to documents that evidence such communication(s).

2.    Document. The term "document" is defined to include any writings, letters, emails, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any form or medium.

3.    Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4.    Relating or referring. The terms "relating" or "referring" mean relating to, referring to, describing, evidencing, or constituting.

5.    All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

6.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.    H&E. The term "H&E" means H&E Equipment Services, Inc., and its employees, principals, representatives, and agents.

8.    H&E Projects. The term "H&E Baton Rouge Project" means the construction work, including, but not limited to, the laying of concrete, relating to H&E facilities located in Baton Rouge, LA.

1135530v.1

NON-CERTIFIED COPY

**DOCUMENTS**

1.      Any and all documents reflecting any communications by or between any persons that relate or refer to the H&E Baton Rouge Project.

2.      Any and all documents that relate or refer to the H&E Baton Rouge Project, including but not limited to project files, reports, memoranda, invoices, specs, drawings, and plans.

1135530v.1

NON-CERTIFIED COPY

# EXponent®

*Failure Analysis Associates®*

Exponent
475 14th Street, Suite 400
Oakland, CA 94612

telephone 510-268-5000
facsimile 510-268-5099
www.exponent.com

August 26, 2016

Loretta G. Mince, Esq.
Fishman Haygood, L.L.P.
201 St. Charles Avenue
46th Floor
New Orleans, Louisiana 70170

Subject:   H&E Equipment Facilities
           Exponent Project No. 1306663.001

Dear Ms. Mince:

I reviewed the Change Order (CO) documents related to the construction of the H&E Equipment facilities at Baton Rouge, Kenner, and Belle Chasse.   Based on the CO documents produced by URS, and my education, training, and 28 years of experience in the construction industry, the added project costs could have been mitigated.  Using the Cost of Change v. Time model, the cost of work added to the scope by change order can be estimated  to be 1.5 to 2 times greater than the cost otherwise would have been had the scope of work been included in the contract documents prior to bidding the project.

If you have any questions or require additional information, please do not hesitate to contact me at 510-268-5083.

Sincerely,

Matt Vail, P.E.
Senior Manager
Construction Consulting Practice
Exponent, Inc.

James R. (Bob) Bailey, Ph.D., P.E.
Senior Managing Engineer
Exponent, Inc.

1306663.001 - 6908

NON-CERTIFIED COPY



# FishmanHaygood

Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
fishmanhaygood.com

LORI G  MINCE
PARTNER
(504) 586-5273
LMINCE@FISHMANHAYGOOD.COM

October 21, 2016

File No. 3107-04

**_VIA_ EMAIL AND U.S. MAIL**

Mr. Philip A. Franco
Kellen J. Matthews
Adams & Reese, LLP
4500 One Shell Square
New Orleans, La. 70139
philip.franco@arlaw.com
Kellen.matthews@arlaw.com

Re:    *H&E Equipment Services, Inc. v. URS Corporation Architecture, P.C., et al*
19th JDC for the Parish of East Baton Rouge, Docket No. 626308, Sec. "D"

Dear Phil and Kellen:

Enclosed please find correspondence from Wallace C. Drennan, III related to his prior expert report and deposition testimony.

If you have any questions or if I can be of any assistance, I encourage you to contact me at (504) 586-5273.

Sincerely,

Lori G. Mince

LGM/ccm

EXHIBIT
E

NON-CERTIFIED COPY

PHONE
(504) 823-8000
FAX
(504) 836-2939

**WCD**

Wallace C.
**Drennan, Inc.**

General Contractors
P.O. BOX 15438
NEW ORLEANS, LA 70175-5438

LA CONTRACTOR'S
LICENSE NO. 1033

October 13, 2016

Ms. Lori Mince
Fishman Haygood LLP
201 St. Charles Ave., 46th Floor
New Orleans, LA 70170

Re: Head and Enquist Baton Rouge

Dear Lori,

During my deposition, I testified that the estimate prepared for the removal and replacement of concrete at the Baton Rouge site included the entire site. Following my deposition, I confirmed that the square footage reflected in the estimate does not include the parking area adjacent to the office building.

Additionally, during my deposition, counsel for URS inquired about the cost of demolishing eight inches of pavement verses demolishing six inches of pavement and removing two inches of fill. Following my deposition, I reviewed this and determined that the difference in the price for removal of eight inches of concrete verses removal of six inches plus two inches of fill for the entire project would be $0.42 per square yard.

If there are any questions please feel free to contact me.

Sincerely,

*[signature]*

Wallace C. Drennan, III
President

**CONSTRUCTING FOR OVER 50 YEARS**

NON-CERTIFIED COPY

| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308    DIV.: D |
|---|---|---|
| | * | 19TH JUDICIAL DISTRICT COURT |
| VERSUS | * | |
| | * | PARISH OF EAST BATON ROUGE |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON AND THOMAS E. RYAN, III | * | STATE OF LOUISIANA |

---

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA DUCES TECUM TO ENFORCE THIS COURT'S AMENDED CASE MANAGEMENT ORDER**

---

<u>MAY IT PLEASE THE COURT:</u>

Defendants, URS Corporation Architecture, P.C., URS Corporation, L. O'Neal Johnson and Thomas E. Ryan, III (collectively referenced herein as "URS"), submit this memorandum in support of their Motion for Protective Order and a Motion to Quash the Subpoena Duces Tecum to Enforce this Court's Amended Case Management Order, as follows:

### I.    INTRODUCTION

As set forth more fully herein, Plaintiff, H&E Equipment Services, Inc. ("Plaintiff" or "H&E") has cavalierly advised that it will conduct "ground penetrating radar testing" ( "GPR testing") on the two sites at issue in this case in seven (7) days. This case has been pending for three (3) years and H&E is now on its third law firm. The proposed testing comes *__after__* all deadlines previously agreed to by the parties and ordered by this Court in the March 14, 2016 Amended Case Management Order (the "Amended CMO") have expired.  Significantly, this proposed GPR testing comes only after seven (7) experts have submitted expert reports, seven (7) experts have been



EBR3816111

REC'D C.P.

NOV 18 2016

1

NON-CERTIFIED COPY

deposed, all fact discovery, including numerous depositions, has been completed, and numerous site inspections were completed.  Importantly, the additional proposed GPR testing will inject new facts into the matter, necessitate the involvement of new experts to interpret the data long after the timely-named experts have already produced reports, given opinions, and been deposed.  The proposed belated testing will affect all prior opinions, reports and depositions properly taken pursuant to the Amended CMO.  Accordingly, URS seeks an order pursuant to La. Code Civ. Proc. art. 1426 barring this additional discovery from being conducted and used in connection with this matter.

Additionally, on October 20, 2016, in violation of this Court's ordered deadline for fact discovery, Plaintiff cavalierly propounded a subpoena duces tecum to Franklin Fabricating Services, Inc. ("Franklin") for additional discovery. In addition to being violative of the Case Management Order, the subpoena requests documents which, to the extent they exist, were previously made available to prior counsel for H&E by URS. URS also seeks an order that the subpoena to Franklin be quashed due to its violation of the CMO and redundant nature.

## II.    PERTINENT FACTUAL BACKGROUND

Plaintiff, H&E contracted with URS Corporation Architecture, P.C. and its affiliates or subsidiaries ("URS") to perform consulting and professional engineering services in connection with construction and renovation at H&E's Baton Rouge, Kenner and Belle Chase locations (collectively referenced herein as "the Projects").  Approximately **three years ago**, in November, 2013, H&E filed the instant lawsuit asserting a breach of the standard of care on the part of URS in connection with the Projects.  In July of this summer of 2016, H&E discharged its second law firm in this case and substituted a third law firm to handle this case.

NON-CERTIFIED COPY

*H&E's Allegations*

H&E's claims are primarily rooted in issues allegedly experienced with regard to "major portions of the concrete parking aprons and staging areas for H&E's heavy equipment" at its Baton Rouge and Kenner locations.[1]  H&E complains that these areas "at both facilities began experiencing a substantial and unanticipated amount of cracking, spalling and deterioration" as a result of "errors and defects in the design of the parking and staging areas."[2]  H&E specifically avers that "the design deficiencies relate to the defective and negligent design of the concrete pad, the expansion joints, the control joints, the specified concrete strength, and/or the specified surface of the parking and staging areas."[3]

*Amended Case Management Order*

The second law firm that H&E retained and counsel for URS conferred and agreed to deadlines to economically and efficiently move this case toward trial. These deadlines were submitted to this Court and were established by order in March of 2016. These deadlines specifically included completion of all fact and expert discovery.

*Expert Discovery*

After being admitted as H&E's third law firm, present counsel for H&E sought and obtained leave of Court to identify an additional expert, Wallace Drennan, III, after the deadline for doing so had expired and over Defendants' objection. H&E subsequently submitted the reports of its experts, James R. "Bob" Bailey and Wallace Drennan, III, on July 29, 2016 which essentially point to design deficiencies as the cause of the pavement damage.  Defendants subsequently submitted five (5) rebuttal expert reports on August 31, 2016 which negate the alleged design deficiencies in the pavement, as well as other alleged deficiencies.

---

[1] Pltff. Pet. at ¶13.
[2] *Id.*
[3] *Id.*

3

NON-CERTIFIED COPY

Subsequent to the timely exchange of expert reports, the depositions of all of the experts were timely completed. Each expert rendered his opinion based on site visits. Interestingly, Mr. Bailey, H&E's expert, testified that he requested coring testing of the paved areas at the sites as part of his work, which would have been prudent to verify and clarify. H&E's expert further testified that his request to do coring testing was rejected by counsel for H&E.[4] Similarly, the concrete contractor that Plaintiff has presented as an expert, Wallace Drennan, III acknowledged that he was not able to assess whether the concrete was installed at the correct thickness without core testing, which had not been done during the three (3) years of this case.[5]

*Proposed Additional Testing*

On October 21, 2016, H&E unilaterally and cavalierly advised that it plans to conduct "testing using ground penetrating radar," of the paved areas of the Baton Rouge and Kenner sites. H&E's unilaterally imposed, belated discovery is to take place in seven (7) days on November 2, 2016 in both Kenner and Baton Rouge.[6] Significantly, H&E's belated intent to perform radar testing at the sites will significantly affect all of the seven (7) expert opinions, reports, and depositions to which the parties and the experts have devoted significant time and expense. In essence, this proposed belated testing after all expert and fact discovery has been timely completed seeks to change the game. It essentially seeks to introduce entirely new facts after all fact and expert discovery has been timely completed. Moreover, such proposed belated testing will also require entirely new expert opinions after all expert discovery has been completed. Expert opinions will be necessary to interpret the radar data and new experts will have to be retained to do so.

H&E also provides no protocol for any such radar testing, nor does it provide any information as to who will perform the radar testing or who will interpret the data.

---

[4] Exhibit "A"- Dep. of Bailey, p. 68-69.
[5] Exhibit "B"-  Dep. of Drennan at p. 76, L.L. 13-19.
[6] *Id.*

NON-CERTIFIED COPY

H&E provides no information to substantiate that GPR testing is reliable for these sites or recognized in the industry for the types of sites at issue. Significantly, H&E provides no explanation as to why GPR testing is to be done rather than core testing requested as referenced by its own experts.

*Subpoena Duces Tecum to Franklin Fabricating Services, Inc.*

On October 21, 2016, H&E submitted a subpoena duces tecum to Franklin seeking materials including communications, project files, reports, memoranda, specs, drawings and plans relative to the H&E Baton Rouge Project.[7] This subpoena was issued well after the deadline for completion of all fact discovery and moreover even beyond the deadline for expert discovery. Additionally, the materials that H&E now seeks, to the extent they exist, were previously made available to prior H&E counsel by URS for copying.

*Untimely Supplemental Reports*

The above actions are not the only brash actions by new counsel for H&E to contravene this Court's CMO. On August 26, 2016, almost a full month after Plaintiff's deadline for submitting expert reports, H&E brazenly submitted a purported "supplement" to Mr. Bailey's report.[8] However, this report was actually signed by Matt Vail, an engineer with the same company as Mr. Bailey, Exponent, Inc. in addition to Mr. Bailey. Mr. Vail had never before been disclosed, with the first reference to him coming long after the deadline for both identification of experts and provision of Plaintiffs' expert reports. Mr. Bailey admitted in deposition that Mr. Vail had actually performed the analysis.[9] So this was nothing more than an effort to inject another expert and opinion contrary to this Court allowing H&E to add Mr. Drennan as an expert after the deadline. Then, on October 20, 2016, H&E submitted another report from Mr. Drennan wherein he attempts to address discrepancies between his testimony

---

[7] **Exhibit "C"** – Subpoena Duces Tecum to Franklin.
[8] **Exhibit "D"** – Exponent August 26, 2016 Report.
[9] Exh. "A" - Dep. of Bailey at p. 156, L.L. 8-12.

5

NON-CERTIFIED COPY

and earlier, timely report.[10]  Again, this report comes well after the deadline agreed and imposed by Court order for both identification of experts and expert reports.  URS has continued to object to H&E's repeated, unilateral violations of the Amended Case Management Order and now URS calls upon this this Court to enforce its Order.

### III.   LAW & ARGUMENT

#### A.  Standard of Law

Louisiana courts have long recognized that discovery must not be conducted without regard to the rights of the party against whom it is invoked to be protected against undue hardship, loss or damage.[11]  Moreover, it is axiomatic that a court has the discretion to limit the scope of discovery, and to issue orders protecting parties from discovery abuse.[12]

Indeed, Louisiana Code of Civil Procedure article 1426 expressly provides that, upon motion by a party, the Court may limit discovery, including directing that "discovery not be had" to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Thus, while liberal discovery is encouraged, "it must not be conducted without regard to the rights of the party against whom it is invoked."[13]  Here, Defendants seek an order of this Court to protect it from the undue burden and expense that would surely follow if entirely new facts and opinions were inserted into a three (3) year old case after all fact and expert discovery has been completed pursuant to agreed deadlines ordered by this Court.

#### B.  H&E should be barred from conducting and admitting additional testing in connection with this matter.

H&E cannot provide a valid reason for its failure to conduct any testing during the three (3) year pendency of this case and within the cutoffs that were agreed to by the parties and H&E's previous counsel and ordered by this Court in the Amended CMO.

---

[10] Exhibit "E"- Drennan Report rec'd October 21, 2016.

[11] *Ward v. Tenneco Oil Co.*, 564 So.2d 814, 822 (La. App. 3 Cir. 1990).

[12] *See, e.g., Bless Home Health Agency v. Louisiana Dep't of Health and Hospitals*, 770 So.2d 780, 785 (La. App. 1 Cir. 5/22/00), ("[t]he granting or not of a protective order and the extent of protection extended are within the discretion of the trial court").

[13] *Ward*, 564 So.2d at 822.

NON-CERTIFIED COPY

H&E, at all times pertinent hereto, had access to its Kenner and Baton Rouge facilities and could have conducted any testing. Moreover, H&E was aware that core testing was requested and referenced by its own experts prior to the close of expert discovery. Inexplicably, however, H&E rejected the advice or reference of its own experts, and, apparently, strategically waited until after all fact discovery was completed, all expert site visits were conducted, all expert opinions were rendered in reports, and all experts were deposed to do testing not recommended by its own experts which will introduce entirely new facts, opinions and experts into a case pending for three (3) years, after cutoff dates have expired.

Moreover, in addition to the extremely untimely nature of the testing, it is unduly expensive and burdensome for the other parties. As discussed above, all Defendants' experts have already submitted reports and provided depositions. However, if H&E is permitted to conduct the GPR testing, there will be an introduction of new facts and opinions *after* every discovery deadline under the Amended CMO has expired, and Defendants would be forced to incur undue costs to address said data and opinions, including enlisting new expert(s) to interpret the data.

Any data or information obtained by way of this late testing should not be admissible since it comes after all discovery deadlines, and was readily available to Plaintiff from the outset of this case, which has been pending before this Court for three (3) years. It is an appropriate remedy to strike evidence of testing conducted after the conclusion of discovery. *See, Journet v. Vehicle Vin. No. 1GRAA06283T500670, et al.,* 2006 WL 1663708 (S.D.Tex. 6/15/2006) *(citing) Jones v. Flowserve FCD Corp.,* 73 Fed. Appx. 706 (5th Cir. 2003) *( The Court excluded evidence that plaintiff attempted to introduce relative to additional crash tests performed by their experts after discovery into their experts' opinions was "virtually concluded.").* Here, Defendants seek a protective order from the Court to prohibit the GPR testing and the admission of such belated testing in this case.

7

NON-CERTIFIED COPY

C.   **The Subpoena Duces Tecum issued to Franklin is untimely and should be quashed.**

Here again, H&E's October 21, 2016 subpoena duces tecum to Franklin was served *after* all discovery was to be completed under the Amended CMO. As is readily apparent from the other conduct addressed in this Motion, this untimely subpoena is just the latest in an ever-growing list of H&E's flagrant violations of the Amended CMO. Courts have the discretion to quash untimely subpoenas or to issue a protective order to preclude responses.[13]  In addition to the untimeliness of the subpoena, the materials H&E seeks have, to the extent they exist, been made available to H&E's prior counsel when it was permitted to inspect and copy URS's hard copy files for the Projects.

D.   **Plaintiff's untimely expert reports are improperly submitted and should be stricken.**

After the July 29, 2016 deadline for H&E's submission of expert reports, H&E twice submitted additional reports, once on August 26, 2016 and then again on October 21, 2016.  The first additional report to Mr. Bailey's report was submitted almost a full month after Plaintiff's deadline for submitting expert reports.[14]  As noted previously, this report was actually rendered by another Exponent engineer, and simply signed by Mr. Bailey. Thus, H&E, without seeking consent or the leave of this Court, cavalierly added an expert opinion from another expert after the deadline and after it had gotten leave over Defendants' objections to add one expert, Mr. Drennan.

With the second additional report, which was provided on October 20, 2016, even after Mr. Drennan had been deposed, H&E submitted a report from Mr. Drennan wherein he attempts to simply rehabilitate his prior deposition testimony.  Like the other additional report, this report comes long after the deadline for both identification of experts, expert reports, and depositions of experts.

---

[13] See, *e.g. United States v. Wilson*, 732 F.2d 404, 412 (5th Cir. 1984).
[14] Exh. D.

NON-CERTIFIED COPY

## IV.   CONCLUSION

H&E has displayed a blatant disregard for the Amended CMO to which its prior counsel agreed and which this Court ordered.   H&E's repeated disregard for this Court's order underscores the clear need for a protective order.   For the foregoing reasons, Defendants' Motion for Protective Order and a Motion to Quash the Subpoena Duces Tecum to Enforce this Court's Amended Case Management Order should be granted and a protective order issued prohibiting the performance and admissibility of the GPR testing, an order quashing the subpoena duces tecum to Franklin, and an order prohibiting the use and admissibility of the additional expert reports by Mr. Bailey and Mr. Drennan.

Respectfully submitted,

ADAMS AND REESE, LLP

Philip A. Franco   (Bar #5819), TA
Ron Sholes   (Bar # 14436)
Kellen J. Mathews   (Bar #31860)
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone: (504) 581-3234
Fax: (504) 566-0210

**ATTORNEYS FOR DEFENDANTS, URS CORPORATION ARCHITECTURE, P.C.; URS CORPORATION; L. O'NEAL RYAN AND THOMAS E. RYAN, III**



9

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served

upon all counsel of record via United States mail, properly addressed, and first class

postage prepaid and via email, this the _____27^{th}_____ day of October, 2016.

_____
OF COUNSEL

NON-CERTIFIED COPY

12-8

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308        DIV.: D |
| | * | |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| | * | |
| URS CORPORATION | * | PARISH OF EAST BATON ROUGE |
| ARCHITECTURE, P.C., URS | * | |
| CORPORATION, L. O'NEAL | * | STATE OF LOUISIANA |
| JOHNSON AND THOMAS E. RYAN, | * | |
| III | * | |

---

### DEFENDANTS' MOTION FOR EXPEDITED CONSIDERATION OF MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA DUCES TECUM TO ENFORCE THIS COURT'S AMENDED CASE MANAGEMENT ORDER

---

NOW INTO COURT through undersigned counsel come, Defendants, URS Corporation Architecture, P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS"), who move this Court for an Order expediting consideration of the Motion for Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce This Court's Amended Case Management Order, as follows:

1.

On October 21, 2016, H&E Equipment Services, Inc. ("H&E") cavalierly advised URS that on November 2, 2016, only twelve (12) days later, it intended to conduct ground penetrating radar testing (the "GPR testing") on the two sites at issue in this case, which has been pending for three (3) years.

On October 20, 2016, H&E also brazenly noticed the records deposition of Franklin Fabricating Services, Inc. to take place on November 3, 2016, only thirteen (13) days later.

REC'D C.P.

NOV 18 2016



1

NON-CERTIFIED COPY

2.

Pursuant to the Amended Case Management Order ("Amended CMO"), to which the parties and their counsel agreed and this Court so ordered, the deadline for all discovery was back on September 30, 2016. Depositions of all fact witnesses requested were completed, as well as the depositions of all seven (7) expert witnesses.

3.

Given the impending testing and deposition dates unilaterally set by H&E without prior notice, URS requests expedited consideration of this Motion to enforce this Court's Amended Case Management Order and avoid the unnecessary fees and expenses of having to attend untimely discovery and testing, which comes well after all expert and fact discovery was completed pursuant to this Court's Order.

4.

Counsel for URS has attempted to resolve this callous disregard for the schedule stipulated by the parties and approved by the Court for the orderly progression of this matter, but no resolution has been obtained. Unfortunately, this Court's intervention is necessary on an expedited basis to maintain the integrity of the deadlines ordered by this Court in its Amended Case Management Order.

WHEREFORE, Defendants, URS Corporation Architecture, P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III, respectfully pray that, based upon the foregoing Motion that this Court grant expedited consideration of Defendants' Motion for Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce This Court's Amended Case Management Order and that the Court order that until the Court renders a decision on Defendants' Motion for Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce This Court's Amended Case Management Order no additional testing, including but not limited to GPR testing, and no records depositions may be conducted for purposes of the above-captioned matter.

NON-CERTIFIED COPY

Respectfully submitted,

ADAMS AND REESE, LLP

_____

Philip A. Franco      (Bar #5819), TA
Ron Sholes             (Bar # 14436)
Kellen J. Mathews    (Bar #31860)
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone: (504) 581-3234
Fax: (504) 566-0210

**ATTORNEYS FOR DEFENDANTS, URS CORPORATION ARCHITECTURE, P.C.; URS CORPORATION; L. O'NEAL RYAN AND THOMAS E. RYAN, III**



3

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record via United States mail, properly addressed, and first class postage prepaid or via email, this the 27TH day of October, 2016.

_____

OF COUNSEL



4

NON-CERTIFIED COPY

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308     DIV.: D |
| | * | |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| | * | |
| URS CORPORATION | * | PARISH OF EAST BATON ROUGE |
| ARCHITECTURE, P.C., URS | * | |
| CORPORATION, L. O'NEAL | * | STATE OF LOUISIANA |
| JOHNSON AND THOMAS E. RYAN, | * | |
| III | * | |

---

## ORDER

Considering the foregoing Motion for Expedited Consideration of the Motion for

Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce This Court's

Amended Case Management Order filed by Defendants, URS Corporation Architecture,

P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively

referred to as "URS"):

**IT IS HEREBY ORDERED** that URS's Motion for Expedited Consideration is

**GRANTED,** and URS's Motion for Protective Order and Motion to Quash Subpoena

Duces Tecum to Enforce This Court's Amended Case Management Order shall be heard

on an expedited basis on the __8__ day of __Dec.__, 2016 at 9:30 a.m./p.m.

**IT IS FURTHER ORDERED** that until the Court renders a decision on URS's

Motion for Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce

This Court's Amended Case Management Order, no additional testing, including but

not limited to GPR testing, and no records depositions may be conducted for purposes

of the above-captioned matter.

**THUS DONE AND SIGNED** in Baton Rouge, Louisiana, this __11__ day of

__Nov__, 2016.

_Janice Clark_
HONORABLE JANICE CLARK, JUDGE
19th Judicial District Court



NON-CERTIFIED COPY

**PLEASE SERVE:**

**H&E EQUIPMENT SERVICES, INC.**
Through its Counsel of Record
Brent Barriere
Loretta G. Mince
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170

NON-CERTIFIED COPY

12-8

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308    DIV.: D |
| | * | |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| | * | |
| URS CORPORATION | * | PARISH OF EAST BATON ROUGE |
| ARCHITECTURE, P.C., URS | * | |
| CORPORATION, L. O'NEAL | * | STATE OF LOUISIANA COST OK $ 286 |
| JOHNSON AND THOMAS E. RYAN, | * | |
| III | * | OCT 27 2016 |

CH 054319 Q
DEPUTY CLERK OF COURT

## MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA DUCES TECUM TO ENFORCE THIS COURT'S AMENDED CASE MANAGEMENT ORDER

NOW INTO COURT through undersigned counsel come, Defendants, URS Corporation Architecture, P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS"), who move this Court for a protective order and an order quashing a Subpoena Duces Tecum in order to enforce this Court's Amended Case Management Order entered March 14, 2016.

H&E Equipment Services, Inc. ("H&E") has cavalierly ignored deadlines jointly agreed to by the parties and clearly set forth in this Court's Amended Case Management Order. The grounds for this motion are more fully set forth in the attached memorandum of law and exhibits, all of which are incorporated herein by reference.

WHEREFORE, for the reasons set forth in the attached memorandum, URS prays that this Court issue a protective order to enforce the Amended Case Management Order as further prayed for in the attached memorandum.

REC'D C.P.
NOV 18 2016



EBR3816110

1

NON-CERTIFIED COPY

Respectfully submitted,

ADAMS AND REESE, LLP

_____

Philip A. Franco   (Bar #5819), TA
Ron Sholes      (Bar # 14436)
Kellen J. Mathews  (Bar #31860)
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Fax: (504) 566-0210

**ATTORNEYS FOR DEFENDANTS, URS CORPORATION ARCHITECTURE, P.C.; URS CORPORATION; L. O'NEAL RYAN AND THOMAS E. RYAN, III**



2

NON-CERTIFIED COPY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record via United States mail, properly addressed, and first class postage prepaid and via email, this the _27ᵗʰ_ day of October, 2016.

_____
OF COUNSEL



3

NON-CERTIFIED COPY

| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308    DIV.: D |
| | * | |
| VERSUS | * | 19TH JUDICIAL DISTRICT COURT |
| | * | |
| URS CORPORATION | * | PARISH OF EAST BATON ROUGE |
| ARCHITECTURE, P.C., URS | * | |
| CORPORATION, L. O'NEAL | * | STATE OF LOUISIANA |
| JOHNSON AND THOMAS E. RYAN, | * | |
| III | * | |

---

## ORDER

---

Considering the foregoing Motion for Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce This Court's Amended Case Management Order filed by Defendants, URS Corporation Architecture, P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "URS"):

**IT IS HEREBY ORDERED** that Plaintiff, H&E Equipment Services, Inc. appear and show cause, if any, on the _8_ day of ___*Dec.*___, 2016 at _9:30_ a.m./p.m. why URS's Motion for Protective Order and Motion to Quash Subpoena Duces Tecum to Enforce This Court's Amended Case Management Order should not be granted as prayed for.

[DUE TO EXIGENT CIRCUMSTANCES URS HAS ALSO FILED HEREWITH A MOTION FOR EXPEDITED CONSIDERATION WHICH ALSO CONTAINS A PROPOSED ORDER SETTING THIS MATTER FOR HEARING ON AN EXPEDITED BASIS.]

**THUS DONE AND SIGNED** in Baton Rouge, Louisiana, this _11_ day of _Nov_, 2016.

_____
HONORABLE JANICE CLARK, JUDGE
19th Judicial District Court



NON-CERTIFIED COPY

*12 8*

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308    DIV.: D |
| | * | 19TH JUDICIAL DISTRICT COURT |
| VERSUS | * | PARISH OF EAST BATON ROUGE |
| | * | |
| URS CORPORATION | * | STATE OF LOUISIANA |
| ARCHITECTURE, P.C., URS | | |
| CORPORATION, L. O'NEAL | | |
| JOHNSON AND THOMAS E. RYAN, | | |
| III | | |

COST OK $ **1.05**



OCT 2 7 2016

C# 054311A

DEPUTY CLERK OF COURT

---

### MOTION TO SET TRIAL DATE AND REMAINING DEADLINES

---

**NOW INTO COURT,** through undersigned counsel, come URS

CORPORATION ARCHITECTURE, P.C. ("URS Architecture"), URS CORPORATION

("URS Corporation"), L. O'NEAL JOHNSON ("Johnson") AND THOMAS E. RYAN, III,

("Ryan") (all collectively referred to hereinafter as "Defendants"), who show that all

deadlines ordered in the prior Case Management Order have run, including completion

of discovery, and that this case is ready to be set for trial, now move this Honorable

Court to set this matter for a jury trial and to establish all other remaining deadlines

needed for pretrial procedure. Defendants anticipate that the matter can be tried before

the jury in 3-5 days, and Defendants have attached hereto a proposed Supplemental

Case Management Order for the Court's consideration.

WHEREFORE, Defendants, URS Corporation Architecture, P.C., URS

Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III, respectfully request that this

Honorable Court grant their Motion to Set Trial Date and Remaining Deadlines and set

this matter for a jury trial and establish all other remaining deadlines needed for pretrial

procedure.

REC'D C.P.

NOV 18 2016



EBR3816024

1

NON-CERTIFIED COPY

Respectfully submitted,

ADAMS AND REESE, LLP

Philip A. Franco (Bar #5819), TA
Ron Sholes (Bar # 14436)
Kellen J. Mathews (Bar #31860)
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Fax: (504) 566-0210
**Attorneys for Defendants,**
**URS Corporation Architecture, P.C.;**
**URS Corporation; L. O'Neal Johnson**
**and Thomas E. Ryan, III**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading was served

upon all counsel of record via e-mail and/or United States Mail, postage prepaid and

properly addressed, this _____27^TH_____ day of October, 2016.

Kellen J. Mathews



2

NON-CERTIFIED COPY

| H&E EQUIPMENT SERVICES | * | SUIT NO. 626,308    DIV.: D |
| | * | 19TH JUDICIAL DISTRICT COURT |
| VERSUS | * | |
| | * | PARISH OF EAST BATON ROUGE |
| URS CORPORATION | * | |
| ARCHITECTURE, P.C., URS | * | STATE OF LOUISIANA |
| CORPORATION, L. O'NEAL | | |
| JOHNSON AND THOMAS E. RYAN, | | |
| III | | |

## ORDER

Considering the foregoing Motion to Set Trial Date and Remaining Deadlines filed by Defendants, URS Corporation Architecture, P. C., URS Corporation, L. O'Neal Johnson, and Thomas E. Ryan, III (collectively referred to as "Defendants"):

**IT IS HEREBY ORDERED** that Plaintiff, H&E Equipment Services, Inc., appear and show cause, if any, on the __8__ day of __Dec.__, 2016 at __9:30__ a.m./p.m. why Defendants' Motion to Set Trial Date and Remaining Deadlines should not be granted and the proposed Amended Case Management Order should not be entered in the form attached to the foregoing Motion.

**THUS DONE AND SIGNED** in Baton Rouge, Louisiana, this __11__ day of __Nov__, 2016.

_____
HONORABLE JANICE CLARK, JUDGE
19th Judicial District Court

**PLEASE SERVE:**

**H&E EQUIPMENT SERVICES, INC.**
Through its Counsel of Record
Brent Barriere
Loretta G. Mince
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170

3

NON-CERTIFIED COPY

6706-16-000688

# SUBPOENA DUCES TECUM
# and SUBPOENA for DEPOSITION

H&E EQUIPMENT SERVICES INC
(Plaintiff)

**RECEIVED**

OCT 2 8 2016

EAST FELICIANA
SHERIFF'S OFFICE

vs.

URS CORPORATION ARCHITECTS INC
ET AL
(Defendant)

NUMBER C626308 Division D

19th JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

TO:    FRANKLIN FABRICATING SERVICES, INC.
       THROUGH CURTIS E. FRANKLIN
       440 SANDY SPRINGS LANE
       JACKSON, LA. 70748

You are hereby commanded to appear at the office of:

       FISHMAN HAYGOOD LLP
       201 ST. CHARLES AVE. 46TH FLOOR
       NEW ORLEANS, LA. 70170

at **10:00 AM** on **NOVEMBER 3, 2016** and have your oral testimony taken in the above entitled and numbered cause, in accordance with Act No. 15 of 1960.  And you are commanded to produce at the above time and place the following:

**\*\*SEE ATTACHED NOTICE OF DEPOSITION FOR DOCUMENTS TO BE PRODUCED\*\***
**\*\*\*SEE ATTACHED CODE OF CIVIL PROCEDURE ARTICLE 1354\*\*\***

       This SUBPOENA was requested by Attorney **REBECCA SHA** and was issued by the Clerk of Court on **26-OCT-2016**.

_Deputy Clerk of Court for_
**Doug Welborn, Clerk of Court**

---

**SERVICE INFORMATION:**

Received on the _31_ day of _October_ , 20_16_ and on the _31_ day of _October_ , 20_16_ , served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at _Curtis Franklin_ .

**DOMICILIARY SERVICE:** On the within named _____ , by leaving the same at his domicile in this parish in the hands of _____ , a person of suitable age and discretion residing in the said domicile at _____

**DUE AND DILIGENT:**  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:**  Parish of _____ , this _____ day of _____ , 20 _____ .

SERVICE:   $_20.00_
EAGE    $_14.28_
AL:      $_34.28_

_D Stevens_ 8-42
Deputy Sheriff

**SUBPOENA DUCES TECUM and SUBPOENA for DEPOSITION – OOP - 6706**

EBR3517180



EBR3927404

NON-CERTIFIED COPY

# DOUG WELBORN, CLERK OF COURT
## 19th Judicial District Court
## Parish of East Baton Rouge
### 300 North Boulevard
### Baton Rouge, LA 70801
### Phone  (225)389-3960

NO.   C626308 Division D              18-NOV-2016


TO:   ORLEANS PARISH SHERIFFS OFFICE
      CIVIL DEPARTMENT
      421 LOYOLA AVE
      NEW ORLEANS, LA 70112


Please find attached RULE NISI  to be served in your parish for the above numbered suit.

Kindly make your return(s) on the duplicate(s) enclosed, and

X     note the enclosed check for payment of service;

ف     send us your bill for service;

ف     note that this is a pauper suit and no funds are available; or

ف     note that this is a government suit and no funds are necessary.

Thank You,

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

**Requesting Attorney:  PHILIP ANTHONY FRANCO**

_____

**REPLY:**                    **DATE:**_____

_____

_____

_____

_____

_____

By:_____

Deputy Sheriff, Parish of _____

**Letter to Out Of Parish Sheriff - 5213**



EBR3837814

NON-CERTIFIED COPY

# DOUG WELBORN, CLERK OF COURT
## 19th Judicial District Court
## Parish of East Baton Rouge
## 300 North Boulevard
## Baton Rouge, LA 70801
## Phone (225)389-3960

NO.   C626308 Division D                    18-NOV-2016


TO:    ORLEANS PARISH SHERIFFS OFFICE
       CIVIL DEPARTMENT
       421 LOYOLA AVE
       NEW ORLEANS, LA 70112


Please find attached RULE NISI to be served in your parish for the above numbered suit.

Kindly make your return(s) on the duplicate(s) enclosed, and

   X     note the enclosed check for payment of service;

        send us your bill for service;

        note that this is a pauper suit and no funds are available; or

        note that this is a government suit and no funds are necessary.

Thank You,

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

Requesting Attorney:  KELLEN J MATHEWS

REPLY:                              DATE:_____

_____

_____

_____

_____

_____

By:_____

Deputy Sheriff, Parish of _____

**Letter to Out Of Parish Sheriff - 5213**



EBR3837813

NON-CERTIFIED COPY

6709-16-000111

# RULE NISI

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

vs.

**PARISH OF EAST BATON ROUGE**

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**STATE OF LOUISIANA**

TO:   **H&E EQUIPMENT SERVICES INC
THRU BRENT BARRIERE
LORETTA G. MINCE
201 ST CHARLES AVE., STE. 4600
NEW ORLEANS, LA.  70170**

The Mover in this case filed a petition which the Court granted.  Certified copies of this document and the Court's Order are attached.

### MOTION TO SET TRIAL DATE AND REMAINING DEADLINES

You MUST come to Court at 9:30 AM, on DECEMBER 08,2016 in Room 10-A , 300 North Boulevard, Baton Rouge, Louisiana, and show cause why:

### * * * * * SEE ATTACHED ORDER * * * * *

**YOU ARE ORDERED TO APPEAR IN COURT.  IF YOU FAIL TO APPEAR, A BENCH WARRANT MAY ISSUE FOR YOUR ARREST.**

This Rule was issued by the Clerk of Court for East Baton Rouge Parish on **18-NOV-2016**.

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

Requesting Attorney:
KELLEN J MATHEWS

---

**SERVICE INFORMATION:**

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:**  On the party herein named at _____.

**DOMICILIARY SERVICE:**  On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:**      After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of _____, this _____ day of _____, 20_____.

SERVICE:$ _____
MILEAGE:$ _____                    _____
TOTAL:  $ _____                         Deputy Sheriff
                                                          Parish of _____

**RULE NISI (OOP) - 6709**



EBR3938481

NON-CERTIFIED COPY

6709-16-000112

# RULE NISI

**H&E EQUIPMENT SERVICES INC**
(Plaintiff)

**NUMBER  C626308 Division D**

**19th JUDICIAL DISTRICT COURT**

vs.

**PARISH OF EAST BATON ROUGE**

**URS CORPORATION ARCHITECTURE PC
ET AL**
(Defendant)

**STATE OF LOUISIANA**

TO:   H&E EQUIPMENT SERVICES INC
        THRU BRENT BARRIERE
        LORETTA G MINCE
        201 ST. CHARLES  AVE., STE. 4600
        NEW ORLEANS, LA.  70170

The Mover in this case filed a petition which the Court granted.  Certified copies of this document and the Court's Order are attached.

DEFENDANTS' MOTION FOR EXPEDITED CONSIDERATION OF MOTION
FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA DUCES
TECUM TO ENFORCE THIS COURT'S AMENDED CASE MANAGEMENT ORDER

You MUST come to Court at 9:30 AM, on DECEMBER 8, 2016 in Room 10-A , 300 North Boulevard, Baton Rouge, Louisiana, and show cause why:

**\* \* \* \* \* SEE ATTACHED ORDER \* \* \* \* \***

**YOU ARE ORDERED TO APPEAR IN COURT.  IF YOU FAIL TO APPEAR, A
BENCH WARRANT MAY ISSUE FOR YOUR ARREST.**

This Rule was issued by the Clerk of Court for East Baton Rouge Parish on **18-NOV-2016.**

Deputy Clerk of Court for
**Doug Welborn, Clerk of Court**

Requesting Attorney:
PHILIP ANTHONY FRANCO

---

### SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

**PERSONAL SERVICE:** On the party herein named at _____

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**DUE AND DILIGENT:**       After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of _____, this _____ day of _____, 20_____.

SERVICE $_____          _____
MILEAGE $_____                     Deputy Sheriff
TOTAL:  $_____          Parish of _____

**RULE NISI (OOP) - 6709**



EBR3938493

NON-CERTIFIED COPY

**CLERK OF COURT**
FILE COPY

CASE ID: _____
FILING DATE: _____
ATTORNEY: _____
NO PAGES: 101

EXHIBIT ATTACHMENT TO:
☐ MOTION SUMMARY JUDGMENT
☐ PETITION
☐ MEMORANDUM
☐ OTHER _____

_____
**DEPUTY CLERK OF COURT**

EBR3897246

**ORIGINAL**

NON-CERTIFIED COPY

Page 1

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA


\* \* \* \* \* \* \* \* \*
                    \*
H&E EQUIPMENT SERVICES  \*
                    \* NUMBER 626,308
VERSUS              \*
                    \* DIVISION "D"
URS CORPORATION     \*
ARCHITECTURE, P.C., URS \*
CORPORATION, L O'NEAL  \*
JOHNSON AND THOMAS E.  \*
RYAN, III           \*
                    \*
\* \* \* \* \* \* \* \* \*


Deposition of LEONARD C. ST.

GERMAIN, taken on Wednesday, August 31, 2016,

commencing at 10:06 a.m., in the offices of

Adams and Reese, LLP, Attorneys at Law, 450

Laurel Street, Suite 1900, Baton Rouge,

Louisiana, 70801.

NON-CERTIFIED COPY

Exhibit 1

H&E Equipment Services, Inc.

vs.

URS Corporation Architecture, P.C., et al.

19th Judicial District Court
Docket 626,308, Division "D"

## EXHIBITS

TO MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGEMNT ON
RECONVENTIONAL DEMAND

By: URS Corporation
Filed: November 16, 2016

TOTAL EXHIBIT
PAGES
= 701
ORIGINAL

NON-CERTIFIED COPY

Page 2

```
1                    I N D E X

2

3                                        Page

4
         Caption                          1
5        Index of Exhibits                3
         Appearances                     10
6        Agreement of Counsel            11

7        Examination

8          PHILIP A. FRANCO, ESQ.        12
           LORETTA G. MINCE, ESQ        139
9          PHILIP A. FRANCO, ESQ.       141

10
                 *   *   *   *   *
11
         Witness' Certificate           144
12       Reporter's Page                145
         Certificate                    146
13

14

15

16

17

18

19

20

21

22

23

24

25
```

NON-CERTIFIED COPY

Exhibit 1

Page 3

1                    INDEX OF EXHIBITS

2

3     Number                                    Page

4      1   July 20, 2006 Email from        25
               Mark Howard to Leonard
5              St. Germain attaching URS
               July 20, 2006 proposal to
6              Leonard St. Germain
               H&E 0005192-0005195
7

8      2   August 16, 2006 letter from     31
               J. Ashley Moore to Leonard
9              St. Germain re: Agreement for
               Professional Services
10             H&E 0005198

11     3   August 22, 206 Email string     33
               from Mark Howard to Leonard
12             St. Germain
               H&E 0005196-0005107
13

14     4   Agreement for Professional      34
               Services Between H&E
15             Equipment Services, Inc. and
               URS Corporation Architecture,
16             NC, PC, effective August 28,
               2006

17     5   A-4 Application Site Plan City   39
               of Baton Rouge/Parish of East
18             Baton Rouge 10/18/06
               H&E 0000109-0000111

19     6   January 14, 2013 Email string   42
               from Leonard St. Germain to
20             John Jones
               H&E 0007376-0007380
21

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 4

1   (Cont.)      INDEX OF EXHIBITS

2

3    Number                              Page

4       7  Lump Sum Work Order NO. 06-03     45
            between H&E Equipment
5           Services, Inc. And URS
            Corporation Architecture,
6           NC, PC, dated November 8,
            2006 with Attachment 1,
7           Phase II
            H&E 0000025-0000026
8

9       8  January 6, 2011 Email from       46
            John Herndon to Leonard
            St. Germain, et al
10          H&E 0005163

11      9  H&E Equipment Baton Rouge        49
            Design Development Manual,
12          Headquarters and Service
            Building, February 9, 2007
13          by URS
            URS 038649-038681
14

15     10  February 13, 2007 Email from     53
            Chad Herndon to Leonard
            St. Germain, et al attaching
16          H&E Site Plan 13.FEB.07
            H&E 0005216-0005217
17

18     11  March 15, 2007 Email from Mark   56
            Howard to Leonard St. Germain,
            et al re: Site Issues Path
19          Forward
            H&E 0005164-0005165
20

21     12  August 9, 2007 Email from Chad   58
            Herndon to Leonard St. Germain,
22          et al Re: Attaching elevations,
            floor plans and site plan
23          H&E 0005168-0005175

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 5

1    (Cont.)        INDEX OF EXHIBITS

2

3      Number                                      Page

4      13  March 5, 2008 Email string from        62
                Leonard St. Germain to James
5               Brown Re: Facility repair
                estimates
6               H&E 0006682-0006683

7      14  June 30, 2008 Email string from        63
                Chad Herndon to Leonard St.
8               Germain, et al
                H&E 0006783-0006784
9

         15  July 10, 2008 Email string from      66
10               Leonard St. Germain to Brad
                 Barber Re: Plan cost
11               Attachment includes
                 Confidential H&E Equipment
12               Services New Facility Cost
                 Comparison
13               H&E 0003530-0003535

14     16  July 10, 2008 Email string from        69
                Bard Barber to John Engquist
15              re: FW: Plan cost
                (Last page attached is H&E
16              0002957)
                H&E 0002958-0002960
17

         17  July 11, 2008 Email from Leonard     70
18               St. Germain to Chad Herndon
                 re: URS Work Order 08-01
19               H&E 0006843-0006844

20     18  Lump Sum Work Order NO. 08-01          71
                between H&E Equipment
21              Services, Inc. And URS
                Corporation Architecture,
22              NC, PC, dated July 11, 2008
                with Attachment 1 Scope of
23              Services
                H&E 0037276-0037277

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 6

1    (Cont.)        INDEX OF EXHIBITS

2

3      Number                                    Page

4

5      19   January 19, 2009 Email string      71
           from Neal Johnson to Leonard
6          St. Germain
           H&E 0005230-0005231

7      20   May 7, 2009 Email string           74
           from James Brown to John Jones
8          Re: Repairs Option 1 Kenner
           Facility (Attachment of
9          calculations not bates stamped)
           H&E 0007609-0007610

10

       21   June 22, 2009 Email from           77
11         Leonard St. Germain to Neal
           Johnson Re: Estimate
12         H&E 0005268

13     22   August 10, 2009 letter from Neal   77
           Johnson to Leonard St. Germain
14         Re: Proposed Renovations and
           Additions to H&E Equipment -
15         Kenner, LA with Attachment 1
           Scope of Work
16         H&E 0003415-0003416

17     23   August 13, 2009 Email string       82
           from Neal Johnson to Leonard
18         St. Germain, et al
           H&E 0005383-0005383

19

       24   August 14, 2009 Email string       83
20         from Chad Herndon to Leonard
           St. Germain Re: Kenner
21         Proposal
           H&E 0005389-0005390

22

23

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 7

1   (Cont.)       INDEX OF EXHIBITS

2

3    Number                              Page

4    25  August 20, 2009 Email string      83
             from Neal Johnson to Leonard
5            St. Germain, et al with
             attachments of Kenner
6            Proposal, Master Agreement,
             with Attachments 1, 2 and 3
7            H&E 0005430-0005441

8    26  August 21, 2009 Email string      85
             from Frankie Wynn to Leonard
9            St. Germain Re: URS Short Form
             Master Agreement For
10           Professional Services
             Renovations and Additions to
11           Kenner LA Branch with
             Attachments 1, 2 and 3
12           H&E 0005236-0005246

13   27  Short form Master Agreement for   87
             Professional Services Between
14           H&E Equipment Services, Inc.
             and URS Corporation
15           Architecture, NC, PC,
             effective August 13, 2009
16
     28  URS Attachment 1, Time and        87
17           Materials Work Authorization
             09-100 8/31/09
18           Attachments 1, 2 and 3
             URS 031081-URS 031084
19
         URS Attachment 1, Time and        87
20           Materials Work Authorization
             10-10 10/22/2010
21           URS 031085-URS 031086

22       URS Attachment 1, Time and        87
             Materials Work Authorization
23           12-10 12/27/2010
             Attachments 1, 2 and 3
24           URS 031072-URS 031075

25

Exhibit 1

NON-CERTIFIED COPY

Page 8

1   (Cont.)        INDEX OF EXHIBITS

2

3    Number                                    Page

4

      28  URS Lump Sum Authorization      87
5   (cont.)  NO. 11-12 2/22/2012
             Attachments 1 and 2
6            URS 031076-URS 031080

7      29  November 13, 2009 Email from    88
             James Hohensee to Gibbs
8            Construction, attaching
             drawings and contractor
9            pricing package worksheets
             for Kenner, LA (Attached
10           Statement of Probable Cost
             not Bates stamped)
11           H&E 0005732-0005740

12      30  December 10, 2009 Email from    91
             Leonard St. Germain to Brad
13           Barber re: Belle Chasse
             H&E 0003418-0003427
14

15      31  December 18, 2009 Email         92
             string from Leonard St.
             Germain to Neil Favre Re:
16           Kenner Branch Renovation
             Project
17           H&E 0005870-0005871

18      32  March 4, 2010 Email string      93
             from Leonard St. Germain to
19           Jean-Paul Garnett Re:  H&E
             Concrete Slab Design Loads
20           H&E 0006053-0006055

21      33  April 23, 2010 Email string    109
             from Leonard St. Germain to
22           Mason Phillips, et al Re:
             Service Area
23           H&E 0006214

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 9

1   (Cont.)        INDEX OF EXHIBITS

2

3      Number                              Page

4      34  May 3, 2010 Email string from    111
           Marty Emigh to Jason Conca,
5          et al Re: Hi-Lift attaching
           photos
6          H&E 0006262-0006281

7      35  May 3, 2010 Email string from    120
           Leonard St. Germain to Marty
8          Emigh, et al Re: Hi-Lift
           H&E 0006239-0006243

9

       36  June 30, 2010 Email string       125
10         from Chad Herndon to Leonard
           St. Germain Re: Kenner
11         H&E 0006373-0006375

12     37  September 9, 2010 Email string   127
           from Frankie Wynn to Brad,
13         Barber, et al Re: Kenner
           facility
14         H&E 0003813-0003822

15     38  October 8, 2012 Email string     128
           from Leonard St. Germain to
16         Chris Cimini Re: Tymco
           sweeper
17         H&E 0007387-0007388

18

19

20

21

22

23

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 10

1   APPEARANCES:

2

      Representing the Plaintiff:
3

        FISHMAN HAYGOOD, LLP
4       Attorneys at Law
        201 St. Charles Avenue, Suite 4600
5       New Orleans, Louisiana  70170

6       BY:  LORETTA G. MINCE, ESQ.

7

8

9     Representing the Defendant:

10      ADAMS AND REESE, LLP
        Attorneys at Law
11      4500 One Shell Square
        New Orleans, Louisiana  70139
12
        BY:  PHILIP A. FRANCO, ESQ.
13           KELLEN J. MATHEWS, ESQ.

14

      ALSO PRESENT:
15
           G. Wayne Sledge
16
           Neal Johnson
17
           Thomas E. Ryan III
18
      Reported by:
19           KAY E. DONNELLY
             Certified Court Reporter
20           State of Louisiana

21

22

23

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 11

1                   S T I P U L A T I O N

2

3          It is stipulated and agreed by and between

4    counsel that the deposition of LEONARD C. ST.

5    GERMAIN is hereby being taken under the

6    Louisiana Code of Civil Procedure in accordance

7    with the Code.

8          The formalities of sealing and

9    certification are hereby waived.  The witness

10   will reserve the right to read and sign the

11   deposition.  The party responsible for service

12   of the discovery material shall retain the

13   original.

14         All objections, save those as to the form

15   of the questions, are hereby reserved until such

16   time as this deposition, or any part thereof,

17   may be used or sought to be used in evidence,

18   and are to be made in accordance with the Code

19   of Civil Procedure.

20                    *   *   *   *   *

21         KAY E. DONNELLY, Certified Court Reporter,

22   in and for the State of Louisiana, officiated in

23   administering the oath to the witness.

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 12

1        LEONARD C. ST. GERMAIN, Vice

2   President/Equipment Services Group, H&E

3   Equipment Services, 7500 Pecue Lane, Baton

4   Rouge, Louisiana, 70809, after having been first

5   duly sworn, testified on his oath as follows:

6   EXAMINATION BY MR. FRANCO:

7        Q.  Good morning, Mr. St. Germain, I'm Phil

8   Franco.

9        A.  Good morning.

10       Q.  I represent URS and the other defendants

11  in this case.

12          Sir, first we are going to proceed with

13  your deposition personally, and then we are

14  going to terminate that deposition when we are

15  finished and move on to the deposition of the

16  Company, which I understand you have been

17  designated to testify to.

18       A.  Yes, sir.

19       Q.  Would you state your full name and

20  address for the Record?

21       A.  Leonard --

22          MS. MINCE:

23          For clarification, we began the

24  Corporate deposition previously on one other

25  time, and this is a continuation of that.

Exhibit 1

NON-CERTIFIED COPY

Page 13

1      MR. FRANCO:

2          We can do it that way.  Yes, I don't

3  have a problem with that.  We can do it that

4  way.

5      THE WITNESS:

6          Leonard Carlton St. Germain, 17534

7  Lake Vista Drive, Greenwell Springs, Louisiana,

8  70739.

9  EXAMINATION BY MR. FRANCO:

10     Q.  Mr. St. Germain, have you ever been

11 deposed before, sir?

12     A.  I have.

13     Q.  So you understand the routine?

14     A.  Yes.

15     Q.  If Counsel for H&E objects, please

16 stop --

17     A.  Right.

18     Q.  -- so we can decide what to do.

19     A.  Understood.

20     Q.  And she will tell you what to do at that

21 point.  If you don't understand my question or a

22 word that I'm using in my question, especially

23 when we start talking about different kinds of

24 joints --

25     A.  Uh-huh.

Exhibit 1

NON-CERTIFIED COPY

Page 14

1      Q.  -- please let me know, and I'll make

2   sure that I rephrase it so that you can

3   understand it.

4      A.  Okay.

5      Q.  Prior to your deposition today, did you

6   review any documents in order to prepare for

7   your deposition?

8      A.  Yes.

9      Q.  And did you review those on your own or

10   did Counsel supply you with certain documents to

11   review?

12      A.  Both.

13      Q.  Which ones did you review on you own

14   without being designated by Counsel?

15      A.  I looked at the interrogatories, some of

16   the plans I had in archives.

17      Q.  When you say the "interrogatories," you

18   mean the answers to the interrogatories --

19      A.  Yes.

20      Q.  -- that were previously done?

21      A.  Yes.

22      Q.  Did you participate in those previous

23   answers?

24      A.  No, sir, not previously.

25      Q.  All right.  We will get into that in the

Exhibit 1

NON-CERTIFIED COPY

Page 15

1   other deposition.

2          When you say plans you had in archives,

3   you are talking about design or construction

4   drawings or plans?

5       A.  Yes.

6       Q.  Do you know whether all those plans have

7   been produced to us?

8       A.  I think so, yes.

9       Q.  Okay.

10      A.  Those are just things I had, you know,

11  when I was in that position.

12      Q.  Were you ever asked to produce those

13  documents to us?

14      A.  No.  No.

15      Q.  So, as you sit here, you have done no

16  comparison to know whether the actual documents

17  that you looked at were actually produced to us?

18      A.  No.  I don't know.

19      Q.  And the reason I ask you that is,

20  because when we get into the 1442 deposition of

21  the Company, there are certain plans that were

22  not produced to us and maybe you have those, and

23  we will get into that.

24      A.  Okay.

25      Q.  Okay.

Exhibit 1

NON-CERTIFIED COPY

Page 16

1          Other than the answers and the plans,

2   did you review any other Email traffic?

3      A.  No.  No.

4      Q.  Okay.  And then there was also a group

5   of documents that Counsel sent to you for

6   review?

7      A.  Yes.

8      Q.  All right.  Did you meet with anyone

9   prior to your deposition in order to prepare for

10  your deposition?

11     A.  Yes.

12     Q.  And who was that, that you met with?

13     A.  Rebecca Sha.

14     Q.  Was anybody else present when you met

15  with Ms. Sha?

16     A.  No.

17     Q.  Did you talk to anybody at the Company

18  about your deposition, other than scheduling?

19     A.  No.

20     Q.  Did anybody tell you any prior testimony

21  in depositions that have been taken?

22     A.  No.

23     Q.  Where are you currently employed?

24     A.  H&E Equipment Services.

25     Q.  And what is your current position there?

Exhibit 1

NON-CERTIFIED COPY

Page 17

1       A.  Vice president of Equipment Services

2   Group.

3       Q.  What are your duties and responsibility

4   in that position?

5       A.  I manage the used equipment companywide.

6   I'm manage international sales companywide.  I

7   oversee the purchasing department, and I manage

8   the dispersal of our rental fleet.

9       Q.  Is that all?

10      A.  That is it.  During the week.

11      Q.  All right.  Who is your immediate

12  supervisor?

13      A.  The president and COO, Brad Barber.

14      Q.  How many groups do they have at the

15  Company?

16      A.  "Groups" meaning?

17      Q.  Well, you are in the Equipment Services

18  Group.  Are there other groups titled?

19      A.  No, not groups titled.  It is

20  individuals.  You know, VP of Sales, VP of Crane

21  Sales, et cetera.

22          Mine is classified as a group because it

23  is a little diversified in the normal scheme of

24  things.

25      Q.  How long have you been in that position?

Exhibit 1

NON-CERTIFIED COPY

Page 18

1       A.   I started transitioning in August of

2    2009.

3       Q.   What did you transition from?

4       A.   Vice President of Operations.

5       Q.   How did your duties change from Vice

6    President of Operations?

7       A.   Operations, I was with -- I did safety,

8    safety environmental, facilities, legal, among a

9    few other things.

10      Q.   What do you mean by "legal"?

11      A.   I was just kind of -- before we had

12   in-house counsel, we would -- I was the liaison

13   between our attorneys we used in the different

14   -- in a variety of suits.

15      Q.   You were liaison with outside counsel?

16      A.   Correct.

17      Q.   What was the reason you moved from Vice

18   President of Operations to Vice President of

19   Equipment Services Group?

20      A.   It started because we had -- the

21   gentleman that was doing the used equipment side

22   of our business was retiring, and the president

23   approached me and asked me to take on that

24   position.

25           And then with my background, to open up

Exhibit 1

NON-CERTIFIED COPY

Page 19

1    our Internet and international sales

2    opportunities.  So we kind of created a new

3    position.  So, I was asked to take on that

4    endeavor.

5        Q.  All right.  And you may have said this.

6    I'm sorry.

7            Who retired and what position did he

8    have?

9        A.  The gentleman's name was Larry Lavie,

10   and he was the used equipment manager.

11       Q.  How long were you Vice President of

12   Operations?  Over what period of time did you do

13   that?

14       A.  I did that for about five years, 2005 to

15   around 2010 -- I officially transitioned in

16   January of 2010.  But, again, my transitioning

17   started -- Larry was retiring in January, so I

18   started doing both roles while we were

19   transitioning.

20       Q.  All right.  And who took your place as

21   Vice president of Operations?

22       A.  That position was kind of changed, I

23   think, when -- when I initially moved out,

24   Frankie Wynn kind of took over pieces and parts.

25           I think they separated -- split it with

Exhibit 1

NON-CERTIFIED COPY

Page 20

1    two or three different people, things that I was

2    doing.  They moved safety to one place and the

3    facility to somewhere else, and safety

4    environmental somewhere else.

5        Q.  So they split it up, basically?

6        A.  Yes.

7        Q.  Who was in charge of the actual physical

8    facilities at the Company?

9        A.  At what timeframe?

10       Q.  When you moved out of Vice President of

11   Operations.

12       A.  I think the overall jurisdiction would

13   be John Jones.

14       Q.  So I understand, when you left that

15   position and started to transition in August of

16   2009, Frankie Wynn took over some of the roles,

17   but, ultimately, Johnny Jones was in charge?

18       A.  That is correct.

19       Q.  Do you know what particular parts

20   Mr. Wynn took over?

21       A.  Not specifically.

22       Q.  Who was in charge of monitoring

23   construction of facilities for the Company

24   between 2005 and the time you transitioned out?

25       A.  I did.

Exhibit 1

NON-CERTIFIED COPY

Page 21

1    Q.  And who fulfilled that role when you

2  left that position?

3    A.  I think Johnny -- Johnny Jones took the

4  major part of that role.

5    Q.  And Mr. Wynn may have been involved, as

6  well?

7    A.  Yes.  Eventually.

8    Q.  You didn't report to Mr. Jones when you

9  were in that position, did you?

10    A.  Yes, I did.

11    Q.  You did?

12    A.  Yes.

13    Q.  And then you started reporting when you

14  transitioned to Mr. Barber?

15    A.  That is correct.

16    Q.  Prior to that position in 2005, what did

17  you do?

18    A.  I was Vice President of Service.

19    Q.  And what period of time was that?

20    A.  Around 2000 -- around 2000 -- no, around

21  -- let's see.  Vice President of Service, '93 --

22  from about '95 -- 1995.

23    Q.  I understand not recalling.

24    A.  I'm trying to think.

25    Q.  And as Vice President of Service, what

Exhibit 1

NON-CERTIFIED COPY

Page 22

1   were your duties and responsibilities?

2        A.  I managed the service operations for the

3   entire company.

4        Q.  What does service operations mean?

5        A.  It is all of the repairs in rental.

6   Return operations.  It is --

7        Q.  Segregated from sales?

8        A.  Segregated from sales, yes.  Service

9   only.

10       Q.  And prior to that, what did you do?

11       A.  I was a general service manager.

12       Q.  For H&E?

13       A.  Yes.  1993 to 1995.

14       Q.  For the whole company?

15       A.  Yes.  At that time, we had five

16   locations, I think.

17       Q.  Much easier then, wasn't it?

18       A.  It was.  It was a lot more fun.

19       Q.  And prior to that?

20       A.  Prior to that, I was the product

21   liability and safety director.  At that time, I

22   was doing -- I was accredited by OSHA to do

23   maintenance inspections, crane operator

24   training, do equipment demos, trade-ins, et

25   cetera, et cetera.

Exhibit 1

NON-CERTIFIED COPY

Page 23

1    Q.  And how long did you do that?  From what

2    period of time?

3    A.  I did that from, I think, around 1990 to

4    1993, when I became the general service manager.

5    Q.  That was actually with the prior

6    company, right, before it went public?

7    A.  That is -- yeah.  We went public in

8    2006.

9    Q.  Okay.

10   A.  So that was with Head & Engquist.  H&E

11   -- it was H&E Equipment Service, and then said I

12   had been -- prior to '99, I was with Head &

13   Engquist.

14   Q.  Prior to product liability and service

15   director?

16   A.  I was a shop foreman -- well, actually,

17   I did a small time in warranty.  I was a

18   warranty manager, and then previous to that, I

19   started with the Company as a shop foreman.

20   Q.  Was shop foreman your first full-time

21   job?

22   A.  Yes.  Well, it was my first full-time

23   job with H&E.

24   Q.  When did you start with H&E?

25   A.  1990.

Exhibit 1

NON-CERTIFIED COPY

Page 24

1     Q.   Prior to 1990, what did you do?

2     A.   I worked -- I was an equipment manager

3   for Ronald Adams Contractor in Thibodaux.

4     Q.   For a general contractor?

5     A.   Uh-huh (affirmative response).

6     Q.   How long did you do that?

7     A.   From 1983 to 1990.

8     Q.   Prior to that?

9     A.   I was a shop foreman supervisor for a

10  seismograph company, N.L. Randall, Incorporated.

11    Q.   From what period of time?

12    A.   1978 to 1983.

13    Q.   Okay.

14    A.   That was my first full-time job.

15    Q.   What is the extent of your formal

16  education?

17    A.   High school, and just a small stint with

18  a junior college.  I had to go to work to

19  support my family.

20    Q.   So you have been with H&E or its

21  predecessor since 1990?

22    A.   Correct.

23    Q.   So I presume you worked there while

24  Mr. Engquist's father was there?

25    A.   Yes.  Yes.  Mr. Tommy, yes.

Exhibit 1

NON-CERTIFIED COPY

Page 25

1    Q.  We are going to go through some

2    documents.  I'm going to focus on some

3    particular parts.  You have the right to read

4    the whole document.

5    A.  Okay.

6    Q.  And maybe the easiest way to do it is

7    for me to focus you after you have a chance to

8    look at it briefly, and then if you want to read

9    more, you just tell me.  Okay?

10   A.  Okay.

11   Q.  The first document I'm going to show

12   you is an Email from Mark Howard at URS to you,

13   July 20, 2005.

14       Do you see that?

15   A.  Uh-huh (affirmative response).

16   Q.  And this is a design proposal?

17   A.  (Witness reviewing document.)

18   Q.  I know it has been a long time, but do

19   you briefly recall this?

20   A.  Yes.

21       MR. FRANCO:

22           For the Record, this is H&E 5192,

23   et seq, Exhibit 1.

24   EXAMINATION BY MR. FRANCO:

25   Q.  How did it come about that you were, in

Exhibit 1

NON-CERTIFIED COPY

Page 26

1  fact, dealing with URS?

2      A.  I have a real good of friend mine that

3  was an engineer for URS.  He lived in my

4  neighborhood.

5      Q.  And who was that?

6      A.  Randy Babin.

7      Q.  He was in Baton Rouge?

8      A.  Yes.

9      Q.  And that is how you got basically

10  connected with URS?

11     A.  Yeah.  Yeah.  We were having a

12  conversation, you know, with us getting ready to

13  design and build a new facility, and I was

14  looking for an architectural and engineering

15  firm that I could join together, instead of

16  going through an architect and a separate

17  engineering company.

18         And he referred me, and Mark Howard

19  reached out to me.  And that is how the

20  relationship started.

21     Q.  And at this point, it is fair to say you

22  were the principal one at H&E dealing with URS?

23     A.  Yes.

24     Q.  Now, this first proposal was in

25  connection with, or at least the thought process

Exhibit 1

NON-CERTIFIED COPY

Page 27

1    at this time was a new headquarters facility

2    combined with an equipment division at the

3    present location, correct?

4        A.  Correct.

5        Q.  It was going to be a two-phase approach,

6    correct?

7        A.  Correct.

8        Q.  And, certainly, you recognized that the

9    project had to comply with the East Baton Rouge

10   Parish Planning Commission rules and

11   regulations, correct?

12       A.  Yes.

13       Q.  In the paragraph that is numbered 1 on

14   the first page, sir, it says, toward the bottom,

15   "Along with the programming effort, the design

16   team should review the project site and tour the

17   Houston facility as the basis of the Equipment

18   Division building."

19            I assume that H&E had a Houston facility

20   at the time, correct?

21       A.  Correct.

22       Q.  What kind of facility was that in terms

23   of types of equipment at that facility?

24       A.  It was primarily a crane facility.

25       Q.  When you say "crane," would that be tire

Exhibit 1

NON-CERTIFIED COPY

Page 28

1    vehicles primarily?

2         A.  It is all rough terrain and crawlers.

3         Q.  Is it cleated?

4         A.  There is those -- the crawler cranes are

5    not cleated.  It is a smooth pad.

6         Q.  Smooth track?

7         A.  Smooth crawler.

8         Q.  Metal, but smooth?

9         A.  That is correct.  That is correct.  No

10   grousers.

11        Q.  At the time, and this is back in 2006,

12   was that facility, the yard itself, paved or --

13        A.  Yes.

14        Q.  Was it all paved?

15        A.  The majority of it was paved.

16        Q.  Was there also some part of it that was

17   unpaved?

18        A.  Yes.

19        Q.  Used for storage?

20        A.  Yes.

21        Q.  Now, this was to tour the Houston

22   facility to see the Equipment Division building,

23   correct?

24        A.  Uh-huh (affirmative response).

25        Q.  Was it primarily the building that they

Exhibit 1

NON-CERTIFIED COPY

Page 29

1    were going to look at?

2        A.  I think it was a familiarization with --

3    it was probably the nicest facility that we had

4    at the time, when we were still at 6600 Airline

5    with our shop and not what we wanted, for them

6    to view for concepts.

7        Q.  Was the paved facility paved because of

8    any zoning or requirements in Houston, or was

9    that just desired by the Company?  Do you

10   recall?

11       A.  I don't recall.

12       Q.  How long had that facility been in

13   operation by 2006?

14           Better question:  Was that a new

15   facility?

16       A.  It was.  It was a new facility.

17       Q.  Approximately, how many years was it in

18   operation by 2006?

19       A.  It was fairly new.  You know, probably

20   -- you know, a couple of years old, maybe.

21       Q.  Two or three years?

22       A.  Yeah.  Potentially.

23       Q.  Okay.

24       A.  I'm not totally sure on the date,

25   but --

Exhibit 1

NON-CERTIFIED COPY

Page 30

1    Q.  All right.

2    A.  -- fairly new.

3    Q.  But it wasn't ten years old?

4    A.  No.

5    Q.  All right.  This document kind of speaks

6    for itself, so I'm not going to reiterate.

7         But, basically, there were some concepts

8    that were going to be presented to Management at

9    H&E, site and building layouts that were going

10   to be presented for consideration, and, then,

11   eventually move to floor plans, exterior

12   elevations, facilities, space needs, that kind

13   of stuff, correct?

14   A.  Correct.

15   Q.  Now, at this point, you are talking

16   about a 30,000 plus or minus square foot

17   headquarters building and a 50,000 plus or minus

18   square foot equipment division office, correct?

19   A.  That was the -- I think that the initial

20   concept was that, but that was prior to space

21   analysis and people count, and things of that

22   nature.

23   Q.  And then Phase II was going to be full

24   construction documents?

25        Look at the last page, the first full

Exhibit 1

NON-CERTIFIED COPY

Page 31

1    paragraph.

2        A.   (Witness reviewing document.)

3            Yes.

4        Q.   The next document I'm going to show you

5    is labeled Exhibit 2 and is H&E 5198.

6            All right.  This is a letter dated

7    August 16, 2006, addressed to you by Ashley

8    Moore.  Do you see that?

9        A.   Uh-huh (affirmative response).  Yes.

10       Q.   And this references an agreement for

11   professional services, apparently, that URS

12   sent, correct?

13       A.   Correct.

14       Q.   And she was telling you that she didn't

15   like the risk allocations in Article V.

16       A.   It is a he, but --

17       Q.   Oh, I'm sorry.  You are right.  It is a

18   he.  The first time I saw it, I thought it was a

19   she, too, and then I realized later it is a he.

20       A.   It is a he.

21       Q.   I would have used my first name.  Okay.

22           Let's go back to that question again.

23       A.   Okay.

24       Q.   This was a comment by outside Counsel on

25   the Agreement For Professional Services that URS

Exhibit 1

NON-CERTIFIED COPY

Page 32

1    sent to you, correct?

2        A.  Correct.

3        Q.  And, obviously, you sent this to her for

4    comment?

5        A.  Him.  Correct.

6        Q.  To him for comment?

7        A.  Correct.

8        Q.  Because you were the liaison between

9    outside counsel?

10       A.  Correct.

11       Q.  The Company didn't have an in-house

12   counsel at that time?

13       A.  No, sir.

14       Q.  Okay.  And she had a --

15       A.  He.

16       MR. FRANCO:

17           Whenever I say "she," just make it

18   he.

19       THE WITNESS:

20           John Ashley Moore.

21   EXAMINATION BY MR. FRANCO:

22       Q.  So he had a problem with Article V

23   dealing with risk allocation, correct?

24       A.  Yes.

25       Q.  He had an issue with it?

Exhibit 1

NON-CERTIFIED COPY

Page 33

1    A.  Yes.

2    Q.  And he passed that on to you, correct?

3    A.  Correct.

4    Q.  And for the Record, he thought the risk

5    allocation number, the limitation was too low?

6    A.  Yes.

7    Q.  Correct?

8    A.  Yes.

9    Q.  All right.  Let's look at the next

10   document, which would be Exhibit 3, which is H&E

11   5196.

12         And you will see here at the second page

13   of this string, the beginning of the string, you

14   are actually sending this document, this August

15   16 document, from Ashley Moore to Mark Howard at

16   URS, correct?

17   A.  Correct.

18   Q.  And, basically, you are telling Mr.

19   Howard you spoke to your corporate legal

20   counsel.  I'm assuming you meant outside

21   counsel, correct?

22   A.  Correct.

23   Q.  And she recommended extending that

24   limitation of liability under Article V to

25   $5 million and $2 million?

Exhibit 1

NON-CERTIFIED COPY

Page 34

1      A.  Correct.

2      Q.  And the next document I'm going to show

3  you is the Agreement for Professional Services,

4  which is going to be labeled Exhibit 4.  This

5  doesn't have a Bates stamp.

6          And if you look at Article V, Roman

7  numeral V, you will see that that number of

8  limitation was actually 5 million, 2 million, as

9  she had requested, correct?

10     A.  Correct.

11     Q.  And if I'm not mistaken, this bears your

12 signature?

13     A.  Yes, it does.

14     Q.  So you were satisfied that you had run

15 it past Counsel and you signed it --

16     A.  Yes.

17     Q.  -- on behalf of the Company?

18     A.  Yes.

19     Q.  And you were authorized to do so?

20     A.  Yes.  I have a Corporate resolution.

21     Q.  Did you see the Corporate resolution

22 recently?

23     A.  Not recently.  I have a copy of it.

24     Q.  You do?  Because that wasn't produced to

25 us.

Exhibit 1

NON-CERTIFIED COPY

Page 35

1          MR. FRANCO:

2               Can we get a copy of that Corporate

3    resolution, please?

4          MS. MINCE:

5               I'm not sure whether that would fall

6    into one of the prior requests or not, but I'll

7    be happy to obtain that and provide it to you.

8          MR. FRANCO:

9               Well, we can check, but if you are

10   happy to, it is not really an issue.  Okay?

11         MS. MINCE:

12              Right.

13         MR. FRANCO:

14              I believe we asked for any Board

15   minutes or resolutions at one point.

16         MR. MATHEWS:

17              I think in our first ones, but,

18   yes --

19         MS. MINCE:

20              I'll look.

21         MR. FRANCO:

22              All right.

23   EXAMINATION BY MR. FRANCO:

24     Q.  Around the same time, either shortly

25   before or shortly after this agreement was

Exhibit 1

NON-CERTIFIED COPY

Page 36

1  executed, do you recall attending a concept

2  presentation meeting?

3      A.  Multiple.

4      Q.  And at those meetings, Mr. Jones was

5  present at one or more of those meetings?

6      A.  Yes.

7      Q.  What about Mr. Engquist, he was present

8  at one or more as well, correct?

9      A.  Yes.

10      Q.  And what was the general purpose of

11  those meetings?

12      A.  Well, we were designing or trying to,

13  attempting to design a new corporate facility, a

14  corporate office, something we had never done.

15          And it was, you know, a new endeavor for

16  most of us.  And I don't know if any of us

17  really had a visual concept of what we wanted or

18  agreed to.

19          So it was -- it was just a kind of -- it

20  was a conceptual meeting to look at different

21  elevations and concepts.

22      Q.  Do you recall that at some point you

23  discussed the current staff level at the

24  corporate office being around 90?

25      A.  We had some staff level conversations.

Exhibit 1

NON-CERTIFIED COPY

Page 37

1    I thought it was more than that, but I know the

2    design was whatever the corporate staff was at

3    that time with a 30 percent growth factor.  And

4    I thought it was around 135, is the number I

5    recall.

6        Q.  Around September of 2006, do you recall

7    it being 90 at the time with a factor of 120

8    because of 30 percent growth?

9        A.  That is -- yeah.  Could be, yes.

10       Q.  And you all also discussed upping that

11   square footage to around 40,000?

12       A.  Yes.

13       Q.  And, obviously, we are talking about the

14   headquarters building?

15       A.  Yes.  Right.

16       Q.  You all had constructed branch buildings

17   before, correct?

18       A.  Correct.

19       Q.  And yards, correct?

20       A.  Yes.

21       Q.  This was just your first rodeo with

22   respect to the corporate headquarters building?

23       A.  Yes.

24       Q.  And you were looking for the -- if I say

25   "equipment operations facility," what part of

Exhibit 1

NON-CERTIFIED COPY

Page 38

1    the facility would that be?

2        A.  That is our branch.

3        Q.  That is the branch?

4        A.  Branch location, yes.

5        Q.  And the branch there was going to be

6    modeled after the Houston facility; is that

7    correct?

8        A.  Yes.  Yes.  Very close.

9        Q.  The office building itself?  The branch

10   building, I mean.

11       A.  The branch building itself, right.

12       Q.  Which is a service building?

13       A.  A service -- yeah, it is a branch

14   location.

15       Q.  Do you also recall that Mr. Jones

16   suggested a tour of the URS Baton Rouge offices,

17   that it would be beneficial?

18       A.  Yes.

19       Q.  Do you know who went on that tour?

20       A.  Johnny and I did, for sure.  I don't

21   think anyone else -- it was just Johnny and I.

22       Q.  And that was to view the layout and

23   contents of what was going to be in the

24   building?

25       A.  Just -- right.  Just getting ideas.  We

Exhibit 1

NON-CERTIFIED COPY

Page 39

1    were trying to gather as many ideas and concepts

2    as we could.

3        Q.  All right.  The next document I'm going

4    to show you I'm going to label as Exhibit 5.

5    This is H&E 109.

6        A.  (Witness reviewing document.)

7        Q.  I think this is the A-4 Application Site

8    Plan, and that is ultimately submitted to the

9    Baton Rouge Office of Planning Commission.

10            You will see this one was actually

11    signed by Mr. Engquist himself.  Do you recall

12    presenting this to him for signature or

13    discussing this with him?

14        A.  I do not.

15        Q.  Look at Paragraph 8.  You were familiar

16    with -- well, let me ask you:

17            I mean, it wouldn't surprise you that

18    this had to be submitted to the Planning

19    Commission, would it?

20        A.  No.

21        Q.  Okay.  Look at Paragraph --

22        A.  I saw this document.  Yes.

23        Q.  Look at Paragraph 8.

24        A.  Uh-huh.

25        Q.  Parking facilities.  See where it says

Exhibit 1

NON-CERTIFIED COPY

Page 40

1   "Office," and it is divided between office and

2   shop.

3       A.  Uh-huh (affirmative response).

4       Q.  And it says "Required," 107, plus 5 for

5   HC, which means handicapped?

6       A.  Handicapped, yes.

7       Q.  And what was proposed is 128 at that

8   time.  Do you see that?

9       A.  Yes.  Total.

10      Q.  Yes, total.

11      A.  128, yes.

12      Q.  And the office building at Paragraph 9

13  was 40,000 square feet?

14      A.  Yes.

15      Q.  See that?

16      A.  Yes.

17      Q.  Does that refresh your recollection as

18  to what was being discussed around that time?

19      A.  Not as far as this document goes, no.

20          I mean, I know we were looking at

21  42,000, I think is what it ended up.  It is a

22  two-story, 21,000 square foot footprint.

23          I mean, we discussed three stories.  We

24  discussed designing for a third story and --

25      Q.  Three stories is more expensive than

NON-CERTIFIED COPY

Exhibit 1

Page 41

1    doing it on two stories, correct?

2        A.  We -- yes.  I mean, we looked at single

3    story, two-story, two-story with a third story

4    option.  I mean, there was a ton of concepts

5    thrown around.

6        Q.  Because you had a certain space to work

7    in, right?

8        A.  That is correct.

9        Q.  Property that had been purchased?

10       A.  That is correct.  We even looked at

11   relocating.

12       Q.  I guess my point is:  There is no reason

13   to believe that this wasn't discussed with you

14   all before it was presented.  Is that a fair

15   statement?

16       A.  Again, I know -- I don't know who

17   created this document.  I mean, it looks like

18   John's signature for sure, but I have no idea

19   who put --

20       Q.  Who filled it in?

21       A.  Who filled it in.

22       Q.  Right.  But my point is, 128 around this

23   time in terms of sparking spaces for the office,

24   was that about what was being discussed?

25       A.  I assume it was.  It is based on this

Exhibit 1

NON-CERTIFIED COPY

Page 42

1    document that was signed, so I would have to say

2    "yes."

3        Q.  All right.

4            The next document I'm going to show you

5    is Exhibit 6, and is H&E 7376.

6            This string of Emails starts off from

7    Chad Herndon at URS to you, and he is sending

8    you the proposal for the next phase of the

9    project.

10           Do you recall dealing with Mr. Herndon?

11       A.  Yes.

12       Q.  And then you send this on to Johnny

13   Jones?

14       A.  Right.

15       Q.  This second phase was in October of

16   2006, and this actually dealt with design

17   development, correct?

18       A.  Correct.

19       Q.  And as it says here, in the first

20   paragraph, the last sentence, "...we answer as

21   many of the design questions as possible before

22   moving into the construction document phase."

23           Do you see that?

24       A.  Second paragraph --

25       Q.  First paragraph, on the October 23, 2006

Exhibit 1

NON-CERTIFIED COPY

Page 43

1    letter.

2        A.  Okay.

3            (Witness reviewing document.)  Yes.

4        Q.  All right.  This talks about a Phase I

5    site layout, and then a Phase II.

6            Do you see those next two paragraphs?

7        A.  Yes.

8        Q.  In Phase II it says, "During this phase,

9    there will be a significant amount of

10   interaction between the design team and your

11   staff," correct?

12       A.  Correct.

13       Q.  I assume there was.

14       A.  Yes.

15       Q.  Look at the second page of that letter,

16   Paragraph No. 3, the last sentence.  "The

17   service building is based on the current design

18   that H&E utilized in Houston, Texas," correct?

19       A.  Correct.

20       Q.  That is the branch building?

21       A.  Correct.

22       Q.  At this point, this looks like it starts

23   off in October of 2006, and then you send this

24   on to Mr. Jones in January of 2013.

25           Do you remember why in January of 2013

Exhibit 1

NON-CERTIFIED COPY

Page 44

1    you were sending this on to Mr. Jones?

2        A.  I do not.

3        Q.  Okay.

4        A.  Only that he requested it.

5        Q.  Now, when you were discussing the

6    construction or the planning for the yard -- and

7    when I say "yard," I mean the equipment yard, as

8    differentiated from the parking lots --

9        A.  Right.

10       Q.  -- where the normal vehicles were

11   parked.

12       A.  I understand.

13       Q.  Do you recall discussing that the yard

14   at this site in Baton Rouge had to be paved

15   because of zoning and/or Planning Commission

16   requirements?

17       A.  I do not.

18       Q.  Okay.

19       A.  I do not.

20       Q.  Do you remember requesting that it was

21   to be paved regardless of any zoning or other

22   requirements?

23       A.  Yes.

24       Q.  You requested that?

25       A.  John asked for that.

**Exhibit 1**

NON-CERTIFIED COPY

Page 45

1    Q.  John Engquist asked for that?

2    A.  Yes.

3    Q.  Did he say why?

4    A.  I think just -- no, he did not say why.

5    Q.  Before this yard in Baton Rouge, did H&E

6    have a yard that big paved where earth-moving

7    equipment was utilized on the paved surface?

8    A.  What was the time line?  2006?

9    Q.  Yes.

10   A.  I don't know.  I don't know.

11   Q.  Let me show you the next document, which

12   is Exhibit 7.  This is H&E 25.

13       Is that your signature?

14   A.  Yes.

15   Q.  At that point, you were Vice President

16   of Operations?

17   A.  That is correct.

18   Q.  And you will see, it says, "The Services

19   shall be described in Attachment 1..."

20       So there is an attachment here, and

21   these are the tasks.  And No. 5 says "Provide

22   design development documents."

23       Do you see that?

24   A.  Uh-huh (affirmative response).  Yes.

25   Q.  And then No. 6 says, "URS will

**Exhibit 1**

NON-CERTIFIED COPY

1  coordinate and facilitate progress review

2  meetings with the H&E project team and conduct a

3  formal final approval presentation at the end of

4  the project phase to attain approval from the

5  H&E project team."

6          Do you see that?

7      A.  Yes.

8      Q.  Who was the H&E project team at that

9  point?

10     A.  It was the executive managers, John

11 Engquist, Brad Barber, John Jones, Leslie Magee,

12 myself, Scott Madison.

13     Q.  And all of those people were involved in

14 meetings and discussions about approval of

15 certain things as it went along.  Fair

16 statement?

17     A.  Yes.  Fair statement.

18     Q.  All right.  The next document I'm going

19 to show you is going to be Exhibit 8, and this

20 is from Chad Herndon at URS to you, February 6th

21 of 2007.  And at this point, he is asking you

22 for load information of the equipment to design

23 to.

24          Do you see that?

25     A.  Yes.

Exhibit 1

NON-CERTIFIED COPY

1    Q.  Do you recall providing any load

2  information to Mr. Herndon as a result of this

3  Email?

4    A.  I recall corresponding to this Email in

5  a verbal fashion, yes.

6    Q.  Verbally only?

7    A.  Yes.

8    Q.  And verbally, do you recall what you

9  told him?

10    A.  Yes.  Based on Chad's background, Chad

11  worked for a similar company to ours, came from

12  Scott Construction Equipment.

13      And my conversation was very similar to

14  what all of the equipment companies do, and what

15  we have, gave him a range of potential equipment

16  in our fleet, from the smallest to the largest.

17      And then he was going to take and look

18  at some typical specifications on the Internet

19  on the various manufacturers.

20    Q.  You all didn't have that load

21  information available readily?  When I say "you

22  all," I mean H&E.

23    A.  I mean, we had brochures and things of

24  that nature that, you know, were available on

25  the Internet.

Exhibit 1

NON-CERTIFIED COPY

Page 48

1      Q.  But you didn't provide that?

2      A.  No.

3      Q.  Okay.  And did you differentiate between

4  cranes or earth-moving equipment, tired or track

5  equipment?

6      A.  Yes.  I gave him -- gave him a

7  cross-section example of what was in our fleet,

8  from an 8 1/2-ton to a 90-ton crane, and from a

9  B21 size Komatsu to a B65 size Komatsu, PC27

10  Komatsu to a PC400 size Komatsu.

11     Q.  So the thought was that any of the

12  equipment that you dealt with could wind up in

13  the Baton Rouge yard?

14     A.  That is correct.  Up to a certain level.

15     Q.  Meaning what?

16     A.  We -- in our fleet, we have a certain

17  level.  Anything larger than a 90-ton crane, or

18  larger than a D65 track-type tractor, that is

19  outside of the norm.  So, that is not something

20  that we would have in our fleet.

21         From time to time, maybe for a customer

22  repair, someone would bring one in to repair,

23  but, most often, that size equipment is worked

24  on in the field at location.

25     Q.  Did you have that conversation with him?

Exhibit 1

NON-CERTIFIED COPY

Page 49

1     A.  Yes.

2     Q.  And when you say not larger than, can

3  you tell me what the "not larger" are, those two

4  pieces again?

5     A.  Not larger than like a D65, which is

6  very common in our fleet, which is -- I don't

7  know the weight off the top of my head, but --

8     Q.  Is that a crane?

9     A.  No.  That is a dozer.  That is a

10  bulldozer.

11     Q.  Okay.  And what about "not larger than a

12  crane"?

13     A.  90-ton.

14     Q.  Did he ever get back to you with any

15  specific information about what he found?

16     A.  No.  I don't think so.

17     Q.  All right.  The next document I'm going

18  to show you is going to be labeled Exhibit 9.

19  It begins with URS 38640.

20         Do you recognize what these are?

21     A.  Yes.

22     Q.  What would you consider these, the

23  specifications?

24     A.  Initial design.

25     Q.  And I presume these were presented for

Exhibit 1

NON-CERTIFIED COPY

Page 50

1    discussion purposes during these meetings we

2    talked about?

3        A.  Yes.

4        Q.  I want to focus right now on actually

5    the first page after the title, which is

6    "Division 3 Concrete."

7        A.  Okay.

8        Q.  The first specification is 03050.

9        A.  Uh-huh.

10       Q.  And it says, "Testing Laboratory

11   services will be retained by the Owner and will

12   monitor concrete quality by means of site and

13   laboratory tests."

14           Do you see that?

15       A.  Yes.

16       Q.  Who was that laboratory service that was

17   hired for Baton Rouge?

18       A.  I don't recall, but this general concept

19   was never put into play.  So, I mean, this

20   design was squashed.

21       Q.  When you say "this design," you mean

22   design of the building or --

23       A.  Yes.

24       Q.  -- design of the yard?

25       A.  This design in general was squashed.

Exhibit 1

NON-CERTIFIED COPY

Page 51

1      Q.  Was all of this design squashed?

2      A.  It was transitioned to another architect

3  and design team.  Yes.

4      Q.  At URS?

5      A.  At URS.

6      Q.  Why was that?

7      A.  It just didn't fit our -- it was too

8  outside the box.

9      Q.  When you say "outside the box," what do

10  you mean?

11      A.  Just that the general design concept and

12  some of the interior features and things of that

13  nature were just outside.

14          At that time, the architect on this

15  project was Thomas Van Horn out of the Lansing,

16  Michigan office.  And shortly thereafter, this

17  document was no longer on the project.

18      Q.  So, actually, when it was discussed,

19  what you are saying is H&E rejected this

20  concept?

21      A.  Correct.  We just kind of took a step

22  back and said, "This is not going to work."

23          We had conversations with URS about the

24  current architect and being in Michigan and

25  difficulty to communicate and had a vision that

Exhibit 1

NON-CERTIFIED COPY

Page 52

1   was different from ours, and we did a step back.

2       Q.  Was that primarily because of the

3   headquarters building or --

4       A.  Yes, the headquarters building.

5       Q.  All right.

6       A.  That was the only thing new to us.

7       Q.  So you didn't necessarily reject

8   anything in the yard or the service building

9   here, but because of the rejection of the office

10  building.  You all were basically starting from

11  scratch --

12      A.  Correct.

13      Q.  -- with URS?

14      A.  Yes.

15      Q.  And what was the result of that?  Who

16  became the architect?

17      A.  Neal Johnson.

18      Q.  What point in time are we talking about?

19      A.  I don't recall specifics.

20      Q.  All right.  This was shortly --

21      A.  That was shortly after the document --

22      Q.  Yes.  This is dated --

23      A.  February.

24      Q.  -- February of 2007.  So it was shortly

25  sometime in 2007, you would say?

Exhibit 1

NON-CERTIFIED COPY

Page 53

1    A.  Yes.  Yes.

2    Q.  So, for instance, on the first page,

3  Mr. St. Germain, the concrete mixes, that is not

4  the reason this was rejected?  The reason it was

5  rejected is because of the headquarters concept

6  primarily?

7    A.  That is correct.

8    Q.  Now, let me show you the next exhibit,

9  which is Exhibit 10, which is H&E 5216.

10        As you can tell, I'm trying to take this

11  stuff chronologically, because that is the best

12  way to try to sell a story.

13    A.  I understand.

14    Q.  This prior document, which we talked

15  about, this Design Development Manual, was

16  February 9 of 2007.

17        What you have is an Email now, February

18  13, 2007, from Chad Herndon at URS to you and

19  Mr. Jones, and he is sending an advanced copy of

20  the site plan.

21        Do you see that?

22    A.  Yes.

23    Q.  Was there a rejection of this Design

24  Development Manual prior to this or after this

25  Email, to your recollection?

Exhibit 1

NON-CERTIFIED COPY

Page 54

1      A.  I don't recall.

2      Q.  All right.  Take a look at the site plan

3   for a second, if you can read it.  I have a

4   magnifying glass for us, by the way, if we need

5   it.

6      A.  All right.

7      Q.  It deals with the office space.  And you

8   see where the headquarters building is?

9      A.  Yes.

10      Q.  Can you see how many square feet that

11   is?  It says two stories, four --

12      A.  It says two stories.

13      Q.  Let me get my glasses on.  I think you

14   are right.  It looks like 46,000 and some

15   change.

16      A.  Yes.  46,468.

17      Q.  All right.  And how many parking spaces

18   was at the office site at that time?  Do you see

19   that box?

20      A.  This box?

21      Q.  No.  This box.

22      A.  This box?

23      Q.  What is the total?

24      A.  122.

25      Q.  Okay.

Exhibit 1

NON-CERTIFIED COPY

Page 55

1       A.  Again, this plan wasn't working, as

2   well, that site plan, because of water

3   retention.

4       Q.  Because you had trouble fitting the

5   water retention pond into the space with this

6   kind of design?

7       A.  That is correct.  It engulfed part of

8   our shop facility, which we felt that this was

9   not large enough.

10          So at that time, we considered

11  scratching the Corporate facility and just

12  having it as the branch facility only.  So it

13  changed from here, as well.

14      Q.  This site plan, so that I understand,

15  has on it, the headquarters building at 46,000

16  square feet, a branch building at about 43,000

17  square feet, as I'm reading it.  See it?

18      A.  Correct.

19      Q.  And the pond?

20      A.  The multitude of ponds, yes.

21      Q.  And what was wrong with the ponds on

22  this site plan?

23      A.  It was taking up too much of the real

24  estate.  So we didn't feel that we had enough

25  real estate for the branch operations with the

Exhibit 1

NON-CERTIFIED COPY

Page 56

1    Corporate office situated on the same property.

2        Q.  But at the time, even for 46,000 square

3    feet of headquarters office space, at least URS

4    was saying there was going to be 122 spaces for

5    parking at that time, at least?

6        MS. MINCE:

7            Object to form.

8    EXAMINATION BY MR. FRANCO:

9        Q.  You can answer.

10       A.  I think it was just conceptual.  I mean,

11   to this point.

12       Q.  Let me show you the next exhibit, which

13   will be Exhibit 11, which is H&E 5164.

14       A.  (Witness reviewing document.)

15       Q.  This is from Mark Howard at URS, March

16   16, 2007.  So, we are past this February date.

17   We were talking about to you and John Jones,

18   "Site Issue Path Forward."

19           Obviously, this is a follow-up from the

20   concerns that you all have with the site plan we

21   just talked about, right?

22       A.  Right.

23       Q.  Is this the first time that Mark Howard

24   is involved?  Did he take over?

25       A.  Mark Howard was initially involved.  He

Exhibit 1

NON-CERTIFIED COPY

Page 57

1    was the -- he was the project -- I don't know

2    what his official title was, but he was -- he

3    was my initial contact the first time I ever

4    spoke to someone officially at URS.

5        Q.  Was he an architect, to your knowledge?

6        A.  I do not know.

7        Q.  It says, the second paragraph, "Pursuant

8    to our meeting on Wednesday, Chad, Thom and I

9    discussed the possibilities for remedy to the

10   desired land requirement for the corporate

11   headquarters/equipment division campus."

12           Do you see that?

13       A.  Yes.

14       Q.  That is the problem we just talked

15   about --

16       A.  Correct.

17       Q.  -- the pond taking up too much space?

18       A.  Correct.

19       Q.  And they give you some choices,

20   basically, some options.

21           See that at the bottom?

22       A.  Yes.

23       Q.  Those options range from finding a new

24   site to just building the division facility at

25   that site.

Exhibit 1

NON-CERTIFIED COPY

Page 58

1    A.  Right.

2    Q.  To selling the site and finding a bigger

3    site; right?

4    A.  Right.  That is correct.

5    Q.  So they were saying, "Okay.  You have a

6    problem with the pond requirements.  Let's --"

7    A.  We were saying that there was a problem

8    with the pond requirements.

9    Q.  Right.  Because you wanted more branch

10   space?

11   A.  That is correct.

12   Q.  All right.  And then I assume they came

13   up with a revised plan.  Let's take a look at

14   that.

15        This is going to be Exhibit 12, and this

16   is H&E 5168.  So this is from Chad Herndon.  Do

17   you recognize who that is to?  Is it Lacombe?

18   Dlacombe, does that ring a bell?

19   A.  I'm wondering if that was -- I can only

20   speculate.

21   Q.  All right.  Well, don't speculate.

22   A.  I can't say.

23   Q.  A copy was to you and Mr. Jones?

24   A.  Correct.

25   Q.  And he is attaching a revised site plan,

Exhibit 1

NON-CERTIFIED COPY

Page 59

1    correct?

2        A.  Correct.

3        Q.  All right.  Now, in this revised site

4    plan, we have one pond instead of two, and we

5    have a layout.  Is this what eventually became

6    the general layout?

7        A.  The general layout, yes.

8        Q.  Do you remember that Mr. McCullough

9    became involved with the pond issue at this

10   time?

11       A.  Mr. McCullough?

12       Q.  Murray McCullough, Benchmark?

13       A.  Yes.  Yes.

14       Q.  So, as I recall, and correct me if I'm

15   wrong.  I'll try to say us some time, but don't

16   let me put words in your mouth.

17           As I understand it, because of the pond

18   issue, Mr. McCullough from Benchmark became

19   involved and he was able to design the pond to

20   facilitate more branch space.  Is that a fair

21   statement?

22       MS. MINCE:

23           Object to form.

24       MR. FRANCO:

25           What is the objection so I can cure

Exhibit 1

NON-CERTIFIED COPY

Page 60

1    it?

2         MS. MINCE:

3             At the beginning of your question,

4    you said "because of the pond issue he became

5    involved."  That is assuming that that was the

6    reason he became involved.

7             You just asked whether Mr.

8    McCullough did, in fact, become involved in

9    redesign of the pond.  And I object.

10        MR. FRANCO:

11            Okay.

12   EXAMINATION BY MR. FRANCO:

13       Q.  As you recall, Mr. McCullough became

14   involved primarily with the pond issue at first.

15   Is that your recollection?

16       A.  I know Murray was involved.  At what

17   point he became involved, I'm not sure.  I think

18   he was working with URS or in conjunction with

19   URS.

20       Q.  Right.  You all didn't get him involved?

21       A.  No.

22       Q.  URS did, though, correct?

23       A.  That is correct.

24       Q.  And his first involvement, as you

25   recall, was dealing with the pond issue?

Exhibit 1

NON-CERTIFIED COPY

Page 61

1      A.  We had numerous meetings with Murray,

2  but I don't recall if this was the first issue

3  or not.

4      Q.  Is this the general site plan that

5  became the target?

6      A.  Very general, yes.

7      Q.  Okay.

8      A.  Yes.

9      Q.  And so at this point, the concept became

10  that you could fit the headquarters and the

11  branch with the yard space that you were

12  desiring at this site?

13      A.  Again, conceptually, this is the site

14  plan.  I don't know exactly what the retention

15  pond ended up.

16          So the size of that retention pond may

17  or may not be as per the specs today, but this

18  in general concept is the plan, yes.

19      Q.  And the concept was a two-story

20  headquarters building, right?

21      A.  Yes.

22      Q.  And about a 42,000 square foot branch

23  building?

24      A.  That is correct.

25      Q.  Okay.

Exhibit 1

NON-CERTIFIED COPY

Page 62

1    A.  This was a 42 -- and both of them were

2    about 42,000.  That is what we ended up with.

3    Q.  The headquarters was two stories?

4    A.  Correct.

5    Q.  Was the branch one-story?

6    A.  Single story.

7    Q.  So, obviously, took up more space?

8    A.  Yes.

9    Q.  Now, what we just looked at was dated in

10   August of 2007.

11        Next I'm going to show you an Email

12   string in March of 2008, which is Exhibit 13.

13   It is H&E 6682.

14   A.  (Witness reviewing document.)

15        There is two of them here.

16   Q.  I'm sorry.  Give me the second one.

17        Look at when the string of Email begins.

18   It begins from James Brown to you,

19   Mr. St. Germain, about repair estimates.

20        And since he is the branch manager at

21   Kenner, I think it is fair to say this was

22   estimates for what was needed to repair the

23   branch office at Kenner, correct?

24   A.  Correct.

25   Q.  And he had obtained some estimates of

NON-CERTIFIED COPY

Exhibit 1

Page 63

1    what was needed to refurbish that site or repair

2    it?

3        A.  Correct.

4        Q.  Why was there a need at the time to do

5    that in Kenner?  Do you recall?

6        A.  It was an older facility.  It just

7    needed a facelift.  It was growing at the time,

8    needed some additional space.

9        Q.  And what kind of operations were going

10   on in Kenner at the time?  Same as was going to

11   be going on in Baton Rouge or different?

12       A.  Very similar.

13       Q.  The same type of equipment?

14       A.  Yes.

15       Q.  Kenner was much smaller?

16       A.  Kenner was a smaller facility, yes.

17       Q.  So he is giving you all estimates, and

18   the repair estimate at that point to do what you

19   all wanted to do at Kenner totaled over a

20   million dollars?

21       A.  Yes.

22       Q.  The next document I'm going to label as

23   Exhibit 14.  It is H&E 6783.  This is another

24   string of Emails in June of 2008.

25           Now, the prior one about these estimates

Exhibit 1

NON-CERTIFIED COPY

Page 64

1   was, for the Record, March of 2008.  Now we are

2   in June of 2008.  This is from Chad Herndon to

3   you, copying Neal Johnson.

4         And let's look at the first Email string

5   on the second page.  That begins from you, and

6   that is to Mark Howard at URS.

7         You are asking for an update as it

8   relates to getting Murray back onboard, the

9   completion of the plans and the fee proposal for

10  doing so.  And this is in 2008.  This is in June

11  of 2008.

12        What happened?  Why was there a need to

13  get Murray back onboard to complete the plans

14  and a fee proposal?  What had happened?

15        And the subject, for the Record, is the

16  Baton Rouge Facility?

17     A.  Yes.

18        I don't recall specifically, but it

19  would have to be revolving around the retention

20  pond.  Going from either getting that approved

21  through the City or whatever it may be.

22     Q.  So you had a site plan, a general site

23  plan at that time, and it sounds like you all

24  wanted to proceed forward on that basis?

25     A.  Yes.

Exhibit 1

NON-CERTIFIED COPY

Page 65

1      Q.  With whatever needed to be approved by

2   the governmental authority?

3      A.  Right.  Correct.

4      Q.  Because the response from Chad Herndon,

5   June 30 says, "We would like to see if you are

6   available to meet Wednesday.  At that time, we

7   will have for your review a fee proposal,

8   delivery schedule and an update on what Murray

9   has been able to find out and coordinate with

10   the City."

11         Is it your recollection that was

12   primarily because of the pond?

13      A.  Correct.

14      Q.  And so the Jury understands,

15   Mr. St. Germain, because of the type of

16   equipment you had or were planning at the site

17   and the fact that you all had to wash that

18   equipment down at some point, it contains dirt,

19   oil, fuel, perhaps.

20         Then you have to take care, to maintain

21   where that stuff ends up, correct, and it ends

22   up in this pond, am I correct?

23      A.  No.

24      Q.  What is the pond for?

25      A.  It is water -- it is water retention

Exhibit 1

NON-CERTIFIED COPY

Page 66

1    from a watershed for rains and things of that

2    nature.

3        Q.  All right.  So there has to be a pond

4    because --

5        A.  Controlling drainage.

6        Q.  But you are controlling the drainage

7    because what is being drained is things that may

8    come off that equipment?

9        A.  No.

10        Q.  Just --

11        A.  No.

12        Q.  Just regular drainage?

13        A.  Regular drainage.

14        Q.  Okay.  So a certain size of pond is

15    required for a certain type of yard --

16        A.  Based on surface area.

17        Q.  Based on surface area?

18        A.  That is correct.

19        Q.  And that is apparently what Murray was

20    able to fit into the site conceptually?

21        A.  Conceptually, he did.

22        Q.  The next document I'll show you is going

23    to be Exhibit 15, which is H&E 3530.

24            And I think we are going to start at the

25    second page with an Email from you to Johnny

NON-CERTIFIED COPY

Exhibit 1

Page 67

1    Jones, and it says "Plan cost."  And now we are

2    in July of 2008, right after you all asked to

3    start things up again.

4          And it says, "...attached is the cost

5    breakdown for URS to first, complete the plans

6    to the point of submittal for permitting.

7    Second, to negotiate pricing and/or visions with

8    the GC..." --

9          That means general contractor?

10    A.  That is right.

11    Q.  "...and third, to manage the

12    construction, testing of material, verify build

13    to plan, and proof and sign off on the

14    progressive payments to GC."

15          Do you see that?

16    A.  Correct.

17    Q.  And you sent that on to Brad Barber.

18    And Brad Barber commented on the cost,

19    basically, is what he is doing, correct?

20    A.  Correct.

21    Q.  And it was your understanding that these

22    tasks were as reflected on this document as what

23    URS was proposing to do?

24    A.  Correct.

25    Q.  Fair statement?

Exhibit 1

NON-CERTIFIED COPY

Page 68

1      A.  Fair statement.

2      Q.  Which consisted generally of

3  construction documentation, which generally

4  means preparing the construction documents,

5  right?

6      A.  Correct.

7      Q.  Negotiating the contract or assisting in

8  negotiating a contract with the general

9  contractor?

10     A.  Correct.

11     Q.  And assisting with the bidding and

12  awarding of the contract, correct?

13     A.  Correct.

14     Q.  And then it details out what they were

15  going to do in the construction administration

16  phase, correct?

17     A.  Correct.

18     Q.  And I think it is fair to say Mr. Barber

19  or you were suggesting that the 54,000 for the

20  pricing and negotiations was negotiable?

21     A.  I don't see what the 54,000 --

22     Q.  Look at the last page, it is detailed.

23  Back up.

24     A.  Oh, okay.

25     Q.  Back up.

Exhibit 1

NON-CERTIFIED COPY

Page 69

1    A.  I got you, yes.

2    Q.  Right?

3    A.  Yes.

4    Q.  Okay.  Prior to this project in Baton

5  Rouge, had you been involved with construction

6  of other facilities at H&E?

7    A.  Yes.

8    Q.  So you were generally aware of how it

9  works?

10    A.  Generally speaking, yes.

11    Q.  Right?

12    A.  Yes.

13    Q.  So you participated in bidding on other

14  jobs?

15    A.  Yes.

16    Q.  Negotiations with contractors in other

17  jobs?

18    A.  Yes.  Yes.

19    Q.  I assume, although I've never seen a job

20  without a change order, you dealt with change

21  orders on other jobs, correct?

22    A.  Yes.

23    Q.  Ultimately, I'm going to show you

24  Exhibit 16, which is H&E 2958.  That proposal

25  was on hold until Mr. Engquist himself approved

Exhibit 1

NON-CERTIFIED COPY

Page 70

1    it, correct?

2        A.  Based on this Email, yes.

3        Q.  The next document I'm going to show you

4    is Exhibit 17, which is H&E 6843, and you are

5    sending Mr. Herman back this lump sum work order

6    08-01, for $490,000, with the attachment.  And

7    there is the attachment.

8        A.  (Witness reviewing document.)

9            You asked what the scope of service was?

10        Q.  I'm sorry.  Say that again.

11        A.  The attachment was there.  The lump sum

12    08-01 is there.  The scope of services --

13        Q.  Okay.

14        A.  -- it is not -- it is not with the

15    initial document.

16        Q.  So, let's look at the total.  The total

17    is $490,000.  And if you look back at Exhibit

18    15, that is for the construction documents.

19            You see it?

20        A.  Yes.

21        Q.  "Includes landscaping up to permit

22    proposal"?

23        A.  Right.

24        Q.  And, obviously, Mr. Engquist approved

25    that, or else you wouldn't have signed it,

Exhibit 1

NON-CERTIFIED COPY

Page 71

1    right?

2        A.  Yes.

3        Q.  Just for the Record, why don't we attach

4    as a separate Exhibit 18, the Lump Sum Work

5    Order 08-01, with the attachment for the scope

6    of services for the construction documentation

7    phase?  That is the 490,000 we just talked

8    about, correct?

9        A.  Correct.

10       Q.  So Exhibit 18 is 37276 and 7.  And then

11   we are still in July of 2008.

12           All right.  Next I'm going to show you

13   Exhibit 19, which is H&E 7052.

14           Now, this is in reference to the H&E

15   headquarters building, and it is talking about

16   some issues at the building.

17           But I want to focus, if you will, on the

18   first page, the bottom Email, from you to Jodi

19   Rusca, R-U-S-C-A, at URS, copying Neal Johnson

20   and Chad Herndon.  And you are answering some of

21   their questions.  Your answers --

22       MS. MINCE:

23           Stop.  You lost me.  I don't --

24       THE WITNESS:

25           It is not on this document.

Exhibit 1

NON-CERTIFIED COPY

Page 72

1        MR. FRANCO:

2            Sorry about that.

3        MS. MINCE:

4            That is okay.  So --

5        MR. FRANCO:

6            So this one, we are not going to

7    use.  We need to relabel this as 19.

8    EXAMINATION BY MR. FRANCO:

9        Q.  I'm sorry, Mr. St. Germain.

10        Jodi Rusca asks you to verify a couple

11    of things, and then you respond to that in bold

12    on the first page, it looks like; is that right?

13        A.  Uh-huh (affirmative response).

14        Q.  What role did Jodi Rusca have in this?

15    Do you recall?

16        A.  I don't recall specifically.  I think he

17    was assisting Neal, him and -- I was dealing

18    with him and -- I don't remember his last name

19    -- Olinski?  There were two fellows that were

20    working the paving.

21        Q.  Well, if you don't recall, that is okay.

22        A.  I don't -- I don't recall.

23        Q.  And you say in here, "I would like to

24    look at it from the entire building perspective,

25    and scale back if we need to due to pricing."

Exhibit 1

NON-CERTIFIED COPY

Page 73

1          Did --

2      A.  Where is that?

3      Q.  The bottom of the first page in bold,

4  that is your comment, I assume, correct?

5      A.  Yes.

6      Q.  At this point, did H&E have a budget for

7  the headquarters for the Baton Rouge facility,

8  let's call it?

9      A.  I don't recall.  Based on that date, I

10  don't -- I don't know.

11      Q.  Did H&E ever have a budget established

12  for the Baton Rouge facility?

13      A.  As I mentioned earlier, it was a new

14  endeavor, and I don't think we -- none of us

15  knew where we would go.  And it is like building

16  anything else, if the budget or the price didn't

17  go as high as you wanted it to, so --

18      Q.  But it is a fair statement that,

19  obviously, you were concerned and took part in

20  making sure that you didn't spend more than you

21  thought you should spend on the facility, right?

22      A.  As in anything, yes.

23      Q.  Correct?

24      A.  Correct.

25      Q.  But you don't recall a $15 million

Exhibit 1

NON-CERTIFIED COPY

Page 74

1  budget number?

2      A.  I'm sure there was a budget number prior

3  to this Email, and whether it was 15 million, I

4  don't really recall that.

5      Q.  H&E was a public company at this point,

6  right?

7      A.  2009, yes.

8      Q.  When did you go public?

9      A.  I think in '06.

10     Q.  I assume at some point in time, H&E, as

11 a public company, established some kind of

12 official budget; is that right or not?

13     A.  I would assume so, yes.

14     Q.  Were you involved in that?

15     A.  Not in the establishment of working on

16 it.

17     Q.  You wouldn't have been involved in

18 that --

19     A.  No.

20     Q.  -- during this same time period, and we

21 are in 2009 now, in January of 2009?

22     A.  No.

23     Q.  Let me show you another document,

24 Exhibit 20, which is H&E 7609.  This is from

25 James Brown -- I assume he is not the singer,

Exhibit 1

NON-CERTIFIED COPY

Page 75

1    James Brown?

2       A.  He thinks he is.

3       Q.  James Brown, who is the branch manager

4    at Kenner, is coming up with three options to

5    repair the Kenner facility?

6          MS. MINCE:

7             Object to form.

8    EXAMINATION BY MR. FRANCO:

9       Q.  Is that right?

10      A.  Yes.  Two of the three look to be the

11   same.

12      Q.  I see that.

13          I guess the significance is --

14          MR. FRANCO:

15             This document is numbered Bates No.

16   7610 is interesting, and the attachments are not

17   Bates stamped.

18   EXAMINATION BY MR. FRANCO:

19      Q.  All right.  So, for the Record, the

20   document I just identified goes from 7609 to 10,

21   but there are three attachments to this that do

22   not have Bates numbers.  Why or how it got that

23   way, I have no idea.

24          The reason I'm submitting this is simply

25   that you are still discussing repair options at

Exhibit 1

NON-CERTIFIED COPY

Page 76

1    Kenner in May of 2009, correct?

2        A.  Based on this Email, yes.

3        Q.  Because he gives these to you, copies to

4    you in September of 2008, and y'all sending this

5    to Johnny Jones in May of 2009.  So you are

6    resurrecting the concept that, apparently, you

7    all needed to do something at Kenner?

8            MS. MINCE:

9                Object to form.

10           MR. FRANCO:

11               What is the objection?

12           MS. MINCE:

13               The Email in May of 2009 is from

14   James Brown to Johnny Jones, and the plans are

15   on that Email.  So James Brown is sending this

16   to Johnny Jones in May of 2009.  You said "you

17   are sending."

18           MR. FRANCO:

19               I said "y'all."

20   EXAMINATION BY MR. FRANCO:

21       Q.  The concept is H&E is resurrecting the

22   concept in May of 2009 that "we needed to do

23   something at the Kenner facility."  Fair

24   statement?

25       A.  Fair statement.

Exhibit 1

NON-CERTIFIED COPY

Page 77

1      Q.  Okay.  Next is Exhibit 21, and this is

2  H&E 5268.  We are in June of 2009.  This is from

3  you to Neal Johnson, telling him that you need

4  to do pretty extensive renovations to Kenner,

5  and asking if URS is interested in assisting on

6  that at that site, correct?

7      A.  Correct.

8      Q.  All right.  And then I'm going to snow

9  you the next exhibit, which is Exhibit 22, H&E

10  3415.

11         So as a follow-up, you are asking if

12  they are interested in June of '09, and in

13  August of '09, Neal Johnson is sending you a

14  proposal to assist with budget and renovations

15  and additions at Kenner, correct?

16      A.  Correct.

17      Q.  And this proposal was for $20,000 to

18  develop basically existing site drawings and

19  then develop sketches to try to figure out what

20  you all wanted to do with that site, right?

21      A.  Yes.

22      Q.  And if you look at No. 7 on that

23  Attachment 1, it lists develop sketches and

24  drawings for a new entrance, new office,

25  demolish an existing office, talks about new

Exhibit 1

NON-CERTIFIED COPY

Page 78

1  overhead doors, new enclosed service bay, new

2  open frame and a wash building.

3      Do you see all that?

4  A.  Yes.

5  Q.  At this point, were you considering

6  replacing the yard at Kenner?

7  A.  Yes.

8  Q.  From the very beginning?

9  A.  The situation is this:  The building was

10  not owned by H&E.  The building was owned by

11  John Engquist.  We asked -- he was our landlord

12  to the Company.

13      We asked to update the facility and

14  renovate it to a certain degree.  There he asked

15  pricing where James Brown went out and got

16  certain pricing for a minimal scope.

17  Q.  Primarily, on the building?

18  A.  Primarily, on the entire facility.

19      Part of the problem there was:  parts

20  warehouses were leaking; we had an inept wash

21  facility to wash the construction equipment; we

22  were crowded.

23      We had an old abandoned apartment

24  complex to the south of us.  So it was a

25  multitude of things going on.

Exhibit 1

NON-CERTIFIED COPY

Page 79

1          We ended up purchasing the apartment

2     complex.  The Company purchased the apartment

3     complex.  John Engquist still owned the

4     facility.

5          As the landlord, we went and said, "We

6     want to do X amount of dollars of renovations."

7     "What is my return?"  We started looking at what

8     the lease payments would go to.

9          We started trying to compare renovations

10    versus new construction.  We got out and looked

11    at other facilities, other properties to

12    construct a new facility.

13         We did our due diligence as it related

14    to or compared to an analysis of what was the

15    best option for the Company.  There is limited

16    space in that area, as you are aware of.

17         The underfoot conditions, et cetera, et

18    cetera, impeded -- the cost of building a new

19    facility was much greater than the renovation of

20    this.  So John opted to sell the facility to the

21    Company.

22         So H&E purchased the facility from John.

23    We had already -- the Company already owned the

24    adjacent property.  So we knew that we had

25    enough space at that time to renovate that

NON-CERTIFIED COPY

Exhibit 1

Page 80

1    facility and upgrade it to a better functioning

2    facility.

3          So at that point, that is why the

4    timeline was so large.  We went through a

5    multitude of processes.  And after we purchased

6    it, we put -- again, so I reached out to URS to

7    do an A&E concept improvement, et cetera, to the

8    facility.

9        Q.  Let me get an understanding of what

10   exactly Mr. Engquist owned.  I've been out to

11   the existing Kenner facility recently.  Okay?

12       A.  Okay.

13       Q.  Did Mr. Engquist own all that space

14   where the Kenner facility is presently located?

15       A.  No.

16       Q.  Just the building space?

17       A.  There was --

18       Q.  Two lots?

19       A.  There was a -- it was a single lot, I

20   think.  It was a single lot.

21          The adjacent property between the

22   existing facility and the rental car place was a

23   narrow alley there.

24          Next to that alley was an apartment

25   complex that ran from Airline Highway back

Exhibit 1

NON-CERTIFIED COPY

Page 81

1    towards the railroad tracks, and the Company

2    purchased that property.  H&E purchased that

3    property during the ownership John had of the

4    existing property.

5            So -- and I don't recall the actual

6    width of that lot, but he did not own it.

7        Q.  Okay.  So the current facility at

8    Kenner --

9        A.  Uh-huh.

10       Q.  -- is composed of what prior pieces?

11       A.  It is composed of John Engquist's

12   parcel --

13       Q.  That he sold to the Company.

14       A.  -- that he sold to the Company.  And

15   where the apartment complex was located.

16       Q.  I got you.

17       A.  It expanded to that roadway in between

18   the rental car return area.

19       Q.  And that is why there was a swimming

20   pool buried somewhere in that foundation?

21       A.  That is correct.  There was a swimming

22   pool there, right.

23       Q.  Okay.

24       A.  We joked about adding it to our wash

25   area for a retention pond.

Exhibit 1

NON-CERTIFIED COPY

Page 82

1      Q.  Okay.

2      A.  That is correct.

3      Q.  Well, then, the prior existing Kenner

4    facility was even smaller than what is there

5    now?

6      A.  That is correct.  That is correct.

7      Q.  That was a very small facility then.

8      A.  I don't recall acreage, but it was five

9    or six acres, I think.

10     Q.  What was the yard area at Kenner

11   composed of?

12     A.  It was concrete and some aggregate and

13   then some raw -- raw land.

14     Q.  And before I forget to ask you this, the

15   yard area is now all paved, correct?

16     A.  Yes.

17     Q.  And was that a request of the Company,

18   as it had been in Baton Rouge, or was that a

19   function of Zoning?

20     A.  The function of Zoning there.

21     Q.  All right.  Let me show you the next

22   exhibit, which will be Exhibit 23.  That is H&E

23   5383.

24        This follows this $20,000 proposal we

25   just looked at?

Exhibit 1

NON-CERTIFIED COPY

Page 83

1    A.  Correct.

2    Q.  And it basically says that you approved

3    it and proceeding with the proposal, and then

4    Neal Johnson says, "We will draft the agreement

5    tomorrow."

6         Do you see that?

7    A.  Yes.

8    Q.  Then the next exhibit is Exhibit 24, H&E

9    5389, and this is another Email to you.

10        The prior one was dated August 13, '09.

11   This is the next day, August 14, and Chad

12   Herndon says he will begin putting the new

13   Professional Services Agreement and Work Order

14   together?

15   A.  Yes.

16   Q.  Now, did you discuss this with Chad

17   Herndon at all?

18   A.  Chad was involved in the project, so I

19   would assume yes.

20   Q.  The next one is Exhibit 25, and that is

21   going to be H&E 5430.  That is dated August 20

22   of '09.  And this is, again, a follow-up on the

23   Emails about approval of this proposal.

24        If you look at the top Email, it is from

25   Neal Johnson to you, dated August 20, copying

Exhibit 1

NON-CERTIFIED COPY

Page 84

1    Chad Herndon.  And it says, the third line down,

2    "Attached is our new Master Agreement that we

3    discussed.  Also attached is a Work

4    Authorization and attachments."

5         Do you see that?

6    A.  Yes.

7    Q.  What did you discuss about this new

8    master agreement with Neal Johnson as of that

9    time?

10   A.  I would have sent this master agreement

11   to Ashley Moore to review.

12   Q.  Okay.  And I'm going to get to that.

13        But before you did that, what do you

14   recall, if you recall anything, about discussing

15   a new master agreement with Neal Johnson?

16   A.  I don't.

17   Q.  You don't recall?

18   A.  No.

19   Q.  You don't recall questioning why there

20   needed to be a new master agreement?

21   A.  I don't recall specifically, no.

22   Q.  So attached to this, for the Record, is

23   -- and I don't know what this is -- but it is a

24   Short Form Master Agreement for Professional

25   Services, and it is says, "...dated and

Exhibit 1

NON-CERTIFIED COPY

Page 85

1   effective date as of August 13, 2009..."

2          Do you see that?  It is the very first

3   line.

4       A.  Yes.

5       Q.  And then it also has an attachment work

6   order, Authorization 09-100, and Attachment 2 to

7   that and Attachment 3, right?

8       A.  Yes.

9       Q.  Now, you said you sent this to outside

10  counsel, Ashley --

11      A.  Moore.

12      Q.  -- Moore?

13      A.  Yes.

14      Q.  The same guy that you had sent the

15  previous agreement to, correct?

16      A.  Correct.

17      Q.  And what firm is he with?

18      A.  Taylor, Porter, Brooks & Phillips.

19      Q.  I'm going to show you the next exhibit,

20  which is Exhibit 26, which is H&E 5236.

21          This is an Email from Frankie Wynn to

22  you, dated the next day after Neal Johnson sends

23  you this new Master Agreement.  So, apparently,

24  you had sent it to Frankie Wynn, as well?

25      A.  This was during my transition period.

Exhibit 1

NON-CERTIFIED COPY

Page 86

1    This is about the time I started transitioning

2    into another position.

3        Q.  Okay.

4        A.  Yes, I would have sent it to Frankie.

5        Q.  Okay.  And Frankie listed some concerns

6    he had with this new Master Agreement, correct?

7    Read the very first sentence.

8        A.  Yes, I see that.

9        Q.  And if you look at those concerns, look

10   at the second page.  I want you to look at what

11   he has labeled right above Paragraph No. 9.  See

12   it?

13       A.  Yes.

14       Q.  And he says, "Are you okay with the

15   $250,000 liability limitation?"

16           Do you see that?

17       A.  Yes.

18       Q.  So he actually questions certain

19   paragraphs.  And what did you do about that?

20       A.  I don't recall.  I would -- you know,

21   again, I think that this would have had to have

22   been reviewed by Ashley Moore.

23       Q.  That would have been your normal

24   process, right?

25       A.  Yes.  Yes, that would have been the

Exhibit 1

NON-CERTIFIED COPY

Page 87

1    normal process.

2        Q.  So after you got this August 21, let's

3    look at the next document.

4            We are going to label this as Exhibit

5    27.  This is the Short Form Master Agreement for

6    Professional Services, dated at the top, August

7    13, 2009, executed by you.

8        A.  (Witness reviewing document.)

9        Q.  Do you see it?

10       A.  Yes.

11       Q.  And so I assume you were authorized to

12   execute this document on behalf of H&E, correct?

13       A.  Yes.

14       Q.  And I assume you vetted this with either

15   Mr. Wynn and/or Ashley Moore before you signed

16   it, correct?

17       A.  That is correct.

18       Q.  Do you recall discussing any part of

19   this agreement with anyone from URS before you

20   signed it?

21       A.  I do not.

22       Q.  And the next document I'll show you is

23   going to be labeled Exhibit 28, which URS 31081.

24           This is Attachment 1, and, if you look

25   at the top, it references the Master Agreement

Exhibit 1

NON-CERTIFIED COPY

Page 88

1    or the agreement dated August 13, 2009.

2            Do you see that at the top?

3        A.  Yes.

4        Q.  Okay.  And this was signed by you,

5    correct?

6        A.  Yes.

7        Q.  On August 31, 2009?

8        A.  Yes.

9        Q.  Now, you recall the Kenner facility

10   being surveyed before construction started?

11       A.  Yes.

12       Q.  And do you recall who paid for that

13   survey?

14       A.  I don't.

15       Q.  Next I'm going to show you what I'm

16   going to label as Exhibit 29.  This is H&E 5732.

17           We are in November of 2009, and does

18   that refresh your memory as to who Hohensee was?

19       A.  Hohensee, James Hohensee.  I remember

20   now.

21       Q.  Okay.  And this is in reference to the

22   Kenner facility, and he is sending to some

23   companies drawings and pricing sheets for them

24   to look at.

25           So I assume this is in connection with

Exhibit 1

NON-CERTIFIED COPY

Page 89

1    getting pricing from the GCs, correct?

2        A.  Correct.

3        Q.  Now, these GCs were Gibbs, F.H. Myers,

4    Goutee, correct?

5        A.  Correct.

6        Q.  Was there any reason why that was

7    limited to three companies at this point?  Do

8    you recall that?

9        A.  I do not.

10       Q.  None of those became the ultimate GC on

11   Kenner, correct?

12       A.  I don't recall that either.

13       Q.  Well, let me refresh your memory.  The

14   contractor, the GC on Kenner became MAPP.

15       A.  Okay.  Okay.  I do remember that.

16       Q.  Do you remember why these three

17   companies did not become the GC?

18       A.  I do not.

19       Q.  Do you remember if there was a hiatus

20   put on development of either the Baton Rouge

21   site or the renovation to the Kenner site

22   because the economy was bad?

23       A.  Yes.

24       Q.  And do you remember what time period

25   that was?

Exhibit 1

NON-CERTIFIED COPY

Page 90

1    A.  Late '08, early '09, I think.

2    Q.  And the hiatus lasted until about when?

3  2010?

4    A.  2010.  I tried to build the building

5  during that time.

6    Q.  You did?

7    A.  Yes.  I pushed -- I asked John to build

8  it because labor prices and material costs were

9  down during the recession.  He opted not to.

10    Q.  These buildings?  This is --

11    A.  The Corporate facility.

12    Q.  Oh, you wanted to go forward with the

13  Baton Rouge facility?

14    A.  The Baton Rouge facility.

15    Q.  Oh, okay.  And he opted not to because

16  of the economy?

17    A.  Uh-huh (affirmative response).

18    Q.  Could that be the reason that these

19  three companies weren't involved in the

20  resurrection of that?

21    A.  I can't speculate on that, but based on

22  the bids that James Brown got earlier, I would

23  assume for these companies, or at least some of

24  them, at the time, they were doing it on no

25  design specs.  So once we had a design, I think

Exhibit 1

NON-CERTIFIED COPY

Page 91

1    it went back out for bid and then --

2        Q.  More formally?

3        A.  More formally, correct.  Yes.

4        Q.  What is this C&C property?

5        A.  C&C is a lease property in Belle Chasse.

6        Q.  Oh, okay.

7        A.  C&C Marine owned it.

8        Q.  So the reference to C&C, actually for

9    our purposes, is the Belle Chasse site?

10       A.  That is correct.

11       Q.  Let me show you another document I'm

12   going to label as Exhibit 30.  It is H&E 3418.

13          This is from you to Brad Barber.  It is

14   referencing Belle Chasse, which is described in

15   this as the C&C property, and this is the last

16   submittals by Frank.  And who was Frank?

17       A.  Frank Arthur was the branch manager of

18   the Belle Chasse facility.

19       Q.  All right.  So around this time --

20       A.  Still is.

21       Q.  -- December of 2009, H&E is also

22   considering doing some work at the Belle Chasse

23   site?

24       A.  We were contemplating moving.  We had an

25   existing site there we needed to expand and this

Exhibit 1

NON-CERTIFIED COPY

Page 92

1    facility was available.

2        Q.  A new site --

3        A.  Yes.

4        Q.  -- basically?

5        A.  Uh-huh (affirmative response).

6        Q.  Now, this is in December of 2009.  You

7    are still involved, but you are into your

8    transition period pretty much, almost at the end

9    of your transition period?

10        A.  Yes.

11        Q.  December of 2009, right?

12        A.  Yes.  Correct.

13        Q.  The next document is Exhibit 31, H&E

14    5870.  And here in December, you still haven't

15    transitioned out yet?

16        A.  Trying.  I was trying.

17        Q.  This is in reference to Kenner, talking

18    about the Kenner branch renovation project that

19    we talked about.

20            And this says, "The Company-owned side

21    of the renovation will be completed first...,"

22    and then, "The remaining balance of the

23    renovation is owned by John Engquist."

24            Can you explain that to me, what you

25    meant by that?

Exhibit 1

NON-CERTIFIED COPY

Page 93

1      A.  I would think that the 200,000 was the

2  demolition of the apartment complex.  That was a

3  Company-owned property adjacent to John's

4  property, prior to us purchasing it -- prior to

5  H&E purchasing the property from John Engquist.

6      Q.  If I'm facing south at the Kenner site,

7  which is the entrance, actually, which side of

8  the facility was the apartment complex on?

9      A.  If you are facing the front door of the

10  facility, it is to the left.  Towards the

11  airport.

12      Q.  Which is where your sales equipment is

13  primarily --

14      A.  That is a stage --

15      Q.  -- staged?

16      A.  It is a staging area, right.

17      Q.  Okay.

18      A.  Storage area.

19      Q.  Let's look at the next document, which

20  I'm going to label as Exhibit 32, which is H&E

21  6053.

22        Now, let's see.  Let's back up on this

23  one.  Let's start at the back of this one

24  because I think that will tell the story a

25  little bit better.

Exhibit 1

NON-CERTIFIED COPY

Page 94

1      A.   Is this part of it?

2      Q.   All right.  Let's regroup.

3           It starts at Page 6055, at the back.

4   And this talks about H&E concrete slab design

5   loads.

6           This is from Jean-Paul Garnett, to you,

7   March of 2010, and he is at Weeks Turner in

8   Raleigh.  I presume this is in connection with

9   the Raleigh facility; is that correct?

10     A.   That is correct.

11     Q.   And he says, "These are the loading

12  requirements for which the structural engineer

13  is designing the slab for this service bay in

14  the main building."

15          Now, at this time in March of 2010, was

16  Raleigh an existing operating facility that was

17  going to be refurbished in some way or was this

18  going to be a new facility?

19     A.   New facility.

20     Q.   All right.  So Raleigh was a new

21  facility.  And Jean-Paul Garnett, was he an

22  architect or an engineer?

23     A.   I don't recall.

24     Q.   I assume H&E had hired Weeks Turner to

25  be involved in the Raleigh facility design?

Exhibit 1

NON-CERTIFIED COPY

Page 95

1    A.   No.

2    Q.   How did you Mr. Garnett get involved?

3    A.   Through the developer or the owner of

4    the property.  It was a design build-to-suit.

5    So, ultimately, what we would do is find a

6    developer that wanted to build the facility, and

7    then they went to their own -- since they were

8    going to own the building, they went to their

9    own A&E.

10    Q.   So H&E leases the Raleigh facility?

11    A.   Yes.  For the -- I'm sure we do, yes.

12    Q.   So, it is your belief that Weeks Turner

13    was hired by the owner?

14    A.   Correct.

15    Q.   And he is copying you on this, and he is

16    giving loading requirements.  He is talking

17    about uniformly distributed load at 1000 psf;

18    point loads of 10,000 pounds; and a wheel load,

19    correct?

20    A.   Correct.

21    Q.   All right.  And let's see what you

22    respond.

23         You respond, "Since I am not an

24    engineer..." -- good response, by the way --

25    "...can you tell me the thickness, psi, etc.

Exhibit 1

NON-CERTIFIED COPY

Page 96

1    Also, do you have the foundation plans for our

2    Sulphur and Bossier City locations?"

3          I assume then that those are two

4    separate locations you are talking about here,

5    one in Sulphur and one in Bossier City?

6       A.   That is correct.

7       Q.   And those facilities at the time had

8    paved surfaces?

9       A.   Yes.

10       Q.   What kind of traffic was at those two

11    facilities?  Similar traffic to what was going

12    to happen at Raleigh?

13       A.   Sulphur, for sure.  Bossier City was a

14    transition store.

15       Q.   What does that mean?

16       A.   We constructed that store to be a

17    Hi-lift store.

18          We had an existing facility in

19    Shreveport, and as our rental business expanded,

20    we started separating our distributor business

21    from our rental business and built a -- had a

22    design build-to-suit facility, built for the

23    rental only.

24          And the intent at that time was to

25    transition the AWP, the Area Work Plant

Exhibit 1

NON-CERTIFIED COPY

Page 97

1    platform, the Hi-lift portion of our rental

2    business, to that facility, and leave the

3    heavy-type tractors and --

4        Q.  Earth-moving?

5        A.  -- earth-moving stuff at our traditional

6    distributor branch, and then --

7        Q.  Which was Shreveport?

8        A.  Which was Industrial Drive Extension in

9    Bossier City.  They are both Bossier City.

10       Q.  Okay.

11       A.  And then sometime thereafter, a business

12   model, a decision change, a transition in the

13   earth-moving stuff transitioned to that

14   facility, as well.

15       Q.  To which facility?

16       A.  To the Old Shed Road facility?

17       Q.  In Sulphur?

18       A.  No, no, no.  Two different cities.

19       Q.  Okay.

20       A.  Sulphur is a new facility -- is a

21   facility we built somewhere around this

22   timeframe.

23       Q.  Okay.

24       A.  Bossier City, we have two facilities.

25   We designed and built the Old Shed Road

Exhibit 1

NON-CERTIFIED COPY

Page 98

1    facility, which was primarily for Hi-lift

2    equipment, and we had an existing facility that

3    was built in 1985 on Industrial Drive Extension,

4    and that was our traditional distributorship

5    facility.

6         Q.  Rental?

7         A.  We were doing some rental out of there.

8    But, again, the growth of the rental business,

9    we opted to build a separate facility just to

10   concentrate on the rental business for a

11   multitude of reasons.

12        Q.  When was that built?

13        A.  Somewhere -- '09-ish, '08 or '09-ish.

14   Somewhere in that neighborhood.

15        Q.  So you actually had three facilities in

16   Bossier City?

17        A.  I had two.

18        Q.  You had one Hi-lift and you had one that

19   was a traditional distributor?

20        A.  Right.

21        Q.  You transformed that into the rental?

22        A.  No.  We built the one on Old Shed Road,

23   which is the Hi-lift.  That was -- let's go

24   back.

25             We had one branch in Bossier City,

Exhibit 1

NON-CERTIFIED COPY

Page 99

1    Industrial Drive Extension.  It had been there

2    since 1985.  We conducted all of our business

3    out of that.

4            We expanded our rental business in that

5    area and was outgrowing that facility, plus we

6    wanted to separate and differentiate --

7    differentiate the business models, the rental

8    model from the retail model.

9            So, at that time, we decided to build a

10   separate facility to transition all of our

11   Hi-lift rental operations to that facility.  So

12   it would have been built at a lesser spec than

13   what we would have built an earth-moving branch

14   out of.

15       Q.  All right.  Is that the Old Shed Road?

16       A.  That is the Old Shed Road.

17       Q.  So the Old Shed Road was a lesser spec

18   because you were dealing with Hi-lift tire

19   equipment?

20       A.  That was the intent, yes.

21       Q.  Rubber tire equipment?

22       A.  That is correct.

23       Q.  Okay.

24       A.  And then, shortly thereafter, a decision

25   was made to transition the earth-moving rental

Exhibit 1

NON-CERTIFIED COPY

Page 100

1    fleet there, as well, and to leave the

2    Industrial Drive Extension as a retail facility

3    only.  Not rental.

4        Q.  So you started using the Hi-lift

5    facility for rental?

6        A.  For earth-moving rental, that is

7    correct.

8        Q.  When did you start doing that?

9        A.  I don't recall.

10       Q.  And then Industrial Drive, that was left

11   to be strictly a distributorship?

12       A.  That is correct.

13       Q.  So when you say "distributorship," you

14   are selling new equipment or you --

15       A.  Yes.  We are selling new, used parts,

16   sales and service.

17       Q.  All right.  But the equipment at that

18   facility doesn't come in dirty?

19       A.  The repair equipment does, yes.

20       Q.  So it does?

21       A.  Yes.

22       Q.  Some of it comes in --

23       A.  Some of it would come in dirty,

24   absolutely.  Yes.

25       Q.  And some of it would have been

Exhibit 1

NON-CERTIFIED COPY

Page 101

1    earth-moving?

2        A.  Absolutely.  The majority of it.

3        Q.  So you have got earth-moving equipment

4    using both facilities in Bossier City?

5        A.  Correct.  Customer-owned in our

6    distributor; rental fleet in our Old Shed Road.

7        Q.  So back to the Email.

8        A.  Okay.

9        Q.  We are talking about getting ready to

10   design for Raleigh?

11       A.  Uh-huh (affirmative response).

12       Q.  And you are asking about foundation

13   plans for Sulphur and Bossier City, right?

14       A.  Correct.

15       Q.  Now, Sulphur and Bossier City were

16   already constructed?

17       A.  That is correct.

18           My response to this, apparently, was not

19   quite understanding the point load and wheel

20   load description of what Jean-Paul sent me.

21           When we go into a -- and, again, I don't

22   know why I was involved at this late in the

23   game, but I had forwarded -- what we do when we

24   go into a new area and want to design and build

25   -- at that time, design and build a facility, we

NON-CERTIFIED COPY

Exhibit 1

Page 102

1    find a developer or someone that wants to be in

2    that business, and we give him a set of plans

3    from one of our previous facilities, "We would

4    like it to look like this, and this is the scope

5    and here it is."

6         So I had forwarded to Jean-Paul, or

7    probably to the developer, or whoever that was

8    at that point, I don't recall, the two sets of

9    plans for them to not have to start from ground

10   zero.

11   Q.  Which would include, not only building,

12   but the yard?

13   A.  That is correct.

14   Q.  And we will get into this in more

15   detail, but right now, Sulphur and the Bossier

16   City sites were all paved?

17   A.  Not all paved, but --

18   Q.  Some were paved?

19   A.  Some were paved and some aggregate.

20   Q.  Okay.

21   A.  That is correct.

22   Q.  All right.  And then he responds to you,

23   he says, "The performance spec sent to you is

24   comparable to the thicknesses shown in the plan

25   you had provided."

Exhibit 1

NON-CERTIFIED COPY

Page 103

1     A.   Uh-huh (affirmative response).

2     Q.   What plan did you provide?  Are you

3  talking about the foundation plans?

4     A.   The Sulphur and the Bossier City plans,

5  construction documents.

6     Q.   Okay.  "I just wanted to know if you

7  could verify the concrete performance as a

8  double-check."

9          What did you understand by that?  How

10  the concrete was holding up?

11     A.   This was the shop slab only, is what it

12  looks like, the office area and parts warehouse

13  and service bays.

14     Q.   Right.  He is saying, "The plans show a

15  6-inch concrete slab in the office area and

16  7-inch concrete in the parts warehouse and

17  service bays."

18          So that looks like slab thickness,

19  right?

20     A.   Yes.

21     Q.   "The structural engineer has shown these

22  same thicknesses on his plans with 4,000 psi

23  concrete.  The Sulphur and Bossier City plans do

24  not show psi of the concrete, so we went with

25  what is typically required of an exterior slab,

Exhibit 1

NON-CERTIFIED COPY

Page 104

1    since the service bay is heated only and not

2    conditioned."

3            What are you understanding that refers

4    to, a slab?

5        A.  The building slab, yes.

6        Q.  All right.  So he is going to go with

7    4,000 psi for his building slab?

8        A.  Yes.

9        Q.  Is what he is telling you?

10       A.  Yes.  That is what he is telling me.

11       Q.  And then he says, "This should withstand

12   most activity with heavy equipment, large

13   trucks, forklifts, etc., with a resistance of

14   12,000 lbs per tire of the vehicle.  The cranes

15   have a loading capacity of 10,000 pounds each,

16   so this is why the slab is designed to support a

17   36" by 36" object of that weight."

18           He is talking about tired vehicles,

19   isn't he?

20       A.  I think he is talking about two things.

21       Q.  Go ahead.

22       A.  "The cranes have a loading capacity of

23   10,000 pounds each," those are the overhead

24   cranes in the building.

25           So he is referring to the slab design to

Exhibit 1

NON-CERTIFIED COPY

Page 105

1    support the overhead cranes and the loads

2    associated with that, is my understanding.

3         Q.  And for the Record, the cranes he is

4    talking about are flat-track cranes, correct?

5    Or, are they tired cranes?

6         A.  Well, I think that there is two

7    different cranes being referenced here.

8             He has got to withstand most activity of

9    heavy equipment, large trucks, forklifts, etc.

10   Large trucks being our transport vehicles that

11   come in and out.

12        Q.  Right.  That is obviously rubber-tired?

13        A.  That is correct.  With a resistance of

14   12,000 pounds per tired vehicle.

15        Q.  Okay.

16        A.  The cranes have a loading capacity of

17   10,000 each.  I'm thinking that is the overhead

18   cranes in the building that are a part of the

19   structural beams in the building.  We have crane

20   rails inside the building that run --

21        Q.  Those are fixed?

22        A.  Those are fixed.  That is correct.

23        Q.  Okay.  And how are they mounted onto the

24   slab?

25        A.  They are -- you have upright, then you

Exhibit 1

NON-CERTIFIED COPY

Page 106

1    have rails, and then the cranes are set on the

2    rails.  It is part of the building.  It is part

3    of the structural design of the building.

4         Q.  How is the load transferred to the slab?

5         A.  Through the beams.

6         Q.  Through the beams?

7         A.  Yes.

8         Q.  No tires, no tracks?

9         A.  No.

10        Q.  So that is what he is talking about as

11   part of --

12        A.  That is part of the structure of the

13   building.

14        Q.  Okay.  Got it.

15            And then you respond and you say, "The

16   cranes should be 10-ton, not 10,000 pounds"?

17        A.  That is correct.  Yeah, we have a pair

18   of 10-ton cranes or 8 -- 10-ton overhead crane

19   in that building.

20        Q.  All right.  And then further he responds

21   that the structural engineer designed it for

22   10-ton capacity, right?

23        A.  Yes.

24        Q.  And then you say, "I pulled a few

25   foundation plans from other buildings we have

Exhibit 1

NON-CERTIFIED COPY

Page 107

1   constructed and the shop area is 5,000 psi with

2   fiber mesh."

3          Do you see that?

4      A.  Yes.

5      Q.  Are you still talking about slab?

6      A.  Yes.

7      Q.  Not yard?

8      A.  Yes.

9      Q.  Do you remember what foundation plans

10  that you pulled?

11     A.  I do not.

12     Q.  Do you know what facilities have

13  foundations at 5,000 psi?

14     A.  Not offhand, no.

15     Q.  It is fair to say, Mr. St. Germain, that

16  you, of course, are familiar with the fact that

17  because of the weight of equipment or loads of

18  equipment, a psi strength of concrete is

19  important, isn't it?

20     A.  Yes.

21     Q.  And I thought I heard you say -- and

22  please correct if I'm wrong -- when you were

23  talking about the Bossier City site and you said

24  the Hi-lift area or site, you mentioned "lesser

25  spec."  Did you say that?

Exhibit 1

NON-CERTIFIED COPY

Page 108

1    A.  Yes.

2    Q.  What did you mean by "lesser spec" for

3    Hi-lift?

4    A.  It was -- it is not as heavy a load.  It

5    is much lighter equipment.  The majority of it

6    was rubber-tired.  So it is just a different

7    building design altogether.

8    Q.  Okay.

9    MR. FRANCO:

10          It is 12:15.  Look, we have some

11   options.  We can order lunch in and continue to

12   keep going or we can take a break, if that is

13   what your preference is.  It doesn't matter to

14   me.  I'm trying to get through this as fast as I

15   can.

16          You see what I have left for you,

17   personally, which is not that much, and then we

18   are going to go into the other sites.

19          So I assume you would prefer to

20   order lunch?

21   THE WITNESS:

22          Yes, I'm fine with that.

23   MR. FRANCO:

24          Lori?

25   MS. MINCE:

NON-CERTIFIED COPY

Exhibit 1

Page 109

1          Whatever you like.  What if we take

2    a break for 30 minutes and --

3          MR. FRANCO:

4          I was just talking about a bathroom

5    break right now.

6          Off the Record.

7          (Off-the-Record discussion.)

8          (Brief recess held.)

9    EXAMINATION BY MR. FRANCO:

10         Q.  Before we took a break, we were talking

11   about specifications and loads.  Let me ask you

12   this question:

13         In your understanding, is the load of a

14   rubber-tired piece of equipment more or less

15   than a load of the same weight track equipment?

16         A.  It is depending on the surface area, the

17   contact point of the surface area.

18         Q.  But isn't the real purpose of the tracks

19   to spread the load?

20         A.  Yes.

21         Q.  Let me show you our next exhibit, which

22   is Exhibit 33.  It is H&E 6214.  This is April

23   of 2010.  It is from Mason Phillips.

24         Do you know who Mason Phillips is?

25         A.  I don't.

Exhibit 1

NON-CERTIFIED COPY

Page 110

1    Q.  He says he is the project manager on the

2  H&E Equipment job, and this references a service

3  area.

4        Do you know what area we are talking

5  about here?

6    A.  I do not.

7    Q.  It says, "We will be pouring that area

8  on Tuesday."

9        This is in April of 2010.  Is this at

10  yet a different site than Kenner or Baton Rouge

11  or Belle Chasse?

12    A.  Yes.

13    Q.  Oh, it is?  Okay.

14    A.  Yes.

15    Q.  So H&E was in the process of

16  construction of yet a different site in April of

17  2010?

18    A.  Yes.

19    Q.  And you still haven't --

20    A.  I'm trying to recall.

21    Q.  -- extricated yourself from involvement

22  in that stuff?

23    A.  I was still trying.

24    Q.  Okay.

25        MS. MINCE:

Exhibit 1

NON-CERTIFIED COPY

Page 111

1              I don't know if that helps, but the

2    area code 919 is a North Carolina area.

3         THE WITNESS:

4              Right.  I think with the area

5    code --

6         MR. FRANCO:

7              Raleigh?

8         THE WITNESS:

9              -- that is the Raleigh facility.

10   EXAMINATION BY MR. FRANCO:

11        Q.  This may help us, as well (indicating).

12        A.  (Reviewing document.)

13        Q.  Yes, that was Raleigh?

14        A.  Yes.

15        Q.  Let me show you the next exhibit, which

16   is Exhibit 34, which is H&E 6262.

17        A.  (Witness reviewing document.)

18        Q.  This is in May of 2010, and there is an

19   Email from Frank Efird.  Do you know who that

20   is?

21        A.  I do not.

22        Q.  And what was Marty Emigh's position at

23   H&E in May of 2010?

24        A.  I think he would have been a regional

25   vice president.

Exhibit 1

NON-CERTIFIED COPY

Page 112

1    Q.  Now, the above Email is from Marty

2  Emigh.  It looks like he was Vice President,

3  Mid-Atlantic.

4        Do you see that?

5    A.  Yes.  Regional -- regional vice

6  president is the term we use now.

7    Q.  And it says, "This is the second time

8  they have requested us to be proactive on the

9  concrete.  Please get someone out to get give us

10 a quote."  And you were copied on this, May,

11 2010.

12        Do you see that?

13   A.  Yes.

14   Q.  Is this refreshing your memory as to

15 what site this is about?

16   A.  It has to be the Charlotte site because

17 Jason Conca was the branch manager for

18 Charlotte.  Brian Gardiner was the service

19 manager of Charlotte.

20   Q.  All right.  That is kind of what I

21 thought.

22        Tell me what you recall about what is

23 going on in connection with the Charlotte

24 concrete at this point in time.

25   A.  (Witness reviewing document.)

Exhibit 1

NON-CERTIFIED COPY

Page 113

1          The Charlotte facility was a design

2    build-to-suit for a Hi-lift facility.  I'm not

3    sure of the date, but it was -- it was a design

4    build-to-suit Hi-lift store I think in the early

5    2000s, maybe.

6        Q.  Okay.

7        A.  We launched our AWP, our Hi-lift

8    division in 1999.  We expanded -- that is when

9    our rental fleet just blew up with aerial

10   platforms and Hi-lift equipment.

11          So we had a group that was expanding

12   that business, and they went into certain areas

13   and had design build-to-suits.  And I think

14   Charlotte was one of those.

15       Q.  Now, just for my understanding -- and

16   I've got to keep up with you.

17          The Hi-lift is rubber tired?

18       A.  It is primarily rubber-tired.  It is

19   aerial work, platform boom lifts, scissor lifts,

20   rough land forklifts, mostly rubber-tired --

21       Q.  Okay.

22       A.  -- or rubber-tracked, small utility-type

23   equipment.

24       Q.  Okay.

25       A.  So in designing this facility, it was

Exhibit 1

NON-CERTIFIED COPY

Page 114

1    aerial only at that point in time.  I'm saying

2    early 2000s, because in September of 2007, we

3    purchased a company from Mid-Atlantic called J&W

4    Burris, which was a Hitachi dealer, Komatsu

5    dealer, earth-moving dealer and also a crane

6    dealer, Grove Crane dealer and Manitowoc dealer.

7         We purchased that company and we

8    purchased a facility or had a leased facility

9    with them in Charlotte, as well, when we

10   purchased it.

11        It was not conducive to what we were

12   looking at as far as growth, so we transitioned

13   the JWB, J&W Burris operations that we purchased

14   into the Charlotte Hi-lift facility, so the

15   equipment types changed.

16   Q.  The use of the paved area changed?

17   A.  The use of the paved area changed.

18   Q.  It went from the Hi-lift to the

19   earth-moving?

20   A.  To the earth-moving.  And we recognized

21   that, and at one point in time, we put a lease

22   agreement on another facility in Charlotte,

23   which was an old John Deere construction

24   equipment dealership, primarily aggregate yard

25   and shop facility, but it was in need of a

Exhibit 1

NON-CERTIFIED COPY

Page 115

1   pretty extensive renovation.

2          And, again, that project was kind of

3   caught in the economy, as well, and we signed a

4   lease on it with the intent of renovating it.

5   And then we opted not to and then paid out the

6   lease term and left the equipment in Charlotte,

7   so --

8       Q.  All right.  Let me get this straight.

9       A.  Okay.

10      Q.  I think I understand.

11         The Charlotte facility that was and is

12  your facility is leased?

13      A.  That is correct.

14      Q.  It started off with rubber-tired

15  equipment only?

16      A.  Design build-to-suit as an aerial store,

17  yes.

18      Q.  Then after you purchased J&W Burris, you

19  moved earth-moving equipment onto that site, as

20  well?

21      A.  That is correct.

22      Q.  And that site included a paved area, as

23  well as unpaved area?

24      A.  It is primarily paved.

25      Q.  All right.  A primarily paved area.

Exhibit 1

NON-CERTIFIED COPY

Page 116

1          And so you really wanted to move that

2    earth-moving equipment to an unpaved site, but

3    that never materialized?

4        A.  That is correct.

5        Q.  And I assume you wanted to move the

6    earth-moving equipment to the unpaved site

7    because you didn't want it on the paved site.

8    Is that a fair statement?

9        A.  It was -- not on that paved site, that

10   is correct.

11       Q.  Okay.

12       A.  And the lease agreement, again, whether

13   we paved or not paved, the facility that we

14   leased that we never executed was without no --

15   we pulled out of that project before we actually

16   did any kind of design.

17       Q.  Why did you not want the earth-moving

18   equipment on the existing Charlotte paved site?

19       A.  Because it was designed as an aerial

20   store and not designed as a heavy -- for the

21   track-type equipment, the earth-moving

22   equipment.

23       Q.  What were the design ramifications?

24       A.  I don't know.  I mean, just the concrete

25   was less and --

Exhibit 1

NON-CERTIFIED COPY

Page 117

1    Q.  Okay.  And so what happened when you

2  moved that equipment on is these pictures?

3    A.  That is correct.

4    Q.  It tore up the --

5    A.  Well, it -- I can't tell you if the

6  equipment tore that up or the trucks coming in

7  and out of the gates or in and out of -- you

8  know, with loads, the heavier loads and aerial

9  equipment.

10        I mean, it could be a multitude of

11  things.  I can't verify that.  I don't even know

12  where that picture is --

13    Q.  Right.  We don't know what part of the

14  paved area?

15    A.  -- what part of the paved area it is

16  from.

17    Q.  But the H&E equipment did this to the

18  concrete?

19    A.  I would say yes.

20    Q.  When I say "H&E equipment," that would

21  include the trucks that come in?

22    A.  Carrying out all the business, right.

23    Q.  Are the trucks owned by H&E primarily?

24    A.  We do both.

25    Q.  Both?

NON-CERTIFIED COPY

Exhibit 1

Page 118

1      A.  We own a large fleet of trucks, all our

2  own equipment, and we also hired outside help.

3      Q.  Did H&E build the Charlotte site?

4      A.  No.  It would be a design build-to-suit

5  for --

6      Q.  So, it was leased?

7      A.  -- lease.  Yes.

8      Q.  Why were you presuming that the pavement

9  at the Charlotte site would not have been

10  sufficient for the earth-moving equipment?

11      A.  Because it was designed as an aerial

12  store, plus lighter activity, so that is a

13  totally different animal.

14      Q.  Are the Hi-lift pieces of equipment, do

15  they not weigh as much as any of the

16  earth-moving equipment?

17      A.  I mean, they are comparable in certain

18  areas and certain pieces, but by far, much

19  lesser.

20          I mean, there is a few select pieces

21  that may be comparable, but the majority of it

22  is very lightweight stuff.

23      Q.  Now, you said here, "Please" -- I'm

24  sorry.  You didn't say that.  Marty Emigh says

25  in May, "Please get someone out to give us a

Exhibit 1

NON-CERTIFIED COPY

Page 119

1   quote."

2       Do you recall whether that ever happened

3   and whether --

4       A.  I do.

5       Q.  Do you recall whether H&E has ever

6   repaired the concrete at the Charlotte site?

7       A.  I do not.

8       Q.  So, as you sit here, you don't know what

9   the present condition of the paved area is at

10  the Charlotte site?

11      A.  Only the photographs.

12      Q.  But do you have photographs?

13      A.  I thought we had some photographs in the

14  -- some of the discovery.

15      Q.  I didn't see any, I don't think.  We

16  will get to that --

17      A.  Yes.

18      Q.  -- when we get to the others.  Okay.

19          When you say "design build-to-suit,"

20  just so I understand, H&E really doesn't

21  participate in any of that, do they?

22      A.  No.

23      Q.  The owner does that completely and it

24  just turns over the facility to you?

25      A.  That is correct.

Exhibit 1

NON-CERTIFIED COPY

Page 120

1    Q.  But don't you have input as to what kind

2    of load requirements and things that you want at

3    that site?

4    A.  Yes.  It is very similar to the previous

5    question with the Sulphur and the Bossier City

6    sits, supplying those plans to the architect in

7    Raleigh.

8    Q.  All right.  The next exhibit is Exhibit

9    35.  It is a follow-up, as I understand it, to

10   this Email we just discussed.  It says H&E 6239.

11        Is that what you are showing at the

12   bottom?

13   A.  6239, yes.

14   Q.  Actually, this includes the prior

15   Emails, and this is a follow-up on the first

16   page, and you respond to Marty Emigh, Jason

17   Conca and Brian Gardiner.

18        What role did Brian --

19   A.  Gardiner?

20   Q.  -- Gardiner have?

21   A.  He was a service manager.

22   Q.  At the site?

23   A.  At the Charlotte facility, yes.

24   Q.  And you say, "...to do it right..." --

25        And I assume you are talking about

Exhibit 1

NON-CERTIFIED COPY

Page 121

1    fixing the concrete, right?

2         A.  Uh-huh (affirmative response).

3         Q.  -- "...you will have to cut or break out

4    the damaged areas, drill dowels to the adjacent

5    concrete and pick up the concrete psi and

6    thickness."

7             Do you see that?

8         A.  Yes.

9         Q.  "You guys need to decide if you want to

10   take a preventive measure with the sealing of

11   the cracks as a courtesy."

12            I assume you had some familiarity with

13   repairing these kinds of problems in the

14   concrete?

15        A.  I would have some familiarity, but I am

16   assuming that there were some quotes with a

17   scope of work to do that.

18            I'm backing up and I'm trying to see the

19   other Emails, what is framed and where it

20   started.

21        Q.  Take your time.

22        A.  (Witness reviewing document.)

23        Q.  I didn't see any.

24        A.  It referenced if they remove the cracked

25   concrete slab and fill the voids, they could put

Exhibit 1

NON-CERTIFIED COPY

Page 122

1    higher strength concrete.  That was Brian to

2    Marty and Jason.

3        Q.  Where are you?

4        A.  I'm on Page 3.

5        Q.  Okay.  So on Page 3, Brian is telling --

6        A.  Marty.

7        Q.  -- Marty and Jason and copying you.  He

8    said, "I had a couple of companies come out

9    about a year and a half ago, and they told me

10   that the slabs would have to come up or the

11   would have to fill the void below the concrete

12   with epoxy and then fill the cracks.  Both

13   companies said that the epoxy would be a

14   temporary fix because of the traffic that goes

15   across it.  If they removed the cracked up slabs

16   and filled the voids, they could put higher

17   strength concrete and it may last.  I will make

18   some phone calls and get some estimates."

19        What did you understand he meant by

20   "fill the void below the concrete with epoxy"?

21   Did you understand what he meant?

22       A.  No.

23       Q.  Okay.  And then there is another Email

24   from him the same day, May 3, to the same

25   people, and he says, "My only concern is

Exhibit 1

NON-CERTIFIED COPY

Page 123

1    financial implications moving forward

2    considering the direction I plan to take my

3    fleet here-specifically aggressively growing the

4    big dirt fleet."

5         That is what we are talking about with

6    this earth-moving equipment, correct?

7      A.  Correct.

8      Q.  "Even moving those machines around

9    carefully invariably will put a lot of wear and

10   tear on concrete, and it seems they are very

11   particular about the condition of their pad.

12   May have to reevaluate our fleet staging

13   strategy in-market utilizing 119 maybe a little

14   more than initially anticipated."

15        What is 119?

16     A.  That is the second branch -- the second

17   facility in Charlotte --

18     Q.  That you were --

19     A.  -- that we were potentially -- that we

20   were leasing and were going to potentially

21   renovate.

22     Q.  The aggregate base?

23     A.  That is correct.

24     Q.  "Otherwise, I" -- this is what he says.

25   "Otherwise, I foresee spending a lot of money on

NON-CERTIFIED COPY

Exhibit 1

Page 124

1   facility repair to keep the lot to their

2   standard."

3        Do you agree --

4        A.  The landlord.

5        Q.  Sir?

6        A.  The landlord standard.

7        Q.  Right.  Because the landlord didn't want

8   his concrete torn up, right?

9        A.  Correct.

10       Q.  You agree that even moving those

11  earth--moving equipment pieces around invariably

12  puts a lot of wear and tear on the concrete?

13       A.  Depending on the concrete.  If we are

14  talking specifically this facility, yes.

15       Q.  Then you respond by saying you will have

16  to cut or break out the damaged areas, drill

17  dowels, you know, et cetera, et cetera.

18       Where did you get that information from,

19  if it wasn't based on your experience?

20       A.  I don't recall where that comment came

21  from.  I mean, it is a pretty logical approach

22  to that type repair.

23       Q.  And in your experience, does picking up

24  the psi, the concrete psi and the thickness

25  solve the problem completely?

Exhibit 1

NON-CERTIFIED COPY

Page 125

1    A.  Well, you certainly have underfooting

2  and what your base conditions are, as well.  I

3  mean, that all has to be considered.

4    Q.  I guess my question is:

5        Does that prevent the damage to the

6  concrete when heavy earth-moving equipment is

7  turning on that concrete?

8    A.  I would think that would minimize the

9  wear and tear on it, yes.

10   Q.  Okay.  But does it eliminate the wear

11  and tear?

12   A.  I don't know.

13   Q.  And you don't know what thickness or

14  what specific psi would do that?

15   A.  No.

16   Q.  You would agree with me that increasing

17  the psi and thickness increases the cost?

18   A.  Yes.

19   Q.  Okay.  Let's look at Exhibit 36, which

20  is H&E 6373.  We can look at the second page,

21  which is what I want to focus on.

22       You telling Neal and Chad at URS that

23  the "Kenner project is back on the drawing board

24  and I was wondering if you guys would have a

25  little time to discuss the plan going forward."

Exhibit 1

NON-CERTIFIED COPY

Page 126

1    That is June of 2010.

2            So as of June of 2010, the economy got

3    well enough for you all to want to move forward

4    on Kenner, correct?

5            MS. MINCE:

6                Object to form.

7    EXAMINATION BY MR. FRANCO:

8        Q.  Or, is there another reason?

9        A.  I don't recall the specific reason.

10           I would say that we had done our due

11   diligence as it related to searching out another

12   facility or another piece of property to

13   construct a new facility on.

14           The costs far exceeded what we could do

15   this for.  John made the decision that he didn't

16   want to spend his money on a facility that was

17   not our own facility.

18           So I'm assuming that those activities

19   were taking place, as well as taken off the

20   drawing board, and at this time, well, then, we

21   put this back on.

22       Q.  What was the status of the Baton Rouge

23   facility at this time, do you recall, in June of

24   2010?

25       A.  I don't recall.

Exhibit 1

NON-CERTIFIED COPY

Page 127

1      Q.  So let me label this as Exhibit 37, H&E

2  3813.  That is in September of 2010, following

3  the June of 2010 Email we saw in time.

4          And Brad Barber is asking Frankie Wynn,

5  copying you, to "...please forward the cost

6  estimates we have for improvements to the Kenner

7  facility."

8          And attached, it looks like prices from

9  those prior general contractors we talked about,

10  F.H. Myers, Goutee, and Gibbs.

11          Do you see that?

12      A.  Yes.

13      Q.  If you look on this Statement of

14  Probable Cost, the site work talks about 8-inch

15  thick concrete paving and 4-inch thick concrete

16  paving, and it talks about the square footage.

17          I'm assuming that the 4-inch thick

18  concrete paving is the vehicle parking area with

19  the 13,000 and some change square footage.

20  Makes sense?

21      A.  Yes.

22      Q.  The 111,000 square feet of 8-inch looks

23  like the yard area.  Is that a fair statement?

24      A.  Fair statement.

25      Q.  Do you recall where that thickness came

Exhibit 1

NON-CERTIFIED COPY

Page 128

1    from?

2        A.  I do not.

3        Q.  Do you recall why it became 7 inches

4    instead of 8 inches at Kenner in the yard area?

5        A.  I do not.

6        Q.  Were you involved in any discussions

7    about that?

8        A.  I don't recall that, no.

9        Q.  I assume 7 inches of concrete is cheaper

10   than 8 inches of concrete?

11       A.  Depending on the psi and the slab

12   thickness.

13       Q.  But if you have the same psi --

14       A.  The same mix, it would be cheaper, yes.

15       Q.  And none of these three wound up as the

16   contractor.  We have talked about that?

17       A.  Right.

18       Q.  Do you recall why?

19       A.  I do not.

20       Q.  Let's look at the next exhibit, which is

21   38, H&E 78387.

22       A.  (Witness reviewing document.)

23       Q.  We can start on the initial Email on the

24   second page.  It is from you, October 4, 2012,

25   and it is to Rick Herdt, H-E-R-D-T.

Exhibit 1

NON-CERTIFIED COPY

Page 129

1    A.  Herdt.

2    Q.  And what position does Rick Herdt have?

3    A.  He is a branch manager in Phoenix.

4    Q.  In Phoenix.  All right.

5         In October of '12, you are asking him,

6    "See what Tymco wants for this sweeper."  Since

7    we don't have the image here, I don't know

8    exactly what it is.

9         Does this refresh your memory as to what

10   you are talking about?

11   A.  Yes.  I know exactly what it is about.

12   Q.  All right.  What was this about?

13   A.  Because the yard in Baton Rouge was

14   concrete and with the dirt and the dust

15   affiliated with our operations, we needed a

16   dustless sweeper.

17        We are a Tymco dealer in Arizona, so I

18   got on Tymco's site to look for a used sweeper

19   that was a dustless deal because of the adjacent

20   neighborhoods and businesses.

21        And because Phoenix was a -- they were a

22   dealer for the Tymco, that is why I went back to

23   these guys to get us a wholesale price on the

24   sweeper for the Baton Rouge yard.  They were a

25   fixed asset.

Exhibit 1

NON-CERTIFIED COPY

Page 130

1      Q.  Why are you still involved in that in

2  October of 2012?

3      A.  Because it is a used piece of equipment,

4  and I was in the market buying and selling used

5  at that time --

6      Q.  Okay.

7      A.  -- so they reached out to me.

8      Q.  And this was targeted for the Baton

9  Rouge site?

10     A.  Yes.

11     Q.  Why?

12     A.  Because there was a -- we needed to

13  sweep the concrete, and it was a dustless unit.

14         There is a multitude of sweepers.  Some

15  of them have collectors; some of them don't.  We

16  were needing one so that we could control the

17  dust.

18     Q.  And did the Company have any other

19  sweepers?

20     A.  We had different style sweepers around

21  the country, yes.

22     Q.  And what were they used for?

23     A.  Sweep the yards.

24     Q.  The concrete yards?

25     A.  Yes.

Exhibit 1

NON-CERTIFIED COPY

Page 131

1      Q.  Was there a particular period of time

2   when those sweepers were supposed to sweep the

3   yards?

4      A.  I don't know.

5         MS. MINCE:

6             Object to the form.

7         THE WITNESS:

8             I don't know.

9   EXAMINATION BY MR. FRANCO:

10     Q.  Who was in charge of regulating the

11  maintenance of the yards at H&E?

12     A.  The branch managers were responsible for

13  their facility.

14     Q.  Then the follow-up was a response that

15  said, "This is a sweeper designed for extreme

16  conditions."

17         Did he suggest a different sweeper?  I'm

18  sorry.  Your response was, "It will be utilized

19  in extreme conditions?"

20         Do you see that?

21     A.  Uh-huh (affirmative response).  Yes.

22     Q.  And you are referencing Baton Rouge

23  here, right?

24     A.  Correct.

25     Q.  You are saying it is "A high volume dirt

Exhibit 1

NON-CERTIFIED COPY

Page 132

1    store..."  what did you mean by that?

2        A.  That it had a fair amount of

3    earth-moving equipment coming in and out of it,

4    which Phoenix would have no idea.  They -- it is

5    not their -- it is a different style branch,

6    so --

7        Q.  All right.  And you say here, "Meant to

8    include there will be approximately 10 acres of

9    concrete sitting next to the new corporate

10   office that will need to stay clean and swept."

11   Right?

12       A.  Yes.

13       Q.  So I assume there were two reasons you

14   wanted that to be kept clean and swept.  One, to

15   prevent damage to the concrete, I assume.  Is

16   that a fair statement or --

17       A.  More aesthetics and dust control.

18       Q.  Okay.  So because it was next to this

19   public company's corporate headquarters, you

20   wanted it to stay dustless?

21       A.  Absolutely.  Well, that and the

22   neighborhood adjacent to us and the buildings,

23   the offices and businesses behind us.

24       Q.  So the primary purpose, at least in your

25   mind, was to prevent the dust from interfering

Exhibit 1

NON-CERTIFIED COPY

Page 133

1    with the corporate headquarters?

2        A.  The neighborhood, primarily.

3        Q.  And the neighborhood?

4        A.  Yeah.  The neighborhoods and businesses

5    surrounding us.

6        Q.  What about keeping the concrete clean?

7        A.  Yes.  Aesthetically, that is what I'm

8    saying.

9        Q.  But you are talking about aesthetically.

10   What about with respect to the damage that the

11   gravel and dirt and whatever can cause to the

12   concrete?  Were you concerned about that at all?

13       A.  I had no concern at all.  My

14   responsibility in this was to find a sweeper

15   that worked on ten acres of concrete, so that

16   was my involvement at this time.

17           I reached out to Chris Cimini, which is

18   a Tymco rep, kind of gave him the ideas and to

19   spec us a unit, to spec a unit for that store.

20           And then, after further clarification

21   and some conversations with him, we opted to go

22   with a dustless unit, which was the DST.  And I

23   bought a used machine from Tymco for about

24   $110,000.

25       Q.  What does "DST" stand for?  Dustless?

Exhibit 1

NON-CERTIFIED COPY

Page 134

1    A.  Dustless, yes.  It is dustless, that is

2    correct.

3    Q.  All right.

4    A.  I don't know what the -- what is the

5    actual --

6    Q.  And I heard you say you were obviously

7    concerned about the aesthetics and the dust.

8    A.  Uh-huh (affirmative response).

9    Q.  Were you concerned about the rocks and

10   gravel that these earth-moving pieces of

11   equipment would drop onto the concrete?

12   A.  I had no concern at all.  I was

13   procuring a piece of fixed assets.  That was my

14   job at that point.

15   Q.  All right.  Did anybody from URS or the

16   contractors have any communications with you

17   about making sure you maintain your concrete

18   properly?

19   A.  Not that I'm aware of.

20   Q.  Were you involved in purchasing a second

21   dustless sweeper for Kenner?

22   A.  Yes.

23   Q.  When did that happen?

24   A.  I'm not sure.  I'm not totally sure on

25   that.

**Exhibit 1**

NON-CERTIFIED COPY

Page 135

1      Q.  Was it just recently?

2      A.  No.  Let me back up.

3          I know I inquired and researched and

4      looked and gave them some comparisons to the

5      Baton Rouge sweeper, but I'm not sure where we

6      ended up.

7      Q.  What about one for New Orleans?

8      A.  No.

9      Q.  You weren't involved?

10     A.  I wasn't involved, no.

11     Q.  Do you know, as you sit here, whether

12     there is a sweeper at the New Orleans site?

13     A.  I do not.

14     Q.  Do you know, as you sit here, whether

15     there is a sweeper at the Kenner site?

16     A.  I'm not totally sure, no.

17     Q.  Those two sites are not near

18     neighborhoods, are they?

19     A.  I've never been to the --

20     Q.  New Orleans?

21     A.  -- New Orleans site.

22     Q.  Kenner is not?

23     A.  Kenner is not.  There is a couple of

24     houses.  They are next door primarily to

25     businesses.

Exhibit 1

NON-CERTIFIED COPY

Page 136

1       Q.  And you say you have never been to the

2    New Orleans site?

3       A.  No.

4       Q.  How many paved facilities, yard

5    facilities, does H&E have?

6           MS. MINCE:

7               Object to the form.

8           THE WITNESS:

9               I don't know.

10   EXAMINATION BY MR. FRANCO:

11      Q.  Is it over 50?

12          Let me go back and ask it this way:  How

13   many facilities, yard facilities does H&E have?

14      A.  Around 76.

15      Q.  That is what I recall.

16      A.  Yeah.

17      Q.  And of those facilities, do you know how

18   many of those roughly involved paved facilities

19   at the apron or yard?

20      A.  "Paved" meaning concrete --

21      Q.  Yes.

22      A.  -- or asphalt?

23      Q.  Paved, concrete.

24      A.  Concrete, I do not know specifically.

25      Q.  You wouldn't even know a range?  Is it

Exhibit 1

NON-CERTIFIED COPY

Page 137

1   over 50?  Is it under 50?

2       A.  I couldn't speculate on that.

3       Q.  Okay.  Do you know how many sweepers

4   they have?

5       A.  No.

6       Q.  Have you had any discussions about using

7   rubber guards on the tracks of the earth-moving

8   equipment at the sites?

9       A.  No.

10      Q.  Any knowledge about any companies that

11  use rubber guards on the tracks?

12      A.  Never heard of them.

13      Q.  All right.

14          MR. FRANCO:

15              If you give me a couple of minutes,

16  we may be finished this part of the deposition,

17  and then we can eat lunch and then we will move

18  on to the other one.

19          THE WITNESS:

20              Sure.

21      (Recess held.)

22          MR. FRANCO:

23              Mr. St. Germain, I have no further

24  questions at this time, sir.  Thank you very

25  much.

Exhibit 1

NON-CERTIFIED COPY

Page 138

1           Your attorney may have some

2    questions.

3           Wait.  I'm sorry.  I do have a

4    question.

5    EXAMINATION BY MR. FRANCO:

6       Q.  During the break, did you talk about

7    this case with your lawyer?

8       A.  Yes.

9       Q.  Can you tell me what you discussed?

10      A.  Some of her questions.

11      Q.  What questions did she ask you?

12      A.  Her potential questions about the

13   contract in Kenner.

14      Q.  What about it?  What did she ask you?

15      A.  Just my concern.

16      Q.  What concern did you express?

17      A.  That the signature on the agreement was

18   for $20,000, and so I didn't have a huge concern

19   with that contract.

20      Q.  Were you involved with the work orders

21   that were issued subsequent to that agreement,

22   based on that agreement, sir?

23      A.  The work orders --

24      Q.  You remember that there was a work order

25   that you executed initially?

Exhibit 1

NON-CERTIFIED COPY

1      A.  For the design and scope, right.

2      Q.  Correct.

3      A.  That is the document I'm referencing.

4      Q.  Right.  Do you know that Mr. Wynn

5  executed work orders that were subject to that

6  same 2009 agreement subsequent to that?

7          MS. MINCE:

8              Object to the form.

9          THE WITNESS:

10             Not -- I would assume he would.

11  That would have been his job, yes.

12  EXAMINATION BY MR. FRANCO:

13     Q.  But you weren't involved in that?

14     A.  That is correct.  Yes.

15     Q.  What else did you discuss with Counsel?

16     A.  That was it.

17     Q.  Okay.

18         MR. FRANCO:

19             Thank you.

20             I have no further questions at this

21  time.

22  EXAMINATION BY MS. MINCE:

23     Q.  All right.  I'm going to show you

24  Exhibit 26 that you have looked at previously.

25             This is the correspondence related to

Exhibit 1

NON-CERTIFIED COPY

Page 140

1    the 2009 Short Form Master Agreement, correct?

2        A.  Yes.

3        Q.  And you executed this agreement,

4    correct?

5        A.  Yes.

6        Q.  And at the time you executed this

7    agreement, did you have an understanding of what

8    this agreement covered?

9        A.  Yes.

10       Q.  Tell me what that was.

11       A.  It was the scope of work developing

12   drawings for the existing site and buildings,

13   for review of the existing truck traffic, and

14   evaluate the condition of all the exterior

15   roofs, walls, buildings and the attachment to

16   it.

17       Q.  What was the amount of the contract?

18       A.  $20,000.

19       Q.  This occurred in August of 2009.

20           As of August 2009, can you describe what

21   the transition process was between you and

22   Frankie Wynn?

23       A.  It was -- it was -- as you can see, it

24   took a pretty long amount of time trying to

25   replace my position, and we were not having much

Exhibit 1

NON-CERTIFIED COPY

Page 141

1    luck at it.

2         So as time got -- drug on, I started

3    making recommendations of people to take certain

4    responsibilities in areas of my job, and Frankie

5    was one.  He was familiar with the contracts and

6    the leases, et cetera.

7         So my belief here is I executed that

8    document.  We were in transition.  Frankie, at

9    that time, did not have a corporate resolution.

10   So the due diligence, which I know I would have

11   done, going to our Counsel at that time, getting

12   the recommendations, Frankie probably

13   spearheaded that process, came back to me, and I

14   verified it and inked the contract.

15       Q.  Okay.

16           MS. MINCE:

17               That is all I have.

18           MR. FRANCO:

19               I have some follow-up.

20   EXAMINATION BY MR. FRANCO:

21       Q.  Can you look at Exhibit 27 that your

22   Counsel has in her hands?

23       A.  (Witness reviewing document.)

24       Q.  Sir, you understand the consequences of

25   executing a contract, don't you?

Exhibit 1

NON-CERTIFIED COPY

Page 142

1    A.  Yes.

2    Q.  Look at Paragraph 1.2 on the first page.

3  Do you see it?

4    A.  Yes.

5    Q.  Would you read the last sentence of --

6  hold on.  I'm sorry.  It is Paragraph 1.1.

7  Would you read the last sentence of that for me,

8  please, into the Record?

9    A.  "Each duly executed Work Authorization

10  shall be subject to the terms and conditions of

11  this Agreement, except to the extent expressly

12  modified by the Work Authorization."

13    Q.  And you were not the one who was

14  involved in subsequent work orders that were

15  executed on behalf of H&E for additional work

16  after the first one that you executed, correct?

17    A.  That is correct.

18    Q.  And Frankie Wynn took over basically

19  your duties and responsibilities as director of

20  facilities?

21    A.  That was a piece of it, yes.  Yes.

22    MR. FRANCO:

23      All right.  Thank you.  That is all

24  the questions I have.

25    MS. MINCE:

Exhibit 1

NON-CERTIFIED COPY

Page 143

1            I have nothing further.

2        MR. FRANCO:

3            All right.

4        (Whereupon, the deposition was concluded

5    at 1:20 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 1

NON-CERTIFIED COPY

Page 144

1                   WITNESS' ATTESTATION

2          I have read or have had the foregoing

3    testimony read to me, pursuant to Rule 30(e) of

4    the Federal Rules of Civil Procedure and/or

5    Article 1445 of the Louisiana Code Civil

6    Procedure, and hereby attest that, to the best

7    of my ability and understanding, it is a true

8    and correct transcription of my testimony, with

9    the exception of any attached corrections or

10   changes, complete with reasons for changes, on

11   the Witness' Amendment Pages;

12          I have in no way altered the printed

13   transcript pages containing testimony herein,

14   tampered with the seal on the last numbered page

15   herein, or tampered with the security strip on

16   the binder hereof.  The integrity of this

17   certified transcript has been maintained in the

18   identical form as it was received by me, with

19   the exception of any changes on the Witness'

20   Amendment Pages.

21

22   Date

23

24          _____
             LEONARD C. ST. GERMAIN
25                  (Signature)

NON-CERTIFIED COPY

Exhibit 1

Page 145

1               REPORTER'S PAGE

2          I, KAY E. DONNELLY, Certified Court

3    Reporter in and for the State of Louisiana, the

4    officer, as defined in Rule 28 of the Federal

5    Rules of Civil Procedure and/or Article 1434(B)

6    of the Louisiana Code of Civil Procedure, before

7    whom this proceeding was taken, do hereby state

8    on the Record:

9          That due to the interaction in the

10   spontaneous discourse of this proceeding, dashes

11   (--) have been used to indicate pauses, changes

12   in thought, and/or talkovers; that same is the

13   proper method for a Court Reporter's

14   transcription of proceeding, and that the dashes

15   (--) do not indicate that words or phrases have

16   been left out of this transcript;

17         That any words and/or names which could

18   not be verified through reference material have

19   been denoted with the phrased "(spelled

20   phonetically)."

21

22                    _____
                      KAY E. DONNELLY
                      Certified Court Reporter
23                    State of Louisiana
                      Certificate No. 87008

24

25

NON-CERTIFIED COPY

Exhibit 1

Page 146

```
 1              C E R T I F I C A T E
 2        This certification is valid only for a
          transcript accompanied by my original signature
 3        and original required seal on this page.
          I, KAY E. DONNELLY, Certified Court
 4        Reporter in and for the State of Louisiana, as
          the officer before whom this testimony was
 5        taken, do hereby certify that LEONARD C. ST.
          GERMAIN, to whom oath was administered, after
 6        having been duly sworn by me upon authority of
          R.S. 37:2554, did testify as hereinbefore set
 7        forth in the foregoing one hundred forty-five
          (145) pages; that this testimony was reported by
 8        me in the stenotype reporting method, was
          prepared and transcribed by me or under my
 9        personal direction and supervision, and is a
          true and correct transcript to the best of my
10        ability and understanding; that the transcript
          has been prepared in compliance with transcript
11        format guidelines required by statute or by
          rules of the board; and that I am informed about
12        the complete arrangement, financial or
          otherwise, with the person or entity making
13        arrangements for deposition services; that I
          have acted in compliance with the prohibition on
14        contractual relationships, as defined by
          Louisiana Code of Civil Procedure Article 1434
15        and in rules and advisory opinions of the board;
          that I have no actual acknowledge of any
16        prohibited employment or contractual
          relationship, direct or indirect, between a
17        court reporting firm and any party litigant in
          this matter nor is there any such relationship
18        between myself and a party litigant in this
          matter.  I am not related to counsel or to the
19        parties herein, nor am I otherwise interested in
          the outcome of this matter.
20
21
22        _____
          KAY E. DONNELLY
23        Certified Court Reporter
          State of Louisiana
24        Certificate No. 87008
          September 2, 2016
25
```

Exhibit 1

NON-CERTIFIED COPY



**URS**

forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.

4.2    THE WARRANTY SET FORTH IN THIS ARTICLE 4 IS EXCLUSIVE, AND IN LIEU OF ANY AND ALL OTHER WARRANTIES RELATING TO THE SERVICES, WHETHER STATUTORY, EXPRESS OR IMPLIED, AND CONSULTANT DISCLAIMS ANY SUCH OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE AND ANY AND ALL WARRANTIES ARISING FROM COURSE OF DEALING AND/OR USAGE OF TRADE. ANY OTHER STATEMENTS OF FACT OR DESCRIPTIONS EXPRESSED IN THE AGREEMENT OR ANY WORK AUTHORIZATION SHALL NOT BE DEEMED TO CONSTITUTE A WARRANTY OF THE SERVICES OR ANY PART THEREOF. CONSULTANT'S REPERFORMANCE OF DEFECTIVE OR NON-CONFORMING SERVICES THROUGH THE ONE YEAR PERIOD PROVIDED FOR IN THIS ARTICLE 4 SHALL CONSTITUTE COMPLETE FULFILLMENT OF, AND CLIENT'S EXCLUSIVE REMEDY FOR, ALL THE LIABILITIES OR RESPONSIBILITIES OF CONSULTANT TO CLIENT FOR NON-CONFORMING OR DEFECTIVE SERVICES, WHETHER THE CLAIMS OF CLIENT ARE BASED ON DELAY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, WARRANTY, INDEMNITY, ERROR AND OMISSION OR ANY OTHER CAUSE WHATSOEVER.

5.    WORK BY OTHERS

5.1    The performance by Consultant of Services under a Work Authorization shall not constitute an assumption by Consultant of the obligations of Client or its other contractors. Consultant shall not control or have charge of, and shall not be responsible for, construction means, methods, techniques, sequences, procedures of construction, health or safety programs, or precautions connected with the work of Client or its other contractors, and shall not manage, supervise, control or have charge of construction. Client shall require Consultant to be named as an additional insured along with Client on any liability insurance policies provided by Client's construction contractors. To the fullest extent permitted by law, Client shall defend Consultant against any claim, suit or proceeding asserted by one of its other contractors and indemnify, defend and save Consultant harmless from any and all actual or alleged claims and losses (including, without limitation, attorney's fees) sustained by such contractor in connection with the Services, regardless or whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

6.    INSURANCE

6.1    In the event Consultant performs Services under any Work Authorization in connection with a project for which Client or another party with which Client has contracted obtains all-risk or builder's risk property insurance, Client, as the case may be, shall name, or shall cause such other party to name, Consultant as an additional insured on such all risk or builder's risk property insurance. Client acknowledges that Consultant has an insurable interest in such all risk or builder's risk property insurance.

6.2    Consultant and Client each waive all rights of recovery and subrogation against each other with respect to a loss occurring to property of the other, to the extent that such waivers do not invalidate the property insurance of either.

7.    INDEMNITY

7.1    Each Party shall indemnify, defend and save the other Party, its officers, directors, employees and affiliates harmless from any loss, cost or expense claimed by third parties, excluding employees of either Party, for property damage and/or bodily injury, including death, to the proportionate extent such loss, cost or expense arises from the negligence or willful misconduct of the indemnifying Party, its employees or affiliates in connection with the Services.

7.2    Notwithstanding any other provision contained elsewhere in this Agreement to the contrary and to the fullest extent permitted by law, Client shall be liable for and indemnify, defend and save Consultant, its officers, directors, employees and affiliates harmless from and against any and all actual or alleged claims, damages (including incidental, consequential, indirect and special damages), losses, and expenses (including, without limitation, all penalties, attorney's fees, fines and administrative or civil sanctions arising out of or related to such claim) (collectively "Losses") arising out of: (1) economic loss suffered by third parties; and/or (2) investment decisions of Client or third parties in reliance upon the results of the Services, regardless of whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

7.3    The indemnity and save harmless obligations of Consultant and Client under this Article 7 shall not apply with respect to any Hazardous Material, as Consultant's and Client's rights and obligations with respect thereto are set forth in Article 10.

8.    WAIVER OF CONSEQUENTIAL DAMAGES

8.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, neither Client nor Consultant shall be liable, whether based on contract, tort, negligence, strict liability, warranty, indemnity, error and omission or any other cause whatsoever, for any consequential, special, incidental, indirect, punitive or exemplary damages, or damages arising from or in connection with loss of power, loss of use, loss of revenue or profit (actual or anticipated), loss by reason of shutdown or non-operation, increased cost of construction, cost of capital, cost of replacement power or customer claims, and Consultant hereby releases Client and Client hereby releases Consultant from any such liability.

9.    LIMITATION OF LIABILITY

9.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, in no

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

2

NON-CERTIFIED COPY

Exhibit 1



**URS**

event shall the total cumulative aggregate liability of Consultant, its subconsultants, and their respective partners, officers, directors, shareholders, employees, and agents (referred to collectively in this Article as "Consultant") to Client resulting from, arising out of or in connection with the performance or nonperformance of any or all Services or other obligations under a Work Authorization, exceed $250,000 or ten percent (10%) of the compensation paid Consultant pursuant to such Work Authorization, whichever is greater, or extend beyond the expiration of the warranty period under Article 4 for the Services performed under the Work Authorization, regardless of the legal theory under which such liability is imposed. The remedies stated in the Agreement are Client's sole and exclusive remedies for any failure by Consultant to comply with obligations to Client, and Client hereby irrevocably waives any right to assert a claim against Consultant based on a legal theory that a remedy provided herein fails of its essential purpose.

10.    HAZARDOUS MATERIAL

10.1    Nothing in this Agreement shall be construed or interpreted as requiring Consultant to assume the status of, and Client acknowledges that Consultant does not act in the capacity nor assume the status of, Client or others as a "generator," "operator," "transporter," or "arranger" in the treatment, storage, disposal, or transportation of any hazardous substance or waste as those terms are understood within the meaning of the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or any other similar federal, state, or local law, regulation, or ordinance. Client acknowledges further that Consultant has played no part in and assumes no responsibility for generation or creation of any hazardous waste, pollution condition, nuisance, or chemical or industrial disposal problem, if any, which may exist at any site that may be the subject matter of any Work Authorization.

10.2    It is acknowledged by both parties that the Services do not include services related to regulated substances, pollutants, or hazardous or toxic wastes ("Hazardous Material"). In the event Consultant or any other party encounters undisclosed Hazardous Materials, Consultant shall notify Client and, to the extent required by law or regulation, the appropriate governmental officials, and Consultant may, at its option and without liability for delay, consequential or any other damages to Client, suspend performance of Services on that portion of the project affected by Hazardous Material until Client: (i) retains appropriate specialist consultant(s) or contractor(s) to identify and, as appropriate, abate, remediate, or remove the Hazardous material; and (ii) warrants that the project site is in full compliance with all applicable laws and regulations. Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, Client shall indemnify, defend and save Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers, directors of any of the foregoing, if any, from and against any and all Losses which arise out of the performance of the Services and relating to the regulation and/or protection of the environment, including, without limitation, Losses incurred in connection with characterization, handling, transportation, storage, removal, remediation, disturbance or disposal of Hazardous Material, whether above or below ground and not brought to a Client site or other proposed project site by Consultant in the performance of the Services without Client's approval.

11.    CHANGES

11.1    The Parties may from time to time by mutual agreement seek to modify, extend or enlarge the Services under a Work Authorization ("Modification"). In the event the Parties agree to a Modification to add additional Services, or to make other modifications to the Services, Consultant's compensation, the schedule and any other relevant terms and conditions of the applicable Work Authorization shall be equitably adjusted prior to performance of such Services.

12.    OWNERSHIP OF DOCUMENTS

12.1    Consultant grants to Client a transferable, irrevocable and perpetual royalty-free license to retain and use all work products delivered to Client for any purpose in connection with the project specified in each Work Authorization, upon full payment by Client for Consultant's Services. Client also may use such work product for other purposes with Consultant's written consent. Re-use of any such work product by Client on any extension of the project or on any other project without the written authorization of Consultant shall be at Client's sole risk and Client shall indemnify, defend and save Consultant and its affiliates, consultants, agents, subcontractors and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such re-use. Consultant shall have the right to retain copies of all such work product. Consultant retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

13.    TERMINATION/SUSPENSION

13.1    Client may terminate all or any portion of the Services under one or more Work Authorizations for convenience, at its option, by sending a written notice to Consultant. Either party can terminate this Agreement or a Work Authorization for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a notice of termination, unless a later date is specified in the notice. The notice of termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay Consultant upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. Any suspension of Services by Client shall result in an equitable adjustment to Consultant's compensation, time for performance, or any of its other obligations under a Work Authorization.

14.    FORCE MAJEURE

14.1    Any delay or failure of Consultant in performing its required obligations hereunder shall be excused if and to the extent such delay or failure is caused by a Force Majeure Event. A "Force Majeure Event" means an event due to any cause or causes beyond the reasonable control of Consultant and shall include, but not be limited to, acts of God, strike, labor dispute fire, storm, flood, windstorm, unusually severe weather, sabotage, embargo,

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

3

**Exhibit 1**

NON-CERTIFIED COPY



**URS**

## SHORT FORM MASTER AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### H&E Equipment Services, Inc.
### AND
### URS Corporation Architecture PC

THIS AGREEMENT ("Agreement") for Professional Services, (together with the attachments hereto) dated and effective as of August 13, 2009 (the "Effective Date"), is hereby made and entered into by and between H&E Equipment Services, Inc., a Delaware corporation, (hereinafter "Client") having a place of business located at 11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816 and URS Corporation Architecture PC, a North Carolina corporation (hereinafter "Consultant") having a place of business located at 7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806 Consultant and Client are each individually referred to as a "Party" and collectively as the "Parties".

The Parties agree as follows:

**1.    WORK AUTHORIZATIONS**

1.1    Consultant agrees to undertake and perform certain consulting and professional engineering services ("Services") in accordance with the terms and conditions contained herein, as may be requested by Client from time to time. The Services to be performed, Consultant's compensation, and the schedule for performance for each task shall be described in one or more authorizations issued to Consultant by Client, the form of which is attached hereto as Attachment 1 ("Work Authorization"). A Work Authorization shall be valid and binding upon the Parties only if accepted in writing by Client and Consultant. Each duly executed Work Authorization shall be subject to the terms and conditions of this Agreement, except to the extent expressly modified by the Work Authorization.

1.2    It is the expressed intent of the parties that this Agreement shall be made available to subsidiaries and affiliated companies of Consultant. For the purposes of this Agreement, as it applies to each Work Authorization, the term "Consultant" shall mean either Consultant as defined above or the subsidiary or affiliate of Consultant identified in the Work Authorization. The applicable Work Authorization shall clearly identify the legal name of the entity accepting the Work Authorization.

**2.    PAYMENTS FOR SERVICES**

2.1    Unless otherwise stated in a Work Authorization, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not received within thirty (30) days from the due date of such payment, **Consultant may suspend further performance under one or more Work Authorizations until payments are current.** Client shall notify URS of any **disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection**, and promptly pay the undisputed amount. Client shall **pay an additional charge of one percent (1%) per month or the maximum percentage allowed** by law, whichever is the lesser, for any past due amount. In the event of a legal action for invoice amounts not **paid, attorneys' fees, court costs, and** other related expenses shall be paid to the prevailing party.

2.2    Client shall reimburse Consultant for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of Consultant's Services. For the purpose of this Article such taxes shall not include taxes imposed on Consultant's net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid Consultant under the applicable Work Authorization.

2.3    Where charges are "not to exceed" a specified sum, Consultant shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum. If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded. Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established, or other circumstances beyond URS control, shall be a basis for equitable adjustments in the budget and schedule.

**3.    CONFIDENTIALITY**

3.1    For a period commencing with the disclosure of any confidential information under this Agreement and/or a Work Authorization(s) and ending on the second anniversary such disclosure was first made, Consultant and Client each agree not to disclose to third parties, including also subcontractors and vendors (unless such subcontractors and vendors have a need to know and are bound to similar obligations of confidentiality), any information that is identified as confidential in writing on the materials made available to the other Party hereunder

**4.    WARRANTY**

4.1    Consultant warrants that any consulting and professional engineering Services performed by it under a Work Authorization shall be performed in accordance with that degree of care and skill ordinarily exercised by members of Consultant's profession practicing at the same time in the same location. Consultant's sole liability to Client for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by Client to Consultant. Consultant's obligation for re-performance of non-conforming Services as set

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

*[handwritten: S7. Gehhwatn]*
EXHIBIT NO. 27
K. DONNELLY    **Exhibit 1**

NON-CERTIFIED COPY

# URS

terrorism, energy shortage, accidents·or delay in transportation, **accidents in the handling and rigging of heavy equipment, explosion, riot, war, court injunction or order, delays by acts or orders of any governmental body or changes in laws or government regulations or the interpretations or application thereof or the acts or omissions of the Client or its other contractors, vendors or suppliers. In the event of a Force Majeure Event, Consultant shall receive an equitable adjustment extending Consultant's time for performance for such Services sufficient to overcome the effects of any delay, and an increase(s) to Consultant's compensation sufficient to account for any increased cost in performance or loss or damage suffered by Consultant.**

15.    **RESPONSIBILITIES OF CLIENT**

15.1    **Without limiting any express or implied obligations of Client under applicable law, Client shall: (1) provide Consultant, in writing, all information relating to Client's requirements for the project; (2) correctly identify to Consultant the location of subsurface structures, such as pipes, tanks, cables, and utilities; (3) notify Consultant of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give Consultant prompt written notice of any suspected deficiency in the Services; (5) with reasonable promptness, provide required approvals and decisions; and (6) furnish or cause to be furnished to Consultant full, unrestricted and legal access to, and use of, the site and all necessary rights of way and easements, in order to perform the Services. In the event Consultant is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and Consultant is not a party, Client shall pay Consultant for any time and expenses required in connection therewith, including reasonable attorney's fees.**

15.2    Consultant may rely upon and use in the performance of any Services information supplied to it by Client without independent verification and Consultant shall not be responsible for defects in its Services attributable to its reliance upon or use of such information.

17.    **TERM**

17.1    Unless otherwise specified, the term of this Agreement shall run from the Effective Date until Consultant has completed the Services and received all payments due under the Agreement.

18.    **GENERAL**

18.1    **Client and Consultant each represent and warrant that this Agreement has been duly authorized, executed and delivered and constitutes its binding agreement enforceable against it. This Agreement and any executed Work Authorizations supersede all prior written and/or oral contracts and agreements that may have been made or entered into between Client and Consultant regarding the subject matter hereof, including but not limited to any and all proposals, oral or written, and all communications between the Parties relating to this Agreement or any Work Authorization(s), and constitute the entire agreement between the Parties hereto with respect to the subject matter hereof.**

18.2    This Agreement and Work Authorization(s) may not be assigned by Consultant or Client in any way, including by operation of law, unless otherwise mutually agreed to in writing, any such attempted non-authorized assignment shall be null and void and of no force or effect.

18.3    Any cost opinions or estimates provided by Consultant will be on a **basis of experience and judgment, but since Consultant has no control over** market conditions or bidding procedures, Consultant cannot and does not **warrant that bids, ultimate construction cost, or project economics will not** vary from such opinions or estimates. **Neither this Agreement nor any of the Services provided hereunder shall constitute or provide for, and Consultant shall not be considered to have rendered, any legal or financial opinion(s) regarding the feasibility of this project or any other or regarding any other matter. Unless otherwise expressly included in a Work Authorization, Consultant shall under no circumstances provide as part of the Services a consent, opinion or similar document, or act as a qualified person or expert, in connection with any filing by Client with the United States** Securities and Exchange Commission, or similar non-United States agency, authority or commission.

18.4    Notices shall be effective hereunder as follows only if in writing and addressed to the authorized representative designated·in applicable Work Authorizations: (1) upon delivery, if delivered personally to the person; (2) upon transmission, if transmitted to the facsimile number of the person; and (3) upon posting, if by first class or overnight mail (postage prepaid).

18.5    All contract issues and matters of law will be adjudicated in accordance with the laws of the state where the project is located, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction; provided, however that if the project is located outside the United States, the laws of the State of California shall govern. Venue for any litigation shall be any state court or United States District Court having jurisdiction over the parties and subject matter.

18.6    **The terms and conditions of this Agreement shall prevail, notwithstanding any variance with any purchase order or other written instrument submitted by Client whether formally rejected by Consultant or not. This Agreement may be modified only by amendment when signed by each Party. In the event that any one or more of the provisions of this Agreement shall be found to be illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and such term or provision shall be deemed stricken to the extent and in the jurisdictions necessary for** compliance with applicable law.

18.7    Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Client or Consultant.

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

4

Exhibit 1

NON-CERTIFIED COPY



18.8    The headings in this Agreement are for convenience only, and shall not affect the interpretation hereof. The terms "hereof", "herein," "hereto" and similar words refer to the entire Agreement and not to any particular Article, Section, Attachment, Exhibit or any other subdivision of this Agreement. References to "day" or "days" shall mean calendar days unless specified otherwise.

18.9    The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including, but not limited to, indemnities and any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

18.10   It is understood and agreed that any delay, waiver or omission by Consultant or Client to exercise any right or power arising from any breach or default by Client or Consultant in any of the terms, provisions or covenants of this Agreement or any Work Authorization shall not be construed to be a waiver by Consultant or Client of any subsequent breach or default of the same or other terms, provisions or covenants on the part of Consultant or Client.

19.     **ATTACHMENTS AND EXHIBITS**

The following attachments and exhibits, which are attached hereto, are part of this Agreement.

Attachment 1 – Work Authorization

Attachment 2 – Fee Proposal, Scope of Work, Schedule

Attachment 3 – URS 2009 Schedule of Fees and Charges

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, effective as of the day and year first above mentioned.


**H&E Equipment Services, Inc.**

By: _____
     (Signature)

Name: _____
       (Printed)

Title: _____


**URS Corporation Architecture PC**

By: _____
     (Signature)

Name: _____
       (Printed)

Title: _____


I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

5

Exhibit 1

NON-CERTIFIED COPY



### SHORT FORM MASTER AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### H&E Equipment Services, Inc.
### AND
### URS Corporation Architecture PC

**THIS AGREEMENT** ("Agreement") for Professional Services, (together with the attachments hereto) dated and effective as of August 13, 2009 (the "Effective Date"), is hereby made and entered into by and between H&E Equipment Services, Inc., a Delaware corporation, (hereinafter "Client") having a place of business located at 11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816 and URS Corporation Architecture PC, a North Carolina corporation (hereinafter "Consultant") having a place of business located at 7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806 Consultant and Client are each individually referred to as a "Party" and collectively as the "Parties".

The Parties agree as follows:

**1.    WORK AUTHORIZATIONS**

1.1    Consultant agrees to undertake and perform certain consulting and professional engineering services ("Services") in accordance with the terms and conditions contained herein, as may be requested by Client from time to time.  The Services to be performed, Consultant's compensation, and the schedule for performance for each task shall be described in one or more authorizations issued to Consultant by Client, the form of which is attached hereto as Attachment 1 ("Work Authorization").  A Work Authorization shall be valid and binding upon the Parties only if accepted in writing by Client and Consultant.  Each duly executed Work Authorization shall be subject to the terms and conditions of this Agreement, except to the extent expressly modified by the Work Authorization.

1.2    It is the expressed intent of the parties that this Agreement shall be made available to subsidiaries and affiliated companies of Consultant.  For the purposes of this Agreement, as it applies to each Work Authorization, the term "Consultant" shall mean either Consultant as defined above or the subsidiary or affiliate of Consultant identified in the Work Authorization.  The applicable Work Authorization shall clearly identify the legal name of the entity accepting the Work Authorization.

**2.    PAYMENTS FOR SERVICES**

2.1    Unless otherwise stated in a Work Authorization, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed.  Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice.  If payment is not received within thirty (30) days from the due date of such payment, Consultant may suspend further performance under one or more Work Authorizations until payments are current.  Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount.  Client shall pay an additional charge of one percent (1%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount.  In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

2.2    Client shall reimburse Consultant for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of Consultant's Services.  For the purpose of this Article such taxes shall not include taxes imposed on Consultant's net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled.  It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid Consultant under the applicable Work Authorization.

2.3    Where charges are "not to exceed" a specified sum, Consultant shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum.  If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded.  Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established, or other circumstances beyond URS control, shall be a basis for equitable adjustments in the budget and schedule.

**3.    CONFIDENTIALITY**

3.1    For a period commencing with the disclosure of any confidential information under this Agreement and/or a Work Authorization(s) and ending on the second anniversary such disclosure was first made, Consultant and Client each agree not to disclose to third parties, including also subcontractors and vendors (unless such subcontractors and vendors have a need to know and are bound to similar obligations of confidentiality), any information that is identified as confidential in writing on the materials made available to the other Party hereunder

**4.    WARRANTY**

4.1    Consultant warrants that any consulting and professional engineering Services performed by it under a Work Authorization shall be performed in accordance with that degree of care and skill ordinarily exercised by members of Consultant's profession practicing at the same time in the same location.  Consultant's sole liability to Client for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by Client to Consultant.  Consultant's obligation for re-performance of non-conforming Services as set

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

**Exhibit 2**

**Attachment 1**

NON-CERTIFIED COPY



forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.

4.2    THE WARRANTY SET FORTH IN THIS ARTICLE 4 IS EXCLUSIVE, AND IN LIEU OF ANY AND ALL OTHER WARRANTIES RELATING TO THE SERVICES, WHETHER STATUTORY, EXPRESS OR IMPLIED, AND CONSULTANT DISCLAIMS ANY SUCH OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE AND ANY AND ALL WARRANTIES ARISING FROM COURSE OF DEALING AND/OR USAGE OF TRADE. ANY OTHER STATEMENTS OF FACT OR DESCRIPTIONS EXPRESSED IN THE AGREEMENT OR ANY WORK AUTHORIZATION SHALL NOT BE DEEMED TO CONSTITUTE A WARRANTY OF THE SERVICES OR ANY PART THEREOF. CONSULTANT'S REPERFORMANCE OF DEFECTIVE OR NON-CONFORMING SERVICES THROUGH THE ONE YEAR PERIOD PROVIDED FOR IN THIS ARTICLE 4 SHALL CONSTITUTE COMPLETE FULFILLMENT OF, AND CLIENT'S EXCLUSIVE REMEDY FOR, ALL THE LIABILITIES OR RESPONSIBILITIES OF CONSULTANT TO CLIENT FOR NON-CONFORMING OR DEFECTIVE SERVICES, WHETHER THE CLAIMS OF CLIENT ARE BASED ON DELAY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, WARRANTY, INDEMNITY, ERROR AND OMISSION OR ANY OTHER CAUSE WHATSOEVER.

5.    WORK BY OTHERS

5.1    The performance by Consultant of Services under a Work Authorization shall not constitute an assumption by Consultant of the obligations of Client or its other contractors. Consultant shall not control or have charge of, and shall not be responsible for, construction means, methods, techniques, sequences, procedures of construction, health or safety programs, or precautions connected with the work of Client or its other contractors, and shall not manage, supervise, control or have charge of construction. Client shall require Consultant to be named as an additional insured along with Client on any liability insurance policies provided by Client's construction contractors. To the fullest extent permitted by law, Client shall defend Consultant against any claim, suit or proceeding asserted by one of its other contractors and indemnify, defend and save Consultant harmless from any and all actual or alleged claims and losses (including, without limitation, attorney's fees) sustained by such contractor in connection with the Services, regardless or whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

6.    INSURANCE

6.1    In the event Consultant performs Services under any Work Authorization in connection with a project for which Client or another party with which Client has contracted obtains all-risk or builder's risk property insurance, Client, as the case may be, shall name, or shall cause such other party to name, Consultant as an additional insured on such all risk or builder's risk property insurance. Client acknowledges that Consultant has an insurable interest in such all risk or builder's risk property insurance.

6.2    Consultant and Client each waive all rights of recovery and subrogation against each other with respect to a loss occurring to property of the other, to the extent that such waivers do not invalidate the property insurance of either.

7.    INDEMNITY

7.1    Each Party shall indemnify, defend and save the other Party, its officers, directors, employees and affiliates harmless from any loss, cost or expense claimed by third parties, excluding employees of either Party, for property damage and/or bodily injury, including death, to the proportionate extent such loss, cost or expense arises from the negligence or willful misconduct of the indemnifying Party, its employee or affiliates in connection with the Services.

7.2    Notwithstanding any other provision contained elsewhere in this Agreement to the contrary and to the fullest extent permitted by law, Client shall be liable for and indemnify, defend and save Consultant, its officers, directors, employees and affiliates harmless from and against any and all actual or alleged claims, damages (including incidental, consequential, indirect and special damages), losses, and expenses (including, without limitation, all penalties, attorney's fees, fines and administrative or civil sanctions arising out of or related to such claim) (collectively "Losses") arising out of: (1) economic loss suffered by third parties; and/or (2) investment decisions of Client or third parties in reliance upon the results of the Services, regardless of whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

7.3    The indemnity and save harmless obligations of Consultant and Client under this Article 7 shall not apply with respect to any Hazardous Material, as Consultant's and Client's rights and obligations with respect thereto are set forth in Article 10.

8.    WAIVER OF CONSEQUENTIAL DAMAGES

8.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, neither Client nor Consultant shall be liable, whether based on contract, tort, negligence, strict liability, warranty, indemnity, error and omission or any other cause whatsoever, for any consequential, special, incidental, indirect, punitive or exemplary damages, or damages arising from or in connection with loss of power, loss of use, loss of revenue or profit (actual or anticipated), loss by reason of shutdown or non-operation, increased cost of construction, cost of capital, cost of replacement power or customer claims, and Consultant hereby releases Client and Client hereby releases Consultant from any such liability.

9.    LIMITATION OF LIABILITY

9.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, in no

f:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

2

**Exhibit 2**

Attachment 1

NON-CERTIFIED COPY



event shall the total cumulative aggregate liability of Consultant, its subconsultants, and their respective partners, officers, directors, shareholders, employees, and agents (referred to collectively in this Article as "Consultant") to Client resulting from, arising out of or in connection with the performance or nonperformance of any or all Services or other obligations under a Work Authorization, exceed $250,000 or ten percent (10%) of the compensation paid Consultant pursuant to such Work Authorization, whichever is greater, or extend beyond the expiration of the warranty period under Article 4 for the Services performed under the Work Authorization, regardless of the legal theory under which such liability is imposed. The remedies stated in the Agreement are Client's sole and exclusive remedies for any failure by Consultant to comply with obligations to Client, and Client hereby irrevocably waives any right to assert a claim against Consultant based on a legal theory that a remedy provided herein fails of its essential purpose.

10.   **HAZARDOUS MATERIAL**

10.1   Nothing in this Agreement shall be construed or interpreted as requiring Consultant to assume the status of, and Client acknowledges that Consultant does not act in the capacity nor assume the status of, Client or others as a "generator," "operator," "transporter," or "arranger" in the treatment, storage, disposal, or transportation of any hazardous substance or waste as those terms are understood within the meaning of the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or any other similar federal, state, or local law, regulation, or ordinance. Client acknowledges further that Consultant has played no part in and assumes no responsibility for generation or creation of any hazardous waste, pollution condition, nuisance, or chemical or industrial disposal problem, if any, which may exist at any site that may be the subject matter of any Work Authorization.

10.2   It is acknowledged by both parties that the Services do not include services related to regulated substances, pollutants, or hazardous or toxic wastes ("Hazardous Material"). In the event Consultant or any other party encounters undisclosed Hazardous Materials, Consultant shall notify Client and, to the extent required by law or regulation, the appropriate governmental officials, and Consultant may, at its option and without liability for delay, consequential or any other damages to Client, suspend performance of Services on that portion of the project affected by Hazardous Material until Client: (i) retains appropriate specialist consultant(s) or contractor(s) to identify and, as appropriate, abate, remediate, or remove the Hazardous material; and (ii) warrants that the project site is in full compliance with all applicable laws and regulations. Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, Client shall indemnify, defend and save Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers, directors of any of the foregoing, if any, from and against any and all Losses which arise out of the performance of the Services and relating to the regulation and/or protection of the environment, including, without limitation, Losses incurred in connection with characterization, handling, transportation, storage, removal, remediation, disturbance or disposal of Hazardous Material, whether above or below ground and not brought to a Client site or other proposed project site by Consultant in the performance of the Services without Client's approval.

11.   **CHANGES**

11.1   The Parties may from time to time by mutual agreement seek to modify, extend or enlarge the Services under a Work Authorization ("Modification"). In the event the Parties agree to a Modification to add additional Services, or to make other modifications to the Services, Consultant's compensation, the schedule and any other relevant terms and conditions of the applicable Work Authorization shall be equitably adjusted prior to performance of such Services.

12.   **OWNERSHIP OF DOCUMENTS**

12.1   Consultant grants to Client a transferable, irrevocable and perpetual royalty-free license to retain and use all work products delivered to Client for any purpose in connection with the project specified in each Work Authorization, upon full payment by Client for Consultant's Services. Client also may use such work product for other purposes with Consultant's written consent. Re-use of any such work product by Client on any extension of the project or on any other project without the written authorization of Consultant shall be at Client's sole risk and Client shall indemnify, defend and save Consultant and its affiliates, consultants, agents, subcontractors and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such re-use. Consultant shall have the right to retain copies of all such work product. Consultant retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

13.   **TERMINATION/SUSPENSION**

13.1   Client may terminate all or any portion of the Services under one or more Work Authorizations for convenience, at its option, by sending a written notice to Consultant. Either party can terminate this Agreement or a Work Authorization for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a notice of termination, unless a later date is specified in the notice. The notice of termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay Consultant upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. Any suspension of Services by Client shall result in an equitable adjustment to Consultant's compensation, time for performance, or any of its other obligations under a Work Authorization.

14.   **FORCE MAJEURE**

14.1   Any delay or failure of Consultant in performing its required obligations hereunder shall be excused if and to the extent such delay or failure is caused by a Force Majeure Event. A "Force Majeure Event" means an event due to any cause or causes beyond the reasonable control of Consultant and shall include, but not be limited to, acts of God, strike, labor dispute fire, storm, flood, windstorm, unusually severe weather, sabotage, embargo,

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

3

**Exhibit 2**

Attachment 1

NON-CERTIFIED COPY



terrorism, energy shortage, accidents or delay in transportation, accidents in the handling and rigging of heavy equipment, explosion, riot, war, court injunction or order, delays by acts or orders of any governmental body or changes in laws or government regulations or the interpretations or application thereof or the acts or omissions of the Client or its other contractors, vendors or suppliers. In the event of a Force Majeure Event, Consultant shall receive an equitable adjustment extending Consultant's time for performance for such Services sufficient to overcome the effects of any delay, and an increase(s) to Consultant's compensation sufficient to account for any increased cost in performance or loss or damage suffered by Consultant.

15.    RESPONSIBILITIES OF CLIENT

15.1    Without limiting any express or implied obligations of Client under applicable law, Client shall: (1) provide Consultant, in writing, all information relating to Client's requirements for the project; (2) correctly identify to Consultant the location of subsurface structures, such as pipes, tanks, cables, and utilities; (3) notify Consultant of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give Consultant prompt written notice of any suspected deficiency in the Services; (5) with reasonable promptness, provide required approvals and decisions; and (6) furnish or cause to be furnished to Consultant full, unrestricted and legal access to, and use of, the site and all necessary rights of way and easements, in order to perform the Services. In the event Consultant is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and Consultant is not a party, Client shall pay Consultant for any time and expenses required in connection therewith, including reasonable attorney's fees.

15.2    Consultant may rely upon and use in the performance of any Services information supplied to it by Client without independent verification and Consultant shall not be responsible for defects in its Services attributable to its reliance upon or use of such information.

17.    TERM

17.1    Unless otherwise specified, the term of this Agreement shall run from the Effective Date until Consultant has completed the Services and received all payments due under the Agreement.

18.    GENERAL

18.1    Client and Consultant each represent and warrant that this Agreement has been duly authorized, executed and delivered and constitutes its binding agreement enforceable against it. This Agreement and any executed Work Authorizations supersede all prior written and/or oral contracts and agreements that may have been made or entered into between Client and Consultant regarding the subject matter hereof, including but not limited to any and all proposals, oral or written, and all communications between the Parties relating to this Agreement or any Work Authorization(s), and constitute the entire agreement between the Parties hereto with respect to the subject matter hereof.

18.2    This Agreement and Work Authorization(s) may not be assigned by Consultant or Client in any way, including by operation of law, unless otherwise mutually agreed to in writing, any such attempted non-authorized assignment shall be null and void and of no force or effect.

18.3    Any cost opinions or estimates provided by Consultant will be on a basis of experience and judgment, but since Consultant has no control over market conditions or bidding procedures, Consultant cannot and does not warrant that bids, ultimate construction cost, or project economies will not vary from such opinions or estimates. Neither this Agreement nor any of the Services provided hereunder shall constitute or provide for, and Consultant shall not be considered to have rendered, any legal or financial opinion(s) regarding the feasibility of this project or any other or regarding any other matter. Unless otherwise expressly included in a Work Authorization, Consultant shall under no circumstances provide as part of the Services a consent, opinion or similar document, or act as a qualified person or expert, in connection with any filing by Client with the United States Securities and Exchange Commission, or similar non-United States agency, authority or commission.

18.4    Notices shall be effective hereunder as follows only if in writing and addressed to the authorized representative designated in applicable Work Authorizations: (1) upon delivery, if delivered personally to the person; (2) upon transmission, if transmitted to the facsimile number of the person; and (3) upon posting, if by first class or overnight mail (postage prepaid).

18.5    All contract issues and matters of law will be adjudicated in accordance with the laws of the state where the project is located, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction; provided, however that if the project is located outside the United States, the laws of the State of California shall govern. Venue for any litigation shall be any state court or United States District Court having jurisdiction over the parties and subject matter.

18.6    The terms and conditions of this Agreement shall prevail, notwithstanding any variance with any purchase order or other written instrument submitted by Client whether formally rejected by Consultant or not. This Agreement may be modified only by amendment when signed by each Party. In the event that any one or more of the provisions of this Agreement shall be found to be illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and such term or provision shall be deemed stricken to the extent and in the jurisdictions necessary for compliance with applicable law.

18.7    Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Client or Consultant.

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

4

**Exhibit 2**

Attachment 1

NON-CERTIFIED COPY

# URS

18.8   The headings in this Agreement are for convenience only, and shall not affect the interpretation hereof. The terms "hereof", "herein," "hereto" and similar words refer to the entire Agreement and not to any particular Article, Section, Attachment, Exhibit or any other subdivision of this Agreement. References to "day" or "days" shall mean calendar days unless specified otherwise.

18.9   The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including, but not limited to, indemnities and any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

18.10   It is understood and agreed that any delay, waiver or omission by Consultant or Client to exercise any right or power arising from any breach or default by Client or Consultant in any of the terms, provisions or covenants of this Agreement or any Work Authorization shall not be construed to be a waiver by Consultant or Client of any subsequent breach or default of the same or other terms, provisions or covenants on the part of Consultant or Client.

19.   **ATTACHMENTS AND EXHIBITS**

The following attachments and exhibits, which are attached hereto, are part of this Agreement.

Attachment 1 – Work Authorization

Attachment 2 – Fee Proposal, Scope of Work, Schedule

Attachment 3 – URS 2009 Schedule of Fees and Charges

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, effective as of the day and year first above mentioned.

**H&E Equipment Services, Inc.**

By: _____
    (Signature)

Name: _____
    (Printed)

Title: _____

**URS Corporation Architecture PC**

By: _____
    (Signature)

Name: _____
    (Printed)

Title: _____

F:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

5

Exhibit 2

Attachment 1

NON-CERTIFIED COPY

| H&E EQUIPMENT SERVICES, INC. | * | SUIT NO. 626,308    DIV.: D |
| | * | 19TH JUDICIAL DISTRICT COURT |
| VERSUS | * | |
| | * | PARISH OF EAST BATON ROUGE |
| | * | |
| URS CORPORATION ARCHITECTURE, P.C., URS CORPORATION, L. O'NEAL JOHNSON AND THOMAS E. RYAN, III | * | STATE OF LOUISIANA |

---

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

BEFORE ME, a duly authorized notary in the aforementioned State and Parish, personally came and appeared:

LARRY O'NEAL JOHNSON, JR.

who, after being duly sworn, did depose and state as follows:

1) He is over the age of 18, and resides in East Baton Rouge Parish.

2) He is personally familiar with the facts that follow herein.

3) At all times pertinent hereto, he was employed by URS Corporation (hereinafter "URS").

4) He was the Principal Architect for URS familiar with the various types of professional services performed by URS for H&E Equipment Services, Inc. (hereinafter "H&E") at H&E's facilities in Baton Rouge, Kenner, and Belle Chasse, Louisiana pursuant to a Short Form Master Agreement for Professional Services ("Agreement") dated August 13, 2009 a copy of which is attached hereto as **Attachment 1**.

5) Pursuant to the Agreement, URS performed various professional services for H&E at its facilities located in Baton Rouge, Kenner, and Belle Chasse, Louisiana.

6) H&E stopped paying all URS invoices for the services rendered for these three (3) facilities after December, 2012.

7) Subsequently, URS continued to provide professional services to H&E under the Agreement, as reflected in URS's invoices.

1

Exhibit 3

NON-CERTIFIED COPY

8) URS issued invoices for professional services rendered to H&E at the Belle Chasse, Louisiana facility, subsequent to January, 2013 which total ONE HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED FORTY-ONE AND 20/100 ($118,541.20) DOLLARS, copies of which are attached hereto as **Attachment 2-A.**

9) In addition to the fact that the Belle Chasse invoices attached hereto as Attachment 2-A are for professional services rendered after January, 2013, these invoices are wholly unrelated to the Baton Rouge headquarters building.

10) URS issued invoices for professional services rendered to H&E at the Kenner, Louisiana facility, subsequent to January, 2013, in the amount of SEVEN HUNDRED THIRTEEN 41/100 ($713.41) DOLLARS, copies of which are attached hereto as **Attachment 2-B.**

11) In addition to the fact that the Kenner invoices attached hereto as Attachment 2-B are for professional services rendered after January, 2013, these invoices are wholly unrelated to the Baton Rouge headquarters building.

12) URS issued invoices for professional services rendered to H&E at the Baton Rouge, Louisiana facility in the amount of ONE HUNDRED THIRTEEN THOUSAND SIX HUNDRED EIGHTY FOUR AND 53/100 ($113,684.53) DOLLARS, copies of which are attached hereto as **Attachment 2-C.**

13) In addition to the fact that the Baton Rouge invoices attached hereto as Attachment 2-C include services rendered after January, 2013, none of these invoices involve the design of the parking lot or interior of the Baton Rouge headquarters building that are the subject of any allegations by H&E in the pending lawsuit.

14) H&E did not notify URS of any disputed amount of any of these invoices within 15 days of the date of each invoice.

15) H&E did not notify URS of any reason for any dispute as to the amount of any invoice within 15 days of each invoice.

16) H&E did not provide H&E prompt written notice of any deficiency in the services which are the subject of the outstanding invoices.

17) H&E did not pay even the undisputed portions of the invoices at issue.

18) To date, URS has still not been paid on any of these invoices.

19) The total balance of the Unpaid Invoices is TWO HUNDRED THIRTY-TWO THOUSAND NINE HUNDRED THIRTY-NINE AND 14/100 ($232,939.14) DOLLARS.

[Signature on Next Page]

Exhibit 3

NON-CERTIFIED COPY

_____

LARRY O'NEAL JOHNSON, JR.

SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY PUBLIC, AT BATON ROUGE, LOUISIANA, ON THIS, THE 15TH DAY OF NOVEMBER, 2016.

_____

NOTARY PUBLIC

PRINTED NAME:_____
MY COMMISSION EXPIRES:_____
NOTARY NO.:_____

KELLEN J. MATHEWS
NOTARY PUBLIC
STATE OF LOUISIANA
Notary #89276 Bar Roll  1860
My Commission is Issued for Life

3

Exhibit 3

NON-CERTIFIED COPY



# URS

## SHORT FORM MASTER AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### H&E Equipment Services, Inc.
### AND
### URS Corporation Architecture PC

THIS AGREEMENT ("Agreement") for Professional Services, (together with the attachments hereto) dated and effective as of August 13, 2009 (the "Effective Date"), is hereby made and entered into by and between H&E Equipment Services, Inc., a Delaware corporation, (hereinafter "Client") having a place of business located at 11100 Mead Road, Suite 200, Baton Rouge, Louisiana 70816 and URS Corporation Architecture PC, a North Carolina corporation (hereinafter "Consultant") having a place of business located at 7389 Florida Blvd, Suite 300, Baton Rouge, Louisiana, 70806 Consultant and Client are each individually referred to as a "Party" and collectively as the "Parties".

The Parties agree as follows:

### 1.     WORK AUTHORIZATIONS

1.1     Consultant agrees to undertake and perform certain consulting and professional engineering services ("Services") in accordance with the terms and conditions contained herein, as may be requested by Client from time to time. The Services to be performed, Consultant's compensation, and the schedule for performance for each task shall be described in one or more authorizations issued to Consultant by Client, the form of which is attached hereto as Attachment I ("Work Authorization"). A Work Authorization shall be valid and binding upon the Parties only if accepted in writing by Client and Consultant. Each duly executed Work Authorization shall be subject to the terms and conditions of this Agreement, except to the extent expressly modified by the Work Authorization.

1.2     It is the expressed intent of the parties that this Agreement shall be made available to subsidiaries and affiliated companies of Consultant. For the purposes of this Agreement, as it applies to each Work Authorization, the term "Consultant" shall mean either Consultant as defined above or the subsidiary or affiliate of Consultant identified in the Work Authorization. The applicable Work Authorization shall clearly identify the legal name of the entity accepting the Work Authorization.

### 2.     PAYMENTS FOR SERVICES

2.1     Unless otherwise stated in a Work Authorization, payment shall be on a time and materials basis under the Schedule of Fees and Charges in effect when the Services are performed. Client shall pay undisputed portions of each progress invoice within thirty (30) days of the date of the invoice. If payment is not received within thirty (30) days from the due date of such payment, Consultant may suspend further performance under one or more Work Authorizations until payments are current. Client shall notify URS of any disputed amount within fifteen (15) days from date of the invoice, give reasons for the objection, and promptly pay the undisputed amount. Client shall pay an additional charge of one percent (1%) per month or the maximum percentage allowed by law, whichever is the lesser, for any past due amount. In the event of a legal action for invoice amounts not paid, attorneys' fees, court costs, and other related expenses shall be paid to the prevailing party.

2.2     Client shall reimburse Consultant for all taxes, duties and levies such as Sales, Use, Value Added Taxes, Deemed Profits Taxes, and other similar taxes which are added to or deducted from the value of Consultant's Services. For the purpose of this Article such taxes shall not include taxes imposed on Consultant's net income, and employer or employee payroll taxes levied by any United States taxing authority, or the taxing authorities of the countries or any agency or subdivision thereof in which URS subsidiaries, affiliates, or divisions are permanently domiciled. It is agreed and understood that these net income, employer or employee payroll taxes are included in the unit prices or lump sum to be paid Consultant under the applicable Work Authorization.

2.3     Where charges are "not to exceed" a specified sum, Consultant shall notify Client before such sum is exceeded and shall not continue to provide the Services beyond such sum unless Client authorizes an increase in the sum. If a "not to exceed" sum is broken down into budgets for specific tasks, the task budget may be exceeded without Client authorization as long as the total sum is not exceeded. Changes in conditions, including, without limitation, changes in laws or regulations occurring after the budget is established, or other circumstances beyond URS control, shall be a basis for equitable adjustments in the budget and schedule.

### 3.     CONFIDENTIALITY

3.1     For a period commencing with the disclosure of any confidential information under this Agreement and/or a Work Authorization(s) and ending on the second anniversary such disclosure was first made, Consultant and Client each agree not to disclose to third parties, including also subcontractors and vendors (unless such subcontractors and vendors have a need to know and are bound to similar obligations of confidentiality), any information that is identified as confidential in writing on the materials made available to the other Party hereunder

### 4.     WARRANTY

4.1     Consultant warrants that any consulting and professional engineering Services performed by it under a Work Authorization shall be performed in accordance with that degree of care and skill ordinarily exercised by members of Consultant's profession practicing at the same time in the same location. Consultant's sole liability to Client for any non-conforming Services shall be to re-perform the non-conforming or defective Services, written notice of which must be promptly given by Client to Consultant. Consultant's obligation for re-performance of non-conforming Services as set

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

1

Exhibit 3

Attachment 1

NON-CERTIFIED COPY



**URS**

forth in the preceding sentence shall extend for a term commencing at the substantial completion of such Services under a Work Authorization and ending one year later.

4.2    THE WARRANTY SET FORTH IN THIS ARTICLE 4 IS EXCLUSIVE, AND IN LIEU OF ANY AND ALL OTHER WARRANTIES RELATING TO THE SERVICES, WHETHER STATUTORY, EXPRESS OR IMPLIED, AND CONSULTANT DISCLAIMS ANY SUCH OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE AND ANY AND ALL WARRANTIES ARISING FROM COURSE OF DEALING AND/OR USAGE OF TRADE.  ANY OTHER STATEMENTS OF FACT OR DESCRIPTIONS EXPRESSED IN THE AGREEMENT OR ANY WORK AUTHORIZATION SHALL NOT BE DEEMED TO CONSTITUTE A WARRANTY OF THE SERVICES OR ANY PART THEREOF.  CONSULTANT'S REPERFORMANCE OF DEFECTIVE OR NON-CONFORMING SERVICES THROUGH THE ONE YEAR PERIOD PROVIDED FOR IN THIS ARTICLE 4 SHALL CONSTITUTE COMPLETE FULFILLMENT OF, AND CLIENT'S EXCLUSIVE REMEDY FOR, ALL THE LIABILITIES OR RESPONSIBILITIES OF CONSULTANT TO CLIENT FOR NON-CONFORMING OR DEFECTIVE SERVICES, WHETHER THE CLAIMS OF CLIENT ARE BASED ON DELAY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, WARRANTY, INDEMNITY, ERROR AND OMISSION OR ANY OTHER CAUSE WHATSOEVER.

5.    WORK BY OTHERS

5.1    The performance by Consultant of Services under a Work Authorization shall not constitute an assumption by Consultant of the obligations of Client or its other contractors.  Consultant shall not control or have charge of, and shall not be responsible for, construction means, methods, techniques, sequences, procedures of construction, health or safety programs, or precautions connected with the work of Client or its other contractors, and shall not manage, supervise, control or have charge of construction.  Client shall require Consultant to be named as an additional insured along with Client on any liability insurance policies provided by Client's construction contractors.  To the fullest extent permitted by law, Client shall defend Consultant against any claim, suit or proceeding asserted by one of its other contractors and indemnify, defend and save Consultant harmless from any and all actual or alleged claims and losses (including, without limitation, attorney's fees) sustained by such contractor in connection with the Services, regardless or whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

6.    INSURANCE

6.1    In the event Consultant performs Services under any Work Authorization in connection with a project for which Client or another party with which Client has contracted obtains all-risk or builder's risk property insurance, Client, as the case may be, shall name, or shall cause such other party to name, Consultant as an additional insured on such all risk or builder's risk property insurance.  Client acknowledges that Consultant has an insurable interest in such all risk or builder's risk property insurance.

6.2    Consultant and Client each waive all rights of recovery and subrogation against each other with respect to a loss occurring to property of the other, to the extent that such waivers do not invalidate the property insurance of either.

7.    INDEMNITY

7.1    Each Party shall indemnify, defend and save the other Party, its officers, directors, employees and affiliates harmless from any loss, cost or expense claimed by third parties, excluding employees of either Party, for property damage and/or bodily injury, including death, to the proportionate extent such loss, cost or expense arises from the negligence or willful misconduct of the indemnifying Party, its employees or affiliates in connection with the Services.

7.2    Notwithstanding any other provision contained elsewhere in this Agreement to the contrary and to the fullest extent permitted by law, Client shall be liable for and indemnify, defend and save Consultant, its officers, directors, employees and affiliates harmless from and against any and all actual or alleged claims, damages (including incidental, consequential, indirect and special damages), losses, and expenses (including, without limitation, all penalties, attorney's fees, fines and administrative or civil sanctions arising out of or related to such claim) (collectively "Losses") arising out of: (1) economic loss suffered by third parties; and/or (2) investment decisions of Client or third parties in reliance upon the results of the Services, regardless of whether or not any of the foregoing arose out of the negligent acts or omissions of Consultant.

7.3    The indemnity and save harmless obligations of Consultant and Client under this Article 7 shall not apply with respect to any Hazardous Material, as Consultant's and Client's rights and obligations with respect thereto are set forth in Article 10.

8.    WAIVER OF CONSEQUENTIAL DAMAGES

8.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, neither Client nor Consultant shall be liable, whether based on contract, tort, negligence, strict liability, warranty, indemnity, error and omission or any other cause whatsoever, for any consequential, special, incidental, indirect, punitive or exemplary damages, or damages arising from or in connection with loss of power, loss of use, loss of revenue or profit (actual or anticipated), loss by reason of shutdown or non-operation, increased cost of construction, cost of capital, cost of replacement power or customer claims, and Consultant hereby releases Client and Client hereby releases Consultant from any such liability.

9.    LIMITATION OF LIABILITY

9.1    Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, in no

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

Exhibit 3

Attachment 1

NON-CERTIFIED COPY

# URS

event shall the total cumulative aggregate liability of Consultant, its subconsultants, and their respective partners, officers, directors, shareholders, employees, and agents (referred to collectively in this Article as "Consultant") to Client resulting from, arising out of or in connection with the performance or nonperformance of any or all Services or other obligations under a Work Authorization, exceed $250,000 or ten percent (10%) of the compensation paid Consultant pursuant to such Work Authorization, whichever is greater, or extend beyond the expiration of the warranty period under Article 4 for the Services performed under the Work Authorization, regardless of the legal theory under which such liability is imposed. The remedies stated in the Agreement are Client's sole and exclusive remedies for any failure by Consultant to comply with obligations to Client, and Client hereby irrevocably waives any right to assert a claim against Consultant based on a legal theory that a remedy provided herein fails of its essential purpose.

### 10. HAZARDOUS MATERIAL

10.1    Nothing in this Agreement shall be construed or interpreted as requiring Consultant to assume the status of, and Client acknowledges that Consultant does not act in the capacity nor assume the status of, Client or others as a "generator," "operator," "transporter," or "arranger" in the treatment, storage, disposal, or transportation of any hazardous substance or waste as those terms are understood within the meaning of the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), or any other similar federal, state, or local law, regulation, or ordinance. Client acknowledges further that Consultant has played no part in and assumes no responsibility for generation or creation of any hazardous waste, pollution condition, nuisance, or chemical or industrial disposal problem, if any, which may exist at any site that may be the subject matter of any Work Authorization.

10.2    It is acknowledged by both parties that the Services do not include services related to regulated substances, pollutants, or hazardous or toxic wastes ("Hazardous Material"). In the event Consultant or any other party encounters undisclosed Hazardous Materials, Consultant shall notify Client and, to the extent required by law or regulation, the appropriate governmental officials, and Consultant may, at its option and without liability for delay, consequential or any other damages to Client, suspend performance of Services on that portion of the project affected by Hazardous Material until Client: (i) retains appropriate specialist consultant(s) or contractor(s) to identify and, as appropriate, abate, remediate, or remove the Hazardous material; and (ii) warrants that the project site is in full compliance with all applicable laws and regulations. Notwithstanding any other provision to the contrary in this Agreement or a Work Authorization and to the fullest extent permitted by law, Client shall indemnify, defend and save Consultant and its affiliates, subconsultants, agents, and suppliers of any tier, and any and all employees, officers, directors of any of the foregoing, if any, from and against any and all Losses which arise out of the performance of the Services and relating to the regulation and/or protection of the environment, including, without limitation, Losses incurred in connection with characterization, handling, transportation, storage, removal, remediation, disturbance or disposal of Hazardous Material, whether above or below ground and not brought to a Client site or other proposed project site by Consultant in the performance of the Services without Client's approval.

### 11. CHANGES

11.1    The Parties may from time to time by mutual agreement seek to modify, extend or enlarge the Services under a Work Authorization ("Modification"). In the event the Parties agree to a Modification to add additional Services, or to make other modifications to the Services, Consultant's compensation, the schedule and any other relevant terms and conditions of the applicable Work Authorization shall be equitably adjusted prior to performance of such Services.

### 12. OWNERSHIP OF DOCUMENTS

12.1    Consultant grants to Client a transferable, irrevocable and perpetual royalty-free license to retain and use all work products delivered to Client for any purpose in connection with the project specified in each Work Authorization, upon full payment by Client for Consultant's Services. Client also may use such work product for other purposes with Consultant's written consent. Re-use of any such work product by Client on any extension of the project or on any other project without the written authorization of Consultant shall be at Client's sole risk and Client shall indemnify, defend and save Consultant and its affiliates, consultants, agents, subcontractors and suppliers of any tier, and any and all employees, officers and directors of any of the foregoing, if any, from and against any and all Losses suffered as a result of, or arising out of, or in connection with such re-use. Consultant shall have the right to retain copies of all such work product. Consultant retains the right of ownership with respect to any patentable concepts or copyrightable materials arising from its Services.

### 13. TERMINATION/SUSPENSION

13.1    Client may terminate all or any portion of the Services under one or more Work Authorizations for convenience, at its option, by sending a written notice to Consultant. Either party can terminate this Agreement or a Work Authorization for cause if the other commits a material, uncured breach of this Agreement or becomes insolvent. Termination for cause shall be effective twenty (20) days after receipt of a notice of termination, unless a later date is specified in the notice. The notice of termination for cause shall contain specific reasons for termination and both parties shall cooperate in good faith to cure the causes for termination stated in the notice. Termination shall not be effective if reasonable action to cure the breach has been taken before the effective date of the termination. Client shall pay Consultant upon invoice for Services performed and charges incurred prior to termination, plus reasonable termination charges. Any suspension of Services by Client shall result in an equitable adjustment to Consultant's compensation, time for performance, or any of its other obligations under a Work Authorization.

### 14. FORCE MAJEURE

14.1    Any delay or failure of Consultant in performing its required obligations hereunder shall be excused if and to the extent such delay or failure is caused by a Force Majeure Event. A "Force Majeure Event" means an event due to any cause or causes beyond the reasonable control of Consultant and shall include, but not be limited to, acts of God, strike, labor dispute fire, storm, flood, windstorm, unusually severe weather, sabotage, embargo,

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100  Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

3

Exhibit 3

Attachment 1

NON-CERTIFIED COPY



# URS

terrorism, energy shortage, accidents or delay in transportation, accidents in the handling and rigging of heavy equipment, explosion, riot, war, court injunction or order, delays by acts or orders of any governmental body or changes in laws or government regulations or the interpretations or application thereof or the acts or omissions of the Client or its other contractors, vendors or suppliers. In the event of a Force Majeure Event, Consultant shall receive an equitable adjustment extending Consultant's time for performance for such Services sufficient to overcome the effects of any delay, and an increase(s) to Consultant's compensation sufficient to account for any increased cost in performance or loss or damage suffered by Consultant.

## 15. RESPONSIBILITIES OF CLIENT

15.1  Without limiting any express or implied obligations of Client under applicable law, Client shall: (1) provide Consultant, in writing, all information relating to Client's requirements for the project; (2) correctly identify to Consultant the location of subsurface structures, such as pipes, tanks, cables, and utilities; (3) notify Consultant of any potential hazardous substances or other health and safety hazard or condition known to Client existing on or near the project site; (4) give Consultant prompt written notice of any suspected deficiency in the Services; (5) with reasonable promptness, provide required approvals and decisions; and (6) furnish or cause to be furnished to Consultant full, unrestricted and legal access to, and use of, the site and all necessary rights of way and easements, in order to perform the Services. In the event Consultant is requested by Client or is required by subpoena to produce documents or give testimony in any action or proceeding to which Client is a party and Consultant is not a party, Client shall pay Consultant for any time and expenses required in connection therewith, including reasonable attorney's fees.

15.2  Consultant may rely upon and use in the performance of any Services information supplied to it by Client without independent verification and Consultant shall not be responsible for defects in its Services attributable to its reliance upon or use of such information.

## 17. TERM

17.1  Unless otherwise specified, the term of this Agreement shall run from the Effective Date until Consultant has completed the Services and received all payments due under the Agreement.

## 18. GENERAL

18.1  Client and Consultant each represent and warrant that this Agreement has been duly authorized, executed and delivered and constitutes its binding agreement enforceable against it. This Agreement and any executed Work Authorizations supersede all prior written and/or oral contracts and agreements that may have been made or entered into between Client and Consultant regarding the subject matter hereof, including but not limited to any and all proposals, oral or written, and all communications between the Parties relating to this Agreement or any Work Authorization(s), and constitute the entire agreement between the Parties hereto with respect to the subject matter hereof.

18.2  This Agreement and Work Authorization(s) may not be assigned by Consultant or Client in any way, including by operation of law, unless otherwise mutually agreed to in writing, any such attempted non-authorized assignment shall be null and void and of no force or effect.

18.3  Any cost opinions or estimates provided by Consultant will be on a basis of experience and judgment, but since Consultant has no control over market conditions or bidding procedures, Consultant cannot and does not warrant that bids, ultimate construction cost, or project economics will not vary from such opinions or estimates. Neither this Agreement nor any of the Services provided hereunder shall constitute or provide for, and Consultant shall not be considered to have rendered, any legal or financial opinion(s) regarding the feasibility of this project or any other or regarding any other matter. Unless otherwise expressly included in a Work Authorization, Consultant shall under no circumstances provide as part of the Services a consent, opinion or similar document, or act as a qualified person or expert, in connection with any filing by Client with the United States Securities and Exchange Commission, or similar non-United States agency, authority or commission.

18.4  Notices shall be effective hereunder as follows only if in writing and addressed to the authorized representative designated in applicable Work Authorizations: (1) upon delivery, if delivered personally to the person; (2) upon transmission, if transmitted to the facsimile number of the person; and (3) upon posting, if by first class or overnight mail (postage prepaid).

18.5  All contract issues and matters of law will be adjudicated in accordance with the laws of the state where the project is located, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction; provided, however that if the project is located outside the United States, the laws of the State of California shall govern. Venue for any litigation shall be any state court or United States District Court having jurisdiction over the parties and subject matter.

18.6  The terms and conditions of this Agreement shall prevail, notwithstanding any variance with any purchase order or other written instrument submitted by Client whether formally rejected by Consultant or not. This Agreement may be modified only by amendment when signed by each Party. In the event that any one or more of the provisions of this Agreement shall be found to be illegal or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and such term or provision shall be deemed stricken to the extent and in the jurisdictions necessary for compliance with applicable law.

18.7  Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Client or Consultant.

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

4

Exhibit 3

Attachment 1

NON-CERTIFIED COPY



**URS**

18.8    The headings in this Agreement are for convenience only, and shall not affect the interpretation hereof. The terms "hereof", "herein," "hereto" and similar words refer to the entire Agreement and not to any particular Article, Section, Attachment, Exhibit or any other subdivision of this Agreement. References to "day" or "days" shall mean calendar days unless specified otherwise.

18.9    The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion, or expiration of the Agreement, including, but not limited to, indemnities and any expressed limitations of or releases from liability, shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion, or expiration.

18.10    It is understood and agreed that any delay, waiver or omission by Consultant or Client to exercise any right or power arising from any breach or default by Client or Consultant in any of the terms, provisions or covenants of this Agreement or any Work Authorization shall not be construed to be a waiver by Consultant or Client of any subsequent breach or default of the same or other terms, provisions or covenants on the part of Consultant or Client.

19.    **ATTACHMENTS AND EXHIBITS**

The following attachments and exhibits, which are attached hereto, are part of this Agreement.

Attachment 1 – Work Authorization

Attachment 2 – Fee Proposal, Scope of Work, Schedule

Attachment 3 – URS 2009 Schedule of Fees and Charges

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, effective as of the day and year first above mentioned.

**H&E Equipment Services, Inc.**

By: _____
       (Signature)

Name: _____Leonard St. Germain_____
                  (Printed)

Title: _____V.P. Operations_____

**URS Corporation Architecture PC**

By: _____Craig W. Gordon_____
       (Signature)

Name: _____Craig W. Gordon_____
                  (Printed)

Title: _____VP/OM_____

I:\Proposals\Facilities\H&E Equipment Services - Kenner\Proposal\PS-100 Short Form Master Agreement for Professional Services (Rev. 03-2009).doc

5

Exhibit 3

Attachment 1

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 05/24/2013 |
| Invoice | 5531264 |
| Project | 19230060 |
| Page | 1 |

Reference:  WO1112

For:  Belle Chasse Phase II

Professional Services for Period Ending 05/10/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:          $11,854.12  USD
Terms:                Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**    URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**    URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:          URS Corporation
Bank:               Wells Fargo Bank
Account No.:     4520-086471
ABA Routing No.:  121-000-248
Swift Code:       WFBIUS6S

Remittance Information can be sent to:
Email:              RemitTo@urs.com
Fax:                (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-A



# URS 

| | |
|---|---|
| Invoice Date | 05/24/2013 |
| Invoice | 5531264 |
| Project | 19230060 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 05/10/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19230060  H&E Belle Chasse Phase II | 11,854.12 | 0.00 | 11,854.12 |
| Total this job | 11,854.12 | 0.00 | 11,854.12 |
| **TOTAL THIS INVOICE** | 11,854.12 | 0.00 | $11,854.12 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY


**URS**

| | |
|---|---|
| Invoice Date | 05/24/2013 |
| Invoice | 5531264 |
| Project | 19230060 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: WO1112

For: Belle Chasse Phase II

Professional Services for Period Ending 05/10/2013

Job: 19230060  H&E Belle Chasse Phase II

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 118,541.20 | 10.00% | 11,854.12 | 0.00 | 11,854.12 |
| **TOTALS** | 296,353.00 | | 189,665.92 | 177,811.80 | 11,854.12 |

*Total due this job*     **11,854.12**

**TOTAL THIS INVOICE**     **$11,854.12** USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320792

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 06/19/2013 |
| Invoice | 5563141 |
| Project | 19230060 |
| Page | 1 |

Reference:  WO1112

For:  Belle Chasse Phase II

<u>Professional Services for Period Ending 06/07/2013</u>

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**          **$10,668.71** USD
Terms:                     Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**     URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**     URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:           URS Corporation
Bank:              Wells Fargo Bank
Account No.:       4520-086471
ABA Routing No.:   121-000-248
Swift Code:        WFBIUS6S

Remittance Information can be sent to:
Email:           RemitTo@urs.com
Fax:             (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 06/19/2013 |
| Invoice | 5563141 |
| Project | 19230060 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 06/07/2013

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job:  19230060  H&E Belle Chasse Phase II | 10,668.71 | 0.00 | 10,668.71 |
| Total this job | 10,668.71 | 0.00 | 10,668.71 |
| **TOTAL THIS INVOICE** | 10,668.71 | 0.00 | $10,668.71 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



| | | Invoice Date | 06/19/2013 |
| | | Invoice | 5563141 |
| | | Project | 19230060 |
| | | Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:   WO1112

For:   Belle Chasse Phase II

<u>Professional Services for Period Ending 06/07/2013</u>
*Job:  19230060  H&E Belle Chasse Phase II*

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 118,541.20 | 19.00% | 22,522.83 | 11,854.12 | 10,668.71 |
| **TOTALS** | 296,353.00 | | 200,334.63 | 189,665.92 | 10,668.71 |

*Total due this job*    **10,668.71**

**TOTAL THIS INVOICE**    $10,668.71 USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320790

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 07/29/2013 |
| Invoice | 5599459 |
| Project | 19230060 |
| Page | 1 |

Reference:  WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 07/12/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**          **$40,043.22**  USD
Terms:                    Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:          URS Corporation
Bank:             Wells Fargo Bank
Account No.:      4520-086471
ABA Routing No.:  121-000-248
Swift Code:       WFBIUS6S

Remittance Information can be sent to:
Email:          RemitTo@urs.com
Fax:            (512) 419-6937   Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



| | Invoice Date | 07/29/2013 |
|---|---|---|
| | Invoice | 5599459 |
| | Project | 19230060 |
| | Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 07/12/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job:  19230060  H&E Belle Chasse Phase II | 40,043.22 | 0.00 | 40,043.22 |
| Total this job | 40,043.22 | 0.00 | 40,043.22 |
| TOTAL THIS INVOICE | 40,043.22 | 0.00 | $40,043.22 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 07/29/2013 |
| Invoice | 5599459 |
| Project | 19230060 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:  Belle Chasse Phase II

Professional Services for Period Ending 07/12/2013
*Job: 19230060  H&E Belle Chasse Phase II*

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 158,584.42 | 39.45% | 62,566.05 | 22,522.83 | 40,043.22 |
| TOTALS | 336,396.22 | | 240,377.85 | 200,334.63 | 40,043.22 |

*Total due this job*          **40,043.22**

TOTAL THIS INVOICE          **$40,043.22** USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320786

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 08/20/2013 |
| Invoice | 5624795 |
| Project | 19230060 |
| Page | 1 |

Reference: WO1112

For: Belle Chasse Phase II

Professional Services for Period Ending 08/09/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:      $20,412.79  USD
Terms:          Net 30

\* Make checks payable to: URS Corporation
\* Please indicate invoice number and/or project number on check
\* Please include this stub with payment

**Regular Mail (USPS):**      URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**      URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention: Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:           URS Corporation
Bank:              Wells Fargo Bank
Account No.:       4520-086471
ABA Routing No.:   121-000-248
Swift Code:        WFBIUS6S

Remittance Information can be sent to:
Email:        RemitTo@urs.com
Fax:          (512) 419-6937    Attn: Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**





| | | | |
|---|---|---|---|
| Invoice Date | | | 08/20/2013 |
| Invoice | | | 5624795 |
| Project | | | 19230060 |
| Page | | | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:  Belle Chasse Phase II

Professional Services for Period Ending 08/09/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job:  19230060  H&E Belle Chasse Phase II | 20,412.79 | 0.00 | 20,412.79 |
| Total this job | 20,412.79 | 0.00 | 20,412.79 |
| | | | |
| TOTAL THIS INVOICE | 20,412.79 | 0.00 | $20,412.79 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 08/20/2013 |
| Invoice | 5624795 |
| Project | 19230060 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:   WO1112

For:   Belle Chasse Phase II

<u>Professional Services for Period Ending 08/09/2013</u>
*Job:  19230060  H&E Belle Chasse Phase II*

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 178,997.21 | 46.36% | 82,978.84 | 62,566.05 | 20,412.79 |
| **TOTALS** | 356,809.01 | | 260,790.64 | 240,377.85 | 20,412.79 |

*Total due this job*     20,412.79

**TOTAL THIS INVOICE**     **$20,412.79** USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320784

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 09/25/2013 |
| Invoice | 5657774 |
| Project | 19230060 |
| Page | 1 |

Reference: WO1112

For:  Belle Chasse Phase II

Professional Services for Period Ending 09/06/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:                     $15,967.40  USD
Terms:                          Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**      URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:          URS Corporation
Bank:             Wells Fargo Bank
Account No.:      4520-086471
ABA Routing No.:  121-000-248
Swift Code:       WFBIUS6S

Remittance Information can be sent to:
Email:            RemitTo@urs.com
Fax:              (512) 419-6937   Attn: Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



| | | | | |
|---|---|---|---|---|
| Invoice Date | | 09/25/2013 |
| Invoice | | 5657774 |
| Project | | 19230060 |
| Page | | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:   WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 09/06/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19230060  H&E Belle Chasse Phase II | 15,967.40 | 0.00 | 15,967.40 |
| Total this job | 15,967.40 | 0.00 | 15,967.40 |
| **TOTAL THIS INVOICE** | 15,967.40 | 0.00 | **$15,967.40 USD** |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-A

NON-CERTIFIED COPY



|  | | Invoice Date | 09/25/2013 |
|---|---|---|---|
|  | | Invoice | 5657774 |
|  | | Project | 19230060 |
|  | | Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:  Belle Chasse Phase II

<u>Professional Services for Period Ending 09/06/2013</u>
*Job: 19230060  H&E Belle Chasse Phase II*

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 194,964.61 | 50.75% | 98,946.24 | 82,978.84 | 15,967.40 |
| **TOTALS** | 372,776.41 | | 276,758.04 | 260,790.64 | 15,967.40 |

*Total due this job*          15,967.40

TOTAL THIS INVOICE          $15,967.40 USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320780

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



**URS**

Remittance Page

| | |
|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5688671 |
| Project | 19230060 |
| Page | 1 |

Reference: WO1112

For: Belle Chasse Phase II

Professional Services for Period Ending 10/11/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:      $13,987.96  USD
Terms:          Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS):    URS Corporation
                        P.O. Box 116183
                        Atlanta GA 30368-6183
                        US

Overnight Courier:      URS Corporation
                        Lock Box No. 116183
                        100 South Crest Drive
                        Stockbridge, GA  30281
                        Attention:  Atlanta Lockbox
                        (877) 786-3333

Electronic Funds Transfer:
    Account:        URS Corporation
    Bank:           Wells Fargo Bank
    Account No.:    4520-086471
    ABA Routing No.: 121-000-248
    Swift Code:     WFBIUS6S

Remittance Information can be sent to:
    Email:      RemitTo@urs.com
    Fax:        (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-A

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5688671 |
| Project | 19230060 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 10/11/2013

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19230060  H&E Belle Chasse Phase II | 13,987.96 | 0.00 | 13,987.96 |
| Total this job | 13,987.96 | 0.00 | 13,987.96 |
| **TOTAL THIS INVOICE** | 13,987.96 | 0.00 | **$13,987.96 USD** |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-A

NON-CERTIFIED COPY



|  | | |
|---|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5688671 |
| Project | 19230060 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:  Belle Chasse Phase II

<u>Professional Services for Period Ending 10/11/2013</u>
*Job:  19230060  H&E Belle Chasse Phase II*

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 208,952.57 | 54.05% | 112,934.20 | 98,946.24 | 13,987.96 |
| **TOTALS** | 386,764.37 | | 290,746.00 | 276,758.04 | 13,987.96 |

*Total due this job*    13,987.96

**TOTAL THIS INVOICE**    $13,987.96 USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320778

**Exhibit 3**

**Attachment 2-A**

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 11/18/2013 |
| Invoice | 5713835 |
| Project | 19230060 |
| Page | 1 |

Reference: WO1112
For:  Belle Chasse Phase II

<u>Professional Services for Period Ending 11/08/2013</u>

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:          $5,607.00  USD
Terms:              Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**  URS Corporation
                          P.O. Box 116183
                          Atlanta GA 30368-6183
                          US

**Overnight Courier:**    URS Corporation
                          Lock Box No. 116183
                          100 South Crest Drive
                          Stockbridge, GA  30281
                          Attention:  Atlanta Lockbox
                          (877) 786-3333

**Electronic Funds Transfer:**
    Account:          URS Corporation
    Bank:             Wells Fargo Bank
    Account No.:      4520-086471
    ABA Routing No.:  121-000-248
    Swift Code:       WFBIUS6S

Remittance Information can be sent to:
    Email:            RemitTo@urs.com
    Fax:              (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-A**





| | Invoice Date | 11/18/2013 |
|---|---|---|
| | Invoice | 5713835 |
| | Project | 19230060 |
| | Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:   Belle Chasse Phase II

Professional Services for Period Ending 11/08/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19230060  H&E Belle Chasse Phase II | 5,607.00 | 0.00 | 5,607.00 |
| Total this job | 5,607.00 | 0.00 | 5,607.00 |
| | | | |
| TOTAL THIS INVOICE | 5,607.00 | 0.00 | $5,607.00 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-A

NON-CERTIFIED COPY



|  | Invoice Date | 11/18/2013 |
|---|---|---|
|  | Invoice | 5713835 |
|  | Project | 19230060 |
|  | Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO1112

For:  Belle Chasse Phase II

<u>Professional Services for Period Ending 11/08/2013</u>
*Job: 19230060  H&E Belle Chasse Phase II*

| PHASE | FEE | PERCENT COMPLETE | FEE EARNED | PREVIOUS BILLING | CURRENT BILLING |
|---|---|---|---|---|---|
| Design Phase | 162,994.15 | 100.00% | 162,994.15 | 162,994.15 | 0.00 |
| Bidding and Negotiation Phase | 14,817.65 | 100.00% | 14,817.65 | 14,817.65 | 0.00 |
| Construction Admin Phase | 214,559.57 | 55.25% | 118,541.20 | 112,934.20 | 5,607.00 |
| TOTALS | 392,371.37 |  | 296,353.00 | 290,746.00 | 5,607.00 |

*Total due this job*  **5,607.00**

**TOTAL THIS INVOICE**  **$5,607.00** USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320774

**Exhibit 3**

**Attachment 2-A**


NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 07/29/2013 |
| Invoice | 5591796 |
| Project | 19229626 |
| Page | 1 |

Reference: PS 100

For: H & E Kenner Phase II

Professional Services for Period Ending 02/08/2013

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:           $231.48  USD
Terms:               Net 30

\*   Make checks payable to: URS Corporation
\*   Please indicate invoice number and/or project number on check
\*   Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:           URS Corporation
Bank:              Wells Fargo Bank
Account No.:       4520-086471
ABA Routing No.:   121-000-248
Swift Code:        WFBIUS6S

Remittance Information can be sent to:
Email:             RemitTo@urs.com
Fax:               (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-B**

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | 07/29/2013 |
| Invoice | 5591796 |
| Project | 19229626 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PS 100

For:   H & E Kenner Phase II

<u>Professional Services for Period Ending 02/08/2013</u>

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19229626  H&E Kenner Phase II** | | | |
| Task:  00001  Project Management | 124.98 | 0.00 | 124.98 |
| Task:  00010  Site Civil | 106.50 | 0.00 | 106.50 |
| **Total this job** | 231.48 | 0.00 | 231.48 |
| **TOTAL THIS INVOICE** | 231.48 | 0.00 | $231.48 USD |

Project Manager: Chad Herndon

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-B

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 07/29/2013 |
| Invoice | 5591796 |
| Project | 19229626 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PS 100

For:   H & E Kenner Phase II

<u>Professional Services for Period Ending 02/08/2013</u>

**Job:  19229626  H&E Kenner Phase II**
   **Task:  00001  Project Management**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Administrator III | | | |
| Shillingburg, Stephanie B | 0.25 | 84.80 | 21.20 |
| Vampran, Lee D | 2.00 | 51.89 | 103.78 |
| Subtotal | 2.25 | | 124.98 |
| Total Labor | | | **124.98** |
| | | *Total due this task* | *124.98* |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
If you have any questions regarding this invoice.

F7320593

**Exhibit 3**

**Attachment 2-B**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 07/29/2013 |
| Invoice | 5591796 |
| Project | 19229626 |
| Page | 4 |

Reference:  PS 100

For:    H & E Kenner Phase II

**Task: 00010  Site Civil**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Senior Engineer | | | |
| Gaines, Timothy F | 1.00 | 106.50 | 106.50 |
| Subtotal | 1.00 | | 106.50 |
| **Total Labor** | | | **106.50** |
| *Total due this task* | | | *106.50* |
| *Total due this job* | | | *231.48* |
| **TOTAL THIS INVOICE** | | | **$231.48** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-B

NON-CERTIFIED COPY

BILLING BACKUP

Page 1

Invoice Date 07/29/2013
Invoice      5591796
Project      19229626
Reference    PS 100

**Job: 19229626  H&E Kenner Phase II**
**Task: 00001  Project Management**

Labor

Administrator III

| GL DATE/ SRV DATE | JOB/ LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME/ DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 08/17/20 08/17/2012 | 19229626 | 50110 | 00001 | T4 8246013 | 39606 | Shillingburg, Stephanie B Administrator III | 0.25 | 84.80 | 21.20 |
| 10/19/20 10/19/2012 | 19229626 | 50110 | 00001 | T4 8415703 | 37776 | Vampran, Lee D Administrator III | 1.00 | 51.89 | 51.89 |
| 08/17/20 08/17/2012 | 19229626 | 50110 | 00001 | T4 8245742 | 37776 | Vampran, Lee D Administrator III | 1.00 | 51.89 | 51.89 |
| Total Labor | | | | | | | | | 124.98 |

NON-CERTIFIED COPY

Exhibit 3

Attachment 2-B

Invoice Date  07/29/2013                    BILLING BACKUP                                    Page 2
Invoice       5591796
Project       19229626
Reference     PS 100

| G/L DATE JOB/<br>SRV DATE LBR CMT | | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| *Task: 00010  Site Civil* | | | | | | | | | |
| Labor | | | | | | | | | |
| Senior Engineer | | | | | | | | | |
| 08/17/20  19229626<br>08/17/2012 | | 50110 | 00010 | T4 8242017 | 67000 | Gaines, Timothy F<br>Senior Engineer | 1.00 | 106.50 | 106.50 |
| | Total Labor | | | | | | | | 106.50 |

NON-CERTIFIED COPY

Attachment 2-B

Exhibit 3



**URS**                    Remittance Page

| | |
|---|---|
| Invoice Date | 12/23/2013 |
| Invoice | 5744512 |
| Project | 19229626 |
| Page | 1 |

Reference:  PS 100

For:   H & E Kenner Phase II

Professional Services for Period Ending 12/13/2013

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**        $481.93  USD
Terms:              Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**    URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**    URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:         URS Corporation
Bank:            Wells Fargo Bank
Account No.:     4520-086471
ABA Routing No.: 121-000-248
Swift Code:      WFBIUS6S

Remittance Information can be sent to:
Email:           RemitTo@urs.com
Fax:             (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-B**


NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 12/23/2013 |
| Invoice | 5744512 |
| Project | 19229626 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PS 100

For:   H & E Kenner Phase II

Professional Services for Period Ending 12/13/2013

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: **19229626  H&E Kenner Phase II** | | | |
| Task:  00001  Project Management | 55.93 | 0.00 | 55.93 |
| Task:  00010  Site Civil | 426.00 | 0.00 | 426.00 |
| Total this job | 481.93 | 0.00 | 481.93 |
| **TOTAL THIS INVOICE** | 481.93 | 0.00 | **$481.93 USD** |

Project Manager: Chad Herndon

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-B**

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | 12/23/2013 | |
| Invoice | 5744512 | |
| Project | 19229626 | |
| Page | | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  PS 100

For:  H & E Kenner Phase II

<u>Professional Services for Period Ending 12/13/2013</u>

**Job: 19229626  H&E Kenner Phase II**
  **Task: 00001  Project Management**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Administrator III | | | |
| Vampran, Lee D | 1.00 | 55.93 | 55.93 |
| Subtotal | 1.00 | | 55.93 |
| **Total Labor** | | | **55.93** |
| *Total due this task* | | | 55.93 |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320597

**Exhibit 3**

**Attachment 2-B**





| | | Invoice Date | 12/23/2013 |
| | | Invoice | 5744512 |
| | | Project | 19229626 |
| | | Page | 4 |

Reference:  PS 100

For:    H & E Kenner Phase II

**Task:  00010  Site Civil**

| LABOR | HOURS | RATE | AMOUNT |
|-------|-------|------|--------|
| Senior Engineer | | | |
| Gaines, Timothy F | 4.00 | 106.50 | 426.00 |
| Subtotal | 4.00 | | 426.00 |
| **Total Labor** | | | **426.00** |
| | | *Total due this task* | 426.00 |
| | | *Total due this job* | 481.93 |
| | | **TOTAL THIS INVOICE** | **$481.93** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-B**

NON-CERTIFIED COPY

Invoice Date  12/23/2013                            BILLING BACKUP                                   Page 1
Invoice       5744512
Project       19229626
Reference     PS 100

| G/L DATE JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Job: 19229626  H&E Kenner Phase II** | | | | | | | | |
| **Task: 00001  Project Management** | | | | | | | | |
| **Labor** | | | | | | | | |
| Administrator III | | | | | | 1.00 | 55.93 | 55.93 |
| 09/13/20  19229626 09/13/2013 | 50110 | 00001 | T4 9341601 | 37776 | Vampran, Lee D Administrator III | | | |
| **Total Labor** | | | | | | | | 55.93 |

NON-CERTIFIED COPY

NON-CERTIFIED COPY .

Attachment 2-B   Exhibit 3

BILLING BACKUP                                          Page 2

Invoice Date  12/23/2013
Invoice       5744512
Project       19229626
Reference     PS 100

| G/L DATE JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Task: 00010 Site Civil** | | | | | | | | |
| **Labor** | | | | | | | | |
| Senior Engineer | | | | | | | | |
| 04/26/20  19229626 04/09/2013 | 50110 | 00010 | T4 8935310 | 67000 | Gaines, Timothy F Senior Engineer | 4.00 | 106.50 | 426.00 |
| **Total Labor** | | | | | | | | **426.00** |

 **URS**

**Remittance Page**

| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357940 |
| Project | 19229775 |
| Page | 1 |

Reference: WO#0111

For: H&E Phase IV BN & CA

Professional Services for Period Ending 12/07/2012

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:     $66,001.45  USD
Terms:         Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**     URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**     URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**

| | |
|---|---|
| Account: | URS Corporation |
| Bank: | Wells Fargo Bank |
| Account No.: | 4520-086471 |
| ABA Routing No.: | 121-000-248 |
| Swift Code: | WFBIUS6S |

Remittance Information can be sent to:
Email:     RemitTo@urs.com
Fax:       (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY


**URS**

| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357940 |
| Project | 19229775 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO#0111

For:  H&E Phase IV BN & CA

<u>Professional Services for Period Ending 12/07/2012</u>

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19229775  H&E Phase IV BN & CA | 66,001.45 | 0.00 | 66,001.45 |
| Total this job | 66,001.45 | 0.00 | 66,001.45 |
| **TOTAL THIS INVOICE** | 66,001.45 | 0.00 | **$66,001.45 USD** |

Project Manager: Neal Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357940 |
| Project | 19229775 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:   WO#0111

For:   H&E Phase IV BN & CA

<u>Professional Services for Period Ending 12/07/2012</u>
*Job: 19229775  H&E Phase IV BN & CA*

LUMP SUM

| Lump Sum Billing | 66,001.45 |
|---|---|
| **Total Lump Sum** | **66,001.45** |
| *Total due this job* | **66,001.45** |
| **TOTAL THIS INVOICE** | **$66,001.45** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320603

**Exhibit 3**

**Attachment 2-C**





**Remittance Page**

| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357943 |
| Project | 19229964 |
| Page | 1 |

Reference:  1111

For:    H&E Design Changes

Professional Services for Period Ending 12/07/2012

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:          $3,487.50  USD
Terms:              Net 30

```
*   Make checks payable to: URS Corporation
*   Please indicate invoice number and/or project number on check
*   Please include this stub with payment
```

**Regular Mail (USPS):**    URS Corporation
                            P.O. Box 116183
                            Atlanta GA 30368-6183
                            US

**Overnight Courier:**      URS Corporation
                            Lock Box No. 116183
                            100 South Crest Drive
                            Stockbridge, GA  30281
                            Attention:  Atlanta Lockbox
                            (877) 786-3333

**Electronic Funds Transfer:**
        Account:            URS Corporation
        Bank:               Wells Fargo Bank
        Account No.:        4520-086471
        ABA Routing No.:    121-000-248
        Swift Code:         WFBIUS6S

Remittance Information can be sent to:
        Email:              RemitTo@urs.com
        Fax:                (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY


**URS**

| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357943 |
| Project | 19229964 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 12/07/2012

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | |
| Task:  00001  Project Management | 2,092.50 | 0.00 | 2,092.50 |
| Task:  00002  Design/Construction Documents | 1,065.00 | 0.00 | 1,065.00 |
| Task:  00004  Pricing Coordination | 330.00 | 0.00 | 330.00 |
| Total this job | 3,487.50 | 0.00 | 3,487.50 |
| | | | |
| **TOTAL THIS INVOICE** | 3,487.50 | 0.00 | $3,487.50 USD |

Project Manager: Larry Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357943 |
| Project | 19229964 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: 1111

For:   H&E Design Changes

<u>Professional Services for Period Ending 12/07/2012</u>

*Job: 19229964  H&E Design Changes*
  *Task: 00001  Project Management*

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| | | | |
| **PRINCIPAL** | | | |
| Johnson Jr, Larry O | 12.00 | 165.00 | 1,980.00 |
| **ADMINISTRATION** | | | |
| Vampran, Lee D | 1.00 | 50.00 | 50.00 |
| Shillingburg, Stephanie B | 1.25 | 50.00 | 62.50 |
| Subtotal | 14.25 | | 2,092.50 |
| **Total Labor** | | | **2,092.50** |
| | | *Total due this task* | *2,092.50* |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320654

**Exhibit 3**

**Attachment 2-C**





| | Invoice Date | 12/19/2012 |
| --- | --- | --- |
| | Invoice | 5357943 |
| | Project | 19229964 |
| | Page | 4 |

Reference:  1111

For:    H&E Design Changes

*Task:  00002  Design/Construction Documents*

| LABOR | HOURS | RATE | AMOUNT |
| --- | --- | --- | --- |
| SR. ARCHITECT | | | |
| Ryan, Thomas E | 9.00 | 100.00 | 900.00 |
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 1.00 | 165.00 | 165.00 |
| Subtotal | 10.00 | | 1,065.00 |
| **Total Labor** | | | **1,065.00** |
| | | *Total due this task* | *1,065.00* |

Please contact Larry O Johnson Jr at 225 231-8343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

Attachment 2-C





| | | | |
|---|---|---|---|
| Invoice Date | | | 12/19/2012 |
| Invoice | | | 5357943 |
| Project | | | 19229964 |
| Page | | | 5 |

Reference:  1111

For:    H&E Design Changes

*Task:  00004  Pricing Coordination*

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 2.00 | 165.00 | 330.00 |
| Subtotal | 2.00 | | 330.00 |
| **Total Labor** | | | **330.00** |
| | | *Total due this task* | *330.00* |
| | | *Total due this job* | *3,487.50* |
| | | **TOTAL THIS INVOICE** | **$3,487.50** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

| Invoice Date | 12/19/2012 | | | BILLING BACKUP | | | | Page 1 |
|---|---|---|---|---|---|---|---|---|
| Invoice | 5357943 |
| Project | 19229964 |
| Reference | 1111 |

| G/L DATE<br>SRV DATE | JOB/<br>LBR CMT | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | | | | | | | |
| **Task: 00001  Project Management** | | | | | | | | | |
| **Labor** | | | | | | | | | |
| PRINCIPAL | | | | | | | | | |
| 12/07/20<br>12/07/2012 | 19229964 | 50110 | 00001 | T4 8547355 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 3.00 | 165.00 | 495.00 |
| 11/30/20<br>11/30/2012 | 19229964 | 50110 | 00001 | T4 8525429 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 2.00 | 165.00 | 330.00 |
| 11/23/20<br>11/23/2012 | 19229964 | 50110 | 00001 | T4 8507340 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 7.00 | 165.00 | 1,155.00 |
| ADMINISTRATION | | | | | | | | | |
| 11/16/20<br>11/16/2012 | 19229964 | 50110 | 00001 | T4 8493210 | 37776 | Vampran, Lee D<br>ADMINISTRATION | 1.00 | 50.00 | 50.00 |
| 11/23/20<br>11/23/2012 | 19229964 | 50110 | 00001 | T4 8512122 | 39606 | Shillingburg, Stephanie B<br>ADMINISTRATION | 1.25 | 50.00 | 62.50 |
| **Total Labor** | | | | | | | | | **2,092.50** |

Invoice Date  12/19/2012
Invoice       5357943
Project       19229964
Reference     1111

BILLING BACKUP

Page 2

| G/L DATE  JOB/<br>SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Task:  00002  Design/Construction Documents** | | | | | | | | |
| **Labor** | | | | | | | | |
| SR. ARCHITECT | | | | | | | | |
| 11/16/20   19229964<br>11/16/2012 | 50110 | 00002 | T4 8491717 | 128516 | Ryan, Thomas E<br>SR. ARCHITECT | 9.00 | 100.00 | 900.00 |
| PRINCIPAL | | | | | | | | |
| 11/30/20   19229964<br>11/30/2012 | 50110 | 00002 | T4 8525429 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 1.00 | 165.00 | 165.00 |
| Total Labor | | | | | | | | 1,065.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

Invoice Date  12/19/2012
Invoice      5357943
Project      19229964
Reference    1111

BILLING BACKUP

Page 3

Task: 00004  Pricing Coordination

| G/L DATE  JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Labor** | | | | | | | | |
| PRINCIPAL | | | | | | | | |
| 11/30/20  19229964 11/30/2012 | 50110 | 00004 | T4 8525429 | 66831 | Johnson Jr, Larry O PRINCIPAL | 2.00 | 165.00 | 330.00 |
| **Total Labor** | | | | | | | | 330.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3



**Remittance Page**

| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357991 |
| Project | 19230248 |
| Page | 1 |

Reference: 1012

For:    H&E BR HQ Interior Design

Professional Services for Period Ending 12/07/2012

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

| | |
|---|---|
| Total Due: | $858.75  USD |
| Terms: | Net 30 |

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS):    URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

Overnight Courier:    URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA 30281
Attention: Atlanta Lockbox
(877) 786-3333

Electronic Funds Transfer:
Account:    URS Corporation
Bank:    Wells Fargo Bank
Account No.:    4520-086471
ABA Routing No.:    121-000-248
Swift Code:    WFBIUS6S

Remittance Information can be sent to:
Email:    RemitTo@urs.com
Fax:    (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357991 |
| Project | 19230248 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 12/07/2012

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job:  19230248  H&E BR HQ Interior Design** | | | |
| Task:  00001  Project Management | 858.75 | 0.00 | 858.75 |
| Total this job | **858.75** | **0.00** | **858.75** |
| **TOTAL THIS INVOICE** | **858.75** | **0.00** | **$858.75 USD** |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 12/19/2012 |
| Invoice | 5357991 |
| Project | 19230248 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

<u>Professional Services for Period Ending 12/07/2012</u>

**Job: 19230248  H&E BR HQ Interior Design**
   **Task: 00001  Project Management**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PROCUREMENT | | | |
| Shillingburg, Stephanie B | 0.75 | 65.00 | 48.75 |
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 4.00 | 165.00 | 660.00 |
| ADMINISTRATIVE | | | |
| Vampran, Lee D | 3.00 | 50.00 | 150.00 |
| Subtotal | 7.75 | | 858.75 |

**Total Labor**                                                         858.75

*Total due this task*                                     858.75

*Total due this job*                                     858.75

**TOTAL THIS INVOICE**                    **$858.75 USD**

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320823

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

| Invoice Date | 12/19/2012 | BILLING BACKUP | Page 1 |
|---|---|---|---|
| Invoice | 5357991 | | |
| Project | 19230248 | | |
| Reference | 1012 | | |

| G/L DATE JOB/<br>SRV DATE LBR CMT | | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Job: 19230248 H&E BR HQ Interior Design** | | | | | | | | | |
| **Task: 00001 Project Management** | | | | | | | | | |
| **Labor** | | | | | | | | | |
| PROCUREMENT | | | | | | | | | |
| 11/23/20<br>11/23/2012 | 19230248 | 50110 | 00001 | T4 8512122 | 39606 | Shillingburg, Stephanie B<br>PROCUREMENT | 0.75 | 65.00 | 48.75 |
| PRINCIPAL | | | | | | | | | |
| 11/23/20<br>11/23/2012 | 19230248 | 50110 | 00001 | T4 8507340 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 4.00 | 165.00 | 660.00 |
| ADMINISTRATIVE | | | | | | | | | |
| 11/16/20<br>11/16/2012 | 19230248 | 50110 | 00001 | T4 8493210 | 37776 | Vampran, Lee D<br>ADMINISTRATIVE | 3.00 | 50.00 | 150.00 |
| | **Total Labor** | | | | | | | | 858.75 |

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 01/14/2013 |
| Invoice | 5357942 |
| Project | 19229873 |
| Page | 1 |

Reference:  WO0711

For:   H&E HQ & BR Branch-Phase V

<u>Professional Services for Period Ending 12/07/2012</u>

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**          $28,882.00  USD

Terms:                Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**    URS Corporation
                    P.O. Box 116183
                    Atlanta GA 30368-6183
                    US

**Overnight Courier:**    URS Corporation
                    Lock Box No. 116183
                    100 South Crest Drive
                    Stockbridge, GA  30281
                    Attention:  Atlanta Lockbox
                    (877) 786-3333

**Electronic Funds Transfer:**
    Account:        URS Corporation
    Bank:          Wells Fargo Bank
    Account No.:      4520-086471
    ABA Routing No.:   121-000-248
    Swift Code:      WFBIUS6S

Remittance Information can be sent to:
    Email:        RemitTo@urs.com
    Fax:          (512) 419-6937   Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**


NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 01/14/2013 |
| Invoice | 5357942 |
| Project | 19229873 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO0711

For:   H&E HQ & BR Branch-Phase V

Professional Services for Period Ending 12/07/2012

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job:  19229873  H&E Phase V FF&E | 28,882.00 | 0.00 | 28,882.00 |
| Total this job | 28,882.00 | 0.00 | 28,882.00 |
| | | | |
| TOTAL THIS INVOICE | 28,882.00 | 0.00 | $28,882.00 USD |

Project Manager: Larry Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
If you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C





| | |
|---|---|
| Invoice Date | 01/14/2013 |
| Invoice | 5357942 |
| Project | 19229873 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO0711

For:   H&E HQ & BR Branch-Phase V

Professional Services for Period Ending 12/07/2012
*Job:  19229873  H&E Phase V FF&E*

LUMP SUM

| | |
|---|---|
| Lump Sum Billing | 28,882.00 |
| **Total Lump Sum** | **28,882.00** |

*Total due this job*     28,882.00

TOTAL THIS INVOICE     $28,882.00 USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320623

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

 **URS**

Remittance Page

| | |
|---|---|
| Invoice Date | 02/25/2013 |
| Invoice | 5424197 |
| Project | 19230248 |
| Page | 1 |

Reference:  1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 02/08/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:          $6,605.00  USD
Terms:                Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS):     URS Corporation
                                     P.O. Box 116183
                                     Atlanta GA 30368-6183
                                     US

Overnight Courier:       URS Corporation
                                    Lock Box No. 116183
                                    100 South Crest Drive
                                    Stockbridge, GA  30281
                                    Attention:  Atlanta Lockbox
                                    (877) 786-3333

Electronic Funds Transfer:
    Account:            URS Corporation
    Bank:                 Wells Fargo Bank
    Account No.:        4520-086471
    ABA Routing No.:   121-000-248
    Swift Code:          WFBIUS6S

Remittance Information can be sent to:
    Email:                RemitTo@urs.com
    Fax:                  (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

Attachment 2-C


NON-CERTIFIED COPY


**URS**

| | |
|---|---|
| Invoice Date | 02/25/2013 |
| Invoice | 5424197 |
| Project | 19230248 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 02/08/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19230248  H&E BR HQ Interior Design** | | | |
| Task:  00001  Project Management | 5,145.00 | 0.00 | 5,145.00 |
| Task:  00002  Design/Construction Documents | 1,460.00 | 0.00 | 1,460.00 |
| Total this job | 6,605.00 | 0.00 | 6,605.00 |
| **TOTAL THIS INVOICE** | 6,605.00 | 0.00 | $6,605.00 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C


NON-CERTIFIED COPY



| | | Invoice Date | 02/25/2013 |
|---|---|---|---|
| | | Invoice | 5424197 |
| | | Project | 19230248 |
| | | Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: 1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 02/08/2013

Job: 19230248  H&E BR HQ Interior Design
   Task: 00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 23.00 | 165.00 | 3,795.00 |
| ARCHITECT | | | |
| Ryan, Thomas E | 13.00 | 100.00 | 1,300.00 |
| ADMINISTRATIVE | | | |
| Vampran, Lee D | 1.00 | 50.00 | 50.00 |
| Subtotal | 37.00 | | 5,145.00 |
| **Total Labor** | | | **5,145.00** |
| | | *Total due this task* | 5,145.00 |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320825

**Exhibit 3**

Attachment 2-C

NON-CERTIFIED COPY



| | | | Invoice Date | 02/25/2013 |
| | | | Invoice | 5424197 |
| | | | Project | 19230248 |
| | | | Page | 4 |

Reference:  1012

For:    H&E BR HQ Interior Design

**Task: 00002 Design/Construction Documents**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 4.00 | 165.00 | 660.00 |
| ARCHITECT | | | |
| Ryan, Thomas E | 8.00 | 100.00 | 800.00 |
| Subtotal | 12.00 | | 1,460.00 |
| **Total Labor** | | | **1,460.00** |
| *Total due this task* | | | 1,460.00 |
| *Total due this job* | | | 6,605.00 |
| **TOTAL THIS INVOICE** | | | **$6,605.00** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

Attachment 2-C

NON-CERTIFIED COPY

Invoice Date  02/25/2013
Invoice      5424197
Project      19230248
Reference    1012

BILLING BACKUP

Page 1

| G/L DATE SRV DATE | JOB/ LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|

**Job: 19230248  H&E BR HQ Interior Design**

   **Task: 00001  Project Management**

**Labor**

PRINCIPAL

| 12/21/20 12/21/2012 | 19230248 | 50110 | 00001 | T4 8582568 | 66831 | Johnson Jr, Larry O PRINCIPAL | 4.00 | 165.00 | 660.00 |
| 01/11/20 12/14/2012 | 19230248 | 50110 | 00001 | T4 8629674 | 66831 | Johnson Jr, Larry O PRINCIPAL | 1.00 | 165.00 | 165.00 |
| 01/11/20 12/11/2012 | 19230248 | 50110 | 00001 | T4 8629674 | 66831 | Johnson Jr, Larry O PRINCIPAL | 1.00 | 165.00 | 165.00 |
| 01/11/20 12/10/2012 | 19230248 | 50110 | 00001 | T4 8629674 | 66831 | Johnson Jr, Larry O PRINCIPAL | 1.00 | 165.00 | 165.00 |
| 12/21/20 11/15/2012 | 19230248 | 50110 | 00001 | T4 8589201 | 66831 | Johnson Jr, Larry O PRINCIPAL | 2.00 | 165.00 | 330.00 |
| 12/21/20 11/14/2012 | 19230248 | 50110 | 00001 | T4 8589201 | 66831 | Johnson Jr, Larry O PRINCIPAL | 2.00 | 165.00 | 330.00 |
| 12/21/20 11/13/2012 | 19230248 | 50110 | 00001 | T4 8589201 | 66831 | Johnson Jr, Larry O PRINCIPAL | 1.00 | 165.00 | 165.00 |
| 12/21/20 11/12/2012 | 19230248 | 50110 | 00001 | T4 8589201 | 66831 | Johnson Jr, Larry O PRINCIPAL | 1.00 | 165.00 | 165.00 |
| 01/18/20 01/18/2013 | 19230248 | 50110 | 00001 | T4 8660444 | 66831 | Johnson Jr, Larry O PRINCIPAL | 2.00 | 165.00 | 330.00 |
| 01/11/20 01/11/2013 | 19230248 | 50110 | 00001 | T4 8640187 | 66831 | Johnson Jr, Larry O PRINCIPAL | 6.00 | 165.00 | 990.00 |
| 01/04/20 01/04/2013 | 19230248 | 50110 | 00001 | T4 8620300 | 66831 | Johnson Jr, Larry O PRINCIPAL | 2.00 | 165.00 | 330.00 |

ARCHITECT

| 01/18/20 01/18/2013 | 19230248 | 50110 | 00001 | T4 8662030 | 128516 | Ryan, Thomas E ARCHITECT | 5.00 | 100.00 | 500.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

Invoice Date  02/25/2013

BILLING BACKUP

Page 2

Invoice       5424197
Project       19230248
Reference     1012

| G/L DATE SRV DATE | JOB/ LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 01/11/20 01/11/2013 | 19230248 | 50110 | 00001 | T4 8642546 | 128516 | Ryan, Thomas E ARCHITECT | 8.00 | 100.00 | 800.00 |
| ADMINISTRATIVE | | | | | | | | | |
| 01/18/20 01/18/2013 | 19230248 | 50110 | 00001 | T4 8663484 | 37776 | Vampran, Lee D ADMINISTRATIVE | 1.00 | 50.00 | 50.00 |
| | Total Labor | | | | | | | | 5,145.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

BILLING BACKUP

Page 3

Invoice Date  02/25/2013
Invoice      5424197
Project      19230248
Reference    1012

| G/L DATE JOB/<br>SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Task: 00002 Design/Construction Documents** | | | | | | | | |
| Labor | | | | | | | | |
| PRINCIPAL | | | | | | | | |
| 12/21/20  19230248<br>12/21/2012 | 50110 | 00002 | T4 8582568 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 4.00 | 165.00 | 660.00 |
| ARCHITECT | | | | | | | | |
| 12/21/20  19230248<br>12/14/2012 | 50110 | 00002 | T4 8589483 | 128516 | Ryan, Thomas E<br>ARCHITECT | 1.00 | 100.00 | 100.00 |
| 12/21/20  19230248<br>12/13/2012 | 50110 | 00002 | T4 8589483 | 128516 | Ryan, Thomas E<br>ARCHITECT | 1.00 | 100.00 | 100.00 |
| 12/21/20  19230248<br>12/12/2012 | 50110 | 00002 | T4 8589483 | 128516 | Ryan, Thomas E<br>ARCHITECT | 2.00 | 100.00 | 200.00 |
| 12/21/20  19230248<br>12/11/2012 | 50110 | 00002 | T4 8589483 | 128516 | Ryan, Thomas E<br>ARCHITECT | 2.00 | 100.00 | 200.00 |
| 12/21/20  19230248<br>12/10/2012 | 50110 | 00002 | T4 8589483 | 128516 | Ryan, Thomas E<br>ARCHITECT | 2.00 | 100.00 | 200.00 |
| Total Labor | | | | | | | | 1,460.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3



**Remittance Page**

| | |
|---|---|
| Invoice Date | 03/21/2013 |
| Invoice | 5456789 |
| Project | 19229775 |
| Page | 1 |

Reference:   WO#0111
For:   H&E Phase IV BN & CA

<u>Professional Services for Period Ending 03/08/2013</u>

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**        $2,100.55  USD
Terms:                Net 30

\* Make checks payable to: URS Corporation
\* Please indicate invoice number and/or project number on check
\* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:           URS Corporation
Bank:              Wells Fargo Bank
Account No.:       4520-086471
ABA Routing No.:   121-000-248
Swift Code:        WFBIUS6S

Remittance Information can be sent to:
Email:       RemitTo@urs.com
Fax:         (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

 NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | | 03/21/2013 |
| Invoice | | 5456789 |
| Project | | 19229775 |
| Page | | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO#0111

For:   H&E Phase IV BN & CA

Professional Services for Period Ending 03/08/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19229775  H&E Phase IV BN & CA | 2,100.55 | 0.00 | 2,100.55 |
| Total this job | 2,100.55 | 0.00 | 2,100.55 |
| **TOTAL THIS INVOICE** | 2,100.55 | 0.00 | $2,100.55 USD |

Project Manager: Neal Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 03/21/2013 |
| Invoice | 5456789 |
| Project | 19229775 |
| Page | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: WO#0111

For: H&E Phase IV BN & CA

<u>Professional Services for Period Ending 03/08/2013</u>
*Job: 19229775 H&E Phase IV BN & CA*

LUMP SUM

Lump Sum Billing      2,100.55
    **Total Lump Sum**      **2,100.55**

*Total due this job*      *2,100.55*

**TOTAL THIS INVOICE**      **$2,100.55** USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320606

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

 **URS**

**Remittance Page**

| | |
|---|---|
| Invoice Date | 06/19/2013 |
| Invoice | 5555403 |
| Project | 19229964 |
| Page | 1 |

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 06/07/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:              $975.00  USD
Terms:                  Net 30

\* Make checks payable to: URS Corporation
\* Please indicate invoice number and/or project number on check
\* Please include this stub with payment

**Regular Mail (USPS):**    URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**    URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention: Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:           URS Corporation
Bank:              Wells Fargo Bank
Account No.:       4520-086471
ABA Routing No.:   121-000-248
Swift Code:        WFBIUS6S

Remittance Information can be sent to:
Email:             RemitTo@urs.com
Fax:               (512) 419-6937   Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | | 06/19/2013 |
| Invoice | | 5555403 |
| Project | | 19229964 |
| Page | | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 06/07/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | |
| Task:  00001  Project Management | 975.00 | 0.00 | 975.00 |
| **Total this job** | 975.00 | 0.00 | 975.00 |
| **TOTAL THIS INVOICE** | 975.00 | 0.00 | $975.00 USD |

Project Manager: Larry Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

 **URS**

| | |
|---|---|
| Invoice Date | 06/19/2013 |
| Invoice | 5555403 |
| Project | 19229964 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: 1111

For: H&E Design Changes

<u>Professional Services for Period Ending 06/07/2013</u>

Job: 19229964  H&E Design Changes
  Task: 00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| SR. ARCHITECT Ryan, Thomas E | 9.00 | 100.00 | 900.00 |
| ADMINISTRATION Vampran, Lee D | 1.50 | 50.00 | 75.00 |
| Subtotal | 10.50 | | 975.00 |
| **Total Labor** | | | **975.00** |
| *Total due this task* | | | 975.00 |
| *Total due this Job* | | | 975.00 |
| **TOTAL THIS INVOICE** | | | **$975.00** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320659

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

Invoice Date  06/19/2013
Invoice    5555403
Project    19229964
Reference   1111

BILLING BACKUP

Page 1

| G/L DATE JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Job:  19229964  H&E Design Changes** | | | | | | | | |
| **Task:  00001  Project Management** | | | | | | | | |
| **Labor** | | | | | | | | |
| SR. ARCHITECT | | | | | | | | |
| 06/07/20  19229964 06/07/2013 | 50110 | 00001 | T4 9056122 | 128516 | Ryan, Thomas E SR. ARCHITECT | 9.00 | 100.00 | 900.00 |
| ADMINISTRATION | | | | | | | | |
| 05/17/20  19229964 05/17/2013 | 50110 | 00001 | T4 8997471 | 37776 | Vampran, Lee D ADMINISTRATION | 1.00 | 50.00 | 50.00 |
| 05/03/20  19229964 05/03/2013 | 50110 | 00001 | T4 8958072 | 37776 | Vampran, Lee D ADMINISTRATION | 0.50 | 50.00 | 25.00 |
| Total Labor | | | | | | | | 975.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

 



**Remittance Page**

| | |
|---|---|
| Invoice Date | 06/19/2013 |
| Invoice | 5555428 |
| Project | 19230248 |
| Page | 1 |

Reference: 1012

For: H&E BR HQ Interior Design

Professional Services for Period Ending 06/07/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:  $5,190.00 USD
Terms:  Net 30

\* Make checks payable to: URS Corporation
\* Please indicate invoice number and/or project number on check
\* Please include this stub with payment

**Regular Mail (USPS):**  URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**  URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA 30281
Attention: Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:  URS Corporation
Bank:  Wells Fargo Bank
Account No.:  4520-086471
ABA Routing No.:  121-000-248
Swift Code:  WFBIUS6S

Remittance Information can be sent to:
Email:  RemitTo@urs.com
Fax:  (512) 419-6937  Attn: Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 06/19/2013 |
| Invoice | 5555428 |
| Project | 19230248 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: 1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 06/07/2013

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: 19230248  H&E BR HQ Interior Design | 5,990.00 | 0.00 | 5,990.00 |
| Task: 00001  Project Management | -800.00 | 0.00 | -800.00 |
| Task: 00002  Design/Construction Documents |  |  |  |
| Total this job | 5,190.00 | 0.00 | 5,190.00 |
| TOTAL THIS INVOICE | 5,190.00 | 0.00 | $5,190.00 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C





| | | |
|---|---|---|
| Invoice Date | | 06/19/2013 |
| Invoice | | 5555428 |
| Project | | 19230248 |
| Page | | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

<u>Professional Services for Period Ending 06/07/2013</u>

**Job:  19230248  H&E BR HQ Interior Design**
   **Task:  00001  Project Management**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 6.00 | 165.00 | 990.00 |
| ARCHITECT | | | |
| Ryan, Thomas E | 49.00 | 100.00 | 4,900.00 |
| ADMINISTRATIVE | | | |
| Vampran, Lee D | 2.00 | 50.00 | 100.00 |
| Subtotal | 57.00 | | 5,990.00 |
| **Total Labor** | | | **5,990.00** |
| | | *Total due this task* | 5,990.00 |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320827

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY




| | Invoice Date | 06/19/2013 |
|---|---|---|
| | Invoice | 5555428 |
| | Project | 19230248 |
| | Page | 4 |

Reference:  1012

For:    H&E BR HQ Interior Design

**Task: 00002 Design/Construction Documents**

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| ARCHITECT | | | |
| Ryan, Thomas E | -8.00 | 100.00 | -800.00 |
| Subtotal | -8.00 | | -800.00 |
| **Total Labor** | | | **-800.00** |
| *Total due this task* | | | *-800.00* |
| *Total due this job* | | | *5,190.00* |
| **TOTAL THIS INVOICE** | | | **$5,190.00** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**


NON-CERTIFIED COPY

Invoice Date  06/19/2013
Invoice     5555428
Project     19230248
Reference   1012

BILLING BACKUP

Page 1

| G/L DATE JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Job: 19230248  H&E BR HQ Interior Design** | | | | | | | | |
| **Task: 00001  Project Management** | | | | | | | | |
| **Labor** | | | | | | | | |
| PRINCIPAL | | | | | | | | |
| 05/24/20 05/24/2013 | 19230248 | 50110 | 00001 | T4 9013366 | 66831 | Johnson Jr, Larry O PRINCIPAL | 3.00 | 165.00 | 495.00 |
| 05/17/20 05/17/2013 | 19230248 | 50110 | 00001 | T4 8993698 | 66831 | Johnson Jr, Larry O PRINCIPAL | 3.00 | 165.00 | 495.00 |
| ARCHITECT | | | | | | | | |
| 06/07/20 06/07/2013 | 19230248 | 50110 | 00001 | T4 9056122 | 128516 | Ryan, Thomas E ARCHITECT | 9.00 | 100.00 | 900.00 |
| 05/31/20 05/31/2013 | 19230248 | 50110 | 00001 | T4 9035510 | 128516 | Ryan, Thomas E ARCHITECT | 7.00 | 100.00 | 700.00 |
| 05/24/20 05/24/2013 | 19230248 | 50110 | 00001 | T4 9016063 | 128516 | Ryan, Thomas E ARCHITECT | 8.00 | 100.00 | 800.00 |
| 05/17/20 05/17/2013 | 19230248 | 50110 | 00001 | T4 8996085 | 128516 | Ryan, Thomas E ARCHITECT | 9.00 | 100.00 | 900.00 |
| 05/17/20 05/10/2013 | 19230248 | 50110 | 00001 | T4 8996085 | 128516 | Ryan, Thomas E ARCHITECT | 2.00 | 100.00 | 200.00 |
| 05/17/20 05/09/2013 | 19230248 | 50110 | 00001 | T4 8996085 | 128516 | Ryan, Thomas E ARCHITECT | 3.00 | 100.00 | 300.00 |
| 05/17/20 05/08/2013 | 19230248 | 50110 | 00001 | T4 8996085 | 128516 | Ryan, Thomas E ARCHITECT | 3.00 | 100.00 | 300.00 |
| 05/17/20 05/07/2013 | 19230248 | 50110 | 00001 | T4 8996085 | 128516 | Ryan, Thomas E ARCHITECT | 2.00 | 100.00 | 200.00 |
| 05/17/20 05/06/2013 | 19230248 | 50110 | 00001 | T4 8996085 | 128516 | Ryan, Thomas E ARCHITECT | 2.00 | 100.00 | 200.00 |
| 05/24/20 05/02/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

BILLING BACKUP                                                    Page 2

Invoice Date   06/19/2013
Invoice        5555428
Project        19230248
Reference      1012

| G/L DATE SRV DATE | JOB/ LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 05/24/20 04/26/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |
| 05/24/20 04/25/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 2.00 | 100.00 | 200.00 |
| 05/24/20 04/24/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |
| 05/24/20 04/23/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 2.00 | 100.00 | 200.00 |
| 05/24/20 04/22/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |
| 04/19/20 04/19/2013 | 19230248 | 50110 | 00001 | T4 8917160 | 128516 | Ryan, Thomas E ARCHITECT | 2.00 | 100.00 | 200.00 |
| 05/24/20 04/18/2013 | 19230248 | 50110 | 00001 | T4 9002987 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |
| 03/15/20 03/15/2013 | 19230248 | 50110 | 00001 | T4 8818951 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |
| 02/22/20 01/10/2013 | 19230248 | 50110 | 00001 | T4 8747107 | 128516 | Ryan, Thomas E ARCHITECT | -2.00 | 100.00 | -200.00 |
| 02/22/20 01/09/2013 | 19230248 | 50110 | 00001 | T4 8747107 | 128516 | Ryan, Thomas E ARCHITECT | -2.00 | 100.00 | -200.00 |
| 02/22/20 01/08/2013 | 19230248 | 50110 | 00001 | T4 8747107 | 128516 | Ryan, Thomas E ARCHITECT | -2.00 | 100.00 | -200.00 |
| 02/22/20 01/07/2013 | 19230248 | 50110 | 00001 | T4 8747107 | 128516 | Ryan, Thomas E ARCHITECT | -2.00 | 100.00 | -200.00 |
| **ADMINISTRATIVE** | | | | | | | | | |
| 06/07/20 06/07/2013 | 19230248 | 50120 | 00001 | T4 9057499 | 37776 | Vampran, Lee D ADMINISTRATIVE | 1.00 | 50.00 | 50.00 |
| 03/01/20 03/01/2013 | 19230248 | 50110 | 00001 | T4 8781211 | 37776 | Vampran, Lee D ADMINISTRATIVE | 1.00 | 50.00 | 50.00 |

Total Labor                                                                5,990.00

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

Invoice Date  06/19/2013
Invoice       5555428
Project       19230248
Reference     1012

BILLING BACKUP

Page 3

| G/L DATE<br>SRV DATE | JOB/<br>LBR CMT | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Task:  00002  Design/Construction Documents** | | | | | | | | | |
| Labor | | | | | | | | | |
| ARCHITECT | | | | | | | | | |
| 02/22/20<br>12/14/2012 | 19230248 | 50110 | 00002 | T4 8746413 | 128516 | Ryan, Thomas E<br>ARCHITECT | -1.00 | 100.00 | -100.00 |
| 02/22/20<br>12/13/2012 | 19230248 | 50110 | 00002 | T4 8746413 | 128516 | Ryan, Thomas E<br>ARCHITECT | -1.00 | 100.00 | -100.00 |
| 02/22/20<br>12/12/2012 | 19230248 | 50110 | 00002 | T4 8746413 | 128516 | Ryan, Thomas E<br>ARCHITECT | -2.00 | 100.00 | -200.00 |
| 02/22/20<br>12/11/2012 | 19230248 | 50110 | 00002 | T4 8746413 | 128516 | Ryan, Thomas E<br>ARCHITECT | -2.00 | 100.00 | -200.00 |
| 02/22/20<br>12/10/2012 | 19230248 | 50110 | 00002 | T4 8746413 | 128516 | Ryan, Thomas E<br>ARCHITECT | -2.00 | 100.00 | -200.00 |
| | Total Labor | | | | | | | | -800.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3



**Remittance Page**

| | |
|---|---|
| Invoice Date | 06/25/2013 |
| Invoice | 5565894 |
| Project | 19229964 |
| Page | 1 |

Reference: 1111

For:   H&E Design Changes

Professional Services for Period Ending 01/11/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**          $1,202.50  USD
Terms:               Net 30

\* Make checks payable to: URS Corporation
\* Please indicate invoice number and/or project number on check
\* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:        URS Corporation
Bank:           Wells Fargo Bank
Account No.:    4520-086471
ABA Routing No.:  121-000-248
Swift Code:     WFBIUS6S

Remittance Information can be sent to:
Email:          RemitTo@urs.com
Fax:            (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**





| | | |
|---|---|---|
| Invoice Date | 06/25/2013 |
| Invoice | 5565894 |
| Project | 19229964 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: 1111

For: H&E Design Changes

Professional Services for Period Ending 01/11/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | |
| Task: 00001  Project Management | 1,052.50 | 0.00 | 1,052.50 |
| Task: 00002  Design/Construction Documents | 150.00 | 0.00 | 150.00 |
| Total this job | **1,202.50** | **0.00** | **1,202.50** |
| | | | |
| TOTAL THIS INVOICE | 1,202.50 | 0.00 | $1,202.50 USD |

Project Manager: Larry Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 06/25/2013 |
| Invoice | 5565894 |
| Project | 19229964 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 01/11/2013

Job: 19229964  H&E Design Changes
  Task:  00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| PRINCIPAL | | | |
| Johnson Jr, Larry O | 6.00 | 165.00 | 990.00 |
| ADMINISTRATION | | | |
| Vampran, Lee D | 1.00 | 50.00 | 50.00 |
| Shillingburg, Stephanie B | 0.25 | 50.00 | 12.50 |
| Subtotal | 7.25 | | 1,052.50 |
| **Total Labor** | | | **1,052.50** |
| | | *Total due this task* | *1,052.50* |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320661

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 06/25/2013 |
| Invoice | 5565894 |
| Project | 19229964 |
| Page | 4 |

Reference: 1111

For:   H&E Design Changes

*Task: 00002 Design/Construction Documents*

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Architect I | | | |
| Miller, John B | 3.00 | 50.00 | 150.00 |
| Subtotal | 3.00 | | 150.00 |
| **Total Labor** | | | **150.00** |
| *Total due this task* | | | *150.00* |
| *Total due this job* | | | **1,202.50** |
| **TOTAL THIS INVOICE** | | | **$1,202.50** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**



BILLING BACKUP

Page 1

Invoice Date  06/25/2013
Invoice      5565894
Project      19229964
Reference    1111

| G/L DATE<br>SRV DATE | JOB/<br>LBR CMT | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | | | | | | | |
| **Task: 00001  Project Management** | | | | | | | | | |
| **Labor** | | | | | | | | | |
| **PRINCIPAL** | | | | | | | | | |
| 12/21/20<br>12/21/2012 | 19229964 | 50110 | 00001 | T4 8582568 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 1.00 | 165.00 | 165.00 |
| 12/14/20<br>12/14/2012 | 19229964 | 50110 | 00001 | T4 8565521 | 66831 | Johnson Jr, Larry O<br>PRINCIPAL | 5.00 | 165.00 | 825.00 |
| **ADMINISTRATION** | | | | | | | | | |
| 12/14/20<br>12/14/2012 | 19229964 | 50110 | 00001 | T4 8569485 | 37776 | Vampran, Lee D<br>ADMINISTRATION | 1.00 | 50.00 | 50.00 |
| 12/14/20<br>12/14/2012 | 19229964 | 50110 | 00001 | T4 8569736 | 39606 | Shillingburg, Stephanie B<br>ADMINISTRATION | 0.25 | 50.00 | 12.50 |
| **Total Labor** | | | | | | | | | **1,052.50** |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

Invoice Date  06/25/2013                         BILLING BACKUP                                        Page 2
Invoice      5565894
Project      19229964
Reference    1111

| G/L DATE JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|
| **Task: 00002 Design/Construction Documents** | | | | | | | | |
| **Labor** | | | | | | | | |
| Architect I | | | | | | | | |
| 12/14/20  19229964 12/14/2012 | 50110 | 00002 | T4 8568025 | 128563 | Miller, John B Architect I | 3.00 | 50.00 | 150.00 |
| Total Labor | | | | | | | | 150.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3



Remittance Page

| | |
|---|---|
| Invoice Date | 07/24/2013 |
| Invoice | 5588906 |
| Project | 19229964 |
| Page | 1 |

Reference: 1111

For: H&E Design Changes

Professional Services for Period Ending 07/12/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:           $2,450.00 USD
Terms:                Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

**Regular Mail (USPS):**     URS Corporation
                             P.O. Box 116183
                             Atlanta GA 30368-6183
                             US

**Overnight Courier:**       URS Corporation
                             Lock Box No. 116183
                             100 South Crest Drive
                             Stockbridge, GA  30281
                             Attention: Atlanta Lockbox
                             (877) 786-3333

**Electronic Funds Transfer:**
    Account:         URS Corporation
    Bank:            Wells Fargo Bank
    Account No.:     4520-086471
    ABA Routing No.: 121-000-248
    Swift Code:      WFBIUS6S

Remittance Information can be sent to:
    Email:          RemitTo@urs.com
    Fax:            (512) 419-6937   Attn: Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | | 07/24/2013 |
| Invoice | | 5588906 |
| Project | | 19229964 |
| Page | | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 07/12/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | |
| Task:  00001  Project Management | 2,450.00 | 0.00 | 2,450.00 |
| **Total this job** | **2,450.00** | **0.00** | **2,450.00** |
| **TOTAL THIS INVOICE** | **2,450.00** | **0.00** | **$2,450.00 USD** |

Project Manager: Larry Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY

 **URS**

| | |
|---|---|
| Invoice Date | 07/24/2013 |
| Invoice | 5588906 |
| Project | 19229964 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 07/12/2013

Job: 19229964  H&E Design Changes
   Task: 00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| | | | |
| SR. ARCHITECT | | | |
| Ryan, Thomas E | 24.00 | 100.00 | 2,400.00 |
| ADMINISTRATION | | | |
| Vampran, Lee D | 1.00 | 50.00 | 50.00 |
| Subtotal | 25.00 | | 2,450.00 |
| **Total Labor** | | | **2,450.00** |
| | | *Total due this task* | 2,450.00 |
| | | *Total due this job* | 2,450.00 |
| | | **TOTAL THIS INVOICE** | **$2,450.00** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320664

**Exhibit 3**

Attachment 2-C

NON-CERTIFIED COPY

Invoice Date  07/24/2013
Invoice       5588906
Project       19229964
Reference     1111

BILLING BACKUP

Page 1

| G/L DATE<br>SRV DATE | JOB/<br>LBR CMT | GL ACCT | TASK | DOC / INV# | EMP /<br>VENDOR # | NAME /<br>DESCRIPTION | HOURS /<br>QTY | RATE | BILLING<br>AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Job:  19229964  H&E Design Changes** | | | | | | | | | |
| **Task:  00001  Project Management** | | | | | | | | | |
| **Labor** | | | | | | | | | |
| SR. ARCHITECT | | | | | | | | | |
| 06/28/20<br>06/28/2013 | 19229964 | 50110 | 00001 | T4 9117846 | 128516 | Ryan, Thomas E<br>SR. ARCHITECT | 11.00 | 100.00 | 1,100.00 |
| 06/21/20<br>06/21/2013 | 19229964 | 50110 | 00001 | T4 9097073 | 128516 | Ryan, Thomas E<br>SR. ARCHITECT | 8.00 | 100.00 | 800.00 |
| 06/14/20<br>06/14/2013 | 19229964 | 50110 | 00001 | T4 9076688 | 128516 | Ryan, Thomas E<br>SR. ARCHITECT | 5.00 | 100.00 | 500.00 |
| ADMINISTRATION | | | | | | | | | |
| 06/14/20<br>06/14/2013 | 19229964 | 50110 | 00001 | T4 9078052 | 37776 | Vampran, Lee D<br>ADMINISTRATION | 1.00 | 50.00 | 50.00 |
| **Total Labor** | | | | | | | | | **2,450.00** |

NON-CERTIFIED COPY



**Remittance Page**

| | |
|---|---|
| Invoice Date | 07/25/2013 |
| Invoice | 5588931 |
| Project | 19230248 |
| Page | 1 |

Reference: 1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 07/12/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:           $3,050.00  USD
Terms:                Net 30

\*   Make checks payable to: URS Corporation
\*   Please indicate invoice number and/or project number on check
\*   Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**     URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:          URS Corporation
Bank:             Wells Fargo Bank
Account No.:      4520-086471
ABA Routing No.:  121-000-248
Swift Code:       WFBIUS6S

Remittance Information can be sent to:
Email:            RemitTo@urs.com
Fax:              (512) 419-8937   Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | |
|---|---|
| Invoice Date | 07/25/2013 |
| Invoice | 5588931 |
| Project | 19230248 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

<u>Professional Services for Period Ending 07/12/2013</u>

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: **19230248  H&E BR HQ Interior Design** | 3,050.00 | 0.00 | 3,050.00 |
| Task: 00001  Project Management | | | |
| **Total this job** | **3,050.00** | **0.00** | **3,050.00** |
| **TOTAL THIS INVOICE** | **3,050.00** | **0.00** | **$3,050.00 USD** |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | | 07/25/2013 |
| Invoice | | 5588931 |
| Project | | 19230248 |
| Page | | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 07/12/2013

Job: 19230248  H&E BR HQ Interior Design
  Task: 00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| ARCHITECT | | | |
| Ryan, Thomas E | 30.00 | 100.00 | 3,000.00 |
| ADMINISTRATIVE | | | |
| Vampran, Lee D | 1.00 | 50.00 | 50.00 |
| Subtotal | 31.00 | | 3,050.00 |
| **Total Labor** | | | 3,050.00 |
| | | Total due this task | 3,050.00 |
| | | Total due this job | 3,050.00 |
| | | TOTAL THIS INVOICE | $3,050.00 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320829

Exhibit 3

Attachment 2-C


NON-CERTIFIED COPY

NON-CERTIFIED COPY

| Invoice Date | 07/25/2013 |
|---|---|
| Invoice | 5588931 |
| Project | 19230248 |
| Reference | 1012 |

BILLING BACKUP

Page 1

| G/L DATE SRV DATE | JOB/ LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Job: 19230248  H&E BR HQ Interior Design** | | | | | | | | | |
| **Task: 00001  Project Management** | | | | | | | | | |
| **Labor** | | | | | | | | | |
| ARCHITECT | | | | | | | | | |
| 07/12/20 07/12/2013 | 19230248 | 50110 | 00001 | T4 9157709 | 128516 | Ryan, Thomas E ARCHITECT | 5.00 | 100.00 | 500.00 |
| 07/05/20 07/05/2013 | 19230248 | 50110 | 00001 | T4 9137241 | 128516 | Ryan, Thomas E ARCHITECT | 6.00 | 100.00 | 600.00 |
| 06/28/20 06/28/2013 | 19230248 | 50110 | 00001 | T4 9117846 | 128516 | Ryan, Thomas E ARCHITECT | 7.00 | 100.00 | 700.00 |
| 06/21/20 06/21/2013 | 19230248 | 50110 | 00001 | T4 9097073 | 128516 | Ryan, Thomas E ARCHITECT | 8.00 | 100.00 | 800.00 |
| 06/14/20 06/14/2013 | 19230248 | 50110 | 00001 | T4 9076688 | 128516 | Ryan, Thomas E ARCHITECT | 4.00 | 100.00 | 400.00 |
| ADMINISTRATIVE | | | | | | | | | |
| 06/14/20 06/14/2013 | 19230248 | 50110 | 00001 | T4 9078052 | 37776 | Vampran, Lee D ADMINISTRATIVE | 1.00 | 50.00 | 50.00 |
| **Total Labor** | | | | | | | | | **3,050.00** |

Attachment 2-C

Exhibit 3

 **URS**

**Remittance Page**

| | |
|---|---|
| Invoice Date | 08/21/2013 |
| Invoice | 5626064 |
| Project | 19229775 |
| Page | 1 |

Reference: WO#0111

For: H&E Phase IV BN & CA

Professional Services for Period Ending 08/16/2013

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

**Total Due:**       $-8,618.22  USD
Terms:              Net 30

\* Make checks payable to: URS Corporation
\* Please indicate invoice number and/or project number on check
\* Please include this stub with payment

**Regular Mail (USPS):**   URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

**Overnight Courier:**   URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention:  Atlanta Lockbox
(877) 786-3333

**Electronic Funds Transfer:**
Account:        URS Corporation
Bank:           Wells Fargo Bank
Account No.:    4520-086471
ABA Routing No.:   121-000-248
Swift Code:     WFBIUS6S

Remittance Information can be sent to:
Email:          RemitTo@urs.com
Fax:            (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

 NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 08/21/2013 |
| Invoice | 5626064 |
| Project | 19229775 |
| Page | 2 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO#0111

For:  H&E Phase IV BN & CA

<u>Professional Services for Period Ending 08/16/2013</u>

|  | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job:  19229775  H&E Phase IV BN & CA | -8,618.22 | 0.00 | -8,618.22 |
| Total this job | -8,618.22 | 0.00 | -8,618.22 |
| TOTAL THIS INVOICE | -8,618.22 | 0.00 | $-8,618.22 USD |

Project Manager: Neal Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C





| | | |
|---|---|---|
| Invoice Date | | 08/21/2013 |
| Invoice | | 5626064 |
| Project | | 19229775 |
| Page | | 3 |

H & E Equipment Services, Inc.
Attn: Frankie Wynn
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  WO#0111

For:  H&E Phase IV BN & CA

<u>Professional Services for Period Ending 08/16/2013</u>
*Job: 19229775  H&E Phase IV BN & CA*

LUMP SUM

| | |
|---|---|
| Lump Sum Billing | -8,618.22 |
| **Total Lump Sum** | **-8,618.22** |
| | |
| *Total due this Job* | **-8,618.22** |
| | |
| **TOTAL THIS INVOICE** | **$-8,618.22** USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320609

**Exhibit 3**

Attachment 2-C

NON-CERTIFIED COPY



**URS**                                   Remittance Page

| | |
|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5681317 |
| Project | 19229964 |
| Page | 1 |

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 10/11/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due:                         $950.00  USD
Terms:                             Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS):      URS Corporation
                          P.O. Box 116183
                          Atlanta GA 30368-6183
                          US

Overnight Courier:        URS Corporation
                          Lock Box No. 116183
                          100 South Crest Drive
                          Stockbridge, GA  30281
                          Attention:  Atlanta Lockbox
                          (877) 786-3333

Electronic Funds Transfer:
   Account:               URS Corporation
   Bank:                  Wells Fargo Bank
   Account No.:           4520-086471
   ABA Routing No.:       121-000-248
   Swift Code:            WFBIUS6S

Remittance Information can be sent to:
   Email:                 RemitTo@urs.com
   Fax:                   (512) 419-6937    Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

Exhibit 3

Attachment 2-C





|  | Invoice Date | 10/24/2013 |
|---|---|---|
|  | Invoice | 5681317 |
|  | Project | 19229964 |
|  | Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 10/11/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| **Job: 19229964  H&E Design Changes** | | | |
| Task:  00001  Project Management | 950.00 | 0.00 | 950.00 |
| **Total this job** | 950.00 | 0.00 | 950.00 |
| **TOTAL THIS INVOICE** | 950.00 | 0.00 | $950.00 USD |

Project Manager: Larry Johnson

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



|  |  |
|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5681317 |
| Project | 19229964 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1111

For:   H&E Design Changes

Professional Services for Period Ending 10/11/2013

Job: 19229964  H&E Design Changes
   Task: 00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| SR. ARCHITECT | | | |
| Ryan, Thomas E | 8.00 | 100.00 | 800.00 |
| ADMINISTRATION | | | |
| Vampran, Lee D | 3.00 | 50.00 | 150.00 |
| Subtotal | 11.00 | | 950.00 |
| **Total Labor** | | | **950.00** |
| *Total due this task* | | | *950.00* |
| *Total due this job* | | | *950.00* |
| **TOTAL THIS INVOICE** | | | **$950.00 USD** |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320667

**Exhibit 3**

**Attachment 2-C**



Invoice Date   10/24/2013

BILLING BACKUP

Page 1

Invoice        5681317
Project        19229964
Reference      1111

| G/L DATE JOB/ SRV DATE LBR CMT | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|

**Job: 19229964 H&E Design Changes**
   **Task: 00001 Project Management**

Labor
SR. ARCHITECT

| 07/19/20 07/19/2013 | 19229964 | 50110 | 00001 | T4 9178270 | 128516 | Ryan, Thomas E SR. ARCHITECT | 8.00 | 100.00 | 800.00 |

ADMINISTRATION

| 09/13/20 09/13/2013 | 19229964 | 50110 | 00001 | T4 9341601 | 37776 | Vampran, Lee D ADMINISTRATION | 1.00 | 50.00 | 50.00 |
| 08/16/20 08/16/2013 | 19229964 | 50110 | 00001 | T4 9261077 | 37776 | Vampran, Lee D ADMINISTRATION | 1.00 | 50.00 | 50.00 |
| 07/19/20 07/19/2013 | 19229964 | 50110 | 00001 | T4 9179608 | 37776 | Vampran, Lee D ADMINISTRATION | 1.00 | 50.00 | 50.00 |

Total Labor                                                                                           950.00

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

 **URS**

**Remittance Page**

| | |
|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5681338 |
| Project | 19230248 |
| Page | 1 |

Reference: 1012
For: H&E BR HQ Interior Design

Professional Services for Period Ending 10/11/2013

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Total Due: $550.00 USD
Terms: Net 30

* Make checks payable to: URS Corporation
* Please indicate invoice number and/or project number on check
* Please include this stub with payment

Regular Mail (USPS): URS Corporation
P.O. Box 116183
Atlanta GA 30368-6183
US

Overnight Courier: URS Corporation
Lock Box No. 116183
100 South Crest Drive
Stockbridge, GA  30281
Attention: Atlanta Lockbox
(877) 786-3333

Electronic Funds Transfer:
Account: URS Corporation
Bank: Wells Fargo Bank
Account No.: 4520-086471
ABA Routing No.: 121-000-248
Swift Code: WFBIUS6S

Remittance Information can be sent to:
Email: RemitTo@urs.com
Fax: (512) 419-6937   Attn:  Cash Applications

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**

NON-CERTIFIED COPY



| | | |
|---|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5681338 |
| Project | 19230248 |
| Page | 2 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference: 1012

For:   H&E BR HQ Interior Design

Professional Services for Period Ending 10/11/2013

| | SERVICES | EXPENSES | TOTAL |
|---|---|---|---|
| Job: **19230248  H&E BR HQ Interior Design** | | | |
| Task: 00001  Project Management | 550.00 | 0.00 | 550.00 |
| **Total this job** | 550.00 | 0.00 | 550.00 |
| **TOTAL THIS INVOICE** | 550.00 | 0.00 | $550.00 USD |

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

**Exhibit 3**

**Attachment 2-C**



NON-CERTIFIED COPY


**URS**

| | |
|---|---|
| Invoice Date | 10/24/2013 |
| Invoice | 5681338 |
| Project | 19230248 |
| Page | 3 |

H & E Equipment Services, Inc.
11100 Mead Road, Suite 200
Baton Rouge LA 70816

Reference:  1012

For:   H&E BR HQ Interior Design

<u>Professional Services for Period Ending 10/11/2013</u>

Job: 19230248  H&E BR HQ Interior Design
   Task: 00001  Project Management

| LABOR | HOURS | RATE | AMOUNT |
|---|---|---|---|
| ARCHITECT | | | |
| Ryan, Thomas E | 5.00 | 100.00 | 500.00 |
| ADMINISTRATIVE | | | |
| Vampran, Lee D | 1.00 | 50.00 | 50.00 |
| Subtotal | 6.00 | | 550.00 |
| **Total Labor** | | | **550.00** |

*Total due this task*  550.00

*Total due this job*  550.00

**TOTAL THIS INVOICE**  **$550.00** USD

Please contact Larry O Johnson Jr at 225 231-6343 or via email at neal.johnson@urs.com
if you have any questions regarding this invoice.

F7320831

**Exhibit 3**

Attachment 2-C

NON-CERTIFIED COPY

Invoice Date  10/24/2013
Invoice       5681338
Project       19230248
Reference     1012

BILLING BACKUP

Page 1

| G/L DATE  JOB/ SRV DATE LBR CMT | | GL ACCT | TASK | DOC / INV# | EMP / VENDOR # | NAME / DESCRIPTION | HOURS / QTY | RATE | BILLING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| **Job:  19230248  H&E BR HQ Interior Design** | | | | | | | | | |
| **Task:  00001  Project Management** | | | | | | | | | |
| **Labor** | | | | | | | | | |
| **ARCHITECT** | | | | | | | | | |
| 07/26/20 07/26/2013 | 19230248 | 50110 | 00001 | T4 9198671 | 128516 | Ryan, Thomas E ARCHITECT | 1.00 | 100.00 | 100.00 |
| 07/19/20 07/19/2013 | 19230248 | 50110 | 00001 | T4 9178270 | 128516 | Ryan, Thomas E ARCHITECT | 4.00 | 100.00 | 400.00 |
| **ADMINISTRATIVE** | | | | | | | | | |
| 07/19/20 07/19/2013 | 19230248 | 50110 | 00001 | T4 9179608 | 37776 | Vampran, Lee D ADMINISTRATIVE | 1.00 | 50.00 | 50.00 |
| | Total Labor | | | | | | | | 550.00 |

NON-CERTIFIED COPY

Attachment 2-C

Exhibit 3

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA


```
*  *  *  *  *  *  *  *  *
                         *
H&E EQUIPMENT SERVICES   *
                         *  NUMBER 626,308
VERSUS                   *
                         *  DIVISION "D"
URS CORPORATION          *
ARCHITECTURE, P.C., URS  *
CORPORATION, L O'NEAL    *
JOHNSON AND THOMAS E.    *
RYAN, III                *
                         *
*  *  *  *  *  *  *  *  *
```


Deposition of JOHN ENGQUIST, taken

on Friday, August 5, 2016, commencing at 9:59

a.m., in the offices of Adams and Reese, LLP,

Attorneys at Law, 450 Laurel Street, Suite 1900,

Baton Rouge, Louisiana, 70801.

NON-CERTIFIED COPY

Exhibit 4

1                    I N D E X

2

3                                        Page

4

Caption                              1
5   Index of Exhibits                3
Appearances                          4
6   Agreement of Counsel             5

7   Examination

8      PHILIP A. FRANCO, ESQ.        6

9

              *   *   *   *   *
10

Witness' Certificate                94
11  Reporter's Page                 95
Certificate                         96

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NON-CERTIFIED COPY

Exhibit 4

Page 3

1                    INDEX OF EXHIBITS

2

     Number                              Page

3

     1 Agreement for Professional        20
4        Services between H&E Equipment
         Services and URS 8/30/06

5

     2 A-4 Application Site Plan, City   27
6        of Baton Rouge October 18, 2006
         H&E 0000109-0000113

7

     3 July 10, 2008 string from         38
8        Brad Barber to John Engquist
         H&E 0002958-0002960

9

     4 Short Form Master Agreement For   40
10       Professional Services between
         H&E Equipment Services and URS
11       August 13, 2009

12   5 December 18, 2009 Email string    44
         from Leonard St. Germain to
13       Neil Favre
         H&E 0005870-0005871

14

     6 May 3, 2011 letter from Neal      46
15       Johnson to Bob Morris, et al
         H&E 0003392-0003393

16

     7 November 27, 2012 Email from Becky  52
17       Walker to Neal Johnson, et al
         H&E 0003177-0003178

18

     8 January 2, 2013 Email string from  68
19       Brad Barber to John Engquist
         H&E 0003083-0003085

20

     9 January 19, 2013 Email from Brad   71
21       Barber to John Engquist
         H&E 0003179-0003186

22

     10 February 5, 2013 Email string from  80
23        Brad Barber to John Engquist
          H&E 0003198-0003200

24

25

NON-CERTIFIED COPY

Exhibit 4

Page 4

1    APPEARANCES:

2

         Representing the Plaintiff:
3

         FISHMAN HAYGOOD, LLP
4        Attorneys at Law
         201 St. Charles Avenue, Suite 4600
5        New Orleans, Louisiana  70170

6        BY:  BRENT B. BARRIERE, ESQ.

7

8

9        Representing the Defendant:

10       ADAMS AND REESE, LLP
         Attorneys at Law
11       4500 One Shell Square
         New Orleans, Louisiana  70139
12
         BY:  PHILIP A. FRANCO, ESQ.
13            KELLEN J. MATHEWS, ESQ.

14
     ALSO PRESENT:
15

16       Representing H&E Equipment Services:

17       JOHN A. BERRY, ESQ.
         Corporate Counsel
18       7500 Pecue Lane
         Baton Rouge, Louisiana  70809
19
         Neal Johnson
20
     Reported by:
21            KAY E. DONNELLY
              Certified Court Reporter
22            State of Louisiana

23

24

25

NON-CERTIFIED COPY

Exhibit 4

Page 5

1                    S T I P U L A T I O N

2

3        It is stipulated and agreed by and between

4   counsel that the deposition of JOHN ENGQUIST is

5   hereby being taken under the Louisiana Code of

6   Civil Procedure in accordance with the Code.

7        The formalities of sealing and

8   certification are hereby waived.  The witness

9   will reserve the right to read and sign the

10   deposition.  The party responsible for service

11   of the discovery material shall retain the

12   original.

13        All objections, save those as to the form

14   of the questions, are hereby reserved until such

15   time as this deposition, or any part thereof,

16   may be used or sought to be used in evidence,

17   and are to be made in accordance with the Code

18   of Civil Procedure.

19                 *   *   *   *   *

20        KAY E. DONNELLY, Certified Court Reporter,

21   in and for the State of Louisiana, officiated in

22   administering the oath to the witness.

23

24

25

NON-CERTIFIED COPY

Exhibit 4

1          JOHN ENGQUIST, H&E Equipment Services,

2     7500 Pecue Lane, Baton Rouge, Louisiana, 70809,

3     after having been first duly sworn, testified on

4     his oath as follows:

5     EXAMINATION BY MR. FRANCO:

6          Q.  Would you state your full and mane

7     address for the Record, please?

8          A.  John Engquist, 525 Lafayette Street,

9     Apartment 912, Baton Rouge.

10          Q.  Mr. Engquist, have you ever been deposed

11     before?

12          A.  Yes.

13          Q.  So you understand the routine?

14          A.  I do.

15          Q.  All right.  If you don't understand a

16     word I am using or the question, just let me

17     know, and I'll try to rephrase that.

18              Otherwise, I'll assume that you

19     understand my --

20          A.  Sure.

21          Q.  Prior to your deposition today, did you

22     review anything to prepare for your deposition?

23          A.  I did not.

24          Q.  Did you speak to anyone in order to

25     prepare for your deposition, other than your

NON-CERTIFIED COPY

Exhibit 4

Page 7

1   attorneys?

2       A.  No.

3       Q.  Can you give me your educational

4   background, sir?

5       A.  I went to high school, Baton Rouge High.

6   I went to LSU for three years, and went to work

7   at H&E Equipment.

8       Q.  Did you attain any degree?

9       A.  No.

10      Q.  And you said you went to work directly

11  to H&E?

12      A.  That is correct.

13      Q.  And what was your first position at H&E?

14      A.  Mechanic's helper.

15      Q.  And who hired you?

16      A.  The service manager.

17      Q.  What was the business of H&E at the

18  time?

19      A.  We were a heavy construction equipment

20  distributor.

21      Q.  And your father was involved?

22      A.  That is correct.  He founded the

23  business.

24      Q.  And at the time you started working

25  there, what was your father's role in the

NON-CERTIFIED COPY

Exhibit 4

Page 8

1    business?

2        A.  He was the CEO and owner.

3        Q.  Was he the sole owner?

4        A.  There was a -- he had a minority

5    partner.  A gentleman by name of the Bob

6    Kennedy, who -- I don't remember.  I think he

7    owned 15 percent of the business at the time.

8        Q.  All right.  And what year did you start

9    with H&E?

10       A.  Full-time in '75, I believe.  '74 or

11   '75.

12       Q.  Did you have a major at LSU?

13       A.  Business.

14       Q.  Just give me an idea of how you

15   progressed in the Company, please, in terms of

16   positions.

17       A.  I started there working summers probably

18   in junior high school as a mechanic's helper.

19   When I went there full-time, I started as a

20   mechanic's helper.

21          I came into a rental position.  Kind of

22   an inside rental coordinator.  Then they moved

23   me to Lafayette for several years to cover a

24   sales territory.

25          Brought me back into Baton Rouge as

NON-CERTIFIED COPY

Exhibit 4

Page 9

1    in-house sales -- well, actually, into the parts

2    department for a while.  Then in-house sales,

3    sales manager, executive VP, then president.

4         And since then, I have acquired the

5    business from my father in '95, and since then,

6    I have been the CEO.

7         Q.  As executive vice president, were you

8    the only executive vice president?

9         A.  I was.

10        Q.  Were there other vice presidents at the

11   time?

12        A.  I am sure there was VP of sales, that

13   sort of thing, yes.

14        Q.  So was executive vice president the

15   highest position right below president?

16        A.  That is correct.

17        Q.  And all this time when we are talking

18   1995 when you acquired it from your father,

19   obviously, it was a private company, correct?

20        A.  That is correct.

21        Q.  All right.  And when you became the CEO,

22   where was the headquarters building?

23        A.  In Baton Rouge on Airline Highway.  6600

24   Airline Highway.

25        Q.  And was that facility owned --

NON-CERTIFIED COPY

Exhibit 4

1    A.  Yes.

2    Q.  -- or leased?

3    A.  It was owned.

4    Q.  All right.  Did it share space at that

5  location?

6    A.  I should say it was actually owned by

7  the family and leased by the Company.

8    Q.  And was that the only facility at that

9  site or was there any branch offices that shared

10  that site?

11    A.  We had a branch in Kenner, Louisiana.

12  We had a branch in Shreveport, Louisiana.  We

13  had a branch in Lake Charles.  We were in -- we

14  were in Houston.

15      And I tell you, I would have to go back

16  to give you real accurate timeframes.  We

17  were -- that is -- that is pretty much it.

18    Q.  Okay.  Did there come at time when the

19  Company became a public company?

20    A.  Yeah.  The first thing that happened, in

21  '99, I sold a controlling interest -- half of

22  the business, but they had a controlling

23  interest -- to a private equity shop in New York

24  by the name of Bruckmann, Rosser and Sherrill.

25      And we -- you know, the intent at that

NON-CERTIFIED COPY

Exhibit 4

Page 11

1    time was to -- they acquired another company at

2    the same time called ICM out of Salt Lake City.

3          The intent was to put the two businesses

4    together at that time.  The financing markets

5    kind of fell apart, the high yield fixed.  We

6    ran the businesses separately for -- that was in

7    '99.  We ran them separately until '02.

8          We did a bond deal.  H&E acquired ICM,

9    and that created H&E Equipment Services.  And

10   then in '06, we took the Company public.

11       Q.  I'm sorry.  What year?

12       A.  '06.  So we have been public for ten

13   years.

14       Q.  What kind business was ICM?

15       A.  The same type business we were.  They

16   are a heavy construction equipment distributor

17   and a -- and slash rental company.

18       Q.  And that equipment at the time was not

19   only rubber tires, but heavy tracks, as well?

20       A.  That is correct.

21       Q.  Now, once you became public, what was

22   your position at the Company?

23       A.  CEO.

24       Q.  Is that the highest administrative

25   position or management position, I should say,

NON-CERTIFIED COPY

Exhibit 4

Page 12

1    of the Company?

2        A.  It is.

3        Q.  And since 2006, I assume you have had a

4    board of directors?

5        A.  I do.

6        Q.  How many current board members are

7    there?

8        A.  I believe there is eight.

9        Q.  Has that been the same number since you

10   went public?

11       A.  Well, yeah.  It would fluctuate one or

12   two up and down; but, yes.

13       Q.  Can you give me the names of the current

14   board members?

15       A.  I can.  Bruce Bruckmann, Paul Arnold --

16   oh, Christ.  I mean, it is a matter of record.

17   You can -- you can pull that up.

18       Q.  I assume all these gentlemen are not

19   local?

20       A.  No.  Actually, I have one Louisiana

21   board member.  Paul Arnold.  He lives in New

22   Orleans -- or outside of New Orleans.  He was

23   the CEO of Cort Furniture Rental.

24           The rest of the board members, I've got

25   one in Boston.  I've got one in New York.  I've

NON-CERTIFIED COPY

Exhibit 4

Page 13

1   got one in Florida.  I've got one in Los

2   Angeles.  I've got one in San Francisco.  Only

3   one board member from Louisiana.

4       Q.  And are you the majority shareholder of

5   the Company?

6       A.  Yes.  And if -- if I am not the largest

7   shareholder today, I'm the second largest one.

8   The big institutional funds, that -- that goes

9   back and forth, but --

10      Q.  So these board members, were they

11  elected primarily by you?

12      A.  No.  By -- well, no, I -- they were

13  elected by a nominating committee on our board,

14  and, you know, Bruce Bruckmann, who had been

15  certainly severely, heavily involved in that.

16          Bruce was the principal in Bruckmann,

17  Rosser, and Sherrill, who was the private equity

18  shop that I sold half of the business to in '99.

19  And he has been a board member ever since and a

20  significant shareholder himself.

21      Q.  So is it fair to say the business of H&E

22  really hasn't changed?  It has just grown?

23      A.  It -- it has changed in that when -- you

24  know, when I started there, we were essentially

25  a distribution company.

Exhibit 4

NON-CERTIFIED COPY

Page 14

1          And today we have a distribution

2    component, but we are the seventh on eighth

3    largest rental business in the country.

4          So we have grown the rental component of

5    our business exponentially.  It is much more

6    rental focused than when I started there.

7          Q.  Percentage-wise, how is the rental

8    revenues --

9          A.  Today --

10         Q.  Wait.  Let me finish.

11         -- compared to sales?

12         A.  Today it is probably 35 percent rentals,

13    and the rest is distribution, various components

14    of the distribution, new equipment sales, used

15    equipment sales, parts, and service.

16         Q.  There came a time when H&E, obviously,

17    decided it wanted a different headquarter

18    building.  Time period, is it fair to say around

19    2006?

20         A.  Yeah.  I mean, that is -- you know, I

21    don't know exact, but, yeah, that is correct.

22         We had -- you know, we had moved our

23    corporate headquarters from Airline to Sherwood

24    Forest in the old IBM building there.  And it

25    was -- we have been outgrown that building for

NON-CERTIFIED COPY

**Exhibit 4**

1    some time.

2        Q.  Do you remember when you moved to

3    Sherwood Forest?  Even the year?

4        A.  I don't.  I -- I don't.

5        Q.  That is fair.

6        A.  It is a matter of record.

7        Q.  So the concept was you had outgrown the

8    building and you wanted a new location basically

9    for the headquarters, correct?

10       A.  That is correct.

11       Q.  All right.  Did you put anyone in charge

12   of finding the facility at H&E?

13       A.  Yeah.  Leonard St. Germain and -- and

14   later Johnny Jones were involved in that at that

15   time.

16       Q.  All right.  What was Leonard St.

17   Germain's position or title at the Company at

18   that time?

19       A.  He -- he was over our parts and service

20   operations, I believe.

21       Q.  What was his title, if you recall?

22       A.  I assume at the time -- and I'm not

23   certain -- vice president of product support.

24       Q.  But he was a vice president of

25   something?

NON-CERTIFIED COPY

Exhibit 4

1     A.  He was, yes.

2     Q.  All right.  And you said that later

3  became the task mainly of whom?

4     A.  Well, at some point in this whole

5  process, Leonard's job transitioned to a VP of

6  used equipment.

7         And at that point in time, Johnny Jones

8  took over those responsibilities.  And I can't

9  give you a date on that, but it was at some

10  point in that process.

11     Q.  What was Johnny Jones' position or title

12  at the time?

13     A.  He -- well, he was involved in parts and

14  service, also.  And, you know, there was some

15  shifting between their responsibility.  I can't

16  give you an exact timeframe on that.

17     Q.  All right.  Was he also a --

18     A.  Yes.

19     Q.  He was a vice president?

20     A.  Yes, he was.

21     Q.  So, he was a vice president when he took

22  over that transition?

23     A.  And you are referring to Johnny Jones?

24     Q.  Yes.

25     A.  Yes.

NON-CERTIFIED COPY

Exhibit 4

Page 17

1      Q.  Okay.  Do you remember what time period

2   that was?

3      A.  No, I don't.  But, again, I could go

4   back and look, but I couldn't give you a good

5   date.

6      Q.  So as far as you were concerned, who was

7   mainly responsible at the Company for

8   investigating a new location?

9      A.  Well, I think, you know, we had Johnny,

10  and, at some point, I think Leonard was involved

11  looking for a piece of property early on --

12  early in this process.

13         And we found this property on Pecue and

14  Airline, which I then went out and looked at and

15  probably negotiated the price and whatnot, and

16  ended up buying the piece of property.

17         Then we went through the design aspect

18  and, you know, getting everything put together.

19  And then the recession hit, and we put

20  everything on hold.

21     Q.  Okay.  We are going to get to that.

22         When you bought the property, was the

23  concept at that time just for the headquarters

24  or was the concept for a combination

25  headquarters and branch?

NON-CERTIFIED COPY

Exhibit 4

Page 18

1      A.  Combination headquarters and branch.

2      Q.  Why was that the target at that point?

3  Why did you want a headquarters and --

4      A.  Because we had two inadequate

5  facilities, one in Baton Rouge on -- at 6600

6  Airline Highway, and then one in Gonzales

7  that -- we had really outgrown both of them, and

8  we felt we could consolidate both of those

9  locations into one larger facility.

10     Q.  I'm sorry.  What was the one in Baton

11 Rouge?  Where was that?

12     A.  6600 Airline Highway.  Which is our

13 original location.

14     Q.  Was the headquarters building next to

15 that location --

16     A.  It was.

17     Q.  -- originally?

18     A.  Originally, it was one and the same.  We

19 were all in that one facility, yes.

20     Q.  How did it come about that URS was

21 directed to help you with the design or layout

22 of the Baton Rouge facility?

23     A.  I -- I think it was, you know, a number

24 of people.  Johnny, Leonard, you know, Brad

25 Barber, myself.  You know, we picked them

NON-CERTIFIED COPY

Exhibit 4

Page 19

1    because they are a large national firm.

2        Q.  But you were involved in that decision,

3    I take it?

4        A.  Yes.

5        Q.  Had you done any business with URS prior

6    to that time?

7        A.  No.

8        Q.  Did you interview any other architect or

9    design engineering companies in connection

10   with that?

11       A.  I can't answer that.  I suspect Leonard

12   and Johnny could answer that question.  I

13   don't -- I don't know.

14       Q.  But you don't recall being involved in

15   that?

16       A.  No.

17       Q.  I am going to show you, Mr. Engquist, a

18   copy of -- and I am sorry.  I'm going to be

19   tossing these across the table.  I'm not trying

20   to be rude, but --

21       A.  All right.

22       Q.  -- it is not an easy distance here.

23           One copy for you.  One copy for Mr.

24   Barriere.

25       A.  All right.

NON-CERTIFIED COPY

Exhibit 4

Page 20

1          MR. FRANCO:

2               I'm going to label it as Exhibit 1.

3    EXAMINATION BY MR. FRANCO:

4      Q.  This is the agreement for professional

5    services between H&E and URS.  Have you seen

6    this before?

7      A.  I don't know if I seen -- I'm sure I

8    have.

9      Q.  Okay.  For the Record, this is dated

10   August 28th, 2006.  And if you turn to the last

11   page, it appears to be signed by Leonard St.

12   Germain.  Do you see that?

13     A.  Yep.

14     Q.  Did you discuss this agreement with Mr.

15   St. Germain before he signed it?

16     A.  I don't recall one way or the other.  I

17   mean, we would have had legal counsel review

18   this agreement, and whether or not I did, I

19   don't know.

20     Q.  There is no question that Mr. St.

21   Germain, at the time, was the one mainly

22   involved with this Baton Rouge concept?

23     A.  Yes.

24     Q.  And is there any question that he had

25   the authority to sign this?

NON-CERTIFIED COPY

Exhibit 4

Page 21

1       A.   No.

2       Q.   Okay.  That is fine.  Thank you.

3            Subsequent to this agreement that we

4    just talked about, do you recall attending a

5    concept presentation meeting to discuss the

6    concept with URS about what you wanted and

7    needed?

8       A.   Vaguely, yes.

9       Q.   Okay.

10      A.   I don't recall specifics, but I was

11   certainly involved in the conceptual aspects of

12   this.

13      Q.   And is it fair to say, Mr. Engquist,

14   from the very beginning the concept was to try

15   to have the headquarters and the branch building

16   at the Pecue site?

17      A.   Yes.

18      Q.   In connection with that meeting or

19   meetings -- there may have been more than one.

20   I don't know one way or the other -- but wasn't

21   there, at the time, a discussion of the staff,

22   the number of staff at the current facility and

23   what might be needed at the new facility?

24      A.   You know, I have no recollection of

25   that.  I'm sure there was.

NON-CERTIFIED COPY

Exhibit 4

Page 22

1      Q.  Is it fair to say that around September

2   of 2006, you had approximately 90 people in the

3   Corporate operations?

4      A.  I have no idea.  I mean, I couldn't

5   argue that one way or the other.

6      Q.  Now, in connection with these

7   discussions that took place between your people,

8   you perhaps, and URS, do you recall a discussion

9   about the equipment operations facility being

10  similar to the footprint in the Houston, Texas

11  facility?

12     A.  Not specifically, but it is similar in

13  size.  So it is -- that may have been the case.

14     Q.  All right.  When you say similar in

15  size, tell me a little bit about the Houston

16  facility.  What was at the Houston facility at

17  that time in 2006?

18     A.  And I am assuming, you know, these dates

19  and times all run together, but you are talking

20  about our Houston crane facility?

21     Q.  I am little --

22     A.  We have got multiple facilities.  I

23  don't know which one you are talking about.

24     Q.  So my understanding is that the

25  discussions were about the equipment operations

NON-CERTIFIED COPY

Exhibit 4

Page 23

1   facility at Baton Rouge should have a similar

2   footprint as the Houston, Texas facility?

3       A.  Well, I don't know which facility you

4   are talking about.  So --

5       Q.  All right.  How many facilities did H&E

6   have in Houston?

7       A.  We have -- well, at that time, I believe

8   we had two.

9       Q.  Okay.  And where were these located in

10  Houston?

11      A.  I can't give you addresses.  One was off

12  of the Loop.  It was a pure crane facility.  And

13  the other was closer to -- down towards Hobby

14  Airport, but I can't give you the address.

15      Q.  Okay.  Were both of these branch

16  offices?

17      A.  They were.

18      Q.  And you said one was a pure crane

19  facility.  What did it do?  Did it rent only --

20      A.  Distribution facility that serviced --

21  they sold product and they serviced product and

22  they rented product.  But it is specific to

23  cranes.

24          Our other facility there at the time was

25  an aerial operation.

NON-CERTIFIED COPY

Exhibit 4

1    Q.  Aerial you said?

2    A.  Yes.

3    Q.  What does that mean?

4    A.  Aerial lifts.  It is aerial work

5    platforms.  It is --

6    Q.  All right.

7    A.  -- a type of construction equipment used

8    to get people up in the air to work on

9    structures.

10    Q.  Got it.  Thank you.

11        The crane facility that you talked about

12    at Houston, was it rubber tired or heavy track

13    or both?

14    A.  Both.

15    Q.  Both?

16    A.  Both.

17    Q.  What was the yard composed of in terms

18    of surface?

19    A.  Concrete.

20    Q.  Concrete?

21    A.  Yep.

22    Q.  In terms of the size of that facility,

23    the concrete yard, was that similar to what

24    became Baton Rouge?

25    A.  I mean, I can't answer that.  I don't --

NON-CERTIFIED COPY

**Exhibit 4**

Page 25

1   I don't -- understand your question.

2       Q.  All right.  Let me rephrase it.

3           For instance, from what I have seen, the

4   Kenner facility that we are talking about in

5   this case was much smaller than the Baton Rouge

6   facility in terms of yard storage?

7       A.  Than our current Baton Rouge facility or

8   the old facility?

9       Q.  Correct.

10      A.  Yeah.

11      Q.  The current Baton Rouge facility?

12      A.  That is correct.

13      Q.  Fair statement?

14      A.  Yes.

15      Q.  In terms of size, was the size of the

16  pure crane facility in Houston more similar in

17  size to storage to Kenner or Baton Rouge?

18      A.  I can't say square footages of those

19  yards.  I just don't know.

20      Q.  Okay.  And --

21      A.  It is a -- it is a big facility

22  in Houston.

23      Q.  All right.  And when did H&E acquire

24  that facility, roughly?

25      A.  I can't tell you.  I mean, that is a

NON-CERTIFIED COPY

Exhibit 4

Page 26

1   matter -- we can go back and look.  It is a

2   matter of record, but we build facilities all

3   the time.  So I couldn't give you a date on

4   that.

5        Q.  All right.  Did H&E build that facility?

6        A.  It was built for us, and we leased that

7   facility.

8        Q.  But, for instance, the paved concrete

9   yard area was built for the H&E equipment?

10       A.  That is correct.

11       Q.  All right.  The aerial lift facility in

12  Houston, was that for rubber tires or heavy

13  track or both?

14       A.  Both.  The bulk of what we do there,

15  though, is rubber tires, I believe.

16       Q.  Okay.  And what is the yard surface at

17  that facility?

18       A.  I believe it is concrete, primarily.

19       Q.  And was that also built for H&E?

20       A.  It was.

21       Q.  Now, are you aware of anyone from the

22  Company, H&E, accompanying anyone from URS to

23  tour the Houston facility in connection with

24  planning?

25       A.  I have no idea.

NON-CERTIFIED COPY

Exhibit 4

Page 27

1    Q.  Now, Mr. Engquist, in connection with

2  planning for the Baton Rouge facility -- and for

3  the Record, when I say Baton Rouge facility, I

4  am talking about the Pecue facility.

5         When I say Kenner, I'm talking about the

6  Kenner facility at issue in this case.

7    A.  All right.

8    Q.  And Belle Chasse, I'm talking about the

9  Belle Chasse site.

10        In connection with the Baton Rouge

11  facility, when you purchased that property, I

12  assume it was completely undeveloped --

13    A.  That is correct.

14    Q.  -- correct?

15    A.  Uh-huh (affirmative response).

16    Q.  And you were aware that a site plan had

17  to be submitted to the Office of Planning

18  Commission in the City of Baton Rouge in order

19  to develop that site, correct?

20    A.  Correct.

21        MR. FRANCO:

22            I am going to show a document that

23  I'm going to label as Exhibit 2.

24  EXAMINATION BY MR. FRANCO:

25    Q.  And I'm going to ask you to look at the

NON-CERTIFIED COPY

Exhibit 4

Page 28

1    entire document, but it appears that this is

2    your signature?

3        A.  That is.

4        Q.  Which appears to be in a different

5    handwriting than the rest of the document.  Is

6    that a fair statement?  Or, is that your

7    handwriting on the rest of the document?

8        A.  No, that is not my handwriting.

9        Q.  All right.  But that is your signature,

10   and your signature is dated October 18, 2006?

11       A.  Right.

12       Q.  Is that your date handwriting?

13       A.  That is my signature.

14       Q.  Correct.

15           The October 18, 2006, is that your

16   handwriting, as well?

17       A.  I don't believe it is, no.

18       Q.  All right.  I assume you don't recall

19   executing this document?

20       A.  No, I don't.

21       Q.  All right.  But if you look on the first

22   page, this applies to the Baton Rouge facility,

23   the southwest corner of Airline Highway and

24   Pecue Lane.

25           Do you see that location?

NON-CERTIFIED COPY

Exhibit 4

1    A.  Yep.

2    Q.  Okay.  And this office building,

3    showroom/shop, that is the combination

4    headquarters and branch concept, correct?

5    A.  Uh-huh (affirmative response).

6    Q.  All right.  When you look at the

7    paragraph Number 8, there is a formula to

8    calculate parking spaces.

9         Do you see that?

10    A.  Uh-huh (affirmative response).

11    Q.  And you see it is divided between office

12    and shop?

13    A.  Right.

14    Q.  And you see a different column that says

15    required, and it says STD and it says HC, which

16    I understand is handicapped.

17         So required for office, according to

18    this document that you signed, was 112 spaces,

19    correct?

20    A.  Yes, I see what you are saying.

21    Q.  Okay.  And proposed, see where there is

22    a different column for proposed?

23    A.  I do.

24    Q.  And that says 128 spaces, correct?

25    A.  Uh-huh (affirmative response).

NON-CERTIFIED COPY

Exhibit 4

Page 30

1      Q.  Which exceeded, apparently, what was in

2  the column for required.  Fair statement?

3      A.  Yes.

4      Q.  Now, I assume you signed this document

5  understanding that it was going to be submitted

6  to the Office of the Planning Commission?

7      A.  Correct.  I would assume that, yes.  I

8  don't remember this document; but, yes.

9      Q.  All right.  And do you remember any

10  discussion about required spaces and proposed

11  spaces being more than what was required by the

12  planning commission?

13      A.  No, I don't recall that.

14      Q.  I assume you left that to Mr. St.

15  Germain at the time?

16      A.  Yes.  And URS.

17      Q.  And is it fair to say that you

18  understand that the site plan that is presented

19  to the planning commission is presented with the

20  concept that this is what is going to take place

21  at this site?  Am I correct?

22      A.  What I would say is, that we expected --

23  URS knew how many employees we had, and I

24  assumed they would have enough parking for our

25  existing employees.

NON-CERTIFIED COPY

Exhibit 4

Page 31

1      Q.  I understand that.

2          But my question is:  When you signed

3   this document, you understood that the whole

4   purpose of it was to tell the planning

5   commission what was being proposed to be

6   constructed at that site?  Am I correct?

7      A.  I assume that, yes.

8      Q.  All right.  And what the planning

9   commission was told was that there was going to

10  be 128 spaces for the headquarters building,

11  correct?

12     A.  That is what this document says, yes.

13     Q.  How many employees did you have at that

14  time; do you know?

15     A.  I do not.  I know when we moved in the

16  facility, we couldn't park our employees.

17     Q.  Well, we will get to that.

18         Was there a particular budget

19  established for the development of the Baton

20  Rouge site at H&E?

21     A.  Of course, yes.

22     Q.  Do you remember what that budget was?

23     A.  I do not.

24     Q.  Who at H&E was responsible for coming up

25  with that budget?

NON-CERTIFIED COPY

Exhibit 4

Page 32

1      A.  I think that was a function of a lot of

2  people.  You know, Leonard, Johnny, myself, Brad

3  Barber, Leslie Magee, who was our chief

4  financial officer.  I think we were all involved

5  in that.

6      Q.  Okay.  Do you remember whether that

7  budget was ever disclosed to URS?

8      A.  I am sure it was, but I -- I can't

9  imagine that it wasn't.

10      Q.  Okay.  Were you ever involved in the

11  communication that disclosed that budget to URS?

12      A.  I do not recall a specific meeting.

13      Q.  And let me ask you this, Mr. Engquist,

14  while we are on the subject.

15          You have an Email address at H&E

16  currently, correct?

17      A.  I do.

18      Q.  And has it been the same Email address

19  since you have been there pretty much?  Well, I

20  should say since --

21      A.  Yes.

22      Q.  -- Email addresses came up.

23      A.  Yes.

24      Q.  Okay.  There has been a lot of documents

25  produced in this case on both sides.  There is a

NON-CERTIFIED COPY

Exhibit 4

1   very, very small number of Emails with you

2   involved in Email.

3           Is that the way you operate?  You don't

4   Email very much?

5       A.  There was probably no reason for me to

6   be involved in a lot of those Emails.  But do I

7   not?  Yeah, I Email.  Sure, I do.

8       Q.  Did someone, to your knowledge, search

9   your computer for all the Emails that related to

10  these projects?

11      A.  I am sure they did, if there was a

12  document request.

13      Q.  Were you involved in that at all?

14      A.  Was I involved in the search?

15      Q.  Yes.

16      A.  No.

17      Q.  Did you have to surrender your computer

18  or anything in order to do that?

19      A.  No.  My IT group can -- has access to

20  all that stuff.

21      Q.  And you didn't prohibit any access to

22  your Email, correct?

23      A.  No, certainly not.

24      Q.  All right.  Now, earlier you said

25  that -- well, let's approach it this way.

NON-CERTIFIED COPY

Exhibit 4

Page 34

1          The site proposal that I showed you just

2     now was dated in 2006.  That is when the

3     discussion started about the development of the

4     Baton Rouge site, correct?

5          A.  I would assume that is correct.

6          Q.  All right.  And there was some work done

7     by URS in connection with the development of the

8     site contemporaneously at that time, correct?

9          A.  I couldn't argue that.  Sure.

10         Q.  That is fine.

11              There came a time when that concept of

12    developing the Baton Rouge site was put on hold

13    by H&E; is that correct?

14         A.  That is correct.

15         Q.  Do you remember what time period that

16    was?

17         A.  I am assuming.  I don't -- I don't know

18    exact -- I am assuming it was probably in '08

19    during the -- you know, during the depths of the

20    recession, and we elected to put the project on

21    hold.

22         Q.  And can you tell me the reason it was

23    put on hold?

24         A.  Yeah.  We were in the midst of a -- you

25    know, the biggest recession our sector had ever

NON-CERTIFIED COPY

Exhibit 4

1   seen, and we elected to conserve cash, as

2   opposed to proceeding with it.

3       Q.  Do you remember when it was put back on

4   the front burner?

5       A.  This is somewhat of an educated guess.

6   I think it was probably in the '11 timeframe.

7       Q.  That long of a period of --

8       A.  Yeah, I -- we wouldn't have started the

9   project in '10.  That is kind of when our sector

10  bottomed down.  So I'm assuming it was in 2011.

11      Q.  Whose decision was it, at that time, to

12  start proceeding again with it?

13      A.  Probably my decision.  Ultimately, it

14  was my decision, but there was other people

15  involved with that.

16      Q.  Okay.  Did you need board approval for

17  that?

18      A.  Whether or not I needed board approval,

19  I am sure I ran it by the board.

20      Q.  How often does H&E have board meetings?

21      A.  Quarterly.

22      Q.  Quarterly only?

23      A.  Uh-huh (affirmative response).

24      Q.  And there are minutes kept of the board

25  meetings, I presume?

Exhibit 4

NON-CERTIFIED COPY